**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-57-CJB |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE
HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE
ABROAD IN CIVIL OR COMMERCIAL MATTERS**

**LETTER OF REQUEST**

*Request for International Judicial Assistance
Pursuant to the Hague Convention of 18 March 1970 on
the Taking of Evidence in Civil or Commercial Matters*

By the United States District Court,
District of Delaware

Hon. Christopher J. Burke

**TO:**        The Chief Secretary for Administration (**"Chief Secretary"**)
Hong Kong Special Administrative Region
Room 321, 3/F, East Wing
Central Government Offices
2 Tim Mei Avenue
Admiralty
Hong Kong, China
Tel. +852 2810 3969
Fax. +852 2842 8897
Email: cso@cso.gov.hk

**FROM:**    The Honorable Christopher J. Burke
United States Magistrate Judge
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 28
Room 2325
Wilmington, DE 19801-3551
Tel: +1 302 573 4591

The United States District Court, District of Delaware (**"Requesting Court"**) presents its compliments to the Chief Secretary, or other office as is appropriate, and respectfully requests international judicial assistance to obtain testimonial evidence from Lei Wang, Chief Executive Officer of ACRCloud LIMITED (**"ACRCloud"**), a non-party Hong Kong limited company (CR No. 2013972) located at Room 1102 Hang Seng Castle Peak Road Building, 399 Castle Peak Road, Cheung Sha Wan, Kowloon, Hong Kong, on the topics set forth in Schedule A, and to obtain the production of documents from ACRCloud as set forth in Schedule B, with the modalities set forth in Annex A. The requested testimony and documents are to be used in civil actions proceeding before the Requesting Court. The Requesting Court requests the assistance described herein as necessary in the interests of justice.

## Background

This request is made pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, as adopted and implemented in the United

States of America at 28 U.S.C. § 1781 (permitting the transmittal of letters of request through the district courts and the Department of State); and Part VIII of Evidence Ordinance (Cap. 8) (**"Evidence Ordinance"**) and Order 70, Rules of High Court (**"RHC"**). The United States District Court for the District of Delaware is a competent court of law and equity which properly has jurisdiction over these proceedings, and has the power to compel the attendance of witnesses and production of documents both within and outside its jurisdiction. The Evidence Ordinance and the RHC provide for the right of a foreign party to apply to the Chief Secretary for the execution of a letter of request at the request of the foreign Court before which the civil or commercial case is pending.

ACRCloud is a company incorporated in Hong Kong (CR No. 2013972) located at Room 1102 Hang Seng Castle Peak Road Building, 399 Castle Peak Road, Cheung Sha Wan, Kowloon, Hong Kong. ACRCloud conducts its business within your jurisdiction and this request seeks that its CEO, Lei Wang, whose address appears to be the same as ACRCloud, be examined there and that ACRCloud produce documents and information within its possession, custody, and control.

The Applicant for this Letter of Request is The Nielsen Company (US), LLC (**"Nielsen"** or **"Plaintiff"**), which is the plaintiff in the above-captioned case.

These case is styled *The Nielsen Company (US), LLC v. TVision Insights, Inc.*, Case No. 1:22-cv-00057-CJB. Nielsen filed the case in 2022, and alleged that TVision Insights, Inc. (**"TVision"** or **"Defendant"**) infringed and continues to infringe U.S. Patent No. 7,783,889 (**"the '889 Patent"**), which is directed to, among other things, methods and apparatuses for generating signatures related to audio content streams. Nielsen alleges that the '889 Patent claims certain methods and apparatuses for generating signatures of audio content streams. The signatures can be matched to reference signatures to identify content being consumed by an audience.

Nielsen further alleges that TVision, through its use of ACRCloud's software, performs the claimed method of generating signatures of audio content streams in connection with TVision's audience measurement devices. TVision admits that it uses (and has used) ACRCloud's software. TVision, however, does not possess information regarding how the ACRCloud software generates signatures of audio content streams. As such, TVision has identified ACRCloud as having relevant information regarding how the ACRCloud software generates signatures of audio content streams.

### Need For Discovery from ACRCloud

Nielsen's requests for documents and information from ACRCloud seek a narrowly targeted set of documents and information. Generally, Nielsen alleges that TVision uses ACRCloud's service by including ACRCloud's software code on TVision's audience measurement devices where the TVision device 1) captures audio coming from a television through the device's microphone; 2) creates a signature, sometimes known as a fingerprint (**"ACRCloud Fingerprint"**) of that audio stream using ACRCloud's fingerprinting algorithm (**"ACRCloud FP Algorithm"**); 3) sends that fingerprint to ACRCloud's servers; and 4) receives a response(es) from ACRCloud indicating the program or advertisement that is being played on the television. This request only asks for the details concerning how the ACRCloud FP Algorithm works to create the ACRCloud Fingerprint through documents and testimony describing the ACRCloud FP Algorithm and the source code for the specific files that perform the ACRCloud FP Algorithm to create ACRCloud Fingerprints.

Nielsen has no other way to obtain the information sought by this Letter of Request other than from ACRCloud. In the proper exercise of its authority, the Requesting Court has determined that there are sufficient grounds to obtain the testimonial and the documentary evidence sought through this Letter of Request, as the evidence sought is directly relevant to the issues to be

determined by the Requesting Court, and such evidence cannot be secured elsewhere or otherwise without the intervention of the appropriate judicial authorities in Hong Kong.

### **Assistance Required**

It appears to the Court that ACRCloud resides within your jurisdiction with its location at Room 1102 Hang Seng Castle Peak Road Building, 399 Castle Peak Road, Cheung Sha Wan, Kowloon, Hong Kong. This Court therefore requests that in the furtherance of justice you, by the proper and usual process of your Court, cause ACRCloud's CEO, Lei Wang, whose business address also appears to be Room 1102 Hang Seng Castle Peak Road Building, 399 Castle Peak Road, Cheung Sha Wan, Kowloon, Hong Kong, to appear for a deposition (before a person appointed and authorized by you), to answer under oath the questions propounded by counsel for Nielsen in the attached Schedule A and cause ACRCloud to produce copies of documents (or otherwise allow the inspection of documents) listed in attached Schedule B.

This request is made with the understanding that it will in no way require any person to commit any offense, or to undergo a broader form of inquiry than he or she would be subject if the litigation were conducted in Hong Kong. Further, this Court defers to the judicial authority of the Hong Kong, or other office as appropriate as to whether the specific requests set forth below comply with applicable law or practice or whether any or all should be limited or precluded.

The testimony and documents requested are not only relevant to the discovery of this case but are also necessary for the trial of this case and may be so used by the parties. They are not otherwise obtainable by this Court through its own compulsory process. The evidence sought in Hong Kong through this request is necessary for the court to do justice in this case.

**<u>Reciprocity and Costs</u>**

This Court respectfully expresses its willingness to provide similar assistance to the Hong Kong Courts. The fees and cost incurred in executing this request that are reimbursable under applicable law will be borne by Nielsen.

<u>**ANNEX A**</u>

<u>**Letter of Request**</u>

TO THE CHIEF SECRETARY FOR ADMINISTRATION OF THE HONG KONG

SPECIAL ADMINISTRATIVE REGION.

**1.      Sender**

> The Honorable Christopher J. Burke
> United States Magistrate Judge
> United States District Court for the District of Delaware
> J. Caleb Boggs Federal Building
> 844 N. King Street
> Unit 28
> Room 2325
> Wilmington, DE 19801-3551
> Tel: +1 302 573 4591

**2.      Central Authority of the Requested State**

> The Chief Secretary for Administration
> Hong Kong Special Administrative Region
> Room 321, 3/F, East Wing
> Central Government Offices
> 2 Tim Mei Avenue
> Admiralty
> Hong Kong, China
> Tel. +852 2810 3969
> Fax. +852 2842 8897
> cso@cso.gov.hk

> *Other Competent Authority (Art. 24)[1]*
> Registrar of the High Court of the Hong Kong Special Administrative Region of the
> People's Republic of China
> 38 Queensway
> Hong Kong
> China
> Tel: +852 2825 0380
> Fax: +852 2825 4550
> enquiry@judiciary.hk

---

[1]  Letters of Request are first sent to the Chief Secretary for Administration before being sent to the Central Authority of the requested State.

1

**3.     Person to Whom the Executed Request is to be Returned**

This United States District Court for the District of Delaware; representatives of the parties

as indicated below; and such other person(s) that you deem proper.

**4.     Specification of the Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request.**

A response is requested by August 8, 2022, or as soon as reasonably practicable. The

Court's calendar presumes that Nielsen will have received the requested documents with sufficient

time to provide meaningful factual initial infringement contentions by September 8, 2022.

**5.     In Conformity with Article 3 of the Convention, the Undersigned Applicant has the Honor to Submit the Following Request:**

**a.     Requesting Judicial Authority (Art. 3(a))**

The Honorable Christopher J. Burke
United States Magistrate Judge
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 28
Room 2325
Wilmington, DE 19801-3551
Tel: +1 302 573 4591

**b.     To the Competent Authority of (Art. 3(a)):**

Hong Kong Special Administrative Region of the People's Republic of China

Registrar of the High Court of the Hong Kong Special Administrative Region of the People's Republic of China
38 Queensway
Hong Kong
China
Tel: +852 2825 0380
Fax: +852 2825 4550
enquiry@judiciary.hk

**c.     Name of the Cases and any Identifying Numbers**

*The Nielsen Company (US), LLC v. TVision Insights, Inc.*, Case No. 1:22-cv-00057-CJB, United States District Court for the District of Delaware

2

6.      **Names and Addresses of the Parties and their Representatives (including Representatives in the Requested State) (Art. 3(b))**

   a.  **Plaintiff and Representatives**

   *Plaintiff*: The Nielsen Company (US), LLC

   *Plaintiff's Representatives:*

   David E. Moore (Delaware Bar No. 3983)
   Bindu A. Palapura (Delaware Bar No. 5370)
   Brandon R. Harper (Delaware Bar No. 6418)
   Carson R. Bartlett (Delaware Bar No. 6750)
   **POTTER ANDERSON & CORROON LLP**
   Hercules Plaza, 6th Floor
   1313 N. Market Street
   Wilmington, DE 19801
   Tel: +1 302 984 6000
   dmoore@potteranderson.com
   bpalapura@potteranderson.com
   bharper@potteranderson.com
   cbartlett@potteranderson.com

   Steven Yovits
   Constantine Koutsoubas
   Michael J. Weil
   **KELLEY DRYE & WARREN LLP**
   333 West Wacker Drive
   Chicago, IL 60606
   Tel: +1 312 857 7070
   syotivs@kelleydrye.com
   ckoutsoubas@kelleydrye.com
   mweil@kelleydrye.com

   Clifford Katz
   Malavika Rao
   **KELLEY DRYE & WARREN LLP**
   3 World Trade Center
   175 Greenwich Street
   New York, NY 10007
   Tel: +1 212 808 7800
   ckatz@kelleydrye.com
   mrao@kelleydrye.com

   b.  **Defendant and Representatives**

   *Defendant:* TVision Insights, Inc.

3

*Defendant's Representatives:*

John W. Shaw
Nathan R. Hoeschen
**SHAW KELLER LLP**
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
nhoeschen@shawkeller.com

Ajay S. Krishnan
Bailey W. Heaps
Julia L. Allen
Reaghan E. Braun
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111-1809
akrishnan@keker.com
bheaps@keker.com
jallen@keker.com
rbraun@keker.com

**7.   Description of Case**

    **a.   Nature of the Proceedings (Art. 3(c))**

This is a patent infringement lawsuit.

    **b.   Summary of Complaint**

Nielsen filed the case in 2022, and alleged that TVision infringed and continues to infringe the '889 Patent, which is directed to, among other things, methods and apparatuses for generating signatures related to audio content streams. Nielsen alleges that the '889 Patent claims certain methods and apparatuses for generating signatures of audio content streams. The signatures can be matched to reference signatures to identify content being consumed by an audience. Nielsen further alleges that TVision, through its use of ACRCloud's software, performs the claimed method of generating signatures of audio content streams in connection with TVision's audience measurement devices

4

### c.  Summary of Defense and Counterclaim

TVision has denied that it infringes the '889 Patent and alleges that the '889 Patent is invalid.

### d.  Other necessary information or documents

TVision has admitted that it uses ACRCloud software. TVision has a license with ACRCloud LIMITED for content identification services using signatures of audio content streams. TVision, however, does not possess information regarding how the ACRCloud software generates signatures of audio content streams. TVision has identified ACRCloud as having relevant information regarding how the ACRCloud software generates signatures of audio content streams.

## 8.    Evidence to be Obtained or Other Judicial Act to be Performed (Art. 3(d))

The testimony and documents identified in Schedules A and B are necessary to determine facts relevant to Nielsen's claims of patent infringement. For this reason, it is respectfully requested that the Hong Kong Courts compel Mr. Lei Wang to provide deposition testimony requested in Schedule A and ACRCloud to produce to Nielsen the documents requested in Schedule B. The requested testimony and documents are intended for use in a civil trial and are directly relevant to the pleaded issues in relation to the claims and defenses in this case In the proper exercise of its authority, this Court has determined that the testimony and the documents described in Schedules A and B cannot be secured except by intervention of the Hong Kong Courts. Nothing in this Court's request for assistance should be construed as requiring any person to violate any laws of Hong Kong.

Furthermore, this Court also understands that certain of the documents or testimony which Mr. Lei Wang and ACRCloud itself may produce or offer may be confidential. The Protective Order entered in these cases may be used to protect the confidentiality of any such documents or

testimony. A copy of the Protective Order entered in these cases is attached as Schedule C to this Letter of Request.

### a.   Purpose of the Evidence or Judicial Act Sought

Nielsen has requested evidence that consists of documents and testimony related to how the ACRCloud FP Algorithm creates ACRCloud Fingerprints from audio content streams that Defendant TVision uses in its devices. Additionally, TVision has identified ACRCloud as the only entity to have this knowledge. Nielsen intends to use this evidence to support its claims of patent infringement against TVision, as explained above.

These letters have been issued based on the following criteria:

The discovery requested is relevant.

The evidence sought by the Letter of Request is necessary for trial and intended to be adduced at trial, if admissible. This required evidence is relevant to the United States proceeding in that it is anticipated to have bearing on issues central to Nielsen's primary cause of action for patent infringement and related damages claims.

The discovery that is requested does not violate the laws of civil procedure of Hong Kong, particularly as they concern third parties.

The Hong Kong Courts may properly authorize the witness to provide the responsive evidence, if any, pursuant to the laws of Hong Kong.

This Court is a court of law before which the captioned matter is pending and has the power under its enabling statutes and rules to direct the taking of evidence abroad. Pursuant to United States Federal Rule of Civil Procedure 28(b)(2), a deposition may be taken in a foreign country "under a letter of request, whether or not captioned a 'letter rogatory.'" This Court has the inherent authority to issue letters rogatory/letters of request. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004) ("A letter rogatory is the request by a domestic court to a foreign

court to take evidence from a certain witness."); *United States v. Reagan*, 453 F.2d 165, 172 (6th Cir. 1971); United States v. Staples, 256 F.2d 290, 292 (9th Cir. 1958). Under governing United States law, a letter of request can also include requests for the production of documents. *See Reagan*, 453 F.2d at 168 (affirming district court's issuance of letters rogatory seeking documents relating to an investigation conducted by German authorities).

A court's decision whether to issue a letter rogatory requires an application of United States Federal Rule of Civil Procedure Rule 28(b), in light of the scope of discovery provided for by the Federal Rules of Civil Procedure. *See Evanston Ins. Co. v. OEA, Inc.*, No. CIV S-02-1505 DFL PAN, 2006 WL 1652315 at* 2 (E.D. Cal. June 13, 1990) (stating that Rule 28(b) "must be read together" with Rule 26(c) in determining whether to issue letter rogatory); *see also DBMS Consultants Ltd. v. Computer Assocs. Int'l, Inc.*, 131 F.R.D. 367, 369-70 (D. Mass. 1990); *B & L Drilling Elecs. v. Totco*, 87 F.R.D. 543, 545 (W.D. Okla. 1978).

This Court has considered the Motion for Issuance of Letter of Request (the "Motion") filed by Nielsen, and has found that the evidence requested is well within the scope of the discovery sanctioned by the Federal Rules of Civil Procedure and would be permitted in this action. Accordingly, upon the Motion and finding good cause therefore, this Court has granted the Motion and now issues this Letter of Request.

**9.      Identity and Address of any Person to be Examined (Art. 3(e))**

> Lei Wang
> Chief Executive Officer
> ACRCloud LIMITED
> Room 1102 Hang Seng Castle Peak Road Building
> 399 Castle Peak Road
> Cheung Sha Wan
> Kowloon, Hong Kong

**10.     Questions to be Put to the Persons to be Examined or Statement of the Subject Matter about which they are to be Examined (Art. 3(f))**

*See* Schedule A.

**11.     Documents or other Property to be Inspected (Art. 3(g))**

Requested documents in the possession, custody, or control of ACRCloud Limited, Room 1102 Hang Seng Castle Peak Road Building, 399 Castle Peak Road, Cheung Sha Wan, Kowloon, Hong Kong as identified in Schedule B.

**12.     Any Requirement that the Evidence by Given on Oath or Affirmation and any Special Form to be Used (Art. 3(h))**

It would further the interests of justice if, by the proper and usual process of your Court, you summon Mr. Lei Wang to appear before a person empowered under Hong Kong SAR law to administer oaths and take testimony and give testimony under oath or affirmation on the topics listed in Schedule A by questions and answers upon oral examination at a convenient location in Hong Kong SAR.

Also, with respect to the documents to be produced, the Court seeks that Mr. Lei Wang, or any other representatives of ACRCloud with knowledge of the records to be produced by ACRCloud in response to this Letter of Request fills in the declaration enclosed hereto at the end of Schedule B. Such a declaration is necessary to allow the documents to be authenticated and to be of use as a business record in the U.S. action.

**13.     Special Methods or Procedure to be Followed (Art. 3(i) and 9)**

The examinations shall be conducted pursuant to the discovery rules as provided for in the Federal Rules of Civil Procedure of the United States, except to the extent such procedure is incompatible with the laws of Hong Kong SAR. This Court further requests: (1) that the examination be taken orally; (2) that the examination be taken before a stenographer and videographer selected by Nielsen; (3) that the videographer be permitted to record the examination

8

by audiovisual means; (4) that the stenographer be allowed to record a verbatim transcript of the examination; (5) that the examination be conducted in English, or, if necessary, with the assistance of an interpreter selected by Nielsen and approved of by TVision; (6) that, if the examination is conducted through an interpreter, verbatim transcripts of the proceeding in English; (7) that the witness be examined for no more than seven (7) hours; (8) that the witness be examined as soon as possible; (9) that counsel for ACRCloud and counsel for any witnesses in their individual capacity be permitted to be present and participate in the examinations by attending the testimony of the witnesses either in person or by videolink and be permitted to examine and cross-examine the witnesses; and (10) the above-mentioned US counsel for Nielsen, US Counsel for TVision, and Hong Kong counsel retained by the parties be permitted to participate equally in the examinations, by attending the testimony of the witnesses either in person or by videolink and be permitted to examine and cross-examine the witnesses. In the event that the evidence cannot be taken according to some or all of the procedures described above, this Court requests that it be taken in such manner as provided by the laws of Hong Kong SAR for the formal taking of testimonial evidence.

It would further the interests of justice if, by the proper and usual process of the courts of Hong Kong SAR, Lei Wang be summoned to appear before a person empowered under Hong Kong SAR law to administer oaths and take testimony, and to give testimony under oath or affirmation on the topics listed in Schedule A by questions and answers upon oral examination at a convenient location in Hong Kong SAR, as well as to produce the documents listed in Schedule B.

This Court requests that ACRCloud produce the documents listed in Schedule B to this Letter of Request at least thirty (30) days prior to examination of Lei Wang.

14.     **Request for Notification of the Time and Place for the Execution of the Request and Identity and Address of any Person to be Notified (Art. 7)**

This Court requests that notification of the time and place for execution of the Letter of

Request be sent to the following representatives of the Court and the Requesting Party:

Chambers of Hon. Christopher J. Burke
United States Magistrate Judge
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 28
Room 2325
Wilmington, DE 19801-3551
Tel: +1 302 573 4591

**For Nielsen:**
David E. Moore (Delaware Bar No. 3983)
Bindu A. Palapura (Delaware Bar No. 5370)
Brandon R. Harper (Delaware Bar No. 6418)
Carson R. Bartlett (Delaware Bar No. 6750)
**POTTER ANDERSON & CORROON LLP**
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: +1 302 984 6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
bharper@potteranderson.com
cbartlett@potteranderson.com

Steven Yovits
Constantine Koutsoubas
Michael J. Weil
**KELLEY DRYE & WARREN LLP**
333 West Wacker Drive
Chicago, IL 60606
Tel: +1 312 857 7070
syotivs@kelleydrye.com
ckoutsoubas@kelleydrye.com
mweil@kelleydrye.com

Clifford Katz
Malavika Rao
**KELLEY DRYE & WARREN LLP**
3 World Trade Center

10

175 Greenwich Street
New York, NY 10007
Tel: +1 212 808 7800
ckatz@kelleydrye.com
mrao@kelleydrye.com

**For TVision:**

John W. Shaw
Nathan R. Hoeschen
**SHAW KELLER LLP**
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
nhoeschen@shawkeller.com

Ajay S. Krishnan
Bailey W. Heaps
Julia L. Allen
Reaghan E. Braun
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111-1809
akrishnan@keker.com
bheaps@keker.com
jallen@keker.com
rbraun@keker.com

**15.     Specification of Privilege or Duty to Refuse to Give Evidence under the Law of the Requesting State (Art. 11(b))**

Under the laws of the United States, a witness has a privilege to refuse to give evidence if to do so would disclose a confidential communication between the witness and his or her attorney that was communicated specifically for the purpose of obtaining legal advice and which privilege has not been waived. United States law also recognizes a privilege against criminal self-incrimination. Other limited privileges on grounds not applicable here also exist, such as communications between doctors and patients, husband and wife, and clergy and penitent. Certain limited immunities are also recognized outside the strict definition of privilege, such as the limited protection of work product created by attorneys during or in anticipation of litigation.

16.   **The Fees and Costs Incurred which are Reimbursable under the Second Paragraph of Article 14 or under Article 26 of the Convention will be borne by:**

Nielsen will reimburse the Hong Kong Courts for the expenses incurred in executing the

Letter of Request.

Please direct requests for reimbursement to:

Constantine Koutsoubas
**KELLEY DRYE & WARREN LLP**
333 West Wacker Drive
Chicago, IL 60606
Tel: +1 312 857 7070
ckoutsoubas@kelleydrye.com

17.   **Reciprocity Regarding Letter of Request**

In the spirit of comity and reciprocity, the United States District Court for District of

Delaware hereby requests international judicial assistance in the form of this Letter of Request to

obtain the oral examination, under oath, of Lei Wang on the topics set forth in the attached

Schedule A, and to obtain documents within ACRCloud's possession, custody, or control as set

forth in Schedule B. This Court expresses its sincere willingness to provide similar assistance and

to honor similar appropriate requests from the Hong Kong Courts if future circumstances should

require.

For the foregoing reasons, this Court hereby issues these letters of requests authorizing the

taking of oral evidence from Lei Wang and the pursuit of the production of documentary evidence

in the custody and control of ACRCloud as follows:

**Testimony:**

If acceptable to the Hong Kong Courts, (1) Lei Wang shall be required to sit for deposition

for no longer than seven (7) total hours; and (2) Counsel for Nielsen shall conduct themselves

consistent with the Federal Rules of Civil Procedure of the United States, as well as any Local

Rules and Standing Orders governing the above-captioned case.

**Documents:**

If acceptable to the Hong Kong Courts, ACRCloud shall produce the documents requested in Schedule B at least thirty days prior to the deposition Lei Wang. ACRCloud's searches of electronically stored information (**"ESI"**) can be performed by querying its database, using also technology assisted review and other techniques insofar as their use improves the efficacy of discovery, and producing discoverable information in exportable and readable electronic files. ACRCloud's searches should also extend to hard copy documents and not be limited to ESI only. The production of hard copy documents can be made by scanning the hard copies and producing them in PDF format.

This Letter of Request is signed and sealed by Order of the Court made on the date set forth below.

Dated:_____                          _____

                                                                           Honorable Christopher J. Burke

13

## SCHEDULE A

## DEFINITIONS & INSTRUCTIONS

1.      The term "ACRCloud Extraction Tool Binary File" shall, collectively, refer to the

file acrcloud_extr_tool.so that is available at the following locations:

     a.   https://github.com/acrcloud/acrcloud_sdk_python/raw/master/linux/aws_arm/python2.7/acrcloud/acrcloud_extr_tool.so

     b.   https://github.com/acrcloud/acrcloud_sdk_python/raw/master/linux/aws_arm/python3/acrcloud/acrcloud_extr_tool.so

     c.   https://github.com/acrcloud/acrcloud_sdk_python/raw/master/linux/x86-64/python2.7/acrcloud/acrcloud_extr_tool.so

     d.   https://github.com/acrcloud/acrcloud_sdk_python/raw/master/linux/x86-64/python3/acrcloud/acrcloud_extr_tool.so

     e.   https://github.com/acrcloud/acrcloud_sdk_python/raw/master/linux/x86/python2.7/acrcloud/acrcloud_extr_tool.so

     f.   https://github.com/acrcloud/acrcloud_sdk_python/raw/master/linux/x86/python3/acrcloud/acrcloud_extr_tool.so

     g.   https://github.com/acrcloud/acrcloud_sdk_csharp/raw/master/libs-vs2017/win64/libacrcloud_extr_tool.dll

     h.   https://github.com/acrcloud/acrcloud_sdk_csharp/raw/master/libs-vs2017/win64/libacrcloud_extr_tool.lib

2.      "Automatic Content Recognition" or "ACR" mean the automatic identification or

recognition of media content.

3.      "ESI" means any electronically stored information—including emails, writings,

drawings, graphs, charts, photographs, sound recordings, images, and other data or data

compilations—stored in any medium from which information can be obtained either directly or,

if necessary, after translation by the responding party into a reasonably usable form.

4.      "Document" is defined to include any documents or ESI—including writings,

drawings, graphs, charts, photographs, sound recordings, images, and other data or data

compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term.

5.      The defined terms listed above shall apply regardless of whether or not the term is capitalized.

6.      For each Request that seeks production of document(s), produce each such document in its entirety and all drafts and non-identical copies of each document.

7.      If You are able or willing to provide only part of the information and documents sought by the Requests, provide that partial information and documentation and specify the reason for Your inability or unwillingness to provide the remainder.

8.      The term "including" means including but not limited to.

9.      The term "each" shall be construed to include the term "every," and the term "every" shall be construed to include the term "each."

10.     The conjunctions "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

11.     The singular shall always include the plural and the present tense shall always include the past tense and vice versa, as necessary to bring within the scope of the discovery requests all responses that might otherwise be construed to be outside of its scope.

12.     Testimony shall not be withheld on the grounds that they contain highly sensitive or confidential information. Instead, any such testimony shall be designated in accordance with the terms of the Protective Order entered by the Court in the case and provided hereto as Schedule C.

**MATTERS UPON WHICH THE WITNESS IS TO BE EXAMINED**

1.      The authenticity of documents and business records produced by ACRCloud in response to the Letter of Request.

2.      The documents produced by ACRCloud in response to the Letter of Request.

3.      The relationship between Lei Wang and ACRCloud.

4.      The ACRCloud Extraction Tool Binary File.

5.      The method by which the ACRCloud software generates fingerprints from audio content streams.

6.      The source code for each ACRCloud Extraction Tool Binary File.

7.      The algorithm for the "create_fingerprint" function in each ACRCloud Extraction Tool Binary File.

8.      The algorithm for the "create_fingerprint_by_file" function in each ACRCloud Extraction Tool Binary File.

9.      The algorithm for the "create_fingerprint_by_filebuffer" function in each ACRCloud Extraction Tool Binary File.

10.     The algorithm for the "create_fingerprint_by_fpbuffer" function in each ACRCloud Extraction Tool Binary File.

11.     The algorithm for the "create_humming_fingerprint_by_file" function in each ACRCloud Extraction Tool Binary File.

12.     The algorithm for the "create_cs_fingerprint_by_file" function in each ACRCloud Extraction Tool Binary File.

16

## SCHEDULE B

## DEFINITIONS & INSTRUCTIONS

1.  The term "ACRCloud Extraction Tool Binary File" shall, collectively, refer to the file

acrcloud_extr_tool.so that is available at the following locations:

    a.  https://github.com/acrcloud/acrcloud_sdk_python/raw/master/linux/aws_arm/python2.7/acrcloud/acrcloud_extr_tool.so

    b.  https://github.com/acrcloud/acrcloud_sdk_python/raw/master/linux/aws_arm/python3/acrcloud/acrcloud_extr_tool.so

    c.  https://github.com/acrcloud/acrcloud_sdk_python/raw/master/linux/x86-64/python2.7/acrcloud/acrcloud_extr_tool.so

    d.  https://github.com/acrcloud/acrcloud_sdk_python/raw/master/linux/x86-64/python3/acrcloud/acrcloud_extr_tool.so

    e.  https://github.com/acrcloud/acrcloud_sdk_python/raw/master/linux/x86/python2.7/acrcloud/acrcloud_extr_tool.so

    f.  https://github.com/acrcloud/acrcloud_sdk_python/raw/master/linux/x86/python3/acrcloud/acrcloud_extr_tool.so

    g.  https://github.com/acrcloud/acrcloud_sdk_csharp/raw/master/libs-vs2017/win64/libacrcloud_extr_tool.dll

    h.  https://github.com/acrcloud/acrcloud_sdk_csharp/raw/master/libs-vs2017/win64/libacrcloud_extr_tool.lib

2.  "Automatic Content Recognition" or "ACR" mean the automatic identification or

recognition of media content.

3.  "ESI" means any electronically stored information—including emails, writings,

drawings, graphs, charts, photographs, sound recordings, images, and other data or data

compilations—stored in any medium from which information can be obtained either directly or,

if necessary, after translation by the responding party into a reasonably usable form.

4.  "Document" is defined to include any documents or ESI—including writings,

drawings, graphs, charts, photographs, sound recordings, images, and other data or data

compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term.

5.      The defined terms listed above shall apply regardless of whether or not the term is capitalized.

6.      For each Request that seeks production of document(s), produce each such document in its entirety and all drafts and non-identical copies of each document.

7.      If You are able or willing to provide only part of the information and documents sought by the Requests, provide that partial information and documentation and specify the reason for Your inability or unwillingness to provide the remainder.

8.      The term "including" means including but not limited to.

9.      The term "each" shall be construed to include the term "every," and the term "every" shall be construed to include the term "each."

10.     The conjunctions "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

11.     The singular shall always include the plural and the present tense shall always include the past tense and vice versa, as necessary to bring within the scope of the discovery requests all responses that might otherwise be construed to be outside of its scope.

12.     Documents shall not be withheld on the grounds that they contain highly sensitive or confidential information. Instead, they shall be designated in accordance with the terms of the Protective Order entered by the Court in the case and provided hereto as Schedule C.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1.     Documents sufficient to identify the way the ACRCloud Software generates signatures from audio streams.

2.     The source code for each ACRCloud Extraction Tool Binary File.

3.     The algorithm for the "create_fingerprint" function in each ACRCloud Extraction Tool Binary File.

4.     The algorithm for the "create_fingerprint_by_file" function in each ACRCloud Extraction Tool Binary File.

5.     The algorithm for the "create_fingerprint_by_filebuffer" function in each ACRCloud Extraction Tool Binary File.

6.     The algorithm for the "create_fingerprint_by_fpbuffer" function in each ACRCloud Extraction Tool Binary File.

7.     The algorithm for the "create_humming_fingerprint_by_file" function in each ACRCloud Extraction Tool Binary File.

8.     The algorithm for the "create_cs_fingerprint_by_file" function in each ACRCloud Extraction Tool Binary File.

9.     Documents sufficient to describe the algorithm for the "create_fingerprint" function in each ACRCloud Extraction Tool Binary File.

10.     Documents sufficient to describe the algorithm for the "create_fingerprint_by_file" function in each ACRCloud Extraction Tool Binary File.

11.     Documents sufficient to describe the algorithm for the "create_fingerprint_by_filebuffer" function in each ACRCloud Extraction Tool Binary File.

12.     Documents sufficient to describe the algorithm for the

"create_fingerprint_by_fpbuffer" function in each ACRCloud Extraction Tool Binary File.

13.     Documents sufficient to describe the algorithm for the

"create_humming_fingerprint_by_file" function in each ACRCloud Extraction Tool Binary File.

14.     Documents sufficient to describe the algorithm for the

"create_cs_fingerprint_by_file" function in each ACRCloud Extraction Tool Binary File.

## <u>DECLARATION OF CUSTODIAN OF RECORDS FOR ACRCLOUD LIMITED</u>

I, _____, declare as follows:

    1.  I am over the age of eighteen years and not a party to this action.

    2.  My business address is _____.

    3.  I am the duly authorized custodian of records and am authorized by ACRCloud LIMITED to certify the records produced by ACRCloud LIMITED pursuant to this request and Bates-stamped _____ through _____ (the "ACRCloud Records") . I am currently employed by ACRCloud LIMITED as _____ and have been so employed since approximately _____. I am familiar with the ACRCloud Records and the manner in which they were made and have been maintained by ACRCloud Limited.

    4.  The ACRCloud Records were collected and provided to counsel for Plaintiff The Nielsen Company (US), LLC ("Nielsen").

    5.  5. I certify, based on information and belief, that the ACRCloud Records are true copies of records that (i) were made at or near the time of the occurrence of the matters set forth therein; (ii) were made by, or from information transmitted by, a person with knowledge of those matters; (iii) were kept in the usual course of regularly conducted business activity; (iv) were made by and in the course of the regularly conducted activity as a regular practice; and (v) are exact duplicates of original records.

    I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this ____ day of _____ in _____,__.

_____

**SCHEDULE C**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 21-1592-CJB |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-57-CJB |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PROTECTIVE ORDER**

1.  <u>PURPOSES AND LIMITATIONS</u>

Disclosure and discovery activity in this action are likely to involve production of

confidential, proprietary, or private information for which special protection from public

disclosure and from unapproved uses may be warranted. Accordingly, the parties hereby

stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties

acknowledge that this Order does not confer blanket protections on all disclosures or responses

to discovery and that the protection it affords from public disclosure and use extends only to the

limited information or items that are entitled to confidential treatment under the applicable legal

principles. The parties further acknowledge, as set forth in Section 12.3, below, that this

Stipulated Protective Order does not entitle them to file confidential information under seal; this

District's Local Rules and CM/ECF Procedures and any applicable order of this Court set forth

the procedures that must be followed and the standards that will be applied when a party seeks

permission from the Court to file material under seal.

2.  <u>DEFINITIONS</u>

    2.1    <u>Challenging Party:</u>  a Party or Non-Party that challenges the designation of

information or items under this Order.

    2.2    <u>"CONFIDENTIAL" Information:</u>  information or tangible things concerning a

person's business operations, processes, and technical and development information, the

disclosure of which is likely to harm that person's competitive position, or the disclosure of

which would contravene an obligation of confidentiality to a third person or to a Court.

    2.3    <u>Source Code:</u> computer instructions, data structures, and data definitions

expressed in a form suitable for input to an assembler, compiler, translator, or other data

processing module, and associated comments and revision histories.

    2.4    <u>Counsel (without qualifier):</u>  Outside Counsel of Record and In-House Counsel

(as well as their support staff).

    2.5    <u>Designating Party:</u>  a Party or Non-Party that designates information or items that

it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL

SOURCE CODE."

    2.6    <u>Disclosure or Discovery Material:</u>  all items or information, regardless of the

medium or manner in which it is generated, stored, or maintained (including, among other things,

testimony, transcripts, and tangible things), that are produced or generated in disclosures or

responses to discovery in this matter.

2.7    Expert:  a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not and for the past two years has not been an employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.8    "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" Information:  highly sensitive information or items that is current or future business or technical trade secrets and plans more sensitive or strategic than Confidential information, the disclosure of which is likely to significantly harm that person's competitive position, or the disclosure of which would contravene an obligation of confidentiality to a third person or to a Court. Examples of "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" information or tangible things include, without limitation, trade secrets, non-public financial information, business and sales strategies, product roadmaps, ongoing research and development materials, sensitive technical materials, and other information of a similar nature. For avoidance of doubt, emails, transcripts, and other documents that contain excerpts of source code shall be considered HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY information.

2.9    "HIGHLY CONFIDENTIAL SOURCE CODE" Information:  (1) Source Code; (2) human-readable text-based electronic source code documents that reside in a source code repository, including but not limited to, source code residing in third-party source code repository, from which software and related data files may be compiled, assembled, linked, executed, debugged, and/or tested ("Source Code Files"); and (3) print-outs of Source Code Files. ("Printed Source Code").  Source Code Files include, but are not limited to, documents in "C", "C++", Java, Java scripting languages, command languages, shell language, VHDL,

Verilog, and digital signal processor (DSP) programming languages.  Source Code Files may

further include "header" files, "make" files, project files, link files, and other human-readable

text files used in the generation, compilation, translation, and/or building of executable software,

including software intended for execution by an interpreter.

       2.10   <u>Non-Party:</u>  any natural person, partnership, corporation, association, or other

legal entity not named as a Party to this action.

       2.11   <u>Outside Counsel of Record:</u>  attorneys, legal professionals, or IP professionals

who are not employees of a party to this action but are retained to represent or advise a party to

this action and whose firms have appeared in this action on behalf of that party.  Outside Counsel

of Record includes the attorneys and support staff, including contract attorneys, of law firms that

are retained to represent a party in this action, as well as the secretaries, paralegal assistants, and

employees of such counsel to the extent reasonably necessary to render professional services in

this case, but excludes any employees of a party to this action.  Outside Counsel of Record also

includes outside copying services, document management services, and graphic services

reasonably necessary to render professional services in this case.

       2.12   <u>Party:</u>  any party to this action, including all of its officers, directors, employees,

consultants, retained experts, and Outside Counsel of Record.

       2.13   <u>Producing Party:</u>  a Party or Non-Party that produces Disclosure or Discovery

Material in this action.

       2.14   <u>Professional Vendors:</u>  persons or entities that provide litigation support services

(*e.g.*, photocopying, videotaping, translating, preparing exhibits or demonstrations, and

organizing, storing, or retrieving data in any form or medium) and their employees and

subcontractors.

2.15    Protected Material:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE."

2.16    Receiving Party:  a Party that receives Disclosure or Discovery Material from a Producing Party.

3.    SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information:  (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.  Any use of Protected Material at trial may be governed by a separate agreement or order.

4.    DURATION

The confidentiality obligations imposed by this Order shall remain in effect even after final disposition of this litigation until a Designating Party agrees otherwise in writing, a court order otherwise directs, or unless otherwise provided herein.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice;

5

and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.      DESIGNATING PROTECTED MATERIAL

5.1      Exercise of Restraint and Care in Designating Material for Protection.  Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify—so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party, if it agrees, must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2      Manner and Timing of Designations.

(a)      For information in documentary form (*e.g.*, paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), designation in conformity with this Order requires that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or 'HIGHLY CONFIDENTIAL SOURCE CODE" to each page that contains Protected Material.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which

6

material it would like copied and produced.  During the inspection and before the designation, all

of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL –

OUTSIDE ATTORNEYS' EYES ONLY."  After the inspecting Party has identified the

documents it wants copied and produced, the Producing Party must determine which documents,

or portions thereof, qualify for protection under this Order.  Then, before producing the specified

documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or

"HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY") to each page that

contains Protected Material.

      (b)    <u>For testimony given in deposition or in other pretrial or trial proceedings,</u> the

Designating Party may, up to 21 days from the date of receipt of a final transcript of the

deposition, hearing or other proceeding, designate the testimony or portions thereof as

"CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY,"

or "HIGHLY CONFIDENTIAL SOURCE CODE."

      Upon request, Parties shall give the other Parties reasonable notice if they reasonably

expect a deposition, hearing or other proceeding to include Protected Material so that the other

parties can ensure that only authorized individuals who have signed the "Acknowledgment and

Agreement to Be Bound" (Exhibit A) are present at those proceedings.  The use of a document as

an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL,"

"HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "HIGHLY

CONFIDENTIAL SOURCE CODE."

      Transcripts containing Protected Material shall have an obvious legend on the title page

that the transcript contains Protected Material, and, if the entire transcript has not been

designated as Protected Material, the title page shall be followed by a list of all pages (including

line numbers as appropriate) that have been designated as Protected Material and the level of

protection being asserted by the Designating Party.  The Designating Party shall inform the court

reporter of these requirements.  Any transcript that is prepared before the expiration of a 21-day

period for designation shall be treated during that period as if it had been designated "HIGHLY

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" (or "HIGHLY CONFIDENTIAL

SOURCE CODE" if it contains Source Code) in its entirety unless otherwise agreed.  After the

expiration of that period, the transcript shall be treated only as actually designated.

(c)      For information produced in some form other than documentary and for any other

tangible items, designation in conformity with this Order requires that the Producing Party affix

in a prominent place on the exterior of the container or containers in which the information or

item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE

ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE."  If only a

portion or portions of the information or item warrant protection, the Producing Party, to the

extent practicable, shall identify the protected portion(s) and specify the level of protection being

asserted.

5.3      Inadvertent Failures to Designate.  If corrected, an inadvertent failure to designate

qualified information or items does not, standing alone, waive the Designating Party's right to

secure protection under this Order for such material.  Upon correction of a designation, the

Receiving Party must make reasonable efforts to assure that the material is treated in accordance

with the provisions of this Order. To the extent the Receiving Party has disclosed the Protected

Material to any person not authorized under this Stipulated Protective Order, the Receiving Party

shall follow the requirements of Section 10 (a), (b), (c), and (d).

5.4     <u>Non-Party Documents.</u>  In the event that a Non-Party produces documents that contain Protected Material belonging to either or both Parties, either or both Parties may, within thirty (30) calendar days of the receipt of documents produced by the third party, designate such documents as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL − OUTSIDE ATTORNEYS' EYES ONLY."

6.      <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

6.1     <u>Timing of Challenges.</u>  Any Party or Non-Party may challenge a designation of confidentiality at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     <u>Meet and Confer.</u>  The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge.  The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient) within 7 days of the date of service of notice.  In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.

6.3     <u>Judicial Intervention.</u>  If the Parties cannot resolve a challenge without Court intervention, the disputing party shall raise the issue with the Court.

9

The burden of persuasion in any protective order challenge shall be on the Designating Party.  All parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7.   ACCESS TO AND USE OF PROTECTED MATERIAL

    7.1   Basic Principles.  A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party for the purposes of this litigation only.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order or, in the case of materials designated "HIGHLY CONFIDENTIAL SOURCE CODE," the Parties' Source Code Access Agreement.

    Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.  In the case of materials designated "HIGHLY CONFIDENTIAL SOURCE CODE," the Parties' Source Code Access Agreement shall apply.

    7.2   Disclosure of "CONFIDENTIAL" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

    (a)   the Receiving Party's Outside Counsel of Record in this action;

    (b)   five designated employees of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) and who are identified to the Designating Party.

(c)     Experts of the Receiving Party (1) to whom disclosure is reasonably necessary, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in Section 7.5, below, have been followed;

(d)     the Court, the jury, any mediators or arbitrators assisting in the resolution of this action, and their personnel;

(e)     court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary;

(f)     mock jurors and other necessary staff for conducting a mock trial or similar proceeding related to this litigation, provided that all such mock jurors and staff sign and agree to be bound to an appropriate confidentiality agreement prohibiting disclosure and use of such materials outside of any mock jury exercise;

(g)     during their depositions, witnesses in the action who are (1) party representatives of the Designating Party pursuant to Fed. R. Civ. P. 30(b)(6); (2) officers, directors, and managerial level employees of the Designating Party; (3) current employees of the Designating Party; or (4) other individuals that the deposing party can demonstrate have already received the Protected Information (*e.g.*, as a recipient of a document) and  who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court.  Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

(h)     the author or recipient (or person involved in the creation) of a document containing the information or a custodian of the document or other person who otherwise possessed or knew the information.

7.3     Disclosure of "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL SOURCE CODE" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL SOURCE CODE" only to those individuals specified in Section 7.2 (a), (c), (d), (e), (g), and (h) above, provided that such individuals have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) and are identified to the Designating Party.

Notwithstanding the above, no expert witness or consultant who is involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Receiving Party shall have access to a Designating Party's material designated with the label "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL SOURCE CODE."

7.4     "HIGHLY CONFIDENTIAL SOURCE CODE" Information or Items shall be comply with the additional restrictions in the Parties' Source Code Access Agreement.

7.5     Procedures for Approving or Objecting to Experts.

(a)     A Party that seeks to designate an individual as an Expert (as defined in and consistent with this Order) must first make a written request to the Designating Party that (1) sets forth the full name of the Expert and the city and state of his or her primary residence, (2) attaches a copy of the Expert's current resume, (3) to the extent not included in the Expert's current resume, identifies the Expert's present and past employment, education and areas of expertise; and (4) identifies consulting and litigation engagements during the preceding five years.

12

(b)     A Party that makes a request and provides the information specified in the preceding respective Sections may disclose appropriate Protected Material to the identified Expert after 8 calendar days unless, within 8 calendar days of delivering the request, the Party receives a written objection from the Designating Party.  Any such objection must set forth in detail the grounds on which it is based.

A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice-to-voice dialogue) to try to resolve the matter by agreement within three (3) business days of the written objection.    If no agreement is reached, within ten (10) business days of the meet-and-confer, the party seeking to prevent disclosure of Protected Material to the Expert shall move for an order of the Court preventing such disclosure.  If no such motion is made within ten (10) business days, disclosure to the Expert shall be permitted.  In the event that objections are made and a motion is filed, disclosure to the Expert shall not be made unless and until the Court permits it.

In any such dispute, the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose Protected Material to its Expert.

(d)     A Party may not object to disclosure to identified Experts beyond the 8-day period in Section 7.5(b) unless the Party becomes aware of new information or circumstances that give good cause for objection, in which case, an objection shall be made, and the timing and procedures described above shall apply.

(e)     No Party shall attempt to depose any Expert until such time as the Expert is designated by the Party engaging the Expert as testifying expert.  Notwithstanding the preceding sentence, a Party may depose an Expert as a fact witness if the Party has a good faith,

demonstrable basis that the Expert possesses facts relevant to the case that were obtained independently of the Expert's engagement.  Such deposition, if it precedes the designation as a testifying expert, shall not include any questions regarding the scope or subject matter of the engagement.  In addition, if the engaging party chooses not to designate the Expert as a testifying expert, the non-engaging party shall be barred from seeking discovery or trial testimony as to the scope or subject matter of the engagement.

7.6     Prosecution Bar. Any person reviewing any "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL SOURCE CODE" designated information or materials (which shall also be automatically  considered "Prosecution Bar Materials") shall not, for a period commencing upon that person's review of such information and ending two years following the conclusion of this case (including any appeals) engage in any Prosecution Activity (as defined below) involving claims on a method, apparatus, or system that deal with the subject matter of the patents-in-suit (detection of the number of individuals who are watching particular television content, correlating presentation of media content on a media content presentation device with activity on a different computing device, and generating signatures of audio content streams).

Prosecution Activity shall mean any activity related to the preparation or prosecution (for any person or entity) of patent applications or advising or counseling clients regarding same, writing, generating, suggesting, or modifying claim language for patent applications or advising or counseling clients regarding same, or making arguments in support of patent applications or advising or counseling clients regarding same. A person who has reviewed Prosecution Bar Materials may not, on behalf of a Party in this case, suggest, direct, or draft claim amendments ("Amending") in a reexamination, *inter partes* review, covered business method review, post-

14

grant review, or reissue application proceedings ("Post-Grant Proceedings") as to patents subject to such Post-Grant Proceedings and within the subject matter of the patents-in-suit.  Nothing in this Section shall prevent a person who has reviewed Prosecution Bar Materials from participating in such Post-Grant Proceedings or in submitting a motion to amend in Post-Grant Proceedings over such person's signature as counsel, subject to the prohibition on counseling on claim amendments and claim drafting as stated in the previous sentence.  Nothing in this Section shall prevent any attorney from sending non-confidential prior art to an attorney involved in patent prosecution for any purpose, including the purpose of ensuring that such prior art is submitted to the U.S. Patent and Trademark Office (or any similar agency of a foreign government) to assist a patent applicant in complying with its duty of candor.  The parties expressly agree that the Prosecution Bar set forth herein shall be personal to any attorney who reviews Prosecution Bar Materials and shall not be imputed to any other persons or attorneys at the attorneys' law firm. It is expressly agreed that attorneys who work on this matter without reviewing Prosecution Bar Materials shall not be restricted from engaging in Prosecution Activity on matters that fall within the Prosecution Bar.

8.    <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

(a)    <u>Receiving Party Subject to Subpoena, Document Request or Court Order in Other Proceedings</u>. If a Party is served with a subpoena, document request, or court order issued in other litigation or proceeding that compels or covers disclosure of any information or items designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE," that Party must notify the Designating Party at least ten (10) business days before the Party seeks to disclose the designated materials in writing.  Such notification shall include a copy of the

subpoena, document request or court order and a copy of the protective order governing the litigation or proceeding to which the subpoena, document request, or court order pertains.

(b) <u>Receiving Party Subject to Motion in Other Proceedings</u>. By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any Receiving Party subject to this order who becomes subject to a motion to disclose a Designating Party's information designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE," pursuant to this order shall promptly notify the Designating Party of the motion so that the Designating Party may have an opportunity to appear and be heard on whether that information should be disclosed.

(c) If the Designating Party objects within ten (10) business days of being notified, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL SOURCE CODE" unless it is ordered to do so by the court from which the subpoena, document request, or order issued, or unless it is otherwise required to do so by the procedures governing the proceeding.

9. <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION</u>

(a) The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE."  Such information produced by Non-Parties in connection with this litigation is protected by the

remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)     In the event that a Party (the "Producing Party" in this Section) is required, by a valid discovery request from the other Party (the "Requesting Party" in this Section), to produce a Non-Party's confidential information in the Producing Party's possession, and the Producing Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Producing Party shall:

(1)     promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2)     promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3)     make the information requested available for inspection by the Non-Party.

(c)     If the Non-Party fails to object or seek a protective order from this Court within 14 days of receiving the notice and accompanying information, the Producing Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Producing Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this Court of its Protected Material.

17

10. <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.  The execution of the "Acknowledgment and Agreement to Be Bound" in this instance does not mean that the person shall be entitled to receive Protected Material going forward unless the person is otherwise authorized to do so under the provisions of this Protective Order.

11. <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL</u>

11.1  <u>No Waiver.</u>  The Parties have agreed that, in discovery in this lawsuit, they do not intend to disclose information subject to a claim of attorney-client privilege or attorney work product protection.

Pursuant to Federal Rule of Evidence 502(d) and Federal Rule of Civil Procedure 26(b)(5)(B), the production or disclosure of any discovery material that a Party (the "Disclosing Party") thereafter claims should not have been produced or disclosed based on privilege or work product protections ("Disclosed Privileged Information"), shall not constitute or be deemed a waiver or forfeiture in whole or in part—in this or any other action—of any claim of attorney-client privilege or work product immunity that the Disclosing Party would otherwise be entitled to assert with respect to the Disclosed Privileged Information and its subject matter regardless of

the circumstances of the production or disclosure. As set forth below, such Disclosed Privileged

Information shall be returned to the Producing Party or destroyed upon request.

       11.2     <u>Attorney's Ethical Responsibilities.</u> Nothing in this order overrides any attorney's

ethical responsibilities to refrain from examining or disclosing materials that the attorney knows

or reasonably should know to be privileged and to inform the Disclosing Party that such

materials have been produced. Any Party receiving materials that, on their face, appear to be

covered by a privilege, shall not copy, distribute, or otherwise use in any manner such materials

and shall provide prompt notice of the disclosure to the Producing Party to afford the Producing

Party the opportunity to request return of the materials, in accordance with the terms of this

Section.

       11.3     <u>Procedure for Return or Destruction of Privileged Information.</u>  If a Disclosing

Party notifies the Receiving Party of Disclosed Privileged Information, the Receiving Party shall,

as soon as possible, but at most within 5 business days: (i) return or destroy (or in the case of

electronically stored information, delete) all copies of such information (including all notes or

other work product of the Receiving Party reflecting the contents of the Disclosed Privileged

Information) within their possession, custody, or control—including all copies in the possession

of experts, consultants, or others to whom the Disclosed Privileged Information was provided—

and (ii) provide a certification of counsel that all such Disclosed Privileged Information has been

returned or destroyed. From the moment a Disclosing Party provides notice of production of

Disclosed Privileged Information, a Receiving Party shall not copy, distribute, or otherwise use

in any manner the disputed documents or information, and shall instruct all persons to whom the

Receiving Party has disseminated a copy of the documents or information that the documents or

information are subject to this Order and may not be copied, distributed, or otherwise used

pending a motion and further notice from the Court. For purposes of this Order, Disclosed

Privileged Information that has been stored by the Receiving Party on a source of electronically

stored information that is not reasonably accessible, such as backup storage media, is

sequestered. If such data is retrieved, the Receiving Party must promptly take steps to delete the

restored Disclosed Privileged Information.

This provision is not intended to modify whatever procedure may be established in an e-

discovery order that provides for production without prior privilege review.

12.    MISCELLANEOUS

12.1    Right to Further Relief.  Nothing in this Order abridges the right of any person to

seek its modification by the Court in the future.

12.2    Right to Assert Other Objections.  By stipulating to the entry of this Protective

Order no Party waives any right it otherwise would have to object to disclosing or producing any

information or item on any ground not addressed in this Stipulated Protective Order.  Similarly,

no Party waives any right to object on any ground to use in evidence of any of the material

covered by this Protective Order.

12.3    Filing Protected Material.  Without written permission from the Designating Party

or a court order secured after appropriate notice to all interested persons, a Party may not file in

the public record in this action any Protected Material.  A Party that seeks to file under seal any

Protected Material must comply with this District's Local Rules and CM/ECF Procedures and

any applicable order of this Court.

13.    FINAL DISPOSITION

(a)    Within 60 days after the final disposition of this action, as defined in Section 4,

each Receiving Party must return all Protected Material to the Producing Party or destroy such

material.  As used in this Section, "all Protected Material" includes all copies, abstracts,

compilations, summaries, and any other format reproducing or capturing any of the Protected

Material.  Whether the Protected Material is returned or destroyed, the Receiving Party must

submit a written certification to the Producing Party (and, if not the same person or entity, to the

Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all

the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has

not retained any copies, abstracts, compilations, summaries or any other format reproducing or

capturing any of the Protected Material.

(b)      Information designated "HIGHLY CONFIDENTIAL SOURCE CODE" must be

returned to the Producing Party or destroyed, and each Expert who had access to such materials

must sign a declaration that shall be sent to the Producing Party certifying that:

(1)      to the best of that person's knowledge, all such materials have been

returned to the Producing Party or destroyed; and

(2)      every copy, whether whole or partial, of such materials that exists in

electronic, magnetic, or other machine-readable form has been permanently deleted.

(c)      Notwithstanding Sections 13 (a) and (b), Counsel are entitled to retain an archival

copy of all pleadings, discovery responses, motion papers, trial, deposition, and hearing

transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports,

attorney work product, and consultant and expert work product, even if such materials contain

Protected Material.  Any such archival copies that contain or constitute Protected Material

remain subject to this Protective Order as set forth in Section 4 (DURATION).

*      *      *      *      *

Respectfully submitted,

POTTER ANDERSON & CORROON LLP          SHAW KELLER LLP

By: */s/ Bindu A. Palapura*            By: */s/ Nathan R. Hoeschen*
    David E. Moore (#3983)             John W. Shaw (No. 3362)
    Bindu A. Palapura (#5370)          Nathan R. Hoeschen (No. 6232)
    Brandon R. Harper (#6418)          I.M. Pei Building
    Carson R. Bartlett (#6750)         1105 North Market Street, 12th Floor
    Hercules Plaza, 6th Floor          Wilmington, DE 19801
    1313 N. Market Street              Tel: (302) 298-0700
    Wilmington, DE 19801               jshaw@shawkeller.com
    Tel: (302) 984-6000                nhoeschen@shawkeller.com
    dmoore@potteranderson.com
    bpalapura@potteranderson.com   *Of Counsel:*
    bharper@potteranderson.com
    cbartlett@potteranderson.com   Ajay S. Krishnan
                                   Julia L. Allen
*Of Counsel*:                          Bailey W. Heaps
                                   Reaghan E. Braun
Steven Yovits                          KEKER, VAN NEST & PETERS LLP
Constantine Koutsoubas                 633 Battery Street
KELLEY DRYE & WARREN LLP               San Francisco, CA 94111-1809
333 West Wacker Drive                  Tel: (415) 391-5400
Chicago, IL 60606
Tel: (312) 857-7070                    *Attorneys for Defendant TVision Insights, Inc.*

Clifford Katz
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 808-7800

*Attorneys for Plaintiff The Nielsen Company
(US), LLC*

Dated: May 11, 2022
10139385 / 52358

      IT IS SO ORDERED this <u>11th</u> day of <u>May</u>_____, 2022.


                      <u>*Christopher J. Burke*</u>
                Magistrate Judge Christopher J. Burke

## **EXHIBIT A**

## **ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____ [print or type full name],

of _____ [print or type full address],

declare under penalty of perjury that I have read in its entirety the Stipulated Protective Order

that was issued by the United States District Court for the District of Delaware in the case of *The*

*Nielsen Company (US), LLC v. TVision Insights, Inc.*, C.A. Nos. 1:21-cv-01592-CJB, 1:22-cv-

00057-CJB.  I agree to comply with and to be bound by all the terms of this Stipulated Protective

Order and I understand and acknowledge that failure to so comply could expose me to sanctions

and punishment in the nature of contempt.  I solemnly promise that I will not disclose in any

manner any information or item that is subject to this Stipulated Protective Order to any person

or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the

District of Delaware for the purpose of enforcing the terms of this Stipulated Protective Order,

even if such enforcement proceedings occur after termination of this action.

[Experts reviewing source code only: I will be reviewing source code for the following

patent(s):_____.]

Date:  _____

City and State where sworn and signed:

_____

Printed name:  _____

Signature:  _____