Page 1

              IN THE UNITED STATES DISTRICT COURT

              IN AND FOR THE DISTRICT OF DELAWARE

                                      - - -

The Nielsen Company (US), LLC,  : CIVIL ACTION

                                :

        Plaintiff,              :

                                :

      v                        :

                                :

TVision Insights, Inc.,         :

                                :

        Defendant.              : NO. 1:21-cv-01592-CJB -

                                    - -

                    Wilmington, Delaware

            Tuesday, May 23, 2023 at 11:00 a.m.

                    Markman Hearing

                              - - -

BEFORE:  HONORABLE CHRISTOPHER J. BURKE, U.S.D.C.M.J.

                                    - - -

APPEARANCES:

        POTTER ANDERSON & CORROON

        BY:  BINDU ANN GEORGE PALAPURA, ESQ.

        BY:  ANDREW BROWN, ESQ.

              and

        KELLEY DRYE & WARREN

        BY:  STEVEN YOTIS, ESQ.


              Counsel for Plaintiff


        SHAW KELLER LLP

        BY:  ANDREW E. RUSSELL, ESQ., and

        BY:  NATHAN ROGER HOESCHEN, ESQ.

              Counsel for Defendant

ALSO PRESENT:  Eric Pubentz, Core Legal Concepts


Ellie Corbett Hannum,  Registered Merit Reporter

Page 2

- oOo -

P R O C E E D I N G S

(REPORTER'S NOTE:  The following Markman Hearing was held in Courtroom 2-A, beginning at 11:00 a.m.)

COURT CLERK:  All rise.

THE COURT:  Please be seated.  Good morning.

I would like to thank the parties for their appearance and the court reporter for her services here today.

We will go on the record.  As we do, let me say a few things for the record.  The first is that we are here this morning in two related matters, both involving the same Plaintiff, The Nielsen Company (US), LLC and TVision Insights, Inc.  These are Civil Action Nos. 1:21-1592-CJB and 22-57-CJB.

We are here today for our Markman hearing in the case.  We are going to address four terms.  With that said, let's have counsel for each side identify themselves for the record.

Start first with counsel for the Plaintiff's side, beginning with Delaware counsel.

MS. PALAPURA:  Good morning, Your Honor,

Page 3

Bindu Palapura from Potter Anderson, on behalf of Nielsen.  And with me today is my colleague Andrew Brown from Potter Anderson, and also with us today is Steve Yovits, from Kelley, Drye.  He will be handling the presentation.  And also Eric Pubentz will be helping us with the technology.

THE COURT::  Thank you.  Do the same for counsel for the Defendant's.  Start with Mr. Russell.

MR. RUSSELL:  Good morning, Your Honor, Andrew Russell from Shaw Keller for Defendant TVision and with me is my partner Nathan Hoeschen.

THE COURT::  Welcome.  Thank you.

So before we get started with argument, let's just go over a couple of the ground rules the parties agreed to.  There are four terms the parties asked for, and I granted an hour per side of argument.  We will keep track of the time.  I will try to let you know when you have about 15 minutes left.

The parties have agreed that we are going to address the terms at issue in the order in which they were briefed.  And the Plaintiff's side is going to go first and the Defendant's side will respond, and each side, if they wish, will make rebuttal.  If the sides have slides, I would ask that they provide us with two

Page 4

copies of those.  I will use the screen to follow along, but we will keep copies of the slides and use them as we are addressing the issues later.

And I should also tell you, just for what it's worth, when we were reading the Markman brief, I would say, in the span of things, this brief was one where we came out of it thinking that it was hard to understand at times, and hard to understand, both in terms of the substance of the technology being described, but also how the parties were trying to use the substance of the technology and the patents to articulate why it is they should prevail.  There were a number of terms where I think we came out of it thinking:  "What?  What are they saying?"  Et cetera.

So, just so you know, if it helps you, as you make your presentation, the more you can start by saying, "Judge, look, with regard to this term what I think the dispute is, there's one dispute and here is what it is.  And if you are trying to like visualize exactly how this dispute is playing out in terms of what this invention looks like, this is the way to try to do it," or whatever.

Anything you can do to help make what I think was kind of dense briefing a little easier for us

Page 5

to understand, in terms of the specific disputes in play, and how to best resolve them, would be helpful.

So just to give you that guidance.

Okay.  With all that said, I don't think there's anything further I need to cover.  So we can get started.  I will turn to Plaintiff's counsel to begin. And, Mr. Yovits, I think that's going to be you.

MR. YOVITS:  Good morning, Your Honor. May I approach to hand up my slides?

THE COURT::  You may, thank you.

MR. YOVITS:  Okay.  While I appreciate -- I found it to be very dense and difficult as well, so I think what I would like to do is just spend a few minutes when we start to go over some technical background, and hopefully clear up some of the confusion over the various jargon and terms, because there is a lot of jargon in it.

So starting first with the '889 patent.

THE COURT:  I should say, I think it's particularly difficult in the '889.

MR. YOVITS:  I understand.

THE COURT:  We had addressed the '189 before in another context, and just the nature of the technology I think is a little easier to grasp.

MR. YOVITS:  Much easier.  So with regard

Page 6

to the '889, let's take some basic background.  The basic background is that you can have a sound that is represented by a waveform.  And the waveform will -- the time access is on the bottom, and it just represents how the sound pressure changes over time.  So it rises and falls as time goes on.

THE COURT:  I am thinking of like figures 2 and 3, we have kind of a visual representation of that in the patent, right?

MR. YOVITS:  Yes, Your Honor.

THE COURT:  By the way, in terms of what we are really talking about here, these waveforms that we are seeing, they represent like content of a program, don't they?

MR. YOVITS:  Yes, exactly, Your Honor.  And the whole point is to try to identify them.  There is content coming out of your TV, and the system wants to know what is this person watching.

This is called the Time Domain Representation.  It's sort of the plain representation.  Now, if we imagine a musical instrument that plays just a single note, a pure tone, that tone will be as a sine wave.  And sine waves are regular.  They look like this.  And sine waves have some characteristics that sort of

Page 7

help us identify them.

One of them is the amplitude, which is sort of the height of the peaks.  And here is a terminology issue, amplitude -- sometimes we call it magnitude.  That's sort of the tude words that are similar:  amplitude, magnitude.

And the other thing that relates to amplitude is power.  So amplitude and power are not quite the same thing, but you could calculate one from the other.  So sometimes people interchange them.  Generally, they are considered different things, but you can calculate one from the other.

So one characteristic is amplitude, another characteristic is frequency.  How many times does this pattern repeat in a second?  So this is a two hertz signal, because that signal -- that pattern repeats twice in a second.

And then there's a third characteristic in addition to amplitude and frequency, and that's phase. So this is a zero phase.  What that means is really just keeping track of at what time does our pattern start to repeat.  So here it's a zero phase shift, because our pattern begins at time equals zero.  Now, if we push that over a little bit, then we have a non-zero sum finite

Page 8

phase shift, because the beginning of our pattern is after time equals zero.

So those are the things that we use to characterize a sine wave.  And any wave, it turns out, can be expressed as a sum, any waveform, including that crazy one that we started with, can be expressed as a sum of sine waves.  So this is something that isn't obvious, but Fourier figured this out, that if you have enough sine waves with each amplitude and frequency and phase shifts, you can just add them up.

An example of that might be if you have this blue sine wave and then a red one, you can actually every time -- you can just add the amplitudes and you'd come up with this green one.  And so what we have got here is you have got this green wave, and it's got frequency components that are the two sine waves, the blue sine wave and the red one.

THE COURT:  When you say it's got frequency components, the frequency components that it has got are what?  The components are the red and the green?

MR. YOVITS:  No, so let me clarify.  Thank you.

So if we start out with two sine waves --

Page 9

and sine waves, these are the components -- and we add them up, we get the green.  In other words, you can decompose the green wave into the two components, the red and the blue.

THE COURT:  The green wave is representative in some way of the red and the blue?

MR. YOVITS:  It represents the sum.  So you can take actually -- you can take, for example, the green wave, if you add this amplitude of the red one and this amplitude of the blue one, you will get up here. It's simply at every point adding the red and the blue and you get the green.

THE COURT:  In this picture what would the frequency components be?

MR. YOVITS:  Well, the frequency components would be simply those two -- the characteristics of those sine waves.  So the blue one has an amplitude and a frequency, so that would be one frequency component, and the red one has another amplitude and another frequency.  And then you can put those on a graph.  This is sort of the typical way that you represent frequency components on a graph is with these vertical lines.

THE COURT:  So frequency components are

Page 10

not -- the substance of them aren't limited to just the frequency?

MR. YOVITS:  That's correct.  That's absolutely correct.

Now, most sound waves are too complicated to be able to do it by hand or do it without any help like I did with the red and the blue, most of them require many, many sine waves to add up.  So, fortunately, there is a mathematical process by which you can do that, and it's called a Fourier transform.

Now, there are a number of synonyms for Fourier transform, and they all end with the word transform.  So spectral transform, Fourier transform, frequency domain transform, time domain to frequency domain transform.  They all end in transform.  The idea is that it is a mathematical process that gives you the frequency components of any signal.  Okay?

And in the digital world, what we are going to do is we are going to take samples of the signals because that's how computers work.  Instead of operating in a continuous waveform, we take samples.  And if we are going to do a Fourier transform of a sample signal, in the digital world, then we do what is called a discrete Fourier transform.  It's a type of Fourier

Page 11

transform.

And the thing about the discrete Fourier transform is it's very convenient and computers can do it.  Now, there is one issue with them, and that is that the frequency components that you get out of a DFT, a discrete Fourier transform, do not exactly correspond with underlying frequencies in the time domain signals.

What they do -- so the DFT provides you with a profile of the signal as a whole.  Unfortunately, with the DFT you cannot take a single component and say that component represents certain frequencies in the underlying signal, but it's still useful, as we'll see.

THE COURT:  The spectral transform operation term in the claim, the claims we are going to talk about, an example of that could be a Fourier transform?

MR. YOVITS:  That's right.

THE COURT:  And, basically, in terms of what it looks like, we are taking these squiggly lines up on the screen representing waveforms and we are going to turn it into like a different kind of picture?

MR. YOVITS:  Yes, Your Honor.  I can show you that.

THE COURT:  That's going to be helpful in

Page 12

some way.

MR. YOVITS:  Yes.  For example, we can take samples -- for example, we take a one-second slice of this and then we have a sampling frequency of 32 samples per second.  So if we do 32 samples per second, over this period of one second, we will get 32 samples.  Okay?

And 32 samples, it turns out if you do a DFT, it's a mathematical operation and you end up with 32 frequency components.  Now, another synonym for frequency component for a DFT is a DFT coefficient.  And I actually prefer the term coefficient because it expresses that this is just really a mathematical profile of the signal as a whole.  The term frequency component for DFT can be misleading, but it is used just as often as frequency component.

So you will get these 32 coefficients or frequency components, and they will -- then you can map them out, as you said, with a different kind of picture.  There is component zero through 31.  Now, what do we use a DFT for?  If you can't use it to identify a particular component, like if component 2 doesn't correspond to anything in the underlying signal, then why would you want to use it?

Page 13

Well, the reason you want to use it is because it gives you a picture of the overall signal.  So one of the things that you can use it for is the subject of the patent.  And the subject of the patent is you're making representations of sound waveforms, like whatever is coming out of your TV, and turning them into something that has less data.  We call those signatures.

And so, for example, we can make a signature of this waveform by dividing it up into little pieces called frames.  In this example there are four frames.  And what we can do is take a DFT individually of each one of those frames.  So here we do the DFT of Frame 1 and we identify all the frequency components that are there.  And then we can do a further operation, once we have identified all of those components, then we pick two and do an operation on them.

So in the simplest case, we just pick the first two and compare them.  And we can say, okay, if the first one is greater than the second one then we are going to describe Frame 1.  We are going to have a descriptor of the binary digit 1, for example.

THE COURT:  How many frequency components could there possibly be on a graph?

MR. YOVITS:  Oh, many, many.

Page 14

THE COURT:  We are simplifying it here?

MR. YOVITS:  We are simplifying -- maybe hundreds, thousands.  This is just for ease of looking at it.

Then we can do the same thing with Frame 2 here.  The first frequency is less than -- the first component is less than the second one.  So we have a descriptor bit of zero there for that one.  We do it for Frame 3, Frame 4, and then we end up with this signature that represents that sound waveform of 1001.

And then if we suppose that that 1001 represents the picture on the left, somebody is watching TV, and we want to know what is that?  We send that signature up to a server, and we compare it to signatures that have been created for all these reference videos.  And they have been created in the same way.

And so look at the first one and say, no, not a match to that one.  Look at the second one, second one is not a match.  And then look at the third one, and there's the match, because the signatures have been created in the same way they are going to match.

And that's really the point of this whole exercise is to figure out a way to make a signature that works to do this.

So now with that background, I am hoping that the individual terms are going to be a little bit easier to understand.  The first one is frequency component.  And I have got that in bold blue text there.  Now, I have also highlighted the entire element that it's in.  And the reason that I did that is, one, for context, but also it turns out that that whole element is actually the second term that we are going to be arguing about today.  So the first term and the second term are related.  The second one contains the first one.

And I just want to make sure as we go through this, we have to make sure that the two definitions are consistent with each other because one contains the other.

Okay.  So in this instance the parties agree that the plain and ordinary meaning should apply, but they have a disagreement about what that plain and ordinary meaning is.  Although the disagreement is not as much as you might think.

So Nielsen's proposal is:  "Component of a signal generated by transforming the signal data from the time domain to the frequency domain."  So there's your Fourier transform or spectral transform.  TVision's is: "A single frequency or single band of frequencies."

Page 16

Now, what is interesting is we have had a couple of indications that TVision agrees with Nielsen's proposed construction.  I have to assume what they mean is they agree as far as it goes.

THE COURT:  I don't think it resolves what is at dispute.

MR. YOVITS:  Right.  Exactly.  So I think what they are saying is that they don't think Nielsen's construction is wrong, it just doesn't go far enough.  So they have even gone so far on the bottom there to refer to the agreed meaning of frequency component.  The components are generated by performing this spectral transform operation, which is Nielsen's proposal.

And there's good reason to agree with that, because our definition comes right out of the spec. There's also expert testimony saying that our definition is what one of skill in the art would think.

THE COURT:  Just to step back to the pictures you were using.  We are going to do a spectral transform operation, and we are then going to have a bunch of frequency components.  Those are those little individual dots representing a mathematical --

MR. YOVITS:  The lines, the vertical lines.

Page 17

THE COURT:  The vertical lies with the dots on them, representing a mathematical indication of a portion of a frame of a signal?

MR. YOVITS:  Absolutely.  Exactly right.  Exactly right.

So TVision proposes this descriptive phrase "a single frequency or a band of frequencies."  And I think the most important point here, first of all, there's no support in the spec for it, but the most important point I'm going to make probably all day is that it's unnecessary for the Court to reach this issue.  It just never comes up.

Whether a frequency component represents a single frequency or a band of frequencies, it just doesn't matter.  It never comes up in the claims.  It doesn't come up in the specification with regard to frequency transforms.  It doesn't come up in applying the claims to real-world devices.  It just isn't necessary.  You know, someone with skill in the art knows what a frequency component is.  They know how to obtain it, you do this DFT.  TVision agrees.

And I think the Court should just leave it at that.  There is no reason to wade into the technical complexities of TVision's proposal because it just

doesn't matter.

Now, having said that, I'm going to explain why TVision's proposal is not only unnecessary, but wrong.  So, now, there actually are two ways that you could read TVision's proposal, and it's still not clear to me which one is right.  But both of them -- the first one is -- you could read it to say that a frequency component is a single frequency or a single band of frequencies.

The other way you could read it is that a frequency component represents or corresponds to a single frequency or single band of frequencies.  Either way.  But let's take the first one, that the frequency component is a frequency or band of frequencies.  And as we have talked about, it's not a frequency, it's a coefficient from a Fourier transform.

Remember, each of these coefficients has a magnitude and a phase.  And we talked about that.  And this is Dr. Anderson, TVision's expert, who acknowledges that.  These things contain magnitude and phases, they are not just frequencies.

THE COURT:  I think you said that, when you were describing how we get a frequency component, you are taking into account a number of characteristics of a

signal, one of which is what would be called its frequency, but there would be other characteristics we are taking into account as well in order to generate the various frequency components.

MR. YOVITS:  That's right.

THE COURT:  Is that one of the reasons why their use of the simple word frequency in their construction is something that bothers you?

MR. YOVITS:  Yes, Your Honor.

THE COURT:  You had said the word component should be in there to distinguish what we are talking about as of this term from just a frequency itself.

MR. YOVITS:  Correct, Your Honor.

THE COURT:  I don't think the Defendant, by the end of the briefing, has a big problem with that. It seems like the big problem is you don't like their use of the phrase band of frequencies or frequency components or whatever it is, but bands, this band issue.

MR. YOVITS:  That's right.  We are going to get to that right now, if that's all right.

THE COURT:  Sure.  I will also tell you when I was reading the briefing, I thought what Defendants thought, which is that you were setting things

Page 20

up -- you looked at their construction and you didn't like band of frequencies, what was left was single frequency or, as they say, digital frequency, and that you were somehow saying this should simply represent an individual frequency or frequency component, or whatever it is, and that you were fighting against the idea that it could be more than one, it could be a band.  But, by the end, it almost seemed like you were saying the opposite, which is no, we think it can include all of the frequencies and band in all.  And that's what was confusing.

MR. YOVITS:  I understand.  Let me comment on that.

So, unfortunately, there are a couple of different ways that one can use this term frequency component.  And, frankly, we were confused until we understood what the actual dispute was through the briefing.  Some experts will informally refer to frequency component as a single frequency.  So that's a frequency domain frequency as opposed to an actual real-world frequency.  And that is sometimes what experts mean when they say, oh, a frequency component is a frequency or refers to a frequency.

It is unfortunate that that informal usage

Page 21

kind of seeped into our briefing.  Again, because we really didn't understand what the dispute was.  And so I apologize.  We did create some confusion in the briefing.

THE COURT:  Okay.  Let me try to work it out then.

MR. YOVITS:  Okay.  So let's just kind of assume that, as Your Honor pointed out, that what they are really saying is that the component represents a single frequency or band of frequencies.  Okay?

Again, I just want to say I think the most important point is I just don't think the Court needs to reach this issue, but let's take a look at what these frequency bins are.  We talked about this in the briefing.  This is an example.

Let's take an example where we are going to take a DFT of some underlying time domain signal.  Okay?  We are going to take 5,000 samples.  And as you might remember, if we take 5,000 samples, we are going to get 5,000 coefficients, or what is also called frequency components.  And in the interest of the sample frequency, 50,000 hertz is, for a number of reasons that -- a couple are too complicated for me -- that's the highest frequency that can be present in your underlying signal for this to be a valid process.

Page 22

So you can have zero hertz, 1 hertz, 2 hertz, all the frequencies up to 50,000, but if you have more than that, this isn't going to work and you would need a higher sampling frequency.

So it is mathematically possible to take those 50,000 hertz and divide it up among those 5,000 frequency components.  You can do it mathematically with a DFT.  You can say, okay, Component 0 is going to correspond with the first 10 hertz of that range of zero to 50,000.  You could say Component No. 1 is going to correspond mathematically to the second 10 hertz, and then the next component to the third, and so on, all the way to the last component, 4999, that would correspond to the last 10 hertz in that range.

Now, this is really a mathematical convenience, as I am going to show.  It just is not correct to say that a particular frequency component like, say, Component 2 actually corresponds to the presence of these frequencies, the frequencies in the frequency bin or band, that's where they are getting this band idea from.  It is just not correct to say that Component 2 corresponds to these frequencies in the underlying signal.  This is a mathematical convenience.

But I just want to show how that is the

Page 23

case.  So, first, I want to go to Dr. Anderson's declaration, that's TVision's expert.  And this diagram is a little hard to understand, but what he is trying to get at here is that this is a diagram showing sample frequency Component 4, and it's got a magnitude here of this vertical blue line.  And what he is showing with the red drawing is what frequencies actually contribute to this magnitude of Component 4.  And he is showing here that, yes, there's a big contribution from Bin 4 to the magnitude of Component 4.

But what he is also showing is there are these humps called side loads, and he's drawn them very small, probably smaller than they should be.  But even if you look at them this small, if you add up the contributions from the other bands of frequencies, the other bins, if you stack this one on top of this one, on top of this one, on top of this one, that adds up to a contribution to Component 4 that in many cases exceeds the contribution of 4's own bin to the magnitude.

And this is because of a concept called spectral leakage.  It's always there.  And the problem is that the component just doesn't correspond to a single band of frequencies as TVision has suggested.  It corresponds to all the bands of frequencies.  They all

Page 24

contribute.  And, in fact, sometimes the ones that are not in that, in the bin of the component, contribute more.  Okay?

And then there's another example, which is even more stark, in which -- if you can imagine making a pure tone.  Remember, pure tone is a sine wave.  And so now here we have 1 frequency in the underlying frequency -- in the underlying time domain frequency, 1 frequency.  Let's just say it's somewhere in the 13 bin.  We divided up the frequencies among the bins, and that tone happens to be in Component 13's bin.  We can then make a frequency domain graph of it.  Okay?

And if we look at this, the frequency Component 13 has a large magnitude, and that's because of that pure tone that was in the underlying signal.  But what we see here is that the other components are non-zero, which is surprising, because we would think that if the component actually corresponded to something in the real signal -- for example, if we look at 14, I would look at this and say, oh, Component 14's bin must be well represented in that underlying signal.

THE COURT:  I acknowledge it's because of me, but we are getting off the term a little bit.  Let's try to focus on the parties competing instructions and

Page 25

what it is that they are trying to capture with band, in your view, and what you are trying to capture in your competing construction, which is not band.

So I think what I understand, when we went back to the prior picture, you didn't like band -- we are talking about what's a frequency component.  Now, a frequency component you are telling me is represented by these individual lines with the little circles.

MR. YOVITS:  Yes.

THE COURT:  In this picture by the number 4, No. 4 represents the frequency component.

MR. YOVITS:  Yes.

THE COURT:  Or the blue line above it represents the frequency component.

MR. YOVITS:  Yes.

THE COURT:  They want a frequency component to be defined in part as something that corresponds to a single frequency or a single band of frequencies.  I think you are saying by band of frequencies what you think they mean is the content of what's up here on the screen, but only as to the two circles, the one to the left and the right of 4.  That's the band they are talking about.  And you don't like that because you think what's contributing to the frequency

Page 26

component in blue up here is not just that, quote, band but, in some way, in a way I don't understand, aspects of the other bands that are in this frame, and do to a concept called spectral leakage, which I also don't understand, and so band isn't good because it omits the possibility of contributions from all these other pieces of the whole that's up here on the screen.

Is that kind of what's going on?

MR. YOVITS:  Yes.  With two corrections. Number one, it doesn't neglect the possibility, it neglects the certainty that they are all going to contribute.

And the second correction is this is not what I think, this is what TVision's expert thinks.

THE COURT:  Okay.  But I guess what I am struggling to understand is I don't know that your construction actually addresses in words the issue that they are raising by including band of components or band of frequencies.  If you were to try to address it to say: What is the opposite of band of frequencies?  What is the wording that would actually make sure we capture what we think should be included in what can be a frequency component that is wrongly going off the rails when they use band of frequencies?

Page 27

Does your construction have words like that?

MR. YOVITS:  No, Your Honor, it doesn't, because it's just not necessary.  Our position would be that it doesn't -- when you are doing a DFT, the components really don't correspond to particular frequencies in the underlying time demand signal.  What they do is they give you a profile of the entire signal.  And so that it doesn't correspond to any particular band of frequencies.  It really corresponds to all the frequencies, they all contribute.

THE COURT:  They all contribute to even just one frequency component?

MR. YOVITS:  Yes, Your Honor.  For example, here Component 4 has contributions from, you can see, all of the, all of the bands.  Here there's a larger contribution here in this band, somewhat less in this band, somewhat less in this band, but these are all -- this is the component overlay with the frequencies that contribute to it.

THE COURT:  And is the entirety of what is represented up here, would this be analogous to like a frame?

MR. YOVITS:  This certainly could be, yes.

Page 28

THE COURT:  So your point is everything in a frame contributes to one individual frequency component?

MR. YOVITS:  Yes, Your Honor.

THE COURT:  In some way.

MR. YOVITS:  Yes, Your Honor.

THE COURT:  And you think their definition is bad because it suggests that only a portion of what's in a particular frame contributes to a single individual frequency?

MR. YOVITS:  Yes, Your Honor.  Right. They say a single band, which is just not correct.

THE COURT:  So to put it differently, on page 23 of the claim construction, the other side explained they made a compromise proposal for a construction, which was component of a signal generated, so they use component, to maybe address that concern of yours.  Component of a signal generated by transforming the signal data from the time domain to the frequency domain, which corresponds to a single frequency or single band of frequencies present in signal, aside from leakage.  They are trying to take this leakage out.

I guess, what's wrong with their construction?  What words don't you like and how would

Page 29

you replace those words?

MR. YOVITS:  I don't like any of them because it doesn't correspond really to any particular frequency.  And to say except for leakage is like saying -- it's like the old joke:  "Other than that, Mrs. Lincoln, how was the play?"  That exception swallows up everything.  It's like saying -- well, in any event, it's like saying except this thing that really controls everything.

THE COURT:  So, in your view, you must address -- if you were engaging with their language, you would say to resolve this dispute -- let's assume that I think that there is a dispute here between the parties about the meaning of this term.  If I think that, I will think for my role I need to resolve it, and I need to resolve the dispute through the claim instruction in words that does resolve it.

So assume I am not going to go with the option you don't have to say anything about this.  If that's where I am going, then I have to figure out what words am I going to use that actually get at the dispute we are at.  And if I do that, I'm not sure your construction that you propose, like, is the counterpoint to their band of frequencies or components.  And so what

Page 30

I am trying to tease out is what would be the

counterpoint to it?  And I think part of what you are

saying is whatever the counterpoint it would be, it has

got to account for the concept of leakage because that's

the whole ball game, or very important, or very

significant to the process; is that right?

MR. YOVITS:  Yes.  Here's the issue:  The

reason is because their construction says it corresponds

to something, and my position is it doesn't correspond to

something.  So it's hard for me to replace their language

other than to say it just doesn't belong there.  Okay?  I

suppose the counterpoint to it would be corresponding to

nothing.

THE COURT:  Frequency component

corresponds to nothing?

MR. YOVITS:  Corresponds to no particular

frequency that is in the underlying time domain signal,

rather it corresponds to generally all of the frequencies

that are in there, and sometimes none of them, which is

what I was trying to explain in our second description.

THE COURT:  Okay.

MR. YOVITS:  So I would say, yes, the

counterpoint is it corresponds to -- sometimes

corresponds to all of the frequencies in the underlying

signal, sometimes corresponds to none of the frequencies in the underlying signal.  I guess that would be the counterpoint, but it seems to not really make sense to have anything there.

THE COURT:  Okay.  And I guess, maybe this is why you were trying to explain it, I'm not sure how a frequency component would correspond with nothing in the underlying signal.

MR. YOVITS:  Yes.  And this is what, unfortunately, I was trying to explain it in kind of, sort of, I guess, in a poor way.  But what I am saying here is if you take a pure sine, that's one frequency in the underlying signal, you would expect there to just be one frequency component.  If the frequency component really corresponded to what was in the underlying time domain signal, you would just have that one spike at 13.

But the problem is because of leakage -- and leakage is the thing that stops these components from corresponding to anything.  Because of leakage you get -- all of the other frequency components are non-zero.  And if you thought that those components corresponded to something in the underlying time domain signal, you would be wrong.  You would be wrong, because there isn't anything from those components, just one pure frequency

Page 32

component in 13 is bad.  So sometimes they correspond to nothing, actually nothing.

THE COURT:  Okay.  What more do you want to say about this first term?

MR. YOVITS:  I think I have used up so much of my time that I -- let me just see here.  I am going to leave it there.

THE COURT:  Okay.  Thank you.

Let me hear from the other side and that may crystallize things for us.

MR. RUSSELL:  Your Honor, may I approach to hand up the slides?

THE COURT:  You may.

MR. RUSSELL:  Your Honor, from our perspective, the frequency component, the only dispute is the band of frequencies point that you discussed just now.  They proposed this term originally, frequency component.  And we had the normal meet and confer and discussed what the parties thought it meant.  We said we thought it meant that when you talk to a person skilled in the art, as Mr. Yovits recognized, they use the term frequency.  They don't really use frequency component.  That's sort of the informal way of referring to it.  But we are fine with --

THE COURT:  So for your -- in your original construction, when you use the term frequency, that was kind of like a synonym for frequency component?

MR. RUSSELL:  Yes.  When they discuss what a frequency component is, it's a frequency in the underlying signal.  So in that sense, it's a synonym.  I don't think it's the same exact word, but that's what -- when you talk to a person skilled in the art about this, that's what it means to them.

THE COURT:  You don't mind the word component being in the ultimate construction is your final suggestion?

MR. RUSSELL:  Absolutely.

THE COURT:  It sounds like we are talking about a thing that is just a piece of a larger thing; that is, a frequency component is one representation of one aspect of a larger frame or a larger kind of wavelength that's contained in a frame?

MR. RUSSELL:  Basically, yes.  I don't think this matters for the case, but just as background. So you have got your sound in real life, your TV show that's playing, it has sounds.  Those sounds are made up of multiple frequencies.  And each of those frequencies is a component of the sound.  And if you break down the

Page 34

sound --

THE COURT:  By the way, you said made up multiple frequencies -- Mr. Yovits walked through it and said other things, amplitudes and other aspects, frequency just being one part of what a frequency component represents.  Is that right or wrong?

MR. RUSSELL:  I think it's a matter of perspective.  It is right from some perspectives and wrong from others.  It's time contextual.  I think an example we gave in our brief was:  Does a person have height?  I mean, a person does have height.  They are a person.  But if you ask:  What is a person?  You wouldn't say a human being with a height.  It's more of an aspect of one of the frequencies -- of a frequency component in the signal.

THE COURT:  Okay.  I will let you continue.

MR. RUSSELL:  So from our perspective, we initially -- in the initial negotiations we took the position that when they say frequency component, what they are really referring to is the frequency in the original signal.  And that can be either a single frequency or a single band of frequencies.  Either one can be a component, because, as opposing counsel

Page 35

discussed, when you run an FFT, it uses bins, and the bins correspond to a band of frequencies.  So that's what drove our inclusion of a single frequency or a single band of frequencies.

So that was the dispute at the start of the briefing.  We got their brief and we decided, you know what, we are going to take it out of the, take the load off the Court, and agree to their construction, just with the addition of the dispute that the parties had, which was the last part of our compromise construction.  And that's really the only dispute between the parties, whether it corresponds to a single frequency or a single band of frequencies.

We offered that to them.  They rejected it, talking about leakage.  So then we added something to account for leakage.  And at this point to us, the dispute is wether it can be a band, and that's really the only thing that's left.  Their proposal doesn't address that.  We are not trying to limit it to a band in order to make some non-infringement argument.  The only thing in the case that this is actually relevant to is there's one prior art reference called Haitsma, which wasn't discussed in the brief, but that one if you read it certain ways the frequency component corresponds to a

Page 36

band, but if you read it other ways, it doesn't.  So it may not really be a dispute.

So really we have been trying to come to an agreement about this.  And if there is really a dispute, tease it out so the Court can address it now rather than later.

THE COURT:  In light of what you just said, is it possible that, depending on how the parties later kind of view a particular piece of prior art and maybe this hasn't been worked out yet, that there might not actually be a real dispute in the case, the resolution of the construction for this term would impact?

MR. RUSSELL:  Absolutely, Your Honor.  And I think that's certainly true.  It may never come up again at all.  It may come up if they use that as a reason to oppose our one prior art reference where this is relevant, but, you know, to the extent -- we thought rather than risking waiver, it made more sense to address it now.  We would be okay with their original proposed construction that doesn't address the dispute, as long as the Court is of the view that they have waived the ability to later argue that it's a single frequency or that a single band of frequencies isn't a frequency

Page 37

component.

We are not trying to come up -- to limit the claims here really.  We are just trying to have an accurate discussion -- accurate construction of what a frequency component is.  And we don't think they should be able to preclude us from using frequency component that corresponds to a single band of frequency.

THE COURT:  Let me interrupt to try to understand what we are really fighting about.  The term is frequency component, which I understand to be like a visual representation depicted in the Plaintiff's slides by a line with a circle at the top of it.  And your slide here, 6, with a red line with a circle on top.  Each one of those red lines with a circle at the top is a frequency on top, is a frequency component; is that right?

MR. RUSSELL:  So the red line with the circle -- yes.  Across the bottom are two scales.  The first scale is 0360 and the second zero through something 5,000.  Zero through 60 is the number of the bin.  The frequency components correspond to the bins.  The red line is their magnitude.  So that comes from the amplitude of the frequency in the original signal.

So, yes, those lines are frequency

components and their magnitude that correspond to the bins.  The numbers below are the original frequencies and the original signal.  And so each bin spans a frequency.  So it's not quite right to say -- you know, we have got bin No. 10 up there, it's not quite right to say 10 spans from -- bear with my one second, Your Honor -- so it's not quite right to say that it would go from 9 to 11, it's that 10 corresponds to kind of halfway between each one.  There's a length of frequency that all gets aggregated, which is Plaintiff's term, into 10.  And that spectral power over 10 respects the magnitude of all those frequencies within the signal.

THE COURT:  You have lost me there.  Let's just try to break it down.  Using this slide, I am looking first to figure out, is a frequency component depicted?

MR. RUSSELL:  Yes.

THE COURT:  If so, give me an example.

MR. RUSSELL:  So --

THE COURT:  Like, for example, the No. 10 is up there.

MR. RUSSELL:  Right.

THE COURT:  The line above it, is that a depiction of a frequency component or not necessarily?

Page 39

MR. RUSSELL:  That's the spectral power of the frequency component at Index No. 10.

THE COURT:  Okay.  So the representation of the frequency component up there is just the number 10?

MR. RUSSELL:  It's Bin 10, which corresponds to frequencies -- I can't tell on this chart exactly what it would be, but it would be something like 700 to 900.  So you would look in the original signal, that thing at the top.  If there are any frequencies that span 700 to 900 hertz, those would end up being part of 10, Bin No. 10, and that spectral power is the sum of the magnitude, the amplitude of those frequencies in the top graph in the original time domain audio signal.

THE COURT:  So the number 10 also represents a bin?

MR. RUSSELL:  Yes.

THE COURT:  And is bin a synonym for band, in your view?

MR. RUSSELL:  Pretty much.  A bin -- you know, both parties had experts who went through examples of what -- how you would perform an FFT.  And Plaintiff went through one today.  And that part of his presentation we agree with; we dispute other parts of his

Page 40

presentation.  But when you perform the FFT, you are trying to figure out what the power of each -- for each frequency in the original signal is.  And to do that it has to divide them into bins, just to perform the calculation.  So it's saying what's the power of, in their example, zero to 375 hertz, and then 375 to 750, and so what is the aggregate power of that bin of frequencies, and that's the magnitude of the frequency component.

So the component is those frequencies in the original signal.  And when you run an FFT you get -- that's what draws those out.  I totally agree that it's confusing.  Part of the problem --

THE COURT:  Really, like with any term, there's lots of patents that are technical and confusing, and yet we get through claim construction, because ultimately it's a term.  The term is really just a grouping of words.  And I am trying to figure out what is the definition for the term, the correct one, and where are the disputes and where are the disputes coming from.  And I just feel like, in the parties talking about the lead up to the dispute, I just lose track of the where there that amounts to the dispute or explains it.

I can tell that we are having a dispute

about whether the phrase band of frequencies should be in a construction, but I am having a hard time figuring out what's the alternative to band of frequencies?  What are we really fighting about with regard to band of frequencies in the alternative?

MR. RUSSELL:  Right.

THE COURT:  And I don't know that I even right now am understanding it.  Is there any way you could try to break it down further?

MR. RUSSELL:  I think the problem we have is that we agree with their construction, other than that, we think a frequency component -- we shouldn't be precluded from arguing that a frequency component corresponds to either a single frequency or a single band of frequencies.

THE COURT:  And you think that they don't want you to be able to argue that it corresponds to a single band of frequencies?

MR. RUSSELL:  Exactly.

THE COURT:  They don't want that.

MR. RUSSELL:  Which is what they told us in the meet and confers.  Their construction doesn't say that, but it seems to be a dispute that's going to come up down the line when we talk about the Haitsma

Page 42

reference.

THE COURT:  When we are talking about a band of frequencies, I am picturing a sound wave, and we were breaking a sound wave up into frames, like in one of the Plaintiff's pictures, and the claim talks about taking a frame.

MR. RUSSELL:  A frame is just a couple seconds of a sound.

THE COURT:  So one frame would be a piece of that wave, a couple seconds worth of it?

MR. RUSSELL:  Exactly.

THE COURT:  Okay.  And we are talking about what the term frequency component means, which I think I understand in some way is some type of -- maybe depiction is the wrong word, but it's a thing that represents a piece of this frame?

MR. RUSSELL:  It represents a sound within that frame.  So you could have a note on a piano, a note like a C, D -- actually, a C and a C sharp.  C would be one frequency, and that would be one frequency component.  C sharp would be another frequency component, because the sound that you hear is determined by the frequency and its amplitude, which is more the volume.  So when you run this FFT, you are trying to basically figure out what

Page 43

notes or what sounds are in that span of time.

And what frequency component really means is what sounds are within that span of time.  And we are arguing really about -- I agree it's kind of a silly argument.  Their definition, they said that a frequency component is a coefficient.  Well, coefficient is not in their definition.

They say that it has a magnitude and a spectral power and a phase and none of that is in their definition.

We have been trying to agree with them through this whole process.  The only dispute is whether when you run the FFT multiple notes get combined into a single frequency component.

That's the nature of the sampling. Multiple things in the original signal gets sort of aggregated together, to use Plaintiff's term, and really that's all we are trying to represent here.

So this is their brief at the top.  This is what they said a frequency component is.  And their expert said the exact same thing.  "Any single frequency component is influenced by a lumped-together aggregate information over a bin; and (b) 'leaked' information from all frequencies."  We agree with that.  And that's our

Page 44

proposed compromise construction.

So we don't really understand where the dispute is, other than they don't like the word bin because it's in the Haitsma reference.  So that's where we are.

THE COURT:  Where do you think that leaves me?  What would you do if you were me?  I am trying to determine, is there a dispute about the meaning of the term?  If there's a dispute, what are the parties' competing views about how that dispute should be rectified by way of certain claim language, and then to try to understand what is the dispute between the two?

MR. RUSSELL:  Right.

THE COURT:  I'm not sure if there's a dispute.  I'm not sure if I have two competing pieces of claim language, construction language, and I'm not sure if I did, I would understand how those two pieces differ.

How should I resolve this claim construction dispute?

MR. RUSSELL:  Well, the easy answer is that you should adopt our construction because it's what was in the brief anyway.

THE COURT:  They don't use the phrase band of frequencies?

Page 45

MR. RUSSELL: Right. They say a lumped-together aggregate information over a bin. We would be fine with that.

THE COURT: We know they don't like leakage because there's always leakage and you have to account for it.

MR. RUSSELL: We say, and our experts said that it's uncontested that experts can account for leakage, and they do when they know it's coming and they expect it. The point of the frequency component is to reflects the magnitude, what's in that range of frequency -- to reflect the notes in the original signal or the sounds in the original signal.

THE COURT: Okay.

MR. RUSSELL: And another alternative way the Court could address it is adopt Plaintiff's construction and hold that they're waived from later arguing -- that they waived any further argument that the term is further restricted.

THE COURT: Okay.

So Plaintiff's construction just doesn't address this issue. It leaves it open. We tried to proactively address it, because it seemed to be a dispute among the parties and we didn't want an open argument

later like some reference should be precluded because it uses a band of frequencies.  And that's how we got here.

But if the Court wants to adopt Plaintiff's construction and hold that they've waived, through their briefing and through their argument today, an argument to further restrict the claim term, that would be fine with us too.

THE COURT:  They don't want that.  They don't want me to do that probably.  So I am trying to find compromise.

And so I guess -- I am trying to think if there's another way that I could ask the question that could actually get to the type of material I need to resolve the dispute.  So what do you think -- if you had to quote what you understand to be their real construction in words, that is the antithesis of what you want by way of band of frequencies, what would it look like?

We know that their proposed construction doesn't really get to this issue, the disputed issue. They don't like the words band of frequencies in your construction.  They don't like it because they think it means something that isn't correct.

I am not exactly sure what it means or

what you think it means, but there must be some opposite of it.  There must be something that you're fighting about that can be articulated in words.

Do you have a view of what that would sound like?

MR. RUSSELL:  I think you would have to ask them.  And the reason for that is I got a real sense in their opening brief, they took the position it was a single frequency and couldn't be a band.  Their opening brief didn't say expert testimony.  Their reply brief, they kind of reversed.  They did, from our perspective, a 180 and said, as Your Honor recognized earlier, it can't be a single frequency, it has to be all in the signal because of leakage.

THE COURT:  That may be where you are getting at.  You think now that you understand their argument that the opposite of single frequency -- not the opposite, the counterpoint of single frequency or single band of frequencies is something like all of the frequencies or all of the information in a signal or something like that?  If it is right, if that is what they mean, is that something different than the single frequency or single band of frequencies, and if so, what's the difference?  That's what I am trying to get

Page 48

at.

MR. RUSSELL:  Right.  It's not different than our construction, because our construction talks about leakage.  We are saying persons skilled in the art understand leakage.  They can deal with leakage.  It's a known thing, it's not variable.  When you take the leakage out, then what's left is the band of frequencies.  And that's really the only point we are making is that a frequency component is meant to represent the original sounds within that frequency range.

THE COURT:  What if you didn't take the leakage out?  If you -- by the way, you have to get rid of the "aside from leakage" for the parenthetical.  You have to account for the leakage because the Plaintiff said you have to, and maybe I will agree, I don't know.  If you had to take out aside from leakage, what would you change your construction to read?

MR. RUSSELL:  Doing it on the fly, it would be --

THE COURT:  And I am not holding you to this; I am trying to get a sense of the dispute.

MR. RUSSELL:  It would be what we have now.  It corresponds to a single frequency or single band of frequencies present in the signal, plus influences

Page 49

from other nearby frequencies.

THE COURT:  Would it be any frequency within the frame?

MR. RUSSELL:  I am trying to make sure I am...

THE COURT:  Again, I am not going to hold you to a construction on the fly, I am just trying to get a sense of where you think this is going.

I will give you a second more to think about it.  I think maybe what is happening is if both sides are looking at a piece of this signal, I mean, the claim seems to be talking about a first frame, that's how it breaks up the piece we are talking about.  And it seems like when it comes to a frequency component, the other side is somehow saying that frequency component can draw from anything in this frame, any part of it, any of the frequencies.

And maybe you are saying, yeah, if you account for leakage, yeah, it could.  I wonder if that's true, do we have a dispute?  I don't know.

MR. RUSSELL:  From our perspective, they won't take yes for an answer.  What they outline in their brief is our construction.  The leakage means that, you know, your frequency corresponds, it corresponds

primarily to the range of frequencies, the single band of frequencies that you are targeting, and also has some influence from other frequencies.  And that influence decreases the further you get from the component you are talking about, which is in their chart and our chart, their example.

What you have got is primarily that large tall line is the frequency -- the band of frequencies you are concerned with, because that line represents a band of frequencies, the contribution from a band.  And these other lines are all leakage that are just an artifact of how it was calculated.  So from our perspective you can do this construction many different ways.  What I think we don't agree with would be that you could have a frequency component that corresponds to where the big line is at 1, and then there's another big line at 40, and then another big line at 60, because that doesn't make any sense.

It's always going to be one single band of frequencies that is primarily targeting, and there is always going to be leakage where other frequencies contribute to it.  And that's what we were trying to capture in our compromise construction.

THE COURT:  I just wonder if it could be

Page 51

like corresponds to a single frequency or a single band of frequencies present in a single signal, plus some contribution to the leakage?

MR. RUSSELL:  Yes.

THE COURT:  Or something like that.  I don't know.  I wonder if there's a way to get to what you both are saying.

MR. RUSSELL:  I think that would be fine. We are really not trying to create a non-infringement argument out of this.  I am kind of amazed that they put so much briefing and argument into this term, which we are still talking about.

THE COURT:  Go ahead, if there's anything further you want to say about this term.

MR. RUSSELL:  We got a little bit off of where I was planning to go.  Give me one second.

One point I wanted to make is in their tutorial and in their argument today they offered a lot of technical testimony that's unsupported by expert declaration.  And really I don't think the Court should relay on that other than where the parties agree.  And I think a lot of it was wrong.

I made some notes, but I don't think it makes sense to really spend a lot of time going through

Page 52

it, given the value of this term, but I think a lot of it was incorrect.

THE COURT:  Sure.  And I think, obviously, I can only rely on material in the record --

MR. RUSSELL:  Right.  Exactly.

THE COURT:  -- in order to present my claim construction.  And if there's some aspect of attorney argument today that was meant to help me try to understand the broader context, but isn't a part of the record, I would likely not be relying on that in order to decide these claim construction issues.

MR. RUSSELL:  Right.  So I think that's all we have about frequency component, Your Honor.

THE COURT:  Okay.  Let's see if there's any rebuttal from the other side.

Mr. Yovits.

MR. RUSSELL:  Okay.  I appreciate the difficulty with this.  I certainly have the same kind of difficulty as I am going through it.  I don't want to spend much time because I have already used up most of my time on this one term.  Here is what I want to say --

THE COURT:  I guess maybe -- before you get to that -- I was trying to take like some of the guts of their proposal and try to craft it in a way that

Page 53

seemed to get to what you were getting at, which is, like, look, a frequency component -- we want it to be clear that there can be contributions to it from any frequency in the frame or say we don't want to exclude that.  And so I was proposing something like using their definition which reads "...which corresponds to a single frequency or single band of frequencies present in the signal" and also can incorporate all other frequencies -- can incorporate contributions from all other frequencies in the signal or the frame.  Something like that.

Is anything like that helpful or not?

MR. YOVITS:  Your Honor, I do not think it is.  Just because the problem is these other contributions often exceed.  So the idea is if you say: "Mrs. Lincoln, you know, had a great time, she was watching the play, and there was this other thing that happened:  her husband was shot and killed."  I mean, the point is that overwhelms everything and you can't give a definition to her enjoyment of the play by saying, "Well, she liked the play, but there's also this contribution from this other thing that happened."

THE COURT:  There it sounds like maybe the dispute you are having is the relevant significance of, the potential relevant significance of contributions from

Page 54

leakage as opposed to contributions from the frequency or band of frequencies that the Defendant's side would say is kind of meant to be the primary driver of each frequency component.

MR. YOVITS:  Right, Your Honor.  So our position is that when you are doing -- so, as I tried to make clear but probably didn't, when you are doing a discrete Fourier transform, that's when you use samples. It changes the game.  And what happens is instead of getting components that are going to correspond individually to frequencies that are in the signal, what you are going to get is just a bunch of frequency components that together characterize the whole signal. And so you can't pick one and say:  This one is because of this band in the time domain, and this one is because of the other band.

The way a DFT is used is to get a set of components that together characterize the entire signal. And that's our position.  And so when -- our problem with Defendant's definition is that it tries to give the impression that you could take one of those components and direct it at a specific -- and it says a single band of frequencies, so it corresponds to a single one.

This is because of that prior art

reference.  And my concern is that we are going to have the word band in the construction, and I think that that is meant to use the word band in a way that's much different than that prior art reference.  That's really why I find this matters so much.  It's not why I think it's wrong, but it's why I think it matters so much.

THE COURT:  Okay.  Anything else you want to say?

MR. YOVITS:  No, Your Honor.  That's all.

THE COURT:  Thank you.  Mr. Russell, anything in response to that?

MR. RUSSELL:  So I think it's good to know this is because of the prior art reference.  I think the prior art reference can be read multiple ways where maybe band doesn't matter.

I had two points to make just in response to what opposing counsel said.  The first point is DFTs and FFTs --

THE COURT:  Maybe for the benefit of our court reporter, if you could slow down a little bit.

MR. RUSSELL:  Sorry.

THE COURT:  Please continue.

MR. RUSSELL:  DFTs and FFTs are only two types of frequencies of spectral transformations.  The

claim talks about all types of spectral transformation. Plaintiff talked in their brief about straight Fourier transforms. And when they talked about those, they made it extremely clear that they could correspond to individual frequencies. And they talked nothing about leakage whatsoever.

So I don't think it makes sense to construe the claim in a way that constricts it beyond, constricts it to only DFTs or only whatever type of Fourier transform Plaintiff wants to constrict it to.

Plaintiff's opening brief is extremely clear that, at a minimum, it can correspond to just individual frequencies and their amplitude. And they shouldn't be able to just change their position every time we come up with a new -- we try to agree with them.

And my second point was about leakage. He says that it's everything, everywhere in the whole spectrum, but that's not true. This is their expert's depiction of leakage. And you can see, as their expert said in his declaration, the actual frequency was in that large magnitude here. You can tell, looking at it, where the actual frequency was. The rest of it is leakage. And persons skilled in the art know how to get rid of leakage. So it's not accurate to say -- if it was pure

Page 57

leakage, this would be all over the place.  It wouldn't be just that one big -- it wouldn't be visually apparent where the original frequency was.  There is a correspondence between where the frequency was and what you get from the FFT.  And the only part that doesn't correspond is the leakage.

THE COURT:  What I wrote down is maybe what we are really disputing here, with regard to frequency component, is what is the relevant contribution of leakage.  Does that seem like what is happening to you, that what you are really fighting about is, like, in what way the contribution of leakage to what a frequency component is should be reflected in the definition of the term?

MR. RUSSELL:  Honestly, I think leakage is kind of a sideshow to what we are getting at.  As Plaintiff said, the dispute is there's a prior art reference where the frequency component corresponds to a range of -- a band of frequencies or a single continuous band of frequencies.  They are trying to, I guess, exclude that under their reading of it.

The leakage is just a way for them to say it doesn't correspond to a band of frequencies.  I think it very obviously corresponds to a band of frequencies in

their own depiction and every single depiction that other parties offered in this case, it's obvious where the band of frequencies is and where the leakage is -- you know, they talked about how if you added up every single one of these little dots, it would be greater than the big dot, but you can still tell where the big dot is.  You can still tell where the frequency contribution -- what the magnitude of each component is and where -- what frequencies were in the original signal that contributed to it.  And leakage is just not a big issue to those skilled in the art.

THE COURT:  Okay.  Thank you, Mr. Russell.

All right.  Why don't we move on to our second term, which is the larger identifying term.  I will turn back to the Plaintiff for that.

MR. YOVITS:  Okay.  I am going to try to speed it up, because I am running out of time.

THE COURT:  And I will try to, assuming that the parties, each use all their time, if we go over by a few minutes on each side, I want you to be able to say something about each of the four terms, but I also do want to hold this to roughly what we expected to spend here today.

I will let you continue.

Page 59

MR. YOVITS:  Understood, Your Honor.

Thank you.

So the next term is identifying first frequency component and second frequency component.  And our position here is that the words of the claim define identify.  It says -- if you ask the question:  How do you identify first frequency component and second frequency component?  Well, it says right there in the claim.  You do that by performing a spectral transform operation on the first frame of media samples.

So our position is the plain reading of the claim defines it in there.  It tells you how you do that identification:

I think I am going to go to an analogy here, in the interest of time.  I do want to point out that the plain reading is generally preferred, so if we are going to deviate from the plain meaning, which the claim tells you how to identify, you do it by performing this spectral transform, there needs to be a reason for that.

THE COURT:  Step back.  What I think is happening here -- here is what I think the dispute is.  Let me try it.  I am going to try what I would do if I were you.  If I am actually getting it, which I am not

Page 60

saying that I am, so this may be bad.  But it would be something like:  What we are saying -- so the dispute here is that we are saying that the claim requires you to do a spectral transform operation.  You have seen that. You have seen what that looks like, the results of that. It's like a chart.  It has got those lines.  And we are saying that the way you identify in the claim the first frequency component and the second frequency component is solely, and only, by doing that spectral transform operation, which results in, look, this depiction.

Now, what they are saying is that can't be enough to identify those two components because -- and this is the part I'm not sure of -- but probably, I think, maybe because when you do that operation, it demonstrates or depicts like all the components.  And they are saying, like, the results of a spectral transform operation, which shows a depiction of like all 50,000 components or 10, or however many there are, that can't be enough to just, quote, identify a first and a second, they are all there, but we are saying it is because...

That's what I want from the parties. That's what I need.  When I go back and write this up, this is the -- first, I have to decide what is the

Page 61

dispute, and understand it, then I have to figure out what the right answer is based on what the evidence is. So it's that kind of setting it up -- whatever is on the slides. Whatever was meant to be said before. If you were me, what's the dispute? How is it being articulated? What's the right answer? That's what I need.

Is something like that correct? Is that what is going on here?

MR. YOVITS: Yes, that's exactly what is going on here. And we have this analogy, which I think will clarify things. But you are right, Your Honor. I think they are saying: How can you identify two frequency components, if you identify all of them?

THE COURT: Because the next step in the claim, we have to compare the spectral powers of two, at least two, and I want to know which ones to compare.

MR. YOVITS: Exactly. And our position is you do have to select two, but you don't do it until that next step. You do it in the determining step.

So, if I may.

THE COURT: You may.

MR. YOVITS: If you have this analogy of a victim looking at a lineup through a two-way mirror, the

Page 62

police officer says to the victim, "I want you to identify the two people who robbed you by looking through that two-way mirror."  And the victim complies.  He looks.  He looked through the two-way mirror and he identifies the robbers.  And he says, "The two people that are standing all the way to the left are the two people who robbed me."

Then he says, also, "You know what, I know those other three people.  They didn't rob me, but I know them.  Those are Joe, Frank, and Bill from my neighborhood."  And so what he has done here is he has fulfilled the instructions.  The police officer told him to identify the robbers, and he did identify the robbers.  He also identified the others, but he identified the robbers.

So what ends up happening, though, is it's the next thing, the next thing the police officer says, "I am going to arrest those guys that you just identified.  I am going to arrest the robbers."  That's the further operation.

And that's what requires selecting to the exclusion of others.  You can identify by identifying everybody, but you can't do the next thing without selecting to the exclusion of others.

Page 63

THE COURT:  So what you are saying is the determining step is where the claim selects to the exclusion of others.

MR. YOVITS:  Exactly.

THE COURT:  Did you say that in the briefs?  I'm not even sure that -- I think I am hearing that for the first time.  The selecting to the exclusion of others happens to be the determining step.  If you said it, I never heard it before.

MR. YOVITS:  What that says is I did it very inartfully.  If you would like, I could try --

THE COURT:  That's what you meant?

MR. YOVITS:  It's certainly what I meant.  And it is in there.  And I believe what we said in the brief was it doesn't matter because that step was there anyway.  It's in the determining step where you have to select.

THE COURT:  But the determining step, doesn't it -- so what is it doing, the determining step?  It's comparing the first spectral power and the second spectral power.

MR. YOVITS:  Yes.

THE COURT:  Spectral powers of what?  The spectral powers of the first and second frequency

Page 64

components?

MR. YOVITS:  Yes, Your Honor.

THE COURT:  And then it's determining a first descriptor of the first frame giving a sample based on that comparison.

MR. YOVITS:  Yes.

THE COURT:  So it's doing a comparison of two things.

MR. YOVITS:  Yes, Your Honor.

THE COURT:  It never says that it's identifying the one and the two, it seems like in that step it already knows what the first and the second spectral powers are that it's going to use.  How would it know what those are already?

MR. YOVITS:  Because you have identified all of the frequency components, and you have got a list of them there.  And the second step -- it's just like identifying all of the suspects.  You know who all of them are, but then when you make your arrest, you do your subsequent operation, then you pick two of them to the exclusion of others.

THE COURT:  So I think what you are saying -- and tell me if I am wrong -- what is identifying ... a high performing spectral transform

Page 65

operation means.  It means, yes, the first frequency

component and the second frequency component are

identified in the sense that they are identified just

like every other frequency component in that frame is.

They are all identified.

MR. YOVITS:  Yes, Your Honor.

THE COURT:  But all includes a first and a

second?

MR. YOVITS:  Yes, Your Honor.

THE COURT:  That's what you mean?

MR. YOVITS:  Yes, Your Honor, that's

exactly what I mean.  And I would submit that that's what

the claim language says, you identify it by doing the

operation.

THE COURT:  It's not like you do a

spectral transform operation, and then you have a second

step where the claim requires you -- now I am going to

pick out and highlight 1 and 2, that's the ones I really

care about.  There's no separate only picking those two

and highlighting them or celebrating them or whatever.

It's the identification of the first and the second

component through the spectral transform operation has

the same importance, the same as the identification of

all the other components as well; is that right?

Page 66

MR. YOVITS:  What I was saying is that in the identifying step you identified all of them, so you know what the first and second one are, but you know what all the others are.  And in the determining step, you get rid of all the others.  You say, okay, I am going to do determining now.  I have identified those two, and I am going to use those.  I am going to compare those two.  I have identified all of them, but I am just going to compare those two.

THE COURT:  How do you know which ones of all the components are the first and the second?  Because in the determining step we are looking to the first spectral power and the second spectral power, we know they are associated with the first and second frequency components.  So only two are at play right now.  How do we know which ones we are talking about?

MR. YOVITS:  The point is you can set up a scheme that uses any of them.  For example, we discussed you can take the first two and compare them, or you could say in my scheme I am going to take the first one and the last one.  You can compare any two, but you have to have two that you compare.

THE COURT:  Okay.  I will let you continue.  You are just under 15 minutes.  I will give

Page 67

the parties a few extra minutes at the end.

MR. YOVITS:  I guess the only thing that I really want to say about this is that there's an allegation that the Applicant disclaimed claims in the prosecution history, and I just want to talk about that for a second.

So the argument is that the Applicant made a comment about a prior art reference called the Tewfik reference.  Here is what the Applicant said.  The Applicant said, "Although Tewfik et al. describe working in the frequency domain, Tewfik et al. do not teach or suggest identifying any particular frequency components having respective spectral powers much less determining a first descriptor of a first frame of media samples based on a comparison of the first spectral power and the second spectral power."

And so I would submit here that what the Applicant -- so TVision says that what this means is, well, the Applicant said Tewfik doesn't identify frequency components.  And my position is, if you just say that, you are ignoring the rest of the sentence, which is that it doesn't -- Tewfik doesn't talk about identifying those components and identifying their spectral powers and then comparing it.

Page 68

What's a little confusing here is the phrase much less, and the way it really needs to be read is "and." Okay? Tewfik doesn't teach identifying spectral powers and then comparing them. And the way we know that is by looking at every other reference to Tewfik in the prosecution history. They all say the same thing. I am circling the word "and" there. This is what the Applicant's argument was about Tewfik. It's not that Tewfik didn't identify frequency components, it's that Tewfik didn't identify those components and the powers and then compare them.

THE COURT: I have two questions about this, not about the prosecution history. One is the other side says that your meaning of identifying doesn't really differ from the concept of generally frequency components. That you are using those words interchangeably. And that identifying must mean something additional, because they say you agree that when you perform a spectral transform operation you generate frequency components.

So they say what is the extra add that the word identified provides?

MR. YOVITS: Mr. Pubentz, can we have Slide 50, please.

Page 69

So the issue here is that the second term contains the first.  Okay?  So the definitions have got to be consistent.  So if we look at the second bullet point down there, what the claim language really says is "identifying ... frequency components ... by performing a spectral transform operation."  So what we have suggested for that is generating the frequency component by performing a spectral transform operation.

Frequency component therefore has to mean the thing that is generated by performing a spectral transform operation.  They have to interact that way.

THE COURT:  They are saying generate and identify.

MR. YOVITS:  They are, because the way --

THE COURT:  They are synonyms is what you are saying?  They don't have different meanings.

MR. YOVITS:  Identifying and generating?

THE COURT:  Yes.

MR. YOVITS:  That's correct.  That the way you identify is by performing the spectral transform.  What is performing a spectral transform?  Well, that's generating the components.

THE COURT:  Okay.  And the other question I have is in support of the idea that there must be a

Page 70

separate piece of what this term is conveying that amounts to a separate identification step.  The other side said the portion is columns 16 and 22 in their brief.

In response, you mainly talked about Column 16, you didn't talk about 22.  Column 16, what you were saying was, no, no, no that portion of the spec that they are citing, that's talking about something different.  That's talking about generating descriptors; it's not talking about identifying spectral components. You didn't say much about Column 22.

I guess the question I have for you, as to Column 16 I see where there are parts of that column that say we are going to talk a bit about what it takes to generate descriptors, but I think the other side's point would be, in doing so, like, for example, in lines 30 and 31, there are references to the frequency components that are used in that process in a way that suggest the data is separately identified.

For example, where it says the example method initially select, or identify, select, but I think they think are the same, a first pair of frequency components.

And then in Column 22, it does seem to be

Page 71

this frequency identifier, 908.  And I think the other side is saying that's a thing that specifically identifies like, for example, two frequency components.  That's a piece of this invention.  It goes to show you in this term in dispute there's a separate step of identifying one component and then the next, and are used in making a comparison.  Why is that wrong?

MR. YOVITS:  Your Honor, I believe in that cite in Column 22, it talks about identifying from spectral data.  In other words, from -- it talks about having already done the spectral transform.

THE COURT:  It says -- just for the record, it says, on lines 38 to 40, it says:  "The frequency identifier 908 may be configured to identify one or more frequency pairs from frequency spectrum data in response to a notification from the sample generator."

MR. YOVITS:  So I would submit that obtaining the frequency spectrum data is what the claim identifying step is.

THE COURT:  Okay.  All right.  Mr. Yovits, thank you.

MR. YOVITS:  Thank you.

THE COURT:  I will hear from the other side.

Page 72

MR. RUSSELL:  So unlike the frequency component term, this term actually means something to the parties.  I think it's something that we really need to resolve because it directly results in non-infringement. And just to explain it, we didn't touch on it in the brief, but what -- they have given us infringement contentions.  And like most cases, they are kind of hard to understand, and here especially so because they are based on decompiled code, and we don't have access to the code.

There is some ambiguity, but what they seem to be saying is that we never identify any frequency components other than performing the FFT.  All we do is we take the frequency spectrum and we do a mathematical operation across the entire spectrum.  So we can do -- you know, they accused us of doing a maximum, but it could just as easily be median mode, whatever mathematical operation.  We never pick out individual frequency components.

So they are trying to get that out of the claim so that they can show that we infringe without having to show that we actually identify frequency components.  So that's where the dispute comes up.

THE COURT:  I should say, for the record,

Page 73

when either side tells me some information about how it is that our claim construction disputes might be impacting liability issues down the line, of course, that could be helpful to me to understand why it is they are disputing a particular term.  Obviously, in resolving the dispute, and adopting a claim construction, is not going to be considering it in terms of the liability issue, and I know that's what you were doing reviewing content, solely illustrating it.

MR. RUSSELL:  Absolutely.  We don't think infringement matters in terms of construing it, I just wanted you to know why the construction itself matters.

We agree with Your Honor that what's in Column 22 is really helpful to show what identifying is because --

THE COURT:  Let's walk through it.  Tell me the best part of Column 22 that you think makes it absolutely clear when the claim talks about identifying the first frequency component, let's say, that that must be something more than simply performing a spectral transform operation which happens to plot out all the frequency components on a big chart.

MR. RUSSELL:  Absolutely.  So what I have on the screen here is Figure 10, which is showing the

Page 74

elements that are discussed in Column 22.  And Column 22 talks at first about performing the sliding FFT.  And that's at Column 22, lines 31 to 33.  This, in Plaintiff's view, is the identifying, but Column 22 doesn't use the word identifying here.  And the entire patent never uses the word identifying in relation to performing the FFT.

THE COURT:  I think what you are saying is when this Column 22 refers to the work that the sliding FFT module 906 is doing, you are saying that that kind of links up to the performing a spectral transform operation piece of the claim.

MR. RUSSELL:  Exactly.

THE COURT:  And you are saying it doesn't link up to the identifying a first frequency component ...  a second frequency component part of the claim?

MR. RUSSELL:  Right.  Other than this is a necessary predicate, as the claim recognizes, to picking out a frequency component, first you have to have somewhere to pick it from.

THE COURT:  For you, the way you read the claim, first you perform a spectral transform operation, then there's going to be another step of identifying the two -- not another step, another piece of identifying the

two respective spectral powers that are called for in the claim.

MR. RUSSELL:  Exactly, Your Honor.  That's exactly right.  The claim says by performing a spectral transform operation, and our analogy for that is if you said:  Drop the kids off at school by getting in your car and leaving.  Obviously, there are more steps to it, that's part of dropping the kids off at school, but it's not the entirety.  That's all we are saying here.

THE COURT:  And I guess -- I think you are going to walk me through the rest of the spec, but before we get there, couldn't this just be a scenario where even if you may be right about the import of some of the language in the specification, it just turns out the way they claimed it, they wrote it in a way that's not helpful.  I think the Plaintiff's argument comes back to really that's not what they claimed.  What they claimed was identifying ... by performing a spectral transform operation, and really the only way to read that is the only thing we are doing that's going to amount to identifying is the performing.

And the natural way to read that language -- there was a spec that the EPA had, like, even if the claim doesn't make logical sense, do the words

Page 76

that they used?  There's no way around it.

MR. RUSSELL:  Right.

THE COURT:  You are suggesting a way to get around it.  And you wouldn't say, yeah, but what you think it really means, which is that the spectral transform operation is a necessary predicate, but not the only thing you do when you are identifying.

MR. RUSSELL:  Exactly.  If they wanted to claim a spectral transform operation, they didn't need the word identifying.  Under Plaintiff's interpretation all they are doing is taking identifying and getting it out of the claim so that they can accuse our products.

I don't see this is a situation where we are trying to get around what the claim says.  You know, identifying is a word that means many different things.  And we are just trying to figure out which meaning of identifying they were going for in the claim.

THE COURT:  Would you agree, though, that normally if you see a phrase that says identified by doing so, like identifying a bird by looking through binoculars.  I mean, normally the way you think about it, the whole of the identifying process is going to come from the looking through the binoculars, isn't it?

MR. RUSSELL:  I think that's a great

Page 77

example.  And I think when you identify the bird by looking through the binoculars, you look through the binoculars, you see the bird, you think about the database of birds in your head that you learned from books you read or from classes, and you apply that knowledge to figure out what that bird is.  It's not just looking through the binoculars, it's a whole process of figuring out, based on what you see in the binoculars, what that bird is.

And that's just one example of how using the word by isn't the entire process.

THE COURT:  So in that example you would say in the claim that the thing after the by is an important piece of the whole.

MR. RUSSELL:  Absolutely.

THE COURT:  It's a necessary first step, but it can't possibly be the entirety of the whole.  And to help know that, to help know what's the rest of the whole, the other stuff that amounts to the identifying, you are saying I would look to places like Column 22.

MR. RUSSELL:  Exactly.  So in Column 22, first, it starts with performing the FFT, and then comes the only time the spec uses the word identifying in relationship to a frequency component, which is -- you

Page 78

know, it's throughout Column 22, but the example on the screen here is Column 22 at lines 50 to 55 where the frequency identifier 908, which is a box in the original diagram -- that's that 908 there.  The frequency identifier 908 identifies frequency pairs from the frequency spectrum data in response to a notification from the data analyzer.  It then communicates the indices identifying the frequency components of the pairs to the next box, which is the spectral power value identifier.

So when it's performing the identified communication function, it shows what identification means in the claim, because it's taking out which components you are going to compare.  And that's what they are trying to avoid with their construction.  They think you can just do a mathematical operation across the entire spectrum, and whatever results you get, whatever frequency component, those are the ones.  But that's not what the claim is talking about.

THE COURT:  Mr. Yovits was asked about this portion of the spec, and said, Look, the phrase was the frequency identifier 908 may be configured to identify one or more frequency pairs from frequency spectrum data.  And I think what he was saying is that the reference to frequency spectrum data is the point in

Page 79

the process of performing a spectral transform operation.

MR. RUSSELL:  Exactly.

THE COURT:  And that that's all that it's referring to.  He said simply referring to the fact that we have identified it because we have done it, we have performed that portion.

MR. RUSSELL:  Right.  Exactly.  So what the claim is saying is you have got this list here on the bottom on my slide, which the frequency spectrum.  Both parties agree that's an example of a frequency spectrum.  And you have to figure out, as the claim process describes, which components you are going to compare.  It says you can pick two.  It says they don't have to be consecutive, in Column 16.  It says you can pick them from any location in the spectrum, also in Column 16.  So you have to pick the two or more that you are going to compare.

THE COURT:  But Mr. Yovits said don't worry about that.  We are going to actually select the two that we are going to do the comparison on in the next step of the claim.  What is your response to that?

MR. RUSSELL:  So I agree that was not in the brief, so I haven't had time to think that through, but I think what they are trying to do is say you do your

Page 80

-- you know, conform it to the accused product in the case, which is you do your mathematical operation, and whatever components went into that mathematical operation, those must be the ones we identify.

But it's really not what the claim was going for here.  They were going for you pick what you are going to compare, then you compare it, then you do the same operation on whatever -- you know, you do that for your reference media, and then you do that for whatever you are monitoring, and they are the same thing, they line up.  I think the identifying step is really an important part of that.

THE COURT:  Maybe Column 16 and 22 -- well, Column 22 is what we are talking about.  That must be a reference to one embodiment.

MR. RUSSELL:  Absolutely.

THE COURT:  Maybe it's not a necessary requirement of the claim.  How do I know that the reference to what is happening in that embodiment is required by --

MR. RUSSELL:  It's really a question of what identifying means.  That's the only evidence we have in the spec.  Identifying has many different meanings. We need to know what to a person skilled in the art they

would view identification as meaning in the claim.  And I think the spec means picking these out.  It's not a situation where the spec had multiple embodiments, and some did, and some did not.  This is just an element of the algorithm they set forth for doing theirs.

THE COURT:  What if somebody said, the more natural way to write a claim that would capture what the Defendants really think is going on here is identifying a first frequency component ... by performing a spectral transform operation, and then picking out those two spectral components, to be an "and" there.

Is that a descent argument?

MR. RUSSELL:  I think that's fair, but it cuts both ways in that if all they wanted was for there to be a FFT run, or just a spectral transformation, then they could have just put perform a spectral transformation and not included identifying.

So I think that argument really doesn't -- you know, it affects both parties' positions equally. And I think the specification makes clear which way it was intended to go, which is they intended an identification, and then you compare the identified frequency components.  And I think the prosecution history also makes that clear.

Page 82

THE COURT:  As to Column 16, the other side says:  Don't worry about that, just because that is mainly talking about a general descriptor, that's a separate step.  So it doesn't really say much at all about what the identifying term is.

What's your response to that?

MR. RUSSELL:  As I said earlier, there's only one part in the entire patent that talks about what identification is with relation to frequency components, and that's in Column 22.  And it makes clear that when you are identifying frequency components, you are selecting them, which is exactly what is happening in Column 16.

So Column 22, the only indication in the specification of what identification is that it's a selection process.  And Column 16 is just another portion of the specification that describes that same selection process.

THE COURT:  The part I was reading starting at line 30 of Column 16, the example that initially selects a first pair of frequency components.  In your view, is what's being talked about there as to the pair of frequency components?  I gather you think the pair of frequency components reference is, for example,

Page 83

like frequency component No. 1 and frequency component No. 2 in Claim 1?

MR. RUSSELL:  Exactly.

THE COURT:  And is the selection process that's happening there the equivalent of the identification process that's happening in Column 22?

MR. RUSSELL:  Exactly.  I think the word initially shows that in part.  That's kind of the first step that they are talking about here, and it's the first step that they claimed, the initial identification of the two frequency components by performing the spectral transform.  And, obviously, you have to perform the spectral transform in order to pick the components from the spectrum.

THE COURT:  So any idea that this column is talking more broadly, though, about the process of generating descriptors?  I see the claim goes on to talk about determining a first descriptor.

MR. RUSSELL:  Yep.

THE COURT:  Why wouldn't I conclude that whatever is being said there, starting on line 30, it has to do with generating descriptors and not identifying frequency components?

MR. RUSSELL:  For two reasons.  The one

Page 84

is -- not to rehash it, but I think in Column 20 it makes clear what identifying is, and it's the selection process that's in Column 16.

But, also, there's the fact that what's in Column 16 mirrors what's in the claim overall. And the structure of Column 16 mirrors the structure they have set forth in the claim, where you identify by performing a spectral transform, and in Column 16, you select the components that are -- by performing the spectral transform. And then you compare them to get your descriptors. And it's all set up in exactly the same order in the claim.

And it's clear, at least from my perspective and I think from a person skilled in the art's perspective, that that's what they were trying to get out of the claim.

THE COURT: All right. Mr. Russell, what more do you want to say about that at this time? We did talk about prosecution history. I will say it is often the case that when you look at the prosecution history, especially when there's opposition about what is happening, it can be hard to figure out what did it exactly say. What were they really trying to say? They used a lot of words. Who knows, maybe it was those

Page 85

particular words they were focusing on versus the other.

I mean, here my understanding of your argument, and tell

me if I am wrong, is -- do you think the prosecution

history, is it helpful?  Do you think it supports your

argument?  It's not the main part, though.  The main part

is your analysis of what the claim language means and

supporting this through the specification.

                    MR. RUSSELL:  Absolutely.

                    THE COURT:  Do you think that the

prosecution history snippet amounts to disavowal?

                    MR. RUSSELL:  I think it does amount to

disavowal.  I also think it doesn't really matter whether

if it amounts to disavowal or not.  There's so much in

the spec that supports our construction.  And the case

law, as we set out in our brief, and I am sure Your Honor

is already familiar with, you can consider it, whether it

amounts to disavowal or not.  It doesn't really matter

whether it amounts to disavowal.

                    I think looking at it, the parties agree,

and, you know, it's in the text that the Tewfik reference

described working in the frequency domain and performing

an FFT.  Without a doubt, it performed an FFT, it worked

in the frequency domain.  Our expert opined that anytime

you perform an FFT -- and I don't think Plaintiff would

disagree with this -- you get frequency components having spectral powers.

THE COURT:  So that couldn't be the basis of the distinguishment, because I think you are saying you couldn't have a scenario in which spectral powers weren't included in a frequency component?

MR. RUSSELL:  Exactly.

THE COURT:  It couldn't be saying, in essence, yeah, but those components didn't have spectral powers?

MR. RUSSELL:  Right.  Exactly.  So what we have got on the screen here is the same part the Plaintiff had up.  In distinguishing Tewfik, they said although it describes working in the frequency domain, it does not feature or suggest or identify any particular frequency components having respective spectral powers. And I think that any particular part is helpful, because it shows they are talking about the frequency components, not the fact that they have spectral powers, which all frequency components have if it's of an audible sound.

So I think a person of skill in the art looking at this would say they are distinguishing it because all it does is do the FFT, it doesn't do the identifying stuff.

Page 87

THE COURT:  And my last question:  We talked about how the spectral transform operation, in your view, happens before identification of the two components; is that right?

MR. RUSSELL:  No.

THE COURT:  Or is it part of the larger process?

MR. RUSSELL:  It's part and parcel of the identification process.

THE COURT:  So the spectral transform operation is a part of the identification process.

MR. RUSSELL:  Exactly.

THE COURT:  It's not something that happens, the identification -- the identification happens after a spectral transform operation has been performed, doesn't it?

MR. RUSSELL:  That's true.  The selection -- that is true.  I'm not sure it's really clear in the claim whether it's intended to be part of or not part of the identification.  I don't think it really matters, because I think the claim is clear what is happening.

THE COURT:  To put it differently, the other side says a spectral transform operation occurs, and as part of that operation frequency components are

Page 88

identified in the sense that they are like visible and a piece of the result of this spectral transform operation. I think what you are saying is no.

MR. RUSSELL:  Right.

THE COURT:  There's no identification that is happening as part of the actual performance of the spectral transform operation, it's a separate thing that happens after that.

MR. RUSSELL:  Exactly.

THE COURT:  In identifying it; is that right?

MR. RUSSELL:  Yes, that's exactly right.

THE COURT:  All right.  Anything further, Mr. Russell?

MR. RUSSELL:  They focused on the words "much less" here.  I think the words "much less," you know, are in our favor, because they are saying not only do they not identify -- not only do they not compare anything, they don't even identify anything is really what this boils down to.  That is what much less means here.

They talked about how there were other ways that the patentee distinguished Tewfik.  There's a case that, at the Federal Circuit which we cited in our

Page 89

brief, that says the fact that there are other references in the Tewfik or identified in the prior art reference really doesn't matter as long as they distinguished it this way.

THE COURT:  It wasn't clear that the patentee was distinguishing on both; that, of course, is the question.  Is it clear that the patentee was distinguishing on both, right?

MR. RUSSELL:  Right.  Exactly.  And then I thought it was interesting in their argument that they seemed to agree with the selection of exclusion of others in the other part of their claim, but we haven't really had an opportunity to brief that or anything like that. So I'm not sure what we really can make of that.

I think it shows that our construction is not far off from what identifying means.  That's all I have, Your Honor.

THE COURT:  Okay.  Thank you.  Let me see if there's any rebuttal as to this term.

MR. YOVITS:  Your Honor, no rebuttal.

THE COURT:  All right.  So let's do this. Let's just take a five-minute break to stretch our legs and use the restroom.  The Defendant's side has about 12 minutes left and the Plaintiff's side has about 7 1/2.

Page 90

What I think will probably happen is you will probably use that for term three.  And, if you do, I will give each side an extra five minutes to discuss term four, because I want to have at least some discussion, but I want to stick to the time that the parties suggested, as well.

That will be our plan.  And then we will be out of here probably by 2:15, 2:20.  Let's take a break.

The Court will stand in brief recess.

(A brief recess was taken.)

COURT CLERK:  All rise.

THE COURT:  Please be seated.  Plaintiff's side, you have about 7 1/2 minutes left.

MR. YOVITS:  Okay.  Now we will move to the '189 patent, very quickly.  Mercifully, this is a lot easier to understand than the other one.  As Your Honor will recall, this is a patent that concerns counting the number of people that are in the area of the television set.

And the way that was generally done in the prior art was that a two-dimensional sensor, like a camera, would be placed on the TV and it would take pictures of the area of the living room.  And then that

Page 91

data, those pictures, would then be fed into some data analyzer to try to figure out what parts of those pictures actually correspond to people, and then that would be fed into a counter.

The two-dimensional sensors worked, but only if the conditions were perfect, but not if faces were obscured or if there was a picture of a person on the wall, the two-dimensional sensor wouldn't work.  And so they tried using three-dimensional sensors, which was better.  It would see that there's sort of obscured faces, but it wouldn't work far away.  And so the idea was to just use -- to combine them and use each one in its appropriate distance range.

So data analyzer is the first term.  If we go to 80, please.

And so the dispute really is whether data analyzer is a means-plus-function term, whether it has enough structure to not be treated under 112(6) or whether it's just a non-term that has to be treated as 112(6).

I think that both the claim itself and the specification in part structure to this, and in a couple of ways.  And I will go through them.

THE COURT:  The question is whether POSITA

Page 92

would understand the term to be a reference to sufficiently definite structure.

MR. YOVITS:  Correct.  In light of the claims and specification.

THE COURT:  And I guess in that regard, their expert, I think, flatly says that POSITA would not understand the data analyzer to be a reference to a sufficiently definite structure.

Does your expert flatly say the opposite? Does your expert ever say, no, a POSITA would understand data analyzer to be a reference to a sufficiently definite structure?

MR. YOVITS:  I don't recall exactly what the expert had said.  I believe he said that there are several structures that it could cover, but that there are structures --

THE COURT:  I think in part Moulin -- is it Moulin?

MR. YOVITS:  Moulin.

THE COURT:  Moulin's declaration, paragraphs 62 to 64, that you cite, says that a POSITA wouldn't consider a data analyzer to refer to software, hardware, and firmware structures.

Is that the same thing as saying that a

POSITA would understand it would refer to a sufficiently definite term for construction?

MR. YOVITS:  Probably not.

THE COURT:  But you are going to tell me why there is other evidence that would get there?

MR. YOVITS:  I hope to show you.

THE COURT:  In other words, we are not having a battle of the experts with regard to this term. We are having your view of that over what their expert says no sufficiently definite structure versus what -- first, the claim and specification says.

MR. YOVITS:  Okay.  So, I mean, the first thing is sort of general.  It says in the spec that the data analyzer can be implemented by the programmable processor, ASIC, or something else like that.  So that's some structure.

THE COURT:  I mean, what wouldn't be enough?  You know, if the patent said something like a data analyzer is implemented in, like, any old way you want to implement it, like that wouldn't be enough to constitute sufficiently or reference to sufficiently indefinite structure, would it?

MR. YOVITS:  No.

THE COURT:  So there has got to be a

Page 94

limit, is my point, right?

MR. YOVITS:  Yes.

THE COURT:  There has got to be words that could be used in the patent that wouldn't get you to sufficiently definite structure.

MR. YOVITS:  I understand.

THE COURT:  Even in the computer context, that would be too broad, too all encompassed in basically any structure that performed this function that wouldn't follow.  I guess part of Column 18, it starts out by saying that these analyzers, as well as maybe their subcomponents, can be implemented by hardware, software, firmware or any combination of hardware, software, or firmware.  The other side said in this context that's basically like saying, just about anything that you want.

Is the answer to why it's not so much the use of that phraseology but the further use of -- you just had it up on the screen -- references to, quote, one or more circuits, programmable processors, etc.?

MR. YOVITS:  Yes.  That's part of it, but I think as we go through you will see that there's even more than that.  So that blanket statement is sometimes something that people who write patents sometimes include because they don't want to be squeezed out of

Page 95

infringement by saying, oh, you just said it could be software.

THE COURT:  In the computer context, that statement could be software, firmware, hardware.  It's basically saying just about anything that could make up a computer.

MR. YOVITS:  That's correct.

THE COURT:  And you have just a few minutes.  So let me let you kind of finish up by pointing to what you think is the strongest evidence you have.

MR. YOVITS:  So I think the claim defines data analyzer as something that does recognition analysis.  These analyzers are recognition systems.

THE COURT:  But the claim -- I mean, the recognition analysis is the function, that's the thing it does.  Is there anything about the things that are highlighted up there that tells me something about a sufficiently definite structural class of structures in the claim, in the claim?

MR. YOVITS:  Let's go to this.  There's a Figure 3 in the patent that talks about the 3D data analyzer.  That's the first data analyzer.  Then the 2D analyzer.  Okay?  And then the spec says you can implement that with an XBOX.

Page 96

So if we want something that's really, really definite, it's hard to get more definite than that, a way to implement it through this piece of equipment.

THE COURT:  What you are just pointing to, the language "implemented in connection with an XBOX," did you point to that in your briefing?

MR. YOVITS:  I do not recall, Your Honor.

THE COURT:  I do not remember -- maybe you did.  But I guess that is at least one example you are saying of what would qualify?

MR. YOVITS:  Yes, Your Honor.

THE COURT:  But does the patent put any necessary limits on the structure that would qualify?

MR. YOVITS:  I think the limits then come from the input, output, and connections that are specified in the claim.  So we know from a case that just came out in this district a couple of months ago, the TexasLDPC case, where it was talking about that you don't have 112(6) treatment as long as you have got the inputs and outputs established.  And that could give you structure.

THE COURT:  Sometimes the cases say that and that's why the case is often cited, and I think the

Page 97

general proposition is it can be sometimes helpful in the Step 1 analysis if you have the claim term and you see how the claim term interacts with other components of the invention.  Cases don't always do a great job of saying, like, exactly why that's helpful or when it would be sufficient or when it wouldn't.

But I think your point there is if you look at the claim, when it comes to these terms, these analyzers -- the claim also tells you -- what's the other component that you mentioned that feeds data into it, and what's the component of the invention that the analyzer works with in terms of feeding out the product of that data.

And you think that helps you demonstrate structure in some way?

MR. YOVITS:  Yes.  I think, Your Honor, under the Apple Inc. case and under the TexasLDPC case that's what it says.

THE COURT:  You are out of time.  Is there one other last thing you want to say?

MR. YOVITS:  No, Your Honor.  Thank you.

THE COURT:  Okay.  Thank you.

Let me hear from Defendant's side on this.

MR. RUSSELL:  So, Your Honor, we agree

with what you said earlier that we don't think their expert has really made much of an effort to rebut our expert.  Their point seems to be, Dr. Moulin's point seems to be that some people in some portion of the art used the term data analyzer to refer to something that might have structure.  And I excerpted his Exhibit B up here, and you can see the kind of things that he was relying on.

So the first one "is an online tool that can be used to explore, filter, customize, and visualize federal sentencing data," which has no relevance to anything.

The next one is "Data Analyzer:  Is a process of cleaning the data using analytical tools," and it goes on like that.

Where the things he is pointing to as structure have no connection to what is being done in the claim, the actual function that's claimed.  I think the best case on this is --

THE COURT:  Would it have to?  I mean, isn't the inquiry whether the term, in this case, data analyzer, is a term that a POSITA would understand to be associated with a significantly definite structure or class of structure?  If a POSITA does know of data

analyzer, right?  There can be a number of things, but if it happened in this way, this is the physical description of that event.  I mean, presumably the thing would do what the claim calls the function, but isn't the inquiry just on, does an expert -- can they say one way or the other whether -- could a POSITA say one way or the other whether the words data analyzer amounts to a sufficiently definite structure?

MR. RUSSELL:  Right.  I thought you might ask that, Your Honor.  We cited the WSOU case.  And we cited the District Court opinion, and also Judge Hall's opinion where she addressed exactly that issue.  I can hand it up, if you would like.

THE COURT:  I remember the case and I know it's in your brief.

MR. RUSSELL:  Okay.  The one in our brief is the District Court cite, but the opinion I am going to talk about now is Judge Hall's underlying report recommendation.

THE COURT:  Okay.  Then go ahead and hand it up.  Judge Williamson was the one cited in the brief.

MR. RUSSELL:  Right.

So Judge Hall, on page 8 of 15, she describes how, in the second paragraph, the parties agree

Page 100

that there is structure that performs one of two claimed functions.  So she was looking at an analyzer term, determining whether it was a means-plus-function claim term, just like we are here.  And in WSOU there were two claimed functions.

The parties agreed that there was a structure -- a known structure in the art that performs one of the two claimed functions.  She held that because it only performed one of the two, and not the other one, that the term should be construed as a means-plus-function claim term.

And I think the nice thing about this opinion is it sets out the analysis.  It's not just any structure for anything anywhere, it's a structure to perform what was claimed in the claim.  If data analyzer were used for something that's completely irrelevant to the claim, it's not really relevant here.  It has to be for the claimed function.

THE COURT:  Okay.

MR. RUSSELL:  So they cited a TexasLDPC case.  I don't think that was in the briefing so I'm not sure the parties really talked about that one.

I think this may be all we have.  I am just trying to see if there's anything else I should

mention.

THE COURT:  Let me just follow up with that.  What about, you know, it is the case -- by the way, is Claim 9 the only asserted claim for this patent?

MR. RUSSELL:  Yes, Your Honor.

THE COURT:  In Claim 9 the two data analyzers, we know from the claim that they are executing a recognition analysis using certain data, and data that they get from sensors, I think, right?

MR. RUSSELL:  Right.

THE COURT:  Provided to them by sensors.  And then they are going to spit out the results of that analysis to what?  To another component of the claim, like the counter; is that right?

MR. RUSSELL:  Right.  I believe.

THE COURT:  So I think part of what Plaintiff is saying is relying on cases like Apple, Look, I mean, if you put it up on like a chart, you know, you could see where this piece of the invention, the data analyzer, where it lies and how it interacts with the sensor, how it interacts with the counter.  And that kind of depiction, that kind of mental process where you see how a piece of the whole that in some way helps us with structure, goes to structure.

And you disagree with that in your briefing.  Do you want to go ahead and articulate why you disagree with that kind of assertion?

MR. RUSSELL:  Because a person of skill in the art needs to know what the structure is to determine whether it's infringed.  And I'm not aware of any case, and I don't think Apple does, I would have to go back and look, but I'm not aware of any cases that says simply knowing the relationship between two components is enough, and you don't have to have the structure if you have got the relationship between multiple components.

I think that's part of it, and it's a frequently cited part of it, but there's always something more that actually gives you some kind of structure, where you can say, because this thing is here and this thing has to have this structure, or something along those lines.  Where what we have here, there's no structure at all.  It's purely functional.  And the function is passing the data to the next thing.  One part of the function, that's not a structure.  That's just a part of the function.  It doesn't give a person of skill in the art any meaning for what actually a data analyzer -- what structure it takes, what form it has in the claim.

Page 103

THE COURT:  And what about the other side's citation to -- there are parts of the patent, I guess, that are discussing data analyzers along with other components.  I guess if they put up a portion of Column 19 that provides some potential examples.  And see in some of the figures, there's at least boxes.  So I guess if I were to agree, for example, that this is a means-plus-function claim, and I were looking for structure, I think you say there is no sufficient structure algorithm in the patent that gets you there.

Why would I look past, say, some of the aspects of the specification that seem to describe or touch on or reference the data analyzer, why couldn't they be sufficient, a sufficient reference to the structure?

MR. RUSSELL:  We set it forth in our brief.  And I don't think they dispute it.  So you are talking about Step 2, if the Court construes it, right?

THE COURT:  Right.

MR RUSSELL:  I don't think they dispute it.

THE COURT:  You don't think the Plaintiff even addressed that to a degree?

MR. RUSSELL:  Exactly.  And I think at

this point, I think it's waived because nobody discussed it except us.  And the reason we put forth in the opening brief is it's true that there are some things, there are boxes like Plaintiff pointed to, but there's not enough to actually perform the claims.  We offered expert testimony to say that a person of skill in the art looking at this wouldn't actually be able to figure out what the structure is, because there are so many holes in what is laid out in the specification for performing these claim elements.

They have got parts of it.  And you could maybe guess and fill in other parts, but it's not going to be what was actually defined in the specification.

THE COURT:  Are you -- I know you cited some post-Williamson cases that imply a term that includes the word analyzer is a means-plus-function term. Are you aware of any post-Williamson case that involve the term analyzer that conclude that it isn't a means-plus-function term?

MR. RUSSELL:  No.  I will qualify it with I didn't write the brief, so it's possible there are some out there.  I'm not aware of any post-Williamson cases that determine that it's not a nonce word or a means-plus-function term.

Page 105

THE COURT:  What about in Column 18, there's -- it's the long portion that talks about not only a three-dimensional analyzer but a two-dimensional analyzer and other components of Figures 300 to 302.  It says they can be implemented by hardware, software, firmware and/or any combination of those.  I discussed that with Plaintiff's counsel and you mentioned that in your brief.

Then it goes on to say an example of those could be implemented by one or more circuits, programmable processors, application specific integrated circuits, programmable logic devices, et cetera.

Are those references to possible structural implementations of these things?

MR. RUSSELL:  Definitely -- I'm sorry.  Definitely not.  Those are circuits, which obviously we will talk about in the next term, and those circuits can be used to perform whatever function a person skilled in the art wants to perform.  Sure, it's kind of like they are LEGO blocks, but they are the blocks, they are not the structure that they make.  It's not that use LEGO blocks to build a house, it's just use LEGO blocks.  It doesn't tell you anything about how the functions would be accomplished.

It's not something a person skilled in the art would look at and say, Oh, now I see, you would accomplish this by doing X, Y and Z.  Those are just the circuit that would run it.  The structure, when you are dealing with a software claim, is the algorithm.  And those aren't an algorithm.  Those are just the components that would potentially run parts of the algorithm.

THE COURT:  What would you say if there was a reference to that, algorithms in this patent, that did specifically set out the type of structure that was needed here?  What would it look like?  Obviously, I am asking you about a hypothetical in your view, but what is the kind of content that you expect to see?

MR. RUSSELL:  So it would explain how to perform the functions step by step for the -- how to perform the claim functions step by step.  And I think it's true under the case law that it doesn't have to give the absolute minutia of how the functions are performed.  It doesn't have to be actually code, but it does need to give a person of skill in the art an idea of (a) something they can use to tell whether something is infringed.  And you could -- it needs to be something you could look at it and say, we don't do this or we do do this, and therefore -- you know, "we," being the accused

Page 107

product -- therefore it does or doesn't infringe.

And they don't have anything like that in here.  They just have bits and pieces here and there, without having a whole coherent algorithm.

THE COURT:  All right.  Thank you.  Your side's time is up, as well.

Let's, then, turn to the last term.  And I will give each side five minutes to make its key points about the term beginning in, at least in Claim 9.  Just for the record, the full term is:  "Wherein at least one of the first data analyzer, the second analyzer or the counter is implemented via a logic circuit."

And I think it's the last piece of that term that may be particularly in dispute here.

Mr. Yovits.

MR. YOVITS:  That's right, Your Honor. The dispute really is -- through the meet and confer process, the dispute really is whether that implemented via logic circuit can include implementation via a computer.  So can a logic circuit be a computer?  Nielsen says yes and TVision says, no, it has to be a hard-wired specialized circuit.

And our position is that implemented via a logic circuit does include the implementation via

Page 108

computer, because computers use logic circuits.  And so we have Dr. Anderson, TVision's expert, talking about how logic circuits just use logic gates.  I don't think it's particularly controversial that computers are just logic gates, just collections of them.

We have the specification that says that the data analyzer and counter can be implemented by programmable processors, meaning computers.

THE COURT:  In a computer, what is the logic circuit?  If I were referencing the logic circuit of a computer, is that a reference to its software?

MR. YOVITS:  It's a reference to its processor.

THE COURT:  Its processor that powers the software?

MR. YOVITS:  Yes.  That processes the instruction of the software, that's correct.

THE COURT:  Okay.  Let me let you continue.

MR. YOVITS:  And Figure 7 in the patent, that shows that, you know, that a processor is part of a computer.  You feed in software over there on the right, and then these are all the parts of a computer.

THE COURT:  I guess to make sure we get to

it, a key argument by the other side is they are contrasting Claim 1 and Claim 9.  And they are saying that the patent tells us that when Claim 1 uses the phrase "tangible machine-readable storage medium," what it is telling us is all the components of that claim, that's all software.

It's saying Claim 9 doesn't use that phraseology.  It uses, in part, the phraseology at issue, which includes the logic circuit.  I think what it's suggesting is that that's a contrast.  It's an intentional contrast by the patentee.  The "via a logic circuit," prior to this term in Claim 9 is meant to be saying essentially something other than what we were saying when we said tangible machine-readable storage, i.e., it has to be something other than all software and firmware.

What's your response to that?

MR. YOVITS:  Right.  So, Your Honor, the response is that in the specification in Column 18, it defines what the purely software implementation is.  The purely software implementation is the storage medium, and the storage medium is simply something that holds a computer program.  It's a disk or a thumb drive or something else that holds a program.  That's what the

Page 110

purely software implementation is.  It's the disk.  It's the thing that holds the program.

In contrast, Claim 9 is the apparatus.  It has a logic circuit.  The purely software implementation that Claim 1 is referring to is the thing that holds the program.  That's purely software.  Everything else is not purely software.  And so Claim 9, as a computer, a computer is hardware that runs software.  It's not purely software.  Purely software the spec says, no, that's a disk, that's the thing that holds a computer program.

THE COURT:  You know, in the briefing, the Defendant, I think the centerpiece of the argument was Column 17 And 18, and maybe kind of added it on to this kind of claim differentiation argument that it was making.  I think in your reply piece of your brief, I don't think you mentioned Column 17 or 18.

In other words, they made Column 17 or 18 kind of the heart of their argument.  I'm not sure you even discussed it when you responded.  How come?

MR. YOVITS:  To be honest, Your Honor, I didn't understand the argument.  It did not make enough sense to me to respond to it.  It really did not.  They acknowledge that the purely software implementation is the disk or the thing that holds the program.  And I just

Page 111

didn't quite understand what it would even mean to say that Claim 9 has to be different than that.  Well, Claim 9 doesn't claim the disk or the storage medium, it claims the apparatus.

THE COURT:  So tangible machine-readable storage medium comprising instructions is a reference to a disk?

MR. YOVITS:  Yes, Your Honor.

Such as a storage device or storage disk storing the software.  It's the thing that holds the program.

THE COURT:  But apparatus with logic circuit in Claim 9 can mean --

MR. YOVITS:  Yeah.  It doesn't mean the disk.

THE COURT:  -- the computer processor that runs software?

MR. YOVITS:  Yes, absolutely.  It can't mean the disk.  Claim 9 does not cover the disk or the thing that holds the program, for sure.

THE COURT:  Okay.  Whereas, Defendant wants it to "must mean" like a pre-made logic circuit like you would have with like the circuitry of a chip pre-made to process instructions or something like that?

Page 112

Basically a logic circuit being literally constructed such that it could perform operations.

MR. YOVITS:  Right.  Hardwired so it only has one thing it can do.

THE COURT:  One thing it can do.  Okay. Let's hear from the other side.

MR. RUSSELL:  Your Honor, to address the question about claim differentiation, Claim 1 is not just a disk.  It could be a disk.  It could also be a computer that has this program in memory, or it could be many other things.  And there's also Plaintiff's Claim 14 which is almost the same as Claim 1, but it's a method claim.  And Claim 14 is also a pure software claim. Whereas, in Claim 9 they've added this logic circuit limitation to differentiate it, probably because they were concerned about Section 11 issues.  But this logic circuit limitation is not talking about the CPU in a computer.  And we offered unrebutted expert testimony that it's not talking about that, and that a person of skill in the art would not read it that way.

Their expert offered essentially nothing in response, other than making a kind of irrelevant point about how logic circuits can be programmable.

So we don't think that argument makes any

Page 113

sense at all.  We did refer to how -- in the briefing, we referred to how a computer can have a logic circuit in it, which is true.  We weren't referring to the CPU, but there can be logic circuits within a computer that are doing irrelevant processes to the claim.  It really had nothing to do with what they are talking about here.

THE COURT:  So I think when you look at the phrase "via logic circuit" in this term, do you think that means not a computer?

MR. RUSSELL:  No.  Computer is a really broad term.  It means not software.

THE COURT:  Not software.  And in Claim 1, in contrast, requires what, software?

MR. RUSSELL:  Yeah.  It requires it to be software.  And the same for Claim 14, that it's requiring a standalone computer storage media.  Of it has to be -- our expert articulated some of the differences between software and hardware, in that, hardware is set at the time it's designed and, sure, it can be reprogrammed, you know, redesigned later on, as their expert pointed out, but hardware is set at the time of the design of the circuits and takes less protocol and return electrical impulses.

Whereas, software runs on a general

Page 114

purpose PC.  It's stored in memory.  It's a set of instructions.  The general purpose processor can pull those instructions from memory and run them.

So to a person of skill in the art, it's a very different thing to have something run via a logic circuit, which is having the circuitry.  It could be within a computer or -- you know, lots of things are computers.  It could be any circuitry running the logic with the process versus having the software doing it by pulling it from memory and running it through a general purpose processor.

THE COURT:  But you did acknowledge that even a purely software data limitation would involve the use of a logic circuit.

MR. RUSSELL:  Right.  All computers have them.  My car has a logic circuit, toasters have logic circuits.  Logic circuits are everywhere.

THE COURT:  This particular type of logic circuit that's at issue here?

MR. RUSSELL:  Not quite.  Our point is the thing they are claiming, the data analyzer has to be performed by the logic circuit.  You know, as we put forth in our construction, we said where is the logic of at least one of the three things they talk about is

Page 115

implemented in the circuitry of the logic circuit.  So it's the logic circuit that is actually doing the thing, not that you have some peripheral logic circuit that has relevance to the claims that also happens to be in the computer.

THE COURT:  So you would frame, like, if this step was not via logic circuit but via software, that would be software that is run by a processor which happens to have a logic circuit in it, or not?  Where does the logic circuit show up in the computer?

MR. RUSSELL:  There can be many.  A logic circuit is really anything that is implemented via circuitry that performs logic.  So I could probably name a dozen places in a computer where there might be a logic circuit, but it's not the things that is running these processes that are claimed -- unless you design it to be.

THE COURT:  I guess in Claim 1, the thing that runs the -- the thing that performs the relevant steps.

MR. RUSSELL:  Right.

THE COURT:  Is --

MR. RUSSELL:  Is the software, which is stored in the memory, and pulled off the memory and run by the central processing unit in the computer, which is

Page 116

all in our expert testimony, which is unrebutted.  It pulls the software off the disk and runs it.  That computer can run any software.  It can run your web browser, your operating system.

A logic circuit is something else.  A logic circuit is something that's designed to have circuitry that performs a specific function.  It receives electrical impulses, does that function, and returns some kind of result normally.  It's not pulling code off a disk and running it.

THE COURT:  Okay.  All right.  Thank you.

MR. RUSSELL:  Can I make one more point real quick?  I'm not sure if I have 30 seconds left.

THE COURT:  Sure.  Go ahead.

MR. RUSSELL:  The claim itself says that there are these three things, at least one of which is implemented via a logic circuit.  That implies that there has to be some difference between being implemented via a logic circuit and not.  Like one thing implemented via a logic circuit and the other two might not.  If, as they say, all software is implemented by a logic circuit, then you couldn't have at least one, it's always going to be all three.  That's the last point I wanted to make.

THE COURT:  All right.  Thank you, both

Page 117

sides.  You have had your time.  I will take the matter under advisement.  I appreciate counsel's arguments today, helping me go through this dense set of patents. And I will try to get you a decision as soon as I can.

With all that said, unless there's anything further procedurally that we need to take up, we'll adjourn.  Again, safe travels to all folks, and I appreciate all the argument today.

With that the Court will stand in recess. Thank you.

(The hearing concluded at 1:40 p.m.)

Page 118

CERTIFICATE

I do hereby certify that the foregoing Markman hearing was taken before me, pursuant to notice, at the time and place indicated; that the statements of participants were correctly recorded in machine shorthand by me and thereafter transcribed under my supervision with computer-aided transcription; that the transcript is a true record of the statements made by the participants; and that I am neither of counsel nor kin to any party in said action, nor interested in the outcome thereof.

WITNESS my hand and official seal this 30th day of May A.D. 2023.

_____

Notary Public

**[& - able]**

| & | | | |
|---|---|---|---|
| **&** | | | |
| **&** 1:15,17 | | | |

**0**

**0** 22:8
**011592** 1:8
**0360** 37:19

**1**

**1** 13:13,20,21
22:1,10 24:7,8
50:16 65:18
83:1,2 97:2
109:2,3 110:5
112:8,12
113:12 115:17
**1/2** 89:24 90:14
**10** 22:9,11,14
38:5,5,8,10,11
38:20 39:2,5,6
39:12,12,15
60:18 73:24
**1001** 14:10,11
**11** 38:7 112:16
**112** 91:18,20
96:20
**12** 89:23
**1208** 118:16
**13** 24:9,14
31:16 32:1
**13's** 24:11
**14** 24:19
112:11,13
113:15
**14's** 24:20

**15** 3:18 66:24
99:23
**16** 70:3,6,6,13
79:14,15 80:13
82:1,13,16,20
84:3,5,6,8
**17** 110:13,16,17
**18** 94:10 105:1
109:19 110:13
110:16,17
**180** 47:12
**189** 5:21 90:16
**19** 103:5
**1:21** 1:8
**1:21-1592** 2:17
**1:40** 117:11

**2**

**2** 2:4 6:8 12:22
14:5 22:1,18
22:22 65:18
83:2 103:18
**20** 84:1
**2023** 1:10
118:15
**22** 70:3,6,11,24
71:9 73:14,17
74:1,1,3,4,9
77:20,21 78:1
78:2 80:13,14
82:10,14 83:6
**22-57** 2:17
**23** 1:10 28:14
**2:15** 90:8
**2:20** 90:8

**2d** 95:22

**3**

**3** 6:8 14:9
95:21
**30** 70:16 82:20
83:21 116:13
**300** 105:4
**302** 105:4
**30th** 118:14
**31** 12:20 70:17
74:3
**32** 12:4,5,6,8,9
12:17
**33** 74:3
**375** 40:6,6
**38** 71:13
**3d** 95:21

**4**

**4** 14:9 23:5,8,9
23:10,18 25:11
25:11,22 27:15
**4's** 23:19
**40** 50:16 71:13
**4999** 22:13

**5**

**5,000** 21:17,18
21:19 22:6
37:20
**50** 68:24 78:2
**50,000** 21:21
22:2,6,10
60:18
**55** 78:2

**6**

**6** 37:13 91:18
91:20 96:20
**60** 37:20 50:17
**62** 92:21
**64** 92:21

**7**

**7** 89:24 90:14
108:20
**700** 39:9,11
**750** 40:6

**8**

**8** 99:23
**80** 91:15
**889** 5:17,19 6:1

**9**

**9** 38:7 101:4,6
107:9 109:2,7
109:12 110:3,7
111:2,3,13,19
112:14
**900** 39:9,11
**906** 74:10
**908** 71:1,14
78:3,4,5,21

**a**

**a.d.** 118:15
**a.m.** 1:10 2:5
**ability** 36:23
**able** 10:6 37:6
41:17 56:14
58:20 104:7

**[above - analytical]** Page 2

**above** 25:13 38:23

**absolute** 106:18

**absolutely** 10:4 17:4 33:13 36:14 73:10,18 73:23 77:15 80:16 85:8 111:18

**access** 6:4 72:9

**accomplish** 106:3

**accomplished** 105:24

**account** 18:24 19:3 30:4 35:16 45:6,8 48:14 49:19

**accurate** 37:4,4 56:24

**accuse** 76:12

**accused** 72:16 80:1 106:24

**acknowledge** 24:22 110:23 114:12

**acknowledges** 18:19

**action** 1:4 2:16 118:12

**actual** 20:17,20 56:20,22 88:6 98:18

**actually** 8:12 9:8 12:11 15:7 18:4 22:18 23:7 24:18 26:17,21 29:21 32:2 35:21 36:11 42:19 46:13 59:24 72:2,22 79:19 91:3 102:14,22 104:5,7,13 106:19 115:2

**add** 8:10,13 9:1 9:9 10:8 23:14 68:21

**added** 35:15 58:4 110:13 112:14

**adding** 9:11

**addition** 7:19 35:9

**additional** 68:18

**address** 2:19 3:20 26:19 28:17 29:11 35:18 36:5,19 36:21 45:16,22 45:23 112:7

**addressed** 5:21 99:12 103:23

**addresses** 26:17

**addressing** 4:3

**adds** 23:17

**adjourn** 117:7

**adopt** 44:21 45:16 46:3

**adopting** 73:6

**advisement** 117:2

**affects** 81:19

**aggregate** 40:7 43:22 45:2

**aggregated** 38:10 43:17

**ago** 96:18

**agree** 15:16 16:4,14 35:8 39:24 40:12 41:11 43:4,11 43:24 48:15 50:14 51:21 56:15 68:18 73:13 76:18 79:10,22 85:19 89:11 97:24 99:24 103:7

**agreed** 3:15,19 16:11 100:6

**agreement** 36:4

**agrees** 16:2 17:21

**ahead** 51:13 99:20 102:2 116:14

**aided** 118:9

**al** 67:10,11

**algorithm** 81:5 103:10 106:5,6 106:7 107:4

**algorithms** 106:9

**allegation** 67:4

**alternative** 41:3,5 45:15

**amazed** 51:10

**ambiguity** 72:11

**amount** 75:20 85:11

**amounts** 40:23 70:2 77:19 85:10,13,17,18 99:7

**amplitude** 7:2 7:4,6,8,8,13,19 8:9 9:9,10,18 9:20 37:23 39:13 42:23 56:13

**amplitudes** 8:13 34:4

**analogous** 27:22

**analogy** 59:14 61:11,23 75:5

**analysis** 85:6 95:13,15 97:2 100:13 101:8 101:13

**analytical** 98:14

**[analyzer - band]**

analyzer 78:7 91:2,14,17 92:7,11,22 93:14,19 95:12 95:22,22,23 97:11 98:5,13 98:22 99:1,7 100:2,15 101:20 102:23 103:13 104:16 104:18 105:3,4 107:11,11 108:7 114:21

analyzers 94:11 95:13 97:9 101:7 103:3

anderson 1:15 3:1,3 18:19 108:2

anderson's 23:1

andrew 1:16,20 3:2,10

ann 1:15

answer 44:20 49:22 61:2,6 94:16

antithesis 46:16

anytime 85:23

anyway 44:22 63:16

apologize 21:3

apparatus 110:3 111:4,12

apparent 57:2

appearance 2:10

appearances 1:14

apple 97:17 101:17 102:7

applicant 67:4 67:7,9,10,18,19

applicant's 68:8

application 105:11

apply 15:16 77:5

applying 17:17

appreciate 5:11 52:17 117:2,8

approach 5:9 32:11

appropriate 91:13

area 90:19,24

argue 36:23 41:17

arguing 15:8 41:13 43:4 45:18

argument 3:13 3:16 35:20 43:5 45:18,24 46:5,6 47:17 51:10,11,18

52:8 67:7 68:8 75:16 81:12,18 85:2,5 89:10 109:1 110:12 110:14,18,21 112:24 117:8

arguments 117:2

arrest 62:18,19 64:19

art 16:17 17:19 32:21 33:8 35:22 36:9,17 48:4 54:24 55:4,13,14 56:23 57:17 58:11 67:8 80:24 86:21 89:2 90:22 98:4 100:7 102:5,22 104:6 105:19 106:2 106:20 112:20 114:4

art's 84:15

articulate 4:11 102:2

articulated 47:3 61:6 113:17

artifact 50:11

asic 93:15

aside 28:21 48:13,16

asked 3:16 78:19

asking 106:12

aspect 33:17 34:13 52:7

aspects 26:2 34:4 103:12

asserted 101:4

assertion 102:3

associated 66:14 98:23

assume 16:3 21:7 29:12,18

assuming 58:18

attorney 52:8

audible 86:20

audio 39:14

avoid 78:14

aware 102:6,8 104:17,22

**b**

b 43:23 98:6

back 16:18 25:5 58:15 59:21 60:23 75:16 102:7

background 5:14 6:1,2 15:1 33:20

bad 28:8 32:1 60:1

ball 30:5

band 15:24 17:7,14 18:8 18:12,14 19:18

**[band - c]** Page 4

19:19 20:2,7
20:10 21:9
22:20,21 23:23
25:1,3,5,18,19
25:23 26:1,5
26:18,18,20,24
27:9,17,18,18
28:12,21 29:24
32:16 34:23
35:2,4,13,17,19
36:1,24 37:7
39:18 41:1,3,4
41:14,18 42:3
44:23 46:2,17
46:21 47:9,19
47:23 48:7,23
50:1,8,9,10,19
51:1 53:7 54:2
54:15,16,22
55:2,3,15
57:19,20,23,24
58:2
**bands** 19:19
23:15,24 26:3
27:16
**based** 61:2 64:4
67:14 72:9
77:8
**basic** 6:1,1
**basically** 11:18
33:19 42:24
94:8,15 95:5
112:1
**basis** 86:3

**battle** 93:8
**bear** 38:6
**beginning** 2:4
2:23 8:1 107:9
**begins** 7:23
**behalf** 3:1
**believe** 63:14
71:8 92:14
101:15
**belong** 30:11
**benefit** 55:19
**best** 5:2 73:17
98:19
**better** 91:10
**beyond** 56:8
**big** 19:16,17
23:9 50:15,16
50:17 57:2
58:5,6,10
73:22
**bill** 62:10
**bin** 22:20 23:9
23:19 24:2,9
24:11,20 37:20
38:3,5 39:6,12
39:16,18,20
40:7 43:23
44:3 45:2
**binary** 13:21
**bindu** 1:15 3:1
**binoculars**
76:21,23 77:2
77:3,7,8
**bins** 21:13
23:16 24:10

35:1,2 37:21
38:2 40:4
**bird** 76:20 77:1
77:3,6,9
**birds** 77:4
**bit** 7:24 14:8
15:2 24:23
51:15 55:20
70:14
**bits** 107:3
**blanket** 94:22
**blocks** 105:20
105:20,22,22
**blue** 8:12,17
9:4,6,10,11,17
10:7 15:4 23:6
25:13 26:1
**boils** 88:20
**bold** 15:4
**books** 77:5
**bothers** 19:8
**bottom** 6:4
16:10 37:18
79:9
**box** 78:3,9
**boxes** 103:6
104:4
**break** 33:24
38:14 41:9
89:22 90:9
**breaking** 42:4
**breaks** 49:13
**brief** 4:5,6
34:10 35:6,23
43:19 44:22

47:8,10,10
49:23 56:2,11
63:15 70:4
72:6 79:23
85:15 89:1,13
90:10,11 99:15
99:16,21
103:17 104:3
104:21 105:8
110:15
**briefed** 3:21
**briefing** 4:24
19:16,23 20:18
21:1,3,14 35:6
46:5 51:11
96:7 100:21
102:2 110:11
113:1
**briefs** 63:6
**broad** 94:8
113:11
**broader** 52:9
**broadly** 83:16
**brown** 1:16 3:2
**browser** 116:4
**build** 105:22
**bullet** 69:3
**bunch** 16:21
54:12
**burke** 1:13

| c |
| --- |

**c** 2:2 42:19,19
42:19,19,21
118:1,1

**[calculate - claim]**                                                    Page 5

| | | | |
|---|---|---|---|
| calculate 7:9,12 | celebrating 65:20 | circles 25:8,22 | civil 1:4 2:16 |
| calculated 50:12 | centerpiece 110:12 | circling 68:7 | cjb 1:8 2:17,17 |
| calculation 40:5 | central 115:24 | circuit 88:24 106:4 107:12 | claim 11:14 28:14 29:16 |
| call 7:4 13:7 | certain 11:11 35:24 44:11 101:8 | 107:19,20,22 107:24 108:10 | 40:16 42:5 44:11,16,18 |
| called 6:19 10:10,23 13:10 19:1 21:19 23:12,20 26:4 35:22 67:8 75:1 | certainly 27:24 36:15 52:18 63:13 | 108:10 109:9 109:12 110:4 111:13,22 112:1,14,17 113:2,8 114:6 114:14,16,19 | 46:6 49:12 52:7,11 56:1,8 59:5,9,12,18 60:3,7 61:16 63:2 65:13,17 |
| calls 99:4 | certainty 26:11 | 114:22 115:1,2 | 69:4 71:18 |
| camera 90:23 | certify 118:4 | 115:3,7,9,10,12 | 72:21 73:2,6 |
| capture 25:1,2 26:21 50:23 81:7 | cetera 4:14 105:12 | 115:15 116:5,6 116:17,19,20 116:21 | 73:18 74:12,16 74:18,22 75:2 75:4,24 76:9 |
| car 75:6 114:16 | change 48:17 56:14 | circuitry 111:23 114:6,8 | 76:12,14,17 77:13 78:12,18 |
| care 65:19 | changes 6:5 54:9 | 115:1,13 116:7 | 79:8,11,21 |
| case 2:19 13:17 23:1 33:20 35:21 36:11 58:2 80:2 84:20 85:14 88:24 96:17,19 96:24 97:17,17 98:19,21 99:10 99:14 100:21 101:3 102:6 104:17 106:17 | characteristic 7:13,14,18 | circuits 94:19 105:10,12,16 105:17 108:1,3 112:23 113:4 113:22 114:17 114:17 | 80:5,18 81:1,7 83:2,17 84:5,7 84:12,16 85:6 87:19,21 89:12 91:21 93:11 95:11,14,19,19 96:17 97:2,3,8 97:9 98:18 99:4 100:3,11 100:15,17 101:4,4,6,7,13 |
| | characteristics 6:24 9:17 18:24 19:2 | | |
| | characterize 8:4 54:13,18 | citation 103:2 | |
| | chart 39:7 50:5 50:5 60:6 73:22 101:18 | cite 71:9 92:21 99:17 | 102:24 103:8 104:10 106:5 |
| cases 23:18 72:7 96:23 97:4 101:17 102:8 104:15 104:22 | chip 111:23 | cited 88:24 96:24 99:10,11 99:21 100:20 102:13 104:14 | 106:16 107:9 109:2,2,3,5,7 |
| | christopher 1:13 | | |
| | circle 37:12,13 37:14,18 | citing 70:8 | 109:12 110:3,5 |

**[claim - component]**

110:7,14 111:2
111:2,3,13,19
112:8,8,11,12
112:13,13,13
112:14 113:5
113:12,15
115:17 116:15
**claimed** 75:15
75:17,17 83:10
98:18 100:1,5
100:8,15,18
115:16
**claiming**
114:21
**claims** 11:14
17:15,18 37:3
67:4 92:4
104:5 111:3
115:4
**clarify** 8:22
61:12
**class** 95:18
98:24
**classes** 77:5
**cleaning** 98:14
**clear** 5:15 18:5
53:3 54:7 56:4
56:12 73:18
81:20,24 82:10
84:2,13 87:18
87:21 89:5,7
**clerk** 2:6 90:12
**code** 72:9,10
106:19 116:9

**coefficient**
12:11,12 18:16
43:6,6
**coefficients**
12:17 18:17
21:19
**coherent** 107:4
**colleague** 3:2
**collections**
108:5
**column** 70:6,6
70:11,13,13,24
71:9 73:14,17
74:1,1,3,4,9
77:20,21 78:1
78:2 79:14,15
80:13,14 82:1
82:10,13,14,16
82:20 83:6,15
84:1,3,5,6,8
94:10 103:5
105:1 109:19
110:13,16,17
**columns** 70:3
**combination**
94:13 105:6
**combine** 91:12
**combined**
43:13
**come** 8:14
17:16,17 36:3
36:15,16 37:2
41:23 56:15
76:22 96:15
110:19

**comes** 16:15
17:12,15 37:22
49:14 72:23
75:16 77:22
97:8
**coming** 6:17
13:6 40:20
45:9
**comment** 20:12
67:8
**communicates**
78:7
**communication**
78:11
**company** 1:4
2:15
**compare** 13:18
14:14 61:16,17
66:7,9,19,21,22
68:11 78:13
79:12,17 80:7
80:7 81:22
84:10 88:18
**comparing**
63:20 67:24
68:4
**comparison**
64:5,7 67:15
71:7 79:20
**competing**
24:24 25:3
44:10,15
**completely**
100:16

**complexities**
17:24
**complicated**
10:5 21:22
**complies** 62:3
**component**
9:19 11:10,11
12:11,14,16,20
12:22,22 14:7
15:4,20 16:11
17:13,20 18:8
18:11,14,23
19:11 20:5,16
20:19,22 21:8
22:8,10,12,13
22:17,18,22
23:5,8,10,18,22
24:2,11,14,18
24:20 25:6,7
25:11,14,17
26:1,23 27:13
27:15,19 28:3
28:16,17,18
30:14 31:7,14
31:14 32:1,15
32:18,22 33:3
33:5,11,16,24
34:6,14,20,24
35:24 37:1,5,6
37:10,15 38:15
38:24 39:2,4
40:9,10 41:12
41:13 42:13,20
42:21 43:2,6
43:14,20,22

**[component - construe]** Page 7

45:10 48:9 49:14,15 50:4 50:15 52:13 53:2 54:4 57:9 57:13,18 58:8 59:4,4,7,8 60:8 60:8 65:2,2,4 65:22 69:7,9 71:6 72:2 73:19 74:15,16 74:19 77:24 78:17 81:9 83:1,1 86:6 97:10,11 101:13

**components** 8:16,19,19,20 9:1,3,14,16,22 9:24 10:17 11:5 12:10,18 13:13,15,22 16:12,21 19:4 19:18 21:20 22:7 24:16 26:18 27:6 29:24 31:18,20 31:21,24 37:21 38:1 54:10,13 54:18,21 60:12 60:15,18 61:14 64:1,16 65:24 66:11,15 67:12 67:20,23 68:9 68:10,16,20 69:5,22 70:10

70:17,23 71:3 72:13,19,23 73:22 78:8,13 79:12 80:3 81:11,23 82:9 82:11,21,23,24 83:11,13,23 84:9 86:1,9,16 86:18,20 87:4 87:24 97:3 102:9,11 103:4 105:4 106:6 109:5

**comprising** 111:6

**compromise** 28:15 35:10 44:1 46:10 50:23

**computer** 94:7 95:3,6 107:20 107:20 108:1,9 108:11,22,23 109:23 110:7,8 110:10 111:16 112:9,18 113:2 113:4,9,10,16 114:7 115:5,10 115:14,24 116:3 118:9

**computers** 10:20 11:3 108:1,4,8 114:8,15

**concept** 23:20 26:4 30:4 68:15

**concepts** 1:23

**concern** 28:17 55:1

**concerned** 50:9 112:16

**concerns** 90:18

**conclude** 83:20 104:18

**concluded** 117:11

**conditions** 91:6

**confer** 32:18 107:17

**confers** 41:22

**configured** 71:14 78:21

**conform** 80:1

**confused** 20:16

**confusing** 20:11 40:13,15 68:1

**confusion** 5:15 21:3

**connection** 96:6 98:17

**connections** 96:16

**consecutive** 79:14

**consider** 85:16 92:22

**considered** 7:11

**considering** 73:7

**consistent** 15:13 69:3

**constitute** 93:21

**constrict** 56:10

**constricts** 56:8 56:9

**constructed** 112:1

**construction** 16:3,9 19:8 20:1 25:3 26:17 27:1 28:14,16,24 29:23 30:8 33:2,11 35:8 35:10 36:12,21 37:4 40:16 41:2,11,22 44:1,16,19,21 45:17,21 46:4 46:16,19,22 48:3,3,17 49:7 49:23 50:13,23 52:7,11 55:2 73:2,6,12 78:14 85:14 89:15 93:2 114:23

**construe** 56:8

**[construed - court]**                                                              Page 8

| | | | |
|---|---|---|---|
| **construed** 100:10 | **contributed** 58:9 | **corrections** 26:9 | 118:11 |
| **construes** 103:18 | **contributes** 28:2,9 | **correctly** 118:7 | **counsel's** 117:2 |
| **construing** 73:11 | **contributing** 25:24 | **correspond** 11:6 12:22 | **counter** 91:4 101:14,21 |
| **contain** 18:20 | **contribution** 23:9,18,19 | 22:9,11,13 23:22 27:6,9 | 107:12 108:7 |
| **contained** 33:18 | 27:17 50:10 | 29:3 30:9 31:7 32:1 35:2 | **counterpoint** 29:23 30:2,3 |
| **contains** 15:10 15:14 69:2 | 51:3 53:20 57:9,12 58:7 | 37:21 38:1 54:10 56:4,12 | 30:12,23 31:3 47:18 |
| **content** 6:13,17 25:20 73:8 | **contributions** 23:15 26:6 | 57:6,23 91:3 | **counting** 90:18 |
| 106:13 | 27:15 53:3,9 | **corresponded** 24:18 31:15,21 | **couple** 3:14 16:2 20:14 |
| **contentions** 72:7 | 53:14,24 54:1 | **corresponden...** 57:4 | 21:21 42:7,10 91:22 96:18 |
| **context** 5:22 15:6 52:9 94:7 | **controls** 29:8 | **corresponding** 30:12 31:19 | **course** 73:3 89:6 |
| 94:14 95:3 | **controversial** 108:4 | **corresponds** 18:11 22:18,22 | **court** 1:1 2:6,7 2:10 3:7,12 |
| **contextual** 34:9 | **convenience** 22:16,23 | 23:24 25:18 27:10 28:20 | 5:10,18,21 6:7 6:11 8:18 9:5 |
| **continue** 34:17 55:22 58:24 | **convenient** 11:3 | 30:8,15,16,18 30:23,24 31:1 | 9:13,24 11:13 11:18,24 13:22 |
| 66:24 108:19 | **conveying** 70:1 | 35:12,24 37:7 38:8 39:7 | 14:1 16:5,18 17:1,11,22 |
| **continuous** 10:21 57:19 | **copies** 4:1,2 | 41:14,17 48:23 49:24,24 50:15 | 18:22 19:6,10 19:15,22 21:4 |
| **contrast** 109:10 109:11 110:3 | **corbett** 1:24 | 51:1 53:6 54:23 57:18,24 | 21:11 24:22 25:10,13,16 |
| 113:13 | **core** 1:23 | **corroon** 1:15 | 26:15 27:12,21 28:1,5,7,13 |
| **contrasting** 109:2 | **correct** 10:3,4 19:14 22:17,21 | **counsel** 1:18,22 2:20,22,23 3:8 | 29:10 30:14,21 31:5 32:3,8,13 |
| **contribute** 23:7 24:1,2 26:12 | 28:12 40:19 46:23 61:8 | 5:6 34:24 55:17 105:7 | 33:1,10,14 34:2,16 35:8 |
| 27:11,12,20 50:22 | 69:19 92:3 95:7 108:17 | | 36:5,7,22 37:8 |
| | **correction** 26:13 | | |

**[court - demand]**

38:13,18,20,23
39:3,15,18
40:14 41:7,16
41:20 42:2,9
42:12 44:6,14
44:23 45:4,14
45:16,20 46:3
46:8 47:15
48:11,20 49:2
49:6 50:24
51:5,13,20
52:3,6,14,22
53:22 55:7,10
55:19,20,22
57:7 58:12,18
59:21 61:15,22
63:1,5,12,18,23
64:3,7,10,22
65:7,10,15
66:10,23 68:12
69:12,15,18,23
71:12,20,23
72:24 73:16
74:8,14,21
75:10 76:3,18
77:12,16 78:19
79:3,18 80:13
80:17 81:6
82:1,19 83:4
83:15,20 84:17
85:9 86:3,8
87:1,6,10,13,22
88:5,10,13
89:5,18,21
90:10,12,13

91:24 92:5,17
92:20 93:4,7
93:17,24 94:3
94:7 95:3,8,14
96:5,9,13,23
97:19,22 98:20
99:11,14,17,20
100:19 101:2,6
101:11,16
103:1,18,19,22
104:14 105:1
106:8 107:5
108:9,14,18,24
110:11 111:5
111:12,16,21
112:5 113:7,12
114:12,18
115:6,17,21
116:11,14,24
117:9
**courtroom** 2:4
**cover** 5:5 92:15
  111:19
**cpu** 112:17
  113:3
**craft** 52:24
**crazy** 8:6
**create** 21:3
  51:9
**created** 14:15
  14:16,21
**crystallize**
  32:10
**customize**
  98:10

**cuts** 81:14
**cv** 1:8

**d**

**d** 2:2 42:19
**data** 13:7 15:21
  28:19 70:18
  71:10,15,18
  78:6,7,23,24
  91:1,1,14,16
  92:7,11,22
  93:14,19 95:12
  95:21,22 97:10
  97:13 98:5,11
  98:13,14,21,24
  99:7 100:15
  101:6,8,8,19
  102:19,22
  103:3,13
  107:11 108:7
  114:13,21
**database** 77:4
**day** 17:10
  118:14
**deal** 48:5
**dealing** 106:5
**decide** 52:11
  60:24
**decided** 35:6
**decision** 117:4
**declaration**
  23:2 51:20
  56:20 92:20
**decompiled**
  72:9

**decompose** 9:3
**decreases** 50:4
**defendant** 1:8
  1:22 3:10
  19:15 110:12
  111:21
**defendant's** 3:8
  3:22 54:2,20
  89:23 97:23
**defendants**
  19:24 81:8
**define** 59:5
**defined** 25:17
  104:13
**defines** 59:12
  95:11 109:20
**definite** 92:2,8
  92:12 93:2,10
  94:5 95:18
  96:2,2 98:23
  99:8
**definitely**
  105:15,16
**definition**
  16:15,16 28:7
  40:19 43:5,7
  43:10 53:6,19
  54:20 57:13
**definitions**
  15:13 69:2
**degree** 103:23
**delaware** 1:2
  1:10 2:23
**demand** 27:7

demonstrate 97:14

demonstrates 60:15

dense 4:24 5:12 117:3

depending 36:8

depicted 37:11 38:16

depiction 38:24 42:15 56:19 58:1,1 60:10 60:17 101:22

depicts 60:15

descent 81:12

describe 13:20 67:10 103:12

described 4:9 85:21

describes 79:12 82:17 86:14 99:24

describing 18:23

description 30:20 99:2

descriptive 17:6

descriptor 13:21 14:8 64:4 67:14 82:3 83:18

descriptors 70:9,15 83:17 83:22 84:11

design 113:21 115:16

designed 113:19 116:6

determine 44:8 102:5 104:23

determined 42:22

determining 61:20 63:2,8 63:16,18,19 64:3 66:4,6,12 67:13 83:18 100:3

deviate 59:17

device 111:9

devices 17:18 105:12

dft 11:5,8,10 12:9,11,11,14 12:21 13:11,12 17:21 21:16 22:8 27:5 54:17

dfts 55:17,23 56:9

diagram 23:2,4 78:4

differ 44:17 68:15

difference 47:24 116:18

differences 113:17

different 7:11 11:21 12:19 20:15 47:22 48:2 50:13 55:4 69:16 70:9 76:15 80:23 111:2 114:5

differentiate 112:15

differentiation 110:14 112:8

differently 28:13 87:22

difficult 5:12 5:19

difficulty 52:18 52:19

digit 13:21

digital 10:18,23 20:3

dimensional 90:22 91:5,8,9 105:3,3

direct 54:22

directly 72:4

disagree 86:1 102:1,3

disagreement 15:17,18

disavowal 85:10,12,13,17 85:18

disclaimed 67:4

discrete 10:24 11:2,6 54:8

discuss 33:4 90:3

discussed 32:16 32:19 35:1,23 66:18 74:1 104:1 105:6 110:19

discussing 103:3

discussion 37:4 90:4

disk 109:23 110:1,10,24 111:3,7,9,15,19 111:19 112:9,9 116:2,10

dispute 4:18,18 4:20 16:6 20:17 21:2 29:12,13,16,21 32:15 35:5,9 35:11,17 36:2 36:5,11,21 39:24 40:22,23 40:24 41:23 43:12 44:3,8,9 44:10,12,15,19 45:23 46:14 48:21 49:20 53:23 57:17 59:22 60:2 61:1,5 71:5 72:23 73:6

**[dispute - exactly]**                                    Page 11

91:16 103:17
103:20 107:14
107:17,18
**disputed** 46:20
**disputes** 5:1
40:20,20 73:2
**disputing** 57:8
73:5
**distance** 91:13
**distinguish**
19:11
**distinguished**
88:23 89:3
**distinguishing**
86:13,22 89:6
89:8
**distinguishm...**
86:4
**district** 1:1,2
96:18 99:11,17
**divide** 22:6
40:4
**divided** 24:9
**dividing** 13:9
**doing** 27:5
48:18 54:6,7
60:9 63:19
64:7 65:13
70:16 72:16
73:8 74:10
75:20 76:11,20
81:5 106:3
113:5 114:9
115:2

**domain** 6:19
10:14,14,15
11:7 15:22,22
20:20 21:16
24:8,12 28:19
28:20 30:17
31:16,22 39:14
54:15 67:11
85:21,23 86:14
**dot** 58:5,6
**dots** 16:22 17:2
58:5
**doubt** 85:22
**dozen** 115:14
**dr** 18:19 23:1
98:3 108:2
**draw** 49:16
**drawing** 23:7
**drawn** 23:12
**draws** 40:12
**drive** 109:23
**driver** 54:3
**drop** 75:6
**dropping** 75:8
**drove** 35:3
**drye** 1:17 3:4

**e**

**e** 1:20 2:2,2
118:1,1
**earlier** 47:12
82:7 98:1
**ease** 14:3
**easier** 4:24 5:23
5:24 15:3
90:17

**easily** 72:17
**easy** 44:20
**effort** 98:2
**either** 18:12
34:22,23 41:14
73:1
**electrical**
113:22 116:8
**element** 15:5,7
81:4
**elements** 74:1
104:10
**ellie** 1:24
**embodiment**
80:15,19
**embodiments**
81:3
**encompassed**
94:8
**ends** 62:16
**engaging** 29:11
**enjoyment**
53:19
**entire** 15:5 27:8
54:18 72:15
74:5 77:11
78:16 82:8
**entirety** 27:21
75:9 77:17
**epa** 75:23
**equally** 81:19
**equals** 7:23 8:2
**equipment**
96:4

**equivalent** 83:5
**eric** 1:23 3:5
**especially** 72:8
84:21
**esq** 1:15,16,17
1:20,21
**essence** 86:9
**essentially**
109:13 112:21
**established**
96:21
**et** 4:14 67:10
67:11 105:12
**event** 29:7 99:3
**everybody**
62:23
**evidence** 61:2
80:22 93:5
95:10
**exact** 33:7
43:21
**exactly** 4:20
6:15 11:6 16:7
17:4,5 39:8
41:19 42:11
46:24 52:5
61:10,18 63:4
65:12 74:13
75:3,4 76:8
77:21 79:2,7
82:12 83:3,7
84:11,23 86:7
86:11 87:12
88:9,12 89:9
92:13 97:5

**[exactly - first]**                                                        Page 12

99:12 103:24
**example** 8:11
  9:8 11:15 12:2
  12:3 13:8,10
  13:21 21:14,15
  24:4,19 27:15
  34:10 38:18,20
  40:6 50:6
  66:18 70:16,20
  70:20 71:3
  77:1,10,12
  78:1 79:10
  82:20,24 96:10
  103:7 105:9
**examples** 39:21
  103:5
**exceed** 53:14
**exceeds** 23:18
**except** 29:4,8
  104:2
**exception** 29:6
**excerpted** 98:6
**exclude** 53:4
  57:21
**exclusion** 62:22
  62:24 63:3,7
  64:21 89:11
**executing**
  101:7
**exercise** 14:23
**exhibit** 98:6
**expect** 31:13
  45:10 106:13
**expected** 58:22

**expert** 16:16
  18:19 23:2
  26:14 43:21
  47:10 51:19
  56:19 85:23
  92:6,9,10,14
  93:9 98:2,3
  99:5 104:5
  108:2 112:18
  112:21 113:17
  113:20 116:1
**expert's** 56:18
**experts** 20:18
  20:21 39:21
  45:7,8 93:8
**explain** 18:3
  30:20 31:6,10
  72:5 106:14
**explained**
  28:15
**explains** 40:23
**explore** 98:10
**expressed** 8:5,6
**expresses** 12:12
**extent** 36:18
**extra** 67:1
  68:21 90:3
**extremely** 56:4
  56:11

**f**

**f** 118:1
**faces** 91:6,11
**fact** 24:1 79:4
  84:4 86:19
  89:1

**fair** 81:13
**falls** 6:6
**familiar** 85:16
**far** 16:4,9,10
  89:16 91:11
**favor** 88:17
**feature** 86:15
**fed** 91:1,4
**federal** 88:24
  98:11
**feed** 108:22
**feeding** 97:12
**feeds** 97:10
**feel** 40:21
**fft** 35:1 39:22
  40:1,11 42:24
  43:13 57:5
  72:13 74:2,7
  74:10 77:22
  81:15 85:22,22
  85:24 86:23
**ffts** 55:18,23
**fighting** 20:6
  37:9 41:4 47:2
  57:11
**figure** 14:23
  29:20 38:15
  40:2,18 42:24
  61:1 73:24
  76:16 77:6
  79:11 84:22
  91:2 95:21
  104:7 108:20
**figured** 8:8

**figures** 6:7
  103:6 105:4
**figuring** 41:2
  77:8
**fill** 104:12
**filter** 98:10
**final** 33:12
**find** 46:10 55:5
**fine** 32:24 45:3
  46:7 51:8
**finish** 95:9
**finite** 7:24
**firmware** 92:23
  94:13,14 95:4
  105:6 109:16
**first** 2:13,22
  3:22 5:17
  13:18,19 14:6
  14:6,17 15:3,9
  15:10 17:8
  18:6,13 22:9
  23:1 32:4
  37:19 38:15
  49:12 55:17
  59:3,7,10 60:7
  60:19,24 63:7
  63:20,24 64:4
  64:4,12 65:1,7
  65:21 66:3,11
  66:12,14,19,20
  67:14,14,15
  69:2 70:22
  73:19 74:2,15
  74:19,22 77:16
  77:22 81:9

**[first - frequency]**

82:21 83:8,9
83:18 91:14
93:11,12 95:22
98:9 107:11
**five** 89:22 90:3
  107:8
**flatly** 92:6,9
**fly** 48:18 49:7
**focus** 24:24
**focused** 88:15
**focusing** 85:1
**folks** 117:7
**follow** 4:1
  94:10 101:2
**following** 2:3
**foregoing**
  118:4
**form** 102:23
**forth** 81:5 84:7
  103:16 104:2
  114:23
**fortunately**
  10:9
**found** 5:12
**four** 2:19 3:15
  13:10 58:21
  90:4
**fourier** 8:8
  10:10,12,13,22
  10:24,24 11:2
  11:6,15 15:23
  18:16 54:8
  56:2,10
**frame** 13:12,20
  14:5,9,9 17:3

26:3 27:23
28:2,9 33:17
33:18 42:6,7,9
42:16,18 49:3
49:12,16 53:4
53:10 59:10
64:4 65:4
67:14 115:6
**frames** 13:10
  13:11,12 42:4
**frank** 62:10
**frankly** 20:16
**frequencies**
  11:7,11 15:24
  17:7,14 18:9
  18:12,14,21
  19:18 20:2,10
  21:9 22:2,19
  22:19,22 23:7
  23:15,23,24
  24:10 25:19,20
  26:19,20,24
  27:7,10,11,19
  28:21 29:24
  30:18,24 31:1
  32:16 33:23,23
  34:3,14,23
  35:2,4,13
  36:24 38:2,12
  39:7,10,13
  40:8,10 41:1,3
  41:5,15,18
  42:3 43:24
  44:24 46:2,17
  46:21 47:19,20

47:23 48:7,24
49:1,17 50:1,2
50:3,8,10,20,21
51:2 53:7,8,9
54:2,11,23
55:24 56:5,13
57:19,20,23,24
58:3,9
**frequency** 7:14
  7:19 8:9,16,19
  8:19 9:14,15
  9:18,19,20,22
  9:24 10:2,14
  10:14,17 11:5
  12:4,10,10,14
  12:15,18 13:13
  13:22 14:6
  15:3,22,24
  16:11,21 17:7
  17:13,14,17,20
  18:7,8,11,12,13
  18:14,15,23
  19:2,4,7,12,18
  20:3,3,5,5,15
  20:19,19,20,20
  20:21,22,22,23
  21:9,13,19,20
  21:23 22:4,7
  22:17,20 23:5
  24:7,7,8,8,12
  24:13 25:6,7
  25:11,14,16,18
  25:24 26:22
  27:13 28:2,10
  28:19,20 29:4

30:14,17 31:7
31:12,14,14,20
31:24 32:15,17
32:22,22 33:2
33:3,5,5,16
34:5,5,14,20,21
34:23 35:3,12
35:24 36:23,24
37:5,6,7,10,15
37:15,21,23,24
38:3,9,15,24
39:2,4 40:3,8
41:12,13,14
42:13,20,20,21
42:22 43:2,5
43:14,20,21
45:10,12 47:9
47:13,17,18,23
48:9,10,23
49:2,14,15,24
50:8,15 51:1
52:13 53:2,4,7
54:1,4,12
56:20,22 57:3
57:4,9,12,18
58:7 59:4,4,7,8
60:8,8 61:14
63:24 64:16
65:1,2,4 66:14
67:11,12,20
68:9,15,20
69:5,7,9 70:17
70:22 71:1,3
71:14,15,15,18
72:1,12,14,19

**[frequency - guess]**                                                           Page 14

72:22 73:19,22
74:15,16,19
77:24 78:3,4,5
78:6,8,17,21,22
78:22,24 79:9
79:10 81:9,23
82:9,11,21,23
82:24 83:1,1
83:11,23 85:21
85:23 86:1,6
86:14,16,18,20
87:24
**frequently**
  102:13
**fulfilled**  62:12
**full**  107:10
**function**  78:11
  91:17 94:9
  95:15 98:18
  99:4 100:3,11
  100:18 102:19
  102:20,21
  103:8 104:16
  104:19,24
  105:18 116:7,8
**functional**
  102:18
**functions**  100:2
  100:5,8 105:23
  106:15,16,18
**further**  5:5
  13:14 41:9
  45:18,19 46:6
  50:4 51:14
  62:20 88:13

94:17 117:6

**g**

**g**  2:2
**game**  30:5 54:9
**gates**  108:3,5
**gather**  82:23
**general**  82:3
  93:13 97:1
  113:24 114:2
  114:10
**generally**  7:10
  30:18 59:16
  68:15 90:21
**generate**  19:3
  68:20 69:12
  70:15
**generated**
  15:21 16:12
  28:16,18 69:10
**generating**
  69:7,17,22
  70:9 83:17,22
**generator**
  71:16
**george**  1:15
**getting**  22:20
  24:23 47:16
  53:1 54:10
  57:16 59:24
  75:6 76:11
**give**  5:3 27:8
  38:18 49:9
  51:16 53:18
  54:20 66:24
  90:3 96:21

102:21 106:17
106:20 107:8
**given**  52:1 72:6
**gives**  10:16
  13:2 102:14
**giving**  64:4
**go**  2:12 3:14,21
  5:14 15:11
  16:9 23:1
  29:18 38:7
  51:13,16 58:19
  59:14 60:23
  81:21 91:15,23
  94:21 95:20
  99:20 102:2,7
  116:14 117:3
**goes**  6:6 16:4
  71:4 83:17
  98:15 101:24
  105:9
**going**  2:19 3:19
  3:21 5:7 10:19
  10:19,22 11:14
  11:20,24 13:20
  13:20 14:21
  15:2,8 16:19
  16:20 17:10
  18:2 19:20
  21:15,17,18
  22:3,8,10,16
  26:8,11,23
  29:18,20,21
  32:7 35:7
  41:23 49:6,8
  50:19,21 51:24

52:19 54:10,12
55:1 58:16
59:14,17,23
61:9,11 62:18
62:19 64:13
65:17 66:5,7,7
66:8,20 70:14
73:6 74:23
75:11,20 76:17
76:22 78:13
79:12,16,19,20
80:6,6,7 81:8
93:4 99:17
101:12 104:12
116:22
**good**  2:7,24 3:9
  5:8 16:14 26:5
  55:12
**granted**  3:16
**graph**  9:21,22
  13:23 24:12
  39:14
**grasp**  5:23
**great**  53:15
  76:24 97:4
**greater**  13:19
  58:5
**green**  8:14,15
  8:21 9:2,3,5,9
  9:12
**ground**  3:14
**grouping**  40:18
**guess**  26:15
  28:23 31:2,5
  31:11 46:11

**[guess - identification]**                    Page 15

52:22 57:20
67:2 70:12
75:10 92:5
94:10 96:10
103:3,4,7
104:12 108:24
115:17
**guidance** 5:3
**guts** 52:23
**guys** 62:18

**h**

**haitsma** 35:22
41:24 44:4
**halfway** 38:8
**hall** 99:23
**hall's** 99:11,18
**hand** 5:9 10:6
32:12 99:13,20
118:14
**handling** 3:4
**hannum** 1:24
**happen** 90:1
**happened**
53:17,21 99:2
**happening**
49:10 57:10
59:22 62:16
80:19 82:12
83:5,6 84:22
87:21 88:6
**happens** 24:10
54:9 63:8
73:21 87:3,14
87:14 88:8
115:4,9

**hard** 4:7,8 23:3
30:10 41:2
72:7 84:22
96:2 107:21
**hardware**
92:23 94:12,13
95:4 105:5
110:8 113:18
113:18,21
**hardwired**
112:3
**head** 77:4
**hear** 32:9 42:22
71:23 97:23
112:6
**heard** 63:9
**hearing** 1:11
2:4,18 63:6
117:11 118:5
**heart** 110:18
**height** 7:3
34:11,11,13
**held** 2:4 100:8
**help** 4:23 7:1
10:6 52:8
77:18,18
**helpful** 5:2
11:24 53:11
73:4,14 75:16
85:4 86:17
97:1,5
**helping** 3:5
117:3
**helps** 4:15
97:14 101:23

**hertz** 7:15
21:21 22:1,1,2
22:6,9,11,14
39:11 40:6
**high** 64:24
**higher** 22:4
**highest** 21:22
**highlight** 65:18
**highlighted**
15:5 95:17
**highlighting**
65:20
**history** 67:5
68:6,13 81:24
84:19,20 85:4
85:10
**hoeschen** 1:21
3:11
**hold** 45:17 46:4
49:6 58:22
**holding** 48:20
**holds** 109:22
109:24 110:2,5
110:10,24
111:10,20
**holes** 104:8
**honest** 110:20
**honestly** 57:15
**honor** 2:24 3:9
5:8 6:10,15
11:22 19:9,14
21:7 27:3,14
28:4,6,11
32:11,14 36:14
38:6 47:12

52:13 53:12
54:5 55:9 59:1
61:12 64:2,9
65:6,9,11 71:8
73:13 75:3
85:15 89:17,20
90:17 96:8,12
97:16,21,24
99:10 101:5
107:16 109:18
110:20 111:8
112:7
**honorable** 1:13
**hope** 93:6
**hopefully** 5:15
**hoping** 15:1
**hour** 3:16
**house** 105:22
**human** 34:13
**humps** 23:12
**hundreds** 14:3
**husband** 53:17
**hypothetical**
106:12

**i**

**i.e.** 109:15
**idea** 10:15 20:6
22:21 53:14
69:24 83:15
91:11 106:20
**identification**
59:13 65:21,23
70:2 78:11
81:1,22 82:9
82:15 83:6,10

**[identification - initially]**

87:3,9,11,14,14
87:20 88:5
**identified**
13:15 62:14,14
62:19 64:15
65:3,3,5 66:2,6
66:8 68:22
70:19 76:19
78:10 79:5
81:22 88:1
89:2
**identifier** 71:1
71:14 78:3,5,9
78:21
**identifies** 62:5
71:3 78:5
**identify** 2:20
6:16 7:1 12:21
13:13 59:6,7
59:18 60:7,12
60:19 61:13,14
62:2,13,13,22
65:13 67:19
68:9,10 69:13
69:20 70:21
71:14 72:12,22
77:1 78:22
80:4 84:7
86:15 88:18,19
**identifying**
58:14 59:3
62:22 64:11,18
64:24 66:2
67:12,23,23
68:3,14,17

69:5,17 70:10
71:6,9,19
73:14,18 74:4
74:5,6,15,23,24
75:18,21 76:7
76:10,11,15,17
76:20,22 77:19
77:23 78:8
80:11,22,23
81:9,17 82:5
82:11 83:22
84:2 86:24
88:10 89:16
**ignoring** 67:21
**illustrating**
73:9
**imagine** 6:21
24:5
**impact** 36:13
**impacting** 73:3
**implement**
93:20 95:24
96:3
**implementati...**
107:19,24
109:20,21
110:1,4,23
**implementati...**
105:14
**implemented**
93:14,19 94:12
96:6 105:5,10
107:12,18,23
108:7 115:1,12
116:17,18,19

116:21
**implies** 116:17
**imply** 104:15
**import** 75:13
**importance**
65:23
**important** 17:8
17:10 21:11
30:5 77:14
80:12
**impression**
54:21
**impulses**
113:23 116:8
**inartfully**
63:11
**include** 20:9
94:23 107:19
107:24
**included** 26:22
81:17 86:6
**includes** 65:7
104:16 109:9
**including** 8:5
26:18
**inclusion** 35:3
**incorporate**
53:8,9
**incorrect** 52:2
**indefinite**
93:22
**index** 39:2
**indicated** 118:6
**indication** 17:2
82:14

**indications**
16:2
**indices** 78:7
**individual** 15:2
16:22 20:5
25:8 28:2,9
56:5,13 72:18
**individually**
13:11 54:11
**influence** 50:3
50:3
**influenced**
43:22
**influences**
48:24
**informal** 20:24
32:23
**informally**
20:18
**information**
43:23,23 45:2
47:20 73:1
**infringe** 72:21
107:1
**infringed** 102:6
106:22
**infringement**
35:20 51:9
72:4,6 73:11
95:1
**initial** 34:19
83:10
**initially** 34:19
70:21 82:21
83:8

**[input - lead]**

**input**  96:16
**inputs**  96:20
**inquiry**  98:21
  99:4
**insights**  1:7
  2:16
**instance**  15:15
**instruction**
  29:16 108:17
**instructions**
  24:24 62:12
  111:6,24 114:2
  114:3
**instrument**
  6:21
**integrated**
  105:11
**intended**  81:21
  81:21 87:19
**intentional**
  109:11
**interact**  69:11
**interacts**  97:3
  101:20,21
**interchange**
  7:10
**interchangea...**
  68:17
**interest**  21:20
  59:15
**interested**
  118:12
**interesting**
  16:1 89:10

**interpretation**
  76:10
**interrupt**  37:8
**invention**  4:21
  71:4 97:4,11
  101:19
**involve**  104:17
  114:13
**involving**  2:15
**irrelevant**
  100:16 112:22
  113:5
**issue**  3:20 7:4
  11:4 17:11
  19:19 21:12
  26:17 30:7
  45:22 46:20,20
  58:10 69:1
  73:7 99:12
  109:8 114:19
**issues**  4:3 52:11
  73:3 112:16

**j**

**j**  1:13
**jargon**  5:16,16
**job**  97:4
**joe**  62:10
**joke**  29:5
**judge**  4:17
  99:11,18,21,23

**k**

**keep**  3:17 4:2
**keeping**  7:21

**keller**  1:20 3:10
**kelley**  1:17 3:4
**key**  107:8 109:1
**kids**  75:6,8
**killed**  53:17
**kin**  118:11
**kind**  4:24 6:8
  11:21 12:19
  21:1,6 26:8
  31:10 33:3,17
  36:9 38:8 43:4
  47:11 51:10
  52:18 54:3
  57:16 61:3
  72:7 74:10
  83:8 95:9 98:7
  101:21,22
  102:3,14
  105:19 106:13
  110:13,14,18
  112:22 116:9
**know**  3:18 4:15
  6:18 14:13
  17:19,20 26:16
  35:7 36:18
  38:4 39:21
  41:7 45:4,9
  46:19 48:15
  49:20,24 51:6
  53:15 55:12
  56:23 58:3
  61:17 62:8,8,9
  64:14,18 66:3
  66:3,10,13,16
  68:5 72:16

  73:8,12 76:14
  77:18,18 78:1
  80:1,8,18,24
  81:19 85:20
  88:17 93:18
  96:17 98:24
  99:14 101:3,7
  101:18 102:5
  104:14 106:24
  108:21 110:11
  113:20 114:7
  114:22
**knowing**  102:9
**knowledge**
  77:6
**known**  48:6
  100:7
**knows**  17:19
  64:12 84:24

**l**

**laid**  104:9
**language**  29:11
  30:10 44:11,16
  44:16 65:13
  69:4 75:14,23
  85:6 96:6
**large**  24:14
  50:7 56:21
**larger**  27:16
  33:15,17,17
  58:14 87:6
**law**  85:15
  106:17
**lead**  40:22

[leakage - made]                                                                Page 18

**leakage** 23:21
26:4 28:22,22
29:4 30:4
31:17,18,19
35:15,16 45:5
45:5,9 47:14
48:4,5,5,7,12
48:13,14,16
49:19,23 50:11
50:21 51:3
54:1 56:6,16
56:19,22,24
57:1,6,10,12,15
57:22 58:3,10
**leaked** 43:23
**learned** 77:4
**leave** 17:22
32:7
**leaves** 44:6
45:22
**leaving** 75:7
**left** 3:18 14:12
20:2 25:22
35:18 48:7
62:6 89:24
90:14 116:13
**legal** 1:23
**lego** 105:20,21
105:22
**legs** 89:22
**length** 38:9
**liability** 73:3,7
**lies** 17:1 101:20
**life** 33:21

**light** 36:7 92:3
**liked** 53:20
**likely** 52:10
**limit** 35:19 37:2
94:1
**limitation**
112:15,17
114:13
**limited** 10:1
**limits** 96:14,15
**lincoln** 29:6
53:15
**line** 23:6 25:13
37:12,13,17,22
38:23 41:24
50:8,9,16,16,17
73:3 80:11
82:20 83:21
**lines** 9:23 11:19
16:23,24 25:8
37:14,24 50:11
60:6 70:16
71:13 74:3
78:2 102:17
**lineup** 61:24
**link** 74:15
**links** 74:11
**list** 64:16 79:8
**literally** 112:1
**little** 4:24 5:23
7:24 13:9 15:2
16:21 23:3
24:23 25:8
51:15 55:20
58:5 68:1

**living** 90:24
**llc** 1:4 2:16
**llp** 1:20
**load** 35:8
**loads** 23:12
**location** 79:15
**logic** 105:12
107:12,19,20
107:24 108:1,3
108:3,4,10,10
109:9,11 110:4
111:12,22
112:1,14,16,23
113:2,4,8
114:5,8,14,16
114:16,17,18
114:22,23
115:1,2,3,7,9
115:10,11,13
115:14 116:5,6
116:17,19,20
116:21
**logical** 75:24
**long** 36:21 89:3
96:20 105:2
**look** 4:17 6:23
14:17,18,19
21:12 23:14
24:13,19,20
39:9 46:17
53:2 60:10
69:3 77:2,20
78:20 84:20
97:8 101:17
102:8 103:11

106:2,11,23
113:7
**looked** 20:1
62:4
**looking** 14:3
38:15 49:11
56:21 61:24
62:2 66:12
68:5 76:20,23
77:2,7 85:19
86:22 100:2
103:8 104:7
**looks** 4:21
11:19 60:5
62:4
**lose** 40:22
**lost** 38:13
**lot** 5:16 51:18
51:22,24 52:1
84:24 90:16
**lots** 40:15
114:7
**lumped** 43:22
45:1

**m**

**machine** 109:4
109:14 111:5
118:7
**made** 28:15
33:22 34:2
36:19 51:23
56:3 67:7 98:2
110:17 111:22
111:24 118:10

**[magnitude - moulin]**                                     Page 19

**magnitude** 7:5 7:6 18:18,20 23:5,8,10,19 24:14 37:22 38:1,11 39:13 40:8 43:8 45:11 56:21 58:8

**main** 85:5,5

**make** 3:23 4:16 4:23 13:8 14:23 15:11,12 17:10 24:11 26:21 31:3 35:20 49:4 50:18 51:17 54:7 55:16 64:19 75:24 89:14 95:5 105:21 107:8 108:24 110:21 116:12,23

**makes** 51:24 56:7 73:17 81:20,24 82:10 84:1 112:24

**making** 13:5 24:5 48:8 71:7 110:15 112:22

**map** 12:18

**markman** 1:11 2:3,18 4:5 118:4

**match** 14:18,19 14:20,21

**material** 46:13 52:4

**mathematical** 10:9,16 12:9 12:13 16:22 17:2 22:15,23 72:14,18 78:15 80:2,3

**mathematically** 22:5,7,11

**matter** 17:15 18:1 34:7 55:15 63:15 85:12,17 89:3 117:1

**matters** 2:14 33:20 55:5,6 73:11,12 87:20

**maximum** 72:16

**mean** 16:3 20:21 25:20 34:11 47:22 49:11 53:17 65:10,12 68:17 69:9 76:21 85:2 93:12,17 95:14 98:20 99:3 101:18 111:1,13,14,19 111:22

**meaning** 15:16 15:18 16:11 29:14 44:8 59:17 68:14

76:16 81:1 102:22 108:8

**meanings** 69:16 80:23

**means** 7:20 33:9 42:13 43:2 46:23,24 47:1 49:23 65:1,1 67:18 72:2 76:5,15 78:12 80:22 81:2 85:6 88:20 89:16 91:17 100:3,10 103:8 104:16 104:19,24 113:9,11

**meant** 32:19,20 48:9 52:8 54:3 55:3 61:4 63:12,13 109:12

**media** 59:10 67:14 80:9 113:16

**median** 72:17

**medium** 109:4 109:21,22 111:3,6

**meet** 32:18 41:22 107:17

**memory** 112:10 114:1,3,10 115:23,23

**mental** 101:22

**mention** 101:1

**mentioned** 97:10 105:7 110:16

**mercifully** 90:16

**merit** 1:24

**method** 70:21 112:12

**mind** 33:10

**minimum** 56:12

**minute** 89:22

**minutes** 3:18 5:13 58:20 66:24 67:1 89:24 90:3,14 95:9 107:8

**minutia** 106:18

**mirror** 61:24 62:3,4

**mirrors** 84:5,6

**misleading** 12:15

**mode** 72:17

**module** 74:10

**monitoring** 80:10

**months** 96:18

**morning** 2:8,14 2:24 3:9 5:8

**moulin** 92:17 92:18,19

**[moulin's - operation]**

**moulin's** 92:20 98:3
**move** 58:13 90:15
**multiple** 33:23 34:3 43:13,16 55:14 81:3 102:11
**musical** 6:21

**n**

**n** 2:2
**name** 115:13
**nathan** 1:21 3:11
**natural** 75:22 81:7
**nature** 5:22 43:15
**nearby** 49:1
**necessarily** 38:24
**necessary** 17:18 27:4 74:18 76:6 77:16 80:17 96:14
**need** 5:5 22:4 29:15,15 46:13 60:23 61:7 72:3 76:9 80:24 106:19 117:6
**needed** 106:11
**needs** 21:11 59:19 68:2

102:5 106:22
**neglect** 26:10
**neglects** 26:11
**negotiations** 34:19
**neighborhood** 62:11
**neither** 118:11
**never** 17:12,15 36:15 63:9 64:10 72:12,18 74:6
**new** 56:15
**nice** 100:12
**nielsen** 1:4 2:15 3:2 107:20
**nielsen's** 15:20 16:2,8,13
**non** 7:24 24:17 31:20 35:20 51:9 72:4 91:19
**nonce** 104:23
**normal** 32:18
**normally** 76:19 76:21 116:9
**nos** 2:17
**notary** 118:17
**note** 2:3 6:22 42:18,18
**notes** 43:1,13 45:12 51:23
**notice** 118:5
**notification** 71:16 78:6

**number** 4:12 10:11 18:24 21:21 25:10 26:10 37:20 39:4,15 90:19 99:1
**numbers** 38:2

**o**

**o** 2:2
**obscured** 91:7 91:10
**obtain** 17:20
**obtaining** 71:18
**obvious** 8:7 58:2
**obviously** 52:3 57:24 73:5 75:7 83:12 105:16 106:11
**occurs** 87:23
**offered** 35:14 51:18 58:2 104:5 112:18 112:21
**officer** 62:1,12 62:17
**official** 118:14
**oh** 13:24 20:22 24:20 95:1 106:2
**okay** 5:4,11 10:17 12:7 13:18 15:15 21:4,6,9,17

22:8 24:3,12 26:15 30:11,21 31:5 32:3,8 34:16 36:20 39:3 42:12 45:14,20 52:14 52:17 55:7 58:12,16 66:5 66:23 68:3 69:2,23 71:20 89:18 90:15 93:12 95:23 97:22 99:16,20 100:19 108:18 111:21 112:5 116:11
**old** 29:5 93:19
**omits** 26:5
**once** 13:14
**ones** 24:1 61:17 65:18 66:10,16 78:17 80:4
**online** 98:9
**ooo** 2:1
**open** 45:22,24
**opening** 47:8,9 56:11 104:2
**operating** 10:21 116:4
**operation** 11:14 12:9 13:14,16 16:13 16:20 59:10 60:4,10,14,17 62:20 64:20

**[operation - pattern]**

65:1,14,16,22
68:19 69:6,8
69:11 72:15,18
73:21 74:11,22
75:5,19 76:6,9
78:15 79:1
80:2,4,8 81:10
87:2,11,15,23
87:24 88:2,7
**operations**
112:2
**opined**  85:23
**opinion**  99:11
99:12,17
100:13
**opportunity**
89:13
**oppose**  36:17
**opposed**  20:20
54:1
**opposing**  34:24
55:17
**opposite**  20:9
26:20 47:1,17
47:18 92:9
**opposition**
84:21
**option**  29:19
**order**  3:20 19:3
35:19 52:6,10
83:13 84:12
**ordinary**  15:16
15:18
**original**  33:2
34:22 36:20

37:23 38:2,3
39:9,14 40:3
40:11 43:16
45:12,13 48:9
57:3 58:9 78:3
**originally**
32:17
**outcome**
118:12
**outline**  49:22
**output**  96:16
**outputs**  96:21
**overall**  13:2
84:5
**overlay**  27:19
**overwhelms**
53:18
**own**  23:19 58:1

**p**

**p**  2:2
**p.m.**  117:11
**page**  28:14
99:23
**pair**  70:22
82:21,23,24
**pairs**  71:15
78:5,8,22
**palapura**  1:15
2:24 3:1
**paragraph**
99:24
**paragraphs**
92:21
**parcel**  87:8

**parenthetical**
48:13
**part**  25:17 30:2
34:5 35:10
39:11,23 40:13
49:16 52:9
57:5 60:13
73:17 74:16
75:8 80:12
82:8,19 83:8
85:5,5 86:12
86:17 87:6,8
87:11,19,19,24
88:6 89:12
91:22 92:17
94:10,20
101:16 102:12
102:13,19,21
108:21 109:8
**participants**
118:7,10
**particular**
12:21 22:17
27:6,9 28:9
29:3 30:16
36:9 67:12
73:5 85:1
86:15,17
114:18
**particularly**
5:19 107:14
108:4
**parties**  2:9 3:15
3:15,19 4:10
15:15 24:24

29:13 32:19
35:9,11 36:8
39:21 40:21
44:9 45:24
51:21 58:2,19
60:22 67:1
72:3 79:10
81:19 85:19
90:5 99:24
100:6,22
**partner**  3:11
**parts**  39:24
70:13 91:2
103:2 104:11
104:12 106:7
108:23
**party**  118:11
**passing**  102:19
**past**  103:11
**patent**  5:17 6:9
13:4,4 74:6
82:8 90:16,18
93:18 94:4
95:21 96:13
101:4 103:2,10
106:9 108:20
109:3
**patentee**  88:23
89:6,7 109:11
**patents**  4:11
40:15 94:23
117:3
**pattern**  7:15,16
7:21,23 8:1

**[pc - point]** Page 22

| | | | |
|---|---|---|---|
| **pc** 114:1 | **period** 12:6 | 65:18 72:18 | 57:17 58:15 |
| **peaks** 7:3 | **peripheral** | 74:20 79:13,14 | 85:24 86:13 |
| **people** 7:10 | 115:3 | 79:16 80:6 | 101:17 103:22 |
| 62:2,5,7,9 | **person** 6:18 | 83:13 | 104:4 |
| 90:19 91:3 | 32:20 33:8 | **picking** 65:19 | **plaintiff's** 2:23 |
| 94:23 98:4 | 34:10,11,12,12 | 74:18 81:2,10 | 3:21 5:6 37:11 |
| **perfect** 91:6 | 80:24 84:14 | **picture** 9:13 | 38:10 42:5 |
| **perform** 39:22 | 86:21 91:7 | 11:21 12:19 | 43:17 45:16,21 |
| 40:1,4 68:19 | 102:4,21 104:6 | 13:2 14:12 | 46:4 56:11 |
| 74:22 81:16 | 105:18 106:1 | 25:5,10 91:7 | 74:4 75:16 |
| 83:12 85:24 | 106:20 112:19 | **pictures** 16:19 | 76:10 89:24 |
| 100:15 104:5 | 114:4 | 42:5 90:24 | 90:13 105:7 |
| 105:18,19 | **persons** 48:4 | 91:1,3 | 112:11 |
| 106:15,16 | 56:23 | **picturing** 42:3 | **plan** 90:7 |
| 112:2 | **perspective** | **piece** 33:15 | **planning** 51:16 |
| **performance** | 32:15 34:8,18 | 36:9 42:9,16 | **play** 5:1 29:6 |
| 88:6 | 47:11 49:21 | 49:11,13 70:1 | 53:16,19,20 |
| **performed** 79:6 | 50:12 84:14,15 | 71:4 74:12,24 | 66:15 |
| 85:22 87:15 | **perspectives** | 77:14 88:2 | **playing** 4:20 |
| 94:9 100:9 | 34:8 | 96:3 101:19,23 | 33:22 |
| 106:18 114:22 | **phase** 7:19,20 | 107:13 110:15 | **plays** 6:21 |
| **performing** | 7:22 8:1,9 | **pieces** 13:10 | **please** 2:7 |
| 16:12 59:9,18 | 18:18 43:9 | 26:6 44:15,17 | 55:22 68:24 |
| 64:24 69:5,8 | **phases** 18:20 | 107:3 | 90:13 91:15 |
| 69:10,20,21 | **phrase** 17:7 | **place** 57:1 | **plot** 73:21 |
| 72:13 73:20 | 19:18 41:1 | 118:6 | **plus** 48:24 51:2 |
| 74:2,7,11 75:4 | 44:23 68:2 | **placed** 90:23 | 91:17 100:3,10 |
| 75:18,21 77:22 | 76:19 78:20 | **places** 77:20 | 103:8 104:16 |
| 78:10 79:1 | 109:4 113:8 | 115:14 | 104:19,24 |
| 81:9 83:11 | **phraseology** | **plain** 6:20 | **point** 6:16 9:11 |
| 84:7,9 85:21 | 94:17 109:8,8 | 15:16,17 59:11 | 14:22 17:8,10 |
| 104:9 | **physical** 99:2 | 59:16,17 | 21:11 28:1 |
| **performs** 100:1 | **piano** 42:18 | **plaintiff** 1:5,18 | 32:16 35:16 |
| 100:7 115:13 | **pick** 13:15,17 | 2:15 39:22 | 45:10 48:8 |
| 115:18 116:7 | 54:14 64:20 | 48:14 56:2,10 | 51:17 53:18 |

**[point - program]**                                                                                    Page 23

55:17 56:16
59:15 66:17
69:4 70:15
78:24 94:1
96:7 97:7 98:3
98:3 104:1
112:22 114:20
116:12,23
**pointed** 21:7
104:4 113:20
**pointing** 95:9
96:5 98:16
**points** 55:16
107:8
**police** 62:1,12
62:17
**poor** 31:11
**portion** 17:3
28:8 70:3,7
78:20 79:6
82:16 98:4
103:4 105:2
**posita** 91:24
92:6,10,21
93:1 98:22,24
99:6
**position** 27:4
30:9 34:20
47:8 54:6,19
56:14 59:5,11
61:18 67:20
107:23
**positions** 81:19
**possibility** 26:6
26:10

**possible** 22:5
36:8 104:21
105:13
**possibly** 13:23
77:17
**post** 104:15,17
104:22
**potential** 53:24
103:5
**potentially**
106:7
**potter** 1:15 3:1
3:3
**power** 7:8,8
38:11 39:1,12
40:2,5,7 43:9
63:20,21 66:13
66:13 67:15,16
78:9
**powers** 61:16
63:23,24 64:13
67:13,24 68:4
68:10 75:1
86:2,5,10,16,19
108:14
**pre** 111:22,24
**preclude** 37:6
**precluded**
41:13 46:1
**predicate** 74:18
76:6
**prefer** 12:12
**preferred**
59:16

**presence** 22:19
**present** 1:23
21:23 28:21
48:24 51:2
52:6 53:7
**presentation**
3:5 4:16 39:24
40:1
**pressure** 6:5
**presumably**
99:3
**pretty** 39:20
**prevail** 4:12
**primarily** 50:1
50:7,20
**primary** 54:3
**prior** 25:5
35:22 36:9,17
54:24 55:4,13
55:14 57:17
67:8 89:2
90:22 109:12
**proactively**
45:23
**probably** 17:10
23:13 46:9
54:7 60:13
90:1,2,8 93:3
112:15 115:13
**problem** 19:16
19:17 23:21
31:17 40:13
41:10 53:13
54:19

**procedurally**
117:6
**process** 10:9,16
21:24 30:6
43:12 70:18
76:22 77:7,11
79:1,11 82:16
82:18 83:4,6
83:16 84:2
87:7,9,11
98:14 101:22
107:18 111:24
114:9
**processes**
108:16 113:5
115:16
**processing**
115:24
**processor**
93:15 108:13
108:14,21
111:16 114:2
114:11 115:8
**processors**
94:19 105:11
108:8
**product** 80:1
97:12 107:1
**products** 76:12
**profile** 11:9
12:13 27:8
**program** 6:13
109:23,24
110:2,6,10,24
111:11,20

**[program - recess]**

112:10

**programmable** 93:14 94:19 105:11,12 108:8 112:23

**proposal** 15:20 16:13 17:24 18:3,5 28:15 35:18 52:24

**propose** 29:23

**proposed** 16:3 32:17 36:20 44:1 46:19

**proposes** 17:6

**proposing** 53:5

**proposition** 97:1

**prosecution** 67:5 68:6,13 81:23 84:19,20 85:3,10

**protocol** 113:22

**provide** 3:24

**provided** 101:11

**provides** 11:8 68:22 103:5

**pubentz** 1:23 3:5 68:23

**public** 118:17

**pull** 114:2

**pulled** 115:23

**pulling** 114:10 116:9

**pulls** 116:2

**pure** 6:22 24:6 24:6,15 31:12 31:24 56:24 112:13

**purely** 102:18 109:20,21 110:1,4,6,7,8,9 110:23 114:13

**purpose** 114:1 114:2,11

**pursuant** 118:5

**push** 7:23

**put** 9:20 28:13 51:10 81:16 87:22 96:13 101:18 103:4 104:2 114:22

**q**

**qualify** 96:11 96:14 104:20

**question** 46:12 59:6 69:23 70:12 80:21 87:1 89:7 91:24 112:8

**questions** 68:12

**quick** 116:13

**quickly** 90:16

**quite** 7:8 38:4,5 38:7 111:1 114:20

**quote** 26:1 46:15 60:19 94:18

**r**

**r** 2:2 118:1

**rails** 26:23

**raising** 26:18

**range** 22:9,14 45:11 48:10 50:1 57:19 91:13

**rather** 30:18 36:6,19

**reach** 17:11 21:12

**read** 18:5,7,10 35:23 36:1 48:17 55:14 68:2 74:21 75:19,22 77:5 112:20

**readable** 109:4 109:14 111:5

**reading** 4:5 19:23 57:21 59:11,16 82:19

**reads** 53:6

**real** 17:18 20:20 24:19 33:21 36:11 46:15 47:7 116:13

**really** 6:12 7:20 12:13 14:22 21:2,8 22:15 27:6,10 29:3,8 31:3,15 32:22 34:21 35:11,17

36:2,3,4 37:3,9 40:14,17 41:4 43:2,4,17 44:2 46:20 48:8 51:9,20,24 55:4 57:8,11 65:18 67:3 68:2,15 69:4 72:3 73:14 75:17,19 76:5 80:5,11,21 81:8,18 82:4 84:23 85:12,17 87:18,20 88:19 89:3,12,14 91:16 96:1,2 98:2 100:17,22 107:17,18 110:22 113:5 113:10 115:12

**reason** 13:1 15:6 16:14 17:23 30:8 36:17 47:7 59:19 104:2

**reasons** 19:6 21:21 83:24

**rebut** 98:2

**rebuttal** 3:23 52:15 89:19,20

**recall** 90:18 92:13 96:8

**receives** 116:7

**recess** 90:10,11 117:9

**[recognition - respond]**

| | | | |
|---|---|---|---|
| **recognition** 95:12,13,15 101:8 | 103:14 106:9 108:11,12 111:6 | **relevant** 35:21 36:18 53:23,24 57:9 100:17 115:18 | **representing** 11:20 16:22 17:2 |
| **recognized** 32:21 47:12 | **references** 70:17 89:1 94:18 105:13 | **rely** 52:4 | **represents** 6:4 9:7 11:11 14:10,12 17:13 |
| **recognizes** 74:18 | **referencing** 108:10 | **relying** 52:10 98:8 101:17 | 18:11 21:8 25:11,14 34:6 |
| **recommendat...** 99:19 | **referred** 113:2 | **remember** 18:17 21:18 | 39:16 42:16,17 50:9 |
| **record** 2:12,13 2:21 52:4,10 71:13 72:24 107:10 118:10 | **referring** 32:23 34:21 79:4,4 110:5 113:3 | 24:6 96:9 99:14 | **reprogrammed** 113:19 |
| | **refers** 20:23 74:9 | **repeat** 7:15,22 | **require** 10:8 |
| **recorded** 118:7 | **reflect** 45:12 | **repeats** 7:16 | **required** 80:20 |
| **rectified** 44:11 | **reflected** 57:13 | **replace** 29:1 30:10 | **requirement** 80:18 |
| **red** 8:12,17,20 9:3,6,9,11,19 10:7 23:7 37:13,14,17,21 | **reflects** 45:11 | **reply** 47:10 110:15 | **requires** 60:3 62:21 65:17 113:13,14 |
| | **regard** 4:17 5:24 17:16 41:4 57:8 92:5 93:8 | **report** 99:18 | |
| | | **reporter** 1:24 2:10 55:20 | **requiring** 113:15 |
| **redesigned** 113:20 | | **reporter's** 2:3 | **resolution** 36:12 |
| **refer** 16:10 20:18 92:22 93:1 98:5 113:1 | **registered** 1:24 | **represent** 6:13 9:22 20:4 43:18 48:9 | **resolve** 5:2 29:12,15,16,17 44:18 46:14 72:4 |
| | **regular** 6:23 | | |
| | **rehash** 84:1 | **representation** 6:8,20,20 33:16 37:11 39:3 | |
| | **rejected** 35:14 | | **resolves** 16:5 |
| **reference** 14:15 35:22 36:17 42:1 44:4 46:1 55:1,4,13,14 57:18 67:8,9 68:5 78:24 80:9,15,19 82:24 85:20 89:2 92:1,7,11 93:21 103:13 | **related** 2:14 15:10 | | **resolving** 73:5 |
| | **relates** 7:7 | **representations** 13:5 | **respective** 67:13 75:1 86:16 |
| | **relation** 74:6 82:9 | **representative** 9:6 | |
| | **relationship** 77:24 102:9,11 | **represented** 6:3 24:21 25:7 27:22 | **respects** 38:11 |
| | **relay** 51:21 | | **respond** 3:22 110:22 |
| | **relevance** 98:11 115:4 | | |

**[responded - saying]** Page 26

**responded** 110:19

**response** 55:11 55:16 70:5 71:16 78:6 79:21 82:6 109:17,19 112:22

**rest** 56:22 67:21 75:11 77:18

**restrict** 46:6

**restricted** 45:19

**restroom** 89:23

**result** 88:2 116:9

**results** 60:5,10 60:16 72:4 78:16 101:12

**return** 113:22

**returns** 116:8

**reversed** 47:11

**reviewing** 73:8

**rid** 48:12 56:23 66:5

**right** 6:9 11:17 16:7,15 17:4,5 18:6 19:5,20 19:21,21 25:22 28:11 30:6 34:6,8 37:16 38:4,5,7,22 41:6,8 44:13 45:1 47:21

48:2 52:5,12 54:5 58:13 59:8 61:2,6,12 65:24 66:15 71:20 74:17 75:4,13 76:2 79:7 84:17 86:11 87:4 88:4,11,12,13 89:8,9,21 94:1 99:1,9,22 101:9,10,14,15 103:18,19 107:5,16 108:22 109:18 112:3 114:15 115:20 116:11 116:24

**rise** 2:6 90:12

**rises** 6:5

**risking** 36:19

**rob** 62:9

**robbed** 62:2,7

**robbers** 62:5 62:13,13,15,19

**roger** 1:21

**role** 29:15

**room** 90:24

**roughly** 58:22

**rules** 3:14

**run** 35:1 40:11 42:23 43:13 81:15 106:4,7 114:3,5 115:8 115:23 116:3,3

**running** 58:17 114:8,10 115:15 116:10

**runs** 110:8 111:17 113:24 115:18 116:2

**russell** 1:20 3:8 3:9,10 32:11 32:14 33:4,13 33:19 34:7,18 36:14 37:17 38:17,19,22 39:1,6,17,20 41:6,10,19,21 42:7,11,17 44:13,20 45:1 45:7,15 47:6 48:2,18,22 49:4,21 51:4,8 51:15 52:5,12 52:17 55:10,12 55:21,23 57:15 58:12 72:1 73:10,23 74:13 74:17 75:3 76:2,8,24 77:15,21 79:2 79:7,22 80:16 80:21 81:13 82:7 83:3,7,19 83:24 84:17 85:8,11 86:7 86:11 87:5,8 87:12,17 88:4 88:9,12,14,15

89:9 97:24 99:9,16,22 100:20 101:5 101:10,15 102:4 103:16 103:20,24 104:20 105:15 106:14 112:7 113:10,14 114:15,20 115:11,20,22 116:12,15

**s**

**s** 2:2

**safe** 117:7

**sample** 10:22 21:20 23:4 64:4 71:16

**samples** 10:19 10:21 12:3,5,5 12:6,8 21:17 21:18 54:8 59:10 67:14

**sampling** 12:4 22:4 43:15

**saying** 4:14,17 16:8,16 20:4,8 21:8 25:19 29:5,7,8 30:3 31:11 40:5 48:4 49:15,18 51:7 53:19 60:1,2,3,7,11 60:16,20 61:13 63:1 64:23

**[saying - show]**                                                                     Page 27

66:1 69:12,16
70:7 71:2
72:12 74:8,10
74:14 75:9
77:20 78:23
79:8 86:4,8
88:3,17 92:24
94:11,15 95:1
95:5 96:11
97:4 101:17
109:2,7,13,14
**says** 30:8 54:22
56:17 59:6,8
62:1,5,8,17
63:10 64:10
65:13 67:18
68:14 69:4
70:20 71:12,13
71:13 75:4
76:14,19 79:13
79:13,14 82:2
87:23 89:1
92:6,21 93:10
93:11,13 95:23
97:18 102:8
105:5 107:21
107:21 108:6
110:9 116:15
**scale** 37:19
**scales** 37:18
**scenario** 75:12
86:5
**scheme** 66:18
66:20

**school** 75:6,8
**screen** 4:1
11:20 25:21
26:7 73:24
78:2 86:12
94:18
**seal** 118:14
**seated** 2:7
90:13
**second** 7:15,17
12:3,5,5,6
13:19 14:7,18
14:18 15:8,9
15:10 22:11
26:13 30:20
37:19 38:6
49:9 51:16
56:16 58:14
59:4,7 60:8,20
63:20,24 64:12
64:17 65:2,8
65:16,21 66:3
66:11,13,14
67:6,16 69:1,3
74:16 99:24
107:11
**seconds** 42:8,10
116:13
**section** 112:16
**see** 11:12 24:16
27:16 32:6
52:14 56:19
70:13 76:13,19
77:3,8 83:17
89:18 91:10

94:21 97:2
98:7 100:24
101:19,22
103:5 106:2,13
**seeing** 6:13
**seem** 57:10
70:24 72:12
103:12
**seemed** 20:8
45:23 53:1
89:11
**seems** 19:17
31:3 41:23
49:12,14 64:11
98:3,4
**seen** 60:4,5
**seeped** 21:1
**select** 61:19
63:17 70:21,21
79:19 84:8
**selecting** 62:21
62:24 63:7
82:12
**selection** 82:16
82:17 83:4
84:2 87:17
89:11
**selects** 63:2
82:21
**send** 14:13
**sense** 31:3 33:6
36:19 47:7
48:21 49:8
50:18 51:24
56:7 65:3

75:24 88:1
110:22 113:1
**sensor** 90:22
91:8 101:21
**sensors** 91:5,9
101:9,11
**sentence** 67:21
**sentencing**
98:11
**separate** 65:19
70:1,2 71:5
82:4 88:7
**separately**
70:19
**server** 14:14
**services** 2:10
**set** 54:17 66:17
81:5 84:7,11
85:15 90:20
103:16 106:10
113:18,21
114:1 117:3
**sets** 100:13
**setting** 19:24
61:3
**several** 92:15
**sharp** 42:19,21
**shaw** 1:20 3:10
**shift** 7:22 8:1
**shifts** 8:10
**shorthand**
118:7
**shot** 53:17
**show** 11:22
22:16,24 33:21

**[show - sorry]** Page 28

71:4 72:21,22 73:14 93:6 115:10

**showing** 23:4,6 23:8,11 73:24

**shows** 60:17 78:11 83:8 86:18 89:15 108:21

**side** 2:20,23 3:16,21,22,23 23:12 28:14 32:9 49:15 52:15 54:2 58:20 68:14 70:3 71:2,24 73:1 82:2 87:23 89:23,24 90:3,14 94:14 97:23 107:8 109:1 112:6

**side's** 70:15 103:2 107:6

**sides** 3:23 49:11 117:1

**sideshow** 57:16

**signal** 7:16,16 10:17,23 11:9 11:12 12:13,23 13:2 15:21,21 17:3 19:1 21:16,23 22:23 24:15,19,21 27:7,8 28:16 28:18,19,21

30:17 31:1,2,8 31:13,16,22 33:6 34:15,22 37:23 38:3,12 39:9,14 40:3 40:11 43:16 45:12,13 47:13 47:20 48:24 49:11 51:2 53:8,10 54:11 54:13,18 58:9

**signals** 10:20 11:7

**signature** 13:9 14:9,14,23 118:16

**signatures** 13:7 14:14,20

**significance** 53:23,24

**significant** 30:6

**significantly** 98:23

**silly** 43:4

**similar** 7:6

**simple** 19:7

**simplest** 13:17

**simplifying** 14:1,2

**simply** 9:11,16 20:4 73:20 79:4 102:8 109:22

**sine** 6:22,23,24 8:4,7,9,12,16

8:17,24 9:1,17 10:8 24:6 31:12

**single** 6:22 11:10 15:24,24 17:7,14 18:8,8 18:11,12 20:2 20:19 21:9 23:22 25:18,18 28:9,12,20,20 34:22,23 35:3 35:3,12,12 36:23,24 37:7 41:14,14,18 43:14,21 47:9 47:13,17,18,18 47:22,23 48:23 48:23 50:1,19 51:1,1,2 53:6,7 54:22,23 57:19 58:1,4

**situation** 76:13 81:3

**skill** 16:17 17:19 86:21 102:4,21 104:6 106:20 112:20 114:4

**skilled** 32:20 33:8 48:4 56:23 58:11 80:24 84:14 105:18 106:1

**slice** 12:3

**slide** 37:12 38:14 68:24 79:9

**slides** 3:24 4:2 5:9 32:12 37:11 61:4

**sliding** 74:2,9

**slow** 55:20

**small** 23:13,14

**smaller** 23:13

**snippet** 85:10

**software** 92:22 94:12,13 95:2 95:4 105:5 106:5 108:11 108:15,17,22 109:6,15,20,21 110:1,4,6,7,8,9 110:9,23 111:10,17 112:13 113:11 113:12,13,15 113:18,24 114:9,13 115:7 115:8,22 116:2 116:3,21

**solely** 60:9 73:9

**somebody** 14:12 81:6

**somewhat** 27:17,18

**soon** 117:4

**sorry** 55:21 105:15

**[sort - structure]**                                                 Page 29

**sort** 6:20,24 7:3
  7:5 9:21 31:11
  32:23 43:16
  91:10 93:13
**sound** 6:2,5
  10:5 13:5
  14:10 33:21,24
  34:1 42:3,4,8
  42:17,22 47:5
  86:20
**sounds** 33:14
  33:22,22 43:1
  43:3 45:13
  48:10 53:22
**span** 4:6 39:11
  43:1,3
**spans** 38:3,5
**spec** 16:15 17:9
  70:7 75:11,23
  77:23 78:20
  80:23 81:2,3
  85:14 93:13
  95:23 110:9
**specialized**
  107:22
**specific** 5:1
  54:22 105:11
  116:7
**specifically**
  71:2 106:10
**specification**
  17:16 75:14
  81:20 82:15,17
  85:7 91:22
  92:4 93:11

103:12 104:9
  104:13 108:6
  109:19
**specified** 96:17
**spectral** 10:13
  11:13 15:23
  16:12,19 23:21
  26:4 38:11
  39:1,12 43:9
  55:24 56:1
  59:9,19 60:4,9
  60:16 61:16
  63:20,21,23,24
  64:13,24 65:16
  65:22 66:13,13
  67:13,15,16,24
  68:4,19 69:6,8
  69:10,20,21
  70:10 71:10,11
  73:20 74:11,22
  75:1,4,18 76:5
  76:9 78:9 79:1
  81:10,11,15,16
  83:11,13 84:8
  84:9 86:2,5,9
  86:16,19 87:2
  87:10,15,23
  88:2,7
**spectrum** 56:18
  71:15,18 72:14
  72:15 78:6,16
  78:23,24 79:9
  79:10,15 83:14
**speed** 58:17

**spend** 5:13
  51:24 52:20
  58:22
**spike** 31:16
**spit** 101:12
**squeezed** 94:24
**squiggly** 11:19
**stack** 23:16
**stand** 90:10
  117:9
**standalone**
  113:16
**standing** 62:6
**stark** 24:5
**start** 2:22 3:8
  4:16 5:14 7:21
  8:24 35:5
**started** 3:13 5:6
  8:6
**starting** 5:17
  82:20 83:21
**starts** 77:22
  94:10
**statement**
  94:22 95:4
**statements**
  118:6,10
**states** 1:1
**step** 16:18
  59:21 61:15,20
  61:20 63:2,8
  63:15,16,18,19
  64:12,17 65:17
  66:2,4,12 70:2
  71:5,19 74:23

74:24 77:16
  79:21 80:11
  82:4 83:9,10
  97:2 103:18
  106:15,15,16
  106:16 115:7
**steps** 75:7
  115:19
**steve** 3:3
**steven** 1:17
**stick** 90:5
**stops** 31:18
**storage** 109:4
  109:14,21,22
  111:3,6,9,9
  113:16
**stored** 114:1
  115:23
**storing** 111:10
**straight** 56:2
**stretch** 89:22
**strongest** 95:10
**structural**
  95:18 105:14
**structure** 84:6
  84:6 91:18,22
  92:2,8,12
  93:10,16,22
  94:5,9 96:14
  96:22 97:15
  98:6,17,23,24
  99:8 100:1,7,7
  100:14,14
  101:24,24
  102:5,10,14,16

**[structure - tell]**                                        Page 30

102:18,20,23
103:9,10,15
104:8 105:21
106:4,10
**structures**
92:15,16,23
95:18
**struggling**
26:16
**stuff** 77:19
86:24
**subcompone...**
94:12
**subject** 13:3,4
**submit** 65:12
67:17 71:17
**subsequent**
64:20
**substance** 4:9
4:10 10:1
**sufficient** 97:6
103:9,14,14
**sufficiently**
92:2,8,11 93:1
93:10,21,21
94:5 95:18
99:7
**suggest** 67:12
70:18 86:15
**suggested**
23:23 69:6
90:6
**suggesting** 76:3
109:10

**suggestion**
33:12
**suggests** 28:8
**sum** 7:24 8:5,6
9:7 39:12
**supervision**
118:8
**support** 17:9
69:24
**supporting**
85:7
**supports** 85:4
85:14
**suppose** 14:11
30:12
**sure** 15:11,12
19:22 26:21
29:22 31:6
44:14,15,16
46:24 49:4
52:3 60:13
63:6 85:15
87:18 89:14
100:22 105:19
108:24 110:18
111:20 113:19
116:13,14
**surprising**
24:17
**suspects** 64:18
**swallows** 29:6
**synonym** 12:10
33:3,6 39:18
**synonyms**
10:11 69:15

**system** 6:17
116:4
**systems** 95:13

**t**

**t** 118:1,1
**take** 6:1 9:8,8
10:19,21 11:10
12:3,3 13:11
18:13 21:12,15
21:16,17,18
22:5 28:22
31:12 35:7,7
48:6,11,16
49:22 52:23
54:21 66:19,20
72:14 89:22
90:8,23 117:1
117:6
**taken** 90:11
118:5
**takes** 70:14
102:23 113:22
**talk** 11:15
32:20 33:8
41:24 67:5,22
70:6,14 83:17
84:19 99:18
105:17 114:24
**talked** 18:15,18
21:13 56:2,3,5
58:4 70:5
82:22 87:2
88:22 100:22
**talking** 6:12
19:12 25:6,23

33:14 35:15
40:21 42:2,12
49:12,13 50:5
51:12 66:16
70:8,9,10
78:18 80:14
82:3 83:9,16
86:18 96:19
103:18 108:2
112:17,19
113:6
**talks** 42:5 48:3
56:1 71:9,10
73:18 74:2
82:8 95:21
105:2
**tall** 50:8
**tangible** 109:4
109:14 111:5
**targeting** 50:2
50:20
**teach** 67:11
68:3
**tease** 30:1 36:5
**technical** 5:14
17:23 40:15
51:19
**technology** 3:6
4:9,11 5:23
**television** 90:19
**tell** 4:4 19:22
39:7 40:24
56:21 58:6,7
64:23 73:16
85:2 93:4

**[tell - think]**

105:23 106:21

**telling** 25:7 109:5

**tells** 59:12,18 73:1 95:17 97:9 109:3

**term** 4:17 11:14 12:12,14 15:8,9,9 19:12 20:15 24:23 29:14 32:4,17 32:21 33:2 36:12 37:9 38:10 40:14,17 40:17,19 42:13 43:17 44:9 45:19 46:6 51:11,14 52:1 52:21 57:14 58:14,14 59:3 69:1 70:1 71:5 72:2,2 73:5 82:5 89:19 90:2,3 91:14 91:17,19 92:1 93:2,8 97:2,3 98:5,21,22 100:2,4,10,11 104:15,16,18 104:19,24 105:17 107:7,9 107:10,14 109:12 113:8 113:11

**terminology** 7:4

**terms** 2:19 3:15 3:20 4:9,12,20 5:1,16 6:11 11:18 15:2 58:21 73:7,11 97:8,12

**testimony** 16:16 47:10 51:19 104:6 112:18 116:1

**tewfik** 67:8,10 67:11,19,22 68:3,6,8,9,10 85:20 86:13 88:23 89:2

**texasldpc** 96:19 97:17 100:20

**text** 15:4 85:20

**thank** 2:9 3:7 3:12 5:10 8:22 32:8 55:10 58:12 59:2 71:21,22 89:18 97:21,22 107:5 116:11,24 117:10

**theirs** 81:5

**thereof** 118:12

**thing** 7:7,9 11:2 14:5 29:8 31:18 33:15,15 35:18,20 39:10 42:15 43:21

48:6 53:16,21 62:17,17,23 67:2 68:7 69:10 71:2 75:20 76:7 77:13 80:10 88:7 92:24 93:13 95:15 97:20 99:3 100:12 102:15 102:16,19 110:2,5,10,24 111:10,20 112:4,5 114:5 114:21 115:2 115:17,18 116:19

**things** 2:13 4:6 7:11 8:3 13:3 18:20 19:24 32:10 34:4 43:16 61:12 64:8 76:15 95:16 98:7,16 99:1 104:3 105:14 112:11 114:7,24 115:15 116:16

**think** 4:13,18 4:24 5:4,7,13 5:18,23 15:19 16:5,7,8,17 17:8,22 18:22 19:15 20:9 21:10,11 24:17

25:4,19,20,24 26:14,22 28:7 29:13,14,15 30:2 32:5 33:7 33:20 34:7,9 36:15 37:5 41:10,12,16 42:14 44:6 46:11,14,22 47:1,6,16 49:8 49:9,10 50:13 51:8,20,22,23 52:1,3,12 53:12 55:2,5,6 55:12,13 56:7 57:15,23 59:14 59:21,22 60:14 61:11,13 63:6 64:22 70:15,21 70:22 71:1 72:3 73:10,17 74:8 75:10,16 76:5,21,24 77:1,3 78:15 78:23 79:23,24 80:11 81:2,8 81:13,18,20,23 82:23 83:7 84:1,14 85:3,4 85:9,11,12,19 85:24 86:4,17 86:21 87:20,21 88:3,16 89:15 90:1 91:21 92:6,17 94:21

**[think - trying]**                                                          Page 32

95:10,11 96:15
96:24 97:7,14
97:16 98:1,18
100:12,21,23
101:9,16 102:7
102:12 103:9
103:17,20,22
103:24 104:1
106:16 107:13
108:3 109:9
110:12,15,16
112:24 113:7,8

**thinking**   4:7,13
6:7

**thinks**   26:14

**third**   7:18
14:19 22:12

**thought**   19:23
19:24 31:21
32:19,20 36:18
89:10 99:9

**thousands**   14:3

**three**   62:9 90:2
91:9 105:3
114:24 116:16
116:23

**thumb**   109:23

**time**   3:17 6:4,5
6:6,19 7:21,23
8:2,13 10:14
11:7 15:22
21:16 24:8
27:7 28:19
30:17 31:15,22
32:6 34:9

39:14 41:2
43:1,3 51:24
52:20,21 53:15
54:15 56:15
58:17,19 59:15
63:7 77:23
79:23 84:18
90:5 97:19
107:6 113:19
113:21 117:1
118:6

**times**   4:8 7:14

**toasters**   114:16

**today**   2:11,18
3:2,3 15:9
39:23 46:5
51:18 52:8
58:23 117:3,8

**together**   43:17
43:22 45:2
54:13,18

**told**   41:21
62:12

**tone**   6:22,22
24:6,6,10,15

**took**   34:19 47:8

**tool**   98:9

**tools**   98:14

**top**   23:16,17,17
37:12,13,14,15
39:10,13 43:19

**totally**   40:12

**touch**   72:5
103:13

**track**   3:17 7:21
40:22

**transcribed**
118:8

**transcript**
118:9

**transcription**
118:9

**transform**
10:10,12,13,13
10:13,14,15,15
10:22,24 11:1
11:3,6,13,16
15:23,23 16:13
16:20 18:16
54:8 56:10
59:9,19 60:4,9
60:17 64:24
65:16,22 68:19
69:6,8,11,20,21
71:11 73:21
74:11,22 75:5
75:18 76:6,9
79:1 81:10
83:12,13 84:8
84:10 87:2,10
87:15,23 88:2
88:7

**transformation**
56:1 81:15,17

**transformatio...**
55:24

**transforming**
15:21 28:18

**transforms**
17:17 56:3

**travels**   117:7

**treated**   91:18
91:19

**treatment**
96:20

**tried**   45:22
54:6 91:9

**tries**   54:20

**true**   36:15
49:20 56:18
87:17,18 104:3
106:17 113:3
118:10

**try**   3:17 4:21
6:16 21:4
24:24 26:19
37:8 38:14
41:9 44:12
52:8,24 56:15
58:16,18 59:23
59:23 63:11
91:2 117:4

**trying**   4:10,19
23:3 25:1,2
28:22 30:1,20
31:6,10 35:19
36:3 37:2,3
40:2,18 42:24
43:11,18 44:7
46:9,11 47:24
48:21 49:4,7
50:22 51:9
52:23 57:20

**[trying - using]**                                              Page 33

72:20 76:14,16
78:14 79:24
84:15,23
100:24
**tude** 7:5
**tuesday** 1:10
**turn** 5:6 11:21
58:15 107:7
**turning** 13:6
**turns** 8:4 12:8
15:7 75:14
**tutorial** 51:18
**tv** 6:17 13:6
14:13 33:21
90:23
**tvision** 1:7 2:16
3:10 16:2 17:6
17:21 23:23
67:18 107:21
**tvision's** 15:23
17:24 18:3,5
18:19 23:2
26:14 108:2
**twice** 7:16
**two** 2:14 3:24
7:15 8:16,24
9:3,16 13:15
13:18 15:12
18:4 25:21
26:9 37:18
44:12,15,17
55:16,23 60:12
61:13,16,17,19
61:24 62:2,3,4
62:5,6 64:8,11

64:20 65:19
66:6,7,9,15,19
66:21,22 68:12
71:3 74:24
75:1 79:13,16
79:20 81:11
83:11,24 87:3
90:22 91:5,8
100:1,4,8,9
101:6 102:9
105:3 116:20
**type** 10:24
42:14 46:13
56:9 106:10
114:18
**types** 55:24
56:1
**typical** 9:21

**u**

**u.s.d.c.m.j.**
1:13
**ultimate** 33:11
**ultimately**
40:17
**uncontested**
45:8
**under** 57:21
66:24 76:10
91:18 97:17,17
106:17 117:2
118:8
**underlying**
11:7,12 12:23
21:16,23 22:23
24:7,8,15,21

27:7 30:17,24
31:2,8,13,15,22
33:6 99:18
**understand** 4:8
4:8 5:1,20 15:3
20:12 21:2
23:3 25:4 26:2
26:5,16 37:9
37:10 42:14
44:2,12,17
46:15 47:16
48:5 52:9 61:1
72:8 73:4
90:17 92:1,7
92:10 93:1
94:6 98:22
110:21 111:1
**understanding**
41:8 85:2
**understood**
20:17 59:1
**unfortunate**
20:24
**unfortunately**
11:9 20:14
31:10
**unit** 115:24
**united** 1:1
**unnecessary**
17:11 18:3
**unrebutted**
112:18 116:1
**unsupported**
51:19

**usage** 20:24
**use** 4:1,2,10 8:3
12:20,21,24
13:1,3 19:7,17
20:15 26:24
28:17 29:21
32:21,22 33:2
36:16 43:17
44:23 54:8
55:3 58:19
64:13 66:7
74:5 89:23
90:2 91:12,12
94:17,17
105:21,22
106:21 108:1,3
109:7 114:14
**used** 12:15 32:5
52:20 54:17
70:18 71:6
76:1 84:24
94:4 98:5,10
100:16 105:18
**useful** 11:12
**uses** 35:1 46:2
66:18 74:6
77:23 109:3,8
**using** 16:19
37:6 38:14
53:5 68:16
77:10 91:9
98:14 101:8

**[v - words]**                                                                                         Page 34

| v | | | |
|---|---|---|---|
| **v**  1:6 | **walk**  73:16 | 14:10 | 36:1 50:13 |
| **valid**  21:24 | 75:11 | **waveforms** | 55:14 81:14 |
| **value**  52:1 78:9 | **walked**  34:3 | 6:12 11:20 | 88:23 91:23 |
| **variable**  48:6 | **wall**  91:8 | 13:5 | **web**  116:3 |
| **various**  5:15 | **want**  12:24 | **wavelength** | **welcome**  3:12 |
| 19:4 | 13:1 14:13 | 33:18 | **went**  25:4 |
| **versus**  85:1 | 15:11 21:10 | **waves**  6:23,24 | 39:21,23 80:3 |
| 93:10 114:9 | 22:24 23:1 | 8:7,9,16,24 9:1 | **wether**  35:17 |
| **vertical**  9:23 | 25:16 32:3 | 9:17 10:5,8 | **whatsoever** |
| 16:23 17:1 | 41:17,20 45:24 | **way**  4:21 6:11 | 56:6 |
| 23:6 | 46:8,9,17 | 9:6,21 12:1 | **williamson** |
| **victim**  61:24 | 51:14 52:19,21 | 14:16,21,23 | 99:21 104:15 |
| 62:1,3 | 53:2,4 55:7 | 18:10,12 22:13 | 104:17,22 |
| **videos**  14:15 | 58:20,22 59:15 | 26:2,2 28:5 | **wilmington** |
| **view**  25:2 29:10 | 60:22 61:17 | 31:11 32:23 | 1:10 |
| 36:9,22 39:19 | 62:1 67:3,5 | 34:2 41:8 | **wired**  107:21 |
| 47:4 74:4 81:1 | 84:18 90:4,5 | 42:14 44:11 | **wish**  3:23 |
| 82:22 87:3 | 93:20 94:15,24 | 45:15 46:12,17 | **witness**  118:14 |
| 93:9 106:12 | 96:1 97:20 | 48:12 51:6 | **wonder**  49:19 |
| **views**  44:10 | 102:2 | 52:24 54:17 | 50:24 51:6 |
| **visible**  88:1 | **wanted**  51:17 | 55:3 56:8 | **word**  10:12 |
| **visual**  6:8 | 73:12 76:8 | 57:12,22 60:7 | 19:7,10 33:7 |
| 37:11 | 81:14 116:23 | 61:24 62:3,4,6 | 33:10 42:15 |
| **visualize**  4:19 | **wants**  6:17 | 68:2,4 69:11 | 44:3 55:2,3 |
| 98:10 | 46:3 56:10 | 69:14,19 70:18 | 68:7,22 74:5,6 |
| **visually**  57:2 | 105:19 111:22 | 74:21 75:14,15 | 76:10,15 77:11 |
| **volume**  42:23 | **warren**  1:17 | 75:19,22 76:1 | 77:23 83:7 |
| | **watching**  6:18 | 76:3,21 81:7 | 104:16,23 |
| w | 14:12 53:16 | 81:20 89:4 | **wording**  26:21 |
| | **wave**  6:23 8:4,4 | 90:21 93:19 | **words**  7:5 9:2 |
| **wade**  17:23 | 8:12,15,17 9:3 | 96:3 97:15 | 26:17 27:1 |
| **waived**  36:22 | 9:5,9 24:6 42:3 | 99:2,5,6 101:4 | 28:24 29:1,17 |
| 45:17,18 46:4 | 42:4,10 | 101:23 112:20 | 29:21 40:18 |
| 104:1 | **waveform**  6:3,3 | **ways**  18:4 | 46:16,21 47:3 |
| **waiver**  36:19 | 8:5 10:21 13:9 | 20:15 35:24 | 59:5 68:16 |

**[words - zero]**                                     Page 35

71:10 75:24
84:24 85:1
88:15,16 93:7
94:3 99:7
110:17
**work**  10:20
21:4 22:3 74:9
91:8,11
**worked**  36:10
85:22 91:5
**working**  67:10
85:21 86:14
**works**  14:24
97:12
**world**  10:18,23
17:18 20:21
**worry**  79:19
82:2
**worth**  4:5
42:10
**write**  60:23
81:7 94:23
104:21
**wrong**  16:9
18:4 28:23
31:23,23 34:6
34:9 42:15
51:22 55:6
64:23 71:7
85:3
**wrongly**  26:23
**wrote**  57:7
75:15
**wsou**  99:10
100:4

**x**

**x**  106:3
**xbox**  95:24
96:6

**y**

**y**  106:3
**yeah**  49:18,19
76:4 86:9
111:14 113:14
**yep**  83:19
**yotis**  1:17
**yovits**  3:4 5:7,8
5:11,20,24
6:10,15 8:22
9:7,15 10:3
11:17,22 12:2
13:24 14:2
16:7,23 17:4
19:5,9,14,20
20:12 21:6
25:9,12,15
26:9 27:3,14
27:24 28:4,6
28:11 29:2
30:7,16,22
31:9 32:5,21
34:3 52:16
53:12 54:5
55:9 58:16
59:1 61:10,18
61:23 63:4,10
63:13,22 64:2
64:6,9,15 65:6
65:9,11 66:1
66:17 67:2

68:23 69:14,17
69:19 71:8,17
71:20,22 78:19
79:18 89:20
90:15 92:3,13
92:19 93:3,6
93:12,23 94:2
94:6,20 95:7
95:11,20 96:8
96:12,15 97:16
97:21 107:15
107:16 108:12
108:16,20
109:18 110:20
111:8,14,18
112:3

**z**

**z**  106:3
**zero**  7:20,22,23
7:24 8:2 12:20
14:8 22:1,9
24:17 31:20
37:19,20 40:6