# EXHIBIT 1

| | |
|---|---|
| **From:** | Jason Xu <jason.xu@rimonlaw.com> |
| **Sent:** | Sunday, September 10, 2023 10:13 PM |
| **To:** | Lewis, Douglas; Schenerman, Jolie |
| **Cc:** | Nielsen_TVision_team; Palapura, Bindu A.; Moore, David E.; nhoeschen@shawkeller.com; Brown, Andrew L.; Eric Cohen; Michael F. Heafey; arussell@shawkeller.com |
| **Subject:** | RE: Nielsen/ TVision: ▮▮▮▮▮▮ |

CAUTION: This message originated outside of Kelley Drye and was sent by: jason.xu@rimonlaw.com

Doug,

TVision disagrees with your position and will not provide the discovery you requested.

That being said, there may be some miscommunication regarding my earlier email.  TVision does not plan to and will not use ▮▮▮▮▮▮ for any purpose in this matter.

I believe this should resolve your concern.

Best,
Jason

**From:** Lewis, Douglas <DLewis@KelleyDrye.com>
**Sent:** Sunday, September 10, 2023 1:59 PM
**To:** Jason Xu <jason.xu@rimonlaw.com>; Schenerman, Jolie <JSchenerman@KelleyDrye.com>
**Cc:** Nielsen_TVision_team <Nielsen_TVision_team@KelleyDrye.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Moore, David E. <dmoore@potteranderson.com>; nhoeschen@shawkeller.com; Brown, Andrew L. <abrown@potteranderson.com>; Eric Cohen <eric.cohen@rimonlaw.com>; Michael F. Heafey <michael.heafey@rimonlaw.com>; arussell@shawkeller.com
**Subject:** RE: Nielsen/ TVision: ▮▮▮▮▮▮

Jason,

Since you will not represent that you will not use ▮▮▮▮▮▮ for any purpose in this matter, we will need discovery about ▮▮▮▮▮▮. Mr. Sidhu testified that ▮▮▮▮ was most knowledgeable about ▮▮▮▮▮▮. In addition, Mr. Sidhu repeatedly testified that he did not know the details about ▮▮▮▮▮▮, including at least:

1. Whether ▮▮▮▮ses a ▮▮
2. Whether Macro takes ▮▮▮▮▮▮
3. Whether ▮▮▮▮ looks at ▮▮▮▮▮▮
4. Whether ▮▮▮▮ uses an ▮▮▮▮▮▮
5. Whether ▮▮▮▮ used ▮▮▮▮▮▮

Moreover, Mr. Sudhu was designated for topics that would cover ▮▮▮▮▮▮, including at least topics 5 and 6. He was, however, unprepared to testify about it.

In addition, TVision failed to produce responsive documents about ████████████, including in response to at least RFPs 1-3, 7-8, 13-14, 44, and 97. Request Nos. 1-3, 7-8, 13-14 are not limited to production systems. We have repeatedly received assurances from TVision's counsel that they have not limited discovery to the ████████████ identified in Nielsen's infringement contentions. Moreover, Nielsen's Request No. 44 seeks documents that include those related to ████████ ("44. All Documents concerning any attempts by TVision to design around, avoid the use of, or avoid infringing any of the Nielsen Patents-in-Suit."). And given your unwillingness to agree not to use ████ ████ for any purpose in this case, documents relating to ████████████ would also be responsive to Request No. 97.

We need TVision's documents relating to ████████████ immediately and to schedule a deposition of ████████ shortly thereafter. If you will not agree to this, please let us know when you and your local counsel are available for a meet and confer so we can ask the Court for relief.

## DOUGLAS LEWIS

**Kelley Drye & Warren LLP**
Tel: (312) 857-7073

**From:** Jason Xu <jason.xu@rimonlaw.com>
**Sent:** Thursday, September 7, 2023 9:11 PM
**To:** Lewis, Douglas <DLewis@KelleyDrye.com>; Schenerman, Jolie <JSchenerman@KelleyDrye.com>
**Cc:** Nielsen_TVision_team <Nielsen_TVision_team@KelleyDrye.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Moore, David E. <dmoore@potteranderson.com>; nhoeschen@shawkeller.com; Brown, Andrew L. <abrown@potteranderson.com>; Eric Cohen <eric.cohen@rimonlaw.com>; Michael F. Heafey <michael.heafey@rimonlaw.com>; arussell@shawkeller.com
**Subject:** RE: Nielsen/ TVision: ████████████

---

**CAUTION: This message originated outside of Kelley Drye and was sent by: jason.xu@rimonlaw.com**

---

Doug:

TVision does not presently plan to use ████████████████████ for purposes of this case.

Best,
Jason

**From:** Lewis, Douglas <DLewis@KelleyDrye.com>
**Sent:** Thursday, September 7, 2023 5:32 PM
**To:** Jason Xu <jason.xu@rimonlaw.com>; Schenerman, Jolie <JSchenerman@KelleyDrye.com>
**Cc:** Nielsen_TVision_team <Nielsen_TVision_team@KelleyDrye.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Moore, David E. <dmoore@potteranderson.com>; nhoeschen@shawkeller.com; Brown, Andrew L. <abrown@potteranderson.com>; Eric Cohen <eric.cohen@rimonlaw.com>; Michael F. Heafey <michael.heafey@rimonlaw.com>; arussell@shawkeller.com
**Subject:** RE: Nielsen/ TVision: ████████████

Jason,

We disagree that Mr. Sidhu was prepared to testify about ████████████. Moreover, TVision failed to produce documents relating to ████████████, despite their responsiveness to Nielsen's document requests.

That said, relying on your representation that ████████████ "is irrelevant to any of the claims and defense in this case," if you will represent that TVision will not use ████████████ (i.e., ████████████████████████████████) for any purpose in this case, we will not pursue this discovery issue with the Court. Please let us know.

## DOUGLAS LEWIS

**Kelley Drye & Warren LLP**
Tel: (312) 857-7073

---

**From:** Jason Xu <jason.xu@rimonlaw.com>
**Sent:** Wednesday, September 6, 2023 9:03 PM
**To:** Schenerman, Jolie <JSchenerman@KelleyDrye.com>
**Cc:** Nielsen_TVision_team <Nielsen_TVision_team@KelleyDrye.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Moore, David E. <dmoore@potteranderson.com>; nhoeschen@shawkeller.com; Brown, Andrew L. <abrown@potteranderson.com>; Eric Cohen <eric.cohen@rimonlaw.com>; Michael F. Heafey <michael.heafey@rimonlaw.com>; arussell@shawkeller.com
**Subject:** RE: Nielsen/ TVision: ████████████

---

**CAUTION: This message originated outside of Kelley Drye and was sent by: jason.xu@rimonlaw.com**

---

Dear Jolie,

TVision disagrees that Mr. Sidhu was unprepared to testify about ████████████. In fact, Mr. Sidhu answered most of the questions about ████████████ Thus, TVision will not produce an additional witness on this topic.

Further, as Mr. Sidhu testified, ████████████████████████████████████████████. Nothing from ████████ has been ████████████████████████████████████████. Thus, Tvision has properly objected to RFP No. 2 that this is irrelevant to any of the claims and defenses in this case.

Best,
Jason

---

**From:** Schenerman, Jolie <JSchenerman@KelleyDrye.com>
**Sent:** Tuesday, September 5, 2023 4:57 PM
**To:** Jason Xu <jason.xu@rimonlaw.com>
**Cc:** Nielsen_TVision_team <Nielsen_TVision_team@KelleyDrye.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Moore, David E. <dmoore@potteranderson.com>; nhoeschen@shawkeller.com; Brown, Andrew L. <abrown@potteranderson.com>; Eric Cohen <eric.cohen@rimonlaw.com>; Michael F. Heafey <michael.heafey@rimonlaw.com>; arussell@shawkeller.com
**Subject:** Nielsen/ TVision: ████████████

Counsel,

In Mr. Liu's deposition last week, we learned for the first time that ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Later last week, at Mr. Sidhu's deposition, we learned that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Documents regarding ▮▮▮▮▮▮▮▮ as well as documents relating to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ should have been (but have not been) produced pursuant to at least Nielsen's RFP No. 2.  Please let us know when we can expect TVision to produce these documents, keeping in mind the September 11 close of discovery.

Mr. Sidhu was unprepared to testify about ▮▮▮▮▮▮▮▮ despite the fact that TVision offered him for testimony on Nielsen's 30(b)(6) topic nos. 5, 6, and 16.  Instead, Mr. Sidhu said that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Accordingly, please let us know when ▮▮▮▮▮ will be available to testify about this topic pursuant to Nielsen's 30(b)(6) notice (again, keeping in mind the September 11 close of discovery).

Thank you.

**JOLIE SCHENERMAN**
Associate

**Kelley Drye & Warren LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7695
Cell: (917) 913-4193

jschenerman@kelleydrye.com


This message is subject to Kelley Drye & Warren LLP's email communication policy.
KDW-Disclaimer

# EXHIBIT 2



In the United States District Court for the District of Delaware

THE NIELSEN COMPANY (US), LLC

v.

TVISION INSIGHTS, INC.

CASE NO. 1:22-CV-00057-CJB

---

**REBUTTAL EXPERT REPORT OF JOANNE JOHNSON**

**November 21, 2023**

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



[...]

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



Georgia-Pacific #9 #10



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



*(Fed.*



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY





HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY





HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL -- OUTSIDE ATTORNEYS' EYES ONLY

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-057-CJB |
| | ) | |
| v. | ) | **HIGHLY CONFIDENTIAL -** |
| | ) | **OUTSIDE COUNSEL ONLY** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

———————————————————————

**REBUTTAL EXPERT REPORT OF DR. DAVID ANDERSON
REGARDING U.S. PATENT NO. 7,783,889**

**HIGHLY CONFIDENTIAL, OUTSIDE COUNSEL ONLY**



CONFIDENTIAL, OUTSIDE COUNSEL ONLY



**CONFIDENTIAL, OUTSIDE COUNSEL ONLY**

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 21-1592-CJB |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) |
| | ) |
| Defendant. | ) |
| THE NIELSEN COMPANY (US), LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 22-57-CJB |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) |
| | ) |
| Defendant. | ) |

**THE NIELSEN COMPANY (US), LLC'S FIRST SET OF REQUESTS
FOR THE PRODUCTION OF DOCUMENTS AND THINGS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware, Plaintiff The Nielsen Company (US), LLC ("Nielsen") requests that Defendant TVision Insights, Inc. ("TVision") produce and make available for inspection and copying all documents and things requested below, at the offices of Kelley Drye & Warren LLP, 333 West Wacker Drive, Suite 2600, Chicago, Illinois 60606, or at another mutually agreed upon location, within thirty (30) days of service hereof.

**DEFINITIONS & INSTRUCTIONS**

1.      "'889 Patent" refers to U.S. Patent No. 7,783,889.

2.      "'189 Patent" refers to U.S. Patent No. 9,020,189.

3.      "Audience Measurement Products and Methods" means any products, devices, systems or methods that perform audience measurement.

**REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

1.      All Documents concerning the research and development concerning TVision Audience Counting and the integration of TVision Audience Counting into TVision Audience Measurement Products and Methods.

2.      All Documents concerning the research and development concerning TVision ACR and the integration of TVision ACR into TVision Audience Measurement Products and Methods.

3.      All Documents concerning the manufacture, production, and/or testing concerning Audience Counting and TVision Audience Measurement Products and Methods as they relate to TVision Audience Counting.

4.      All Documents concerning the manufacture, production, and/or testing concerning ACR and TVision Audience Measurement Products and Methods as they relate to TVision ACR.

5.      All non-source code Documents that TVision provides or makes available to a new programmer and/or engineer assigned to work on the TVision Audience Measurement Products and Methods, TVision Audience Counting, and/or TVision ACR.

6.      All non-source code Documents that Defendant provides or makes available to a new employee assigned to work on the data sets associated with TVision Audience Measurement Products and Methods, TVision Audience Counting, and/or TVision ACR.

7.      All Documents concerning the practice, use, design, operations, technologies, implementation, functions, or structures concerning the TVision Audience Counting, including any versions or variations thereof, including without limitation, any engineering notebooks, laboratory notebooks, test results, log books, memoranda, progress reports, action item lists, analyses, design reviews, project reports, project history files, drawings, blueprints, sketches,

7

# EXHIBIT 5



Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

---------------------------------X

THE NIELSEN COMPANY (US), LLC,    :

                    Plaintiff,    : Case No.:

        v.                        : 22-57-CJB

TVISION INSIGHTS, INC.,           :

                    Defendant.    :

---------------------------------X

    *** OUTSIDE COUNSEL ATTORNEYS' EYES ONLY ***

  Deposition of TVision Insights, Inc., by and

through its designated representative, YAN LIU

              Washington, D.C.

          Tuesday, August 29, 2023

                8:39 a.m.

Reported by: Matthew Goldstein, RMR, CRR

_____

          DIGITAL EVIDENCE GROUP

      1730 M Street, NW, Suite 812

          Washington, D.C. 20036

            (202) 232-0646

Page 2

1     Deposition of YAN LIU, held at:

Page 3

 1         A P P E A R A N C E S

 2    ON BEHALF OF THE PLAINTIFF, THE NIELSEN

 3    COMPANY (US), LLC,:

 4    DOUGLAS LEWIS, ESQUIRE

 5    STEVEN YOVITS, ESQUIRE

 6    KELLEY DRYE & WARREN, LLP

 7    333 West Wacker Drive

 8    26th Floor

 9    Chicago, Illinois 60606

10    312.857.7073

11

12    ON BEHALF OF THE DEFENDANT, TVISION INSIGHTS,

13    INC.:

14    JASON XU, ESQUIRE

15    RIMON PC

16    1990 K Street, NW

17    Suite 420

18    Washington, D.C. 20006

19    202.971.9494

20

21    ALSO PRESENT:

22    DANIEL HOLMSTOCK - VIDEOGRAPHER

Page 4

1 (Pages 1 to 4)



Page 73

# EXHIBIT 6

Case 1:22-cv-00057-CJB   Document 173-1   Filed 03/05/24   Page 40 of 71 PageID #: 2268

8/31/2023      The Nielsen Company (US), LLC v. TVision Insights, Inc.      Inderbir Sidhu
Highly Confidential - Attorneys' Eyes Only

Page 1

```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF DELAWARE
- - - - - - - - - - - - - - - - -x
THE NIELSEN COMPANY (US), LLC,   :
          Plaintiff,             :
     v.                          : Civil Action No.
TVISION INSIGHTS, INC.,          : 21-1592-CJB
          Defendant.             :
- - - - - - - - - - - - - - - - -x
THE NIELSEN COMPANY (US), LLC,   :
          Plaintiff,             :
     v.                          : Civil Action No.
TVISION INSIGHTS, INC.,          : 22-57-CJB
          Defendant.             :
- - - - - - - - - - - - - - - - -x


   HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
    Videotaped deposition of Inderbir Sidhu
in his individual capacity and as 30(b)(6) witness
         for TVision Insights, Inc.
          Boston, Massachusetts
             August 31, 2023
               9:03 a.m.


Reported By: Alan H. Brock, RDR, CRR
_____
         DIGITAL EVIDENCE GROUP
        1730 M Street, NW, Suite 812
          Washington, D.C. 20036
             (202) 232-0646
```

Page 2

```
 1              A P P E A R A N C E S
 2 ON BEHALF OF PLAINTIFF:
 3      CONSTANTINE KOUTSOUBAS, ESQ.
 4      STEVEN YOVITS, ESQ.
 5      KELLEY DRYE & WARREN LLP
 6      333 West Wacker Drive
 7      Chicago, Illinois 60606
 8      312.857.7070
 9      ckoutsoubas@kelleydrye.com
10      syovits@kelleydrye.com
11
12 ON BEHALF OF DEFENDANT:
13      MICHAEL F. HEAFEY, ESQ.
14      RIMON LAW P.C.
15      800 Oak Grove Avenue, Suite 250
16      Menlo Park, California 94025
17      650.641.4433
18      michael.heafey@rimonlaw.com
19
20
21 ALSO PRESENT:
22      Adam Cerro, Videographer
```

Page 3

```
 1                C O N T E N T S
 2 EXAMINATION OF INDERBIR SIDHU              PAGE
 3     By Mr. Koutsoubas                         9
 4
 5                E X H I B I T S
 6 SIDHU DEPOSITION EXHIBITS                  PAGE
 7 Exhibit 1  Notice of Deposition of Inderbir  6
 8            Sidhu
 9 Exhibit 2  Plaintiff The Nielsen Company     6
10            (US), LLC's Notice Under Rule
11            30(b)(6) to TVision
12 Exhibit 3  Plaintiff The Nielsen Company     6
13            (US), LLC's First Supplemental
14            Notice Under Rule 30(b)(6) to
15            TVision
16 Exhibit 4  U.S. Patent 7,783,889            6
17 Exhibit 5  TVision Insights, Inc.'s         8
18            Responses and Objections to
19            Plaintiff The Nielsen Company
20            (US), LLC's Notice Under Rule
21            30(b)(6) to TVision
22
```

Page 4



32  (Pages 125 to 128)



33  (Pages 129 to 132)

8/31/2023          The Nielsen Company (US), LLC v. TVision Insights, Inc.          Inderbir Sidhu
                           Highly Confidential - Attorneys' Eyes Only



Page 133

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 21-1592-CJB |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-57-CJB |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF THE NIELSEN COMPANY (US), LLC'S
NOTICE UNDER RULE 30(B)(6) TO TVISION**

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff, The Nielsen

Company (US), LLC ("Nielsen"), through its undersigned counsel, will take the oral deposition of

Defendant TVision Insights, Inc. ("TVision") concerning the Matters for Examination set forth in

Schedule A.

Pursuant to Federal Rules of Civil Procedure 30(b)(6) TVision must designate one or more

officers, directors, managing agents, or other persons who consent to testify on its behalf as to the

identified matters. The persons designated must testify about information known or reasonably

available to TVision. The deposition will take place on June 21, 2023, commencing at 9:00 am ET,

at the law offices of Potter Anderson & Corroon LLP located at 1313 North Market Street, 6th

Floor, in Wilmington, Delaware 19801, or at some other mutually agreeable time and place.

The deposition will be recorded via stenographic, audio, and/or videotaped means for the purpose of discovery and/or used as evidence and/or any other purposes permitted by the Federal Rules of Civil Procedure and the Local Rules of this Court, including use at trial.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: */s/ David E. Moore*

Steven Yovits
Constantine Koutsoubas
Melvin Gaddy
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

Clifford Katz
Jolie Schenerman
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

Dated: May 18, 2023
10817560 / 14944.00004

2

**SCHEDULE A**

**MATTERS FOR EXAMINATION**

**DEFINITIONS**

The following definitions shall apply throughout the requests, regardless of whether upper- or lower-case letters are used:

1.      "Nielsen" means Plaintiff The Nielsen Company (US), LLC.

2.      "TVision" means Defendant TVision Insights Inc. and its predecessors and any other person or entity acting on behalf of or under control of Defendant TVision Insights Inc.

3.      "'889 Patent" means U.S. Patent No. 7,783,889.

4.      "'189 Patent" means U.S. Patent No. 9,020,189.

5.      "The Patents-in-Suit" or "Nielsen's Patents-in-suit" or "Asserted Patents" mean the '889 patent and the '189 patent, collectively.

6.      "Asserted Claims" means any claim in the Asserted Patents that Nielsen has accused or later accuses TVision of infringing.

7.      "Nielsen Related Patents" means all U.S. and foreign patents and applications relating in whole or in part to the Nielsen Patents-in-Suit, including but not limited to any patents and applications to which the Nielsen Patents-in-Suit claim priority (including provisional applications), and any continuations, continuations-in-part, divisionals, reissues, and reexaminations, any patents or applications that share a common disclosure, in whole or in part, with the Nielsen Patents-in-Suit or any Nielsen Related Patent.

8.      "TVision Audience Measurement Products and Methods" mean any products, devices, systems or methods TVision makes, has made, licenses, purchases, practices, has practiced, uses, has used, sells, offers for sale, distributes, or imports, that performs audience

measurement, including, but not limited to, audience measurement devices TVision provides to households that are to be associated with various household televisions or other devices playing media. This specifically includes, but is not limited to, the "Kinect-based" and "Logitech-based" devices that Nielsen specifically identified in its July 8, 2022 disclosure. This definition shall include, but not be limited to, any versions or variations of the product, device, system, or method identified. This definition shall also include, but not be limited to, any data or other information that is sold, licensed, or based on information retrieved from the devices, systems, or methods listed above, including but not limited to through TVision's SAAS platform.

9. "TVision Audience Counting" means any products, devices, systems or methods TVision makes, has made, practices, has practiced, uses, has used, purchases, licenses, sells, offers for sale, distributes, or imports that counts, or enables the counting of, the number of individuals in front of a particular TVision Audience Measurement Product and/or Method. "TVision Audience Counting" shall include, but not be limited to, the aspects of TVision Audience Measurement Products and Methods that relate to the counting, or the enabling of the counting, of the number of individuals in front of a particular television or other device displaying media. TVision Audience Counting Products and Methods includes, but is not limited to, the products and methods described by TVision's President and COO, Luke McGuinness, in https://www.adexchanger.com/tv-and-video/tvision-insights-ratings-only-tell-part-of-the-story/ (Compl., Ex. D.) The definition includes, but is not limited to, data or other information products that result from or is associated with the devices, systems, or methods listed above.

10. "Automatic Content Recognition" or "ACR" mean the automatic identification or recognition of media content.

2

11.      "TVision ACR" means any products, devices, systems or methods TVision makes, has made, practices, has practiced, uses, has used, purchases, licenses, sells, offers for sale, distributes, or imports that perform or accomplish the automatic identification or recognition of media content or other signal or information. "TVision ACR" shall include, but not be limited to, the aspects of TVision Audience Measurement Products and Methods that relate to the automatic identification or recognition of media content or other signal or information.

12.      "Prior Art" includes any documents, event, thing, or subject matter of the type set forth in or relevant under 35 U.S.C. § 102 and/or 35 U.S.C. § 103.

13.      "Communication(s)" means any oral, written, or other contact between two or more persons or entities by which any information or knowledge of any nature is transmitted or conveyed or attempted to be transmitted or conveyed, including letters, memoranda, telegrams, telefaxes, telecopies, telexes or emails, text messages, face-to-face meetings, telephone conversations, voicemails, answering machine messages, and telephonic notes.

14.      "Document" has the full meaning ascribed to it in Rule 34 of the Federal Rules of Civil Procedure, including the original (and every copy of the original which differs in any way from it) of all written, recorded, or graphic matter in any and all media however produced or reproduced. Media include papers, films, magnetic and optical storage devices, and all other methods for the expression or retention of information. Documents include any writing, survey, evidence of indebtedness, memorandum, letter, correspondence, telex, telefax, telegram, email, note, minute, agreement, contract, interoffice or intraoffice communication, interim draft, final draft, bulletin, circular, procedure, pamphlet, photograph, business plan or study, notice, summary, bill, invoice, purchase order, diagram, plan, drawing, specification, diary, desk or

3

pocket calendar, written record or note of telephone conversation or telephone message, chart, entry, computer printout, computer disk, tape recording, representation, record, and report, as well as any other tangible item or thing of written, readable, or visual material of any kind or character, whether written, handwritten, typed, photocopied, photostatted, printed, duplicated, reproduced, or recorded, and whether electronic, electrical, or mechanical in nature.

15.     "Entity" means any natural person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof.

16.     "And" and "or" shall be construed conjunctively and disjunctively so as to require the broadest meaning possible.

17.     "Any" and "all" shall each be construed to mean "each and every," so as to acquire the broadest meaning possible.

18.     The singular of any word shall include the plural, and the plural shall include the singular.

19.     "Person" is defined as any natural person or any business, legal or governmental entity or association.

20.     "Including" and every variant thereof shall be construed to mean "including without limitation."

21.     Pronouns shall be construed to refer to the masculine, feminine, or neutral gender as in each case is most inclusive.

22.     "Relating to," "Relate to," or "Concerning" when referring to any given subject matter, means and includes reflecting, alluding to, mentioning, regarding, discussing, bearing

4

upon, commenting on, constituting, pertaining to, demonstrating, describing, depicting, referring to, summarizing, containing, embodying, showing, comprising, evidencing, refuting, contradicting and supporting.

## DEPOSITION TOPICS

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and in accordance with this Notice, TVision is requested to designate one or more officers, directors, agents, employees, and/or other persons who can testify on its behalf concerning the following topics:

1.     The formation, organization, and structure of TVision and any corporate entities affiliated with or relating to TVision, including an identification of any officers, directors, and/or employees thereof.

2.     TVision's organizational structure(s) for the engineering, design, research, development, manufacture, assembly, distribution, marketing, sales, and promotion of TVision Audience Measurement Products and Methods.

3.     The identification of any individuals or entities with a direct or indirect interest in TVision and the amount of such ownership interest.

4.     TVision's annual reports, quarterly reports, required financial filings, and other financial statements, including statements of operations, income statements, balance sheets, and statements of changes in retained earnings and notes thereto, whether prepared for internal or external purposes, from January 1, 2015 to the present.

5.     The design, development, and manufacture of TVision Audience Measurement Products and Methods, including the role and/or involvement of each person, TVision, or third party.

6.    The function, structure, operation, design, monetization and use of any TVision Audience Measurement Products and Methods, including the differences between each such products or methods.

7.    Product manuals, instructions, training material, or other product literature for TVision Audience Measurement Products and Methods.

8.    The source code for any of the TVision Audience Measurement Products and Methods.

9.    Any comparison of any TVision Audience Measurement Products and Methods to another product, including Nielsen's products.

10.    The data provided by the TVision Audience Measurement Products and Methods, including but not limited to licensing and/or sales of such data.

11.    Any processing of data provided by the TVision Audience Measurement Products and Methods.

12.    TVision's SaaS platform end product, including dashboards such as for "CTV Analytics," "Linear TV Insights," "TV Planning & Measurement" and "Ad Scoreboard."

13.    TVision's activities with respect to TVision Audience Measurement Products and Methods, including monetizing, selling, offering for sale, using, making, importing, marketing, advertising, distributing, transferring, or soliciting agents or distributors.

14.    Each instance in which any TVision Audience Measurement Products and Method has been the subject of a demonstration, exhibition, trade show, or industry convention within the United States.

15.    Any effort taken by TVision to avoid infringement of any claim of the Patents-in-Suit including the development of any prototypes, testing, experimentation, or other analysis.

6

16.　　Any change or planned change to TVision's designs or products based on TVision's knowledge of the Patents-in-Suit and the reasons for any such changes, including for each instance the date, the circumstances, and the identity of the Persons involved.

17.　　TVision's knowledge of the Patents-in-Suit, including but not limited to, the date when TVision first became aware of the Patents-in-Suit, the person(s) who became aware of the Patents-in-Suit, and any action taken by TVision to avoid infringement of the Patents-in-Suit.

18.　　When and the circumstances under which TVision first became aware of any alleged infringement of each Asserted Patent and/or Related Patent.

19.　　Any analysis, evaluation, testing, inspection, reverse engineering, investigation, report, or opinion with respect to infringement or non-infringement of any Asserted Patent and/or Related Patent.

20.　　Any analysis, evaluation, testing, inspection, reverse engineering, investigation, report, or opinion with respect to validity or invalidity of any Asserted Patent and/or related Patent.

21.　　Any analysis, evaluation, testing, inspection, reverse engineering, investigation, report, or opinion with respect to the enforceability or unenforceability of any Asserted Patent and/or Related Patent.

22.　　Any advice or opinions (verbal or in writing) that TVision received regarding the scope, validity, enforceability, and/or infringement of the Patents-in-Suit, including the relevant date(s), individuals who provided the opinion(s), individual(s) who received the opinion(s), and the substance of the opinion(s).

23.     TVision's analyses or opinions of counsel (to the extent TVision will rely upon them) relating to the patentability, validity, enforceability, scope, or infringement of any of the Patents-in-Suit and/or Related Patents.

24.     Communications between TVision and any third party regarding any of the Patents-in-Suit or Related Patents, this case, or the subject matter of this case.

25.     TVision procedures, policies, guidelines, or recommended courses of action relating to patents and/or licenses for patents owned by any entity other than TVision.

26.     The factual bases for each affirmative defense TVision asserts.

27.     The factual bases for any contention by TVision that any of the Asserted Claims of the Patents-in-Suit are not directly or indirectly infringed by TVision's activities with respect to any TVision Audience Measurement Products and Methods, either literally or under the doctrine of equivalents.

28.     The factual bases for any contention that any Asserted Claim of the Patents-in-Suit is not entitled to claim priority to the date(s) of conception identified by Nielsen.

29.     The factual bases for any contention that any Asserted Claim of the Patents-in-Suit is invalid, including the identification of all Prior Art, if any, that TVision contends renders any claim of the invalid.

30.     The factual bases for any contention that TVision is entitled to recover its attorneys' fees (in part or whole) in this case.

31.     The alleged correspondence between any Prior Art reference(s) that TVision contends renders any claim of the Patents-in-Suit invalid and each element of each such claim of the Patents-in-Suit.

32.     Any alleged motivation to combine any Prior Art that TVision contends renders any claim of the Patents-in-Suit invalid for obviousness.

33.     The level of ordinary skill in the art that TVision contends is applicable to each of the Patents-in-Suit.

34.     All facts that support or refute TVision's contention that objective indicia of non-obviousness do not support a finding of non-obviousness, including but not limited to, facts underlying simultaneous invention, long-felt but unmet need, commercial success, copying, failure of others, skepticism, and industry praise.

35.     The factual bases for any contention by TVision that any Asserted Claim of the Patents-in-Suit is unenforceable.

36.     Any TVision Patent that TVision contends covers the TVision Product.

37.     Any license or agreement offered, considered, negotiated, or agreed to by TVision regarding any product or technology concerning the technology of the Nielsen Patents-in-Suit, TVision Audience Measurement Products and Methods, TVision Audience Counting, TVision ACR, or any products and methods that perform audience measurement.

38.     Communications with third parties concerning products and methods that perform audience measurement.

39.     Sales, offers of sale, licensing and/or provision to any third party of data from the TVision Audience Measurement Products and Methods or data or other information products or services associated with the TVision Audience Measurement Products and Methods.

40.     The monthly, quarterly, and annual sales, in dollars and units, of the TVision Audience Measurement Products and Methods and of data or other information products or

9

services associated with the TVision Audience Measurement Products and Methods from January 1, 2015 to the present, and any projected and/or anticipated profits.

41.     Any revenue, royalty, payment or other consideration of any kind for all licenses, sales agreements and/or other contracts for data generated by and/or associated with TVision Audience Measurement Products or Methods, including, by way of non-limiting example, relating to TVision's SaaS platform end product.

42.     Any fees or royalties owed to, paid by, or paid to TVision in connection with any TVision Audience Measurement Products or Methods or with data or other information products or services associated with the TVision Audience Measurement Products and Methods, including intellectual property licenses.

43.     TVision's methodology for calculating revenue and gross and net profits before taxes (including the ability to identify labor, material, variances, selling and administrative costs, and the components that make up those costs) for the TVision Audience Measurement Products and Methods, data or other information products or services associated with TVision Audience Measurement Products and Methods, or any products, methods, or system that use or incorporate TVision Audience Counting and/or TVision ACR.

44.     Business plans, strategic plans, long-range plans, budgets, forecasts, projections, financial plans, and management reports concerning the TVision Audience Measurement Products and Methods or data or other information services associated with the TVision Audience Measurement Products and Methods.

45.     Sales, marketing, and/or promotional materials sent by or on behalf of TVision, or presented by TVision, to potential or actual customers concerning the sale or license of any

TVision Audience Measurement Products and Methods or any data or other information products or services associated with the TVision Audience Measurement Products and Methods.

46.     TVision's pricing strategies and pricing of the TVision Audience Measurement Products and Methods and of data other information products or services associated with the TVision Audience Measurement Products and Methods.

47.     Competition, market segments, market share, or market revenue (whether actual or projected) concerning products and methods that perform audience measurement, including TVision Audience Measurement Products and Methods and third party products and methods.

48.     The market for the TVision Audience Measurement Products and Methods, for data or other information products or services associated with the TVision Audience Measurement Products and Methods, and for any products and methods that perform audience measurement, including TVision's SaaS platform end product.

49.     Any effect on Nielsen's pricing, revenue, or profits relating to TVision Audience Measurement Products and Methods or any data or other information products or services associated with the TVision Audience Measurement Products and Methods.

50.     TVision's relationship with iSpot, including any sale or licensing of data to iSpot.

51.     TVision's relationship with VideoAmp, including any sale or licensing of data to VideoAmp.

52.     TVision's relationship with TVSquared, including any sale or licensing of data to TVSquared.

53.     The effect that having an audience counting feature or an ACR feature has on the advantages, quality, potential, or effectiveness of the sales, market share, the overall market, and/or demand for the TVision Audience Measurement Products and Methods, data or other

11

information products or services associated with the TVision Audience Measurement Products and Methods and Methods, or any other product, system or method that contains or uses audience counting or ACR.

54. TVision's calculation of damages if Nielsen prevails, including lost profits and/or reasonable royalties.

55. The identity of each person with knowledge relating to each of the subject matters for testimony set forth herein.

56. The identity of all persons, Documents, and things consulted, reviewed, communicated, or relied upon in preparation for testifying about each of the subject matter of the topics forth herein.

57. TVision's past and present procedures and policies for generating, maintaining, retaining, and disposing of Documents and things (whether maintained in paper form or by other storage methods, such as microfilm or electronically), including Documents that refer to Nielsen and the Patents-in-Suit.

58. TVision's efforts to collect Documents in response to the discovery requests served in this case.

59. TVision's responses to the discovery requests served in this case, including each interrogatory, request for production, and request for admission.

# EXHIBIT 8

1/24/2024          The Nielsen Company (US), LLC v. TVision Insights, Inc.          Joanne Johnson

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

--------------------------------X

THE NIELSEN COMPANY (US), LLC, )

      Plaintiff,     )

vs.             ) No. 21-1592-CJB

TVISION INSIGHTS, INC.,   )

      Defendant.    )

--------------------------------)

THE NIELSEN COMPANY (US), LLC, )

      Plaintiff,     )

vs.             ) No. 22-57-CJB

TVISION INSIGHTS, INC.,   )

      Defendant.    )

--------------------------------X


Video-recorded deposition of JOANNE JOHNSON,

at 333 West Wacker Drive, Chicago, Illinois,

before Donna M. Kazaitis, IL-CSR, at

8:12 a.m. on Wednesday, January 24, 2024.


DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Page 2

1 APPEARANCES:

2

3 ON BEHALF OF THE PLAINTIFF:

4     KELLEY DRYE & WARREN LLP

5     BY:  DOUGLAS LEWIS, ESQ.

6          333 West Wacker Drive

7          Chicago, Illinois 60606

           312.857.7070

8          dlewis@kelleydrye.com

9

10 ON BEHALF OF THE DEFENDANT:

11    RIMON LAW

12    BY:  ERIC C. COHEN, ESQ.

13         P.O. Box B113

14         150 Fayetteville Street, Suite 2800

15         Raleigh, North Carolina 27601-2960

16         984.960.2860

17         eric.cohen@rimonlaw.com

18

19

20 ALSO PRESENT:

21    Joseph Salinas (Legal Videographer)

22

Page 3



1 (Pages 1 to 4)

1/24/2024        The Nielsen Company (US), LLC v. TVision Insights, Inc.        Joanne Johnson

Page 65

www.DigitalEvidenceGroup.com  Digital Evidence Group C'rt 2024        202-232-0646

Page 69

1/24/2024        The Nielsen Company (US), LLC v. TVision Insights, Inc.        Joanne Johnson

Page 73



# EXHIBIT 9

## Wood, Andrew

| | |
|---|---|
| **From:** | Eric Cohen <eric.cohen@rimonlaw.com> |
| **Sent:** | Tuesday, November 28, 2023 2:22 PM |
| **To:** | Lewis, Douglas; 'Palapura, Bindu A.'; 'Brown, Andrew L.'; dmoore@potteranderson.com; jshaw@shawkeller.com; arussell@shawkeller.com; nhoeschen@shawkeller.com; Michael F. Heafey; Jason Xu |
| **Cc:** | Nielsen_TVision_team |
| **Subject:** | Re: TVision use of ███████████ in expert reports. |

**CAUTION: This message originated outside of Kelley Drye and was sent by: eric.cohen@rimonlaw.com**

Doug:

TVision has not used ███████████ for any purpose in this case and does not intend to.

You cite paragraphs 102-103 of the Anderson report. Neither of those paragraphs refers to ███████████. The same is true of paragraph 167 of Ms. Johnson's report, which you also cite.

Given the foregoing, TVision will not agree to strike the paragraphs from the expert reports listed in your email.  Thus, there is no need to extend the time for Nielsen to file its next round of expert reports.

Eric Cohen

---

Eric Cohen | Special Counsel

RIMÔN PC

Office: +1 984.960.2860 | Direct: +1 984.960.2860 | eric.cohen@rimonlaw.com
P.O. Box B113, 150 Fayetteville St., Suite 2800, Raleigh, NC 27601-2960

www.rimonlaw.com | See Our International Offices | Read Our Insights

Connect on **LinkedIn** | Like us on **Facebook**

*This e-mail is sent by a law firm and contains information that may be confidential or privileged.  If you have received this communication in error, please reply to the sender (only) and then please delete this message from your inbox as well as any copies. Thank you.*

**From:** Lewis, Douglas <DLewis@KelleyDrye.com>
**Date:** Tuesday, November 28, 2023 at 12:28 PM
**To:** 'Palapura, Bindu A.' <bpalapura@potteranderson.com>, 'Brown, Andrew L.'
<abrown@potteranderson.com>, dmoore@potteranderson.com <dmoore@potteranderson.com>,
jshaw@shawkeller.com <jshaw@shawkeller.com>, arussell@shawkeller.com <arussell@shawkeller.com>,
nhoeschen@shawkeller.com <nhoeschen@shawkeller.com>, Eric Cohen <eric.cohen@rimonlaw.com>,
Michael F. Heafey <michael.heafey@rimonlaw.com>, Jason Xu <jason.xu@rimonlaw.com>
**Cc:** Nielsen_TVision_team <Nielsen_TVision_team@KelleyDrye.com>
**Subject:** TVision use of ███████████ in expert reports.

Counsel,

In Dr. Anderson's report, he opined ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See e.g.*, Anderson Non-Infringement Report, ¶¶ 102-103. Ms. Johnson also
opined based on a conversation with Mr. Sidhu. *See e.g.*, Johnson Report, ¶ 167.

Mr. Sidhu's (and others') statements to Dr. Anderson are presumably based (at very least in part) on ▮▮▮▮▮▮▮▮. This
is a violation of the parties' agreement that "TVision … will not use ▮▮▮▮▮▮▮▮ for any purpose in this matter." *See*
Xu Sept. 10, 2023 email.

Please let us know by tomorrow, November 29, 2023, whether TVision will (1) agree to strike Paragraphs 102-103 from
Dr. Anderson's report and Paragraphs 11, 149, 150, 167-168, 173, 232, 236, 270 (and associated figures) and Exhibits
3.0, 6.0, 6.1, 6.2, 18.0, 18.3 from Ms. Johnson's report, and all other paragraphs from all expert reports that discuss
TVision's development of its own ACR technology; and (2) refrain from any other use of information relating to ▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in this case.  If not, TVision will need to provide
immediate discovery about ▮▮▮▮▮▮▮▮, including a full document production and a R. 30(b)(6) witness.  In addition,
the due date for Nielsen's expert reports (but not TVision's) will need to be extended.

## DOUGLAS LEWIS
Special Counsel

**Kelley Drye & Warren LLP**
333 West Wacker Drive, 26th Floor
Chicago, IL 60606
Tel: (312) 857-7073

dlewis@kelleydrye.com

This message is subject to Kelley Drye & Warren LLP's email communication policy.
KDW-Disclaimer

# EXHIBIT 10

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JANE E. FISHER, Executor of the      :
Estate of Bradley Fisher, Deceased   :
      PLAINTIFF            :
      VS.                  :      **3:CV-99-1976**
                  :      **(CHIEF JUDGE VANASKIE)**
MARQUIP, INC., WILL-PEMCO, INC.,     :
Successor-in-Interest to Clark Aiken :
Matik, Inc., a/k/a Pemco, Inc.       :      **FILED**
      DEFENDANTS           :      **SCRANTON**

SEP 2 6 2002

## ORDER

PER _____
          DEPUTY CLERK

### September 26, 2002

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On February 20, 2002, plaintiff moved to impose sanctions against defendant

Marquip, Inc.. Plaintiff seeks sanctions for three separate alleged discovery violations.

The first alleged violation concerns the failure to disclose the identity of a witness in

Marquip's initial disclosures under Fed. R. Civ. P. 26(a)(1)(A). Plaintiff claims that Marquip

intentionally failed to disclose that the person with the most knowledge concerning the

design, construction and sale of the splicer machine at issue in this products liability case

was Richard Thomas. Marquip has responded by asserting that Mr. Thomas had left the

employ of Marquip some four years before the occurrence of the accident giving rise to this

litigation. Marquip further asserts that it did identify as a knowledgeable witness Karl W.

Marschke, who had been responsible for design engineering from the time that Mr. Thomas

left the company up to the time of the accident and beyond. Marquip has further represented that Karl W. Marschke investigated the incident and inspected the equipment involved. Finally, Marquip represents that Mr. Thomas did not provide much useful information at a deposition taken after the sanctions motion was filed. Plaintiff did not file a reply brief controverting Marquip's assertions. Under these circumstances, sanctions for the failure to disclose Richard Thomas as a person who had information relevant to this matter does not warrant sanctions.

The second alleged discovery violation concerned the failure of two subpoenaed witnesses to appear for their depositions when counsel for plaintiff was in Wisconsin in December of 2001. Plaintiff claims that Marquip's lawyer intentionally failed to disclose that the two witnesses would not be available until after plaintiff's counsel had arrived in Wisconsin. Marquip's counsel responded that he was not aware that the two witnesses would not be available until after plaintiff's counsel had arrived in Wisconsin. Furthermore, as he points out, plaintiff's counsel was able to take three depositions while in Wisconsin in December of 2001. Moreover, there is no record that plaintiff's counsel sought to enforce the subpoenas that had been duly served and that had required the two witnesses in question to appear in December of 2001. Under these circumstances, sanctions for the failure to produce the witnesses in question will not be imposed.

The final ground on which sanctions are sought pertains to contention interrogatories

2

that exceed the numerical limits imposed by Fed. R. Civ. P. 33. Plaintiff points out that the Joint Case Management Plan filed in this case stated that the parties had agreed that there would be no "prophylactic limitations" with respect to the number of interrogatories either party may serve upon the other. Marquip contends that its filing of bankruptcy subsequent to the Joint Case Management conference relieves it of the agreement entered into in the Joint Case Management Plan. Marquip asserts no authority for this proposition.

Agreements entered into by counsel for parties are plainly enforceable. In this case, counsel for all parties agreed that interrogatories would not be objectionable on the ground that some numerical limit had been exceeded. Marquip remains bound by this agreement, and must answer the contention interrogatories without regard to the fact that the numerical limit in Fed. R. Civ. P. 33 was exceeded.

### ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. Marquip shall respond to the contention interrogatory served on November 16, 2001, without objection on the ground that numerical limits imposed by Fed. R. Civ. P. 33 have been exceeded.

2. In all other respects, plaintiff's motion for sanctions (Dkt. Entry 81) is **DENIED.**

Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

3