IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 22-057-CJB |
| TVISION INSIGHTS, INC., | ) ) ) | |
| Defendant. | ) ) | |

## OPENING BRIEF IN SUPPORT OF TVISION INSIGHTS, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,783,889

OF COUNSEL:
Jason Xu
RIMÔN LAW P.C.
1990 K. Street, NW, Suite 420
Washington, DC 20006
(202) 470-2141

Eric C. Cohen
RIMÔN LAW P.C.
P.O. Box B113
150 Fayetteville St, Suite 2800
Raleigh, NC 27601-2960
(984) 960-2860

Michael F. Heafey
RIMÔN LAW P.C.
800 Oak Grove Avenue, Suite 250
Menlo Park, CA 94025
(650) 461-4433

Dated: March 12, 2024

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

**TABLE OF CONTENTS**

I.     Nature and Stage of The Proceedings............................................................1

II.    Summary of Argument ...................................................................................1

III.   Statement of facts..........................................................................................1

IV.    Argument .......................................................................................................3

       A.    Claim 1 of the '889 Patent Is Representative.......................................3

       B.    An Algorithm Is Patent-Ineligible ....................................................5

       C.    *Alice* Step 1: The Claims Are Directed Only to a Mathematical Algorithm .....6

             1.    Independent Claim 1 Recites an Abstract Mathematical Algorithm .....6

             2.    Other Asserted Claims Are Also Directed to Abstract Ideas...............12

       D.    *Alice* Step 2: The Claims Recite No Inventive Concept .................................12

             1.    Asserted Independent Claims Fail to Recite an Inventive Concept.....13

             2.    Asserted Dependent Claims Do Not Contain an Inventive Concept ...15

V.     Conclusion ...................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Global Servs. GmBH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2003)..................................................................................3, 13, 16

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*,
  573 U.S. 208 (2014).................................................................................................*passim*

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016)..........................................................................................6

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
  687 F.3d 1266 (Fed. Cir. 2012)....................................................................................3, 16

*Bilski v. Kappos*,
  561 U.S. 593 (2010)...........................................................................................................5

*BroadSoft, Inc. v. CallWave Commc'ns, LLC*,
  282 F. Supp. 3d 771 (D. Del. 2017), *aff'd*, 739 Fed. Appx. 985 (Fed. Cir.
  2018) ..................................................................................................................................4

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018).......................................................................................16

*Coffelt v. Nvidia Corp. et al.*,
  2016 WL 7507763 (C.D. Cal. June. 21. 2016), *aff'd Coffelt*, 680
  Fed.Appx. 1010................................................................................................................11

*Coffelt v. Nvidia Corp. et. al.*,
  680 Fed.Appx. 1010 (Fed. Cir. 2017).............................................................................11

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)..........................................................................................3

*Control & Monitoring Sys., LLC v. Digital Playground, Inc.*,
  2016 WL 5793745 (S.D.N.Y. Sept. 30, 2016)................................................................10

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012)........................................................................................13

*Diamond v. Chakrabarty*,
  447 U.S. 303 (1980)...........................................................................................................5

*Digital-Vending Servs. v. The Univ. of Phoenix*,
  672 F.3d 1270 (Fed. Cir. 2012)..........................................................................................3

*Digitech Image Techs., LLC v. EFI, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014)........................................................................................11

## TABLE OF AUTHORITIES CONT'D

**Page(s)**

**Cases**

*Eagle View Technologies, Inc. v. Roofr, Inc.*,
   651 F.Supp.3d 729 (D. Del. 2023)......................................................................12

*Elec. Power Grp., LLC v. Alstom, S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016).................................................................5, 6, 11

*Fast 101 PTY Ltd. v. Citigroup Inc.*,
   424 F. Supp. 3d 385 (D. Del. 2020), *aff'd* 834 Fed. Appx. 591 (Fed Cir.
   2020), *cert denied*, 141 S. Ct. 2725 (2021)..........................................................4

*FuzzySharp Techs., Inc. v. 3DLabs Inc.*,
   No. 2010-1160, 2011 WL 5248297 (Fed. Cir. Nov. 4, 2011) ...........................14

*In re Grams*,
   888 F.2d 835 (Fed. Cir. 1989)..............................................................................5

*Hewlett Packard Co. v. ServiceNow, Inc.*,
   No. 14-cv-00570, 2015 WL 1133244 (N.D. Cal. Mar. 10, 2015) .........15, 16, 17

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017)............................................................................6

*In re Killian*,
   45 F.4th 1373 (Fec. Cir. 2022)............................................................................5

*Mayo Collaborative Services v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012)...............................................................................................5

*Parker v. Flook*,
   437 U.S. 584 (1978)...............................................................................5, 6, 7, 14

*PersonalWeb Technologies LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) ............................................................................12

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)..........................................................................11

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018).................................................................*passim*

*SkillSurvey, Inc. v. Checkster LLC*,
   178 F. Supp. 3d 247 (E.D. Pa. 2016), *aff'd*, 683 F. App'x 930 (Fed. Cir.
   2017) ..................................................................................................................14

*Smart Sys. Innovations, LLC v. Chicago Transit Authority.*,
   No. 14-cv-08053, 2015 WL 4184486 (N.D. Ill. July 10, 2015) ........................14

## TABLE OF AUTHORITIES CONT'D

**Page(s)**

**Cases**

*Sviluppo Dell'Elettronica S.p.A. v. Rhapsopy Int'l Inc.*,
No. 18-69 (MN), 2019 WL 2491898 (D. Del. June 14, 2019) ........................................... 14

*Synopsis, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016)..................................................................................... 14

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014)........................................................................................ 6

**Other Authorities**

https://en.wikipedia.org/wiki/Fourier_transform ......................................................... 8

iv

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff The Nielsen Company (US) LLC ("Nielsen") filed the instant case against TVision Insights, Inc. ("TVision") on January 14, 2022, alleging infringement of U.S. Pat. No. 7,783,889 ("the '889 patent").  Trial is set for October 7, 2024.

## II.    SUMMARY OF ARGUMENT

1.    Claim 1 is representative of the other asserted independent and dependent claims, which describe only minor variations of the claimed methods and apparatus.

2.    The '899 patent claims fail *Alice* step one as they merely recite mathematical calculations of data (frame data, frequency component, spectral power, descriptor) to derive signatures from the results of these mathematical relationships.

3.    The '889 patent claims also fail *Alice* step two because they recite only additional abstract ideas and therefore lack any inventive concept.

## III.    STATEMENT OF FACTS

The '889 patent claims "methods and apparatus for generating signatures for use in identifying media information."  '889 patent, 1:15-17.

Nielsen asserts claims 1, 2, 4–6, 8, 9, and 11–17 in this case.  Among the asserted claims, there are three independent claims (claims 1, 8, 14) and eleven remaining dependent claims.  Independent claim 1 recites the following:

1. A method for generating signatures implemented using an apparatus comprising a processor, the method comprising:

(1) obtaining a first frame of media samples;

(2) identifying a first frequency component having a first spectral power and a second frequency component having a second spectral power by performing a spectral transform operation on the first frame of media samples;

(3) determining a first descriptor of the first frame of media samples based on a comparison of the first spectral power and the second spectral power;

(4) generating a first signature based on the first descriptor,

(5) identifying a second frame of media samples by extracting a common plurality of media samples from the first frame of media samples and appending another plurality of media samples to the common plurality of media samples;

(6) identifying a third spectral power associated with a third frequency component and a fourth spectral power associated with a fourth frequency component, wherein the third frequency component and the fourth frequency component are associated with performing the spectral transform operation on the second frame of media samples;

(7) determining a second descriptor based on a comparison of the third spectral power and the fourth spectral power; and

(8) generating a second signature based on the second descriptor.

*See id*. at 26:5-32 (numbering of steps (1)-(8) added).

The algorithm of generating "signature(s)" as descried in the steps of the method claim 1 is as follows:

1.     Mathematically sample the audio stream during various time intervals to retrieve frame data. *Id*., 1:53-55, 7:58-61, 8:22-28.

2.     Identify two or more frequency components within the frequency spectrum for the frame by performing a mathematical spectral transformation such as a "Fast Fourier Transform," or "FFT." *Id*., 13:37-45, 14:12-20, 14:40-50, 16:30-44; 22:31-58. Performing an FFT results in a frequency spectrum that can be used to obtain the spectral power for each frequency component. *Id*., 14:41-44, 16:45-48.

3.     Mathematically compare those components to create a "descriptor" of the frame. *Id*., 16:49-60, 22:66-23:6. The descriptor may, for example, be a single-bit descriptor consisting of a 1 or a 0, corresponding to a comparison of the relative spectral powers of the components. *Id*., 16:49-60. In that case, if the spectral power of the first identified frequency component is greater than that of the second component, the resulting descriptor bit is 1; if not, it is 0. *Id*. This process is repeated, if necessary, identifying and comparing additional sets of frequency components to form additional descriptors. *Id*., 16:55-60, Fig. 5.

4.     These descriptors are mathematically joined (or "concatenated") together to form a signature. *Id*., 16:6-18, 23:7-10.

Independent claim 8 is an apparatus claim that recites similar steps as those in claim 1

and with an addition of a processor and memory to run the algorithm. *See id*. at 26:47-27:2. Independent claim 14 is a tangible machine accessible medium claim that recites similar steps as those in claim 1. *See id*. at 27:29-28:13.

## IV.    ARGUMENT

The asserted claims of the '889 patent fail both steps of *Alice* because they are directed to abstract ideas and recite no inventive concept. The asserted claims are thus invalid for lack of patent-eligible subject matter.

### A.    Claim 1 of the '889 Patent Is Representative

A court is not required to individually address all claims of a patent as long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks and citation omitted).

The asserted claim 1 of the '889 patent is representative. Other independent claims are substantially similar. Claims 1, 8, and 14 are virtually the same except that (1) claims 8 and 14 are drafted in an apparatus and/or tangible machine accessible medium form; and (2) claim 8 includes a generic processor and memory as part of the apparatus. *See* '889 patent, 26:47-27:2, 27:29-28:13; *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1277 (Fed. Cir. 2012) (holding that district court had "correctly treated the asserted system and medium claims as no different from the asserted method claims for patent eligibility purposes" while reiterating that "the form of the claims should not trump basic issues of patentability"); *Digital-Vending Servs. v. The Univ. of Phoenix*, 672 F.3d 1270, 1275 n.1 (Fed. Cir. 2012) (treating claims to computer-readable medium as method claims, reasoning that "[s]uch functionally-defined claims should be treated as method claims to avoid exalting form over substance"); *see also Accenture Global Servs. GmBH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1342 (Fed. Cir. 2003) (affirming district court's decision on patent ineligibility of system claims "because

the system claims offer no meaningful limitations beyond the method claims that have been held patent-ineligible"). Indeed, recasting method claims as system claims by including such generic and trivial computer components (*e.g.*, memory, processor) does not transform an abstract idea into a specific, limited implementation. *See CLS*, 717 F.3d at 1291 ("Despite minor differences in terminology ... the asserted method and system claims require performance of the same basic process. Although the system claims associate certain computer components with some of the method steps, none of the recited hardware offers a meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment,' that is, implementation via computers.").

All the asserted dependent claims are substantially similar to claim 1 and the other independent claims, and describe minor variations of the claimed methods and apparatus. The asserted dependent claims are either subsumed by claim 1 or merely recite additional information of the mathematical algorithm of creating signatures, or further step(s)/information relating to the signatures. *See, e.g.*, claims 2, 9 (identifying media data based on the signature); claim 4 (media information attributes relating to audio or video data); claims 5, 6, 11, 15 (descriptor relationship to the frame data); claims 12, 16 (mathematical relationship between the second and first frame data, similar to step 5 of claim 1); claims 13, 17 (mathematical relationship between the second frame data and related spectral powers, similar to step 6 of claim 1).

The Court can therefore rely on its analysis of asserted claim 1 of the '889 patent for purposes of determining that the asserted claims are not patent eligible. *See, e.g., Fast 101 PTY Ltd. v. Citigroup Inc.*, 424 F. Supp. 3d 385, 387-88 (D. Del. 2020), *aff'd* 834 Fed. Appx. 591 (Fed Cir. 2020), *cert denied*, 141 S. Ct. 2725 (2021) (finding claim 1 representative "[b]ecause all of the independent claims of the remaining patents recite the same concept . . . and the dependent claims offer only minor, non-technical variations"); *BroadSoft, Inc. v. CallWave*

*Commc'ns, LLC*, 282 F. Supp. 3d 771, 779 (D. Del. 2017), *aff'd*, 739 Fed. Appx. 985 (Fed. Cir. 2018) (finding claim 1 representative of the asserted claims for purposes of Section 101 analysis).

### B.    An Algorithm Is Patent-Ineligible

The Supreme Court has long held that "[l]aws of nature, natural phenomena, and abstract ideas" are not patentable. *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012), quoting *Diamond v. Diehr*, 450 U.S. 175, 185 (1981); *see also Parker v. Flook*, 437 U.S. 584 (1978); *Bilski v. Kappos*, 561 U.S. 593, 601 (2010); *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).

The Federal Circuit has long held that "mathematical algorithms join the list of non-patentable subject matter not within the scope of section 101." *In re Grams,* 888 F.2d 835, 837 (Fed. Cir. 1989); *see also, In re Killian*, 45 F.4th 1373, 1379 (Fec. Cir. 2022) (holding unpatentable "the patent-ineligible abstract mental process of 'a search algorithm for identifying people who may be eligible for SSDI benefits they are not receiving"); *Elec. Power Grp., LLC v. Alstom, S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("[W]e have treated analyzing information by . . . mathematical algorithms, without more, as essentially mental processes within the abstract-idea category").

In *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208 (2014), the Court articulated the two-part test for determining patent-eligibility under section 101 that it had applied in *Mayo*: "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. * * * [Second,] If so, we then ask, '[w]hat else is there in the claims before us?' * * * To answer that question, we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217.  In other words, the second step is "a search for 'an inventive concept." *Id.*

**C.**    ***Alice* Step 1: The Claims Are Directed Only to a Mathematical Algorithm**

The first step of the *Alice* test considers whether the claims of the patent are directed to a patent-ineligible concept.  As discussed above, it is well established that a mathematical formula or algorithm is a patent-ineligible concept.  *See Parker v. Flook*, 437 U.S. 584, 595 (1978) ("if a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory"); *SAP Am., Inc. v. InvestPic, LLC,* 898 F.3d 1161, 1166 (Fed. Cir. 2018) ("Because mathematical calculations and formulas are not patent eligible, the court concluded, all of the claims of the '291 patent, including the dependent claims(which contain more specific mathematical steps) are not directed to patent-eligible subject matter.").

**1.**    **Independent Claim 1 Recites an Abstract Mathematical Algorithm**

The Federal Circuit has confirmed that a patent-ineligible claims can be described at multiple levels of abstraction.  *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240-41 (Fed. Cir. 2016) ("An abstract idea can generally be described at different levels of abstraction.").  Consistent with this precedent, the Federal Circuit has found patents unpatentable based on abstract ideas described at various levels of abstraction.  For example, at a higher level of abstraction, the Federal Circuit has found unpatentable claims directed to abstract ideas such as "gathering and analyzing information of a specified content, then displaying the results," *Elec. Power*, 830 F.3d at 1354, or "collecting, displaying, and manipulating data." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) ("*Capital One II*").  On the other end of the spectrum, the Federal Circuit has confirmed the unpatentability of claims using a more granular statement of the abstraction, such as the eleven-step abstraction in *Ultramercial*.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-15 (Fed. Cir. 2014) ("An examination of the claim limitations of the [] patent shows that claim 1 includes eleven steps for displaying an advertisement in exchange for access to copyrighted media. . . . . [t]his

ordered combination of steps recites an abstraction—an idea, having no particular or concrete or tangible form.").

At a high level, the steps recited in claim 1 express an abstract mathematical algorithm for calculating signatures. *See Parker*, 437 U.S. at 595 n.18 ("Very simply, our holding today is that a claim for an improved method of calculation, even when tied to a specific end use, is unpatentable subject matter under § 101."). At the next level of abstraction, the steps recited in claim 1 express an abstract mathematical algorithm of (1) selecting two frames of media sample data; (2) performing a mathematical spectral transform operation that results in the generation of spectrum components having spectral powers; (3) comparing spectral powers to determine a descriptor; and (4) calculating a signature based on the descriptor. Regardless of the level of abstraction applied to the claims, the claims here are directed to an abstract mathematical algorithm.

Steps (1)-(4) of claim 1 obtain a first frame data, calculate two frequency components having spectral powers by performing mathematical spectral transform operation, calculate a first descriptor based on the comparison of the two spectral powers, and calculate a first signature based on the descriptor. *See* '889 patent, claim 1. The specification describes these steps to be mathematical calculation and algorithm:

| Claim Limitation | Specification Description |
|---|---|
| (1) obtaining a first frame of media samples; | The patent describes the "obtaining" step to be performed by mathematically sampling the audio stream during various time intervals. *Id*. at 8:22-28 ("**The audio sample frames 204, 206, 208, and 210 are generated by sampling the example monitored audio stream 202 during four time intervals at a sampling frequency fs.** For example, a sampling |

7

| Claim Limitation | Specification Description |
|---|---|
| | frequency f*s* of 6000 Hz will generate 6000 samples of audio data for each of the audio sample frames 204, 206, 208, and 210 (assuming the sample frames are collected over one second intervals).”). |
| (2) identifying a first frequency component having a first spectral power and a second frequency component having a second spectral power by performing a spectral transform operation on the first frame of media samples; | The patent describes the “identifying” step to be performed by Fourier Transform, a known mathematical equation.[1] *Id*. at 3:5-12 (“Frequency components of an audio signal are typically generated by transforming the audio signal data (e.g., an audio stream) from the time domain to the frequency domain using, for example, a **Fourier Transform**. The Fourier Transform can be used to analyze the frequency components in an audio stream and identify the spectral power of each frequency component. The spectral powers may then be used to generate digital spectral signatures.”) |
| (3) determining a first descriptor of the first frame of media samples based on a comparison of the first spectral power and the second spectral power; | The patent describes the “determining” step to be performed by a mathematical comparison that results into a mathematical representation of “descriptor.” *Id*. at 7:62-67 (“N-bit monitored signature S(t) is formed using one or more **M-bit descriptors B.(to), B(to-1), B(t+2), B(t+3)**. For example, a 32-bit monitored signature S(t) includes f**our 8-bit** |

---

[1] https://en.wikipedia.org/wiki/Fourier_transform.

| Claim Limitation | Specification Description |
|---|---|
|  | descriptors **B(t), B(to-1), B(t+2), B(t+3)** …"); 16:49-55 ("A descriptor bit is determined based on the frequency components $f_{00}$ and $f_{10}$ by **comparing the first spectral power $P_{00}$ with the second spectral power $P_{10}$** (block 506). **If the first spectral power is greater than the second spectral power (i.e., $P_{00} > P_{10}$), the descriptor bit is set equal to one. If, instead, the first spectral power is less than or equal to the second spectral power (i.e., $P_{00} <= P_{10}$), the descriptor bit is set equal to Zero**.") |
| (4) generating a first signature based on the first descriptor, | The patent describes the "generating" step to be performed by mathematically concatenating descriptors together. *Id*. at 8:16-22 ("A monitored signature may be generated by sampling the example monitored audio stream 202 to generate the audio sample frames 204, 206, 208, and 210, generating the descriptors B(t), B(t+1), B(t+2), B(t+3) based on spectral decompositions of the audio sample frames 204, 206, 208, and 210, and **concatenating the descriptors**."); 9:27-29 ("**One or more of the descriptors B(t) may then be concatenated to form an N-bit reference signature S(t)**."); 10:22-30 ("To further illustrate the generation of reference signatures |

| Claim Limitation | Specification Description |
|---|---|
|  | that are time shifted and overlapped, **each reference signature is formed by four reference descriptors**" <br><br> $$B_{Rn}\left(t_0 + \frac{k}{T_s}\right),\ B_{Rn}\left(t_0 + \frac{k}{T_s} + 1\right),\ B_{Rn}\left(t_0\frac{k}{T_s} + 2\right),\ B_{Rn}\left(t_0 + \frac{k}{T_s} + 3\right).$$ |

Steps (5)-(8) of claim 1 substantially repeat the steps (1)-(4) – obtain a second frame data, calculate two frequency components having spectral powers by performing mathematical spectral transform operation, calculate a second descriptor based on the comparison of the two spectral powers, and calculate a second signature based on the descriptor. *See* '889 patent, claim 1. As demonstrated above, steps (5)-(8) are mathematical calculation and algorithm of creating signatures as well. As a result, all the steps in claim 1 combined together merely describe a mathematical algorithm and calculation of signatures. *See Control & Monitoring Sys., LLC v. Digital Playground, Inc.*, 2016 WL 5793745, at \*5 (S.D.N.Y. Sept. 30, 2016) ("Simply combining these abstract ideas does not create a nonabstract idea.").

This claim recites a series of steps that are quite similar to those in method claim 8 that the Supreme Court determined to be patent ineligible in *Benson*.[2] Both claims recite a mathematical algorithm to manipulate existing data to generate additional data. Claim 1 of the '889 patent mathematically calculates and determines the frequency component and descriptor information to generate signature information, and claim 8 of the *Benson* patent mathematically calculates binary information to convert Binary Coded Decimal (BCD) numerals into Binary

---

[2] Claim 8 of *Benson* recites: "8. The method of converting signals from binary coded decimal form into binary which comprises the steps of: (1) storing the binary coded decimal signals in a reentrant shift register, (2) shifting the signals to the right by at least three places, until there is a binary '1' in the second position of said register, (3) masking out said binary '1' in said second position of said register, (4) adding a binary '1' to the first position of said register, (5) shifting the signals to the left by two positions, (6) adding a '1' to said first position, and (7) shifting the signals to the right by at least three positions in preparation for a succeeding binary '1' in the second position of said register." *See Benson*, 409 U.S. at 73-74.

10

numerals.  Both are unpatentable as they recite nothing more than a series of steps to execute a mathematical algorithm.  *See Benson*, 409 U.S. at 67 (mathematical algorithm is "the basic tools of scientific and technological work").

This claim is also similar to the one the Federal Circuit determined to be patent ineligible in *Coffelt v. Nvidia Corp. et. al.*, 680 Fed.Appx. 1010, 1011 (Fed. Cir. 2017) ("The claims of the '710 patent recite a series of calculating steps, i.e., an algorithm, used to derive the color of a pixel … The claims thus recite nothing more than a mathematical algorithm …").[3]

Further, because claim 1 recites steps that constitute a mathematical algorithm to manipulate existing information (frame data, frequency component, descriptor) to generate additional information (signature), it also falls within the courts' precedents that "a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."  *See Digitech Image Techs., LLC v. EFI, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014); *see also SAP,* 898 F.3d at 1167  ("[S]electing certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis" is abstract.); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("[a] process that started with data, added an algorithm, and ended with a new form of data was directed to an abstract idea."); *Elec. Power,* 830 F.3d at 1354 (The Federal Circuit

---

[3] Claim 1 of the *Coffelt* patent recites: "1. A method for deriving a pixel color comprising the steps of: (1) a computer calculating a first position vector for a geometric graphic object; (2) a computer calculating a particular steradian region of space; (3) a computer calculating a particular steradian radius of said steradian region of space; (4) a computer calculating that said first position vector is located in said particular steradian region of space; (5) a computer calculating that said second position vector is located in said particular steradian region of space; (6) a computer calculating that said second position vector is located in said particular steradian region of space; (7) a computer calculating a length of said first position Vector; (8) a computer calculating a length of said second position vector; (9) a computer comparing said first length to said second length; (10) for a first pixel, a computer deriving a pixel color for said first position vector from a result of said length comparison; (11) for a second pixel, a computer deriving a pixel color for said second position vector forma result of said length comparison."  *See Coffelt v. Nvidia Corp. et al.*, 2016 WL 7507763, at *1 (C.D. Cal. June. 21. 2016), *aff'd Coffelt*, 680 Fed.Appx. 1010.

"has treated analyzing information ... by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category."); *PersonalWeb Technologies LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021) ("Generating such identifiers via a known algorithm is no less abstract."); *Eagle View Technologies, Inc. v. Roofr, Inc.*, 651 F.Supp.3d 729, 739 (D. Del. 2023) ("'claim 1 of the '538 patent boils down to a series of steps: "(a) collecting tangible information—*i.e.*, a geographic location and corresponding image; (b) analyzing that information using basic mathematical algorithms (*e.g.*, to determine a footprint, predominant pitch, and an estimated roofing area); and (c) displaying the results of the analysis ('the estimated roofing area') and collected information ('at least one image showing the roof')' … This is abstract."). As such, regardless of the level of abstraction it is conceptualized at, clam 1 is directed to an abstract mathematical formula under step one of *Alice*.

### 2.    Other Asserted Claims Are Also Directed to Abstract Ideas

Although no necessary given claim 1 is representative, none of the other claims changes the conclusion that the claims are directed to abstract ideas. The other independent claims 8 and 14 in the form of apparatus and/or tangible machine accessible medium recite the similar steps as those in claim 1. *See supra* §§III, IV.A. Other dependent claims describe merely minor variations of the abstract idea. *See supra* §IV.A; *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 n.1 (Fed. Cir. 2018) (additional limitations in dependent claims adding elements directed to types of information processed did not change abstract idea); *SAP*, 898 F.3d at 1168 ("As many cases make clear, even if a process of collecting and analyzing information is 'limited to particular content' or a particular 'source,' that limitation does not make the collection and analysis other than abstract.").

### D.    *Alice* Step 2: The Claims Recite No Inventive Concept

The asserted claims also fail the second step of the *Alice* test because they contain no "inventive concept," *i.e.*, an element or combination of elements sufficient to transform the

12

claimed abstract idea into patent-eligible subject matter. *See Alice*, 134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an inventive concept -- *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.") (internal quotation marks and brackets omitted). A claim reciting merely "well-understood, routine [and] conventional activities previously known to the industry" cannot provide an inventive concept. *Id*. at 2359 (internal quotations and citation omitted).

### 1.    Asserted Independent Claims Fail to Recite an Inventive Concept

The only conceivable technical or computer-related element in claim 1 is the generic "processor" for performing the algorithm, which is insufficient to confer patent eligibility. *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("the important inquiry for a § 101 analysis is to look to the claim"), *cert. denied* (2014). Given that the claim lacks any information about how the processor is programmed to perform the algorithm, it imparts no "inventive concept" to the abstract idea. *See Alice*, 134 S. Ct. at 2357 ("the computer implementation did not supply the necessary inventive concept … simply implementing a mathematical principle on a physical machine, namely a computer, [i]s not a patentable application of that principle."); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (ineligible claims failed to "specify how the computer [components] are specially programmed to perform" the abstract idea of an information clearinghouse).

The specification likewise does not purport to describe any new or inventive processor. The only references to a "processor" in the patent do not contemplate anything more than a generic and conventional processor. *See* '889 patent at 21:24-30 ("The example methods described above in connection with FIGS. 4-8 may be implemented by hardware, software, and/or any combination thereof … The example methods may also be implemented by Software executed on a processor System such as, for example, the processor system 1210 of

13

FIG. 12."); 25:11-22 ("FIG. 12 is a block diagram of an example processor system 1210 that may be used to implement the apparatus and methods described herein. As shown in FIG. 12, the processor system 1210 includes a processor 1212 … The processor 1212 may be any suitable processor, processing unit or microprocessor."); *FuzzySharp Techs., Inc. v. 3DLabs Inc.*, No. 2010-1160, 2011 WL 5248297, at *185 (Fed. Cir. Nov. 4, 2011) (nonprecedential) (using generic computer memory and processor for data storage and processing not sufficient to confer patentability); *S.I.SV.EL. Societa Italiana per lo Sviluppo Dell'Elettronica S.p.A. v. Rhapsopy Int'l Inc.*, No. 18-69 (MN), 2019 WL 2491898, at *6 (D. Del. June 14, 2019) (claims "do not require use of anything more than off-the-shelf computer technology . . . as a tool to implement what is really an assertedly better way of analyzing data using mathematical techniques").

Finally, nothing about the "ordered combination" of claim elements "transform[s]" the nature of the claims into a patent-eligible invention. *Alice*, 134 S. Ct. at 2359. Viewed as a whole, method claim 1 simply recites a mathematical algorithm performed using a generic processor. *See id*. The sequence in the claims is what one would expect to follow to implement a mathematical algorithm of creating a signature in a logical and practical way. Nor can there be any argument that the purported novelty of the combination or sequence of steps in the asserted claims resolves the deficiencies under § 101. *See Flook*, 437 U.S. at 591–92 ("[T]he novelty of the mathematical algorithm is not a determining factor at all" and "is treated as though it were a familiar part of the prior art."); *Synopsis, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("a claim for a *new* abstract idea is still an abstract idea") (emphasis in original); *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247, 260 (E.D. Pa. 2016) ("A novel combination of steps alone cannot alone render an abstract idea patentable."), *aff'd*, 683 F. App'x 930 (Fed. Cir. 2017). This is because a novel sequence of steps still results in only a "grouping of conventional steps and extant technology." *See Smart Sys. Innovations,*

14

*LLC v. Chicago Transit Authority.*, No. 14-cv-08053, 2015 WL 4184486, at *6 (N.D. Ill. July 10, 2015).

Although not necessary given claim 1 is representative, other independent claims in the form of apparatus and/or tangible machine accessible medium do not cite any inventive concept. Independent claim 8, in addition to a generic processor, includes a generic memory as part of the apparatus. *See* '889 patent, 26:47-27:2. Independent claim 14 merely recites a generic machine to execute the recited steps. *See id*. at 27:29-28:13. None of these convert an inventive concept. *See Alice*, 134 S. Ct. at 2357 ("the computer implementation did not supply the necessary inventive concept … simply implementing a mathematical principle on a physical machine, namely a computer, [i]s not a patentable application of that principle.").

### 2.    Asserted Dependent Claims Do Not Contain an Inventive Concept

Because claim 1 is representative as discussed above, *see supra* §IV.A, that should end the inquiry. For the sake of completeness, the following demonstrates why the asserted dependent claims also do not claim any inventive concept.

Claims 2 and 9 extend the mathematical algorithm in claim 1 by using the created signature to identify media information. The specification descries the step of identifying media information to be a simple look-up algorithm (potentially through look-up table or database). *See* '889 patent at 3:39-46 ("This match information may then be used to identify the media information (*e.g.*, monitored audio stream) from which the monitored signature was generated. For example, a look-up table or a database may be referenced to retrieve a media title, a program identity, an episode number, etc. that corresponds to the media information from which the monitored signature was generated."); *SAP,* 898 F.3d at 1167 ("the claims add no inventive concept to the mathematics to which they are directed — merely (a) further-specified mathematical calculations and (b) pre- and post-solution activities like use of the internet or generic computer hardware."); *Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14-

15

cv-00570, 2015 WL 1133244, at *6 (N.D. Cal. Mar. 10, 2015) ("this claim limitation certainly cannot supply an inventive concept to render the abstract idea patent-eligible … this limitation is in itself an abstract idea, and so is not patentable on its own"); *Accenture,* 728 F.3d at 1338-39 (claims reciting "insurance transaction database" and "task library database" held to be patent ineligible subject matter); *Bancorp Serv. LLC v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1280-81 (Fed. Cir. 2012) ("digital storage" claims held to be patent-ineligible).

Claim 4 describes the types of data (audio or video) that the media information may be associated with, which does not supply an inventive concept. *See BSG Tech LLC*, 899 F.3d at 1287 n.1 (additional limitations in dependent claims adding elements directed to types of information processed did not change abstract idea); *SAP,* 898 F.3d at 1167 ("the claims add no inventive concept to the mathematics to which they are directed — merely (a) further-specified mathematical calculations …").

Claims 5, 6, 11, and 15 expand the "determining" step in claim 1 to further describe the mathematical relationship between the "descriptor" and the "frame" data, which does not supply an inventive concept. *See BSG Tech LLC*, 899 F.3d at 1287 n.1; *SAP,* 898 F.3d at 1167.

Claims 12 and 16 depend from independent claims 8 and 14 respectfully and describe a mathematical relationship between the second frame data and the first frame data through a mathematical "move" equation by extracting certain data from the first frame data and combining that data with new data to create the second frame data  (*i.e.*, extracting a common plurality of media samples from the first frame of media samples and appending the first plurality of media samples to the common plurality of media samples).  *See* '889 patent at 10:8-16; *Hewlett Packard Co.*, 2015 WL 1133244, at *6 (claim element cannot supply inventive concept when it is itself an abstract idea); *SAP,* 898 F.3d at 1167 (further-specified mathematical calculations do not supply inventive concept).

Clams 13 and 17 depend from independent claims 8 and 14 respectfully and identify

16

the third and fourth frequency components by performing spectral transform operation (Fourier Transform), a known mathematical equation. *See* '889 patent at 3:5-12; *Hewlett Packard Co.*, 2015 WL 1133244, at *6 (claim element cannot supply inventive concept when it is itself an abstract idea); *SAP,* 898 F.3d at 1167 (further-specified mathematical calculations do not supply inventive concept).

## V.     CONCLUSION

Based on the foregoing, TVision respectfully requests that the Court grant its Motion for summary judgment of invalidity of all of the asserted claims of the '889 patent.

Respectfully submitted,

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Jason Xu
RIMÔN LAW P.C.
1990 K. Street, NW, Suite 420
Washington, DC 20006
(202) 470-2141

Eric C. Cohen
RIMÔN LAW P.C.
P.O. Box B113
150 Fayetteville St, Suite 2800
Raleigh, NC 27601-2960
(984) 960-2860

Michael F. Heafey
RIMÔN LAW P.C.
800 Oak Grove Avenue, Suite 250
Menlo Park, CA 94025
(650) 461-4433

Dated: March 12, 2024

17