# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-57-CJB |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| TVISION INSIGHTS, INC., | ) | |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |

## <u>NIELSEN'S OPPOSITION TO TVISION'S MOTION FOR SUMMARY JUDGMENT</u>

OF COUNSEL:

Steven Yovits
Douglas Lewis
Constantine Koutsoubas
Jason P. Greenhut
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel:  (312) 857-7070

Clifford Katz
Jolie Schenerman
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  (212) 808-7800

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company
(US), LLC*

Dated:  April 9, 2024
11437988 /14944.00004
Public Version Dated: April 16, 2024

**TABLE OF CONTENTS**

I.  NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.  SUMMARY OF ARGUMENT ...................................................................................... 1

III.  FACTUAL BACKGROUND ......................................................................................... 2

    A.  Automatic Content Recognition ("ACR") and Problems in the Prior Art ............. 2

    B.  The '889 Patent's Real-World Solutions to Prior Art Problems............................ 3

IV.  ARGUMENT ................................................................................................................. 7

    A.  TVision's Motion Should Be Denied Because It Failed To Provide A
    Statement of Facts Compliant With the Scheduling Order ................................... 7

    B.  A Representative Claim Must Recite Intraframe Processing ............................... 8

    C.  TVision Has Not Shown That the Claims Are Patent Ineligible Under the
    *Alice* Test ........................................................................................................... 9

        1.  TVision Has Not Shown That The Claims Are Patent Ineligible
        Under Step One of The *Alice* Test ............................................................ 10

        2.  TVision Fails to Carry Its Burden on *Alice* Step Two ............................ 21

V.  CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*3G Licensing, S.A. v. HTC Corp.*,
C.A. No 17-83-LPS, 2019 WL 2904670 (D. Del. July 5, 2019) .............................................16

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
573 U.S. 208 (2014).......................................................................................................9, 13

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016)...................................................................................23, 24

*Amgen Inc. v. Hospira, Inc.*,
C.A. No. 18-1064-CFC-CJB, 2021 WL 4935868 (D. Del. May 20, 2021)..........................7, 8

*Bascom Global Int't Servs. V. AT&T Mobility*,
827 F.3d 1341 (Fed. Cir. 2016)..............................................................................................23

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)..................................................................................... *passim*

*California Institute of Technology. v. Broadcom Ltd.*,
25 F.4th 976 (Fed. Cir. 2022) .......................................................................13, 14, 15, 19

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020).....................................................................................15, 17

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019)..............................................................................................18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................................................12

*Coffelt v. Nvidia Corp.*,
680 F. App'x 1010 (Fed. Cir. 2017) .......................................................................................20

*Cooperative Entnmn't v. Kollecive Tech.*,
50 F.4th 127 (Fed. Cir. 2022) ........................................................................................22, 23

*Digitech Image Techs., LLC v. EFI, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)..............................................................................................20

*Eagle View Tech., Inc. v. Roofr, Inc.*,
651 F. Supp. 3d 729 (D. Del. 2023)........................................................................................20

*Elec. Power Grp., LLC v. Alstom, S.A.*,
830 F.3d 1350 (Fed Cir. 2016).................................................................................................20

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)............................................................................10, 19

*Gibson v. Mayor and Council of Cty. of Wilmington*,
    355 F.3d 215 (3d Cir. 2004)...................................................................................12, 24

*Gottshalk v. Benson*,
    409 U.S. 63 (1972)........................................................................................................20

*Gracenote Inc. v. Free Stream Media Corp.*,
    C.A. No. 18-1608-RGA, 2019 WL 5684491 (D. Del. Nov. 1, 2019)................................15, 16

*Gracenote Inc. v. Free Stream Media Corp.*,
    C.A. No. 18-1608-RGA, 2019 WL 6728450 (D. Del. Dec. 11, 2019) ....................................15

*In re Grams*,
    888 F.2d 835 (Fed. Cir. 1989).................................................................................19, 20

*Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*,
    C.A. No. 15-137-LPS-CJB, 2016 WL 626495 (D. Del. Feb. 16, 2016)...................................9

*In re Killian*,
    45 F.4th 1373 (Fed. Cir. 2022) ...............................................................................19, 20

*KOM Software Inc. v. NetApp Inc.*,
    C.A. No. 18-160-WCB, 2023 WL 6460025 (D. Del. Oct. 4, 2023) ......................................22

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016).................................................................................12, 13

*Olympus Corp. v. Maxell, Ltd.*,
    C.A. No. 18-216-MN, 2018 WL 5962471 (D. Del. Nov. 14, 2018)................................10, 19

*Parker v. Flook*,
    437 U.S. 584 (1978)........................................................................................................20

*PersonalWeb Tech. LLC v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021) .......................................................................................20

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
    827 F.3d 1042 (Fed. Cir. 2016)......................................................................................19

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017)......................................................................................20

*SAP Am., Inc. v. InvestiPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)......................................................................................20

*Sunoco Partners Mktg & Terminals L.P. v. Powder Springs Logistics, LLC*,
    C.A. No. 17-1390-LPS-CJB, 2019 WL 4466766 (D. Del. Sep. 18, 2019)..........................9, 17

*Sysmex Corp. v. Beckman Coulter Inc.*,
    C.A. No. 19-1642-JFB-CJB, 2022 WL 1808325 (D. Del. Jun. 2, 2022)............................7, 21

*The Nielsen Co (US), LLC v. TVision Insights, Inc.*,
    C.A. No. 21-1592-CJB, 2022 WL 3226318 (D. Del. Aug. 10, 2022) ....................................18

*XY, LLC v. Trans Ova Genetics, LC*,
    968 F.3d 1323 (Fed. Cir. 2020)............................................................................................22

*Zimmerlink v. Zapotsky*,
    539 F. App'x 45 (3d Cir. Sep. 13, 2013) ........................................................................12, 25

**Statutes**

35 U.S.C. §101...............................................................................................................................1, 24

**Other Authorities**

Fed. R. Civ. P. 56...............................................................................................................................8

Fed. R. Civ. P. 56(f)(1) ...............................................................................................................12, 21, 24

## TABLE OF EXHIBITS

| Ex. No. | Description |
|---------|-------------|
| 1. | U.S. Patent No. 7,783,889 |
| 2. | Moulin Rebuttal Report Regarding Invalidity (November 21, 2023) |
| 3. | Anderson Opening Report Regarding Invalidity of U.S. Patent No. 7,783,889 (October 25, 2023) |
| 4. | Daniel Nelson Deposition Transcript Excerpts (September 8, 2023) |

## I.     NATURE AND STAGE OF PROCEEDINGS

Nielsen asserts claims 1-2, 4-6, 8-9, and 11-17 of U.S. Patent No. 7,783,889 ("the '889 patent") (Ex. 1[1]) against TVision. D.I. 1, ¶44. TVision has moved for summary judgment that the '889 Patent is directed to patent-ineligible subject matter and therefore invalid under 35 U.S.C. §101. D.I. 185-186.

## II.     SUMMARY OF ARGUMENT

TVision fails to meet its burden to show the claims of the '889 Patent are directed to unpatentable subject matter at both steps of the *Alice* analysis. At step one, which is a legal issue (with potential factual underpinnings that TVision has not addressed at all), the Court should find that the asserted claims are directed to patent-eligible subject matter as a matter of law (*i.e.,* the Court should enter summary judgment in Nielsen's favor).[2] Indeed, the claims recite improvements to computer technology and provide real-world, specific technological solutions to several prior art problems. Both the Federal Circuit and this Court have repeatedly held that similar claims are patent-eligible.

Step two of the *Alice* test depends on issues of fact. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). At this step, TVision fails to rebut Nielsen's evidence regarding the

---

[1] Exhibits refer to the corresponding exhibits to the declaration of Douglas Lewis in Support of Nielsen's Opposition to TVision's Motion for Summary Judgment, filed concurrently herewith.

[2] To be clear, Nielsen has not moved for summary judgment. But courts are empowered to issue summary judgment against a movant who does not provide evidence sufficient to sustain its claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."); Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant"); *Gibson v. Mayor and Council of Cty. of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004) (noting "[w]e have previously recognized that 'authority has developed to allow a court to grant summary judgment to a non-moving party.'"); *Zimmerlink v. Zapotsky*, 539 F. App'x 45, 49 (3d Cir. Sep. 13, 2013) (affirming grant of *sua sponte* summary judgment for non-movant).

claims' inventiveness. That failure warrants summary judgment *against* TVision. But, at a minimum, TVision fails to show the absence of disputed issues of material fact, and the Court should deny TVision's motion.

## III.    FACTUAL BACKGROUND

### A.    Automatic Content Recognition ("ACR") and Problems in the Prior Art

ACR identifies media—such as advertisements, songs, or television shows—from the media's audio or other characteristics. Ex. 1, '889 Patent at 1:21-23, 3:34-36. TVision and Nielsen employ audio ACR to identify the content playing at a monitored site (*e.g.*, a home television) to measure viewing audiences. *Id.* at 1:21-25, 1:39-44. Generally, ACR is performed on a short segment of the content, often on the order of one to four seconds. *See, e.g.*, *id.* at 8:22-28.

To perform ACR using signature matching, signatures must be generated at two locations: (i) the monitored site, and (ii) the reference site. *See* Ex. 1, '889 Patent at 1:20-44. The monitored site is where media content is playing (*e.g.*, someone's home). *See id.* at 3:22-29. The reference site is a central location with a database containing reference signatures for known media content. This central database has a very large library of reference signatures that are frequently updated as new media content is released. Ex. 1, '889 Patent at 3:30-37. Matching occurs by comparing signatures generated at the monitored site with signatures in the central database. *See id.* at 1:33-43, 3:30-47. When a monitored signature matches a reference signature, the monitored content can be identified because the identity of the reference content is known. *See id.* at 3:29-39.

To make sure that a monitored signature and a reference signature that correspond to the same content will match (as they should for the system to operate properly), two conditions must be met. First, the same technique must be used to generate both monitored and reference

signatures. *See* Ex. 1, '889 Patent at 8:5-17. And second, the monitored and reference signatures must be ***synchronized***. In other words, a monitored signature and reference signature corresponding to the same content will only match if they correspond to the same point in time in the media content. *See id.* at 8:36-64. For example, a one-second signature generated 10 seconds after the beginning of the content will not match a one-second signature generated 50 seconds after the beginning of the same content. *See id.*

The asserted claims of the '889 patent concern signatures generated using frequency domain processing. In particular, a signature is generated by performing a spectral transform, of which a Fourier Transform is one example, on samples from a short segment representing a time window in the audio (which is called a "frame"). *See* Ex. 1, '889 Patent at 2:65-3:21. To generate frame descriptors upon which signatures are based, an ACR system compares a pair of frequency components from the same frame. *See id.* at 2:56-3:5. Such processing within a single frame is known as "***intra***frame" or "single frame" processing. In contrast, prior art systems for generating signatures rely heavily on ***inter***frame, *i.e.,* multiple frame, processing—in which data from multiple audio frames is compared to generate a signature. Statement of Additional Facts ("SAF"), ¶¶2, 28; Ex. 2, Moulin Rebuttal Rep. ¶¶807, 809.

### B.    The '889 Patent's Real-World Solutions to Prior Art Problems

The invention recited in the asserted claims solves several problems in the prior art. First, the prior art approach of interframe processing is computationally complex and requires excessive processing power and memory. SAF ¶¶5-9, 28. Requiring excessive computing resources presents an acute problem because reference sites generate and store very large volumes of reference signatures. *Id.* ¶¶5-9, 28; Ex. 1, '889 Patent at 3:59-65. Moreover, monitored sites have to generate signatures in real time using devices in panelists' homes, and

3

Ex. 1, '889 Patent at 3:22-29; SAF ¶¶9, 27. This results in lower processing capacity. *Id.* The invention recited in the asserted claims solves this problem by using single-frame processing and as few as two frequency components. SAF ¶¶2, 28. The patented approach not only requires fewer computing resources than the prior art, it also allows faster signature generation that is easier to implement in hardware or software as compared to the prior art. *Id.*, ¶¶5-9.

Another prior art problem was that signal interference, known as "noise," could render signatures inaccurate. *See* SAF ¶¶16-17; Ex. 2, Moulin Rebuttal Rep. ¶¶803, 810. The invention recited in the asserted claims solves this problem by creating signatures that are more robust and thus far more likely to result in accurate matching. *See* SAF ¶¶10, 16-18, 23. As explained above, the descriptors upon which signatures are based in the '889 patent are obtained by comparing pairs of frequency components (*i.e.,* comparing one frequency component to another frequency component). *See id.* ¶¶2, 12. This approach (sometimes called a "sign-based" approach) creates signatures that are resistant to noise (*i.e.,* they are "robust"). *See id.* ¶¶16-17, 23. Specifically, noise might affect the frequency components, but the effect will not be great enough to change the outcome of a comparison between two frequency components. In other words, noise might affect the degree to which one frequency component is greater than the other, but it will rarely affect which one is greater. *Id.* In contrast, prior art systems employed other methods, such as comparing the total power of groups of frequency components that were susceptible to noise. *See id.* ¶¶16, 23.

A third problem in the prior art was the difficulty in synchronizing the monitored signature with the stored reference signatures. SAF ¶¶14-15, 20-22, 25. The '889 patent solved this problem by using overlapping frames in generating both monitored and reference signatures. In contrast to using successive, non-overlapping frames, overlapping frames produce signatures

4

that are very close together in time. *Id.* By comparing signatures that are offset from each other by small amounts of time, it is very likely that at least one of the monitored signatures will be synchronized with at least one of the reference signatures and thus match it, allowing identification of the monitored content. *Id.*

By solving these problems in the prior art, the invention recited in the '889 patent improves computing technology. Certainly, reducing computational complexity is an improvement to computing. And so is improving the robustness of ACR signatures, as recited in the claims, which improves measurement accuracy (*i.e*., improves database matching). SAF ¶¶10, 16-17, 23. And using overlapping frames improves measurement accuracy (*i.e.,* improves database access and matching) by increasing the temporal locations in the media content for which a signature exists, thereby increasing the likelihood of a match and the accuracy of viewership data. SAF ¶¶10, 14-18, 20-22, 25.

The asserted claims of the '889 Patent capture all the above-described solutions to prior art problems. For example, consider representative claim 5 (which includes the elements of its parent claim, claim 1):

| Element of '889 Patent, Claim 5 | Problem solved |
|---|---|
| A method for generating signatures implemented using an apparatus comprising a processor, the method comprising: | |
| obtaining a first frame of media samples; | Computing resources (single frame processing). SAF ¶¶2, 7, 12, 28. |
| identifying a first frequency component having a first spectral power and a second frequency component having a second spectral power by performing a spectral transform operation on the first frame of media samples; | Computing resources (use of only two frequency components). *Id.* ¶¶2-3, 6, 12, 24. |

5

| | |
|---|---|
| determining a first descriptor of the first frame of media samples based on a comparison of the first spectral power and the second spectral power; | Computing resources (descriptor of a single frame). *Id.* ¶¶2-3, 12, 24.<br><br>Robustness/accuracy (comparing two frequency components – sign-based). *Id.* ¶¶4, 10, 12, 16-18, 23. |
| generating a first signature based on the first descriptor, | |
| identifying a second frame of media samples by extracting a common plurality of media samples from the first frame of media samples and appending another plurality of media samples to the common plurality of media samples; | Synchronization (second signature from second frame that overlaps first frame). *Id.* ¶¶14-15, 22, 25. |
| identifying a third spectral power associated with a third frequency component and a fourth spectral power associated with a fourth frequency component, wherein the third frequency component and the fourth frequency component are associated with performing the spectral transform operation on the second frame of media samples; | Computing resources (use of only two frequency components). *Id.* ¶¶2-3, 6, 12, 24. |
| determining a second descriptor based on a comparison of the third spectral power and the fourth spectral power; and | Computing resources (descriptor of a single frame). *Id.* ¶¶2-3, 12, 24.<br><br>Robustness/accuracy (comparing two frequency components – sign-based). *Id.* ¶¶4, 10, 12, 16-18, 23. |
| generating a second signature based on the second descriptor. | |
| wherein the first descriptor is associated with only the first frame of media samples. | Computing resources (descriptor of a single frame). *Id.* ¶¶2-3, 12, 24. |

D.I. 187, TVision's Concise Statement of Facts, ("TSF"), ¶¶3, 6. As this chart shows,

representative claim 5 solves prior art problems by performing intraframe processing, comparing

two spectral powers, and utilizing overlapping frames.

## IV.   ARGUMENT

### A.   TVision's Motion Should Be Denied Because It Failed To Provide A Statement of Facts Compliant With the Scheduling Order

TVision failed to provide a "concise statement of facts" ("Statement of Facts") that "details each material fact that the moving party contends is essential for the Court's resolution of the summary judgment motion . . . and as to which the moving party contends there is no genuine issue to be tried" and a "specific citation(s) to the record" for each statement. *See* Scheduling Order, D.I. 24 at 15. TVision's Statement of Facts quotes the '889 Patent claims but contains no other supposedly undisputed material facts or citations to any record evidence. *See* TSF.

TVision's failure to follow the Court's procedure for identifying undisputed material facts and their record citations is a sufficient basis for the Court to deny its motion. In *Amgen Inc. v. Hospira, Inc.*, the court issued a scheduling order similar to the one in this case. C.A. No. 18-1064-CFC-CJB, 2021 WL 4935868, at *1 (D. Del. May 20, 2021). Like TVision, the summary judgment movant alleged a supposedly material fact in its brief that was not in its concise statement of facts. *See Amgen*, 2021 WL 4935868, at *1. The court found the movant failed to comply with the Scheduling Order and denied the motion. *See Amgen*, 2021 WL 4935868, at *1.

TVision's Statement of Facts similarly fails to identify material facts relied on its brief, to allege that such facts are undisputed, or to cite where the record shows such material facts. Both *Alice* steps one and two require underlying supporting facts. At *Alice* step one, TVision must show that the claims do not recite a technological improvement. *See Sysmex Corp. v. Beckman Coulter Inc.*, C.A. No. 19-1642-JFB-CJB, 2022 WL 1808325, at *5 (D. Del. Jun. 2, 2022) ("the step one analysis here entirely boils down to whether the claims are directed to *an improvement*

7

*in computing devices or other technology* (as opposed to an abstract idea for which computers are invoked merely as a tool) . . . And here, the record indicates that there is at least a material dispute of fact on that question.") (emphasis in original). And at *Alice* step two, TVision must show that the claims do not recite elements that are unconventional, not well-understood, or non-routine. *See Berkheimer*, 881 F.3d at 1369-70. TVision's Statement of Facts identifies no facts to support its arguments for either *Alice* step. *See* D.I. 187.[3]

TVision's failure to follow the Scheduling Order's clear requirement to concisely identify the undisputed material facts warranting summary judgment and to identify supporting record evidence is fatal to its motion. The Court should therefore deny TVision's motion. *See Amgen*, 2021 WL 4935868, at *1; Fed. R. Civ. P. 56.

### B.    A Representative Claim Must Recite Intraframe Processing

TVision argues that claim 1 of the '889 Patent is representative and that the Court can therefore rely on its analysis of claim 1 to determine whether the asserted claims are patent eligible. D.I. 186 at 1-5. Nielsen agrees that claim 1 is representative ***provided*** that there is no dispute that all claims recite intraframe processing. *See* D.I. 186 at 3-5. And there should not be any such dispute, as all the claims recite determining a descriptor of an individual, single frame. *See, e.g.,* Claim 1 ("determining a first descriptor ***of the first frame***") (emphasis added). But if TVision disputes that all claims recite intraframe processing, claim 5 recites this feature more explicitly and would instead be representative. To that point, claim 5 is dependent on claim 1 but includes the additional limitation "wherein the first descriptor is associated with only the first

---

[3] TVision may argue that it followed the Scheduling Order and that the claim language is the only material fact necessary to grant its motion. That would be wrong. TVision's mere recitation of the claim language in its Statement of Facts does not identify the requisite material facts for either step—or identify what facts it contends are undisputed or where they are in the record—including those underlying its arguments discussed below.

frame of media samples." TSF, ¶¶3, 6; SAF, ¶2.

For purposes of this brief, Nielsen assumes that claim 5 is representative—although, if TVision agrees that all claims recite intraframe processing, it is immaterial for purposes of TVision's summary judgment motion whether claim 1 or claim 5 is representative.

### C.    TVision Has Not Shown That the Claims Are Patent Ineligible Under the *Alice* Test

Whether the '889 patent claims are patent eligible depends on the two-step test articulated in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014):

> "First, we determine whether the claims at issue are directed to" a patent-ineligible concept. If so, "we consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."

*Berkheimer v. HP Inc.,* 881 F.3d 1360, 1366 (Fed. Cir. 2018) (quoting *Alice*, 573 U.S. at 217).

The first prong of the *Alice* test, whether the claims are directed to a patent-ineligible concept, is a matter of law (with potential factual underpinnings) upon which TVision bears the burden to show that the claims are directed to an abstract idea or other patent-ineligible subject matter. *See Sunoco Partners Mktg & Terminals L.P. v. Powder Springs Logistics, LLC*, C.A. No. 17-1390-LPS-CJB, 2019 WL 4466766, at *10 (D. Del. Sep. 18, 2019); *Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*, C.A. No. 15-137-LPS-CJB, 2016 WL 626495, at *10 (D. Del. Feb. 16, 2016). TVision also bears the burden on the second prong of the *Alice* test. The Court need only reach the second *Alice* prong if TVision proves that that the asserted claims fail at step one. If so, TVision must show by clear and convincing evidence that there are *no* disputed factual issues regarding whether the asserted claims contain an inventive step, which requires it to prove facts showing that the claims are well-understood, routine, and conventional. *Berkheimer,* 881 F.3d 1368-69.

9

As to *Alice* step one, the asserted claims of the '889 Patent are directed to patent-eligible subject matter as a matter of law. As shown below, the Federal Circuit and this Court have consistently found claims directed to a specific technological process that improves upon the prior art—like the claims of the '889 Patent—are patent eligible at *Alice* step one. With respect to *Alice* step two, TVision identifies no evidence to show that the claims lack an inventive step. On the contrary, all evidence shows that the asserted claims contain inventive concepts.

> **1.      TVision Has Not Shown That The Claims Are Patent Ineligible Under Step One of The *Alice* Test**
>
> **a.      The '889 Patent Claims are Directed to A Patent-Eligible Improvement in Computer Technology That Solves Problems in The Prior Art**

As the Federal Circuit held in the *Enfish* case, claims that are directed to improvements in computer technology (and not merely directed to an idea that uses computers only as a tool) are patent-eligible. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("Software can make non-abstract improvements to computer technology just as hardware improvements can..."); *see also Olympus Corp. v. Maxell, Ltd.,* C.A. No. 18-216-MN, 2018 WL 5962471, at *4 (D. Del. Nov. 14, 2018) ("[T]he relevant inquiry at step one of *Alice* is whether the claims are directed to an improvement in computing devices or other technology.").

The '889 patent claims solve three prior art technical problems and offer real-world solutions to improve computer technology.

**First**, the claims recite a solution to the prior art problem of ACR requiring excessive computer resources. In particular, the claims recite processing a single frame of audio samples and the use of as few as two frequency components in generating a signature. For example, claim 5 recites: "determining a first *descriptor of the first frame* of media samples based on a *comparison of the first spectral power and the second spectral power*" and "wherein the first

descriptor is associated with *only the first frame* of media samples." TSF, ¶¶3, 6 (emphasis added). As Nielsen's technical expert Dr. Pierre Moulin explains, this single-frame, two-component-comparison approach is an improvement in computer technology that reduces required computational resources, allows faster computation of signatures, and allows easier hardware and software implementation. SAF ¶¶5-9, 28. These benefits are particularly helpful in large-scale audience measurement systems, which have sizable reference libraries and underpowered devices placed in panelist households. *Id.* ¶¶8, 19.

**Second**, the claims recite a solution to the prior art problem of signature robustness against noise, thereby improving the accuracy of matching monitored signatures with reference signatures in the database—another improvement in computer technology. This is accomplished by the claims' recitation of a sign-based approach in which a pair of frequency components are compared to each other. For example, claim 5 recites: "determining a first descriptor of the first frame of media samples based on a *comparison of the first spectral power and the second spectral power*." TSF ¶¶3, 6. As Dr. Moulin explains, comparing two frequency components results in a noise-resistant signature. Specifically, noise may affect the magnitude of the difference between two components but is unlikely to affect which component is greater. SAF ¶¶16-17, 23. This technological innovation in computer technology results in more accurate signatures that are less likely to generate, for example, false-positive matches. *Id.* ¶¶10, 18.

And **third**, the claims recite a solution to the prior art problem of synchronizing monitored and reference signatures. This, too, is an improvement in computer technology, as it enables improved signature matching. The asserted claims explain how to achieve this synchronization solution by using overlapping frames of audio samples. For example, claim 5 recites: "identifying a second frame of media samples by extracting a common plurality of media

samples from the first frame of media samples and appending another plurality of media samples to the common plurality of media samples." TSF ¶¶3, 6. By using overlapping frames, successive frames are offset from each other by only a very small amount of time. By having signatures spaced closely together in time, there is a high likelihood that at least one pair of monitored and reference signatures will by synchronized and thus match. *See* Section III.B. As the specification of the '889 patent explains, this improves the ability of the computer to accurately match signatures in a database. SAF ¶¶14-15, 20-22.

Because the '889 patent claims recite an improvement in technology, they are, as a matter of law, not abstract. The Court should deny TVision's motion for this reason and enter summary judgment *against* TVision. *See* ft. nt. 2; *Celotex*, 477 U.S. at 326; Fed. R. Civ. P. 56(f)(1); *Gibson*, 355 F.3d at 222; *Zimmerlink*, 539 F. App'x at 49. Even if TVision had raised a factual dispute regarding that improvement (which it has not), at minimum, it would be appropriate for the Court to deny the motion.

### b.    The Asserted Claims Recite Specific Solutions and Not Results

The Federal Circuit has also held that claims that recite specific solutions, and do not merely claim a desired result, are patent-eligible at *Alice* step one. *McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1312-14 (Fed. Cir. 2016). The asserted claims provide such specific solutions. As explained above, the claims recite the use of single frames and as few as two frequency components to solve prior art computer resource problems. In addition, the claims recite a sign-based approach that improves robustness and accuracy of the computer matching process. And finally, the claims recite the use of overlapping frames to solve prior art issues with synchronization of monitored and reference signatures. *See* Section III.B.

In accordance with *McRO*, the asserted claims do not impermissibly recite a result. The desired result of practicing the invention recited in the asserted claims is a robust, synchronized

signature that can be generated and used without excessive computing resources. SAF ¶¶5-8, 12, 16, 18-20, 22-24, 28; Ex. 1, '889 patent, 9:36-39, 12:47-13:4; Ex. 2, Moulin Op. Rep. ¶¶803-809. Rather than reciting only these results, the claims recite ***the steps that must be performed*** to achieve the desired inventive results and are therefore directed to patent-eligible subject matter. *See McRO,* 837 F.3d at 1312-14.

The asserted claims of the '889 Patent also do not preempt the entire field of signature generation for ACR—which is further confirmation that the claims are sufficiently specific to pass muster under *Alice* step one. *See Alice*, 573 U.S. at 216. To the contrary, other signature generation techniques are not covered by the asserted claims, such as using multiple-frame processing, non-overlapping frames, or non-sign-based approaches.

**c.    Analogous Federal Circuit and Delaware Cases Have Found Claims Similar to The Asserted Claims Patent-Eligible**

The Federal Circuit and this District have found analogous claims not directed to an abstract idea and thus patent eligible. The table below shows the similarity between the first five elements of claim 5 of the '889 Patent and claims the Federal Circuit found patent-eligible in *California Institute of Technology. v. Broadcom Ltd.*, 25 F.4th 976 (Fed. Cir. 2022):

| '889 Patent Claim 1 | *Broadcom* Claim 13 | How the Claims Are Similar |
|---|---|---|
| A method for generating signatures implemented using an apparatus comprising a processor, the method comprising: | A method of encoding a signal, comprising: | Both claims relate to signal processing methods |

| | | |
|---|---|---|
| obtaining a first frame of media samples; | receiving a block of data in the signal to be encoded, the block of data including information bits; | Both claims recite ingestion of data samples/bits |
| identifying a first frequency component having a first spectral power and a second frequency component having a second spectral power by performing a spectral transform operation on the first frame of media samples; determining a first descriptor of the first frame of media samples based on a comparison of the first spectral power and the second spectral power; | performing an encoding operation using the information bits as an input, the encoding operation including an accumulation of mod-2 or exclusive-OR sums of bits in subsets of the information bits; | Both claims recite the performance of an operation on the ingested information (in the '889 claim, a spectral transform is performed and a comparison is made; in *Broadcom*, an encoding operation is performed that includes an accumulation of mod-2 or exclusive-OR sums) |
| generating a first signature based on the first descriptor; | the encoding operation generating at least a portion of a codeword; | Both claims generate a result from the operation that was performed on the ingested samples/bits (the '889 claim generates a signature that results from the earlier transform operation, and the *Broadcom* claim generates a codeword portion that results from the earlier encoding operation) |
| identifying a second frame of media samples by extracting a common plurality of media samples from the first frame of media samples and appending another plurality of media samples to the common plurality of media samples; | wherein the information bits appear in a variable number of subsets. | Both claims specify a way in which portions of data samples/bits are used more than once |

*Broadcom*, 25 F.4th at 984; Ex. 1, '889 Patent at 26:5-15 (skipping method steps for second

frame for the sake of brevity).[4]

---

[4] The remaining elements repeat the processing shown on the second frame. *See, e.g.*, TSF ¶3.

14

As shown above, both claim 5 of the '889 patent and the *Broadcom* claim recite processing a signal (media samples or another block of data) to generate a useable output (an ACR signature or a codeword) by performing operations on data (a spectral transform or an encoding operation). And both claims recite an improved computationally efficient method. SAF ¶¶5-10, 12, 28; *Broadcom*, 25 F.4th at 988 ("Claim 13 does not claim a mathematical formula as such. It claims more than a mathematical formula because it is directed to an ***efficient, improved method of encoding data*** that relies in part on irregular repetition. This alleged improvement is not patent ineligible simply because it employs a mathematical formula.") (emphasis added). Furthermore, both claims recite a specific process for achieving a result, rather than just the result itself. *See* SAF ¶12; *Broadcom*, 25 F.4th at 988; *see also CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020).

This District found a similar claim patent-eligible in *Gracenote Inc. v. Free Stream Media Corp.*, C.A. No. 18-1608-RGA, 2019 WL 5684491 (D. Del. Nov. 1, 2019), *adopted* 2019 WL 6728450 (D. Del. Dec. 11, 2019). In *Gracenote*, the claim recited generating a signature from a frame of media content and using that signature to search a database for matches.[5] In finding the claim patent-eligible at *Alice* step one, the court credited the specification's

---

[5] The claim at issue in *Gracenote* recited as follows:

> 1. A method of organization of a multi-dimensional video database using a robust hash of a multi-dimensional vector signature as a traversal index, the method comprising:
>
> generation of a robust hash value as a traversal index from multiple parameters extracted from a region of interest in a frame of a video sequence; and
>
> storing data associated with the video sequence at a leaf node addressed by the robust hash value, wherein the leaf node is a member of a plurality of leaf nodes in a multi-dimensional video database.

explanation that the method "allow[ed] for efficient access of the database" and "achiev[ed] both accuracy and performance over complex prior art systems." 2019 WL 5685591, at *8. The court analogized the asserted claim to the patent-eligible claim of *Enfish* and found "the focus of the asserted claim . . . is on a 'specific asserted improvement in computer capabilities.'" *Id.* The court further explained that "[b]ecause the claim language is specifically directed to the use of a robust hash to organize a multi-dimensional video database, and because the claimed invention represents an improved method providing greater efficiency over conventional methods of organizing such a database, the asserted claim . . . does not recite an abstract idea." 2019 WL 5684491, at *8.

Like the *Gracenote* claims, the '889 claims are directed to the use of a specific technical solution to improve on prior art systems for generating signatures for database searching and matching. *See* TSF ¶¶3, 6; SAF ¶¶1-2, 5-10, 12. The claims of the '889 patent recite a particular way of generating signatures by comparing two or more spectral powers, performing intraframe processing, and processing overlapping frames; likewise, in the *Gracenote* patent, the claims related to a robust signature generated from perceivable characteristics of the media. Similar to the *Gracenote* claims, the invention of the '889 Patent improves on the efficiency and accuracy of prior art systems for generating signatures to be used for database access and searching. SAF ¶¶5-10, 28.

Like the claims in these cases, the '889 patent claims, as a matter of law, are not abstract.

### d.    TVision Has Failed to Meet Its Burden to Identify an "Abstract Idea" That Comports with The Claims

Notably, the technical solutions to the three prior art technical problems described above (each of which is recited in the asserted claims) are all missing from TVision's proposal of what the claims of the '889 patent are supposedly "directed to." *See* D.I. 186 at 7-10. Because TVision

16

fails to carry its burden to properly identify an alleged abstract idea to which the claims are directed, and instead engages in over-simplification of the claims, its motion should be denied. *3G Licensing, S.A. v. HTC Corp.*, C.A. No 17-83-LPS, 2019 WL 2904670, at *2 (D. Del. July 5, 2019) (holding that it is the defendant's burden to articulate a viable "abstract idea.").

In its motion, TVision contends that the claims are "directed to" a four step algorithm:

(1) Selecting two frames of media sample data;

(2) Performing a mathematical spectral transform operation that results in the generation of spectral components having spectral powers;

(3) Comparing spectral powers to determine a descriptor; and

(4) Calculating a signature based on the descriptor.

D.I. 186 at 7.

But TVision's characterization of the claims is far too broad and ignores the claims' key inventive elements. *See Sunoco*, 2019 WL 4466766, at *10 (denying motion to dismiss where "[d]efendants chose to aim for a much broader and much more vague articulation of what the claims were purportedly directed to."). In fact, TVision's proposed characterization ignores all the claim limitations that solve the problems in the prior art and improve computing technology. *First*, TVision's characterization does not account for the fact that the claims recite single-frame processing and the use of as few as two frequency components, which solves the prior art problem of excessive use of computing resources in generating and using signatures. *Second*, TVision's characterization does not include the claims' recitation of overlapping frames, which solves the prior art problem with signature synchronization. And *third*, TVision's characterization ignores that the claims recite comparisons only between pairs of frequency components, which solves the prior art problem of signature robustness.

TVision's failure to account for the most important features of the asserted claims

17

constitutes an impermissible overgeneralization. *See CardioNet*, 955 F.3d at 1371 ("Generalizing the asserted claims as being directed to collecting, analyzing, and reporting data is inconsistent with our instructions that courts 'be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims.") (*quoting McRO*, 837 F.3d at 1313); *The Nielsen Co. (US), LLC v. TVision Insights, Inc.*, C.A. No. 21-1592-CJB, 2022 WL 3226318, at *4 (D. Del. Aug. 10, 2022) (finding that the proposed abstract idea "ignores the thrust of the invention. The claim clearly is not just about using 'two different methods' to monitor people or an environment. It is about doing so in a ***particular*** way.") (emphasis in original).

Furthermore, TVision's four-step algorithm is so broad that it covers systems that the asserted claims of the '889 Patent do not cover. For example, TVision's four-step algorithm covers systems (i) in which the frames do not overlap, (ii) that use interframe (*i.e.*, multiple frame) processing, and (iii) that perform ***any*** comparison operation between frequency components, not just those that compare pairs of special powers (such as comparing groups of spectral powers taken together). SAF ¶26. These claim limitations—all of which are found in the asserted claims of the '889 patent—are precisely what renders the claims an improvement on the computer technology of the prior art.

TVision's overgeneralization of the claims of the '889 Patent, its failure to properly identify what the claims are "directed to," and its failure to address key claim limitations are grounds to deny its motion. *See Nielsen*, 2022 WL 3226318, at *4; *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019).

> **e.**  **TVision Incorrectly Asserts That The '889 Patent Contains Mathematical Formulae and That All "Algorithms" Are Unpatentable**

TVision incorrectly argues that the asserted claims recite a "mathematical algorithm" (a

term often used synonymously with a "mathematical formula") and are thus abstract. D.I. 186 at 5-7, 10-12. To the contrary, the asserted claims of the '889 patent do not recite any mathematical formulas at all.[6] Rather, the claims recite particular technological methods in the form of a ***general algorithm***.

To the extent TVision asserts that general algorithms are *per se* unpatentable, it is plainly wrong. Indeed, in *Enfish*, the Federal Circuit described the patent-eligible claims at issue as being directed to an "algorithm." *Enfish*, 822 F.3d at 1336-1338. Indeed, none of the cases TVision cites support the conclusion that algorithms are *per se* ineligible. *See* D.I. 186 at 5 (citing *Elec. Power Grp., LLC v. Alstom, S.A.*, 830 F.3d 1350, 1354 (Fed Cir. 2016) (holding only that bare ***mathematical formulas***, without more, are unpatentable); *In re Grams*, 888 F.2d 835, 837 (Fed. Cir. 1989) ("[M]ere recital of an algorithm does not automatically render a claim [ineligible]."); *In re Killian*, 45 F.4th 1373, 1378, 1380 (Fed. Cir. 2022) (holding claims patent-ineligible because the steps of the claims "could be performed by a person reading and comprehending the meaning of the recited information," not because the steps constituted an algorithm).

Even claims ***containing*** a mathematical formula are similarly not *per se* unpatentable unless they contain ***only*** a mathematical formula. *See Broadcom*, 25 F.4th at 988 (an "improvement is not patent ineligible simply because it employs a mathematical formula.").

---

[6] Unable to find a formula in the claims themselves, TVision instead looks to the specification and offers a table that purportedly connects the claim elements to alleged formulae in the specification. But TVision's reliance on the specification is improper because examples from the specification are not determinative of what the claims are "directed to." *See Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016) ("At step one . . . it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'") (emphasis added); *Olympus*, 2018 WL 5962471, at *4 ("the relevant inquiry at step one of *Alice* is whether the claims are directed to an improvement in . . . technology . . .") (emphasis added).

19

Every case TVision cites involves, unlike the asserted '889 claims, claims that recite (a) **only** a bare mathematical equation, which is ineligible subject matter; or (b) simple automation of a traditional manual process, which is also patent-ineligible. *See Grams*, 888 F.2d at 840 (claiming the mathematical processing of clinical test results)*; Killian*, 45 F.4th at 1379 (claiming the automation of a manual process for determining social security benefit eligibility)*; Elec. Power Grp.*, 830 F.3d at 1354 (claiming the centralization and automation of monitoring an electric power grid); *Parker v. Flook*, 437 U.S. 584, 585 (1978) (claiming a formula for updating the value of an alarm limit); *SAP Am., Inc. v. InvestiPic, LLC*, 898 F.3d 1161, 1164-65 (Fed. Cir. 2018) (claiming statistical analysis of investment information); *Gottshalk v. Benson*, 409 U.S. 63, 64 (1972) (claiming a method of converting binary-coded decimal into pure binary numerals); *Coffelt v. Nvidia Corp.*, 680 F. App'x 1010, 1010-11 (Fed. Cir. 2017) (claiming a method of mathematically deriving a pixel color); *Digitech Image Techs., LLC v. EFI, Inc.*, 758 F.3d 1344, 1350-51 (Fed. Cir. 2014) (claiming mathematically translating color and space properties of digital imaging devices); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1324 (Fed. Cir. 2017) (claiming a mathematical function for translating facial images from one display to another); *PersonalWeb Tech. LLC v. Google LLC*, 8 F.4th 1310, 1313 (Fed. Cir. 2021) (claiming the automation of a manual process for granting access to, denying access to, or deleting data in response to a request); *Eagle View Tech., Inc. v. Roofr, Inc.*, 651 F. Supp. 3d 729, 738-40 (D. Del. 2023) (claiming the automation of a method for estimating roofing area of a roof using an image).

In sum, TVision's attempt to take a shortcut around a proper "directed to" and abstractness analysis is inconsistent with the law on both algorithms and mathematical formulas. And TVision makes no other attempt to show that even its (improper) proposed four-step

20

algorithm is abstract. Thus, the Court should enter summary judgment in Nielsen's favor. Even if TVision had raised a dispute about whether the claims represent an improvement in computing or other technology (which it did not), it would nonetheless be appropriate to at least deny TVision's motion. *See Sysmex Corp.*, No. 19-1642-JFB-CJB, 2022 WL 1808325, at *5 ("the step one analysis here entirely boils down to whether the claims are directed to *an improvement in computing devices or other technology* (as opposed to an abstract idea for which computers are invoked merely as a tool) . . . And here, the record indicates that there is at least a material dispute of fact on that question.") (emphasis in original).

### 2.    TVision Fails to Carry Its Burden on *Alice* Step Two

Step two of the *Alice* analysis relies on underlying issue of fact. More specifically, step two "is satisfied when the claim limitations involve more than performance of well understood, routine, and conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367 (quotation omitted). The question of "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination" that TVision must prove by clear and convincing evidence. *Id.* at 1368.

Should the Court find it necessary to address step two of the *Alice* inquiry (*i.e.,* if the asserted claims fail at step one), Nielsen presents unrebutted evidence regarding the inventiveness of the '889 Patent claims. TVision provides no evidence at all, relying entirely on attorney argument. Accordingly, summary judgment of patent *eligibility* should be granted. *See* Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant"). At a minimum, the Court should find that Nielsen's evidence creates disputed issues of material fact that defeat TVision's motion.

### a.    TVision Fails to Rebut Nielsen's Evidence of Inventiveness

Nielsen has presented unrebutted expert evidence that as of the August 18, 2004 priority

date of the '889 Patent, it was not well-understood, routine, or conventional among those of skill in the art to generate digital signatures using the methods and apparatus recited in the claims of the '889 Patent. SAF ¶¶3-4. Specifically, Nielsen's technical expert, Dr. Moulin, opines that it was not well-understood, routine, or conventional among those of skill in the art to generate digital signatures of overlapping frames via intraframe processing and by comparing pairs of spectral powers. *Id.* Moreover, the specification of the '889 patent explains that this approach was inventive. *Id.* ¶2.

TVision must show that ***no claim elements*** comprise an inventive step in order to carry its burden on *Alice* step two. *See Cooperative Entnmn't v. Kollecive Tech.*, 50 F.4th 127, 131-32 (Fed. Cir. 2022) ("at step two . . . we determine whether the claim elements, individually and as an ordered combination, contain an inventive concept"). But TVision does not dispute the above-described evidence or present any refuting evidence. Indeed, its Statement of Facts includes only the asserted claims and no other evidence. *See generally* TSF; Section IV.A. TVision identifies ***no*** record evidence regarding the inventiveness of intraframe processing, comparing pairs of spectral powers, or using overlapping frames, which are recited in the '889 Patent's claims. *See* D.I. 186 at 13. Indeed, TVision completely ignores the state of the art in generating digital signatures and ACR technology.

The only claim element that TVision actually addresses in its *Alice* step two analysis is the "processor" feature in independent claims 1 and 8.[7] D.I. 186 at 12-15; *see* Section IV.C.2.b. Certainly, not all claims that recite a "processor" are patent ineligible. *See e.g.*, *XY, LLC v. Trans Ova Genetics, LC*, 968 F.3d 1323, 1328-29 (Fed. Cir. 2020); *KOM Software Inc. v. NetApp Inc.*, C.A. No. 18-160-WCB, 2023 WL 6460025, at *2 (D. Del. Oct. 4, 2023). But, more importantly,

---

[7] Notably, claim 14 does not recite a processor.

22

TVision cannot carry its burden by cherry picking elements from the asserted claims; on the contrary, it must show that no claim elements are inventive. *See Cooperative Entnmn't*, 50 F.4th at 131-32. Far from showing that none of the elements of the claims contain an inventive concept, TVision *ignores* every claim element except the "processor."

For these reasons, the Court should grant summary judgment *against* TVision, or, at minimum, find that disputed issues of material fact preclude TVision's motion for summary judgment. *See Berkheimer*, 881 F.3d at 1368.

**b.       Even Assuming The Claims Utilize Conventional Computer Hardware, That is Not Determinative of Step Two**

TVision incorrectly argues that the use of conventional computer technology is determinative of *Alice* step two. D.I. 186 at 13. The Federal Circuit has repeatedly held that *inventive* use of conventional computer technology does *not* preclude finding an inventive step. *See e.g., Cooperative Entnmn't*, 50 F.4th at 135; *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016); *Bascom Global Int't Servs. V. AT&T Mobility*, 827 F.3d 1341, 1349-50 (Fed. Cir. 2016). In *Amdocs*, for example, the Federal Circuit found a novel process for gathering and enhancing accounting records patent eligible. 841 F.3d 1288. The court found that although the claims "require[d] arguably generic components," the claim's "enhancing limitation necessarily requires that these generic components operate in an unconventional manner to achieve an improvement in computer functionality." 841 F.3d at 1300-01.

Likewise, in the present case, regardless of whether the '889 Patent claims describe using conventional computer hardware, such as a "processor," they recite an innovative technical process for generating an ACR signature in an unconventional manner. In particular, the '889 Patent claims recite comparing two or more spectral powers, generating a descriptor from a

23

single frame of audio, obtaining a second frame of audio overlapping with the first. TSF ¶¶3, 6; SAF ¶¶3-10, 12, 14, 20-22, 25.

As shown above, there is unrebutted evidence that the claims of the '889 Patent recite generating an ACR signature in a non-conventional manner, representing an improvement over the prior art. TSF ¶¶3, 6; SAF ¶¶2-10, 28. The Federal Circuit has held that such evidence of a non-conventional improvement over the prior art precludes summary judgment on the issue of lack of eligibility. *See Amdocs*, 841 F.3d at 1300-01. At minimum, Nielsen has presented sufficient evidence to create a disputed issue of material fact, precluding TVision's motion. *See Amdocs*, 841 F.3d at 1300-01; *Berkheimer*, 881 F.3d at 1368. But because Nielsen's evidence is unrebutted and TVision offers no supporting evidence, the Court should grant summary judgment *against* TVision. *See* Fed. R. Civ. P. 56(f)(1).

### c.      TVision's "Ordered Combination" Argument is Wholly Unsupported

TVision fails to cite any record evidence for its argument that the ordered combination of the claims of the '889 Patent recites no inventive steps. *See* D.I. 186 at 14. Instead, TVision offers attorney argument that "[t]he sequence in the claims is what one would expect to follow to implement a mathematical algorithm of creating a signature in a logical and practical way" and "[n]or can there be any argument that the purported novelty of the combination or sequence of steps in the asserted claims resolves the deficiencies under § 101." D.I. 186 at 14. Counsel's unsupported suppositions are insufficient to carry TVision's burden on summary judgment—or for TVision to avoid summary judgment in Nielsen's favor.

In contrast, Nielsen cites evidence that as of the '889 Patent's priority date, it was not well-understood, routine, or conventional to persons of ordinary skill in the art to perform the ordered combination of the claimed process. SAF ¶4. Nielsen's unrebutted evidence regarding

24

the inventiveness of the ordered combination of the elements of the '889 Patent claims, at minimum, creates a disputed issue of material fact that precludes summary judgment but also warrants summary judgment *against* TVision. *See* Fed. R. Civ. P. 56(f)(1); *Gibson*, 355 F.3d at 222; *Zimmerlink*, 539 F. App'x at 49; *Berkheimer*, 881 F.3d at 1368.

## V.  CONCLUSION

For the reasons explained above, Nielsen respectfully requests the Court deny TVision's motion for summary judgment. In addition, and for the reasons explained above, Nielsen requests the Court issue an order granting Nielsen summary judgment of no invalidity on the issue of patent eligibility.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>POTTER ANDERSON & CORROON LLP</td></tr>
<tr><td>OF COUNSEL:</td><td></td></tr>
<tr><td></td><td>By: <u>/s/ David E. Moore</u></td></tr>
<tr><td>Steven Yovits</td><td>David E. Moore (#3983)</td></tr>
<tr><td>Douglas Lewis</td><td>Bindu A. Palapura (#5370)</td></tr>
<tr><td>Constantine Koutsoubas</td><td>Andrew L. Brown (#6766)</td></tr>
<tr><td>Jason P. Greenhut</td><td>Hercules Plaza, 6th Floor</td></tr>
<tr><td>KELLEY DRYE & WARREN LLP</td><td>1313 N. Market Street</td></tr>
<tr><td>333 West Wacker Drive</td><td>Wilmington, DE  19801</td></tr>
<tr><td>Chicago, IL 60606</td><td>Tel:  (302) 984-6000</td></tr>
<tr><td>Tel:  (312) 857-7070</td><td>dmoore@potteranderson.com</td></tr>
<tr><td></td><td>bpalapura@potteranderson.com</td></tr>
<tr><td>Clifford Katz</td><td>abrown@potteranderson.com</td></tr>
<tr><td>Jolie Schenerman</td><td></td></tr>
<tr><td>KELLEY DRYE & WARREN LLP</td><td>*Attorneys for Plaintiff The Nielsen Company*</td></tr>
<tr><td>3 World Trade Center</td><td>*(US), LLC*</td></tr>
<tr><td>175 Greenwich Street</td><td></td></tr>
<tr><td>New York, NY 10007</td><td></td></tr>
<tr><td>Tel:  (212) 808-7800</td><td></td></tr>
</table>

Dated:  April 9, 2024
11437988 /14944.00004
Public Version Dated: April 16, 2024

25