IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-057-CJB |
| v. | ) | |
| | ) | |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF TVISION INSIGHTS, INC.'S MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,783,889**

<table>
<tr><td></td><td>John W. Shaw (No. 3362)</td></tr>
<tr><td></td><td>Andrew E. Russell (No. 5382)</td></tr>
<tr><td></td><td>Nathan R. Hoeschen (No. 6232)</td></tr>
<tr><td>OF COUNSEL:</td><td>SHAW KELLER LLP</td></tr>
<tr><td>Jason Xu</td><td>I.M. Pei Building</td></tr>
<tr><td>RIMÔN LAW P.C.</td><td>1105 North Market Street, 12th Floor</td></tr>
<tr><td>1990 K. Street, NW, Suite 420</td><td>Wilmington, DE 19801</td></tr>
<tr><td>Washington, DC 20006</td><td>(302) 298-0700</td></tr>
<tr><td>(202) 470-2141</td><td>jshaw@shawkeller.com</td></tr>
<tr><td></td><td>arussell@shawkeller.com</td></tr>
<tr><td>Eric C. Cohen</td><td>nhoeschen@shawkeller.com</td></tr>
<tr><td>RIMÔN LAW P.C.</td><td>*Attorneys for Defendant*</td></tr>
<tr><td>P.O. Box B113</td><td></td></tr>
<tr><td>150 Fayetteville St, Suite 2800</td><td></td></tr>
<tr><td>Raleigh, NC 27601-2960</td><td></td></tr>
<tr><td>(984) 960-2860</td><td></td></tr>
<tr><td></td><td></td></tr>
<tr><td>Michael F. Heafey</td><td></td></tr>
<tr><td>RIMÔN LAW P.C.</td><td></td></tr>
<tr><td>800 Oak Grove Avenue, Suite 250</td><td></td></tr>
<tr><td>Menlo Park, CA 94025</td><td></td></tr>
<tr><td>(650) 461-4433</td><td></td></tr>
</table>

Dated: April 26, 2024

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT...........................................................................................................1

        A.      TVison Provided The Material Facts For Its Summary Judgement Motion......1

        B.      Nielsen Agrees that Claim 1 of the '889 Patent Is Representative ....................2

        C.      *Alice* Step 1: The Claims Are Directed to An Abstract Idea .............................2

                1.      TVision Properly Identifies An Abstract Mathematical Algorithm In
                        The Representative Claim....................................................................................2

                2.      The '889 Patent Claims Are Not Directed To Any Technological
                        Improvement .......................................................................................................3

                3.      Case Law Confirms That the '889 Patent Claims Are Patent Ineligible6

        D.      *Alice* Step 2: The Claims Recite No Inventive Concept ....................................8

III.    CONCLUSION.....................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Hospira, Inc.*,
C.A. No. 18-1064-CFC-CJB, 2021 WL 4935868 (D. Del. May 20, 2021)..........................1

*Bot M8 LLC v. Sony Corp. of Am.*,
465 F. Supp. 3d 1013 (N.D. Cal. 2020), *aff'd*, 4 F.4th 1342 (Fed. Cir.
2021) ...............................................................................................................................8, 10

*BuySAFE, Inc. v. Google Inc.*,
C.A. No. 11-1282-LPS, 2013 WL 3972261 (D. Del. July 29, 2013) ..................................9

*California Institute of Technology. v. Broadcom Ltd.*,
No. 16-3714-GW, 2019 WL 11828211 (C.D. Cal. Jan. 18, 2019).....................................7

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020)..........................................................................................7

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019).............................................................................................4

*ClearDoc, Inc. v. RiversideFM, Inc.*,
2022 WL 6066798 (D. Del Feb. 22, 2022) .........................................................................5

*Coffelt v. Nvidia Corp. et al.*,
2016 WL 7507763 (C.D. Cal. June. 21. 2016), *aff'd Coffelt*, 680
Fed.Appx.........................................................................................................................3, 6

*Customedia Techs., LLC. v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir, 2020)..........................................................................................3

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016), 822 F.3d ......................................................................4, 8

*Ericsson Inc v. TCL Commc'n Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020)..........................................................................................9

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018)..........................................................................................4

*Gibson v. Mayor and Council of Cty. of Wilmington*,
355 F.3d 215 (3d Cir. 2004)................................................................................................1

*Gracenote Inc. v. Free Stream Media Corp.*,
C.A. No. 18-1608-RGA, 2019 WL 5684491 (D. Del. Nov. 1, 2019)...............................8

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ...........................................................................................1

*KOM Software Inc. v. NetApp, Inc.*,
    No. CV 23 18-160-WCB, 2023 WL 6460025 (D. Del. Oct. 4, 2023) ............................... 10

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016)......................................................................................... 5

*Mortgage Grader, Inc. v. First Choice Loan Servs., Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016)..................................................................................... 4, 10

*Olympus Corp. v. Maxell, Ltd.*,
    No. 18-216-MN, 2018 WL 5962471 (D. Del. Nov. 14, 2018) ........................................... 4

*Parker v. Flook*,
    437 U.S. 584-595 (1978) ............................................................................................... 6, 7

*PersonalWeb Techs. LLC v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021) ........................................................................................... 1

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017)......................................................................................... 5

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)...................................................................................... 6, 9

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020)......................................................................................... 5

*SynKloud Techs., LLC v. HP Inc.*,
    490 F. Supp. 3d 806 (D. Del. 2020).................................................................................. 4

*ThroughTEK Co., Ltd. v. Reolink Innovation Inc. et. al.*,
    No. 23-cv-218-GBW, 2024 WL 1701841 (D. Del. Apr. 19, 2024).................................... 7

*In re TLICommc'ns LLC Pat. Litig.*,
    823 F.3d at 614 ................................................................................................................ 9

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1084 (Fed. Cir. 2019).................................................................................... 8, 10

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)....................................................................................... 3, 6

## I.    INTRODUCTION

TVision provided ample unrebutted evidence and controlling case law demonstrating that the representative claim 1 is directed to an abstract mathematical algorithm of calculating signatures.   Nielsen, in contrast, relies on self-serving conclusory expert opinions and misstatements of law but identifies no genuine issue of material fact.  *See PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) ("not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry.  Indeed, that inquiry may be, and frequently has been, resolved on a [dispositive motion] where the undisputed facts … require a holding of ineligibility under the substantive standards of law.'")[1]

## II.    ARGUMENT

### A.    TVision Provided The Material Facts For Its Summary Judgement Motion

Nielsen concedes that TVision submitted a concise statement of facts (CSOF) to support its motion for summary judgment motion but complains that the CSOF should have included some unspecified additional facts.  TVision, however, included the material facts needed, *e.g.*, the claim language, which is the focus of the Section 101 analysis.  *See Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358 (Fed. Cir. 2023) ("the analysis at step one 'must focus on' the claim language.").  This is distinguishable from *Amgen Inc. v. Hospira, Inc.*, C.A. No. 18-1064-CFC-CJB, 2021 WL 4935868 (D. Del. May 20, 2021).  The defendant in *Amgen* moved for summary judgment of non-infringement, based on an argument that the accused product includes an additional step during manufacturing process, but did not

---

[1] There is no merit to Nielsen's request of the Court to enter *sua sponte* summary judgment in its favor.  *See* D.I.201 at 1, n.2.  "[T]he *sua sponte* grant of summary judgment, without giving notice to the parties, is not the preferred method by which to dispose of claims."  *See Gibson v. Mayor and Council of Cty. of Wilmington*, 355 F.3d 215, 224 (3d Cir. 2004).  Here, Nielsen did not move for summary judgment of validity, and the Court has not given notice to TVision that it would consider such a summary judgement.  Further, Nielsen's request is based on its self-serving additional facts, mostly consisting of Nielsen's own expert's conclusory statements.

include that crucial fact in the concise statement of facts. *See* 2021 WL 4935868, at *1.

Contrary to Nielsen's allegation, TVision does not need to prove a negative. *See* D.I.201 at 8.

**B.      Nielsen Agrees that Claim 1 of the '889 Patent Is Representative**

Nielsen agrees that "claim 1 is representative ***provided*** that there is no dispute that all

claims recite intraframe processing . . . ." D.I. 201at 8 (emphasis in original).  TVision agrees

that all asserted claims require intraframe processing, and thus claim 1 is representative for the

purpose of Section 101 analysis.

**C.      *Alice* Step 1: The Claims Are Directed to An Abstract Idea**

**1.      TVision Properly Identifies An Abstract Mathematical Algorithm
In The Representative Claim**

In its opening brief, TVision explained in detail that the focus or "character as a whole"

of representative claim 1 is:

> At a high level, the steps recited in claim 1 express an abstract mathematical
> algorithm for calculating signatures.  At the next level of abstraction, the steps
> recited in claim 1 express an abstract mathematical algorithm of (1) selecting
> two frames of media sample data; (2) performing a mathematical spectral
> transform operation that results in the generation of spectrum components
> having spectral powers; (3) comparing spectral powers to determine a
> descriptor; and (4) calculating a signature based on the descriptor.

*See* D.I.186 at 7-10.  TVison's analysis of the abstract idea includes multiple levels of detail

with the steps of creating the signatures and is tethered to the claim language. *See id*.  It is not

an "overgeneralization" as Nielsen alleges. *See* D.I.201 at 18.

Nielsen quibbles with TVision's proposed abstract idea, arguing that it should include

"single-frame processing and the use of as few as two frequency components … overlapping

frames … comparisons only between pairs of frequency components." *See id.* at 17.  But these

are merely details of the abstraction, including the context and characteristics of the parameters

of the abstract mathematical algorithm of calculating signature.  To the extent needed, TVision

submits that, at a further level of abstraction, the steps in claim 1 express an abstract

mathematical algorithm of (1) selecting two overlapping frames of media sample data; (2)

performing a mathematical spectral transform operation on a single frame that results in the generation of two frequency components having spectral powers; (3) comparing spectral powers of the two frequency components to determine a descriptor; and (4) calculating a signature based on the descriptor. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-15 (Fed. Cir. 2014) ("An examination of the claim limitations of the [] patent shows that claim 1 includes eleven steps for displaying an advertisement in exchange for access to copyrighted media. . . . . [t]his ordered combination of steps recites an abstraction—an idea, having no particular or concrete or tangible form.").

Nielsen turned a blind eye to the evidence TVision provided when it argued that "the asserted claims of the '889 patent do not recite any mathematical formulas at all." *Compare* D.I.186 at 7-10 *with* D.I.201 at 19. With no answer to the clear intrinsic evidence showing that the claims are directed to an abstract mathematical algorithm, Nielsen argues that *Alice* step 1 analysis must be divorced from the intrinsic evidence, including the specification. *See* D.I.201 at 19, n.6. But the cases cited by Nielsen merely confirm that *Alice* step 1 analysis concerns what the claim is directed to and do not restrict the evidence that can be used. *See id*. In fact, the Federal Circuit in *Coffelt* relied on intrinsic evidence, including the patent specification and prosecution history, to find the patent ineligible. 680 Fed.Appx. 1010.

### 2. The '889 Patent Claims Are Not Directed To Any Technological Improvement

There is no merit to Nielsen's argument that the '889 patent claims are directed to a patent-eligible improvement in computer technology that solves problems in the prior art. *See* D.I.201 at 2-6, 10-12.

The relevant inquiry is whether the claims recite a "specific technological improvement," *i.e.*, whether they enable computers to do something that they could not do before. *See, e.g., Customedia Techs., LLC. v. Dish Network Corp.*, 951 F.3d 1359, 1363 (Fed. Cir, 2020) (claims "directed to a patent-eligible improvement to computer functionality …

must be directed to an improvement to the functionality of the computer or network platform itself."); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018); *SynKloud Techs., LLC v. HP Inc.*, 490 F. Supp. 3d 806, 819 (D. Del. 2020) (claims directed to unpatentable abstract idea where none of alleged computer improvements "'enables a computer . . . to do things it could not do before'"). Here, Nielsen has not identified a single improved computer, frame, frequency component, media sample, descriptor, signature, or computing technology in representative claim 1.[2] In fact, the '889 patent describes the recited computing technology as being well known in the art. *See* '889 patent at 1:21-26, 2:55-60 (generating signatures based on spectral data is well known); 13:37-45 (an FFT is a well-known mathematical operation used to determine the energy, or "spectral power," of individual frequency components of a signal).

What Nielsen has identified as the purported improvement is the intended *results or goals*, most of which are only its own experts' conclusory statements. *See* D.I.201 at 10-11 ("**First** … improvement … that reduces required computational resources, allows faster computation of signatures, and allows easier hardware and software implementation … **Second** … improving the accuracy of matching monitored signatures with reference signatures in the database … **third** … enables improved signature matching.") (emphasis in original); *see also id*. at 3-6. Because none of these supposed improved results are in the claims, none matter for *Alice* step 1 analysis. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765-66 (Fed. Cir. 2019) (the focus of the claims must be reflected in the claim limitations). Knowing the

---

[2] This is in direct contrast to the case law Nielsen cited. *See* D.I.201 at 10. In both cases Nielsen cited, unlike here, the patentee identified an alleged concrete technological improvement applicable to computing device. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016), 822 F.3d at 1339 (claiming "[a] self-referential table [that] is a specific type of data structure designed to improve the way **a computer stores and retrieves data in memory**") (emphasis added); *Olympus Corp. v. Maxell, Ltd.*, No. 18-216-MN, 2018 WL 5962471, at *6 (D. Del. Nov. 14, 2018) ("focus of claim 1 is an **improved camera**") (emphasis added).

flaws, Nielsen tried to argue that these purported improvement results or goals are somehow connected to certain portions of the claimed steps of calculating signatures. *See* D.I.201 at 3-6 ("representative claim … solves prior art problems by performing intraframe processing, comparing two spectral powers, and utilizing overlapping frames"); *see also id*. at 10-11.  If these portions of the claim elements can even be considered improvements,[3] they are abstract ideas themselves.   Comparing two frequency components based on a single frame from overlapping frames is merely the abstract idea of restricting the mathematical calculation of using two numbers from the same range – it amounts to no more than the details of the abstract mathematical algorithm of calculating signatures.  *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("Adding one abstract idea (math) to another abstract idea (encoding and decoding) does not render the claim non-abstract."); *ClearDoc, Inc. v. RiversideFM, Inc.*, 2022 WL 6066798, at \*5 (D. Del Feb. 22, 2022) ("In sum, the recording, storing, delivering, and deleting of media content on a mobile device is an abstract idea. Remote control is an abstract idea.  The piling of abstract ideas upon each other does not save the [patent at issue] *at Alice* step one.").

Nielsen's argument that the asserted claims do not fail *Alice* step 1 because they recite specific solutions, rather than results, misses the mark.  *See* D.I.201 at 12-13.  As an initial matter, *McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1312-14 (Fed. Cir. 2016) does not support Nielsen's proposition that "claims that recite specific solutions, and do not merely claim a desired result, are patent-eligible at *Alice* step one." *Id*. at 12.  In *McRO*, the patent was found to be eligible because the patentee identified an alleged concrete technological improvement applicable to a computing device.  837 F.3d at 1313 (claiming the

---

[3] Nielsen describes that these alleged improvements solve prior art problems.  *See* D.I.201 at 3-6, 10-12.  But improvement over prior art is legally irrelevant under *Alice* because "a claim for a *new* abstract idea is still an abstract idea." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1364 (Fed. Cir. 2020).

automatic use of particular rules to set morph weights and transitions between phonemes used for 3-D animation devices).  As explained above, Nielsen has not identified a single improved computing device in representative claim 1.

Moreover, the steps in representative claim 1 are still results oriented because they do not say *how* to (1) select two overlapping frames of media sample data; (2) perform a mathematical spectral transform operation on a single frame that results in the generation of two frequency components having spectral powers; (3) compare spectral powers of the two frequency components to determine a descriptor; and (4) calculate a signature based on the descriptor.  *How* to perform these steps is the abstract mathematical algorithms, as demonstrated by TVision, supported by intrinsic evidence.  *See* D.I.186 at 7-10.

Lastly, even if the representative claim 1 did recite the steps of performing a solution, an abstract solution (*i.e.*, a mathematical algorithm) of calculating signature still fails *Alice* step 1.  *See Parker*, 437 U.S. at 595 ("if a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory"); *SAP Am., Inc. v. InvestPic, LLC,* 898 F.3d 1161, 1166 (Fed. Cir. 2018) ("Because mathematical calculations and formulas are not patent eligible, the court concluded, all of the claims of the '291 patent, including the dependent claims (which contain more specific mathematical steps) are not directed to patent-eligible subject matter.").  The Federal Circuit has confirmed the unpatentability of claims reciting specific steps for performing a solution.  *See Ultramercial*. 772 F.3d at 714-15; *Coffelt v. Nvidia Corp. et al.*, 2016 WL 7507763, at *1 (C.D. Cal. June. 21. 2016), *aff'd Coffelt*, 680 Fed.Appx. at 1011.

### 3.    Case Law Confirms That the '889 Patent Claims Are Patent Ineligible

Nielsen did not meaningfully distinguish the case law TVision cited in its opening brief. Instead, Nielsen argues that "claims **containing** a mathematical formula are similarly not *per se* unpatentable unless they contain **only** a mathematical formula."  *See* D.I.201 at 19-20

(emphasis in original). Nielsen's argument directly contradicts the Supreme Court precedents. *Parker v. Flook*, 437 U.S. 584-595 (1978) ("if a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory."). Representative claim 1 of the '889 patent is directed to a patent ineligible mathematical algorithm (even assuming it may be an improved one) for the specific purpose of calculating signatures.

Nielsen's cherry-picked case law is inapposite. *See* D.I. 201 at 13-16. In *California Institute of Technology. v. Broadcom Ltd.*, the Federal Circuit held that "[c]laim 13 … is directed to an efficient, improved method of encoding data that relies in part on irregular repetition." 25 F.4th 976, 988 (Fed. Cir. 2022). This "irregular repetition" is related to the IRA codes, which "aim to both minimize errors and maintain a transmission rate close to the theoretical limit of the amount of data that a channel can carry" as recited in the patent-at-issue there. *See California Institute of Technology. v. Broadcom Ltd.*, No. 16-3714-GW, 2019 WL 11828211, at *4 (C.D. Cal. Jan. 18, 2019). Thus, it was the specific reference to the technological efficiency results in the patent specification that carried the patent at issue there pass muster of *Alice* step 1 test. Here, in contrast, what Nielsen alleges to be the improvement results over prior art systems are not found in the specification or the claims. Instead, Nielsen mostly cites to its own experts' conclusory statements.[4] *See* D.I.201 at 3-6, 10-12. This is insufficient to survive under *Alice*. *See ThroughTEK Co., Ltd. v. Reolink Innovation Inc. et. al.*, No. 23-cv-218-GBW, 2024 WL 1701841 at *6-9 (D. Del. Apr. 19, 2024) (granting defendants' motion to dismiss and rejecting plaintiff's proposed improvements not found in patent specification and claims); *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1374 (Fed. Cir. 2020) ("[S]tep one of the *Alice* framework does not require an evaluation of … facts

---

[4] When Nielsen actually references to the '889 patent specification for alleged improvement, Nielsen took the quotation out of context. *Compare* D.I.205 at 4 *with* '889 patent at 13:1-2.

outside of the intrinsic record").

In *Gracenote Inc. v. Free Stream Media Corp.*, C.A. No. 18-1608-RGA, 2019 WL 5684491 (D. Del. Nov. 1, 2019), *adopted* 2019 WL 6728450 (D. Del. Dec. 11, 2019), the claim at issue was "[a] method of organization of a multi-dimensional video database using a robust hash of a multi-dimensional vector signature as a traversal index …" *See* D.I. 201 at 15, n.5. Thus, the *Gracenote* claim passed *Alice* step 1 test because it was directed to an improvement to the computer database, which is akin to the Federal Circuit's decision in *Enfish*, 822 F.3d at 1339, claiming "[a] self-referential table [that] is a specific type of data structure designed to improve the way a computer stores and retrieves data in memory." The '889 patent claims, however, do not recite improvement to a database or any computing device. Nielsen's attempt to shoehorn the '889 patent claims into the *Gracenote* decision fails.

**D.      *Alice* Step 2: The Claims Recite No Inventive Concept**

Nielsen recycles the same alleged improvement, claiming that these are "not well-understood, routine, or conventional" based on its expert's conclusory statements. *See* D.I.201 at 21-22. These arguments do not preclude summary judgment in view of the undisputed material facts provided by TVision. *See Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1024 (N.D. Cal. 2020), *aff'd*, 4 F.4th 1342 (Fed. Cir. 2021) (holding claims ineligible at summary judgment and stating "the [patentee] experts' bare assertions that the steps recited [] were unconventional in the field … remain unsubstantiated conclusions entitled to no weight").

Nielsen claims that TVision's summary judgment motion should be denied because TVision does not address the portions of the claim elements related to the purported improvements. *See* D.I.201 at 22. However, as discussed above, these alleged improvements are abstract ideas themselves and merely provide further details of the abstract mathematical algorithm, which cannot supply an inventive concept. *See Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) ("The abstract idea itself cannot supply the

inventive concept, 'no matter how groundbreaking the advance.'"); *SAP,* 898 F.3d at 1167 ("the claims add no inventive concept to the mathematics to which they are directed — merely (a) further-specified mathematical calculations and (b) pre- and post-solution activities like use of the internet or generic computer hardware.").

TVision provided ample unrebutted evidence and controlling case law, demonstrating that the only conceivable technical or computer-related element in representative claim 1 is a generic "processor" used in its conventional manner for performing the algorithm, which is insufficient to confer patent eligibility. *See* D.I.186 at 13-14; *Alice,* 134 S. Ct. at 2357-58 ("simply implementing a mathematical principle on a physical machine, namely a computer, is not a patentable application of that principle"). Nielsen counters that the "Federal Circuit has repeatedly held that ***inventive*** use of conventional computer technology does ***not*** preclude finding an inventive step" but provides no evidence that the generic processor in representative claim 1 is used in any unconventional manner. *See* D.I.201 at 23 (emphasis in original); *In re TLICommc'ns LLC Pat. Litig.,* 823 F.3d at 614 (finding that a server was generic where "the server simply receives data, 'extract[s] classification information ... from the received data,' and 'stor[es] the digital images ... taking into consideration the classification information'"). To the extent the processor may make the execution of the abstract mathematical algorithm faster than doing so by humans using pen and paper, that does not confer patent eligibility. *See BuySAFE, Inc. v. Google Inc.,* C.A. No. 11-1282-LPS, 2013 WL 3972261, at *3 (D. Del. July 29, 2013) ("In fact, the patent's process would be performed exactly the same way by a person and by a computer, the only difference being that the computer performs the process significantly faster than a human. Such a process is not patent-eligible."); *Ericsson Inc v. TCL Commc'n Tech. Holdings Ltd.,* 955 F.3d 1317, 1330 (Fed. Cir. 2020) ("Even assuming that this collection of elements led to a more efficient way of controlling resource access, 'our precedent is clear that merely adding computer functionality to increase the speed or efficiency of the

9

process does not confer patent eligibility on an otherwise abstract idea.'").  Nielsen's reliance on *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.* (D.I.201 at 24) thus is misplaced because the patent claims in *Amdocs* recited an "unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases)," specific to improving computer network functionality.  841 F.3d 1288, 1300, 1306 (Fed. Cir. 2016).  Here, no technological improvement can be found in the recited generic processor.

Lastly, considering the ordered combination of claim elements, *i.e.*, viewing claim elements within their respective "generating signatures" method steps, still provides no inventive concept.  All the steps and portions of the steps in representative claim 1 are part of the abstract mathematical algorithm that cannot provide the requisite inventive concept.  *See Trading Techs*, 921 F.3d at 1093.  Nielsen provides no contradictory evidence but recites only to its own expert's conclusory statements.  *See* D.I.201 at 24.  Nielsen's expert's conclusory statement cannot raise an issue of material fact under *Alice* step 2.  *See Mortgage Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1325-26 (Fed. Cir. 2016) (holding that expert declaration did not raise issue of fact under § 101 where expert analysis provided nonmaterial opinions not tied to specific limitations of the claims); *KOM Software Inc. v. NetApp, Inc.*, No. CV 23 18-160-WCB, 2023 WL 6460025, at *11 (D. Del. Oct. 4, 2023) (noting that under *Alice* step two, "what is required is for the patentee to point to the alleged improvement, consisting of an inventive concept that is embodied in the claims and described and enabled by the specification"); *Bot M8 LLC*, 465 F. Supp. 3d at 1024, *aff'd*, 4 F.4th 1342 (Fed. Cir. 2021).

III.    **CONCLUSION**

TVision respectfully requests that the Court grant its Motion for summary judgment.

10

OF COUNSEL:
Jason Xu
RIMÔN LAW P.C.
1990 K. Street, NW, Suite 420
Washington, DC 20006
(202) 470-2141

Eric C. Cohen
RIMÔN LAW P.C.
P.O. Box B113
150 Fayetteville St, Suite 2800
Raleigh, NC 27601-2960
(984) 960-2860

Michael F. Heafey
RIMÔN LAW P.C.
800 Oak Grove Avenue, Suite 250
Menlo Park, CA 94025
(650) 461-4433

Dated: April 26, 2024

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2024, this document was served on the persons listed

below in the manner indicated:

**BY EMAIL:**

David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

Clifford Katz
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
(212) 808-7800
ckatz@kelleydrye.com

Steven Yovits
Constantine Koutsoubas
Jason P. Greenhut
Douglas Lewis
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
(312) 857-7070
syovits@kelleydrye.com
ckoutsoubas@kelleydrye.com
jgreenhut@kelleydrye.com
dlewis@kelleydrye.com

Matthew Chakmakian
KELLEY DRYE & WARREN LLP
One Jefferson Road 2nd Floor
Parsippany, NJ 07054
(973) 503-5900
mchakmakian@kelleydrye.com

Joshua B. Long
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd. Suite 900
Houston, TX 77027
(713) 355-5054
jlong@kelleydrye.com

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

12