## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE NIELSEN COMPANY (US), LLC,    )
    )
    Plaintiff,    )   C.A. No. 22-57-CJB
    )
    v.    )   **JURY TRIAL DEMANDED**
    )
TVISION INSIGHTS, INC.,    )   **PUBLIC VERSION**
    )
    Defendant.    )

## THE NIELSEN COMPANY (US), LLC's REPLY BRIEF IN SUPPORT OF ITS DAUBERT AND SUMMARY JUDGMENT MOTIONS

OF COUNSEL:

Steven Yovits
Douglas Lewis
Constantine Koutsoubas
Jason P. Greenhut
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

Clifford Katz
Jolie Schenerman
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800

Dated: April 26, 2024
11476629 / 14944.00004
PUBLIC VERSION
Dated: May 1, 2024

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

## TABLE OF CONTENTS

I.  Introduction/Summary of Arguments ................................................................... 1

II.  Argument - *Daubert* Motions ............................................................................. 2

  A.  The Court Should Exclude Ms. Johnson's Opinion Relating to Nielsen's Foregone Profits Because She Applies the Wrong Legal Standard ...................... 2

  B.  Ms. Johnson Offers No Support for Her Opinion That the April 2018 Forecast Is "█████████████████████" ................................................... 4

  C.  The Court Should Exclude Ms. Johnson's Opinion about A Device-Based Running Royalty Because It Is Conclusory and Factually Unsupported .............. 7

  D.  The Court Should Preclude Ms. Johnson from Relying on The Gracenote Agreement .......................................................................................................... 9

  E.  The Court Should Preclude Ms. Johnson from Opining That A Reasonable Royalty Can be Calculated from Post Hypothetical Negotiation Information ................................................................................................... 12

  F.  The Court Should Preclude TVision's Experts from Offering Opinions Relating to Proposed Alternatives to The Infringing System ............................ 13

    1.  The Court Should Preclude TVision's Experts from Offering Opinions Relating to the Alleged █████████████ ...................... 14

    2.  TVision's Experts Should Be Precluded from Opining about a Proposed █████████████████ .......................................... 17

    3.  The Court Should Exclude Opinions about Supposed Third-Party Alternatives ................................................................................... 18

    4.  The Court Should Preclude TVision's Experts from Opining on Alternatives Based on a TVision Witness's Unsupported Statement That the ACR Provider Market is "███████████ with "█████████████." ............................................................... 20

    5.  Ms. Johnson Should be Precluded from Opining That A Reasonable Royalty Is Limited to The Cost of An Alternative ............... 21

  G.  Dr. Anderson's Opinions Relating to Haitsma US and Its Purported "Wavelet Transforms" Should Be Precluded ...................................................... 21

  H.  Dr. Anderson Should Be Precluded from Improperly Comparing Prior Art to Embodiments in The '889 Patent Rather Than The Claims of The '889 Patent .......................................................................................................... 23

III.    Argument - Summary Judgment ........................................................................................ 23

      A.    The Court Should Enter Partial Summary Judgment That the Cheung Reference is Not Prior Art and Thus Does Not Invalidate The Patent in Suit ........................................................................................................................ 23

IV.    Conclusion .......................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adasa Inc. v. Avery Dennison Corp.*,
55 F.4th 900 (Fed. Cir. 2022), *cert denied*, 143 S. Ct. 2561 (2023)......................................10

*Advanced Med. Optics, Inc. v. Alcon Inc.*,
2005 WL 782809 (D. Del. Apr. 7, 2005).................................................................................20

*Asetek Danmark A/S v. CMI USA Inc.*,
852 F.3d 1352 (Fed. Cir. 2017)..................................................................................... *passim*

*Astrazenica AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015)...............................................................................................16

*Bausch & Lomb Inc. v. SBH Holdings LLC*,
C.A. No. 20-1463-CJB (D. Del. Apr. 18, 2024) .....................................................................15

*Colby v. Hologic*,
817 F. Supp. 204 (D. Mass. 1993)........................................................................................6, 7

*Cordis Corp. v. Boston Sci. Corp.*,
561 F.3d 1319 (Fed. Cir. 2009)...............................................................................................22

*Csaszar v. Monarch Med., LLC*,
2024 U.S. Dist. LEXIS 53411 (D. Del. Mar. 26, 2024) ...........................................................9

*Dabney v. Cty of Hayward*,
2011 WL 1131088 (N.D. Cal. Mar. 28, 2011).........................................................................25

*Ericson v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014)..................................................................................................8

*Floodbreak, LLC v. Art Metal Indus., LLC*,
2020 WL 6060974 (D. Conn. Oct. 13, 2020) ............................................................................2

*Fromson v. Western Litho Plate & Supply Co.*,
853 F.2d 1568 (Fed. Cir. 1988)...............................................................................................12

*Gaylord v. U.S.*,
777 F.3d 1363 (Fed. Cir. 2015)..................................................................................................9

*Grain Processing Corp. v. American Maize-Products Co.*,
185 F.3d 1341 (Fed. Cir. 1999)...............................................................................................14

iii

*Harris Corp. v. Ericcson Inc.,*
   417 F.3d 1241 (Fed. Cir. 2005)................................................................................12

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.,*
   378 F. Supp. 2d 459 (D. Del. 2005)........................................................................12

*Interactive Pictures v. Infinite Pictures,*
   274 F.3d 1371 (Fed. Cir. 2001)........................................................................5, 6, 12

*Janssen Pharms., Inc. v. Tolmar, Inc.,*
   2024 WL 834762 (D. Del. Feb. 26, 2024)................................................................25

*LaserDynamics, Inc. v. Quanta Computer, Inc.,*
   694 F.3d 51 (Fed. Cir. 2012)....................................................................................10

*Lindemann Maschinenfabrik v. Am. Hoist & Derrick Co.,*
   895 F.2d 1403 (Fed. Cir. 1990)..................................................................................6

*Liqwd, Inc. v. L'Oreal, USA, Inc.,*
   2019 WL 10252611 (D. Del. Jun. 25, 2019) .........................................................3, 5

*Lithuanian Commerce Corp., Ltd v. Sara Lee Hosiery,*
   177 F.R.D. 245 (D.N.J. 1997)..................................................................................20

*Lucent Techs., Inc. v. Gateway, Inc.,*
   580 F.3d 1301 (Fed. Cir. 2009)............................................................................8, 12

*M2M Solutions LLC v. Motorola Solutions, Inc.,*
   2016 WL 767900 (D. Del. Feb. 25, 2016)................................................................11

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)..................................................................................................25

*Monsanto Co. v. McFarling,*
   488 F.3d 973 (Fed. Cir. 2014)................................................................................8, 9

*Optima Tobacco Corp. v. Flue-Cured Tobacco Growers, Inc.,*
   2019 WL 4858848 (E.D.N.C. Sep. 30, 2019)............................................................7

*In re Paoli RR Yard PCB Litigation,*
   35 F.3d 717 (3rd Cir. 1994) .........................................................................11, 14, 19

*Pavo Solutions LLC v. Kingston Technology Company, Inc.,*
   2019 WL 8138163 (C.D. Cal. Nov. 20, 2019)..........................................................10

*ResQNet.com, Inc. v. Lansa,*
   594 F.3d 860 (Fed. Cir. 2010)..................................................................................10

*Robertson Transformer Co. v. General Electric Co.,*
2016 WL 4417019 (N.D. Ill. Aug. 19, 2016) .........................................................................18

*RSB Spine, LLC v. DePuy Synthes Sales, Inc.,*
2022 WL 17084156 (D. Del. Nov. 18, 2022) .........................................................................14

*Sherwin-Williams Company v. PPG Industries, Inc.,*
2020 WL 1283465 (W.D. Pa. Mar. 18, 2020) ...........................................................13, 14, 19

*Sinclair Refining Co. v. Jenkins Petroleum Process Co.,*
289 U.S. 689 (1933) ..........................................................................................................12, 13

*Smart Skins LLC v. Microsoft Corporation,*
2016 WL 4148091 (W.D. Wa. Jul. 1, 2016) ....................................................................13, 19

*Spectralytics, Inc. v. Cordis Corp.,*
649 F.3d 1336 (Fed. Cir. 2011) .............................................................................................14

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.,*
750 F.2d 1552 (Fed. Cir. 1984) .............................................................................................12

*United Services Automobile Association v. PNC Bank NA,*
2022 WL 1453204 (E.D. Tex. Apr. 17, 2022) .......................................................................16

*Visteon Global Techs, Inc. v. Garmin Int'l, Inc.,*
903 F. Supp. 2d 521 (E.D. Mich. 2012) ...........................................................................15, 17

*Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc.,*
2019 WL 3334563 (E.D. Mich. Jul. 25, 2019) .......................................................................14

*WhereverTV, Inc. v. Comcast Cable Comm'ns, LLC,*
2022 WL 2751752 (M.D. Fla. Jul. 14, 2022) ................................................................ *passim*

*White v. Dunbar,*
119 U.S. 47 (1886) .................................................................................................................22

*Wirtgen Am., Inc. v. Caterpillar, Inc.,*
2024 WL 531234 (D. Del. Feb. 5, 2024) ..............................................................................3, 4

*Zimmer Surgical, Inc. v. Stryker Corp.,*
365 F. Supp. 3d 466 (D. Del. 2019) .......................................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(B) ..........................................................................................................20

Fed. R. Civ. P. 26(b) .................................................................................................................3, 5

Fed. R. Civ. P. 56(e) ....................................................................................................................25

vi

Fed. R. Evid. 702 ..........................................................................................................11, 13, 14, 16

Fed. R. Evid. 702(b)....................................................................................................................13

Fed. R. Evid. 703 .........................................................................................................................20

## TABLE OF EXHIBITS

| Ex. No. | Description |
|---------|-------------|
| 35. | *Bausch & Lomb Inc. v. SBH Holdings LLC*, 1:20-cv-01463, D.I. 124 (D. Del. Apr. 18, 2024) (Burke, J.) |
| 36. | Moulin Rebuttal Report (November 21, 2023) |
| 37. | TVSN_NLSN0002762-65 |
| 38 | TVSN_NLSN0001283-1358 |
| 39. | Chart Comparing Asserted Claims of U.S. Patent No. 7,783,889 to Claims of PCT Application No. PCT/US2005/02963. |

## I.    Introduction/Summary Of Arguments

The arguments in TVision's opposition suffer from three broad categories of flaws, as follows:

1.    **TVision applies the wrong legal standard in arguing that its experts should be permitted to:**

- argue that Nielsen's damages expert must conduct a "but-for" analysis relating to foregone profits, even though such an analysis is not required for reasonable royalties

- use the "Book of Wisdom," even though the Book of Wisdom may be used only by the patentee

- limit damages to the cost of implementing an alternative, even though that approach is prohibited by law

- compare the prior art to embodiments in the specification of the '889 patent in the invalidity analysis, despite law prohibiting this approach

- use the provisional application date as the priority date for a particular prior art reference, ignoring the legal obligation to prove entitlement to that priority date

2.    **TVision fails to show that its experts cite sufficient facts to support their opinions regarding:**

- the supposed "███████████████████" nature of TVision's 2018 financial forecast

- the alleged appropriateness of a per-device running royalty

- the purported applicability of a historical agreement between TVision and ██████

- the supposed availability of acceptable noninfringing alternatives

3.    **TVision incorrectly argues that its experts can rely on facts and arguments outside of their reports to support their opinions, including:**

- arguments not mentioned in the experts' reports (*e.g.,* arguments about TVision's 2018 financial forecast)

- facts that are not mentioned in the experts' reports but that TVision's witnesses will testify about at trial

1

## II. Argument - *Daubert* Motions

### A.    The Court Should Exclude Ms. Johnson's Opinion Relating to Nielsen's Foregone Profits Because She Applies The Wrong Legal Standard

Ms. Johnson opines that as part of his damages calculations, Nielsen's expert must do a "but-for" analysis of foregone profits. But that opinion is predicated on the mistaken understanding that Nielsen seeks lost profits damages. *See* D.I. 189, Ex. 5 (Johnson Rep.) at 121, ¶¶13 [bullet one], at 200-04, ¶¶241  42, 243 [bullet one], 244  48, 252, at 206, ¶260, at 217, ¶281. To the contrary, as Dr. Keeley's report clearly states, Nielsen seeks only reasonable royalty damages not lost profits.[1]

The lost profits requirement to show but-for causation does not apply where the plaintiff seeks reasonable royalty damages    even where, as here, an expert considers lost profits to understand the parties' bargaining positions. *Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1362 (Fed. Cir. 2017). That is because "a patent owner participating in a hypothetical negotiation would consider the profits on sales it might lose as a result of granting a license … and would be unlikely to [accept] a royalty rate lower than its profit margin on the patented products." *Id.* (quotation omitted); *see also Floodbreak, LLC v. Art Metal Indus., LLC*, 2020 WL 6060974, *15 (D. Conn. Oct. 13, 2020). TVision does not dispute that a showing of "but-for" causation using the *Panduit* factors (or otherwise) is not required in a reasonable royalty analysis    even when the plaintiff's foregone profits are considered.[2] The Court should therefore

---

[1] TVision tries to excuse Ms. Johnson's error by referring to Nielsen's initial disclosures and interrogatory responses. D.I. 204 at 6-7. Ms. Johnson's report does not respond to Nielsen's initial disclosures or interrogatory responses. It responds to Dr. Keeley's expert report  which clearly states that he is not opining on lost profits damages. *See* D.I. 189, Ex. 9 (Keeley Rep.) at 311, ¶14.

[2] TVision even offers to strike paragraphs in Ms. Johnson's report that expressly refer to the *Panduit* factors  a common framework for establishing but-for causation  so long as Nielsen states the obvious: Nielsen is not seeking lost profits damages. D.I. 204 at 8; D.I. 189, Ex. 5

2

preclude Ms. Johnson from testifying that Dr. Keeley must show but-for causation or utilize the *Panduit* factors. *See* D.I. 189, Ex. 5 (Johnson Rep.) at 121, ¶¶13 [bullet one], at 200-04, ¶¶241 42, 243 [bullet one], 244 48, 252, at 206, ¶260, at 217, ¶281. *All* paragraphs of Ms. Johnson's report that Nielsen seeks to strike rely on the false premise that Dr. Keeley must show but-for causation to consider Nielsen's foregone profits.[3]

TVision also offers a new theory to challenge Dr. Keeley's, arguing for the first time that "Dr. Keeley's entire reasonable royalty analysis is flawed" because he did not apportion Nielsen's lost profits. D.I. 204 at 7 8. That contention, however, does not appear in Ms. Johnson's report, and she therefore cannot testify about it at trial. *See Liqwd, Inc. v. L'Oreal, USA, Inc.*, 2019 WL 10252611, *1 (D. Del. Jun. 25, 2019); Fed. R. Civ. P. 26(b). Nor does TVision's newly-raised criticism permit Ms. Johnson to opine, contrary to law, that Dr. Keeley is required to show but-for causation or consider the *Panduit* factors to consider lost profits in his royalty analysis.

TVision's reliance on *Wirtgen Am., Inc. v. Caterpillar, Inc.* to support its new argument is misplaced because that case is inapposite. 2024 WL 456739 (D. Del. Feb. 5, 2024). In *Wirtgen*, unlike here, the expert quantified the plaintiff's lost profits and used that number to set a floor for the reasonable royalty resulting from the hypothetical negotiation without apportioning to account for unrelated patents covering "different features of the [plaintiff's] machines." *Id.* at *4. The court recognized that consideration of lost profits may be appropriate in a reasonable royalty analysis and "might even predominate an ultimate reasonable royalty figure." *Id.* at *3. But the

---

(Johnson Rep.) at 202, ¶¶244, 245, at 204, ¶252. But TVision's limited concession does not adequately address the infirmity in Ms. Johnson's report.

[3] Nielsen agrees that *parts* of Paragraphs 242 and 281 do not reflect the error at issue. D.I. 189, Ex. 5 (Johnson Rep.) at 200-01, ¶242, at 217, ¶ 281. But they should be excluded for other reasons discussed in Section II.B.

court concluded that the expert's analysis was flawed because she calculated lost profits "as a damages floor" without apportioning those lost profits. *Id.* at *4 5. In other words, the expert offered a lost profits opinion disguised as a reasonable royalty opinion.

In contrast, Dr. Keeley does not use un-apportioned lost profits to set the floor of the reasonable royalty. He did not even purport to determine the total amount of Nielsen's lost profits. D.I. 200, Ex. 1 (Keeley Rep.) at 22, ¶55. Nor was he required to do so to opine, correctly, that the 50/50 split is a favorable outcome to TVision because, in reality, Nielsen's lost profits would have informed its bargaining position. No comparison can be drawn between this case and *Wirtgen.*[4]

**B. Ms. Johnson Offers No Support for Her Opinion That The April 2018 Forecast is "███████████████████"**

TVision cites no evidence to support Ms. Johnson's opinion that TVision's April 2018 financial forecast is "████████████████████████" *See, e.g.,* D.I. 189, Ex. 5 (Johnson Rep.) at 162, ¶139, at 200-01, ¶¶242, 243 [bullet 7], at 219-21, ¶¶290, 292, 294. TVision also does not dispute key facts confirming that this forecast accurately reflects TVision's expectations at the time of the hypothetical negotiation, including that: (1) The forecast was TVision's most current and up-to-date prediction as of the hypothetical negotiation; (2) TVision's CEO, Mr. Liu, sent the forecast to a potential investor to evaluate an investment in TVision; (3) Mr. Liu did not indicate to the investor that the forecast was "████████████████████████"; (4) Mr. Liu told

---

[4] TVision cites a collection of cases that stand for the unremarkable proposition that a reasonable royalty analysis must apportion the infringing and non-infringing features of the defendant's product. *See* D.I. 204 at 10 11. Once again, TVision avoids the issue presented in Nielsen's motion, *i.e.*, whether Ms. Johnson can opine, contrary to law, that Dr. Keeley was required to show but-for causation in order to consider Nielsen's foregone profits. She cannot. Nonetheless as shown in Nielsen's opposition to TVision's *Daubert* motion Dr. Keeley apportioned TVision's product through (among other things) application of the *Georgia-Pacific* factors. *See* D.I. 199 at 10 14. He also applied doctrines that do not require apportionment. *Id.* at 14 17.

4

the investor that ████████████████████████████████████████████████████████

████████████ and (5) TVision would have violated the law if it provided a "█████████

████████" forecast to an investor. D.I. 188 at 5-8; D.I. 200, Ex. 7 at 104; D.I. 204 at 6.

TVision asserts that Ms. Johnson's opinion on the 2018 forecast relies on sufficient facts, but there are no such facts. For example, TVision points to a cover email with which the forecast was sent to an investor, noting that Mr. Liu stated ████████████████████████████████

██████████████████████████████████████ D.I. 204 at 13. This **_does not appear anywhere in Ms. Johnson's report_**. She cannot, therefore, rely on that statement as supposed factual support for her opinion. *See See Liqwd*, 2019 WL 10252611 at *1; Fed. R. Civ. P. 26(b). Even if Ms. Johnson had cited this in her opinion, Mr. Liu's comment is not evidence that tends to show the April 2018 forecast was ████████████████████████████████████████

████████████████████████████████. Instead, the comment simply shows that ████

████████████████████████████████████████████████████████████ D.I. 200, Ex. 7 at 104.

Nor is Mr. Schiffman's testimony that ████████████████████████████████████████

████████████████. D.I. 204 at 13-14. To the contrary, Mr. Schiffman acknowledged that ████

██████████████████████████████████████████████████████████████████████,

confirming that ████████████████████████████████████████████████████████

████████. D.I. 189, Ex. 13 at 355-56 (20:20-21:6).

TVision also attempts to point to the fact that ████████████████████████████████

████████. But as shown in *Interactive Pictures Corp. v. Infinite Pictures, Inc.,* as a matter of law, this is not a fact that tends to support Ms. Johnson's opinion that the forecast is speculative and unsubstantiated. There, the Federal Circuit held that the plaintiff's expert properly relied on

5

the defendant's projections prepared at the time of the hypothetical negotiation to determine a reasonable royalty. 274 F.3d 1371, 1384  85 (Fed. Cir. 2001). The court rejected the same argument that TVision and Ms. Johnson make here, namely, that ███████████████ ████████████████████ rendered the forecast "speculative." The court explained:

> [T]he 1996 business plan and its projections for future sales were prepared by [the defendant] two months before infringement began. Thus … these projections would have been available to [the defendant] at the time of the hypothetical negotiation. ***The fact that [the defendant] did not subsequently meet those projections is irrelevant to [the defendant]'s state of mind at the time of the hypothetical negotiation. Nor does [the defendant]'s subsequent failure to meet its projections imply that they were grossly excessive or based only on speculation and guesswork.***

*Id.* at 1385 (emphasis added).[5]

Finally, TVision points to the lack of knowledge of one witness (Shlomo Neumann) as a fact that supports Ms. Johnson's opinion that ████████████████████████. D.I. 189, Ex. 5 (Johnson Rep.) at 162, ¶139; D.I. 188 at 7. But a particular witness's mere lack of knowledge about the drafting of the forecast is not a "fact" that tends to support Ms. Johnson's opinion that the forecast was unsubstantiated.

TVision's cited cases do not support its argument either. In *Colby v. Hologic*, the court considered whether a generalized statement that "prospects for long term growth are bright" was sufficiently specific to support a fraud claim. 817 F. Supp. 204, 210-12 (D. Mass 1993). The

---

[5] TVision's reliance on *Lindemann Maschinenfabrik v. Am. Hoist & Derrick Co.*, 895 F.2d 1403 (Fed. Cir. 1990) is misplaced. In fact, the case supports ***Nielsen's*** argument. The expert in *Lindemann* did not rely on the defendant's ***own*** projections to prepare his damages opinion. 895 F.2d at 1407  08. And   as *Interactive Pictures* instructs   "*Lindemann* does not require that estimates of sales revenues, as referenced in a hypothetical negotiation at the time infringement began, must later bear a close relation to actual sales revenue." 274 F.3d at 1385. Indeed, the Federal Circuit recognized in *Interactive Pictures* that there is a "rule that recognizes sales expectations at the time when infringement begins as a basis for a royalty base as opposed to an after-the-fact counting of actual sales." *Id.*

6

court noted that "generalized forecasts" are "inherently difficult and unreliable," and found the statement "too nebulous to support a securities fraud claim." *Id.* In contrast, TVision's April 2018 forecast is not a generalized statement of future performance. It contains ███████

████████████████████████████████████████████████

████████████████████████████████████████

█████████████ D.I. 200, Ex. 8 at 106-20. TVision's reliance on *Optima Tobacco Corp. v. Flue-Cured Tobacco Growers, Inc.* is also misplaced. That case does not, as TVision asserts, hold that forecasts are "inherently unreliable." 2019 WL 4858848 (E.D.N.C. Sep. 30, 2019). Rather, the court found a particular forecast to be unreliable because the expert applied a profit rate inconsistent with the expert's understanding of undisputed facts and ***conceded*** that the profit rate was speculative. *Id.* at \*10. In contrast, TVision's forecast reflects detailed estimates and does not rest on speculation.

In sum, the Ms. Johnson cites no relevant facts to support her opinion that the April 2018 forecast is "████████ or "████████." *See* D.I. 189, Ex. 5 (Johnson Rep.) at 162, ¶139, at 200-01, ¶¶242-43 [bullet 7], at 219-21, ¶¶290, 292, 294. The Court should therefore preclude her offering that opinion at trial. *See id.*, at 160, ¶135, at 217-18, ¶285, at 222-24, ¶¶302, 304, 305.[6]

### C. The Court Should Exclude Ms. Johnson's Opinion about A Device-Based Running Royalty Because It is Conclusory and Factually Unsupported

Ms. Johnson, with no competent support, simply divides her calculated lump sum royalties by the number of TVision panel devices and the number of months they were used to arrive at a

---

[6] Although certain paragraphs in Ms. Johnson's report do not directly opine that the forecast is ████████████████████, those paragraphs are improper for other reasons — such as Ms. Johnson's inappropriate reliance on post-negotiation information or reference to alleged acceptable non-infringing alternatives of which there is no evidence. *See* D.I. 189, Ex. 5 (Johnson Rep.) at 121, ¶13 [bullet 2], at 150, ¶106, at 161-62, ¶¶136–39, at 196-97, ¶232, at 218-20, ¶¶286, 288-89, 291, 293, at 224, ¶306. Those paragraphs are addressed in Sections II.E-F.

per-device royalty. *See* D.I. 189, Ex. 5 (Johnson Rep.) at 168, ¶156, at 172-3, ¶167, at 186, ¶207, at 198-200, ¶¶235-36, 239 & Fig. 16. This is improper as a matter of law. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009).

Although TVision's brief points to past agreements that supposedly support her per-device running royalty opinion, Ms. Johnson does not use those agreements in that opinion. D.I. 188 at 8-9. Accordingly, those agreements cannot be considered "factual support" for her per-device running royalty opinion.

Even if, counterfactually, she had used the past agreements in her opinion on the matter, TVision's argument would still fail. The past agreements cannot provide factual support for a per-device, per month royalty because ███████████████████████████████. *See* D.I. 204 at 22-24. Specifically, neither the ██████ agreement nor the ███████ agreement ██████████████████████████████. *See* D.I. 189, Ex. 5 (Johnson Rep.) at 129-30, ¶¶34-39, at 182-83, ¶¶188, 191, 194. And the terms of the supposed "█████ proposal are unknown because TVision did not produce it. If anything, Ms. Johnson's Exhibit 5.4 appears to show ██████████. *Id.* at 171, ¶164, at 231-32, Exhibits 5.1, 5.2, at 234, Exhibit 5.4; D.I. 189, Ex. 12 at 346 (107:14-108:11).

TVision's cited cases do not support its argument. In *Ericson, Inc. v. D-Link Sys., Inc.*, the court merely noted that experts "must account [for] distinguishing facts when invoking [prior licenses] to value the patented invention." 773 F.3d 1201, 1227 (Fed. Cir. 2014). Here (under the counterfactual assumption that she used the agreements in her opinion), unlike the *Ericson* case, Ms. Johnson would be attempting to use past ██████████ agreements to justify a per-device running royalty without accounting for the differences between those agreements and the hypothetical license (*i.e.,* without saying why the ██████████ agreements would

support her per-device royalty opinion). *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2014), is also inapposite. In that case, the plaintiff regularly licensed the patented technology pursuant to a "standard license agreement." 488 F.3d at 978 79. Here, there is no "standard license agreement." In fact, █████████████████████████████████████████ █████████. And TVision is also wrong when it relies on *Gaylord v. U.S.* for the proposition that the Federal Circuit has "sanctioned per-unit royalties of the type that Ms. Johnson opines would be appropriate." D.I. 204 at 21. As *Gaylord* instructs, a per-unit royalty ***could be*** "a logical way" to "fit[] the objective of measuring market value." *Gaylord v. U.S.*, 777 F.3d 1363, 1369 (Fed. Cir. 2015). But the case does not relieve Ms. Johnson of her obligation to say ███████████████ ████████████████████████████ She did not meet that obligation.

Finally, TVision asserts that Ms. Johnson's running royalty "'illustrate[s] the sense of proportional magnitude' to rebut Dr. Keeley's opinion that would translate to a royalty of ████ ████████████████." D.I. 204 at 24. But Dr. Keeley never opined on a ████ ████████ ██████████████.[7] TVision offers no explanation as to why attacking opinions that Dr. Keeley never made would be helpful to the jury. *See Csaszar v. Monarch Med., LLC*, 2024 WL 1288627, *3 (D. Del. Mar. 26, 2024).

### D. The Court Should Preclude Ms. Johnson from Relying on The ████████ Agreement

TVision provides no legitimate basis for permitting Ms. Johnson to rely on the ████████ Agreement to support her reasonable royalty analysis.

***First***, TVision identifies no evidence in Ms. Johnson's report showing that ████████████ software practices any ████████ patents. Thus, Ms. Johnson has not shown that the ████████

---

[7] Here, TVision makes the exact same mistake that Ms. Johnson made  it ████████████████ ██████████████████████████████████ without any rationale whatsoever.

agreement licenses any patents, even implicitly. D.I. 188 at 10-11; D.I. 204 at 24. Accordingly, she fails to make the required showing that the ███████ agreement applies to a patent license. *See Pavo Solutions LLC v. Kingston Tech. Co., Inc.*, 2019 WL 8138163, *17 (C.D. Cal. Nov. 20, 2019); *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 914-15 (Fed. Cir. 2022), *cert denied*, 143 S. Ct. 2561 (2023).

**Second**, Ms. Johnson did not even try to establish that the ███████ agreement is technically and economically comparable to the hypothetical license to the '889 Patent, as she is required to do. D.I. 188 at 11-12; *see Adasa*, 55 F.4th at 914-15; *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) ("alleging a loose or vague comparability between different technologies or licenses does not suffice."); *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F.Supp.3d 466, 495-96 (D. Del. 2019) (same); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 871 (Fed. Cir. 2010) ("This trial court, like the one in Lucent, made no effort to link certain licenses to the infringed patent."). Although TVision baldly declares that the ███████ agreement is comparable, it does not demonstrate how Ms. Johnson supposedly showed that. *See* D.I. 204 at 24. TVision cites, without explanation, "four pages" from Ms. Johnson's report as making a "comparability analysis" between the ███████ Agreement and the hypothetical license, citing Johnson ¶¶196-208. D.I. 204 at 27. These paragraphs, however, do not show that the ███████ Agreement compares to the '889 patent. Instead, they consist of: (a) Ms. Johnson's incorrect claim that the ███████ Agreement implicitly licenses patents (¶201), (b) Ms. Johnson's general discussion about the '889 Patent (¶202), and (c) a statement that ███████ provided a complete system rather than only a license (¶¶204-205). *See* D.I., Ex. 5 (Johnson Rep.) at 184-85, ¶¶201-05. Indeed, only ¶203 purports to address "the relative breadth and coverage of the technology provided to TVision under the ███████ Agreements." *Id.*,

10

¶203. But that paragraph is conclusory and does not compare the technology provided under each agreement. Ms. Johnson simply states in that paragraph that she understands, based on a "█████████████████████" that ██████████████████████████████████ "███████████" ██████████████████████████████, but Dr. Anderson does not compare the technology either. *Id.*[8] This logic does not hold up, as a patent license can be more valuable than a system if, for example, the patent provides valuable advantages that the system does not, especially where, as here, the agreement ***does not involve the same patent***. *See, e.g.,* D.I. 188 at 12-13; *M2M Solutions LLC v. Motorola Solutions, Inc.*, 2016 WL 767900, *8 (D. Del. Feb. 25, 2016).

TVision asks the Court to allow Ms. Johnson to use the ████████ agreement despite not having shown that it is comparable with the '889 patent, simply because it is in the record. D.I. 204 at 26-27. That is not how the Court's gatekeeping function under Fed. R. Evid. 702 works. *See In re Paoli RR Yard PCB Litigation*, 35 F.3d 717, 745 (3rd Cir. 1994) ("any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible.")

***And Third***, after skipping the predicate of showing comparability, TVision jumps to the weight of the testimony, ignoring that *Daubert* and Fed. R. Evid. 702 require that TVision show certain predicate facts before it can present Ms. Johnson's opinion to the jury. D.I. 204 at 25-26. Here, Ms. Johnson identified ***no*** facts supporting her use of the ████████ agreement.

---

[8] The other paragraphs TVision cites also do not even purport to show compatibility between the ████████ agreement and the '889 patent. They discuss the legal standard generally (¶196), quote Nielsen's expert, Dr. Keeley (¶197), discuss Nielsen's foregone profits and competition with TVision (¶198), discuss the timing of the agreement (¶199), discuss the "term and payment structure" of the agreement (¶200), discuss what products would be licensed (¶206), and contain Ms. Johnson's conclusions (¶¶207-208). D.I., Ex. 5 (Johnson Rep.) at 183-86, ¶¶196-200, 206.

11

**E. The Court Should Preclude Ms. Johnson from Opining That A Reasonable Royalty Can be Calculated from Post Hypothetical Negotiation Information**

Ms. Johnson's reliance on the "book of wisdom" to incorporate post-hypothetical negotiation information into her analysis constitutes a misuse of that doctrine. Courts use the "book of wisdom" to avoid ***undercompensating patentees*** rather than to create a ***windfall for infringers***, as TVision requests. *See Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 699 (1933). The Federal Circuit and this Court have applied *Sinclair* to allow ***patentees*** but ***not infringers*** to use post-hypothetical negotiation information. *See Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1576-78 (Fed. Cir. 1988) (finding the district court could base damages award on infringer's profits at patentee's request); *Interactive Pictures*, 274 F.3d at 1383-86 (affirming damages award based on later sales projections over accused infringer's objections); *Lucent*, 580 F.3d at 1333 (rejecting accused infringer's argument that actual use was irrelevant as post-dating the hypothetical negotiation).

None of TVision's cited cases allow an ***infringer*** to use the book of wisdom: (1) *Lucent* ***rejected*** an accused ***infringer's*** attempt to rely on actual (post-hypothetical negotiation) usage of an accused feature. *See Lucent*, 580 F.3d at 1333-35. (2) *Harris* did not involve the book of wisdom at all. *Harris Corp. v. Ericcson Inc.*, 417 F.3d 1241, 1257-58 (Fed. Cir. 2005). (3) *Sinclair*, as explained above, developed the book of wisdom doctrine to ***avoid undercompensating patentees***, not to allow ***infringers*** to pick the most helpful pre- or post-hypothetical negotiation information. (4) *Honeywell* ***denied*** the accused infringer's request to ***exclude the patentee's*** use of later sales projections. *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 378 F. Supp. 2d 459, 469 (D. Del. 2005).

TVision also complains that Dr. Keeley uses post-hypothetical negotiation information in his

12

damages analysis. D.I. 204 at 31. But Dr. Keeley does not base his damages model on such information. He simply cites TVision's February 2022 pitch deck to show the relevant market and the importance of the patented technology. *See* D.I. 204, Ex. 3, at 73-74, ¶31, at 79-83, ¶¶43, 46, 49, at 99-100, ¶79. In any event, as the ***patentee's*** expert, Dr. Keeley can look forward in time to avoid undercompensating Nielsen. *Sinclair*, 289 U.S. at 699. Ms. Johnson, as the infringer's expert, cannot.[9]

### F. The Court Should Preclude TVision's Experts from Offering Opinions Relating to Proposed Alternatives to The Infringing System

TVision's claim that it does not have the burden of proof with regard to available alternatives is wrong, and it misses the mark. D.I. 204 at 31-32. Fed. R. Evid. 702, as highlighted by its recent amendment, requires TVision to "demonstrate[] to the court that it is more likely than not that" its expert's opinions are "based on sufficient facts or data." Fed. R. Evid. 702(b).[10] Thus, TVision must show that its experts base their opinions regarding available alternatives on

---

[9] TVision's contention that Nielsen seeks to exclude too much of Ms. Johnson's report (citing Exhibits 11.0-11.2, D.I. 204 at 29-30) lacks merit. Exhibit 11.0 incorporates TVision's actual financials that would not have been known at the time of the hypothetical negotiation. *See* D.I. 189, Ex. 5 at 161, ¶137, at 249, Exhibit 11.0. Similarly, Exhibits 11.1 and 11.2 also contain TVision's actual financials. *Id.* at 250-51, Exs. 11.1-2. Ms. Johnson uses the future information in these exhibits to criticize Dr. Keeley's reliance on the 2018 forecast, so they should be excluded. *Id.* at 161, ¶137, at 250-51, Exs. 11.1-2.

[10] Contrary to TVision's assertion, courts impose an inference that products that did not exist in the marketplace at the time of the hypothetical negotiation are ***not*** "available" alternatives. In *Smart Skins LLC v. Microsoft Corp.*, 2016 WL 4148091, *2 (W.D. Wash. Jul. 1, 2016), the court held that "the alleged infringer[] has the burden of showing that non-infringing alternatives were both available to it and were acceptable to its customers during the damages period" because "none of the alleged non-infringing alternatives were on the market." *Id.*; *Sherwin-Williams Co. v. PPG Indus., Inc.*, 2020 WL 1283465, *9 (W.D. Penn. Mar. 18, 2020); *Asetek*, 2022 WL 21306657 at *30. TVision "has the burden to overcome this inference by showing that the substitute was available." *Id.* TVision does not dispute that its proposed alternatives developed by ███████████████████████████████████████████" Although the inference of unavailability magnifies the expert's obligation to rely on sufficient facts, the Court need not decide the precise effect of the inference here because TVision's experts rely on no facts whatsoever.

identified and sufficient facts (including facts that show an alternative was available, acceptable, and non-infringing). D.I. 188 at 16-22, 28-29; *see Paoli*, 35 F.3d at 742; *Asetek*, 2022 WL 21306657 at *30. TVision fails to do so.

TVision misinterprets *RSB Spine, LLC v. DePuy Synthes Sales, Inc.*, 2022 WL 17084156, *3 (D. Del. Nov. 18, 2022), which did not find that experts are not required to rely on sufficient facts. D.I. 204 at 31. Rather, Judge Andrews merely found that *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341 (Fed. Cir. 1999), did not apply and that the party in that case had cited no law applicable to reasonable royalty cases.

1. **The Court Should Preclude TVision's Experts from Offering Opinions Relating to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**

TVision's experts do not identify any facts that support their opinions that ▮▮▮▮▮ could have offered an available, acceptable, and non-infringing alternative.[11] *See* Fed. R. Evid. 702; *Sherwin-Williams*, 2020 WL 1283465 at *9; *Asetek*, 2022 WL 21306657 at *30; *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1346 (Fed. Cir. 2011). Their opinions are therefore not reliable because they fail to satisfy the requirement that an alternative's "availability and acceptability must [] be substantiated with record evidence." *WhereverTV, Inc. v. Comcast Cable Comm'ns, LLC*, 2022 WL 2751752, *7 (M.D. Fla. Jul. 14, 2022); *Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*, 2019 WL 3334563, *5 (E.D. Mich. Jul. 25, 2019); *Sherwin-Williams*, 2020 WL 1283465 at *9; *Spectralytics*, 649 F.3d at 1346.

TVision does not address Nielsen's showing that its experts' reports are speculative and identified no facts about its posited ▮▮▮▮▮▮▮▮▮▮. TVision argues that "Dr. Anderson has opined [that] it would have been 'simple to implement' a modification of the ▮▮▮▮▮

---

[11] TVision does not dispute that its posited ▮▮▮▮▮▮▮▮▮ was not on the market in May 2018, and thus, there is an inference that it was not available.

14

system to avoid infringement of the '889 patent." D.I. 204 at 32. But as discussed in Nielsen's opening brief (D.I. 188 at 23-25), this conclusory argument does not identify facts sufficient to support Dr. Anderson's opinion. Dr. Anderson does not offer any facts showing what technology ███████ could have offered in May 2018, let alone that any such technology would have been acceptable and non-infringing and "'available' to be marketed." *See* Ex. 35[12], *Bausch & Lomb Inc. v. SBH Holdings LLC*, C.A. No. 20-1463, D.I. 124 (D. Del. Apr. 18, 2024) (Burke, J.) (excluding expert testimony where "[t]he disclosure provides no 'facts' at all supporting any opinions; instead, it amounts to a conclusory statement to the effect that [expert] thinks the asserted claims are invalid for indefiniteness and lack of enablement."); *Asetek*, 2022 WL 21306657 at \*30; *Visteon Global Techs, Inc. v. Garmin Int'l, Inc.*, 903 F. Supp. 2d 521, 528 (E.D. Mich. 2012). [13]

TVision summarily states that "[t]he cases cited by Nielsen at page 17 do not support its argument." D.I. 204 at 32. Nielsen cited those cases for the relevant standard: that a purported alterative must be available, acceptable, and non-infringing. D.I. 188 at 16-17. TVision never disputes that standard and instead tries to distinguish Nielsen's cited cases but fails to do so. For example, in *WhereverTV*, 2022 WL 2751752 at \*7, the court held that "*'[u]sing 'vague and general language'* ... is not a substitute for [a defendant's] obligation to identify alleged acceptable non-infringing alternatives.' Not only must the proposed alternatives be specifically noted, *but their availability and acceptability must also be substantiated with record evidence*.

---

[12] Exhibits 35-39 refer to exhibits to the Declaration of Douglas Lewis, filed concurrently.

[13] Despite TVision's claim that "the systems available to TVision at the time of the hypothetical negotiation are identified in Ms. Johnson's and Dr. Anderson's reports" (D.I. 204 at 33), it never says (because it cannot) where those reports supposedly identify the required detailed evidence.

… [This] is all the more important[14] in the context of reasonable royalty calculations where the proposed designs are purely hypothetical." *Id.* at *7 (citations omitted) (emphasis added). Here, TVision ignores the court's admonition in *Wherever TV* and uses the same type of "vague and general language" about its "purely hypothetical" ███████████ that the court held was legally insufficient, arguing only that "it would have been 'simple to implement' a modification of the ██████ system." D.I. 204 at 32.

Although it tries to distinguish *Astrazenica AB v. Apotex Corp.*, 782 F.3d 1324, 1340-41 (Fed. Cir. 2015), TVision has not successfully rebutted the Wang patent infringement issues discussed in Nielsen's motion. D.I. 204 at 33; D.I. 188 at 23-24. TVision contends that it does not bear the burden to prove non-infringement of the Wang patent, even though its expert states that ████████████████ would be similar to the Wang technology. D.I. 204 at 31; D.I. 188 at 23-24.[15] TVision is wrong. *See United Services Automobile Assoc. v. PNC Bank NA*, 2022 WL 1453204, *6 (E.D. Tex. Apr. 17, 2022) ("a proposed alternative 'that is covered' by patents outside the lawsuit (even though the alternative does not infringe the asserted patents) could therefore be 'unavailable.' Ultimately [defendant], as the party contending that it has a NIA [non-infringing alternative], will need to persuade the jury that [the proposed alternative] is available to it."). Fed. R. Evid. 702 puts the burden on TVision's experts to base their opinions including their opinions that the posited alternative is "non-infringing" "on sufficient facts or data." Moreover, placing this burden on TVision is logical. Although TVision argues that "there

---

[14] The *WhereverTV* court's admonition that substantiating opinions about alternatives "is all the more important" when those alternatives are "purely hypothetical" is a reference to the magnified obligation that results from the inference of unavailability of not-on-the-market alternatives. *See id.* ("[T]he accused infringer bears the burden to identify acceptable non-infringing alternatives particularly where none of the alleged non-infringing alternatives were on the market during the damages period.") (citations and quotations omitted).

[15] TVision's arguments about infringement appear in several places. *See* D.I. 204 at 31, 33, 34.

is no evidence that any alternatives would infringe" (D.I. 204 at 34), Nielsen cannot develop such evidence when TVision and its expert provide *no detail* about its posited alternative. *See* D.I. 188 at 19-21, 24-25.

### 2. TVision's Experts Should Be Precluded from Opining about A Proposed ▮▮▮▮▮▮▮▮▮▮ Alternative

TVision's experts also contend that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ D.I. 188 at 25. Yet they point to no evidence showing (i) what any such alternative would be, or (ii) that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮.

TVision does not contest the dearth of details about its proposed alternative. TVision instead doubles down on its expert's high-level, conclusory statement that creating this alternative would be "simple." D.I. 204 at 34. TVision effectively admits that its experts offer no opinions as to how any such supposed alternative would work. D.I. 204 at 33-35; D.I. 188 at 30-31. TVision's expert's *ipse dixit* that it would be "simple" to develop an alternative is legally insufficient to satisfy TVision's burden to show that it had the "necessary materials, equipment, know-how, and experience to make an alternative product during the relevant time frame" and that this proposed alternative "was more than 'theoretically possible'" and "'available' to be marketed" and non-infringing. *See Asetek*, 2022 WL 21306657 at *30; *Visteon Global*, 903 F. Supp. 2d at 528.

TVision argues that "in *WhereverTV*, 2022 WL 2751752 at *7, the court permitted expert testimony about hypothetical non-infringing design alternatives based on testimony that the defendant could have developed and used the hypothetical alternatives." D.I. 204 at 33. In reality, *WhereverTV* allowed two alternatives *for which sufficient details were provided* but noted "[t]his level of specificity is not found with respect to the 'many' other alternative models, which [the expert] alludes to only vaguely in his expert report." *WhereverTV*, 2022 WL 2751752

17

at *7. The Court then *excluded* those alternatives. *Id.* TVision's expert's conclusory opinion falls into the latter category. D.I. 204 at 32; D.I. 188 at 25-27, 30-31; Ex. 35.

In addition, TVision's experts do not rely on sufficient facts to show that ████████ ████████████████████████████. Indeed, their ephemeral "alternative" is so undefined that Nielsen cannot even evaluate whether it is non-infringing. D.I. 188 at 28-30. TVision argues that *Robertson Transformer Co. v. General Elec. Co.*, 2016 WL 4417019 (N.D. Ill. Aug. 19, 2016), relieves it of the burden to show that it does not infringe the Wang patent. *See* D.I. 204 at 34. TVision gets that case wrong. *Robertson* says nothing about an expert's obligation to rely on sufficient facts and data. *Robertson*, 2016 WL 4417019 at *10.

### 3. The Court Should Exclude Opinions about Supposed Third-Party Alternatives

TVision inaccurately contends that Nielsen "turn[s] a blind eye" to evidence Ms. Johnson supposedly cites that TVision considered various third-party alternatives. D.I. 204 at 35. Nielsen did no such thing. Nielsen demonstrated that there is a complete lack of evidence that any of the companies TVision identified had available, acceptable, non-infringing alternatives in May 2018. D.I. 188 at 31-40.

TVision's experts' bare contention that TVision was aware of other ACR providers does not satisfy their obligation to support their opinions with sufficient facts showing the other providers' products were available or acceptable. *See* D.I. 204 at 35-36. TVision's contention that its experts cited ██████,[16] ████████ and ███-████ "as potential options that TVision considered" (D.I. 204 at 36) is irrelevant because its experts identify no facts about these companies or their products to show that they offered available, acceptable, non-infringing

---

[16] TVision's argument about its expert's citation to "Answer" is emblematic of TVision's failure to identify supporting evidence. D.I. 204 at 36-37. Indeed, Ms. Johnson even gets the company's *name* wrong. The company in the ACR space is "*Answers*" which Nielsen owned at the time of the hypothetical negotiation (and thus was unavailable to TVision).

alternatives. D.I. 188 at 37-39. Simply "considering" an option says nothing about it. Nor does the supposed fact that ███████████████████████████████████ ███████ (D.I. 204 at 35) satisfy TVision's experts' obligation to rely on sufficient facts to show that there were available, acceptable non-infringing alternatives. *Smart Skins*, 2016 WL 4148091 at \*2; *Sherwin-Williams*, 2020 WL 1283465 at \*9; *Asetek*, 2022 WL 21306657 at \*30. For ███████ too, TVision regurgitates conclusory statements in its expert's report without even attempting to address Nielsen's points in its brief (*e.g.*, the lack of evidence that ███████ mobile solution would work in TVision's ███████ and ███████-based meters). D.I. 188 at 33; D.I. 204 at 35-36.

With regard to ███████ TVision does not dispute its failure to produce the proposal on which Ms. Johnson relies. *See* D.I. 188 at 35; D.I. 204 at 35-36. Ms. Johnson's reliance on Mr. Liu's oral description about a proposal not provided to her is not information that "experts in the particular field would reasonably rely on … in forming an opinion on the subject." Fed. R. Evid. 703; *Paoli*, 35 F.3d at 748-49; *Asetek Danmark.*, 2022 WL 21306657 at \*30-32.

With regard to ███████ ███████ and ███████ TVision does not dispute that those companies had only mobile-based products that would not operate in TVision's technical environment. D.I. 188 at 31-34, 38. TVision never addresses this issue or explains how mobile-based products could be available and acceptable despite its own technical expert's contrary opinion that mobile-based products do not work acceptably in TVision's technical environment. D.I. 188 at 31-34, 38. This is not a factual dispute; TVision's experts identify *no* evidence that these products would be available and acceptable alternatives.

With regard to ████████████████████████████, TVision's opposition papers ignore them entirely. *Compare* D.I. 188 at 38-40 with D.I. 204 at 35-38. The Court should

19

preclude TVision's experts from testifying about these companies' products because they rely on no facts to support their opinions.

TVision claims that "[t]he systems available to TVision at the time of the hypothetical negotiation are identified in [its experts'] reports, and will be the subject of testimony of fact witnesses at trial." D.I. 204 at 33. But TVision's experts can only rely on facts they provide in their reports. Fed. R. Civ. P. 26(a)(2)(B); *Advanced Med. Optics, Inc. v. Alcon Inc.*, 2005 WL 782809, *11 (D. Del. Apr. 7, 2005) ("Simply claiming to have an understanding, without providing the bases for that understanding, fails to meet the disclosure requirements of the Federal Rules…"); *Lithuanian Commerce Corp., Ltd v. Sara Lee Hosiery,* 177 F.R.D. 245, 271 (D.N.J. 1997) ("Rule 26(a)(2)(B) requires that an expert report contain the data or other information considered by the witness in forming the opinions. . .. Without such information, the finder of fact and the opposition have no way of evaluating the strength of an expert's conclusions and opinions."), *vacated on other grounds* 179 F.R.D. 450 (D.N.J. 1998).

4. **The Court Should Preclude TVision's Experts from Opining on Alternatives Based on a TVision Witness's Unsupported Statement That The ACR Provider Market is "███████████████" with "████████████████"**

Nielsen established in its moving papers that TVision's experts improperly adopted conclusory statements by TVision witnesses "████████████████████████ ████████████████████████████████" D.I. 204 at 37-38; D.I. 189, Ex. 5 (Johnson Rep.) at 168-69, ¶157; D.I. 188 at 41-42. Such generalized statements are not specific enough to be the basis of an expert opinion. *See WhereverTV,* 2022 WL 2751752 at * 7 ("[A]n opinion that there are 'many other alternative designs' is *not* best addressed via cross-examination or by submission to the jury because it is vague and speculative and does not 'rest[] on a reliable foundation.'") (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993)) (emphasis added). The Court should therefore not permit TVision's experts to rely on

them to form their opinions. D.I. 188 at 41-42.

### 5. Ms. Johnson Should be Precluded from Opining That A Reasonable Royalty Is Limited to The Cost of An Alternative

TVision incorrectly contends that because Ms. Johnson did not use the word "cap" in her report, she did not limit her reasonable royalty calculations to the cost of supposed alternatives. Regardless of her language, it is plain Ms. Johnson improperly opines that a reasonable royalty cannot exceed the cost of an alternative. Indeed, each royalty that Ms. Johnson proposes reflects what she alleges is the cost of an alternative.[17] D.I. 189, Ex. 5 (Johnson Rep.) at 199-200, ¶¶236, 238, Fig. 16; D.I. 188 at 42-43. Thus, while Ms. Johnson may "provide[] her rationale as to why certain indicators should be weighed more or less heavily given how closely the indicator reflects the inventive aspect of the asserted patent" (D.I. 204 at 39), she never feeds these supposed indicators into her analysis, which ends up reflecting exactly the alleged cost of using a supposed alternative. D.I. 189, Ex. 5 (Johnson Rep.) at 172, 174, 199, Figs. 11-12, 16, at 120-21, ¶¶11-12, at 168, ¶156, at 174, ¶173, at 198, ¶235, at 200, ¶¶238-39, at 227, Ex. 3.0.[18]

### G. Dr. Anderson's Opinions Relating to Haitsma US and Its Purported "Wavelet Transforms" Should Be Precluded

In the context of an argument about the prior art Haitsma reference, TVision seeks to have Dr. Anderson offer claim construction arguments to the jury, opining that the "spectral transform operation" of the asserted claims should be construed to include a wavelet transform. But

---

[17] TVision argues that she did not use the lowest cost alternative. D.I. 204 at 38-39. This is irrelevant because she still adopts the cost of a supposed alternative as her royalty as discussed above.

[18] TVision is incorrect that Nielsen's requested exclusion is overbroad. Each of paragraphs 156, 235-36, 238-39, Figure 11, and Exhibits 4.0, 5.0-5.4, and 6.3 relate to Ms. Johnson's opinion regarding the incremental cost of a supposed alternative. *Id.* at 168, ¶156, at 198-200, ¶¶235-36, 238-39, at 172, Fig. 11, at 229, Ex. 4.0, at 230-34, Exs. 5.0-5.4, at 238, Ex. 6.3. Ms. Johnson utilizes these costs as a cap on damages, and ultimately opines that the incremental cost of ▮ ▮▮▮▮▮▮▮▮▮▮ is the maximum amount TVision would agree to in a hypothetical negotiation. *See, e.g., id.* at 120-21, ¶11, Fig. 1.

allowing such arguments would be inconsistent with Federal Circuit precedent that "it is improper to argue claim construction to the jury…." *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009). The Court should exclude Dr. Anderson's opinion.

To justify its position, TVision alleges that Dr. Anderson's report merely responds to "Nielsen's [expert's] own new claim construction" that the "spectral transform operation" is a Fourier Transform. D.I. 204 at 40. This is wrong. Dr. Moulin (Nielsen's expert) does no such thing. He simply adopts ***TVision's*** statement with regard to the claim language "identifying…frequency component[s]…by performing a spectral transform operation." In particular, TVision stated that "frequency components are generated by a spectral transform operation that ***converts the signal in the captured samples from the time domain to the frequency domain***." D.I. 75 at 16. "Converting samples from the time domain to the frequency domain" is accomplished through a Fourier Transform. *Id.* at 8-11. Thus, TVision has taken the position that the "spectral transform" of the asserted claims is a Fourier Transform. Dr. Anderson adopts this position in his claim construction declaration. D.I. 76-1 at 105-06, ¶¶9-10. Moreover, TVision takes this same position about the construction of "spectral transform operation" in its Motion for Summary Judgment.[19] (D.I. 186 at 8 ("The patent describes the 'identifying' step to be performed by Fourier Transform, a known mathematical equation.")). Dr. Moulin simply used TVision's construction (Ex. 36, ¶179) and used it to analyze Haitsma US. This is not "a new, narrow construction of a claim element." D.I. 204 at 41-42.

---

[19] It would be unfair to allow TVision to take one claim construction position for purposes of summary judgment, and a different position for purposes of its *Daubert* motion. *See White v. Dunbar*, 119 U.S. 47, 51 (1886) ("Some persons seem to suppose that a claim in a patent is like a nose of wax, which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express.")

### H. Dr. Anderson Should Be Precluded from Improperly Comparing Prior Art to Embodiments in The '889 Patent Rather Than The Claims of The '889 Patent

TVision does not contest that in conducting an invalidity analysis, prior art must be compared to the ***claims*** of the asserted patent, not the ***embodiments*** in the specification. D.I. 204 at 42. Yet Dr. Anderson improperly compares the Haitsma US reference to embodiments of the '889 Patent, instead of its claims. Specifically, in his invalidity analysis, Dr. Anderson opines that the so-called "wavelet embodiment" of the '889 specification is disclosed in the Haitsma reference. D.I. 189, Ex. 4 at 107-08, ¶¶8-11 ("***Thus***, the disclosure in Haitsma US ***mirrors the teachings*** and claims of the '889 patent ***as applied to the wavelet embodiments in the '889 patent***.") (emphasis added). In other words, Dr. Anderson opines that the '889 patent is invalid because it describes an embodiment similar to an embodiment described in Haitsma. *Id.* at 110, ¶14. The Court should prohibit Dr. Anderson from testifying that the '889 Patent is invalid based on its embodiments.[20]

### III. Argument - Summary Judgment

### A. The Court Should Enter Partial Summary Judgment That The Cheung Reference is Not Prior Art and Thus Does Not Invalidate The Patent in Suit

In its opening brief, Nielsen explained that the Cheung reference (which has a provisional application filing date of February 26, 2004 and a non-provisional effective filing date of February 16, 2005) is not prior art to the '889 patent (which has a provisional filing date of August 18, 2004 and a non-provisional effective filing date of August 18, 2005). This argument depends on the '889 patent having a priority date of August 18, 2004 (corresponding to its

---

[20] TVision now suggests that the only reason Dr. Anderson references embodiments in the '889 specification is to advance its change in claim construction (*i.e.,* its change from its long-held view that the "spectral transform operation" is a Fourier Transform, in favor of advocating for a claim construction that encompasses a wavelet transform as well). Section III.G; D.I. 204 at 42. As explained above, it is improper for Dr. Anderson to present claim construction arguments to the jury.

23

provisional filing date) and the Cheung reference having a priority date of February 16, 2005 (corresponding to its non-provisional filing date). In other words, Nielsen is entitled to summary judgment that Cheung is not prior art to the '889 patent only on condition that (a) the '889 patent is entitled to priority as of its provisional filing date, and (b) Cheung is *not* entitled to priority as of its provisional filing date. As explained below, both of these conditions have been met, and Nielsen is entitled to summary judgment that Cheung is not prior art to the '889 patent.

TVision does not dispute that it failed to meet its burden to show that the Cheung reference is entitled to its provisional filing date under *Dynamic Drinkware*. Instead, TVision argues that *Dynamic Drinkware* also imposes an obligation on Nielsen to show that the '889 patent is entitled to priority as of the provisional filing date and that Nielsen has not met that obligation. In other words, TVision argues, neither the '889 patent nor Cheung are entitled to their provisional priority dates, and Cheung is in fact prior art to the '889 patent.

TVision is correct that Nielsen must show that the '889 patent is entitled to priority as of its provisional filing date. But TVision is incorrect to say that Nielsen has not made such a showing. Specifically, in the '889 patent's PCT parent (PCT/US2005/029623), the USPTO (as the International Searching Authority) found that "all the claims of the current application are supported by the earlier [provisional] application whose priority has been claimed."[21] Ex. 37 at TVSN_NLSN0002764. This District has found that "[i]f the patent office has already found that

---

[21] The claims at issue in the PCT parent contain the same limitations as the asserted claims. *See* Exs. 37-39. The USPTO, operating as the International Searching Authority, found that "[t]he validity of the priority has been considered because a copy of the [provisional] application is received, and all the claims of the current application are supported by the [provisional] application whose priority has been claimed." *See* Ex. 37 at NLSN_TVISION0002762, 2764. Exhibit 38 contains the claims of the PCT application the USPTO evaluated for its priority determination. *See* Ex. 38. Exhibit 39 shows that the PCT claims contain the same limitations as the asserted claims of the '889 Patent. *See* Ex. 39.

24

an application supports an issued patent, the challenger bears both the burden of production and the burden of persuading the finder of fact, by clear and convincing evidence, that the patent is not entitled to the priority date of the earlier application." *Janssen Pharms., Inc. v. Tolmar, Inc.,* 2024 WL 834762, *9 (D. Del. Feb. 26, 2024). Thus, any required showing of the '889 patent's entitlement to its provisional filing date has been made, and the '889 patent is entitled to priority as of August 18, 2004. Having failed to do a *Dynamic Drinkware* analysis, however, TVision can only assert that the Cheung reference is entitled to its non-provisional date of February 16, 2005. Accordingly, the Court should grant summary judgment that Cheung is not prior art to, and does not invalidate, the '889 patent.

Although TVision points out that Cheung's provisional application is nearly identical to its non-provisional application, it still has the burden to conduct a *Dynamic Drinkware* analysis (*i.e.,* it must show that the written description of the provisional application supports Cheung's claims).

TVision's argument that it can wait for trial to offer proof that the Cheung reference is prior art (D.I. 204 at 44) is wrong. To defeat summary judgment, TVision was required to present evidence showing a genuine issue of fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); Fed. R. Civ. P 56(e); *Dabney v. Cty of Hayward*, 2011 WL 1131088, *1 (N.D. Cal. Mar. 28, 2011) ("[nonmovant] cannot rely on their pleadings or *future testimony* to oppose [movant's] summary judgment motion."). It has not done so. The Court should therefore enter partial summary judgment in favor of Nielsen on this issue.

## IV. CONCLUSION

For all the reasons set forth above, and in Nielsen's moving papers, the Court should grant partial summary judgment in Nielsen's favor and preclude TVision's experts from opining on the matters discussed above.

25

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Steven Yovits
Douglas Lewis
Constantine Koutsoubas
Jason P. Greenhut
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel:  (312) 857-7070

Clifford Katz
Jolie Schenerman
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  (212) 808-7800


Dated:  April 26, 2024
11476629 / 14944.00004
PUBLIC VERSION
Dated:  May 1, 2024

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

26