IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THE NIELSEN COMPANY (US), LLC,

                Plaintiff,

     v.

TVISION INSIGHTS, INC.,

              Defendant.

**Redacted - Public Version**

C.A. No. 22-057-CJB

**TVISION INSIGHTS, INC.'S REPLY BRIEF IN SUPPORT OF ITS
DAUBERT MOTION REGRDING MICHAEL KEELEY**

OF COUNSEL:
Jason Xu
RIMÔN LAW P.C.
1990 K. Street, NW, Suite 420
Washington, DC 20006
(202) 470-2141

Eric C. Cohen
RIMÔN LAW P.C.
P.O. Box B113
150 Fayetteville St, Suite 2800
Raleigh, NC 27601-2960
(984) 960-2860

Michael F. Heafey
RIMÔN LAW P.C.
800 Oak Grove Avenue, Suite 250
Menlo Park, CA 94025
(650) 461-4433

Dated: April 26, 2024

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

# **TABLE OF CONTENTS**

I.  Introduction ......................................................................................................1

II.  Dr. Keeley Fails To Prove Lost Profits ...........................................................2

   A.  Dr. Keeley's Opinion should be excluded because his assumption that "TVision had no available alternatives" is contradicted by admissions in the patent and is contradicted by the factual record...............................................................................................3

   B.  Dr. Keeley's opinion is inadmissible because it conflates the asserted claims of the '889 patent with ACR systems ..................................................................................3

III.  Dr. Keeley's Testimony Regarding The Nash Bargaining Solution Should be stricken 4

IV.  Dr. Keeley's Opinion Should be precluded because he failed to apportion damages....5

   A.  Dr. Keeley Failed To Apportion ....................................................................5

      1.  Irrefutable Evidence Establishes That Non-Infringing ACR Software Was Available To TVision....................................................................................................5

      2.  Dr. Moulin's Opinions Are Not Reliable ................................................7

         a.  The '889 Patent Admits That Prior Art Non-Infringing ACR Systems Were Available ....................................................................................7

         b.  ▮▮▮ ACR Software Was An Available Alternative ...............................8

         c.  ▮▮▮ ACR Software Was An Available Alternative ...............................9

   B.  Dr. Keeley Fails To Apportion ....................................................................10

      1.  The Cases Cited by Nielsen are Inapposite............................................11

      2.  The Doctrine of Unclean Hands Prevents Nielsen From Arguing That ▮▮▮▮▮ ACR System Was Not Available..............................................................12

      3.  Dr. Keeley's Application of the *Georgia Pacific* Factors Does Not Satisfy The Apportionment Requirement ........................................................................12

   C.  Nielsen's Convoyed Sales Argument is Unsupportable...............................13

V.  Dr. Keeley's Opinion Assumes Nielsen Would not be Willing to Negotiate .................13

VI.  TVision's April 2018 Forcast is ▮▮▮▮▮▮ and ▮▮▮▮▮ ..............................13

VII.  Conclusion ................................................................................................15

| Table of Exhibits | |
|---|---|
| 1 | Keeley Opening Expert Report |
| 2 | U.S. Pat. No. 7,783,889 |
| 3 | Keeley Reply Report |
| 4 | Moulin Opening Report |
| 5 | Moulin Reply Report |
| 6 | Anderson Rebuttal Report |
| 7 | Webster Deposition |
| 8 | Liu Deposition |
| 9 | Bolivar Deposition |
| 10 | Schiffman Deposition |
| 11 | TVSN_NLSN_00611700-707 |
| 12 | TVSN_NLSN_00650281-298 |
| 13 | TVision TVSN_NLSN_00645277-95 |
| 14 | Johnson Rebuttal Report |
| 15 | TVN_SLN _00269606 |
| 16 | TVSN_NLSN00662112-139 |
| 17 | Liu Dep. Ex. 34 |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Wi-Lan Inc.*,
    25 F.4th 960 (Fed. Cir. 2022) ................................................................... 4, 7, 8

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015) ..................................................................... 11

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) ......................................................................................... 7

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) ..................................................................... 10

*Garretson v. Clark*,
    111 U.S. 120 (1884) ....................................................................................... 10

*Gilead Sciences, Inc. v. Merck & Co., Inc.*,
    888 F.3d 1231 (Fec. Cir. 2018) ..................................................................... 12

*Goldby v. Hologic, Inc.*,
    817 F. Supp. 204 (D. Mass. 1993) ................................................................ 14

*Grain Processing Corp. v. American Maize-Products Co.*,
    185 F.3d 1341 (Fed. Cir. 1999) ............................................................... 11, 12

*Greenwell v. Boatwright*,
    184 F.3d 492 (6th Cir. 1999) ........................................................................... 7

*Guzman v. State Farm Lloyds*,
    456 F. Supp.3d 846 (S.D. Tex. 2020) ............................................................. 7

*Hathaway v. Bazany*,
    507 F.3d 312 (5th Cir. 2007) ........................................................................... 7

*Honeywell Intern., Inc. v. Hamilton Sunstrand Corp.*,
    378 F. Supp.2d 459 (D. Del. 2005) ............................................................... 15

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
    274 F.3d 1371 (Fed. Cir. 2001) ..................................................................... 15

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*,
  895 F.2d 1403 (Fed. Cir. 1990)...........................................................................15

*Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co., Inc.*,
  115 Fed Appx. 76 80 (Fed. Cir. 2004) ..................................................................3

*Optima Tobacco Corp. v. Flue-Cured Tobacco Growers, Inc.*,
  2019 WL 4858848 (E.D.N.C., Sept. 30, 2019).....................................................15

*Qualcomm Inc. v. Apple, Inc.*,
  24 F 4th 1367 (Fed. Cir. 2022) ........................................................................3, 4

*Seymour v. McCormick*,
  57 U.S. (26 How.) 480 (1853) .............................................................................10

*Sound View Innovations, LLC v. Hulu, LLC*,
  33 F.4th 1327 (Fed. Cir. 2022) ...................................................................8, 9, 10

*Summit 6, LLC v. Samsung Electronics Co.*,
  802 F.3d 1283 (Fed. Cir. 2015).............................................................................4

**Statutes**

35 U.S.C. §284.............................................................................................................2

**Other Authorities**

Fed. R. Evid. 602 ......................................................................................................14

Fed. R. Evid. 702 ............................................................................................1, 7, 8, 10

## I.     INTRODUCTION

Dr. Keeley's entire report is based on the premise that TVision would have been out of business without a license to the '889 patent,[1] a premise that is inadmissible (a) because it ignores an admission in the '889 patent that non-infringing ACR systems were available and is otherwise is contradicted by indisputable facts of record (sections II.A.1. and IV.A., *infra*), and (b) because it conflates the '889 patent and ACR software (section II.B.2). In turn, Dr. Keeley's opinion is based on Dr. Moulin's opinion that there were no acceptable non-infringing alternatives at the time of the hypothetical negotiation. Ex. 1 at ¶¶ 16, 19, 49, 57, and ¶ 103.

Based on the evidence discussed below in section IV.A., Dr. Moulin's testimony should be excluded under Fed. R. Evid. 702(b) and (c). First, the '889 patent itself admits that there were prior art non-infringing ACR systems. Ex. 2 at 1:20-29. Second, Amy Bolivar, co-founder of TVision's vendor, VidVita, who is familiar with ACRCloud, Mufin and MRL ACR software, recommended that TVision could substitute any of them for Gracenote ACR software. *See* section IV.A.1. So, too, Dr. Keeley's "lost profits" analysis should be precluded because it fails to attribute any profits Nielsen may have lost to the infringement of the '889 patent. *See* section II. For the same reason, there is no merit to Dr. Keeley's Nash Bargaining Solution analysis. *See,* section III. And, Nielsen is simply wrong when it argues that Dr. Keeley apportioned damages as part of his *Georgia Pacific* analysis. Factors 1, 4-11 and 13 of Dr. Keeley's *Georgia Pacific* analysis are each based on the unwarranted assumption that there were no non-infringing alternatives at the time of the hypothetical

---

[1] Ex. 1 at ¶ 57 ("I understand from Dr. Moulin that the record does not show that there were acceptable non-infringing alternatives available to TVision at the time of the hypothetical negotiation. Consequently, absent infringement, TVision likely would not have continued in business without a license to the patent-in-suit"); at ¶ 65 (same in support of opinion re Nash Bargaining Solution); at 32 ¶ 73 (same in support of reasonable royalty opinion); at ¶ 87 (same in support of *Georgia Pacific* factor 1); at ¶ 92 (same in support of factor 4); at ¶ 98 (same in support of factor 5); at ¶¶ 100-104, 107 (same in support of factors 6-11, 13).

negotiation, which is contrary to unrefuted evidence of record. *See* section IV.A.1, below. Dr.

Keeley's assumption that Nielsen would not have been willing to negotiate is also premised

on the incorrect assumption that TVision would have been out of business absent a license

under the '889 patent. *See* section V. Finally, Dr. Keeley's opinion should be excluded

because he relies on an unsubstantiated forecast, to the exclusion of TVision's actual financial

results. *See* section VI.

## II.    DR. KEELEY FAILS TO PROVE LOST PROFITS

Nielsen now makes it clear that it is " █████████████ " (Nielsen Br. at 3),[2] but

attempts to justify Dr. Keeley's " ████████ " analysis under the rubric that it is in support of

his reasonable royalty analysis. *Id.* at 3-5. If Nielsen were to prevail on its infringement

claim, it would be entitled only to "damages adequate to compensate for *the infringement*,"

which requires apportionment. 35 U.S.C. §284. But Dr. Keeley's lost profits opinion assumes

that ██████████████████████████████ were *entirely* due to

TVision's alleged infringement of the '889 patent. The sole examples of ██████████

████████████████████████████. Ex. 1 at ¶¶ 52-54.[3]

Further, Dr. Keeley's reasonable royalty analysis incorrectly *assumes* "TVision had *no*

available alternatives." D.I. 199, Nielsen's Br. at 5 (emphasis in brief).[4]    Dr. Keeley's report

is devoid of any analysis of other factors that ████████████████████

██████████, such as the fact that TVision offers attention data that Nielsen does not

---

[2] This is contrary to the position that Nielsen took in its amended initial disclosures and
supplemental answers to TVision's interrogatories. *See* D.I. 204-1 at 6 and 204-2 at 7.
[3] Dr. Keeley's "lost profits" analysis relies on Nielsen's Global Head of Product and Strategy,
Ms. Poppie, for the proposition that ████████████████████████ ████████
████████████████████████████████████████████████
██████████████████████████████████████████████ ███
████████████████████████████████████████████████ " Ex. 1. ¶ 51 (emphasis added).
[4] *See also,* Ex. 1 ¶¶ 57, 58 ("the record does not show . . . non-infringing alternatives
available to TVision); *id.* at ¶¶ 103-104 (stating that Dr. Keeley has accounted for lack of
non-infringing alternatives, stating "TVision . . . needed to practice the patent-in-suit to stay
in business).

offer. Dr. Keeley's lost profits opinion should be excluded, not simply because he fails to

apply the *Panduit* factors, but because he fails to provide any analysis linking ████████

████ to the infringement of the patent.

### A. Dr. Keeley's Opinion should be excluded because his assumption that "TVision had no available alternatives" is contradicted by admissions in the patent and is contradicted by the factual record

Nielsen's argument that "TVision had **no** non-infringing alternatives" (Br. at 5) fails

as a matter of law because the '889 patent **admits** that ACR systems were "well known" at

the time of the invention. Ex. 2 at 1:20-28. An admission in a patent is binding on the

inventors and the patentee. *E.g. Qualcomm Inc. v. Apple, Inc.*, 24 F 4th 1367, 1375 (Fed. Cir.

2022) ("it is appropriate to rely on admissions in a patent's specification when assessing

whether that patent's claims would have been obvious" and "[a]dmissions in the specification

regarding the prior art are binding on the patentee for purposes of a later inquiry into

obviousness"); *see also, Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co., Inc.*, 115 Fed

Appx. 76 80 (Fed. Cir. 2004) (finding that district court abused its discretion when it failed to

give weight to admission in patent). Here, the patent admits that prior art non-infringing

ACR systems were available, and unrefuted evidence proves that several alternative ACR

systems were available to TVision prior to the date of the hypothetical negotiation. § IV.A.

### B. Dr. Keeley's opinion is inadmissible because it conflates the asserted claims of the '889 patent with ACR systems

Dr. Keeley's opinion is also inadmissible because it conflates the asserted claims of

the '889 patent with ACR systems.[5] The Federal Circuit rejected a similar damages theory

---

[5] According to Nielsen, the asserted claims cover a process or apparatus for generating "frame descriptors upon which signatures are based, an ACR system compares a pair of frequency components from the same frame . . .[which] is known as **intra**frame or "single frame" processing." D.I. 201 at 3. Nielsen also admits that "prior art systems for generating signatures rely heavily in **inter**frame, *i.e.*, multiple frame, processing—in which data from multiple audio frames is compared to generate a signature." *Id.* Thus the claims of the '889 patent cannot cover entire ACR systems, only a specific method of generating signatures.

for the same reason in *Apple Inc. v. Wi-Lan Inc.*, 25 F.4th 960 (Fed. Cir. 2022). The patents at

issue in *Apple* were directed to allocating bandwidth in wireless communication systems, and

the accused products were Apple iPhones that operated under on 4G LTE networks. *Id.* at

964-65. Wi-Lan contended that its patents "enabled Voice over Long-Term Evolution

(VoLTE), which provides voice call service over a 4G LTE network." *Id.* at 965. The Federal

Circuit affirmed the trial court's decision, granting Apple's motion for a new trial on

damages, because Wi-Lan's damages expert's testimony "conflated the patented technology

with VoLTE generally." *Id.* at 966, 975-76. Nielsen's argument that "TVision had ***no*** non-

infringing alternatives" should be excluded because arguing that TVision couldn't use another

ACR system amounts to conflating the claims of the '889 patent with ACR systems.

### III.    DR. KEELEY'S TESTIMONY REGARDING THE NASH BARGAINING SOLUTION SHOULD BE STRICKEN

Dr. Keeley's Nash Bargaining Solution ("NBS") (Br. at 5-9) should be stricken

because it, too, conflates the '889 patent with ACR software: "assume that if Nielsen and

TVision cannot reach a licensing agreement, then TVision earns zero profits." Br. at 7, citing

Ex. 1 ¶ 69. This assumption could be true only if the '889 patent covered all ACR software,

not just one of multiple methods of making signatures. Dr. Keeley's NBS opinion should also

be excluded because the '889 patent admits that prior art systems existed and because, as is

set forth in section IV below, non-infringing alternatives were available to TVision.

Nielsen's cases are distinguishable on their facts. In *Summit 6, LLC v. Samsung

Electronics Co.*, 802 F.3d 1283 (Fed. Cir. 2015), the Court noted that the damages expert had

conducted an extensive analysis to isolate the value of the infringing camera that was part of

the accused Samsung phone and concluded that the profit margin per device was $0.56. *Id.* at

1296-97. The Court approved the expert's conclusion under those circumstances that the

parties would have agreed to split the profit margin equally. *Id.* at 1297. That is far different

4

than this case, in which Nielsen's expert speculates that TVision would have agreed to pay

Nielsen ███████████████████████████     ███████████████████████████

## IV.   DR. KEELEY'S OPINION SHOULD BE PRECLUDED BECAUSE HE FAILED TO APPORTION DAMAGES

### A.   Dr. Keeley Failed To Apportion

At pages 10-11 of its brief, Nielsen incorrectly argues a █████ apportionment is

appropriate because Dr. Keeley "opined that 'absent practicing the patent-in-suit TVision

would have made no sales because it did not have available an acceptable, non-infringing

alternative. ████████████████████████████████████████     *Id.* at

10-11 (emphasis in brief removed). There is no basis in fact for this argument.

### 1.   Irrefutable Evidence Establishes That Non-Infringing ACR Software Was Available To TVision

It is undisputed that TVision initially used ACR software licensed to it by ███████

but after █████ was acquired by ████████████████████████████████████

████████████████. Keeley Rept. at ¶ 33. Mr. Liu, TVision's CEO testified that

TVision was ████████████████████████████████████████████████

████████." Ex. 8, Liu Tr. 75:8-76:14. As of May 2018, and during the licensing period,

the ACR provider market was "fairly commoditized" and companies like Dat-Track provided

very similar capabilities to ACRCloud. Ex. 7, Webster Tr.., 41:19-42:8; 128:1-130:19.

VidVita, which is in the business of delivering fingerprints to customers, ████████

████████████████████. Ex. 17 at TVSN_NLSN_0673870. Amy Bolivar

is the co-founder and CEO of VidVita. Ex. 9, 11:10-13. In her deposition, Ms. Bolivar

explained that █████████████████████████████████████████████

████████████████████████. Ex. 9 at 39:8-16. VidVita provides ███████

████████████████████████████████████████████." Ex. 9, at

15:3-10. The data feeds are "█████████████████████████" or ██████████

████████████████s." *Id.*, at 15:18-16:13. Ms. Bolivar has ██████████████

████████████████████████████████████████████████" and she was a Linux

systems administrator. *Id.*, at 48:17-49:10.

On January 11, 2017, ████████████████████████████████████████

████████████████████ Ex. 11, TVSN_NLSN_00611700-707 at 702-03. Ms. Bolivar

advised Mr. Liu, "████████████████████████████████████████████████

████████████████████." *Id.* at 703. She also advised Mr. Liu, ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████" *Id.* at 702. On January 13, 2017, Ms.

Bolivar informed Mr. Liu,



*Id.* at 701. Ms. Bolivar testified that she understands ACR and fingerprints because ████

████████████████████████████████████████████████████████."

Ex. 9, Tr. 20:7-21:12. On January 24, 2018, during the period of time that TVision was

transitioning from ████████ ACR software to ████████ ACR software, Sara

Radkiewicz of TVision advised Ms. Bolivar that TVision was ████████████████████

████████P" and wanted "████████████████████████," and that ████████████

████████████████████." Ex. 12, TVSN_NLSN_00650281-298 at 282-83. In

response, Ms. Bolivar had suggested ████ as a potential provider (*id.* at -286 – -292), but

informed TVision, "████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████ *Id.* at -284.  Thus, contemporaneous evidence shows that as of May 2018, VidVita could have processed fingerprints generated by TVision using ACR software supplied by █████████████████, and did not differentiate between those ACR systems when it provided recommendations to TVision. Ex. 11; Ex. 12.  TVision had also reached out to ████ D.I. 191 at 4, citing D.I. 191-8 (Ex. 8), 191-13 (Ex. 13).

### 2. Dr. Moulin's Opinions Are Not Reliable

Dr. Keeley bases his opinion that there were no non-infringing alternatives on Dr. Moulin's report.   Ex. 1 ¶¶ 16, 19, 49, ¶ 57, and 103.  But, as is demonstrated below, this Court should exclude Dr. Moulin's opinion with respect to the MRL and Mufin ACR software alternatives to ACRCloud as unreliable.

An expert's opinion cannot substitute for facts.  *Hathaway v. Bazany,* 507 F.3d 312, 318 (5th Cir. 2007).  "[W]hen indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp*., 509 U.S. 209, 242 (1993).  Thus, "[e]xpert testimony . . . is inadmissible when the facts upon which the expert bases his testimony contradict the evidence." *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999), citing *United States v. Chaney*, 577 F.2d 433, 435 (7th Cir. 1978); *see also, e.g., Guzman v. State Farm Lloyds,* 456 F. Supp.3d 846, 854-455 (S.D. Tex. 2020)(excluding expert's testimony that did not "account for actual, unrebutted facts of the case as unreliable under Rule 702(b)).

### a. The '889 Patent Admits That Prior Art Non-Infringing ACR Systems Were Available

Dr. Moulin's opinion that there were no non-infringing alternatives to a license under the '889 patent flies in the face of the admission in the '889 patent that "audio streams . . . using signature-matching techniques is well known."  Ex. 2 at 1:20-28. It is also excludable under *Apple Inc. v. Wi-Lan Inc.*, 25 F.4th at 966, 975-76 because it conflates the claims of the '889 patent, which cover only a method of making fingerprints, with entire ACR systems.

           **b.**         ▇▇▇ **Software Was An Available Alternative**

Dr. Moulin's opinion regarding the availability of ▇▇▇ software should be excluded because (1) his report does not establish that he has any knowledge of ▇▇▇ software (Ex. 4 ¶¶370-375) , and (2) his report fails to account for the fact that Amy Bolivar, the co-founder of TVision's vendor, VidVita, recommended that TVision use ▇▇▇

▇▇▇. *See id; See also,* Ex. 11 at TVSN_NLSN_00611701. Unlike Dr. Moulin, Ms. Bolivar is familiar with ▇▇▇ system because she worked for ▇ prior to forming VidVita, and she recommended ▇▇▇ Ex. 11 at TVSN_NLSN_00611701. Under these circumstances, Dr. Moulin's opinion should be excluded under Fed. R. Evid 702(b) because it is not "based on sufficient facts or data."

     There is no merit to Dr. Moulin's reliance on a March 2, 2017, TVision presentation that refers to a study of ▇ software. Ex. 4, Moulin Rept. ¶¶ 370-372, citing Ex. 13 attached hereto. The presentation does not report the methodology used to conduct the study. *See* Ex. 13. For that reason, alone, the presentation fails to qualify as a report of a test that an expert would ordinarily rely upon. Fed. R. Evid. 702(c). Second, Dr. Moulin fails to recognize that the tests were conducted on mobile phones using ▇ ACR software, and that the failure rate Dr. Moulin refers to was entirely due to the fact that the study was done on mobile phones, not the devices TVision installs in households, which do not have the same issues picking up audio as mobile phones. Ex. 6, Anderson Rebuttal Rept. at 44-45 ¶ 107. Dr. Moulin's reply report does not address this issue. Ex. 5 ¶¶ 129-130.

     Under very similar circumstances, the Federal Circuit approved the exclusion of an expert's first damages opinion, which was based on a study, where the expert failed to consider the differences between the conditions under which the study was conducted versus the conditions under which the accused product would actually have been used. *Sound View Innovations, LLC v. Hulu, LLC*, 33 F.4th 1327, 1337-38 (Fed. Cir. 2022). The Court also

approved the exclusion of an amended damages opinion, which as here, relied on a press release describing a viewer experience report. *Id.* at 1338. The expert had adopted the press release's explanation of the result, but the district court found "a key reliability problem" in the fact that the expert "did not himself see the report underlying the . . . press release." *Id.* The Federal Circuit noted that the report was properly excluded because "the press release does not include a sufficient, in-depth discussion of the study so that it can be assessed, and then compared to the accused technology." *Id.* The same is true here. Dr. Moulin's reliance on the March 2, 2017, study is an insufficient basis to admit his opinion, and it should be excluded.

Nor is there any basis for Dr. Moulin's speculative opinion that the different mechanism used by ▇▇▇ as compared with ▇▇▇▇▇ would be a reason TVision would not use ▇▇▇ product. Ex. 4, at 99-100, ¶¶ 373-74. TVision actually preferred ▇▇▇ mechanism over ▇▇▇▇ because it simplified the aggregation of results, but TVision decided to use ▇▇▇▇ because of costs and the speed of transition. Ex. 6, at 45 ¶ 108.

### c.  ▇▇▇ ACR Software Was An Available Alternative

Dr. Moulin's opening report did not even refer to ▇▇▇ ACR software. Paragraphs 131-133 of Dr. Moulin's reply report (Ex. 5) should be excluded because he fails to demonstrate that he has any knowledge of ▇▇▇ ACR software and because he fails to explain why it would not have been suitable for TVision. In this regard, Dr. Moulin ignores the fact that Ms. Bolivar informed Mr. Liu that VidVita had ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇" and that "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇." *Compare* Ex. 5 ¶¶131-133 with Ex. 11 at TVSN_NLSN_00611702. Dr. Moulin also ignores the fact that TVision received a project proposal in January 2017 from ▇▇▇ that included terms regarding the cost components for the setup, pilot, and production phases of the system rollout. Ex. 14 at ¶¶ 157, 158. According to a company presentation, ▇▇▇

specializes in audio fingerprint technology for ACR and touted companies, such as Kantar, Ipsos, and Starz, as being among its customers and partners. Ex. 16 (TVSN_NLSN00662112-139) at 115, 121.

Dr. Moulin's sole opinion regarding ███ is in his reply report, which states that Dr. Anderson "identifies no evidence that would show that Mufin's technology would work in TVision's environment." *See* Ex. 5, ¶¶131-133.  This opinion ignores Ms. Bolivar's recommendation of ███ ACR software, which was based on testing, and it ignores ███ 2017 proposal.  Thus, Dr. Moulin's opinion regarding the availability of ███ ACR software should be excluded because it does not rely on sufficient facts or data.  Fed. R. Evid. 702(b).

### B.     Dr. Keeley Fails To Apportion

Dr. Keeley's opinion fails under Supreme Court precedent for failure to apportion. "[O]ne who invents some improvement . . . could not claim that the profits of the whole [invention] should be the measure of damages for the use of his improvement. . . ." *Seymour v. McCormick,* 57 U.S. (26 How.) 480, 489-90 (1853).  Further, "[w]hen a patent is ... not for an entire[ ] ... machine or contrivance, the patentee must ... give evidence tending to separate or apportion the defendant's profits ... between the patented feature and the unpatented features." *Garretson v. Clark*, 111 U.S. 120, 121 (1884).  The Federal Circuit has rigorously applied these principles.  *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1309-11 (Fed. Cir. 2018) (reversing damages award for failure to apportion); *Sound View*, 33 F.4th at 1338 (expert failed to apportion).

As set forth in section IV.A., above, the evidence does not support Nielsen's argument that "███████████████████████████████████████ ███████████████████████████████ Nielsen Br. at 10.  There were non-infringing alternatives available to TVision. *See* section IV.A.

### 1. The Cases Cited by Nielsen are Inapposite

The cases Nielsen cites do not support its argument.  Nielsen cites *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338-40 (Fed. Cir. 2015), for the proposition that the patented sub-coating of a drug formulation "was substantially responsible for the value of the product." Nielsen Br. at 11-12.  That, however, is not true in this case.  The '889 patent claims only a method of creating a signature, which is different from prior art methods. However, Dr. Keeley cites no evidence that the patented feature drives demand for TVision's products, as opposed to the attention data that TVision advertises.

The facts in *AstraZeneca* demonstrate why it is inapposite here.  The inventors in *AstraZeneca* had to solve the problem of producing an omeprazole formulation with an enteric coating, which was necessary to protect the active ingredient from degrading in the gastric environment of the stomach, but which itself was subject to degradation by the acidic components of the enteric coating. 782 F.3d at 1328-29.  The inventors solved this problem by adding a subcoating that protected the omeprazole from the enteric coating.  *Id.* at 1329. Under those circumstances, the Court found that the formulation patents in suit covered "the infringing product as a whole, not a single component of a multi-component product." *Id.* at 1338.[6]

Where, as here, "an infringer can easily design around a patent and replace its infringing goods with non-infringing goods, the hypothetical royalty rate for the product is typically low.  *Id.* at 1334, citing *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1347 (Fed. Cir. 1999).  In *Grain Processing,* in the context of a lost profits analysis, the Federal Circuit reiterated that "an available technology not on the market during

---

[6] *AstraZeneca* listed the patents-in-suit for its branded Prilosec product in FDA's Orange Book, which meant that a competitor could not market a generic version of Prilosec during the life of those patents unless the competitor proved that the patents were either invalid or not infringed.  *Id.* at 1342, citing 35 U.S.C. §271(e)(4)(A).

the infringement can constitute a noninfringing alternative." *Id.* at 1351, citing *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458-59 (Fed. Cir. 1991).  In this case, the '889 patent admits that non-infringing alternatives were available.  Ex. 2, 1:20-29.

### 2. The Doctrine of Unclean Hands Prevents Nielsen From Arguing That ██████████ ACR System Was Not Available

Under the doctrine of unclean hands, Nielsen's refusal to renew TVision's ██████████ license, bars Nielsen's argument that ██████ ACR software was not available to TVision. Nielsen's refusal put TVision in a position where it had to make a quick change to another ACR licensor. Ex. 1 at 12-13 ¶ 33. This created time pressure for TVision (Ex. 8, Liu Tr. 75:8-76:14) and "███████████████████████████████████████." Ex. 10, Schiffman Tr. 81:19-84:8.  "A determination of unclean hands may be reached when 'misconduct' of a party seeking relief 'has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation,' *i.e.*, 'for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court.'" *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1239-40 (Fec. Cir. 2018) (finding unclean hands based on breaching commitments to a third party), quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). Nielsen's refusal to renew, coupled with Nielsen's continued ██████ licenses to others (Ex. 14 ¶ 116), establishes unclean hands. Thus, under *Grain Processing*, Gracenote ACR software must be deemed a non-infringing alternative.  185 F.3d at 1351.

### 3. Dr. Keeley's Application of the *Georgia Pacific* Factors Does Not Satisfy The Apportionment Requirement

Dr. Keeley's analysis of the *Georgia Pacific* factors does not satisfy the apportion requirement. Thus, the cases Nielsen cites at pages 12-13 of its brief are inapposite.  Indeed, Nielsen's entire apportionment argument rests on Dr. Keeley's incorrect conclusion that ██████ ███████████████████████████████████████████████████ o

12

█████n." Nielsen Br. at 13, 14. That this conclusion is incorrect is demonstrated in section IV.A., above, which demonstrates that TVision's vendor VidVita recommended three different ACR systems to TVision—████████ ████ and ████—without differentiating between the three of them. Nielsen's experts do not contend that the ACR systems provided by ████ or ████ infringe the '889 patent.

### C. Nielsen's Convoyed Sales Argument is Unsupportable

Nielsen's convoyed sales argument is based entirely on Dr. Keeley's opinion that "without the infringing patented ACR technology, TVision would not be able to sell most of its products and services." Nielsen Br. at 16, citing Ex. 1 at ¶ 100; Ex. 3, at ¶ 39. This opinion should be entirely excluded because it is contrary to the indisputable facts discussed in section IV.A., above.

### V. DR. KEELEY'S OPINION ASSUMES NIELSEN WOULD NOT BE WILLING TO NEGOTIATE

Nielsen's argument relies on Dr. Keeley's opinion that "Nielsen did not want to grant a license to a competitor or a firm that helped others compete with Nielsen because doing so would cause Nielsen to lose profits . . . . In contrast, TVision needed a license to stay in business." Nielsen Br. at 18, citing Ex. 1, at ¶ 92. This paragraph of Dr. Keeley's report should be excluded because there is no basis for his opinion that "TVision needed a license to stay in business," for the reasons discussed in section IV.A., above.

### VI. TVISION'S APRIL 2018 FORCAST IS ██████████████ AND ████████████████

Like many of his opinions, Dr. Keeley ignores the fact that TVision's CEO, Mr. Liu, qualified TVision's April 2018 forecast when he informed the single investor to whom the forecast was sent that the forecast assumed that TVision would be able to ████████ ████████" Ex. 15, TVN_SLN _00269606. Dr. Keeley's failure to reflect this assumption is a significant omission that renders his analysis and his use of this forecast as his royalty base unreliable. *See* Ex. 4 at ¶¶ 74-84, which does not mention TVision's need for funding (Ex. 15)

13

to achieve the goals set out in the April 2018 forecast. Dr. Keeley's analysis is fraught with

unsupportable assumptions, e.g., "

████████ (Ex. 4 at ¶ 81). He states ████████████████████████," (Ex. 4 at

¶ 82) but fails to recognize based on ████████████████████

████████████t. His conclusion that TVision would have agreed to pay ████████ (Ex. 4

at ¶¶ 83-84), given TVision's precarious financial position is entirely unrealistic, even in the

hypothetical world in which Dr. Keeley appears to inhabit. He ignores the fact that ████████

████████████████████ Ex. 14 at ¶¶ 130-139.

Nielsen's reliance on the testimony of Daniel Schiffman, TVision's former CRO, is

misplaced because Mr. Schiffman testified that he did not have personal knowledge of this

report.[7] When asked directly about the April 2018 forecast, Mr. Schiffman testified, ████

████████████████████████████████████████████████████████████████

████████████████████████." Ex. 10, 20:12-16. Mr. Schiffman did not testify that

the forecast ████████████████████████████████████████████

████████," as Nielsen argues at page 6. Rather, Mr. Schiffman testified to his "assumption"

that "this is *likely a forecast* for what would be achieved in those months subsequent." *Id.*,

21:4-5. Thus, Mr. Schiffman's testimony is not "unrebutted evidence of the reliability of the

April 2018 forecast," as Nielsen argues. It is not evidence at all because Mr. Schiffman's

testimony demonstrates that he lacked the requisite personal knowledge to testify about the

April 2018 forecast. Fed. R. Evid. 602.[8]

---

[7] *See generally* Ex. 10 at 19:19-20 ████████ ); 20:8-16 ████████

████████████"); 21:10-17 ████████████████████████████████

████████████████████████████████████████████ ").

[8] Courts have observed that forecasts for startups, especially, are inherently unreliable. *Cf.,*
*Goldby v. Hologic, Inc.*, 817 F. Supp. 204, 211 (D. Mass. 1993) (describing forecasts as
"inherently difficult and unreliable . . .and . . . not likely to be 'material' to investors," noting

Nielsen misplaces reliance on *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384 (Fed. Cir. 2001). More apposite is *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1407 (Fed. Cir. 1990), where the Court rejected damages testimony "which was based on estimates of the infringer's anticipated profits that 'bore no relation to actual profits.'" That is exactly the case here. The April 2018 forecast was provided to only one investor (███████████████████ Ex. 11. Moreover, *Interactive* also states "an actual infringer's profit margin can be relevant to the determination of a royalty rate in a hypothetical negotiation." 274 F.3d at 1385. Further, this District has interpreted *Interactive* to permit the use of post-negotiation information to inform the hypothetical negotiation. *See Honeywell Intern., Inc. v. Hamilton Sunstrand Corp.*, 378 F. Supp.2d 459, 466-67 (D. Del. 2005). Moreover, *Interactive* does not govern a case, such as this one, in which the forecast at issue was wildly unreliable. Nielsen and its expert ignore that at the time of the hypothetical negotiation.███████████████████████

███████████████████████████████████████████████████████

███████████████████████████

## VII. CONCLUSION

For the reasons set forth above, Dr. Keeley's opinions should be excluded.

---

that the SEC provides a safe harbor rule that projections filed with the Commission do not violate federal securities law unless made without a "reasonable basis" or not made in "good faith"); *Optima Tobacco Corp. v. Flue-Cured Tobacco Growers, Inc.*, 2019 WL 4858848 at *10 (E.D.N.C., Sept. 30, 2019) (rejecting expert opinion based on lost profit estimates "based on unreliable and speculative forecasts" as "too speculative to be determined with reasonable certainty").

OF COUNSEL:

Jason Xu

RIMÔN LAW P.C.

1990 K. Street, NW, Suite 420

Washington, DC 20006

(202) 470-2141

Eric C. Cohen

RIMÔN LAW P.C.

P.O. Box B113

150 Fayetteville St, Suite 2800

Raleigh, NC 27601-2960

(984) 960-2860

Michael F. Heafey

RIMÔN LAW P.C.

800 Oak Grove Avenue, Suite 250

Menlo Park, CA 94025

(650) 461-4433

Dated: April 26, 2024

/s/ Nathan R. Hoeschen

John W. Shaw (No. 3362)

Andrew E. Russell (No. 5382)

Nathan R. Hoeschen (No. 6232)

SHAW KELLER LLP

I.M. Pei Building

1105 North Market Street, 12th Floor

Wilmington, DE 19801

(302) 298-0700

jshaw@shawkeller.com

arussell@shawkeller.com

nhoeschen@shawkeller.com

*Attorneys for Defendant*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2024, this document was served on the persons listed

below in the manner indicated:

**BY EMAIL:**

David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

Clifford Katz
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
(212) 808-7800
ckatz@kelleydrye.com

Steven Yovits
Constantine Koutsoubas
Jason P. Greenhut
Douglas Lewis
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
(312) 857-7070
syovits@kelleydrye.com
ckoutsoubas@kelleydrye.com
jgreenhut@kelleydrye.com
dlewis@kelleydrye.com

Matthew Chakmakian
KELLEY DRYE & WARREN LLP
One Jefferson Road 2nd Floor
Parsippany, NJ 07054
(973) 503-5900
mchakmakian@kelleydrye.com

Joshua B. Long
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd. Suite 900
Houston, TX 77027
(713) 355-5054
jlong@kelleydrye.com

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*