## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | C.A. No. 22-57-CJB |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| TVISION INSIGHTS, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

## THE NIELSEN COMPANY (US), LLC'S BRIEF IN SUPPORT OF
## ITS DAUBERT AND SUMMARY JUDGMENT MOTIONS

OF COUNSEL:

Steven Yovits
Douglas Lewis
Constantine Koutsoubas
Jason P. Greenhut
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel:  (312) 857-7070

Clifford Katz
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  (212) 808-7800

Dated: November 19, 2025
12567935 / 14944.00004

PUBLIC VERSION
Dated: November 26, 2025

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
*Attorneys for Plaintiff The Nielsen Company
(US), LLC*

**TABLE OF CONTENTS**

I.   Introduction ................................................................................................ 1

II.  Background and Nature and Stage of the Proceedings ...................................... 1

III. Argument - *Daubert* Motions ......................................................................... 2

    A.   The Court Should Exclude Ms. Johnson's Opinion Relating to Nielsen's Forgone Profits Because She Applies the Wrong Legal Standard ........................ 3

    B.   Ms. Johnson Identifies No Support for Her Opinion That the May 2018 Forecast is "Speculative and Unsubstantiated".......................................... 4

    C.   The Court Should Exclude Ms. Johnson's Opinion About a Device-Based Running Royalty Because It is Conclusory and Factually Unsupported............... 7

    D.   The Court Should Exclude Ms. Johnson's Royalty Opinions Relying on the Gracenote Agreement ..................................................................... 8

    E.   The Court Should Exclude Ms. Johnson's Royalty Opinions Based on Information That Existed Only After the Hypothetical Negotiation ................... 12

    F.   The Court Should Exclude TVision's Experts' Opinions Relating to Proposed Alternatives to the Infringing System ................................................... 14

        1.   The Court Should Exclude TVision's Experts' Opinions Relating to the Alleged ACRCloud Alternative ..................................................... 17

            a.   The Proposed ACRCloud Redesign Was Not Available.............. 17

                (i)   The Proposed ACRCloud Redesign Is Entirely Speculative and Thus Not "Available" ........................... 17

                (ii)  TVision Does Not Show That an ACRCloud Redesign Would Not Infringe Third-Party Patents (*i.e.,* That It Would Be "Available").............................. 20

            b.   TVision Lacks Any Evidence That an ACRCloud Redesign Would Be Acceptable ................................................................. 22

        2.   TVision's Experts' Opinions About a Proposed TVision-Internal Alternative Should Be Excluded.............................................................. 23

            a.   Ms. Johnson and Dr. Anderson's Opinions About a TVision- Developed Alternative Should be Excluded Because They Rely on Mr. Sidhu, Who Is Improperly Acting as an Expert ...................................................................... 23

b.     Ms. Johnson and Dr. Anderson's Opinions About a TVision-Developed Alternative Should Be Excluded Because They Rely on Mr. Sidhu, Who Does Not Have Requisite Expertise ...................................................... 25

c.     Ms. Johnson and Dr. Anderson's Opinions About a TVision- Developed Alternative Should be Excluded Because They Have Not Shown That the Proposed TVision-Developed Alternative Would Have Been Available ................................................................... 27

d.     Ms. Johnson and Dr. Anderson's Opinions About a TVision-Developed Alternative Should be Excluded Because They Do Not Show That a TVision-Internal Design Would Not Infringe Third-Party Patents .......................... 29

e.     Ms. Johnson and Dr. Anderson's Opinions About a TVision-Developed Alternative Should be Excluded Because They Lack Any Evidence That Its Proposed Internally-Developed Alternative System Would be Acceptable ................................................................... 31

f.     Ms. Johnson and Dr. Anderson's Opinions About a TVision-Developed Alternative Should be Excluded Because They Do Not Assert That TVision Could Have Developed an Alternative in May 2018 ........................................ 32

3.     Opinions about Supposed Third-Party Alternatives Should Be Excluded ........................................................................................ 33

a.     TVision's Proposed Third Party ACR Solutions (MRL, Axwave, Mufin, and Source Digital) Are Not Available and Acceptable Alternatives .................................................. 33

(i)     Mobile Research Labs ("MRL") Is Not an Available or Acceptable Alternative ............................... 33

(ii)     Axwave Is Not an Available, Acceptable Alternative .................................................... 35

(iii)     Mufin Is Not an Available, Acceptable Alternative, Nor Are Ms. Johnson's Opinions About Its Cost Reliable .......................................................... 37

(iv)     Source Digital Is Not an Available, Acceptable Alternative .................................................... 39

b.    TVision's Experts Opinions About Proposed Third-Party Alternatives for Which They Provide No Information Other Than Their Names Should Be Excluded ...................................... 40

(i)    "Answer" Is Not an Available, Acceptable Alternative ...................................................................... 40

(ii)    Beatgrid Is Not an Available, Acceptable Alternative ...................................................................... 40

(iii)    Audible Magic Is Not an Available, Acceptable Alternative ...................................................................... 41

(iv)    Dat-Track Is Not an Available, Acceptable Alternative ...................................................................... 41

(v)    Soundhound Is Not an Available, Acceptable Alternative ...................................................................... 42

(vi)    Civolution Is Not an Available, Acceptable Alternative ...................................................................... 43

c.    Ms. Johnson and Dr. Anderson's Opinions on Alternatives Based on a TVision Witness's Unsupported Statement That the ACR Provider Market is "Fairly Commoditized" with "Very Similar Capabilities" Should Be Excluded ........................ 43

4.    Ms. Johnson's Opinion That a Reasonable Royalty Is Limited to the Cost of an Alternative Should Be Excluded .................................... 45

IV.    Argument - Summary Judgment ................................................................... 46

A.    The Patent Act Precludes TVision's Reverse Doctrine of Equivalents Defense. ............................................................................................... 46

B.    The Court Should Enter Partial Summary Judgment That the Cheung Reference Is Not Prior Art and Thus Does Not Invalidate the Patent in Suit ...... 47

V.    Conclusion ..................................................................................................... 50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Pallet Corp. v. Conrail*,
764 F. App'x 197 (3d Cir. 2019) ................................................................. *passim*

*Adasa Inc. v. Avery Dennison Corp.*,
55 F.4th 900 (Fed. Cir. 2022), *cert. denied*, 143 S. Ct. 2561 (2023).....................................10

*Amgen Inc. v. Sanofi*,
872 F.3d 1367 (Fed. Cir. 2017)...................................................................47, 49

*Andrews v. Brethren Mut. Ins. Co.*,
No. 4:19-CV-02107, 2023 WL 6690710 (M.D. Pa. Oct. 12, 2023) .........................................3

*Aqua Shield v. Inter Pool Cover Team*,
774 F.3d 766 (Fed. Cir. 2014)...................................................................13

*Asetek Danmark A/S v. CMI USA Inc.*,
852 F.3d 1352 (Fed. Cir. 2017)...................................................................4

*Asetek Danmark A/S v. CoolIT Sys. Inc.*,
No. 19-cv-00410, 2022 WL 21306657 (N.D. Cal. Oct. 4, 2022) ................................... *passim*

*Asplundh Mfg. Div. v. Benton Harbor Eng'g*,
57 F.3d 1190 (3d Cir.1995)...................................................................24

*Astrazeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015)................................................................. *passim*

*AVM Technologies, LLC v. Intel Corp.*,
927 F. Supp. 2d 139 (D. Del. 2013)...................................................................24

*Baxalta Inc. v. Bayer Healthcare LLC*,
513 F. Supp. 3d 426 (D. Del. 2021)...................................................................4, 12, 46

*Benjamin v. Peter's Farm Condominium Owners Ass'n*,
820 F.2d 640 (3d Cir. 1987)...................................................................3

*Collins v. Prudential Inv. & Ret. Servs.*,
119 F. App'x 371 (3d Cir. 2005) ...................................................................24

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
No. 22-cv-00343, 2024 WL 1289821 (E.D. Tex. Mar. 26, 2024) .........................................16

*Donlin v. Philips Lighting N. Am. Corp.*,
  581 F.3d 73 (3rd Cir. 2009) ...............................................................................23

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
  800 F.3d 1375 (Fed. Cir. 2015).....................................................................48, 49

*Eisenberg v. Gagnon*,
  766 F.2d 770 (3d Cir. 1985)...............................................................................6

*EMC Corp. v. Pure Storage, Inc.*,
  154 F. Supp. 3d 81 (D. Del. 2016) ....................................................................24

*Gamon Plus, Inc. v. The Campbell's Co.*,
  No. 15-cv-8940, D.I. No. 600 (N.D. Ill. Sep. 5, 2025) .........................15, 16, 18, 19

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970).....................................................................45

*Hanson v. Alpine Valley Ski Area, Inc.*,
  718 F.2d 1075 (Fed. Cir. 1983)...........................................................................14

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
  378 F. Supp. 2d 459 (D. Del. 2005).....................................................................13

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
  274 F.3d 1371 (Fed. Cir. 2001)........................................................................6, 13

*Jackson v. NuVasive, Inc.*,
  C.A. No. 21-53-RGA, 2025 WL 1078934 (D. Del. Apr. 10, 2025) ........................10

*Janssen Pharms., Inc. v. Tolmar, Inc.*,
  C.A. No. 21-1784-WCB, 2024 WL 834762 (D. Del. Feb. 26, 2024)......................48

*Estate of Knoster*,
  200 F. App'x. 106 (3d Cir. 2006) .......................................................................24

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)..............................................................................10

*Laserdynamics, Inc. v. Quanta Comput., Inc.*,
  No. 06-cv-348, 2011 WL 197869 (E.D. Tex. Jan, 20, 2011) ..................................15

*Lucent Technologies, Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009).............................................................................8

*M2M Sols. LLC v. Enfora, Inc.*,
  167 F. Supp. 3d 665 (D. Del. 2016)................................................................10, 45

*M2M Sols. LLC v. Motorola Sols., Inc.*
C.A. No. 12-33-RGA, 2016 WL 767900 (D. Del. Feb. 25, 2016) ...........................................11

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*,
C.A. No. 07-127-LPS-MPT, 2014 WL 529983 (D. Del. Feb. 7, 2014) ........................3, 30, 36

*Mahurkar v. C.R. Bard, Inc.*,
79 F.3d 1572 (Fed. Cir. 1996)..............................................................................................47

*Mars, Inc. v. Coin Acceptors, Inc.*,
527 F.3d 1359 (Fed. Cir. 2008)............................................................................................45

*McCrary v. N.J. Transit Rail Operations, Inc.*,
No. 05-88, 2008 WL 2885872 (D.N.J. July 23, 2008) ..........................................................24

*Novartis Corp. v. Ben Venue Labs., Inc.*,
271 F.3d 1043 (Fed. Cir. 2001)........................................................................................5, 16

*Paltalk Holdings, Inc. v. Cisco Sys., Inc.*,
No. 21-cv-757, 2025 WL 2581690 (W.D. Tex. Aug. 27, 2025)..............................................16

*Panduit Corp. v. Stahlin Bros Fibre Works, Inc.*,
575 F.2d 1152 (6th Cir. 1978) ...............................................................................................4

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
No. 14-cv-01352, 2019 WL 8138163 (C.D. Cal. 2019) ........................................................16

*Power Integrations v. Fairchild Semiconductor*,
711 F.3d 1348 (Fed. Cir. 2013)............................................................................................20

*Purdue Pharma L.P. v. Iancu*,
767 F. App'x 918 (Fed. Cir. 2019) .......................................................................................49

*Qorvo, Inc. v. Akoustis Techs., Inc.*,
C.A. No. 21-01417-JPM, 2024 WL 5334984 (D. Del. Apr. 25, 2024) ....................................3

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010)..............................................................................................10

*Riles v. Shell Exploration and Prod. Co.*,
298 F.3d 1302 (Fed. Cir. 2002)......................................................................................12, 13

*Safeguard Scis., Inc. v. Saints Cap. Dakota, L.P.*,
C.A. No. 09-380-RGA, 2013 WL 12158979 (D. Del. Mar. 28, 2013)....................................24

*Sec'y U.S. Dept. of Labor v. Nursing Home Care Mgmt. Inc.*,
128 F.4th 146 (3d Cir. 2025) .................................................................................................3

*In re Seroquel XR*,
    C.A. No. 20-1076-CFC, 2025 WL 963234 (D. Del. Mar. 31, 2025)........................................3

*Sherwin-Williams Co. v. PPG Indus., Inc.*,
    No. 17-1023, 2020 WL 1283465 (W.D. Pa. Mar. 18, 2020) ........................................... *passim*

*Shure Inc. v. ClearOne, Inc.*,
    C.A. No. 19-1343-RGA-CJB, 2021 WL 4748744 (D. Del. Oct. 8, 2021) ..............................16

*Smart Skins, LLC v. Microsoft Corp.*,
    No. C15-544, 2016 WL 4148091 (W.D. Wash. July 1, 2016) .........................................16, 44

*Spectralytics, Inc. v. Cordis Corp.*,
    649 F.3d 1336 (Fed. Cir. 2011).....................................................................................22, 31

*SPEX Techs. v. Apricorn, Inc.*,
    No. 16-cv-07349, 2020 WL 1289546 (C.D. Cal. 2020) ..........................................................16

*Steuben Foods, Inc. v. Shibuya Hoppman Corp.*,
    127 F.4th 348 (Fed. Cir. 2025) .....................................................................................46, 47

*Stoller Enters., Inc. v. Fine Agrochemicals*,
    705 F. Supp. 3d 774 (S.D. Tex. 2023) .............................................................................15, 16

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
    279 F.3d 1357 (Fed. Cir. 2002).................................................................................................46

*Tech. Licensing Corp. v. Videotek, Inc.*,
    545 F.3d 1316 (Fed. Cir. 2008).................................................................................................49

*Visteon Glob. Tech., Inc. v. Garmin Int'l, Inc.*,
    903 F. Supp. 2d 521 (E.D. Mich. 2012)............................................................................ *passim*

*Webasto Thermo & Comfort N. Am., Inc. v. BestTop, Inc.*,
    No. 16-cv-13456, 2019 WL 3334563 (E.D. Mich. Jul. 25, 2019).............................22, 28, 31

*WhereverTV, Inc. v. Comcast Cable Comm'ns, LLC*,
    No. 18-cv-529, 2022 WL 2751752 (M.D. Fla. Jul. 14, 2022) ......................................... *passim*

**Statutes**

6 *Del. C.* §73-605(a)(2)......................................................................................................................6

35 U.S.C. §271(a) ...........................................................................................................................46

**Other Authorities**

17 CFR §240.10b-5.............................................................................................................................6

Federal Rule of Evidence 701 ........................................................................................23, 24, 25

Federal Rule of Evidence 702 ...........................................................................................3, 22, 34

**TABLE OF EXHIBITS[1]**

| Ex. No. | Description |
|---|---|
| 1. | U.S. Patent No. 7,783,889 |
| 2. | Anderson Supplemental Opening Report (July 7, 2025) |
| 3. | Anderson Supplemental Rebuttal Report (August 1, 2025) |
| 4. | Anderson Supplemental Reply Report (August 18, 2025) |
| 5. | Johnson Rebuttal Report (November 21, 2023) |
| 6. | Kyriakakis Opening Report (July 7, 2025) |
| 7. | Kyriakakis Rebuttal Report (July 28, 2025) |
| 8. | Kyriakakis Reply Report (August 18, 2025) |
| 9. | Keeley Opening Report (July 7, 2025) |
| 10. | Johnson Supplemental Report (July 28, 2025) |
| 11. | Transcript of Deposition of Yan Liu (August 29, 2023, continued September 8, 2025) |
| 12. | Transcript of Deposition of Joanne Johnson (January 24, 2024) |
| 13. | Transcript of Deposition of Daniel Schiffman (September 8, 2023) |
| 14. | Anderson Rebuttal Report (November 21, 2023) |
| 15. | Keeley Reply Report (August 18, 2025) |
| 16. | U.S. Patent No. 6,990,453 |
| 17. | Keeley Supplemental Report (October 3, 2025) |
| 18. | Screen print of https://www.businesswire.com/news/home/20150412005036/en/Axwave's-Unique-Viewership-Numbers-Show-30-TV#.VTXuj_CLMdV) |
| 19. | Transcript of Deposition of Inderbir Sidhu (August 31, 2023, continued September 9, 2025) |
| 20. | TVSN_NLSN_00662112-39 |
| 21. | TVSN_NLSN_00660739-72 |
| 22. | Screen print of https://beatgrid.co/platform/acr-automatic-content-recognition-technology |
| 23. | TVSN_NLSN_00399618-19 |
| 24. | Screen print of https://www.audiblemagic.com/ |
| 25. | Screen print of https://lookup.icann.org/en/lookup of www.dat-track.com |
| 26. | Screen print of https://www.soundhound.com |

---

[1] These Exhibits are attached to the Declaration of Douglas Lewis in Support of Nielsen's *Daubert* and Summary Judgment Motions, filed concurrently herewith.

| 27. | Screen print of https://www.civolution.com/ |
|---|---|
| 28. | U.S. Patent No. 8,468,183 |
| 29. | TVision's Supplemental Initial Invalidity Contentions, served April 10, 2023 |
| 30. | TVision's Final Invalidity Contentions, served September 18, 2023 |
| 31. | TVSN_NLSN_00645277-95 |
| 32. | Comparison of Asserted Claims of '889 Patent and Claims of PCT/US05/29623 |
| 33. | TVSN_NLSN_00269606 |
| 34. | Transcript of Deposition of Dr. David Anderson (August 29, 2025) |
| 35. | Screen print of document family (showing that the May 2018 forecast was attached to a May 26, 2018 email to an investor) |
| 36. | Screen print of https://www.mufin.com/ |
| 37. | Screen print of https://sourcedigital.com/ |
| 38. | Screen print of https://sourcedigital.com/solutions/for-acr/whisper/ |
| 39. | MRL webpage; Liu Dep. Ex. 41 |
| 40. | TVSN_NLSN_00952341-56 |
| 41. | TVSN_NLSN_00725382-86 |
| 42. | NLSN_TVISION0002762-65 |
| 43. | NLSN_TVISION0001326-46 |
| 44. | TVision's Supplemental Final Invalidity Contentions, served June 21, 2025 |
| 45. | *Gamon Plus, Inc. v. The Campbell's Co.*, No. 15-cv-8940, D.I. No. 600 at 5-7 (N.D. Ill. Sep. 5, 2025) |

## I.    Introduction

The Court should exclude several of TVision's experts' opinions, which lack supporting facts and do not follow the law. Specifically, the Court should exclude (1) the opinion of TVision's damages expert, Ms. Joanne Johnson, relating to Nielsen's forgone profits because she applies the wrong legal standard; (2) Ms. Johnson's unsupported opinion that TVision's 2018 financial forecast is speculative; (3) Ms. Johnson's unsupported opinion that a device-based running royalty is appropriate; (4) Ms. Johnson's royalty opinion that improperly relies on an agreement between TVision and Gracenote; (5) Ms. Johnson's opinions that improperly use data that did not exist until after the hypothetical negotiation; and (6) the unsupported opinions of Ms. Johnson and TVision's technical expert, Dr. David Anderson, regarding supposed available, acceptable, non-infringing alternatives to the accused TVision products.

The Court should grant summary judgment on two of TVision's defenses. Specifically, the Court should grant summary judgment on the grounds that (1) TVision's reverse doctrine of equivalents ("RDOE") defense to Nielsen's infringement allegations is legally barred because the 1952 Patent Act abrogated the RDOE; and (2) the asserted claims of the patent-in-suit are not invalid in view of U.S. Patent No. 8,468,183 ("the Cheung reference" or "Cheung") because TVision has not carried its burden to prove that Cheung is entitled to priority as of its provisional priority date (*i.e.,* that Cheung is prior art to the patent in suit).

## II.    Background and Nature and Stage of the Proceedings

Nielsen filed this patent infringement lawsuit against TVision on January 14, 2022. D.I. 1. Nielsen alleges that TVision's panelist devices[2] and their use infringe claims 1, 2, 4-6, 8, 9, and 11-17 of Nielsen's U.S. Patent No. 7,783,889 ("the '889 patent" or "the patent-in-suit"). *See* D.I.

---

[2] Generally, a panelist device refers to the specialized equipment installed in the homes of selected participants (panelists) to track and record their media consumption.

1 ¶44; Ex. 1, '889 Patent.

The '889 patent concerns, among other things, the generation of audio signatures, which is part of the automatic content recognition (ACR) process that TVision uses to recognize media content playing on its panelists' televisions. Ex. 11, Liu Dep. 39:6-8. TVision places its devices in panelists' homes to monitor those panelists' media consumption. Nielsen's infringement allegations are based on TVision's use, on its panelist devices, of third-party ███████ ACR software. Ex. 9, Keeley Rep. ¶34; Ex. 5, Johnson Rep. ¶¶31, 76; Ex. 6, Kyriakakis Op. Rep. ¶¶92-99, 151-61.

███████████████████████████████████████████████

███████████████████ Ex. 11, Liu Dep. 62:1-8, 62:19-63:1. Indeed, according to TVision's CEO, Mr. Yan Liu, ████████████████████████████████████ *Id.* 184:1-2.

TVision's technical expert, Dr. David Anderson, served reports on July 7, 2025 ("Anderson Supp. Opp. Rep.") (Ex. 2), August 1, 2025 ("Anderson Supp. Rebuttal Rep.") (Ex. 3), and August 18, 2025 ("Anderson Supp. Reply Rep.") (Ex. 4). TVision's damages expert, Joanne Johnson, served a report on November 21, 2023 ("Johnson Rep.") (Ex. 5) and a supplemental report on July 28, 2025 (Ex. 10). Many of Ms. Johnson's damages opinions rely on technical matters in Dr. Anderson's report or on her interviews with TVision's Chief Technical Officer, Inderbir Sidhu. Nielsen's technical expert, Dr. Chris Kyriakakis, served reports on July 7, 2025 ("Kyriakakis Op. Rep.") (Ex. 6), July 28, 2025 ("Kyriakakis Rebuttal Rep.") (Ex. 7), and August 18, 2025 ("Kyriakakis Reply Rep.") (Ex. 8). And Nielsen's damages expert, Dr. Michael Keeley, served reports on July 7, 2025 ("Keeley Op. Rep.") (Ex. 9), August 18, 2025 (Ex. 15), and October 3, 2025 (Ex. 17).

### III.    Argument - *Daubert* Motions

TVision must show by a preponderance of the evidence that its experts' opinions "are

2

based on sufficient facts or data and are the product of reliable principles and methods." *In re Seroquel XR*, C.A. No. 20-1076-CFC, 2025 WL 963234, at *1 (D. Del. Mar. 31, 2025); *see also Qorvo, Inc. v. Akoustis Techs., Inc.*, C.A. No. 21-01417-JPM, 2024 WL 5334984, at *1 (D. Del. Apr. 25, 2024) (similar). Federal Rule of Evidence 702 was amended in 2023 to emphasize that when a party does not make such a showing, its experts' opinions are not admissible. Fed. R. Evid. 702, Advisory Comm. Notes, 2023 Amendments ("[M]any courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rule[] 702"); *Andrews v. Brethren Mut. Ins. Co.*, No. 4:19-CV-02107, 2023 WL 6690710, at *5-6 (M.D. Pa. Oct. 12, 2023).

Courts routinely exclude expert opinions that lack sufficient factual foundation. *See, e.g.*, *Benjamin v. Peter's Farm Condominium Owners Ass'n*, 820 F.2d 640, 642-43 (3d Cir. 1987); *Ace Pallet Corp. v. Conrail*, 764 F. App'x 197, 198 (3d Cir. 2019); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, C.A. No. 07-127-LPS-MPT, 2014 WL 529983, at *12 (D. Del. Feb. 7, 2014) (Excluding expert opinion that "fail[ed] to demonstrate how he applied any methodology to the facts, contrary to the requirements of Daubert and Fed. R. Evid. 702."); *Sec'y U.S. Dept. of Labor v. Nursing Home Care Mgmt. Inc.*, 128 F.4th 146, 162-63 (3d Cir. 2025).

As explained below, TVision seeks to offer expert opinions that either are not supported by foundational facts or fail to apply the proper legal standards. The Court should exclude them.

### A.    The Court Should Exclude Ms. Johnson's Opinion Relating to Nielsen's Forgone Profits Because She Applies the Wrong Legal Standard

Nielsen's damages expert Dr. Keeley opines that the profits Nielsen would forgo as a result of granting TVision a license must be considered when determining a reasonable royalty using the hypothetical negotiation construct. TVision's damages expert, Ms. Joanne Johnson, criticizes

3

Dr. Keeley's opinion because Dr. Keeley did not also consider the four factors required to prove lost profits in *Panduit Corp. v. Stahlin Bros Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978) ("the *Panduit* factors"). *See, e.g.*, Ex. 5, Johnson Rep. ¶244. Ms. Johnson applies the wrong legal standard in her criticism of Dr. Keeley's analysis.

Nielsen seeks to recover only reasonable royalty damages—and ***not*** lost profits damages.[3] As the Federal Circuit has held, the *Panduit* factors are inapplicable in a reasonable royalty analysis, even where the analysis considers the profits the licensor would lose by granting a license. *Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1362 (Fed. Cir. 2017) ("[Having to] prove that it would have made the infringer's sales 'but for' the infringement [is] a requirement not applicable to reasonable-royalty damages").

Accordingly, Ms. Johnson's opinion that Dr. Keeley cannot consider Nielsen's forgone profits without a *Panduit* analysis is contrary to the law and should be excluded, including opinions in Johnson Rep. ¶¶13 (bullet point 1), 241-42, 243 (bullet point 1), 244-48, 252, 260, 281, and Johnson Dep. 155:21-156:10. *See Baxalta Inc. v. Bayer Healthcare LLC*, 513 F. Supp. 3d 426, 448 (D. Del. 2021).

### B. Ms. Johnson Identifies No Support for Her Opinion That the May 2018 Forecast is "Speculative and Unsubstantiated"

In his reasonable royalty analysis, Dr. Keeley used . In particular, the forecast informed his understanding of the hypothetical negotiation and TVision's negotiating posture, state of mind, and willingness to agree to the reasonable royalty that he calculates. Ex. 9, Keeley

---

[3] Dr. Keeley considers Nielsen's forgone profits as part of his analysis of Nielsen's negotiation posture in the hypothetical negotiation because, as the Federal Circuit has explained, a patent holder "unlikely [would] be interested in accepting a royalty rate lower than its profit margin on the patented products." *Asetek Danmark*, 852 F.3d at 1362 (Internal quotations omitted).

Rep. ¶¶76-78, 84 (citing TVSN_NLSN_00269608 ("the May 2018 forecast")). TVision does not dispute that the hypothetical negotiation would have taken place in May 2018. Ex. 5, Johnson Rep. ¶95; Ex. 9, Keeley Rep. ¶16. Nor does TVision dispute that the May 2018 forecast was TVision's most current and up-to-date forecast as of that May 2018 hypothetical negotiation.

Nonetheless, throughout her report, Ms. Johnson opines that Dr. Keeley "█████████ ███████████████████████████████████████████" Ex. 5, Johnson Rep. ¶243; *see also, e.g.*, *id.* ¶¶13, 139, 242, 286, 290-292, 304. This opinion should be excluded because it contradicts all the facts in the record. *See Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001); *see also Ace Pallet*, 764 F. App'x at 198. As explained below, the record shows that the forecast reflected months of work by TVision's CEO and its VP of Finance. As also explained below, the forecast represented TVision's expectations at the time of the May 2018 hypothetical negotiation about its future. ██████████████████████ ████████████████, which means that by law, it was not permitted to be "speculative and unsubstantiated."

Daniel Schiffman, TVision's ex-Chief Revenue Officer, substantiated the forecast by testifying that █████████████████████████████████████████████████ ██████████████████████████ Ex. 13, Schiffman Dep. 20:20-22:6; 28:13-20; *see also id.* 19:7-20. Mr. Liu, TVision's CEO, confirmed that ██████████████████████ ████████ Ex. 11, Liu Dep. 349:10-14, 354:16-20; Ex. 33, TVSN_NLSN_00269606.

Moreover, the reliability of the forecast is demonstrated by the fact that Mr. Liu held out the forecast as an accurate expectation regarding TVision's future revenues to at least one potential investor. Ex. 33, TVSN_NLSN_00269606; Ex. 35, Screenprint of document family (showing that the May 2018 forecast was attached to a May 26, 2018 email to an investor). Mr.

Liu did not intend to mislead the investor;[4] on the contrary, he testified that the forecast was the result of months of work vetting TVision data with the investor. Ex. 11, Liu Dep. 349:10-14, 354:16-20. Thus, unsurprisingly, Mr. Liu did not indicate to the investor that the forecast was speculative or unsubstantiated. Ex. 12, Johnson Dep. 37:2-7, 40:1-41:4. Despite Ms. Johnson's assertions to the contrary, Mr. Liu testified that he did not recall telling the investor that the forecast was speculative or unsubstantiated or that the forecast was "aspirational," "constructed in a best case scenario," "assum[ed] [that] the market would be as receptive to [TVision's] products as possible," or "assum[ed] [that TVision] could meet all of their internal targets," as Ms. Johnson characterizes the May 2018 forecast. Ex. 12, Johnson Dep. 32:4-33:5; Ex. 11, Liu Dep. 352:5-354:14. Mr. Liu even told one potential investor that he was confident revenue would increase quickly—*i.e.*, that the forecast likely was conservative. Ex. 12, Johnson Dep. 40:12-16.

Contrary to Ms. Johnson's assertion, the fact that TVision did not achieve its forecasted results is irrelevant. Forecasts are routinely used in hypothetical negotiation analyses regardless of whether the defendant later performs as projected. *See Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384 (Fed. Cir. 2001). That does not make the forecasts speculative or unsubstantiated.

Because the foundational facts contradict Ms. Johnson's opinions that the May 2018 forecast is "███████████████████████" the Court should exclude those opinions, including those set forth in Johnson Rep. ¶¶13 (bullet 7), 106, 135-139, 232, 242, 243 (bullet 7), 285-94,

---

[4] Mr. Liu testified that ██████████████████████████████████████ ██████ Ex. 11, Liu Dep. 133:9-14. ██████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████ *See, e.g.*, 17 CFR §240.10b-5; 6 *Del. C.* § 73-605(a)(2); *see also Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3d Cir. 1985) ("[T]here is an obligation to disclose data indicating that the opinion or forecast may be doubtful.").

302, and 304-06, 309, Figures 10, 22, 23, Exhibits 11.0-11.2, 15.0-15.4, 16.0, 17.0, and 18.1-18.3 and those expressed in her deposition relating to the forecast being "███████," "████████████████," "███████████████████████████████ ██████████████" or "████████████████████████████████████" Ex. 12, Johnson Dep. 30:11-33:5, 34:6-16, 35:1-3, 37:7-13.

### C. The Court Should Exclude Ms. Johnson's Opinion About a Device-Based Running Royalty Because It is Conclusory and Factually Unsupported

Ms. Johnson opines that ████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████. But Ms. Johnson's opinion is conclusory; her report states only that "[████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████" Ex. 5, Johnson Rep. ¶104. She fails to explain why "████████████████████████████████████ ███" is a "███████████" for a running royalty.

Instead, Ms. Johnson calculates various lump sum royalties and converts them into device-based running royalties without offering any rationale. For example, █████████████ ██████████████████████████████████████████████████████████ ██████████████████████████ Ex. 5, Johnson Rep. ¶¶156, 167. ███ ██████████████████████████ *See id.* Similarly, ███████████ ██████████████████████████████████████████████████████████ *Id.* ¶207.[5] Without any rationale, Ms. Johnson ███████████████████████████

---

█████████████████████████████████████████████. *Id.* ¶¶156, 167, 207. She then

████████████████████████████████████████████████████████████████████████████████

████████████████████ *See id.* ¶¶235-36, 239 & Fig. 16.

Dividing a lump sum by the number of devices deployed per month—with no indication *why* that would be the result of the hypothetical negotiation—is improper. *Cf. Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009) ("For a jury to use a running-royalty agreement as a basis to award lump-sum damages, however, some basis for comparison must exist in the evidence presented to the jury."). Even if Ms. Johnson's unsupported assertion that "█████████████████████████████████████████

██████████████████████████████████████████████████" (Ex. 5, Johnson Rep. ¶103) were true, both her "████████████████████████████████

████████ Moreover, citing non-patent licenses does not provide support to convert a lump sum into a running royalty. Ex. 5, Johnson Rep. ¶103 (citing *Georgia Pacific* factors 9, 10, 12 which rely on the Gracenote agreement, Section 12.12). *See* Section III.D.

The Court should exclude Ms. Johnson's opinions about a device-based running royalty, including those in Johnson Rep. ¶¶11, 103-05, 156, 163-67, 207, 232 (bullets 8 and 11), 235, 239, 270, 288-89, Figures 1, 7, 11, 16, Exhibits 3.0-3.1, 5.0, 5.2-5.4, 6.0, 7.0, 9.0, and 18.0-18.3.

### D. The Court Should Exclude Ms. Johnson's Royalty Opinions Relying on the Gracenote Agreement

In connection with her "market" model, Ms. Johnson states that "████████████████

██████████████████████████████████████████████████" and that



"█████████████████████████████████████████████████████████████████████

████████████████████████████████████████████" Ex. 5, Johnson Rep. ¶181.

However, Ms. Johnson improperly relies on an agreement under which non-party Gracenote

supplied software and services to TVision but did not license any patents. *See id.* ¶¶11, 236, Figs. 1 & 16. Ms. Johnson's opinion is unreliable and contrary to law for at least three reasons.

*First*, as Ms. Johnson acknowledges, the hypothetical negotiation is for a bare patent license. Ex. 5, Johnson Rep. ¶99; Ex. 12, Johnson Dep. 166:13-17. Conversely, ████████  ████████. Ex. 5, Johnson Rep. ¶¶27, 183. The agreement did not identify any Gracenote patents or provide an express license to any patents— let alone the patent-in-suit, which Gracenote did not own.

Ms. Johnson attempts to ████████ ████████ Ex. 5, Johnson Rep. ¶¶185, 201. That argument fails because, TVision would receive an "implicit license" only to patents that the licensed software used. But Ms. Johnson does not show which, *if any*, Gracenote patents the Gracenote software used. *See id.* ¶201. Instead, Ms. Johnson relies on Dr. Anderson's *ipse dixit*: ████████ ████████ Ex. 5, Johnson Rep. ¶201, citing Ex. 3, Anderson Supp. Rebuttal Rep. ¶134[6]. Dr. Anderson's opinion is pure speculation because he never analyzed whether Gracenote's products used any of its patents, and Ms. Johnson did not do independent analysis to confirm that fact. Ex. 12, Johnson Dep. 131:21-132:7, 135:18-22, 136:8-13; Ex. 14, Anderson Rebuttal Rep. ¶¶104, 111-12; Ex. 3, Anderson Supp. Rebuttal Rep. ¶¶127, 134-35. Indeed, neither expert had access to the Gracenote system. Ex. 12, Johnson Dep. 134:10-19.

---

[6] Ms. Johnson's original report cites Anderson Rebuttal Rep. ¶111. *See* Ex. 5, Johnson Rep. ¶201, FN. 379-80. Although Ms. Johnson's supplemental report did not update this citation, Anderson Rebuttal Rep. ¶111 is identical to Anderson Supplemental Rebuttal Report ¶134. *Compare* Ex. 14, Anderson Rebuttal Rep. ¶111, *with* Ex. 3, Anderson Supp. Rebuttal Rep. ¶134.

A non-patent software and services agreement is not the equivalent of a hypothetical agreement for a bare patent license. In *ResQNet.com*, for example, the Federal Circuit held that the district court committed legal error by admitting expert testimony about "re-bundling licenses" that "furnished finished software products and source code" but did not "mention[ ] the patents in suit or show[ ] any other discernible link to the claimed technology." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 871 (Fed. Cir. 2010). As the Federal Circuit explained, it is improper to use a non-patent agreement without linking it to a patent license or to the claimed technology. *See id.* at 870-71.

**Second**, even if she could show that the Gracenote software agreement implicitly licensed patents, Ms. Johnson does not meet her burden to show that the Gracenote agreement involves any patent that is sufficiently comparable to the patent-in-suit. *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022), *cert. denied*, 143 S. Ct. 2561 (2023) ("The party proffering a license bears the burden of establishing it is sufficiently comparable to support a proposed damages award.").

Ms. Johnson "must account for differences in the technologies and economic circumstances" between any patents supposedly licensed impliedly by the Gracenote agreement and a license to the patent in suit—which she did not do. *Id.* at 915; *ResQNet.com*, 594 F.3d at 871-73; *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) ("When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice."); *Jackson v. NuVasive, Inc.*, C.A. No. 21-53-RGA, 2025 WL 1078934, at *3 (D. Del. Apr. 10, 2025) ("He never specifies, however, what those technologies are or why they are similar enough to the TIP patents to warrant the same royalty rate"); *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678 (D.

10

Del. 2016). On the contrary, Ms. Johnson admits that ███████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

Ex. 5, Johnson Rep. ¶208.

In attempting to ███████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ Ex. 5, Johnson Rep. ¶205 (emphasis added). But

Ms. Johnson has not shown that "███████████" either technically or economically, and thus,

the Court should exclude her opinion. *See M2M Sols. LLC v. Motorola Sols., Inc.* C.A. No. 12-

33-RGA, 2016 WL 767900, at *8 (D. Del. Feb. 25, 2016) (citations omitted) (Excluding the

conclusory opinion of a damages expert because he performed no technical analysis of the

patent-in-suit as compared to the patents used as a basis for his royalty calculation).

And ***third***, Ms. Johnson's opinion ignores the fact that ███████████████████

██████████████████████████████████████████████████████

██████  *See* Ex. 12, Johnson Dep. 127:5-128:1. The fact that ██████████████████████

██████████ proves that Gracenote would ***not*** have accepted the agreement's terms at the time of

the hypothetical negotiation. *See* Ex. 11, Liu Dep. 76:7-14, 210:3-18. For this reason as well, the

Gracenote agreement cannot serve as a basis to calculate a royalty for a license to the patent-in-

suit. *See Asetek Danmark A/S v. CoolIT Sys. Inc.,* No. 19-cv-00410, 2022 WL 21306657, at *30 (N.D. Cal. Oct. 4, 2022).

Accordingly, the Court should exclude the opinions in the following paragraphs of Ms. Johnson's and Dr. Anderson's opinions relating to the Gracenote agreement: Johnson Rep. and Johnson Supp. Rep. ¶¶11, 27, 109, 111, 181-208, 232 (bullet 11), 235-36, 288, Figures 1 and 16, Exhibits 3.0, 7.0, Dr. Anderson Rebuttal Rep. ¶¶111-12, and Dr. Anderson Supp. Rebuttal Rep. ¶¶134-35.

### E. The Court Should Exclude Ms. Johnson's Royalty Opinions Based on Information That Existed Only After the Hypothetical Negotiation

The Court should exclude Ms. Johnson's opinions calculating a reasonable royalty based on information that existed only after the hypothetical negotiation. The Federal Circuit has held that the "reasonable royalty" inquiry in a patent suit "must relate to the time infringement occurred, and not be an after-the-fact assessment." *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002). Following this rule, Dr. Keeley used ███████████████ ████████████ to calculate a lump sum royalty to which the parties would have agreed during the May 2018 hypothetical negotiation. Ex. 9, Keeley Rep. ¶¶76-77. In contrast, Ms. Johnson uses ██████████████████████████████████████████ even though the parties would not have had ████████████████████ during the May 2018 hypothetical negotiation. *See* Ex. 12, Johnson Dep. 29:22-30:10; Ex. 5, Johnson Rep. ¶291, Exs. 15.1-15.4. The Court should exclude Ms. Johnson's opinion that, contrary to the law, a reasonable royalty can be calculated using TVision's actual post-hypothetical-negotiation financials rather than its May 2018 forecast. *See Baxalta*, 513 F. Supp. 3d at 448.

Ms. Johnson's calculation of a reasonable royalty based on TVision's "█████████████ █████" impermissibly uses hindsight and does not apply the proper legal standard for a

hypothetical negotiation. Calculating a reasonable royalty requires analyzing a hypothetical negotiation "*as of the time infringement began*"—here May 2018. *Interactive Pictures*, 274 F.3d at 1384 (emphasis added); *see also Riles*, 298 F.3d at 1313. It is improper for the infringer to use post-negotiation, actual financial data. To hold otherwise "would essentially eviscerate the rule that recognizes sales expectations at the time when infringement begins as a basis for a royalty base as opposed to an after-the-fact counting of actual sales." *Interactive Pictures*, 274 F.3d at 1384.

Although post-negotiation information can be considered under the "Book of Wisdom" in certain circumstances, no such circumstances are present here. Ms. Johnson does not even address this theory, let alone provide the foundation to apply it. Regardless, the purpose of the Book of Wisdom is to discourage infringement by *ensuring that the patentee receives a fair damages recovery and thus it* is not available to Ms. Johnson. *See Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 378 F. Supp. 2d 459, 465 (D. Del. 2005) ("[T]he 'book of wisdom' concept protects the quid pro quo arrangement underlying patent law by ensuring that the patentee will be adequately compensated for infringement."). Ms. Johnson improperly uses post-negotiation information for the opposite purpose—to allow TVision to escape the deal it would have negotiated based on its own financial projections made at the time of the May 2018 hypothetical negotiation. *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014) (holding that using actual profits as a "royalty cap" "incorrectly replaces the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened."); *Interactive Pictures*, 274 F.3d at 1385 ("The fact that [the defendant] did not subsequently meet [its] projections is irrelevant to [the defendant's] state of mind at the time of the hypothetical

13

negotiation."); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1081 (Fed. Cir. 1983) ("The issue of the infringer's profit is to be determined not on the basis of a hindsight evaluation of what actually happened, but on the basis of what the parties to the hypothetical license negotiations would have considered at the time of the negotiations.").

Thus, Ms. Johnson's use of ███████████ is inconsistent with the legal standard for a hypothetical negotiation. Her opinions that use █████████████ should be excluded, including her opinions in Johnson Rep. ¶¶13 (bullet 7), 106, 130-34, 136-42, 174-80, 221-23, 225-26, 229, 232 (bullet 5), 242, 243 (bullets 7-8), 286, 288, 290-92, 294, 299, 306, Figures 9-10, 22, Exhibits 10.0-10.1, 11.0-11.2, 12.0-12.2, 15.0-15.4, and 18.0-18.3. *See* Ex. 12, Johnson Dep. 186:2-187:10 (confirming that Exhibits 15.1-15.4 use █████████████████████ █████).

### F. The Court Should Exclude TVision's Experts' Opinions Relating to Proposed Alternatives to the Infringing System

In her "cost" model, Ms. Johnson relies on Mr. Sidhu's and Dr. Anderson's opinions regarding hypothesized alternative systems that TVision allegedly could have used instead of ███████████ infringing ACR software. *See* Ex. 5, Johnson Rep. ¶¶148-49. Ms. Johnson and Dr. Anderson rely on three theories relating to alternatives to the infringing technology: (1) that TVision's current supplier of the infringing technology, ████████, could have developed a non-infringing technology, (2) that TVision could have developed an alternative in-house, and (3) that TVision could have used one of several third-party systems. Ms. Johnson and Dr. Anderson have not shown that any of these posited alternatives meet the requirements to be an alternative in a damages analysis.

To be considered in the reasonable royalty analysis, a purported alterative must be available, acceptable, and non-infringing. *See e.g.*, *Astrazeneca AB v. Apotex Corp.*, 782 F.3d

14

1324, 1340-41 (Fed. Cir. 2015) ("The patents held by [a third-party] were designed to protect its formulation. From that fact, the district court could reasonably infer that the [third-party] formulation was not available to [defendant] as a non-infringing alternative."); Ex. 45, *Gamon Plus, Inc. v. The Campbell's Co.*, No. 15-cv-8940, D.I. No. 600 at 5-7 (N.D. Ill. Sep. 5, 2025) (finding that defendant must "address[] whether the other alternative designs are non-infringing and why, whether they were available during the damages period, and whether they are commercially acceptable.") (internal quotations omitted); *Laserdynamics, Inc. v. Quanta Comput., Inc.*, No. 06-cv-348, 2011 WL 197869, at *2 (E.D. Tex. Jan. 20, 2011) ("Whether the accused infringer had acceptable non-infringing alternatives available to it at the time of the hypothetical negotiation may be probative of a reasonable royalty for the patented technology."), *objections overruled*, 2011 WL 13196509 (Jan. 28, 2011); *Stoller Enters., Inc. v. Fine Agrochemicals*, 705 F. Supp. 3d 774, 798 (S.D. Tex. 2023) (finding it is "Defendants' burden to establish that any alternatives [were] acceptable and available under reasonable royalties analysis in order to get the benefit of a lower calculation.") (quotations omitted). With regard to the "available" prong of the analysis, courts impose an inference that products that did not exist in the marketplace at the time of the hypothetical negotiation are not available alternatives. *See Sherwin-Williams Co. v. PPG Indus., Inc.*, No. 17-1023, 2020 WL 1283465, at *9 (W.D. Pa. Mar. 18, 2020); *Asetek Danmark*, 2022 WL 21306657, at *30 ("[T]here is a reasonable inference that the alleged alternative was not available as a noninfringing [SIC] substitute because it was not on the market during the accounting period.") (citations omitted).

Although this District and the other districts in the Third Circuit have not addressed this issue, several courts have held that where—as here—non-infringing alternatives are relevant only to a reasonable royalty analysis, the "non-infringing alternative analysis is more similar to

15

an affirmative defense whose burden is upon the defendant." *Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 22-cv-00343, 2024 WL 1289821, at *4 (E.D. Tex. Mar. 26, 2024) ("[A] non-infringing alternative analysis is not . . . a required part of the showing for the party proffering damages."); *see also, e.g.*, *Paltalk Holdings, Inc. v. Cisco Sys., Inc.*, No. 21-cv-757, 2025 WL 2581690, at *10 (W.D. Tex. Aug. 27, 2025) ("Several courts have determined that the alleged infringer has the burden to establish that non-infringing alternatives were acceptable and available under a reasonable royalty analysis to get the benefit of a lower calculation."). Thus, TVision bears the burden of proof to show that its proposed alternatives would be available, acceptable, and non-infringing. *See Smart Skins, LLC v. Microsoft Corp.*, No. C15-544, 2016 WL 4148091, at * 2 (W.D. Wash. July 1, 2016) ("[T]he alleged infringer has the burden of showing that non-infringing alternatives were both available to it and were acceptable to its customers during the damages period"); *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, No. 14-cv-01352, 2019 WL 8138163, at *21 (C.D. Cal. 2019) (similar); *SPEX Techs. v. Apricorn, Inc.*, No. 16-cv-07349, 2020 WL 1289546, at *2 (C.D. Cal. 2020) (similar); *Stoller Enterprises*, 705 F. Supp. 3d at 798 (similar); Ex. 45, *Gamon Plus*, No. 15-cv-8940, D.I. No. 600 at 5-7 (N.D. Ill. Sep. 5, 2025) (similar).

TVision's experts do not identify sufficient evidence to satisfy TVision's burden to show that its proposed alternatives were available, acceptable, and non-infringing at the time of the hypothetical negotiation. The Court should therefore exclude Ms. Johnson's and Dr. Anderson's opinions that are based on or reference proposed alternatives. *Cf. Shure Inc. v. ClearOne, Inc.*, C.A. No. 19-1343-RGA-CJB, 2021 WL 4748744, at *1 (D. Del. Oct. 8, 2021) (holding, based on lack of evidence of redesign costs, that expert's "opinion is not based on sound methodology and does not 'fit' the facts of the case"); *Novartis Corp.*, 271 F.3d at 1051; *Ace Pallet*, 764 F. App'x

16

at 198; *Astrazeneca*, 782 F.3d at 1340-41.



> **1.    The Court Should Exclude TVision's Experts' Opinions Relating to the Alleged ▓▓▓▓▓ Alternative**

TVision's experts assert that ▓▓▓▓▓ could have developed a product that would have been an acceptable, non-infringing alternative at the time of the hypothetical negotiation. In other words, they opine that ▓▓▓▓▓ could have designed around the patent-in-suit, even though it never actually did so. No foundational facts support this opinion. As explained below, TVision's experts fail to show that an ▓▓▓▓▓ design-around would have been available, acceptable, and non-infringing. Accordingly, their opinions regarding an ▓▓▓▓▓ alternative should be excluded.

> **a.    The Proposed ▓▓▓▓▓ Redesign Was Not Available**

> **(i)    The Proposed ▓▓▓▓▓ Redesign Is Entirely Speculative and Thus Not "Available"**

An alleged ACRCloud alternative was not on the market at the time of the hypothetical negotiation (or ever), and thus, there is a presumption that it was not "available." To overcome that presumption, TVision must identify facts showing that ▓▓▓▓▓ had the "necessary materials, equipment, know-how, and experience to make an alternative product during the relevant time frame" and that the alternative "was more than theoretically possible" and "available to be marketed." *Asetek Danmark*, 2022 WL 21306657, at *30 (internal quotations omitted).

TVision has not overcome the presumption that an ▓▓▓▓▓ alternative was not available. In fact, TVision's experts identify *no* facts showing how ▓▓▓▓▓ could have redesigned its ACR system, what an ▓▓▓▓▓ alternative would look like, or that ▓▓▓▓▓ would or could have developed an acceptable, non-infringing alternative that would have been available to be marketed in May 2018. TVision's experts do not explain how such a proposed

17

product would operate, nor do the experts address infringement other than to state in a conclusory fashion that ██████ could implement a different ACR algorithm that would presumably not infringe Nielsen's patent (even though ████████ current algorithm infringes). *See* Ex. 45, *Gamon Plus*, No. 15-cv-8940, D.I. No. 600 at 5-7 (N.D. Ill. Sep. 5, 2025) (holding, on a similar record, that the defendant "ha[d] not sufficiently addressed whether the other alternative designs are non-infringing and why, whether they were available during the damages period, and whether they are commercially acceptable.") (internal quotations omitted).

Neither Dr. Anderson nor Mr. Sidhu, upon whom Ms. Johnson relies, describe how such an alternative system would operate. Dr. Anderson, who had never communicated with ██████ (Ex. 34, Anderson Dep 185:1-4), simply concludes that ████████████████



[7] Dr. Anderson's

██████████████████████████████████████████████

████████████████████████ *See Sherwin-Williams*, 2020 WL 1283465, at *9 ("Vague references by [defendant] that [a non-infringing alternative] might exist will not suffice. . . . Speculation that [defendant] might have been able to design a non-infringing alternative based on the [] patent will also not suffice. . . . It is undisputed that the [proposed alternative] was never commercialized. Even though the existence of an alternative product exists [SIC] is a question of fact, the special master correctly recognized that where there is no evidence to

---

[7] *See* Ex. 3, Anderson Supp. Rebuttal Rep. ¶124 ("████████████████████████ ██████████████████████████████████████████ ████████████████████ "); Ex. 14, Anderson Rebuttal Rep. ¶101 (same). This quote represents the entirety of Dr. Anderson's technical explanation of how to implement this proposed alternative.

support the availability or acceptability of an alternative product during the damages period, summary judgment is proper."); *WhereverTV, Inc. v. Comcast Cable Comm'ns*, No. 18-cv-529, 2022 WL 2751752, at *7 (M.D. Fla. Jul. 14, 2022) ("Using 'vague and general language' that does not identify proposed non-infringing alternatives by name and announcing the existence of certain employees 'having knowledge of alternatives is not a substitute for its obligation to identify alleged acceptable non-infringing alternatives.' Not only must the proposed alternatives be specifically noted, but their availability and acceptability must also be substantiated with record evidence."); Ex. 45, *Gamon Plus*, No. 15-cv-8940, D.I. No. 600 at 5-7 (N.D. Ill. Sep. 5, 2025).

Ms. Johnson's reliance on Mr. Sidhu is even more misplaced. Ms. Johnson relies on Mr. Sidhu to opine that " ████████████████████████████████████████████████████████████████████████████████████████████ " and that, " ████████████████████████████████████ ████████████████████████████████████████ " Ex. 5, Johnson Rep. ¶156 & FN 303, ¶152 & FN 294. But Mr. Sidhu testified that ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Ex. 19, Sidhu Dep., 190:10-192:5. Ms. Johnson therefore has no factual basis for her opinion, as Mr. Sidhu disclaims any knowledge of ACRCloud's development process or costs.

Despite their obligation to do so, Dr. Anderson, Mr. Sidhu, and Ms. Johnson fail to identify facts sufficient to show ████████ "equipment, know-how, or experience" in implementing a redesigned ACR system or that the alternative "was more than theoretically possible" and "available to be marketed." *See Asetek Danmark*, 2022 WL 21306657, at *30 (internal

19

quotations omitted); *see also Visteon Glob. Tech., Inc. v. Garmin Int'l, Inc.*, 903 F. Supp. 2d 521, 528 (E.D. Mich. 2012); *Power Integrations v. Fairchild Semiconductor*, 711 F.3d 1348, 1373 (Fed. Cir. 2013); *Ace Pallet Corp.*, 764 F. App'x at 198 ("To be admissible, expert testimony must be accompanied by a sufficient factual foundation.") (internal quotations omitted). Thus, the proffered opinions relating to what ▮▮▮▮▮ could or would have done in May 2018 are highly speculative and inappropriate. The Court should exclude any opinions relating to this supposed ▮▮▮▮▮-developed alternative, including opinions in Anderson Rebuttal Rep. ¶101, Anderson Supp. Rebuttal Rep. ¶124, Johnson Rep. ¶¶11-12, 13 (bullet 2), 103, 149, 151-156, 172-73, 232 (bullet 8), 235-36, 239, 243 (bullet 2), 251-55, 269-70, and 281, Figures 1, 12, and 16, and Exhibits 3.0, 4.0, 6.3, and 18.0 and Supp. Johnson Rep. ¶¶251, 253, 269.

         (ii)     **TVision Does Not Show That an ▮▮▮▮▮ Redesign Would Not Infringe Third-Party Patents (*i.e.*, That It Would Be "Available")**

A proposed alternative is not "available" if it infringes a third-party patent. *See Astrazeneca*, 782 F.3d at 1340-41. TVision has not shown that a potential ▮▮▮▮▮ alternative would not infringe any third-party patents.

As explained above, Dr. Anderson's only comment about ▮▮▮▮▮ ability to redesign its systems is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 3, Anderson Supp. Rebuttal Rep. ¶124. Although he does not mention it, his referenced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ come from the Wang 2003[8] reference, which he cites in his opinion on the posited TVision internally developed alternative (discussed below). *See* Ex. 14, Anderson Rebuttal Rep. ¶101; Ex. 3, Anderson Supp. Rebuttal Rep. ¶125. The Wang 2003 technology is

---

[8] Avery Wang, An Industrial Strength Audio Search Algorithm, Proceeding of 4th International Conference on Music Information Retrieval, Baltimore (2003) ("Wang 2003").

protected by the Wang patent, which expired in January 2024, long after the May 2018

hypothetical negotiation. Ex. 16, Wang patent, Face; Ex. 8, Kyriakakis Reply Rep. ¶161.[9] Dr.

Anderson does not compare his thinly-described redesign with the Wang patent's claims or

explain how any such hypothetical alternative would avoid using the patented Wang technology.

Thus, TVision's experts fail to establish that the proposed ▮▮▮▮▮ redesign would not

infringe the Wang Patent. *Astrazeneca*, 782 F.3d at 1340-41 ("The patents held by [a third party]

were designed to protect its formulation. From that fact, the district court could reasonably infer

that the [third party] formulation was not available to [defendant] as a non-infringing alternative.

[Defendant's] conclusory assertion that it could have used [third party's] formulation without

infringing [third party's] patents does not suffice to overcome that inference").

Moreover, Dr. Anderson makes no attempt to determine whether his proposed redesign

would infringe other patents in this space—including those owned by companies he cites as

possible third-party alternatives. *See e.g.*, Ex. 36, https://www.mufin.com/ ("Mufin is a leading

expert for audio identification and music recommendation software solutions powered by its own

patented advanced audio fingerprinting technology."); Ex. 37, https://sourcedigital.com/ ("Our

globally patented technology measures every interaction, understands every viewer, and elevates

engagement while seamlessly unlocking new revenue streams."); Ex. 38,

https://sourcedigital.com/solutions/for-acr/whisper/ ("Patented energy region detection for

unparalleled accuracy").

Thus, the proposed ▮▮▮▮▮ alternative was not "available" at the time of the

hypothetical negotiation because Dr. Anderson does not satisfy TVision's burden to show that

---

[9] Dr. Anderson acknowledges that the Wang patent covers the technology in Wang 2003 in his
opinion relating to the posited TVision internal alternative. *See* Ex. 3, Anderson Supp. Rebuttal
Rep. ¶125.

his (sparingly described) variation on the Wang 2003 technology avoids the Wang patent or other patents in this space. For this reason, the Court should exclude all opinions relating to or relying on an ███████-developed alternative, including Anderson Rebuttal Rep. ¶101, Anderson Supp. Rebuttal Rep. ¶124, Johnson Rep. ¶¶11-12, 13 (bullet 2), 103, 149, 151-56, 172-73, 232 (bullet 8), 235-36, 239, 243 (bullet 2), 251-55, 269-70, and 281, Figures 1, 12, and 16, Exhibits 3.0, 4.0, 6.3, and 18.0, and Supp. Johnson Rep. ¶¶251, 253, 269.

> **b.     TVision Lacks Any Evidence That an ███████ Redesign Would Be Acceptable**

The Court should exclude TVision's experts' opinions regarding a potential ███████ redesign for the additional reason that there is no evidence that such a redesign would be "acceptable." *See WhereverTV*, 2022 WL 2751752, at *7 ("[A]cceptability must [] be substantiated with record evidence."); *Webasto Thermo & Comfort N. Am., Inc. v. BestTop, Inc.*, No. 16-cv-13456, 2019 WL 3334563, at *5 (E.D. Mich. Jul. 25, 2019); *Sherwin-Williams*, 2020 WL 1283465, at *9; *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1346 (Fed. Cir. 2011). In particular, TVision's experts do not opine that an ███████ redesign would perform as well as the infringing ███████ system or any other system or that it would be good enough to substitute for the infringing technology. Ex. 5, Johnson Report ¶¶151-56; Ex. 14, Anderson Rebuttal Rep. ¶101; Ex. 3, Anderson Supp. Rebuttal Rep. ¶124. For example, Dr. Anderson opines that an alternative "███████████████████████" not that it would be acceptable. *See* Ex. 3, Anderson Supp. Rebuttal Rep. ¶124. Nor does Ms. Johnson say that such a system would be acceptable either. *See generally* Ex. 5, Johnson Rep. ¶¶151-56.

TVision has therefore failed to meet its burden to show that a non-existent ███████ redesign would be an acceptable alternative. *See* Fed. R. Evid. 702; *see also Webasto Thermo*, 2019 WL 3334563, at *5; *Sherwin-Williams*, 2020 WL 1283465, at *9. The Court should

therefore exclude opinions relying on an ███████ redesign, including opinions in Johnson Rep. ¶¶11-12, 13 (bullet 2), 103, 149, 151-56, 172-73, 232 (bullet 8), 235-36, 239, 243 (bullet 2), 251-55, 269-70, and 281, Figures 1, 12, and 16, Exhibits 3.0, 4.0, 6.3, and 18.0, Supp. Johnson Rep. ¶¶251, 253, 269, Anderson Rebuttal Rep. ¶101, and Anderson Supp. Rebuttal Rep. ¶124.

## 2. TVision's Experts' Opinions About a Proposed TVision-Internal Alternative Should Be Excluded

TVision's experts contend that TVision itself could have developed an ACR system as an alternative to the infringing technology. Yet they have not satisfied their burden to show that TVision could develop an acceptable, non-infringing alternative and that it could have done so by May 2018.

### a. Ms. Johnson and Dr. Anderson's Opinions About a TVision-Developed Alternative Should be Excluded Because They Rely on Mr. Sidhu, Who Is Improperly Acting as an Expert

Both Dr. Anderson and Ms. Johnson base their opinions about TVision's ability and cost to develop an alternative on interviews with Mr. Sidhu, TVision's Chief Technology Officer. Ex. 14, Anderson Rebuttal Rep. ¶103; Ex. 3, Anderson Supp. Rebuttal Rep. ¶126; Ex. 5, Johnson Rep. ¶167. But Mr. Sidhu does not satisfy the requirements of Rule 701, which concerns opinion testimony by non-expert witnesses, or Rule 702, which concerns opinion testimony by expert witnesses.

Mr. Sidhu does not satisfy the requirements of Rule 701, which limit opinion testimony by lay witnesses to testimony that is "(a) rationally based on the witness's perception; . . . and (c) *not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701 (emphasis added). In other words, "lay testimony must 'result[ ] from a process of reasoning familiar in everyday life,' as opposed to a process 'which can be mastered only by specialists in the field.'" *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 80-81

23

(3rd Cir. 2009) (quoting Notes to 2000 Amendments to Fed. R. Evid. 701); *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 146 (D. Del. 2013) (limiting lay witness to testimony based on "personal knowledge"). "The Third Circuit and other courts have noted the global preclusion of any kind of lay opinion on specialized or technical subjects." *McCrary v. N.J. Transit Rail Operations, Inc.*, No. 05-88, 2008 WL 2885872, at *3 (D.N.J July 23, 2008).[10]

Mr. Sidhu's opinions, upon which Ms. Johnson and Dr. Anderson rely, do not meet the requirements of Rule 701 because the opinions do not rely on Mr. Sidhu's personal perception of the development time and effort for TVision to create an ACR system; rather, the opinions rely on his alleged scientific and technical expertise in software development. *See* Ex. 19, Sidhu Dep. 246:2-8; *Safeguard Scis., Inc. v. Saints Cap. Dakota, L.P.*, C.A. No. 09-380-RGA, 2013 WL 12158979, at *1 (D. Del. Mar. 28, 2013) (Excluding testimony because the witness's "estimates and calculations are not based on his personal knowledge, and could only be based on technical or specialized knowledge within the scope of Fed. R. Evid. 702 (assuming he has such knowledge)."). This is evident from Ms. Johnson's testimony that ███████████████████
███████████████████████████████████████████████

---

[10] In *EMC Corp. v. Pure Storage, Inc.*, Judge Andrews allowed lay testimony about "specialized knowledge" but relied for its holding on a Third Circuit case that predates the 2000 amendment to Rule 701 that bars lay witnesses from testifying about "specialized knowledge." 154 F. Supp. 3d 81, 115 (D. Del. 2016) (Andrews, J.) (citing *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1201 (3d Cir.1995)). The Notes for that amendment expressly cite *Asplundh* as inconsistent with the amended rule. *See* Fed. R. Evid. 701, Advisory Comm. Notes, 2000 Amendments. Nielsen respectfully asks the Court not to follow *EMC Corp.* or any other cases that rely on *Asplundh* as inconsistent with the current rule. *See Estate of Knoster*, 200 F. App'x. 106, 111 n.3 (3d Cir. 2006) (holding that the new rule supersedes *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1193 (3d Cir. 1995)); *Collins v. Prudential Inv. & Ret. Servs.*, 119 F. App'x 371, 379-80 (3d Cir. 2005) (holding that the 2000 "amendment added a new requirement for admissibility, subsection (c). Rule 701(c) provides that if a witness is not testifying an as expert, his/her opinion testimony can not be 'based on scientific, technical, or other specialized forms of knowledge within the scope of Rule 702,' i.e., the rule governing admissibility of expert testimony.").

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ Ex. 12, Johnson Dep., 212:7-14. Similarly, Mr. Sidhu testified that ███

████████████████████████████████████████████████

████████████████████████████████████ Ex. 19, Sidhu

Dep. 246:2-8. Accordingly, Mr. Sidhu has no personal knowledge relating to the cost and

development time for an ACR development project. *See* Fed. R. Evid. 701(a).

Mr. Sidhu's opinions regarding ████████████ are the type of opinions that are

properly rendered by experts under FRE 702—not the type of opinions that are properly rendered

by lay witnesses under FRE 701. Ms. Johnson, by her own admission, ████████████

████████████████████████████████████████████████

████████████, which Rule 701(c) expressly bars. But TVision has not provided the

required disclosures for Mr. Sidhu to be an employee-expert under Rule 702 and Federal Rule of

Civil Procedure 26(a)(2)(C).

The Court should therefore exclude Dr. Anderson and Ms. Johnson's improper reliance on

Mr. Sidhu's expert opinions, including opinions in Johnson Rep. ¶¶11-12, 13 (bullet 2), 149

(bullet 3), 150, 167-168, 172-73, 232 (bullet 8), 235-36, 243 (bullet 2), 269-70, and 281, Figures

1, 12, 16, and 21, Exhibits 3.0-3.1, 6.0-6.2, 18.0, and 18.3; Supp. Johnson Rep. ¶269; Anderson

Rebuttal Rep. ¶¶102-03; and Anderson Supp. Rebuttal Rep. ¶¶125-26.

> **b.    Ms. Johnson and Dr. Anderson's Opinions About a TVision-Developed Alternative Should Be Excluded Because They Rely on Mr. Sidhu, Who Does Not Have Requisite Expertise**

As explained above, Dr. Anderson and Ms. Johnson base their opinions about whether

TVision could have developed an acceptable non-infringing alternative (and what the associated

cost would be) entirely on interviews with Mr. Sidhu. Ex. 5, Johnson Rep. ¶167 and Exhibits

25

6.0-6.3; Ex. 14, Anderson Rebuttal Rep. ¶103; Ex. 3, Anderson Supp. Rebuttal Rep. ¶126. However, in addition to the issues with FRE 701 and 702 discussed above, Mr. Sidhu lacks the relevant experience, knowledge, and expertise to opine on the issue in the first place.

First, as Ms. Johnson admitted in her deposition, ███████████████████

████████████████████████████████████████████████████████████

███████. Ex. 12, Johnson Dep. at 78:15-79:1. Indeed, ███████████████████

███████████████████████████, which TVision is not permitted to use in this case. *See* Ex. 19, Sidhu Dep. 194:19-21, 201:9-16; D.I. No. 180 (Nielsen can "move forward in a world where Defendant makes its hypothetical ACR project argument, and all parties would not be permitted in any way to reference Project Macro (even as a 'reasonableness check' against Defendant's experts' assumptions)").

Second, as Dr. Anderson admitted in his deposition, ███████████████████

████████████████████████████████████████████████████████████

███████ Ex. 34, Anderson Dep. 181:13-182:16.[11] But Mr. Sidhu, upon whom Dr. Anderson

---

[11] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████

and Ms. Johnson rely for such estimates, ████████████████████████████

███████████████████████████████████████████████████ Ex. 19, Sidhu

Dep. 194:22-195:5, 196:2-19.

Accordingly, the Court should exclude Ms. Johnson and Dr. Anderson's opinions on this

issue, including Johnson Rep. ¶¶ 11-12, 13 (bullet 2), 149 (bullet 3), 150, 167-68, 172-73, 232

(bullet 8), 235-36, 243 (bullet 2), 269-70, and 281, Figures 1, 12, 16, and 21, Exhibits 3.0-3.1,

6.0-6.2, 18.0, and 18.3; Supp. Johnson Rep. ¶269; Anderson Rebuttal Rep. ¶¶102-03; and

Anderson Supp. Rebuttal Rep. ¶¶125-26.

> **c.    Ms. Johnson and Dr. Anderson's Opinions About a TVision-Developed Alternative Should be Excluded Because They Have Not Shown That the Proposed TVision-Developed Alternative Would Have Been Available**

TVision's experts have not carried their burden to prove that their posited TVision-internal

alternative was "available." It is undisputed that TVision had not, as of the time of the

hypothetical negotiation (or ever), developed a production-ready non-infringing ACR system.

Thus, TVision must overcome the inference that such a theoretical product was not available,

which it has not done. *See Sherwin-Williams*, 2020 WL 1283465, at *9; *Asetek Danmark*, 2022

WL 21306657, at *30. TVision and its experts have not, as they are required to do, identified

facts showing that TVision had the "necessary materials, equipment, know-how, and experience

to make an alternative product during the relevant time frame" and that the alternative "was more

than theoretically possible" and "available to be marketed." *See Asetek Danmark*, 2022 WL

21306657, at *30 (internal quotations omitted); *Visteon Glob.*, 903 F. Supp. 2d at 528.

Instead, TVision's experts offer only speculation. Ms. Johnson relies on Mr. Sidhu's *ipse*

*dixit* "███████████████████████████████████████████████" Ex. 5,

Johnson Rep. ¶167. This conclusory statement is legally insufficient because it does not provide

27

any details about what those "███████████████" are or when or how TVision acquired them. *See WhereverTV*, 2022 WL 2751752, at \*7; *Webasto Thermo*, 2019 WL 3334563, at \*5; *Ace Pallet*, 764 F. App'x at 198 ("To be admissible, expert testimony must be 'accompanied by a sufficient factual foundation.'").

Dr. Anderson also fails to identify evidence showing how TVision would develop an alternative, stating only as follows: "



█████████████████" Ex. 14, Anderson Rebuttal Rep. ¶102; Ex. 3, Anderson Supp. Rebuttal Rep. ¶125. This opinion is so vague and speculative that Nielsen has no way to determine what form such an alternative ("████████████████████████ █████████") would take or whether or not the supposed alternative would infringe the patent in suit.

Consequently, neither expert cites any factual foundation to overcome the inference that this posited alternative was not available, and the Court should exclude their opinions on the issue, including Johnson Rep. ¶¶11-12, 13 (bullet 2), 149 (bullet 3), 150, 167-68, 172-73, 232 (bullet 8), 235-36, 243 (bullet 2), 269-70, and 281, Figures 1, 12, 16, and 21, Exhibits 3.0-3.1, 6.0-6.2, 18.0, and 18.3; Supp. Johnson Rep. ¶269; Anderson Rebuttal Rep. ¶¶102-03; and Anderson Supp. Rebuttal Rep. ¶¶125-26.

       **d.**       **Ms. Johnson and Dr. Anderson's Opinions About a TVision-Developed Alternative Should be Excluded Because They Do Not Show That a TVision-Internal Design Would Not Infringe Third-Party Patents**

TVision's experts do not show that their proposed internally-developed system would not infringe the Wang patent or other companies' patents, which TVision must do to show that the system was "available." *See Astrazeneca*, 782 F.3d at 1340-41.

Ms. Johnson alleges that ██████████████████████████████████████████ ██████████████████████████████████████████████████████ *See* Ex. 5, Johnson Rep. ¶167; Ex. 14, Anderson Rebuttal Rep. ¶¶101-02; Ex. 3, Anderson Supp. Rebuttal Rep. ¶¶125-26. Although she does not identify any such "████████████ ██████" giving her the benefit of the doubt, it can be assumed that she meant to reference the Wang 2003 reference, which is the only "███████████████████████████ ██████" that TVision identifies anywhere in its witnesses' depositions[12] or its expert reports. *See* Ex. 14, Anderson Rebuttal Rep. ¶101; Ex.3, Anderson Supp. Rebuttal Rep. ¶125. But as TVision's technical expert acknowledges, the Wang 2003 fingerprinting system was patent-protected until January 2024. *See* Ex. 14, Anderson Supp. Rebuttal Rep. ¶101; Ex. 3, Anderson Supp. Rebuttal Rep. ¶125; Ex. 16, Wang patent, Face; Ex. 8, Kyriakakis Reply Rep. ¶161.

Dr. Anderson makes a conclusory attempt to distinguish the alleged TVision-internal alternative from the Wang patent by stating that "██████████████████████ ████████████████████████████████████████████████ █████████████████████████" Ex. 14, Anderson Rebuttal Rep. ¶ 102; Ex. 3, Anderson Supp. Rebuttal Rep. ¶125 (emphasis added), but he does not identify the referenced

_____

[12] ██████████████████████████████████████████ Ex. 19, Sidhu Dep., 217:21-218:15. ████████████████████████ ████████████ *Id.*, 219:1-4.

"███████████" or compare any alternative to the Wang patent's claims. Nor does Dr. Anderson opine whether this "███████████" would infringe other patents in this space, including patents held by companies he cites elsewhere in his report. *See e.g.*, Ex. 36, https://www.mufin.com; Ex. 37, https://sourcedigital.com/; Ex. 38, https://sourcedigital.com/solutions/for-acr/whisper/. Thus, he fails to identify evidence sufficient to overcome the inference that the posited alternative was not available. *See Asetek Danmark*, 2022 WL 21306657, at *30; *Visteon Glob.*, 903 F. Supp. 2d at 529. Ms. Johnson relies entirely on Dr. Anderson's and Mr. Sidhu's opinions and adds nothing of substance. Ex. 5, Johnson Rep. ¶167.

Ms. Johnson and Dr. Anderson thus fail to provide foundation for their opinions that an internally-developed ACR system would be an available alternative. *Astrazeneca*, 782 F.3d at 1340-41; *Sherwin-Williams*, 2020 WL 1283465, at *9 ("Speculation that [defendant] might have been able to design a non-infringing alternative based on the [third-party] patent will also not suffice."); *WhereverTV*, 2022 WL 2751752, at *7; *Magnetar Techs.*, 2014 WL 529983, at *12 (Excluding expert opinion that "fail[ed] to demonstrate how he applied any methodology to the facts, contrary to the requirements of Daubert and Fed. R. Evid. 702"). The Court should exclude both Ms. Johnson and Dr. Anderson's opinions about this proposed alternative, including those opinions in Johnson Rep. ¶¶11-12, 13 (bullet 2), 149 (bullet 3), 150, 167-68, 172-73, 232 (bullet 8), 235-36, 243 (bullet 2), 269-70, and 281, Figures 1, 12, 16, and 21, Exhibits 3.0-3.1, 6.0-6.2, 18.0, and 18.3; Supp. Johnson Rep. ¶269; Anderson Rebuttal Rep. ¶¶102-03; and Anderson Supp. Rebuttal Rep. ¶¶125-26.

     **e.**      **Ms. Johnson and Dr. Anderson's Opinions About a TVision-Developed Alternative Should be Excluded Because They Lack Any Evidence That Its Proposed Internally-Developed Alternative System Would be Acceptable**

TVision's experts do not offer any opinion or identify any evidence that an internally-designed ACR system would perform as well as the infringing ACRCloud system or any other system, how the re-design would perform in general, or whether it would be good enough to substitute for the infringing technology. Ex. 5, Johnson Report ¶¶167-68; Ex. 14, Anderson Rebuttal Rep. ¶¶102-03; Ex. 3, Anderson Supp. Rebuttal Rep. ¶¶125-26. In fact, they provide no details about how such a system would work. TVision's experts' opinions are not reliable because an alternative's "availability and acceptability must [] be substantiated with record evidence." *WhereverTV*, 2022 WL 2751752, at *7; *Webasto Thermo*, 2019 WL 3334563, at *5; *Sherwin-Williams*, 2020 WL 1283465, at *9; *Spectralytics*, 649 F.3d at 1346.

TVision's technical expert, Dr. Anderson, only opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but offers no opinion about the effectiveness of his proposed (and cursorily described) change to avoid the Wang patent. *See* Ex. 14, Anderson Rebuttal Rep. Anderson Rebuttal Rep. ¶¶102-03; Ex. 3, Anderson Supp. Rebuttal Rep. ¶¶125-26. Nor does Ms. Johnson offer any opinion that such a system would be acceptable. *See generally* Ex. 5, Johnson Rep. ¶¶167-68.

Thus, TVision has failed to meet its burden to show that its speculative internally-developed redesign of Wang 2003 would be an acceptable alternative. *See Webasto Thermo*, 2019 WL 3334563, at *5; *Sherwin-Williams*, 2020 WL 1283465, at *9. The Court should therefore exclude the opinions in Johnson Rep. ¶¶11-12, 13 (bullet 2), 149 (bullet 3), 150, 167-68, 172-73, 232 (bullet 8), 235-36, 243 (bullet 2), 269-70, and 281, Figures 1, 12, 16, and 21, Exhibits 3.0-3.1, 6.0-6.2, 18.0, and 18.3; Supp. Johnson Rep. ¶269; Anderson Rebuttal Rep.

¶¶102-03; and Anderson Supp. Rebuttal Rep. ¶¶125-26.

> **f.    Ms. Johnson and Dr. Anderson's Opinions About a TVision-Developed Alternative Should be Excluded Because They Do Not Assert That TVision Could Have Developed an Alternative in May 2018**

Beyond their failure to show that a TVision developed alternative was ever available or acceptable, Dr. Anderson and Ms. Johnson do not even assert that TVision could have developed an alternative that would have been available at the time of the May 2018 hypothetical negotiation. *See Astrazeneca AB*, 782 F.3d at 1340-41 (affirming "examin[ation of] alleged non-infringing alternatives and conclu[sion] that none *were available to [defendant] as of the beginning of [defendant]'s infringement*.") (emphasis added). Dr. Anderson's opinion that ███████████████████████████████████ does not show that it could have done so in May 2018. *See* Ex. 14, Anderson Rebuttal Rep. ¶¶102-03; Ex. 3, Anderson Supp. Rebuttal Rep. ¶¶125-26. Ms. Johnson similarly states, using the present tense, as follows: "████████ ██████████████████████████████████████ ████████████" Ex. 5, Johnson Rep. ¶167 (emphasis added). Ms. Johnson further admits in her deposition testimony that Mr. Sidhu, TVision's CTO, had no "████████ ██████████████" ███████████████████████████████████ ██████ Ex. 12, Johnson Dep., 78:15-79:1. She also relies on ███████████████ ███████████████████████████████████████████ ███████████████████████████ Ex. 19, Sidhu Dep., 194:11-14, 213:3-22, 214:1-12, 234:15-18, 238:20-240:19, 241:3-12.

Dr. Anderson and Ms. Johnson therefore fail even to assert that TVision could have developed an alternative that would have been available at the time of the hypothetical negotiation in May 2018. Accordingly, the Court should exclude their opinions about this

alternative, including opinions in Johnson Rep. ¶¶ 11-12, 13 (bullet 2), 149 (bullet 3), 150, 167-68, 172-73, 232 (bullet 8), 235-36, 243 (bullet 2), 269-70, and 281, Figures 1, 12, 16, and 21, Exhibits 3.0-3.1, 6.0-6.2, 18.0, and 18.3 and Supp. Johnson Rep. ¶269; Anderson Rebuttal Rep. ¶¶102-03; and Anderson Supp. Rebuttal Rep. ¶¶125-26.

### 3. Opinions about Supposed Third-Party Alternatives Should Be Excluded

TVision's experts contend that TVision could have used various third party ACR systems instead of the infringing ▮▮▮▮▮▮ system. TVision and its experts appear to have listed any ACR company they have heard of, no matter how little they know about it. Ms. Johnson and Dr. Anderson's opinions should be excluded for failure to show that any of these third-party products were available and acceptable at the time of the hypothetical negotiation in May 2018.

### a. TVision's Proposed Third Party ACR Solutions (MRL, Axwave, Mufin, and Source Digital) Are Not Available and Acceptable Alternatives

Ms. Johnson and Dr. Anderson speculate that certain third party ACR systems could be alternatives to the patented technology used in the ▮▮▮▮▮▮ system. But TVision's experts fail to identify any evidence to support a claim that these third-party ACR systems would have been available, acceptable alternatives to the patented system. As explained below, their opinions about the systems from Mobile Research Labs ("MRL"), Axwave, Mufin, and Source Digital should be excluded.

### (i) Mobile Research Labs ("MRL") Is Not an Available or Acceptable Alternative

Dr. Anderson and Ms. Johnson identify a MRL ACR product as a possible alternative to the infringing technology. Ex. 14, Anderson Rebuttal Rep. ¶¶107-09; Ex. 3, Anderson Supp. Rebuttal Rep. ¶¶130-32; Ex. 5, Johnson Rep. ¶¶157-60; Ex. 10, Supp. Johnson Rep. ¶¶159-60. They cite no facts supporting this opinion, and in fact, the evidence shows the opposite is true.

33



*See* Ex. 31, TVSN_NLSN_00645277-95 at 292; Ex. 6, Kyriakakis Op. Rep. ¶¶475-76. TVision's experts point to no evidence that ███████████████████████████████. *See* Ex. 5, Johnson Rep. ¶¶157-59; Ex. 10, Supp. Johnson Rep. ¶¶159-60; Ex. 3, Anderson Supp. Rebuttal Rep. ¶¶130-32; Ex. 14, Anderson Rebuttal Rep. ¶¶107-09; Ex. 8, Kyriakakis Reply Rep. ¶¶176-77. Indeed, Mr. Liu testified that ████████████████████████████ ██████████ Ex. 11, Liu Dep. 301:19-302:20.[13] Nor is there evidence TVision ever tested MRL's product in its devices. Ex. 11, Liu Dep. 300:20-301:18 (stating that ██████████ ██████).

Nor was the MRL system "available" at the time of the hypothetical negotiation. In fact, MRL has only ever operated with mobile operating systems such as Android and iOS, whereas TVision's panel devices have always used Windows and Linux based operating systems. *See* Ex. 6, Kyriakakis Op. Rep. ¶479; Ex. 8, Kyriakakis Reply Rep. ¶¶176-77. Ms. Johnson and Dr. Anderson do not address this issue or cite any evidence of how TVision would overcome that problem (such as whether the vendor would or could develop a product for a different platform). *See Visteon Glob.*, 903 F. Supp. 2d at 528 ("The alleged infringer . . . must establish that it was

---

[13] TVision's experts rely ██████████████████████ ██████████████████████ Ex. 5, Johnson Rep. ¶159; Ex. 10, Supp. Johnson Rep. ¶159; Ex. 3, Anderson Supp. Rebuttal Rep. ¶130. But Mr. Liu's testimony that ██ ██████████████████████████ is inconsistent with their conclusions. Moreover, there is no evidence that MRL offers a non-mobile product or that it could or would develop one, nor is there evidence that a non-mobile product would not have the same issues. *See* Ex. 6, Kyriakakis Op. Rep. ¶479; *see also* Ex. 39, MRL webpage; Liu Dep. Ex. 41.

more than 'theoretically possible,' and in fact 'available' to be marketed"). Thus, any opinions that MRL was "available" are improper speculation. *See* Fed. R. Evid. 702. Accordingly, Ms. Johnson's and Dr. Anderson's opinions regarding MRL should be excluded, including the opinions in Johnson Rep. ¶¶13 (bullet 2), 149-50, 157-60, 232 (bullet 8), 235-36, 239, 243 (bullet 2), 251-55, 269-70, 281, Figures 1, 11-12, 16, 21, and Exhibits 3.0-3.1, 5.0, 18.0, 18.2; Supp. Johnson Rep. ¶¶160, 251, 253, 269; Johnson Dep. 98:7-16, 99:2-100:6; Anderson Rebuttal Rep. ¶¶107-09; Anderson Supp. Rebuttal Rep. ¶¶130-32; and Anderson Dep. 173:17-22.

### (ii)    Axwave Is Not an Available, Acceptable Alternative

TVision's experts also propose that an ACR product from Axwave could substitute for the infringing system. But TVision's experts identify no evidence that the Axwave ACR product was available and acceptable in May of 2018. Ex. 5, Johnson Rep. ¶¶157-60; Ex. 10, Supp. Johnson Rep. ¶¶159-60;[14] Ex. 14, Anderson Rebuttal Rep. ¶106; Ex. 3, Anderson Supp. Rebuttal Rep. ¶129. In an attempt to demonstrate availability, Ms. Johnson indicates that ███████████

███████████████████████████████████

███████████████████████████████████

███████ Ex. 5, Johnson Rep. ¶158 & FN 313. However, the email chain she cites does not say that Axwave's product would work in TVision's environment, listing other environments but ***not*** TVision's. Ex. 41, TVSN_NLSN_00725382-386 at 382-383 ("███████████████████

███████████████████"); Ex. 6, Kyriakakis Op. Rep. ¶¶482-83.

Neither Ms. Johnson nor Dr. Anderson cites any evidence that an Axwave ACR product would be acceptable (or work at all) in TVision's technical environment. In fact, the record evidence shows the opposite, with the article Dr. Anderson cites describing "Axwave, [as] the

---

[14] Axwave was purchased by Samba, and Ms. Johnson refers to it by Samba in her report. *See* Ex. 5, Johnson Rep. ¶160; Ex. 10, Supp. Johnson Rep. ¶160.

leading *mobile* appcontent recognition experts." Ex. 18 (emphasis added). Neither Ms. Johnson nor Dr. Anderson identify any facts to show that the Axwave *mobile* solution would work in TVision's ███ and ███████████████ meters. Ex. 14, Anderson Rebuttal Rep. ¶106; Ex. 3, Anderson Supp. Rebuttal Rep. ¶129; Ex. 5, Johnson Rep. ¶159; Ex. 10, Supp. Johnson Rep. ¶159; Ex. 8, Kyriakakis Reply Rep. ¶¶173-74. Dr. Anderson even argues elsewhere that ███████████████████████████████████████ Ex. 14, Anderson Rebuttal Rep. ¶107; Ex. 3, Anderson Supp. Rebuttal Rep. ¶130. Dr. Anderson never explains why his concerns about mobile solutions are inapplicable to the Axwave system. Ex. 14, Anderson Rebuttal Rep. ¶106; Ex. 3, Anderson Supp. Rebuttal Rep. ¶129.

Furthermore, TVision has a process for determining the acceptability of an ACR solution, but neither its experts nor any TVision employee followed that process to demonstrate the acceptability of any Axwave system.[15] TVision's chief technology officer, Mr. Sidhu, testified that ███████████████████████████████████ *See* Ex. 19, Sidhu Dep. at 138:8-19. But despite TVision's established process for testing potential ACR solutions, Dr. Anderson identifies no evidence that either he or TVision tested any Axwave system. *See* Ex. 14, Anderson Rebuttal Rep. ¶¶104-10; Ex. 3, Anderson Supp. Rebuttal Rep. ¶¶127-33. Nor does Ms. Johnson cite any evidence of that. *See* Ex. 5, Johnson Rep. ¶¶157-66; Ex. 10, Supp. Johnson Rep. ¶¶159-60. Accordingly, neither Ms. Johnson nor Dr. Anderson have satisfied TVision's burden to show that any Axwave system is acceptable as measured by TVision's own acceptance process. *Magnetar Techs.*, 2014 WL 529983, at *12 (Excluding expert opinion that "fail[ed] to demonstrate how he applied any methodology to the facts, contrary to the requirements of

---

[15] Indeed, it is not even clear that TVision could have done so because Axwave's system is a mobile system that would not work at all in TVision's Linux and Windows technical environments.

Daubert and Fed. R. Evid. 702"); *Visteon Glob.*, 903 F. Supp. 2d at 528.

Thus, there is no evidence that Axwave's system is an available, acceptable alternative. The court should exclude Ms. Johnson and Dr. Anderson's opinions regarding Axwave, including Johnson Rep. ¶¶13 (bullet 2), 149-50, 157-60, 232 (bullet 8), 235-36, 239, 243 (bullet 2), 251-55, 269-70, 281, Figures 1, 11-12, 16, 21, and Exhibits 3.0-3.1, 5.0, 18.0, 18.2; Supp. Johnson Rep. ¶¶160, 251, 253, 269; Johnson Dep. 100:21-101:10; Anderson Rebuttal Rep. ¶¶107-09; Anderson Supp. Rebuttal Rep. ¶¶130-32; and Anderson Dep. 173:17-22.

### (iii)    Mufin Is Not an Available, Acceptable Alternative, Nor Are Ms. Johnson's Opinions About Its Cost Reliable

Ms. Johnson and Dr. Anderson cite no evidence that the Mufin ACR product would be available or acceptable. Ex. 5, Johnson Rep. ¶¶157-58, 160; Ex. 10, Supp. Johnson Rep. ¶160; Ex. 14, Anderson Rebuttal Rep. ¶109; Ex. 3, Anderson Supp. Rebuttal Rep. ¶132. Nor does any evidence support Ms. Johnson's estimates of the cost to TVision to use Mufin.

Ms. Johnson's opinion about the cost of using Mufin should be excluded because it ignores a major cost: the software itself. Ex. 11, Liu Dep. 317:2-20 (███████████████████ ████████████████████). Specifically, the proposal notes that ███████████ ██████████████████████████████████████████ Ex. 40, Liu Dep. Ex. 42, TVSN_NLSN_00952341-56 at 47 ("█████████████ ████████████████████████████████████ ████████████████████████████ ████████████████████"); Ex. 11, Liu Dep. 317:16-20 (█████████ ████████████████████████████ ████████████████████████████). Ms. Johnson created several exhibits purporting to ████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████ *See* Ex. 11, Liu Dep. 317:16-20. No record evidence identifies that cost, nor does Ms. Johnson purport to rely on any. Thus, Ms. Johnson essentially opined on TVision's cost of using Mufin's software, ***except for the cost of creating the software itself***. This crucial missing item means that her opinion about the cost of using Mufin as an alternative is not based on sufficient facts or data. It should be excluded.

Dr. Anderson's opinion is even worse. Rather than relying on the proposal or anything else, he simply offers the conclusory statement that "████████████████████████████ ████" Ex. 3, Anderson Supp. Rebuttal Rep. ¶132. For this assertion, he cites TVSN_NLSN_00662112–39 (Ex. 20), which is ████████████████████████████ that is not a proposal. It is not specific to TVision and does not contain any proposed terms.

And finally, as explained above, TVision has a test procedure for assessing the acceptability of an ACR system in its environment. But TVision never followed that test procedure for any Mufin product. Ex. 11, Liu Dep. 314:18-20.

Thus, TVision's experts do not identify evidence to satisfy TVision's burden of proof to show that Mufin's system was an available, acceptable alternative at the time of the hypothetical negotiation or that Ms. Johnson's calculations of the cost of using Mufin are based on sufficient facts. Ms. Johnson's and Dr. Anderson's opinions regarding Mufin should therefore be excluded, including the opinions in Johnson Rep. ¶¶13 (bullet 2), 149-50, 157-58, 160, 164, 232 (bullet 8), 235-36, 239, 243 (bullet 2), 251-55, 269-70, 281, Figures 1, 11-12, 16, 21, Exhibits 3.0, 5.0-5.4, 18.0, and 18.2; Supp. Johnson Rep. ¶¶160, 251, 253, 269; Anderson Rebuttal Rep. ¶109; Anderson Supp. Rebuttal Rep. ¶132.

**(iv)    Source Digital Is Not an Available, Acceptable Alternative**

Ms. Johnson and Dr. Anderson cite Source Digital as a possible ACR supplier for TVision but fail to identify any facts to support their opinions that this posited alternative was available at the time of the hypothetical negotiation. Dr. Anderson opines that " ███████████████████ ███████████████████████████████████████████ " citing TVSN_NLSN_00660739-772 at 746-762 (Ex. 21). Ex. 14, Anderson Rebuttal Rep. ¶109; Ex. 3, Anderson Supp. Rebuttal Rep. ¶132. Ms. Johnson cites the same document to support the same opinion. Ex. 5, Johnson Rep. ¶158. However, that document does not support the assertion that ███████████████████████████████████. In fact, this document is ██ ████████████████████████████████████████████. *See* Ex. 21, TVSN_NLSN_00660739–772 at 746–62. Ms. Johnson admits that █████████ ██████████████████████ Ex. 12, Johnson Dep. 102:11-14. And Mr. Liu testified that ████ ██████████████████████ Ex. 11, Liu Dep. 327:14-20. There is accordingly no evidence that Source Digital could or would have provided ACR services to TVision.

Moreover, as explained above, TVision has a test procedure for assessing the acceptability of an ACR system. But TVision never followed that test procedure for any Source Digital product. Ex. 11, Liu Dep. 327:21-328:2.

Thus, TVision's experts do not identify evidence to satisfy TVision's burden of proof to show that Source Digital's system is an available, acceptable alternative. Ms. Johnson's and Dr. Anderson's opinions regarding Source Digital should be excluded, including the opinions in Johnson Rep. ¶¶13 (bullet 2), 146, 149-50, 157-58, 160, 162, 232 (bullet 8), 235-36, 239, 243 (bullet 2), 251-55, 269-70, 281, Figures 1, 11-12, 16, 21, Exhibits 3.0, 5.0, 18.0, and 18.2; Supp. Johnson Rep. ¶¶160, 162, 251, 253, 269; Johnson Dep. 101:20-10, 102:15-22, 103:1-9, 113:21-

114:11; Anderson Rebuttal Rep. ¶109; Anderson Supp. Rebuttal Rep. ¶132.

**b.      TVision's Experts Opinions About Proposed Third-Party Alternatives for Which They Provide No Information Other Than Their Names Should Be Excluded**

Dr. Anderson and Ms. Johnson string cite several other companies, contending that they could provide an alternative ACR system. Ex. 14, Anderson Rebuttal Rep. ¶110; Ex. 3, Anderson Supp. Rebuttal Rep. ¶133; Ex. 5, Johnson Rep. ¶¶157, 160; Ex. 10, Supp. Johnson Rep. ¶160. For these companies, however, TVision's experts provide no information other than the companies' names—*i.e.*, they provide literally no facts supporting their opinions. All opinions regarding these purported alternatives should be excluded.

**(i)      "Answer" Is Not an Available, Acceptable Alternative**

Ms. Johnson identifies "Answer" as a potential source of an alternative to the infringing system with no more detail than this name.[16] Ex. 5, Johnson Rep. ¶157. The Court should exclude Ms. Johnson's opinions about the "Answer" product, including in Johnson Rep. ¶¶13 (bullet 2), 149-50, 157, 232 (bullet 8), 235-36, 239, 243 (bullet 2), 251-55, 269-70, 281, Figures 1, 11-12, 16, 21, Exhibits 3.0, 5.0, 18.0, and 18.2 and Supp. Johnson Rep. ¶¶160, 251, 253, 269.

**(ii)      Beatgrid Is Not an Available, Acceptable Alternative**

Ms. Johnson opines about "Beatgrid" in a string cite of supposedly possible alternatives, citing her conversation with Mr. Liu.[17] Ex. 5, Johnson Rep. ¶160 ("                    

                                                                                    

                                  "); Ex. 10, Supp. Johnson Rep. ¶160 (same). However, Mr. Liu

testified that                                                                                      

---

[16] Dr. Anderson ignores the "Answer" product completely.

[17] Dr. Anderson mentions nothing about Beatgrid.

[18] Beatgrid advertises its ACR product as "passive *mobile* ACR technology." Ex. 22, https://beatgrid.co/platform/acr-automatic-content-recognition-technology/ at 4-5 (emphasis

███████████████████████████ Ex. 11, Liu Dep. 334:15-21. Ms. Johnson's data-less opinion fails to support this company as an alternative. *See WhereverTV*, 2022 WL 2751752, at *7.

The Court should exclude Ms. Johnson's opinions about Beatgrid, including in Johnson Rep. ¶¶13 (bullet 2), 149-50, 160, 232 (bullet 8), 235-36, 239, 243 (bullet 2), 251-55, 269-70, 281, Figures 1, 11-12, 16, 21, Exhibits 3.0, 5.0, 18.0, and 18.2, and Supp. Johnson Rep. ¶¶160, 251, 253, 269.

### (iii) Audible Magic Is Not an Available, Acceptable Alternative

Dr. Anderson mentions Audible Magic only in passing.[19] Ex. 3, Anderson Sup. Rebuttal Rep. ¶133 ("██████████████████████████████████"). Dr. Anderson's conclusory mention of Audible Magic does not satisfy TVision's burden to show that Audible Magic offered an available, acceptable alternative.[20] His opinion in Anderson Rebuttal Rep. ¶110 and Anderson Supp. Rebuttal Rep. ¶133 should therefore be excluded.

### (iv) Dat-Track Is Not an Available, Acceptable Alternative

Dr. Anderson mentions Dat-Track only in passing. Ex. 14, Anderson Rebuttal Rep. ¶110; Ex. 3, Anderson Supp. Rebuttal Rep. ¶133. Ms. Johnson similarly mentions Dat-Track in passing and provides no information about its business or products. *See* Ex. 5, Johnson Rep. ¶¶157, 160; Ex. 10, Supp. Johnson Rep. ¶160. Both experts thus fail to offer evidence that this product would work in TVision's environment or that the Dat-Track product would be acceptable. Indeed, the

---

added). Ms. Johnson cites nothing to indicate that a mobile ACR platform would work in TVision's Linux and Windows-based (*i.e.,* non-mobile) panel meters. *See* Ex. 5, Johnson Rep. ¶160; Ex. 10, Supp. Johnson Rep. ¶160.

[19] Ms. Johnson completely ignores Audible Magic.

[20] Audible Magic advertises a product for recognizing music. *See* Ex. 24, https://www.audiblemagic.com/. Dr. Anderson never provides any opinion or cites any evidence that Audible Magic's product would work with television or in TVision's technical environment.

41

record shows that ███████████████████████████████████████████████████

███████████████████████████████████████████████ *See* Ex. 23,

TVSN_NLSN_00399618-19. ██████████████████████ Ex. 11, Liu Dep.

336:14-17.

TVision's experts cite no evidence showing that the Dat-Track ACR product was available in May 2018. *See* Ex. 6, Kyriakakis Op. Rep. ¶473; Ex, 8, Kyriakakis Reply Rep. ¶188; Ex. 5, Johnson Rep. ¶¶157, 160; Ex. 10, Supp. Johnson Rep. ¶160; Ex. 3, Anderson Supp. Rebuttal Rep. ¶133. To the contrary, evidence shows that Dat-Track's product was ***not*** available in May 2018, as Dat-Track's Internet domain was not registered until April 2019, nearly a year after the hypothetical negotiation. *See* Ex. 25, https://lookup.icann.org/en/lookup of www.dat-track.com); Ex. 6, Kyriakakis Op. Rep. ¶473. TVision's experts identify no evidence to satisfy TVision's burden to show that Dat-Track had an ACR product in May 2018 or could have made one available at that time.

Dat-Track's system is accordingly not an available, acceptable alternative. Ms. Johnson's and Dr. Anderson's opinions regarding Dat-Track should be excluded, including those in Johnson Rep. ¶¶13 (bullet 2), 149-50, 157, 160, 232 (bullet 8), 235-36, 239, 243 (bullet 2), 251-55, 269-70, 281, Figures 1, 11-12, 16, 21, Exhibits 3.0, 5.0, 18.0, and 18.2; Supp. Johnson Rep. ¶¶160, 251, 253, 269; Anderson Rebuttal Rep. ¶110; and Anderson Supp. Rebuttal Rep. ¶133.

**(v)    Soundhound Is Not an Available, Acceptable Alternative**

Dr. Anderson mentions Soundhound only in passing.[21] Ex. 14, Anderson Rebuttal Rep. ¶110; Ex. 3, Anderson Supp. Rebuttal Rep. ¶133. Soundhound advertises a voice recognition product for restaurant reservations and music recognition. *See* Ex. 26,

---

[21] Ms. Johnson completely ignores Soundhound.

https://www.soundhound.com. Dr. Anderson never provides any opinion or cites any evidence that Soundhound offers a product that would work with television or in TVision's technical environment. Ex. 14, Anderson Rebuttal Rep. ¶110; Ex. 3, Anderson Supp. Rebuttal Rep. ¶133.

Dr. Anderson's cursory mention of Soundhound does not satisfy TVision's burden to show Soundhound offered an available, acceptable alternative at the time of the hypothetical negotiation. His opinion should be excluded, including in Anderson Rebuttal Rep. ¶110 and Anderson Supp. Rebuttal Rep. ¶133.

> **(vi)    Civolution Is Not an Available, Acceptable Alternative**

Dr. Anderson mentions Civolution only in passing.[22] Ex. 14, Anderson Rebuttal Rep. ¶110; Ex. 3, Anderson Supp. Rebuttal Rep. ¶133. Civolution's ACR product was not available in May of 2018, as Civolution left the ACR market prior to that date. *See* Ex. 27, https://www.civolution.com/. Nor does Dr. Anderson offer any evidence or opinion that the Civolution product was otherwise available. In addition, Dr. Anderson never provides any opinion or cites any evidence that Civolution offered a product that would work with television or in TVision's technical environment. Dr. Anderson's cursory mention of Civolution does not satisfy TVision's burden, and his opinion in Anderson Rebuttal Rep. ¶110 and Anderson Supp. Reb. Rep. ¶133 should be excluded.

> **c.    Ms. Johnson and Dr. Anderson's Opinions on Alternatives Based on a TVision Witness's Unsupported Statement That the ACR Provider Market is "████████████████" with "████████████████" Should Be Excluded**

Ms. Johnson and Dr. Anderson improperly adopt a TVision employee's conclusory statement "that the ACR provider market is '████████████████' and with companies providing '████████████████'" Ex. 5, Johnson Rep. ¶157; Ex. 14, Anderson Rebuttal Rep. ¶105; Ex.

---

[22] Ms. Johnson completely ignores Civolution.

3, Anderson Supp. Rebuttal Rep. ¶128. This high-level, unsupported statement cannot support their opinions.

*WhereverTV* is instructive. There, the court excluded an expert's opinion that there were "many other alternative designs" where the expert did not identify "a *specific* proposed alternative design." 2022 WL 2751752, at *7 (emphasis added). "Without research-and-development documentation, deposition testimony, or sworn declarations attesting to the potential existence of these many other alternatives," the court explained, "a factfinder would be left to guess at [defendant]'s design and implementation capabilities." *Id.* The court found the expert's reference to "many other alternative designs" to be "misleading[,] as it creates the impression that [defendant] has identified with the requisite specificity, and substantiated with the appropriate evidence, certain acceptable and non-infringing alternatives," and that "no amount of cross-examination could cure the fundamental lack of reliability." *Id.*

As in *WhereverTV*, Ms. Johnson's and Dr. Anderson's opinions lack any foundation. TVision's witness's statement quoted above, adopted by TVision's experts, does not identify any specific ACR suppliers. Ex. 5, Johnson Rep. ¶157; Ex. 14, Anderson Rebuttal Rep. ¶105; Ex. 3, Anderson Supp. Rebuttal Rep. ¶128. Like the plaintiff in *WhereverTV*, Nielsen cannot challenge unidentified vendors with unidentified capabilities to determine if their unidentified products have sufficient availability and acceptability to be alternatives in TVision's technical environment at the time of the hypothetical negotiation. Moreover, TVision bears the burden of showing that an alternative exists, which this general statement does not satisfy. *Visteon Glob.*, 903 F. Supp. 2d at 528; *Smart Skins*, 2016 WL 4148091, at * 2.

Consequently, TVision's experts' opinions on this matter should be excluded, including in Johnson Rep. ¶¶150, 157, 169-70, 177, 223, 253; Supp. Johnson Rep. ¶253; Johnson Dep. 120:5-

44

18, 121:14-123:14; Anderson Rebuttal Rep. ¶¶104-05; and Anderson Supp. Rebuttal Rep. ¶¶127-28.

### 4.    Ms. Johnson's Opinion That a Reasonable Royalty Is Limited to the Cost of an Alternative Should Be Excluded

Ms. Johnson limits the proposed royalty from her "cost" model to the alleged cost of implementing proposed alternatives to the patented technology. According to Ms. Johnson, TVision's supposed alternatives would have cost between ███████████, which she then adopts as her proposed royalty. *See* Ex. 5, Johnson Rep., ¶¶11, 156, 166, 167, 173, 232, 235, and 238. She summarizes these conclusions in her Figure 16. Moreover, although she characterizes these numbers as the "Starting Point of the Hypothetical Negotiation," she finishes with them as well, performing no other analysis. *Compare* Ex. 5, Johnson Rep. Fig. 16, *with* ¶¶235-38. Indeed, she ignores the "Negotiation" part, focusing exclusively on TVision's motivations in the hypothetical negotiation and completely ignoring Nielsen's. *See, e.g.*, *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970) (Reasonable royalty analysis "requires consideration not only of the amount that a willing licensee would have paid for the patent license but also of the amount that a willing licensor would have accepted.").

The Federal Circuit has expressly held that a reasonable royalty may not be capped by the cost of a proposed alternative. *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) ("[Defendant] is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative."); *Enfora*, 167 F. Supp. 3d at 682. Because Ms. Johnson cannot opine contrary to law, her opinions relating to her "cost" approach should be excluded, including the opinions in Johnson Rep. ¶¶11-12, 13 (bullet 2), 103, 148-49, 156, 161-73, 232 (bullet 8), 235-36, 238-39, 243 (bullet 2), 251-55, 269-70, 281, Figures 1, 11, 12, 16, 21, Exhibits 3.0-3.1, 4.0, 5.0-5.4, 6.0-

6.3, 18.0 and Supp. Johnson Rep. ¶¶251, 253, 269. *See Baxalta*, 513 F. Supp. 3d at 448.

## IV.      Argument - Summary Judgment

### A.      The Patent Act Precludes TVision's Reverse Doctrine of Equivalents Defense.

TVision asserts the common-law doctrine of the reverse doctrine of equivalents ("RDOE") as a defense.[23] Ex. 3, Anderson Supp. Rebuttal Rep., ¶82. The Court should enter summary judgment that RDOE is not a viable defense to patent infringement.

RDOE is a rarely invoked, pre-1952 Patent Act common law doctrine that purports to allow an infringer to avoid liability, even where literal infringement is established, if the accused product is "so far changed in principle" from the patented invention that it performs a similar function in a substantially different way. *Steuben Foods, Inc. v. Shibuya Hoppman Corp.*, 127 F.4th 348, 356 (Fed. Cir. 2025). The Federal Circuit has repeatedly described RDOE as an "anachronistic exception, long mentioned but rarely applied" and has never affirmed a finding of noninfringement based on the doctrine. *Id.* (quoting *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1368 (Fed. Cir. 2002)).

The RDOE is not mentioned in the 1952 Patent Act, which expressly precludes uncodified infringement defenses. *See* 35 U.S.C. §271(a) ("***[e]xcept as otherwise provided in this title***, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent.") (emphasis added); *Steuben Foods*, 127 F.4th at 357 ("[Patentee] argues [the RDOE's] elimination [from the Patent Act] was intentional because RDOE was subsumed by 35 U.S.C. §112. . . . We find [patentee]'s arguments compelling, but need not decide whether the RDOE survived the 1952 Patent Act."); *Tate Access Floors*, 279 F.3d at 1368 ("Not once has this court affirmed a decision finding

---

[23] TVision did not plead RDOE as an affirmative defense in its answer. *See* ECF No. 11 at 9-10.

noninfringement based on the [RDOE]. And with good reason: when Congress enacted 35 U.S.C. § 112 . . . it imposed requirements . . . that are co-extensive with the broadest possible reach of the [RDOE].").

As explained above, in *Steuben Foods*, the Federal Circuit found the above arguments "compelling" but declined to decide whether the RDOE survived the 1952 Patent Act and instead ruled on other grounds. 127 F.4th at 357. Nielsen asks the Court to follow the Federal Circuit's lead and find that the 1952 Patent Act ended the common law RDOE. Because the 1952 Patent Act precludes the RDOE as an infringement defense, the Court should grant Nielsen summary judgment on TVision's RDOE defense.

### B.    The Court Should Enter Partial Summary Judgment That the Cheung Reference Is Not Prior Art and Thus Does Not Invalidate the Patent in Suit

TVision alleges that Cheung, U.S. Patent No. 8,468,183 ("the Cheung reference") (Ex. 28), invalidates various claims of the '889 patent under both anticipation and obviousness theories. Ex. 2, Anderson Supp. Op. Rep. ¶¶94-96. But TVision and its expert have failed to meet TVision's burden to prove that the Cheung reference is in fact prior art. *See Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1380 (Fed. Cir. 2017); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996) ("By challenging the validity of the '155 patent, [defendant] bore the burden of persuasion by clear and convincing evidence on all issues relating to the status of the [reference] as prior art."). Accordingly, the Court should enter partial summary judgment that the Cheung reference does not invalidate the patent in suit.

The '889 patent is entitled to priority as of its provisional filing date of August 18, 2004. Specifically, in the '889 patent's PCT parent (PCT/US2005/029623), the USPTO (as the International Searching Authority) found that "all the claims of the current application are

47

supported by the earlier [provisional] application whose priority has been claimed."[24] SOF 2, 3. "If the patent office has already found that an application supports an issued patent, the challenger bears both the burden of production and the burden of persuading the finder of fact, by clear and convincing evidence, that the patent is not entitled to the priority date of the earlier application." *Janssen Pharms., Inc. v. Tolmar, Inc.*, C.A. No. 21-1784-WCB, 2024 WL 834762, at *9 (D. Del. Feb. 26, 2024). Hence, because TVision has made no such showing, the '889 patent is entitled to priority as of August 18, 2004. SOF 4.

TVision must prove that the Cheung reference is prior art. The Cheung reference was filed on February 16, 2005, after the '889 patent's priority date of August 18, 2004.[25] SOF 1, 3-4. The Cheung reference, however, descends from a provisional application filed on February 26, 2004. SOF 1. Thus, the Cheung reference is only prior art to the patent in suit if it receives priority from its provisional application.

TVision and its expert assume that the Cheung reference receives such priority but have not satisfied their burden to ***prove*** that it does. The Federal Circuit has provided a very specific process for a reference to be accorded its provisional filing date, which TVision does not follow. In *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.,* 800 F.3d 1375 (Fed. Cir. 2015), the Federal Circuit held that "[a] provisional application's effectiveness as prior art depends on its written description support for the claims of the issued patent of which it was a provisional." *Id.* at 1382;

---

[24] The USPTO, operating as the International Searching Authority, found that "[t]he validity of the priority has been considered because a copy of the [provisional] application is received, and all the claims of the current application are supported by the [provisional] application whose priority has been claimed." *See* Ex. 42 at NLSN_TVISION0002762, 2764. The claims at issue in the PCT parent contain the same limitations as the asserted claims*. See* Exs. 42-44. Exhibit 43 contains the claims of the PCT application the USPTO evaluated for its priority determination. *See* Ex. 43. Exhibit 32 shows that the PCT claims contain the same limitations as the asserted claims of the '889 Patent. *See* Ex. 32.

[25] The '889 patent receives priority from its August 18, 2004 provisional filing. SOF 3.

*see also Purdue Pharma L.P. v. Iancu*, 767 F. App'x 918, 924 (Fed. Cir. 2019). In practice, to prove a reference is entitled to its provisional filing date, a party must "compare **the claims** of the [prior art] patent to the disclosure in the [] provisional application." *Dynamic Drinkware,* 800 F.3d at 1381 (emphasis in original); *see also Amgen*, 872 F.3d at 1380.

Accordingly, TVision must demonstrate that the Cheung reference is prior art by showing that the Cheung reference's claims read on the Cheung provisional application. Neither TVision nor its expert has made any attempt to prove that the Cheung reference is prior art. Nor do TVision's invalidity contentions contain any comparison of the Cheung provisional disclosure to the Cheung patent claims. *See* Ex. 29, TVision's Supplemental Initial Invalidity Contentions, served on April 10, 2023; Ex. 30, TVision's Final Invalidity Contentions, Served September 18, 2023, pp. 5, 7, Ex. A.8; Ex. 44, TVision's Supplemental Final Invalidity Contentions, Served June 21, 2025, pp. 3, Ex. A.8. Similarly, TVision's expert provides no such analysis. Ex. 2, Anderson Supp. Op. Rep. ¶¶102-07; Ex. 4, Anderson Supp. Reply Rep. ¶25. This is a complete failure of proof on TVision's part. Having failed to do a *Dynamic Drinkware* analysis, TVision can only assert that the Cheung reference is entitled to its non-provisional date of February 16, 2005, after the '889 patent's priority date.

The Court should enter partial summary judgment that the Cheung reference does not invalidate the '889 patent either by anticipation or obviousness (under any combination that includes the Cheung reference) because TVision failed to prove that the Cheung reference should receive priority as of the filing date of its provisional application, and thus that it is prior art to the patent in suit. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) ("Failure to prove the matter as required by the applicable standard means that the party with the burden of persuasion loses on that point"); *see also Dynamic Drinkware*, 800 F.3d at 1378-79.

49

## V.    Conclusion

Because the reverse doctrine of equivalents is not viable, Nielsen asks the Court to enter summary judgment on that defense. And because the Cheung reference has not been proven to be prior art, Nielsen asks the Court to grant partial summary judgment that it does not invalidate any claims of the patent in suit. In addition, Nielsen asks that the Court exclude TVision's experts' opinions on the matters discussed above.

|  |  |
|---|---|
|  | Respectfully submitted,<br><br>POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: |  |
|  | By:  */s/ David E. Moore* |
| Steven Yovits | David E. Moore (#3983) |
| Douglas Lewis | Bindu A. Palapura (#5370) |
| Constantine Koutsoubas | Hercules Plaza, 6th Floor |
| Jason P. Greenhut | 1313 N. Market Street |
| KELLEY DRYE & WARREN LLP | Wilmington, DE  19801 |
| 333 West Wacker Drive | Tel:  (302) 984-6000 |
| Chicago, IL 60606 | dmoore@potteranderson.com |
| Tel:  (312) 857-7070 | bpalapura@potteranderson.com |
|  |  |
| Clifford Katz | *Attorneys for Plaintiff The Nielsen Company* |
| KELLEY DRYE & WARREN LLP | *(US), LLC* |
| 3 World Trade Center |  |
| 175 Greenwich Street |  |
| New York, NY 10007 |  |
| Tel:  (212) 808-7800 |  |

Dated: November 19, 2025
12567935 / 14944.00004

PUBLIC VERSION
Dated: November 26, 2025

50