## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | C.A. No. 22-57-CJB |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| TVISION INSIGHTS, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

## THE NIELSEN COMPANY (US), LLC's REPLY IN SUPPORT OF
## ITS DAUBERT AND SUMMARY JUDGMENT MOTIONS

**TABLE OF CONTENTS**

I.    Reply - *Daubert* Motions ................................................................................. 1

    A.    The Court Should Exclude Ms. Johnson's Opinion Relating to ██████ ██████████ Because She Applies the Wrong Legal Standard ......................... 1

    B.    Ms. Johnson Identifies No Support for Her Opinion That the ████████ ██████ is "███████████████████████" ............................................... 2

    C.    Ms. Johnson's Opinion About a Device-Based Running Royalty is Conclusory and Factually Unsupported .................................................. 6

    D.    The Court Should Exclude Ms. Johnson's Royalty Opinions Relying on the ████████████ ............................................................................ 7

    E.    The Court Should Exclude Ms. Johnson's Royalty Opinions Based on Information That Existed Only After the Hypothetical Negotiation ............ 9

    F.    The Court Should Exclude TVision's Experts' Opinions Relating to Proposed Alternatives to the Infringing System ................................... 11

        1.    TVision Has the Burden of Proof ............................................ 11

        2.    Opinions About an ██████████████ Should be Excluded .............. 13

        3.    Opinions about a Proposed ██████████ Alternative Should Be Excluded ............................................................................. 16

        4.    Opinions about Supposed Third-Party Alternatives Should Be Excluded ............................................................................. 20

        5.    Opinions Based on a TVision Witness's Unsupported Statement That the ACR Provider Market is "████████████████" with "██████████████" Should Be Excluded ................................. 22

        6.    Ms. Johnson's Opinion That ████████████████████████ ████████████████████ Should Be Excluded ............................ 23

II.   Reply - Summary Judgment ............................................................................ 23

    A.    The Patent Act Precludes TVision's Reverse Doctrine of Equivalents Defense .................................................................................... 23

    B.    The Court Should Enter Partial Summary Judgment That the Cheung Reference is Not Prior Art and Thus Does Not Invalidate the Patent-in-Suit ......................................................................................... 23

III.  Conclusion .................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adasa Inc. v. Avery Dennison Corp.*,
  55 F.4th 900 (Fed. Cir. 2022), *cert denied,* 143 S.Ct. 2561 (2023)....................................8, 12

*Aqua Shield v. Inter Pool Cover Team*,
  774 F.3d 766 (Fed. Cir. 2014)..................................................................................................3

*Asetek Danmark A/S v. CMI USA Inc.*,
  852 F.3d 1352 (Fed. Cir. 2017)................................................................................................1

*Asetek Danmark A/S v. CoolIT Sys. Inc.*,
  No. 19-cv-410, 2022 WL 21306657 (N.D. Cal. Oct. 4, 2022) ................................1, 14, 15, 17

*Astrazeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015)..............................................................................................19

*Bradford Co. v. Conteyor N. Am., Inc.*,
  603 F.3d 1262 (Fed. Cir. 2010)..............................................................................................24

*Brita LP v. Int'l Trade Comm'n*,
  156 F.4th 1326 (Fed. Cir. 2025) ............................................................................................24

*Colby v. Hologic*,
  817 F. Supp. 204 (D. Mass. 1993) ...........................................................................................4

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
  No. 22-cv-00343, 2024 WL 1289821 (E.D. Tex. Mar. 26, 2024) ...........................................13

*Dabney v. Cty of Hayward*,
  No. C09-4116, 2011 WL 1131088 (N.D. Cal. Mar. 28, 2011)...............................................25

*DNA Genotek Inc. v. Spectrum Sols. L.L.C.*,
  671 F. Supp. 3d 1105 (Fed. Cir. 2023) ..................................................................................14

*Droplets, Inc. v. YAHOO! Inc.*,
  No. 12-cv-3733, 2021 WL 9038509 (N.D. Cal. 2021) ...........................................................12

*EcoFactor, Inc. v. Google LLC*,
  137 F.4th 1333 (Fed. Cir. 2025) (en banc) ..................................................................... *passim*

*Grain Processing Corp. v. American Maize-Prods. Co.*,
  185 F.3d 1341 (Fed. Cir. 1999)..............................................................................................12

*Honeywell Intern., Inc. v. Hamilton Sundstrand Corp.*,
    378 F. Supp. 2d 459 (D. Del. 2005) ..................................................................................10

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
    274 F.3d 1371 (Fed. Cir. 2001) .......................................................................................3, 4

*Janssen Pharms., Inc. v. Tolmar, Inc.*,
    718 F. Supp. 3d 394 (D. Del. 2024) .................................................................................24

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ..............................................................................................8

*Laserdynamics, Inc. v. Quanta Computer, Inc.*,
    No. 06-CV-348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011) .........................................18

*Liqwd, Inc. v. L'Oreal, USA, Inc.*,
    C.A. No. 17-14-JFB-SRF, 2019 WL 10252611 (D. Del. Jun. 25, 2019) ........................2, 7

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ..........................................................................................6

*M2M Sols. LLC v. Motorola Sols,, Inc.*,
    C.A. No. 12-33-RGA, 2016 WL 767900 (D. Del. Feb. 25, 2016) .....................................9

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008) ........................................................................................23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..........................................................................................................25

*McGoveran v. Amazon Web Servs., Inc.*,
    C.A. No. 20-1399, 2024 WL 4626253 (D. Del. Oct. 30, 2024) ......................................17

*Mentor Graphics Corp. v. Eve-USA, Inc*,
    851 F.3d 1275 (Fed. Cir. 2017) ........................................................................................12

*MiiCs & Partners, Inc. v. Funai Elec. Co.*,
    C.A. No. 14-804-RGA, 2017 WL 6268072 (D. Del. Dec. 7, 2017) ...............................1-2

*Noramco LLC v. Dishman USA, Inc.*,
    C.A. No. 21-1696, 2025 WL 2938761 (D. Del. Oct. 16, 2025) ......................................22

*On Track Innovations Ltd. v. T-Mobile USA, Inc.*,
    106 F. Supp. 3d 369 (S.D.N.Y. 2015) ..............................................................................10

*Optima Tobacco Corp. v. Flue-Cured Tobacco Growers, Inc.*,
    No. 16-cv-889, 2019 WL 4858848 (E.D.N.C. Sep. 30, 2019) ...........................................4

iii

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
   No. 14-cv-1352, 2019 WL 8138163 (C.D. Cal. Nov. 20, 2019) ..............................................8

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   875 F.3d 1369 (Fed. Cir. 2017)..................................................................................................12

*ResQNet.com, Inc. v. Lansa*,
   594 F.3d 860 (Fed. Cir. 2010)......................................................................................................8

*Robertson Transformer Co. v. General Elec. Co.*,
   No. 12 C 8094, 2016 WL 4417019 (N.D. Ill. Aug. 19, 2016)...........................................18, 21

*RSB Spine, LLC v. DePuy Synthes Sales, Inc.*,
   C.A. No. 19-1515-RGA, 2022 WL 17084156 (D. Del. Nov. 18, 2022)...............................12

*Sherwin Williams Co. v. PPG Indus., Inc.*,
   C.A. No. 17-1023, 2020 WL 1283465 (W.D. Pa. Mar. 18, 2023).....................................14, 15

*Steuben Food, Inc. v. Shibuya Hoppmann Corp.*,
   127 F.4th 348 (Fed. Cir. 2025) ...................................................................................................23

*Stoller Enterprises, Inc. v. Fine Agrochemicals Ltd.*,
   705 F. Supp. 3d 774 (S.D. Tex. 2023) .......................................................................................19

*Teen-Ed, Inc. v. Kimball Int'l, Inc.*,
   620 F.2d 399 (3d Cir. 1980)................................................................................................. 16-17

*United Services Automobile Assoc. v. PNC Bank NA*,
   No. 20-cv-319, 2022 WL 1453204 (E.D. Tex. Apr. 17, 2022)................................................19

*U.S. v. Sponaugle*,
   No. 22-2851, 2024 WL 4144069 (3d Cir. Sep. 11, 2024) .......................................................16

*Visteon Glob. Tech., Inc. v. Garmin Int'l, Inc.*,
   903 F. Supp. 2d 521 (E.D. Mich. 2012)...............................................................................15, 18

*WhereverTV, Inc. v. Comcast Cable Comm'ns, LLC*,
   No. 18-cv-529, 2022 WL 2751752 (M.D. Fla. Jul. 14, 2022) .................................................14

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(C) ..............................................................................................................16

Fed. R. Civ. P. 26(b) ....................................................................................................................2, 7

Fed. R. Civ. P. 56(e) ......................................................................................................................25

Fed. R. Evid. 701 ...........................................................................................................................16

Fed. R. Evid. 702 ..................................................................................................13, 16, 17, 18, 21

## I.    Reply - *Daubert* Motions

### A.    The Court Should Exclude Ms. Johnson's Opinion Relating to ██████ ███████████ Because She Applies the Wrong Legal Standard

Ms. Johnson "raised the *Panduit* factors" in her criticism of Dr. Keeley's opinions, D.I. 382 at 8. But the *Panduit* factors only apply to lost profit damages and, as TVision does not dispute, Nielsen is not pursuing lost profits damages in this case. *See* D.I. 382 at 8; D.I. 350 at 4. TVision makes two arguments as to why it nevertheless was appropriate for Ms. Johnson to analyze the *Panduit* factors: (1) Dr. Keeley's report is purportedly "██████████████████ ████████████████████████" D.I. 382 at 8, and (2) "Ms. Johson's [sic] critiques do not depend on *Panduit,* but rather on Dr. Keeley's failure to apportion." D.I. 382 at 10. Both arguments should be rejected and Ms. Johnson's opinions relying on *Panduit* should be excluded. *See* Ex. 5, Johnson Rep. ¶¶13 (bullet point 1), 241-42, 243 (bullet point 1), 244-48, 252, 260, 281; Ex. 12, Johnson Dep. 155:21-156:10.[1]

***First***, TVision argues that Ms. Johnson properly raised the *Panduit* factors because Dr. Keeley's references to ███████ are the "foundation of his reasonable royalty opinion." D.I. 382 at 8. But TVision cites no authority suggesting that a *Panduit* analysis ***ever*** is appropriate in a reasonable royalty opinion. And indeed it is not. TVision's attempts to distinguish *Asetek Danmark A/S v. CMI USA Inc.,* 852 F.3d 1352 (Fed. Cir. 2017)—which Nielsen cites in its opening brief—are unavailing. TVision does not dispute that *Asetek* instructs that *Panduit* does not apply to a reasonable royalty analysis. *Id.* at 1362; *see also MiiCs & Partners, Inc. v. Funai*

---

[1] TVision separately asserts that "Ms. Johnson's opinions in paragraphs 245-248, 260, and 281 should not be stricken because they do not recite or depend on *Panduit* at all; but rather address aspects of the reasonable royalty analysis that are relevant under Federal Circuit law." D.I. 382 at 11. This assertion is incorrect, as paragraph 245 expressly relies on *Panduit*: "███████████ ██████████████████████████████████████████████████" Ex. 5, Johnson Rep. ¶245. And paragraphs 246-48, 260, and 281 all refer to the purported *Panduit* "█████████████" described in paragraph 245. *Id.* ¶¶246-48, 260, 281.

*Elec. Co.*, C.A. No. 14-804-RGA, 2017 WL 6268072, at *4 (D. Del. Dec. 7, 2017) ("[The Court does not] agree with Defendants that [the expert] needed to establish 'but for' causation with respect to NEC's lost profits. There is no dispute that [the expert] does not offer an opinion on lost profits damages. Rather, he conducted a reasonable royalty analysis").

*Second*, TVision argues that "Ms. Johnson's recitation of the *Panduit* factors is relevant because Dr. Keeley fails to apportion." D.I. 382 at 9. Even assuming (contrary to law) that the *Panduit* factors are relevant to apportionment of a reasonable royalty, Ms. Johnson does not mention apportionment in her discussion of *Panduit*. *See* Ex. 5, Johnson Rep. ¶¶275-284. She mentions only lost profits in her discussion of *Panduit*. *See id.* ¶¶244, 245, 251, 252. Thus, regardless of whether the *Panduit* factors are pertinent to apportionment of a reasonable royalty, Ms. Johnson does not use the *Panduit* factors for that purpose—and TVision cannot revise her opinions in opposition to a *Daubert* motion. *Liqwd, Inc. v. L'Oreal, USA, Inc.,* C.A. No. 17-14-JFB-SRF, 2019 WL 10252611, at *1 (D. Del. Jun. 25, 2019) ("The Court 'will, as it must, limit the expert testimony at trial to that disclosed in the expert reports.'"); Fed. R. Civ. P. 26(b).

**B.    Ms. Johnson Identifies No Support for Her Opinion That the** ▮▮▮▮▮ ▮▮▮▮ **is "**▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**"**



TVision does not dispute that ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮. *See* D.I. 382 at 12-19. Despite this, TVision asserts that Ms. Johnson's opinions disparaging ▮▮▮▮▮▮▮▮▮▮▮ are supported by sufficient facts. As explained

---

[2] TVision varyingly refers to ▮▮▮▮▮▮ as both the "▮▮▮▮▮▮▮▮▮▮" and the "▮▮▮▮▮ ▮▮▮" *Compare* D.I. 382 at 12, *with id.* at 14, 18-19. Nielsen will use "▮▮▮▮▮▮▮▮."

2

below, the evidence does not support TVision's arguments.

*First*, TVision argues that  to a " " justifies Ms. Johnson's characterization of . In that email, Mr. Liu stated: " " D.I. 382 at 12. Importantly, this statement ***does not appear anywhere in Ms. Johnson's report.*** She cannot, therefore, rely on it to defend her opinion. *See EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1345 (Fed. Cir. 2025) (en banc). And even if Ms. Johnson had included this in her opinion, Mr. Liu's comment is not evidence that tends to show was " " on , as TVision claims. Instead, the comment simply shows that "[3]

The Federal Circuit has held that the inherent approximation and uncertainty in financial forecasts does not render them speculative. *See Interactive Pictures Corp. v. Infinite Pictures, Inc.,* 274 F.3d 1371, 1384 (Fed. Cir. 2001); *Aqua Shield v. Inter Pool Cover Team,* 774 F.3d 766, 772 (Fed. Cir. 2014). TVision criticizes *Interactive* as "distinguishable on its facts" because "[t]here was no evidence that the forecast in *Interactive* was subject to a condition precedent that had not occurred." D.I. 382 at 14. But TVision cites no authority holding that could render that entire " " And . In any event, TVision's criticism is unfounded because the forecast relied

---

[3] Even if this comment were a "condition precedent" as TVision argues, it is satisfied here, as *See* Ex. 55, TVSN_NLSN_00736074-95 at 736093.

3

on by the plaintiff's expert in *Interactive* ***was*** conditional, as it offered different projections of projected sales based on different assumptions. *Interactive*, 274 F.3d at 1384.

Nor do TVision's other cited cases support its argument. First, these non-patent cases do not undermine *Interactive*'s acceptance of projections in a patent damages model. Second, all involve facts that are distinguishable from those of the present case. In *Colby v. Hologic*, the court considered whether a generalized statement that "prospects for long term growth are bright" was sufficiently specific to support a fraud claim. 817 F. Supp. 204, 210-12 (D. Mass 1993). The court noted that "generalized forecasts" are "inherently difficult and unreliable," and found the statement "too nebulous to support a securities fraud claim." *Id.* In contrast, TVision's ████████████ is not a generalized statement of future performance. It contains █████ █████████████████████████████████████████████████████████████ ████████████████████. *See* Ex. 56, TVSN_NLSN_00269608 at "█████████████" TVision's reliance on *Optima Tobacco Corp. v. Flue-Cured Tobacco Growers, Inc.* is also misplaced. No. 16-cv-889, 2019 WL 4858848 (E.D.N.C. Sep. 30, 2019). That case does not, as TVision asserts, hold that forecasts are "inherently unreliable." Rather, the court found a particular forecast unreliable because the expert applied a profit rate that was inconsistent with the expert's own articulation of undisputed facts and ***conceded*** that the profit rate was speculative. *Id.* at \*10. In contrast, TVision's forecast contains ██████████████████████████████.

***Second***, TVision improperly criticizes Mr. Schiffman's ███████████████████ ██████. Far from testifying "██████████████████████████████████████████████ ██████," ████████████████████████████████████ D.I. 382 at 13. And █████████████ ███████████████████████████████████████████████████████████████████████████ would achieve. *See* Ex. 13, Schiffman Dep. at 19:7-20, 20:20-21:6. Mr. Schiffman's testimony

therefore ███████████████████████████ .

     ***Third***, TVision's assertion that ███████████████████████████████ ████████ . To the contrary, TVision's assertion says nothing about the reliability of the ██████ nor does it render ███████████████ " █████████████████████ " D.I. 382 at 16.

     With regard to a subset of the Johnson Report paragraphs Nielsen has asked the Court to exclude, TVision asserts they do not actually refer to ████████████ at all. Those assertions are without merit, as demonstrated below:

- ¶13 (bullet 7) describes ████████████████████████████████ ███████ ;

- ¶106 asserts that earning " ███████████████████████████████ ███████████████████████████ ;

- ¶¶135-39 collectively suggest that ███████████████████████████ ██████████████████████████ ;

- ¶232 describes ██████████████████████████████ ████████████████████ ;

- ¶¶242, 243 (bullet 7) both state that ████████████████████████ ████████████████████████████ ;

- ¶¶285-89 all refer to ████████████████████████████████ ████████████████████████ "

- ¶¶290-91 are the only two paragraphs in a section entitled " ███████████████ ███████████████████████████ ;

- ¶¶292-94 all describe █████████████████████████████ ████████████████████████████████ ████████████████ (*see* D.I. 382 at 17);

- ¶302 claims that " ████████████████████████████████ ███████████████████████████ "

- ¶309 states that ██████████████████████████████████ ██████████████████████████████████████████ .

5

**C.      Ms. Johnson's Opinion About a Device-Based Running Royalty is Conclusory and Factually Unsupported**

Ms. Johnson fails to explain why a device-based running royalty would be appropriate; she simply divides her lump sum amount by the number of devices without offering any basis to do so. D.I. 350 at 7-8; Ex. 5, Johnson Rep. ¶¶156, 167, 207, 235-36, 239, and Fig. 16. This is improper as a matter of law. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1330 (Fed. Cir. 2009) (holding that "certain fundamental differences exist between lump-sum agreements and running-royalty agreements" and that there must be some basis for converting one type into another). TVision cites numerous cases that it claims support "per-unit royalties of the type that Ms. Johnson opines would be appropriate here," (D.I. 382 at 19-20), but those cases *all* require an express rationale for adopting a per-unit royalty. None of the portions of Ms. Johnson's report that TVision cites (¶¶31-42, 163-64, 188-90, 194-95, 200, Exs. 5.3-5.4, and 9.0) provide any explanation as to *why* a device-based running royalty would be appropriate.

To support her device-based running royalty, TVision claims that Ms. Johnson "explains that considering the number of panel devices TVision employs on a monthly basis is a reasonable metric." D.I. 382 at 19 (citing Ex. 5, Johnson Rep. ¶¶104-05). But neither cited paragraph offers any factual support for that statement. Paragraph 104 of Ms. Johnson's report contains a conclusory statement that fails to say *why* that would be a reasonable metric. Ex. 5, Johnson Rep. ¶104. And paragraph 105 contains no discussion about the reasonableness of a running royalty at all, instead simply ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. 5, Johnson Rep. ¶105. Ms. Johnson's opinions are thus insufficient as a matter of law. *See EcoFactor*, 137 F.4th at 1345-46.

TVision further claims that *Georgia Pacific* factors 10, 11, and 13 "support[] a per-device running royalty" but does not cite Ms. Johnson's report in support of its argument. D.I. 382 at 20;

*see also id.* (asserting without citation that "[t]his is all spelled out in Ms. Johnson's report."). TVision similarly claims "the marketplace evidence further confirms that a device-based running royalty reflects how the parties would behave," without identifying where Ms. Johnson's report makes these arguments. D.I. 382 at 20. Instead, TVision merely points to certain paragraphs of Ms. Johnson's report that ████████████████. Ms. Johnson, however, never asserts that those contract fees support a device based running royalty. TVision cannot defend her opinion using opinions she never offered. *Liqwd*, 2019 WL 10252611, at *1; Fed. R. Civ. P. 26(b)

TVision's assertion that ████████████████████████████ ██████ "provide the basis for Ms. Johnson's per-device running royalties" is equally unfounded. D.I. 382 at 22. As TVision acknowledges (D.I. 382 at 22), these agreements "██ ███████████████████████████" Nor did Ms. Johnson cite them for that reason. Therefore, they cannot support a per-device, per month royalty. *See* D.I. 382 at 21-23; *see* Ex. 5, Johnson Rep. ¶¶34-39, 164, 188, 191, 194, and Exhibits 5.1, 5.2, and 5.4; *see also* Ex. 40, TVSN_NLSN_00952341-56 at 952346.

Thus, Ms. Johnson's opinions about a device-based running royalty in ¶¶11, 103-05, 156, 163-67, 207, 232 (bullets 8 and 11), 235, 239, 270, 288-89, Figures 1, 7, 11, 16, Exhibits 3.0-3.1, 5.0, 5.2-5.4, 6.0, 7.0, 9.0, and 18.0-18.3 should be excluded.

**D.      The Court Should Exclude Ms. Johnson's Royalty Opinions Relying on █ ███████████████**

The ████████████ is not a patent license. TVision nonetheless attempts to defend Ms. Johnson's reliance on the ████████████ by asserting that, "when a patent owner licenses another party to use a product covered by a patent, it exhausts any patents in that product, and thus grants an implied license to those patents." D.I. 382 at 23. But as explained in Nielsen's opening brief, TVision does not address Ms. Johnson's failure to "show which, *if any*,

██████ patents the ████████████ used." D.I. 350 at 9 (emphasis in original). Without that predicate, Ms. Johnson cannot show that ████████████████ licensed any patent, even implicitly. *See Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, No. 14-cv-1352, 2019 WL 8138163, at *17 (C.D. Cal. Nov. 20, 2019); *Adasa Inc. v. Avery Dennison Corp.,* 55 F.4th 900, 914-15 (Fed. Cir. 2022), *cert denied,* 143 S.Ct. 2561 (2023). TVision's claim that the '889 patent's value must be less than ██████████████ (*see* D.I. 382 at 24) is thus unsupported.

Moreover, without linking the licensed technology to the asserted patent, TVision's argument fails. *See ResQNet.com, Inc. v. Lansa,* 594 F.3d 860, 870 (Fed. Cir. 2010). TVision asserts that *ResQNet.com* "does not support Nielsen's argument" because, in that case, the licenses at issue "included marketing and other services," while ████████████████ ████████████████████████████████" D.I. 382 at 24. But this distinction is immaterial because it does not address TVision's failure to show that ████████████████████████ ██████████████████████████████████████████████" *ResQNet.com*, 594 F.3d at 870.

Ms. Johnson also does not establish that the ████████████████ is technically and economically comparable to the hypothetical license, as she is required to do. D.I. 382 at 25; *see Adasa*, 55 F.4th at 914-15; *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) ("alleging a loose or vague comparability between different technologies or licenses does not suffice."). In an attempt to show otherwise, TVision cites "four pages" of purported comparability analysis that do not demonstrate that ██████████████████ is comparable to the '889 patent. D.I. 382 at 25. Instead, those pages consist of Ms. Johnson's: (a) ██████████ ████████████████████████████████████████ (¶201), (b) ████████████████ ████████ (¶202), and (c) ██████████████████████████████████████

████████ (¶¶204-205). *See* Ex. 5, Johnson Rep. ¶¶184-85, 201-05. Indeed, only ¶203 purports to address "█████████████████████████████████████████████████████████████████████████████████████████" *Id.*, ¶203. But that paragraph is entirely conclusory. Ms. Johnson simply states that—██████████████████████████████████████████████████████████████████████████████████████████████████. But neither she nor Dr. Anderson actually compares the technology provided under each agreement. *See* Ex. 3, Anderson Rebuttal Rep. ¶¶134-35. Nor is Ms. Johnson's statement accurate. A patent license can be more valuable than a system if, for example, the patent provides valuable advantages that the system does not, especially where, as here, the agreement *does not involve the same patent*. *See, e.g.*, D.I. 188 at 12-13; *M2M Sols. LLC v. Motorola Sols., Inc.*, C.A. No. 12-33-RGA, 2016 WL 767900, at \*8 (D. Del. Feb. 25, 2016).

TVision also ignores the fact that ████████ ██████████████████████████████████████, proving that ████████ would *not* have accepted the agreement's terms at the time of the hypothetical negotiation. *See* Ex. 11, Liu Dep. 76:7-14, 210:3-18.

Ms. Johnson's failure to present facts supporting reliance on the ██████████████ warrants exclusion of her opinions relying on that agreement in ¶¶11, 27, 109, 111, 181-208, 232 (bullet 11), 235-36, 288, Figures 1, 16, and Exhibits 3.0, 7.0, as well as Dr. Anderson's similar opinions in Anderson Rebuttal Rep. ¶¶111-12 and Anderson Supp. Rebuttal Rep. ¶¶134-35.

### E.    The Court Should Exclude Ms. Johnson's Royalty Opinions Based on Information That Existed Only After the Hypothetical Negotiation

TVision mischaracterizes Nielsen's brief, asserting that Nielsen argued that the use of post-hypothetical negotiation information is *always* improper (which TVision asserts contradicts *Honeywell* and *Lucent*). *See* D.I. 382 at 27. That is not what Nielsen argued. Instead, Nielsen argued that *in this case*, "Ms. Johnson's calculation of a reasonable royalty based on TVision's

'actual revenues and profits' impermissibly uses hindsight and does not apply the proper legal standard for a hypothetical negotiation." D.I. 350 at 12-13. Nielsen cited numerous cases holding that using hindsight to criticize information available at the time of the hypothetical negotiation is improper. *See* D.I. 350 at 13-14. TVision offers no response to these cases.

TVision misunderstands the proper use of post-hypothetical negotiation information, which can only be used to "discourage[] infringement by placing the risk of success on the infringer." *Honeywell Intern., Inc. v. Hamilton Sundstrand Corp.*, 378 F. Supp. 2d 459, 469 (D. Del. 2005); *see also On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 410 (S.D.N.Y. 2015). Such information "is less relevant when it is being presented by the infringer to emphasize the lack of damages caused by their own infringement." *On Track*, 106 F. Supp. 3d at 410 (excluding post-hypothetical negotiation "market data"). Post-hypothetical negotiation data is not usable for Ms. Johnson's purpose, *i.e.*, to reduce the amount TVision would have been willing to pay Nielsen. *Id.* As the court explained in *On Track*, "the subsequent lack of profits from [defendant's] infringement could have occurred for 'many reasons' unrelated to the value of the underlying patent. Those reasons should not excuse [defendant] from the deal they would have struck in a reasonable negotiation without knowledge that the product would ultimately not meet projections." *Id.*[4]

TVision also incorrectly asserts that certain challenged portions of Ms. Johnson's report

---

[4] TVision also complains that Dr. Keeley uses post-hypothetical negotiation information. D.I. 382 at 28-29. But **Dr. Keeley's** evidentiary citations are irrelevant to the question of whether **Ms. Johnson's** opinions are grounded in sufficient facts. *EcoFactor*, 137 F.4th at 1345. Moreover, Ms. Johnson's use of actual profits differs from Dr. Keeley's use of Nielsen's profits because it would have been known during the hypothetical negotiation that a license would hurt Nielsen's profits, even if the exact amount of foregone profits was unknown. On the other hand, TVision's forecast showed its belief about future profits at that time. Ms. Johnson tries to use actual profits to contradict that belief.

do not improperly contain post-hypothetical negotiation information. On their face, these portions of Ms. Johnson's report contain post-hypothetical negotiation information:

- ¶¶130-34 and 136-42 all describe ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████ ;

- Exhibits 11.0 and 12.0-12.2, as well as Figure 9, describe ████████████ ████████████████████████████████████████ ████████████████████████████████ ;

- Similarly, Exhibits 11.1 and 11.2 contain ████████████████████████ ████████████████████████████████████████ ████████████████ *See* Ex. 5, Johnson Rep. ¶137, Ex.11;

- ¶¶174-80 argue that ████████████████████████████████ ████████████████████████████████████████ ████████████████████████ ;

- ¶221 describes ████████████████████████████████████ ████████████████████████████████████████ ████████████████████ .

### F.    The Court Should Exclude TVision's Experts' Opinions Relating to Proposed Alternatives to the Infringing System

TVision's experts do not identify sufficient evidence to support their opinions about available, acceptable non-infringing alternatives to the patented technology—and TVision has not shown otherwise. Instead of evidence, both experts offer only speculation and *ipse dixit* conclusions. Ms. Johnson and Dr. Anderson's opinions should be excluded.

### 1.    TVision Has the Burden of Proof

As Nielsen explained in its opening brief, TVision has the burden to prove that an alternative is available, acceptable, and non-infringing. D.I. 350 at 15-16. Nielsen cited cases from six districts showing that TVision has this burden of proof. *Id.*

TVision's argument that Nielsen has the burden to prove damages and thus bears the

burden here too (D.I. 382 at 30) has been rejected repeatedly. D.I. 350 at 15-16 (citing cases). And the cases TVision cites do not support its position. TVision's cited Federal Circuit cases do not place the burden on Nielsen. *See* D.I. 382 at 31-32. TVision cites *RSB Spine, LLC v. DePuy Synthes Sales, Inc.*, C.A. No. 19-1515-RGA, 2022 WL 17084156, at *3 (D. Del. Nov. 18, 2022), which did ***not*** find that the patentee has the burden to prove there are no alternatives. D.I. 382 at 31. Rather, Judge Andrews found that *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341 (Fed. Cir. 1999), did not apply because it is a lost profits case and lost profits and reasonable royalty damages invoke different standards.[5] Judge Andrews then found that because the plaintiff in that case had cited no law applicable to reasonable royalty cases, neither party had the burden. Conversely here, Nielsen has cited cases from six districts showing that TVision has the burden of proof. D.I. 350 at 15-16.

TVision also cites *Droplets, Inc. v. YAHOO! Inc.,* No. 12-cv-3733, 2021 WL 9038509, at *10 (N.D. Cal. 2021), which concluded that because "[n]one of the *Georgia-Pacific* factors have to be considered specifically under the flexible hypothetical negotiation framework." *Droplets* then concluded "neither party has the 'burden' to prove non-infringing alternatives (or their absence) because both parties may rely on a variety of factors to prove the reasonableness or unreasonableness of a royalty rate." *Id.* at *11. That rationale, however, is flawed and inconsistent with Federal Circuit law because it ignores that once a party introduces evidence for a *Georgia Pacific* factor, burdens of proof apply, even to defendants. *See, e.g.*, *Adasa*, 55 F.4th at 915 ("[A defendant] proffering a license bears the burden of establishing it is sufficiently

---

[5] Despite this decision, TVision cites *Grain Processing* and other lost profits cases throughout its brief. *See Mentor Graphics Corp. v. Eve-USA, Inc,* 851 F.3d 1275 (Fed. Cir. 2017); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,* 875 F.3d 1369 (Fed. Cir. 2017). Nielsen is seeking reasonable royalty damages, not lost profits, so TVision's comment on the burden in lost profits scenarios is inapposite. *See* D.I. 384 at 30-31.

comparable to support a proposed damages award."). Similar to the expert who introduced a license in *Adasa*, TVision's experts introduced purported alternatives in their reasonable royalty analysis, and thus, TVision has the burden to prove such alternatives were available, acceptable, and non-infringing. Yet TVision has not identified sufficient evidence to support such a finding.

In addition to representing many more districts than TVision's one case, Nielsen's cited cases correctly put the burden on the defendant because "showing that no non-infringing alternatives exist is not a requirement to prove a reasonable royalty" and it "is more similar to an affirmative defense whose burden is upon the defendant." *Correct Transmission, LLC v. Nokia of Am. Corp.,* No. 22-cv-00343, 2024 WL 1289821, at *4 (E.D. Tex. Mar. 26, 2024).

In addition to these cases, Rule 702 places the burden on TVision to show that its experts' opinions are based on facts and not speculation. Fed. R. Evid. 702 (opinion only allowed "if the proponent demonstrates to the court that it is more likely than not that: … (b) the testimony is based on sufficient facts or data"); *EcoFactor*, 137 F.4th at 1339 ("In 2023, Rule 702 was amended to clarify that the proponent of expert testimony bears the burden of establishing its admissibility and to emphasize that an expert's opinion must stay within the bounds of a reliable application of the expert's basis and methodology.").

## 2. Opinions About an ███████████ Should be Excluded

In its moving brief, Nielsen identified numerous issues regarding an alleged ████████ ██████, including: (1) the lack of evidence supporting an alleged ██████████████; (2) the presumption against availability resulting from the fact that the alleged alternative was never on the market; and (3) TVision's failure to show that this alternative is non-infringing. TVision does not satisfactorily address any of these issues.

***First***, there is no evidence supporting an alleged ████████████. No TVision witness asked ████████ whether it could or would redesign its product. On the contrary, Mr.

Sidhu admits ███████████████████████████████████████ ███████████" Ex. 19, Sidhu Dep. 193:22-194:3. TVision's *only* support for this "alternative" is its expert's statement that it "████████████████████" But "[s]peculation that [a defendant] might have been able to design a non-infringing alternative based on [a particular] patent will … not suffice." *Sherwin Williams Co. v. PPG Indus., Inc.,* C.A. No. 17-1023, 2020 WL 1283465, at *9 (W.D. Pa. Mar. 18, 2023); *see also WhereverTV, Inc. v. Comcast Cable Comm'ns, LLC*, No. 18-cv-529, 2022 WL 2751752, at *7 (M.D. Fla. Jul. 14, 2022) ("***Using 'vague and general language'*** … is not a substitute for [a defendant's] obligation to identify alleged acceptable non-infringing alternatives. Not only must the proposed alternatives be specifically noted, ***but their availability and acceptability must also be substantiated with record evidence***. … [This] is all the more important in the context of reasonable royalty calculations where the proposed designs are purely hypothetical.") (citations and quotations omitted) (emphasis added). TVision ignores *Sherwin Williams* and *Wherever TV* by using "vague and general language" about its "purely hypothetical" █████████ alternative and arguing without evidentiary support that "████████████████████████████████████████ ██████████████" D.I. 382 at 33-35. TVision's failure to identify what an ████████████ would look like and how (or how well) it would work renders this purported alternative legally insufficient.[6]

   *Second*, TVision incorrectly denies there is a presumption that this "alternative" was not

---

[6] TVision's citation to ¶48 of Dr. Anderson's report does not help it because that statement was not made in the context of alternatives and is not allowable for that purpose. *See* D.I. 382 at 33-34; D.I. 382-1, Ex. 17 ¶48; *DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, 671 F. Supp. 3d 1105, 1134-35 (Fed. Cir. 2023) (analysis "from a different section of [an] expert report addressing a different [issue]" was "untethered to [the expert's] actual analysis and is . . . nothing more than attorney argument").

available. D.I. 382 at 34. Here, TVision misreads *Asetek Danmark*, which found that "the accused infringer [] has the burden to overcome this inference by showing that the substitute was available." No. 19-cv-410, 2022 WL 21306657, at *30 (N.D. Cal. Sep. 11, 2022). TVision also cites the lost profits portion of *Sherwin Williams Co. v. PPG Indus.*, C.A. No. 17-1023, 2020 WL 1283465, at *9 (W.D. Pa. Mar. 18, 2020), not the reasonable royalty portion. D.I. 382 at 35. Relevant here, *Sherwin Williams* held that "[i]f an alleged alternative product is not on the market during the accounting period, a court may reasonably infer that it was not available as a non-infringing substitute." *Id.* at *9.

TVision's experts do not overcome the inference that an ███████████████ was not available; in fact, they identify no evidence at all showing that ████████ would or could provide such an alternative. No ██████████████ existed, nor was progress towards one even made, and thus there was nothing to be marketed. Because this purported alternative is wholly theoretical and unsupported, any opinions based on it should be excluded. *See Asetek Danmark*, 2022 WL 21306657, at *30 (requiring a showing about an alleged alternative provider's "equipment, know-how, and experience."); *Visteon Glob. Tech., Inc. v. Garmin Int'l, Inc.*, 903 F. Supp. 2d 521, 528 (E.D. Mich. 2012) (requiring a showing that an alleged alternative "was more than theoretically possible" and "available to be marketed.").[7]

***Third***, TVision does not show how this proposed alternative avoids the Wang patent or other patents in the space. TVision never denies this alternative is based on Wang's patented

---

[7] In its opening brief, Nielsen inadvertently omitted a citation to *Visteon Glob. Tech., Inc. v. Garmin Int'l, Inc.,* 903 F. Supp. 2d 521, 528 (E.D. Mich. 2012) for the proposition that TVision must establish that a proposed alternative "was more than theoretically possible" and "available to be marketed." *See* D.I. 350 at 17 (citing *Asetek Danmark*, 2022 WL 21306657, at *30, for the related proposition that TVision must show that it had the "necessary materials, equipment, know-how, and experience to make an alternative product during the relevant time frame").

15

design. *See* D.I. 382 at 36. This, alone, is fatal to its experts' opinions based on this alternative.

      **3.**     **Opinions about a Proposed ███████████ Alternative Should Be Excluded**

          **a)**    **Opinions About a ███████████ Alternative Should be Excluded Because They Rely on Mr. Sidhu, Who Is Improperly Acting as an Expert**

TVision admits Mr. Sidhu will testify about ███████████████████████████ ██████. Such testimony requires "scientific, technical, or other specialized knowledge within the scope of Rule 702" (Fed. R. Evid. 701) —and TVision does not argue otherwise. On the contrary, TVision argues that Mr. Sidhu has the "qualifications" and "expertise" needed to opine on these subjects. D.I. 382 at 37-38 (asserting that "Mr. Sidhu's past experience refutes Nielsen's bare argument that Mr. Sidhu is not qualified to provide an estimate because he is not an expert in ACR software."); *id.* (asserting that Mr. Sidhu has "vast experience in estimating software development projects"). Thus Rule 701 precludes him from providing the opinions at issue. Fed. R. Evid. 701(c). With Rule 701 removed as an option, Rule 702 is the only potential avenue for Mr. Sidhu to offer these opinions. But to provide expert testimony without a written report, Rule 26(a)(2)(C) requires Mr. Sidhu to have disclosed certain required information. Mr. Sidhu never did so, and thus, he cannot testify under Rule 702.[8]

TVision's cited cases are unavailing and do not allow Mr. Sidhu to testify under Rule 701. In *United States v. Sponaugle,* No. 22-2851, 2024 WL 4144069, at *4-5 (3d Cir. Sep. 11, 2024), the permitted testimony was based on ***personal knowledge***, not specialized knowledge

---

[8] TVision cites the wrong rule as to whether Mr. Sidhu needed to provide information to be a Rule 702 expert, citing "Fed. R. Civ. P. 26(A)(2)(b)." D.I. 384 at 37-38. TVision ignores the rule cited in Nielsen's motion (D.I. 350 at 25), Rule 26(a)(2)(C), which requires disclosure of enumerated information "if the witness is not required to provide a written report." Fed. R. Civ. P. 26(a)(2)(C). Mr. Sidhu never provided the required information and thus cannot be a Rule 702 expert (in addition to his lack of qualifications).

within the scope of Rule 702 (*i.e.,* expert testimony). Similarly, in *Teen-Ed, Inc. v. Kimball Int'l, Inc.,* 620 F.2d 399, 403, 404 (3d Cir. 1980), the testimony was based on personal knowledge. And *McGoveran v. Amazon Web Servs., Inc.*, C.A. No. 20-1399, 2024 WL 4626253, at *2 (D. Del. Oct. 30, 2024), also involved percipient testimony from witnesses. Consequently, TVision's experts' opinions based on Mr. Sidhu's improper expert opinion testimony should be excluded.

      **b)**    **Opinions About a ████████████ Alternative Should Be Excluded Because They Rely on Mr. Sidhu, Who Does Not Have Requisite Expertise**

Even if Mr. Sidhu had disclosed the required information, his lack of requisite knowledge would disqualify him from providing expert testimony under Rule 702. Mr. Sidhu lacks any ACR experience (other than the excluded ████████). Ex. 19, Sidhu Dep. 214:13-17. Moreover, he lacks the signal processing experience that TVision's technical expert, Dr. Anderson, testified is necessary for developing an ACR system. D.I. 350 at 26-27. TVision misreads Dr. Anderson's testimony on this point. He did ***not*** testify, as TVision alleges, that "████████████████████ ████████████████████████████████████" D.I. 382 at 38-39. In reality, he testified that ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████" D.I. 350 at 26 n.11.

      **c)**    **Opinions About a ████████████ Alternative Should be Excluded Because TVision's Experts Have Not Shown That a ████████████ Alternative Would Have Been Available**

TVision does not overcome the inference that its alleged ████████████ alternative (which was not on the market) was unavailable. Its experts provide nothing more than a high-level description of what such an alternative would look like, and TVision never addresses its obligation to show that it had the "necessary materials, equipment, know-how, and experience to make an alternative product during the relevant time frame" (*Asetek Danmark A/S v. CoolIT Sys.*

17

*Inc.*, No. 19-cv-410, 2022 WL 21306657, at *30 (N.D. Cal. Oct. 4, 2022)) and that the alternative

"was more than theoretically possible" and "available to be marketed." *Visteon Glob. Tech.*, 903

F. Supp. 2d at 528 (internal quotations omitted); *Laserdynamics, Inc. v. Quanta Computer, Inc.*,

No. 06-CV-348, 2011 WL 197869, at *2, 3 (E.D. Tex. Jan. 20, 2011). Here, the unrebutted

evidence shows that ████████████████████. Ex. 19, Sidhu Dep. 214:13-17. Nor does

any evidence show a product "available to be marketed." Thus, TVision's experts' opinions are

not "based on sufficient facts or data" as required by Rule 702.

TVision argues that



████████████████ And TVision's experts do not opine on this supposed design around, so

TVision's argument does not save its experts' opinions from exclusion.

      **d)**    **Opinions About a ████████████ Alternative Should be Excluded Because They Do Not Show That a ████████████ Design Would Not Infringe Third-Party Patents**

TVision incorrectly argues that it does not have the burden to show that its proposed

alternatives do not infringe the Wang patent, citing *Robertson Transformer Co. v. General Elec.

Co.*, No. 12 C 8094, 2016 WL 4417019, at *10 (N.D. Ill. Aug. 19, 2016).[9] *See* D.I. 382 at 40.

TVision's reliance on *Robertson* is misplaced. First, *Robertson* is a lost profits case. *Id.* at *5-6.

Second, *Robertson* says nothing about the burden of proof. *Id.* at *10. And third, *Robertson*

concerns an inapposite issue: whether a product is "available" if it infringes a patent that is later

---

[9] TVision's *WhereverTV* argument (D.I. 382 at 40-41), which does not address the burden of proof, is no more helpful to TVision.

found invalid. *Id.* at *10.

The Federal Circuit's decision in *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015) is controlling on this point. As the court explained in *Astrazeneca*:

> The patents held by [the third party] were designed to protect its formulation. From that fact, ***the district court could reasonably infer that the [third party] formulation was not available to [defendant] as a non-infringing alternative.*** [Defendant's] conclusory assertion that it could have used [third party's] formulation without infringing [third party's] patents does not suffice to overcome that inference.

*Id.* at 1340-41 (emphasis added); *also* D.I. 350 at 29-30. Consistent with *Astrazeneca*, courts have placed the burden to show an alternative does not infringe third-party patents on the party asserting the alternative. *See United Services Automobile Assoc. v. PNC Bank NA,* No. 20-cv-319, 2022 WL 1453204, at *6 (E.D. Tex. Apr. 17, 2022) ("[A] proposed alternative 'that is covered' by patents outside the lawsuit (even though the alternative does not infringe the asserted patents) could therefore be 'unavailable.' Ultimately [defendant], as the party contending that it has a [non-infringing alternative], will need to persuade the jury that [the proposed alternative] is available to it.").

Finally, it would be nonsensical to place the burden on Nielsen to show that an alleged ███████████ alternative—which was raised by TVision and about which TVision offers no detail—does not infringe a third-party patent.

    **e)**    **Opinions About a ██████████ Alternative Should be Excluded Because There Is No Evidence of Acceptability**

TVision does not show that ██████████████████ would be acceptable—*i.e.,* that it would effectively identify program content. *See Stoller Enterprises, Inc. v. Fine Agrochemicals Ltd.*, 705 F. Supp. 3d 774, 798 (S.D. Tex. 2023) ("To be deemed acceptable, the alleged non-infringing substitute must not 'possess characteristics significantly different from the

19

patented product.'") (quotations omitted). TVision incorrectly argues that "Nielsen's argument regarding 'acceptability' fails because the alleged invention is entirely unrelated to the product TVision is selling." D.I. 382 at 40. To the contrary, the patent-in-suit concerns ACR, which is

███████████████████████████████████. Ex. 57, Liu Dep. 89:14-17 ("██████████████

████████████████████████████████████████████████████████████████████

██████████████████████████"), Ex. 11, Liu Dep. 184:1-2 ("████████████████

██████████████████████"). Thus, TVision must demonstrate acceptability.

TVision also argues it need not show acceptability unless Nielsen demonstrates "demand for the alleged infringing product." D.I. 382 at 40. But it cites no authority for such an assertion.

**f)     The Asserted** ████████████████ **Alternative Does Not Relate to the Correct Time Period (2018)**

Ms. Johnson claims that Mr. Sidhu told her that █████████████████████████

████████████████████████████████████████. D.I. 382 at 41. Mr. Sidhu,

however, testified ████████████████████████████████████████████████████

██████████████████. Ex. 58, Sidhu Dep. 211:7-9 ("████████████████████████

██████████████████████"). And he testified that ██████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████. Ex. 19, Sidhu Dep. 194:11-14, 213:3-22, 214:1-12, 234:15-18, 238:20-240:19, 241:3-12.

**4.     Opinions about Supposed Third-Party Alternatives Should Be Excluded**

TVision cannot satisfy its burden to show that third-party alternatives were available, acceptable, and non-infringing by merely mentioning the companies discussed *infra*.

████: TVision points to Ms. Johnson's statement that "████████████████████████

██████████████████████████████" D.I. 382 at 44 (citing D.I. 382-1, Ex. 8, ¶159). But for this

20

assertion, she relies on a conversation with Mr. Liu, who later admitted that ██████████ ██████████████████████████████████████████ D.I. 350 at 34. TVision cannot defeat this motion based on Ms. Johnson's reliance on ██████████████████████████ ██████████████████████████████. *See Robertson*, 2016 WL 4417019, at *5. TVision points to no other evidence that ████ would be an available, acceptable alternative.

TVision is wrong to argue that "Nielsen's contention that ████ was not available because ██████████████████████████████████ ([D.I. 350] at 34-35) is not a reason to exclude Ms. Johnson's and Dr. Anderson's opinion, but, at most, is an issue for cross-examination and jury consideration." D.I. 382 at 44. No evidence shows that ████ had a product usable in TVision's technical environment, and certainly no evidence exists that would satisfy TVision's burden of proof. *Daubert* and Rule 702 prohibit TVision from telling a jury about ████ without evidence it could work in its ecosystem. *See EcoFactor*, 137 F.4th at 1345-46.

████████: TVision does not address the fact that the document its expert cites regarding ██████ ████████████████████████████████████████. D.I. 350 at 35-36. Nor does TVision cite any evidence that ██████ had anything but a mobile platform. *Id.* Thus, there is no evidence to meet TVision's burden to show that ██████ had a viable alternative.

██████: ████ made no proposal to TVision for software. And there is no evidence that ████ would work in TVision's environment. D.I. 350 at 37-38. ██████'s recommendation of ████, with no technical detail, does not show that ████ had a usable product. This is not an issue for the jury because no evidence supports TVision's experts' claim, which is what Rule 702 and *Daubert* require. *EcoFactor*, 137 F.4th at 1345-46.

████████████: TVision identifies no evidence of a proposal or "████" from ████ ████. *See* D.I. 382 at 44. TVision cites Ms. Johnson's report as proof, but that report merely

21

cites ████████████████████████████████████████████████████

██████. D.I. 382-1, Ex. 8, ¶158 n.314 (citing TVSN_NLSN_00660739-772 at 746-762); D.I. 382

at 43-44. Moreover, that ████████████████████████████████

██████████████████████████████████████. Ex. 21, TVSN_NLSN_00660739-772 at

749, 758. The fact that ██████████████████████████████ further indicates

that ████████████████████. Ex. 11, Liu Dep. 327:14-20. TVision ignores all of this. This is

not an issue for cross examination because no evidence underlies Ms. Johnson's or Dr.

Anderson's opinions. *EcoFactor*, 137 F.4th at 1345-46.

Other Third Parties: TVision does not identify any evidence that "████████████

██████" would be acceptable and available alternatives. D.I. 382 at 45.[10] TVision's experts

offer only their names. With no proof that these companies could provide alternatives, these

opinions cannot be used to respond to Dr. Keeley's opinion that "████████████████

██████" D.I. 382 at 45; *see EcoFactor*, 137 F.4th at 1345-46; *Noramco LLC v. Dishman*

*USA, Inc.*, C.A. No. 21-1696, 2025 WL 2938761, at \*4 (D. Del. Oct. 16, 2025) (excluding a "list

of THC manufacturers, [because] the report contains no other facts, data, or methodology

supporting [the expert's] conclusion that all or some number of the listed manufacturers might

have been willing to purchase the non-compliant olivetol.").

### 5. Opinions Based on a TVision Witness's Unsupported Statement That the ACR Provider Market is "████████████████" with "████ ████████████" Should Be Excluded

The law is clear that TVision cannot rely on non-specific allegations about unnamed

companies with unidentified capabilities. D.I. 350 at 43-45 (collecting cases). The Court should

exclude these opinions.

---

[10] TVision's brief ignores ████████████████████████████████ and thereby provides no
opposition. The Court should, at the least, exclude those portions of TVision's expert's reports.

**6.      Ms. Johnson's Opinion That ███████████████████ ██████████████████ Should Be Excluded**

While Ms. Johnson does not use the word "███████████████████ ████████████████. D.I. 350 at 45. This is contrary to law, and the Court should

exclude her opinion. *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008)

("[Defendant] is wrong as a matter of law to claim that reasonable royalty damages are capped at

the cost of implementing the cheapest available, acceptable, noninfringing alternative.").

## II.      Reply - Summary Judgment

### A.      The Patent Act Precludes TVision's Reverse Doctrine of Equivalents Defense

TVision asks the Court to ignore the Federal Circuit's reasoning in *Steuben Food, Inc. v.*

*Shibuya Hoppmann Corp.*, 127 F.4th 348, 357 (Fed. Cir. 2025), yet TVision provides no reason

to ignore the "compelling" rationale that the 1952 Patent Act eliminated the Reverse Doctrine of

Equivalents ("RDOE") defense. D.I. 382 at 48. The Court should adopt the Federal Circuit's

reasoning in *Steuben* here, where the issue is ripe for resolution, and grant Nielsen summary

judgment on TVision's RDOE defense.

### B.      The Court Should Enter Partial Summary Judgment That the Cheung Reference is Not Prior Art and Thus Does Not Invalidate the Patent-in-Suit

TVision does not dispute that it failed to meet its burden to show that Cheung receives its

provisional filing date under *Dynamic Drinkware*. Instead, TVision argues that Nielsen must

show the '889 patent is entitled to priority as of its provisional filing date and that Nielsen has

not met that obligation. D.I. 382 at 48-49. In other words, TVision argues that neither the '889

patent nor Cheung are entitled to their provisional priority dates, thus making Cheung prior art.

TVision is wrong because, as explained in Nielsen's opening brief, in the '889 patent's

PCT parent application (PCT/US2005/029623), the USPTO (as the International Searching

Authority) found that "all the claims of the current application are supported by the earlier

23

[provisional] application whose priority has been claimed." D.I. 350 at 47-48; D.I. 349, SOF ¶¶3-4; Ex. 42, NLSN_TVISION0002762-65 at 2764. "If the patent office has already found that an application supports an issued patent, the challenger bears both the burden of production and the burden of persuading the finder of fact, by clear and convincing evidence, that the patent is not entitled to the priority date of the earlier application." *Janssen Pharms., Inc. v. Tolmar, Inc.*, 718 F. Supp. 3d 394, 414 (D. Del. 2024). Thus, Nielsen does not need to prove that the '889 patent is entitled to priority as of August 18, 2004. As the party with "the burden of production and the burden of persuading the finder of fact," TVision does not attempt to show otherwise.

TVision tries to excuse its failure to perform a *Dynamic Drinkware* analysis by contending that Cheung's provisional application is nearly identical to its non-provisional application. D.I. 382 at 49-50. But the near-identity of the two applications is irrelevant. TVision still must perform a *Dynamic Drinkware* analysis to show that the written description of the provisional application supports Cheung's claims. Claims in an issued patent do not necessarily have support in their specification (or a near identical provisional one). *See, e.g.*, *Brita LP v. Int'l Trade Comm'n*, 156 F.4th 1326, 1336 (Fed. Cir. 2025).

TVision also incorrectly faults Nielsen for not stating "explicitly" that Cheung is not entitled to priority from its provisional application in Nielsen's concise statement of facts. D.I. 382 at 49. But "[d]etermination of a priority date is purely a question of law if the facts underlying that determination are undisputed." *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1268 (Fed. Cir. 2010). Nielsen's concise statement correctly includes the underlying and undisputed facts that: (1) Cheung was filed on February 16, 2005; and (2) the USPTO found the '889 patent claims supported by the provisional application. D.I. 349, SOF ¶¶1, 3, 4. No other facts are necessary for the Court to resolve the legal question of priority.

TVision further argues—incorrectly—that it can wait for trial to offer proof that the Cheung reference is prior art. D.I. 382 at 49. To defeat summary judgment, TVision must present evidence showing a genuine issue of fact now. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); Fed. R. Civ. P. 56(e); *Dabney v. Cty of Hayward*, No. C09-4116, 2011 WL 1131088, at \*1 (N.D. Cal. Mar. 28, 2011) ("[nonmovant] cannot rely on their pleadings or *future testimony* to oppose [movant's] summary judgment motion."). It has not done so.

Accordingly, the Court should grant summary judgment that Cheung is not prior art to, and therefore cannot invalidate, the '889 patent.

## III.    Conclusion

For all the reasons set forth above, and in Nielsen's moving papers, the Court should grant partial summary judgment in Nielsen's favor and preclude TVision's experts from opining on the matters discussed above.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  */s/ David E. Moore*

Steven Yovits
Douglas Lewis
Jason P. Greenhut
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel:  (312) 857-7070

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

Clifford Katz
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  (212) 808-7800

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

Dated: January 26, 2026
12668456 / 14944.00004
PUBLIC VERSION
Dated: February 2, 2026