**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-57-CJB |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**[PROPOSED[1]] FINAL JURY INSTRUCTIONS**

---

[1] <<Nielsen: Blue text >> in chevrons identifies Nielsen's proposed language.
{{TVision: Green text }} in curly brackets identifies TVision's proposed language.

**TABLE OF CONTENTS**

1.    GENERAL ....................................................................................................... 1

    1.1.    Introduction.................................................................................... 1

    1.2.    Jurors' Duties ................................................................................. 2

    1.3.    Evidence Defined ........................................................................... 3

    1.4.    Direct And Circumstantial Evidence .............................................. 5

    1.5.    Consideration Of Evidence ............................................................ 6

    1.6.    Statements Of Counsel................................................................... 7

    1.7.    Credibility Of Witnesses................................................................ 8

    1.8.    Number Of Witnesses .................................................................... 9

    1.9.    Expert Witnesses.......................................................................... 10

    1.10.    Deposition Testimony................................................................... 11

    1.11.    Use Of Interrogatories.................................................................. 12

    1.12.    Uncontested Facts ........................................................................ 13

    1.13.    Exhibits ....................................................................................... 14

    1.14.    Burdens Of Proof· ....................................................................... 15

    1.15.    Use Of Notes ............................................................................... 17

2.    THE PARTIES' CONTENTIONS................................................................. 18

3.    THE PATENT CLAIMS............................................................................... 19

    3.1.    Patent Laws.................................................................................. 19

    3.2.    Patent Claims - Generally ............................................................ 20

    3.3.    Construction Of The Asserted Claim............................................. 21

    3.4.    Open Ended Or "Comprising" Claims........................................... 22

    3.5.    Patent Term ................................................................................. 23

4.    INFRINGEMENT......................................................................................... 24

A.    Infringement - Generally.................................................................................. 24

    1.    Literal Infringement .................................................................. 25

    2.    Doctrine of Equivalents............................................................. 27

    3.    Reverse Doctrine of Equivalents .............................................. 28

5.    INVALIDITY·................................................................................................. 29

5.1.    Invalidity – Generally ...................................................................... 29

5.2.    Prior Art ............................................................................................ 31

5.3.    Anticipation....................................................................................... 32

5.4.    Obviousness ...................................................................................... 34

    1.    Scope and Content of the Prior Art............................................ 36

    2.    Differences Between The Claimed Invention And Prior Art.................. 37

    3.    Level Of Ordinary Skill ............................................................. 39

    4.    Secondary Considerations.......................................................... 42

5.5.    Written Description............................................................................ 43

5.6.    Enablement ........................................................................................ 45

5.7.    Indefiniteness .................................................................................... 47

5.8.    Patent Eligibility ............................................................................... 48

6.    DAMAGES....................................................................................................... 49

6.1.    Damages – Generally ........................................................................ 49

6.2.    Date Damages Begin and End ........................................................... 50

6.4.    Reasonable Royalty ........................................................................... 51

6.5.    Reasonable Royalty—Using the "Hypothetical Negotiation" Method ............... 53

6.6.    Reasonable Royalty – Factors Relevant to the Hypothetical Negotiation........... 55

6.7.    Reasonable Royalty –  Attribution/Apportionment· ......................... 58

6.8.    {{TVision: Reasonable Royalty – Timing....................................... 61

6.9.    Reasonable Royalty – Comparable License Agreements ..................................... 62

6.10.   Reasonable Royalty – Non-Infringing Alternatives ........................................... 63

7.    DELIBERATIONS AND VERDICT ........................................................................... 66

7.1.    Introduction................................................................................................. 66

7.2.    Unanimous Verdict ..................................................................................... 67

7.3.    Duty to Deliberate....................................................................................... 68

7.4.    Social Media ............................................................................................... 69

7.5.    Court Has No Opinion ................................................................................ 70

1. **GENERAL**

   ## 1.1.    Introduction[2]

   Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

   I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

   Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

   Please listen very carefully to everything I say.

   You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

---

[2] *See* Final Jury Instructions, GlaxoSmithKline LLC v. Teva Pharm. USA, Inc., Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.1. Introduction.

### 1.2.    Jurors' Duties[3]

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

---

[3] *See* Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.2 Jurors' Duties.

### 1.3.    Evidence Defined[4]

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played by video or read to you), the exhibits that I allowed into evidence, and the stipulations to which the parties agreed.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things

---

[4] *See* Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.3 Evidence Defined.

4

are not evidence, and you are bound by your oath not to let them influence your decision in any

way.  Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.4.    Direct And Circumstantial Evidence[5]

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

---

[5] *See* Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.4 Direct And Circumstantial Evidence.

5

### 1.5.    Consideration Of Evidence[6]

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

---

[6] *See* Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.5 Consideration Of Evidence.

### 1.6. Statements Of Counsel[7]

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

---

[7] *See* Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.6 Statements Of Counsel.

### 1.7. Credibility Of Witnesses[8]

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial. You have the right to distrust such a witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

---

[8] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 1.7 Credibility Of Witnesses.

### 1.8.    Number Of Witnesses[9]

Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

---

[9] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 1.8 Number Of Witnesses.

### 1.9.    Expert Witnesses[10]

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

---

[10] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 1.9 Expert Witnesses.

10

### 1.10.  Deposition Testimony[11]

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition. If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

---

[11] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 1.10 Deposition Testimony.

### 1.11.    Use Of Interrogatories[12]

You may have heard answers that the parties gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial.

You must consider the parties' answers to interrogatories in the same manner as if the answers were made from the witness stand.

---

[12] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 1.11 Use Of Interrogatories.

### 1.12.    Uncontested Facts[13]

The parties have stipulated that certain facts are not disputed or have agreed to or stipulated that they are true, and some of those stipulations have been read to you during this trial, sometimes referred to as "Uncontested Facts."  You must treat these facts as having been proved for the purposes of this case.

---

[13] *See* Final Jury Instructions, *Integra Lifesciences Corp. v. Hyperbranch Medical Technology, Inc.*, No. 15-819-LPS-CJB, D.I. 749 (June 7, 2018), 1.15 Requests for Admission.

### 1.13.   Exhibits[14]

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room to consider as evidence for your deliberations.

The remainder of the exhibits (including charts, PowerPoint presentations and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," will not be in the jury room and have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

In some instances, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial. You may use these charts and summaries as evidence, even though the underlying documents and records may not be here. You should give them only such weight as you think they deserve.

---

[14] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 1.12 Exhibits.

### 1.14.   Burdens Of Proof[15,16]

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

Nielsen is accusing TVision of patent infringement. Nielsen has the burden of proving infringement and the amount of damages to compensate for that infringement by a preponderance of the evidence. That means that Nielsen has to produce evidence which, when considered in light of all of the facts, leads you to believe that what the party claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting Nielsen's claims would have to make the scales tip somewhat to its side. If the scale should remain equal or tip in favor of TVision, you must find for TVision.

TVision denies that it has infringed. TVision also contends that the '889 patent is invalid.

---

[15] <<Nielsen: *See* Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.13 Burdens of Proof; *Biomerieux S.A. v. Hologic, Inc.*, No. 18-21-LPS-CJB, D.I. 526, Final Jury Instructions § 1.3 Burdens Of Proof; *see also Pacific Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, Case No. 17-cv-275-LPS (D. Del.), Final Jury Instructions § 3 Burdens of Proof.>>

[16] {{TVision: Clear and convincing evidence is evidence that makes it such that a fact is highly probable. EVIDENCE, Black's Law Dictionary (12th ed. 2024). The terms "highly probable" are plain English and avoid confusion that might result from the less-common phrase "abiding conviction," which jurors may conflate with a different or higher burden that is not at issue here. Nielsen's addition that patents are "presumed to be valid under the law" is unhelpful in this section, which is articulating the standard for burdens of proof. It is also cumulative of Section 5.1. *See* Final Jury Instructions *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.13 Burdens of Proof; Final Jury Instructions *Arendi S.A.R.L. v. Google LLC*, Civ. No. 1:13-00919-JLH, D.I. 528 (May 2, 2023), 1.12 Burdens of Proof; *bioMerieux, S.A. et al v. Hologic Inc., et al*, C.A. No. 18-21, D.I. 428 (Feb. 25, 2020), 1.3 Burdens of Proof; *Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp. d/b/a Wabtec Corp. et al*, C.A. No. 16-284, D.I. 442 (Jan. 23, 2019), 1.3 Burdens of Proof.; *CosmoKey Sols. GmbH & Co. KG v. Duo Security, Inc.*, C.A. No. 18-1477, D.I. 535 (Jun 13, 2025), 1.3 Burdens of Proof.; *Attentive Mobile Inc. v. Stodge Inc. d/b/a Postscript*, C.A. No. 23-87, D.I. 789 (Aug. 28, 2025), 1.L. Burdens of Proof; 7.A. Damages – Generally.}}

<<Nielsen: Patents, however, are presumed to be valid under the law.>>[17] TVision has the burden of proving that the asserted patent is invalid by clear and convincing evidence. Clear and convincing evidence << Nielsen: is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.>>[18] {{TVision: means evidence that it is highly probable that a fact is true.}}  Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence. To use the same analogy, if you were to put Nielsen's and TVision's evidence on the opposite sides of a scale, the evidence supporting invalidity would have to make the scales tip substantially to TVision's side.

If you determine the asserted patent is infringed and not invalid, you will be asked to determine the amount of money damages, if any, that Nielsen is owed.  Nielsen has the burden to establish the amount of money damages by a preponderance of the evidence. TVision denies that Nielsen is

---

[17] <<Nielsen: This instruction is helpful in this section because it explains to the jurors why the burden of proof for invalidity is different from the burden of proof for infringement. *See* Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 1.13 Burdens of Proof.

[18] <<Nielsen: Courts have consistently held that clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. *Colorado v. New Mexico*, 467 U.S. 310, 216 (1984); *Scale Biosciences, Inc. v. Parse Biosciences, Inc.*, No. CV 22-1597-CJB, 2025 WL 2851784, at *3 (D. Del. Oct. 8, 2025) ("Clear and convincing evidence places within the mind of the fact finder 'an abiding conviction that the truth of [the] factual contentions are highly probable.'"); *Bayer Pharma AG v. Watson Labs, Inc.*, 183 F. Supp. 3d 579, 584 FN. 4 (D. Del. 2016) (same); *Galderma Labs, L.P. v. Sun Pharm. Indus. Ltd.*, 411 F. Supp.3d 271, 289-90 (D. Del. 2019) (same). TVision's revision introduces unnecessary confusion by attempting to redefine this standard. Numerous cases have adopted Nielsen's formulation. *See Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 1:19-cv-1334-CJB, D.I. 670 (Feb. 15, 2024), VIII. Burden of Proof; *Pacific Biosciences of California, Inc. v. Oxford Nanopore Techs., Inc.*, C.A. No. 17-275-LPS, D.I. 466 (Mar. 6, 2020), Burdens of Proof; *Cirba Inc. v. VMWare, Inc.*, C.A. No. 19-742-LPS, D.I. 490 (Jan. 13, 2020), Burden of Proof; Final Jury Instructions, *Biomerieux, S.A. v. Hologic, Inc.*, No. 18-21-LPS-CJB, D.I. 526 (Feb. 24, 2020), 1.3 Burdens of Proof; Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (Jun. 19, 2017), 1.13 Burdens of Proof; *Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-cv-1067-LPS, D.I. 636 (Jan. 23, 2015), Burden of Proof; *Carrier Corp. v. Goodman Global, Inc.*, Civ. No. 12-930-SLR, D.I. 373 (Sept. 8, 2014), Burdens of Proof.>>

16

owed any money damages.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

### 1.15.   Use Of Notes[19]

You may use notes taken during trial to assist your memory. However, as I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency I think to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

---

[19] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 1.14 Use of Notes.

## 2.    THE PARTIES' CONTENTIONS[20]

Nielsen alleges that TVision has infringed claim 8 of the '889 Patent. You have heard this referred to as the "asserted claim." Nielsen also alleges that it is entitled to damages for TVision's infringement. TVision denies that it has infringed the asserted claim, and that Nielsen is entitled to damages. TVision also contends that the asserted claim is invalid.

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following three main issues:

1.    Whether Nielsen has proven by a preponderance of the evidence that TVision infringes the asserted claim;

2.    Whether TVision has proven by clear and convincing evidence that the asserted claim is invalid; and

3.    What amount of damages, if any, Nielsen has proven by a preponderance of the evidence.

I will provide more detailed instructions on each of the issues you must decide elsewhere in these jury instructions.

---

[20] *See* Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 2.2 The Parties' Contentions; *see also* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 2.3 Summary Of The Patent Issues.

3.    **THE PATENT CLAIMS**

    **3.1.    Patent Laws[21]**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instruction about the patent laws that specifically relate to this case.

---

[21] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 3.1 Patent Laws.

19

### 3.2.    Patent Claims - Generally[22]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered paragraphs at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. Only the claims of a patent can be infringed.

The claims are intended to define, in words, the bounds of an invention. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each of the asserted claims must be considered individually.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." For example, a claim that covers a process for making a round cake may recite the steps of (1) making cake batter, (2) pouring the batter into a round cake pan, and (3) baking it in an oven. Each of the three steps is a separate limitation of the claim. When a process meets each and every limitation of a claim, the claim is said to "cover" that process, and that process is said to "fall" within the scope of that claim.

You will first need to understand what the claim covers in order to decide whether there is infringement of the claim and to decide whether the claim is invalid. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

---

[22] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 3.2 Patent "Claims" Generally.

### 3.3.    Construction Of The Asserted Claim[23]

It is the Court's duty under the law to define what the patent claims mean. As I instructed you at the beginning of the case, I have made my determinations, I will now instruct you on the meaning, or "construction," of certain claim terms. You must apply the meaning that I give to decide if the asserted claim is infringed or invalid. You must accept my definitions of these words in the claims as being correct. You must ignore any different definitions used by the witnesses or the attorneys.

You are advised that the following definition for the following term appearing in claim 8 of the asserted patent must be applied:

- "identify[ing] a first frequency component having a first spectral power and a second frequency component having a second spectral power by performing a spectral transform operation on the first frame of media samples" means "generate[ing] first and second frequency components by performing a spectral transform operation on the first frame of media samples."

- "frequency component" means "component of a signal generated by transforming the signal data from the time domain to the frequency domain." "determining/determine a first descriptor of the first frame of media samples based on a comparison of the first spectral power and the second spectral power" requires a comparison of two values from a single frame, but other comparisons (such as comparison of two or more values from different frames) are also permitted.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning in the field of the patents.

---

[23] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 3.3 Construction Of The Claims.

### 3.4.    <<Nielsen: Open Ended Or "Comprising" Claims

The beginning portion, or preamble, of the asserted claim has the word "comprising." The word "comprising" means "including the following but not excluding others." A claim that uses the word "comprising" or "including" is not limited to devices having only the elements that are recited in the claim.

If you find, for example, that the accused product includes all of the elements of a particular claim, the fact that the accused product performs additional functions would not avoid infringement of the claim.>>[24][25]

---

[24] <<Nielsen: This instruction is often given in cases involving open ended or "comprising" claims, particularly where it may be relevant to a disputed issue, as it helps clarify the plain and ordinary meaning of such a claim. *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 3.5 Open Ended Or "Comprising" Claims; *see also* Fed. Cir. Bar Association Model Instruction at B.2, 2.1; Final Jury Instructions, *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, C.A. No. 19-1334, D.I. 689 (Mar. 1, 2024), 3.5 Open Ended Or "Comprising" Claims; Final Jury Instructions, *Twinstrand Biosciences, Inc. v. Guardant Health, Inc.*, C.A. No. 21-1126-GBW-SRF, D.I. 494 (Nov. 14, 2023), 3.4 Open Ended or "Comprising" Claims.

[25] {{TVision: The claim construction disputes in this case have been brought to the Court's attention and either have been decided or will be decided by the Court. Any unconstrued portions of the claim should be given their plain and ordinary meaning, which the Court will be instructing the jury. It is therefore unnecessary and improper to instruct the jury on claim construction principles such as the legal meaning of "comprising"; this section should be excluded, as is common in jury instructions. *See e.g.*, *bioMerieux, S.A. et al v. Hologic Inc., et al*, C.A. No. 18-21, D.I. 428 (Feb. 25, 2020); *Magnolia Med. Techs., Inc. v. Kurin, Inc.*, C.A. No. 19-97, D.I. 448 (Aug. 4, 2022); *United States of America v. Gilead Sciences, Inc. et al*, C.A. No. 19-2103, D.I. 464 (May 8, 2023).}}

### 3.5.    Patent Term

A patent's term begins the day it issues and lasts until its expiration. The '889 patent was granted on August 24, 2010, and expired on March 5, 2026. <<Nielsen: If you find that TVision infringed claim 8 of the '889 patent, the fact that the patent has since expired has no effect on whether the TVision is liable for those past actions.[26] >>[27]

---

[26] <<Nielsen: This instruction is important to clarify for jurors that the expiration of the patent does not affect liability for past actions. *See* 35 U.S. Code § 154(a)(2). Nothing in this instruction suggests damages may be found prior to the date of first infringement. Nielsen proposed several rounds of edits to address TVision's concern, but TVision has not indicated a willingness to agree in any form to an instruction on how the patent's expiration does not affect liability for past actions.>>

[27] {{TVision: Nielsen's proposed language incorrectly suggests that damages may be found prior to the date of first alleged infringement, which the parties agree is May 1, 2018—not the issue date of the patent.  Nielsen's language is unnecessary because the parties have agreed to an instruction concerning the appropriate damages window.  *See* 6.2. *See e.g.*, *United States of America v. Gilead Sciences, Inc. et al*, C.A. No. 19-2103, D.I. 464 (May 8, 2023); *Attentive Mobile Inc. v. Stodge Inc. d/b/a Postscript*, C.A. No. 23-87, D.I. 789 (Aug. 28, 2025); *bioMerieux, S.A. et al v. Hologic Inc., et al*, C.A. No. 18-21, D.I. 428 (Feb. 25, 2020); *Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp. d/b/a Wabtec Corp. et al*, C.A. No. 16-284, D.I. 442 (Jan. 23, 2019).}}

## 4.  INFRINGEMENT[28]

I will now instruct you as to the rules you must follow when deciding whether Nielsen has proven that TVision has infringed any of the claims of the '889 patent.

### A.  Infringement - Generally[29]

In this case, Nielsen asserts that TVision has infringed the '889 patent. TVision is liable for infringing Nielsen's patent if you find that Nielsen has proven that it is more likely than not that TVision made, used, imported, offered to sell, or sold the invention defined in at least one claim of Nielsen's patent during the term of the '889 patent.

---

[28] *See* AIPLA Model, 3.0—Infringement Generally; *see also* Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 4.1 Infringement Generally; Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 4.1 Patent Laws.

[29] *See* AIPLA Model, 3.1— Direct Infringement—Knowledge of the Patent and Intent to Infringe Are Immaterial.

<<Nielsen: A party can infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement, even if the infringement is done by something acquired from a vendor or supplier.>>[30][31]

### 1. Literal Infringement[32]

In this case, TVision is accused of literal infringement. To determine literal infringement, you must compare the accused product with the asserted claim to determine whether each and every one of the requirements of the claim is satisfied.

A patent claim is literally infringed only if the product or process includes each and every limitation in that patent claim. If the accused product does not contain one or more elements or steps recited in a claim, there is no literal infringement. <<Nielsen: The presence

---

[30] <<Nielsen: This instruction helps clarify the law by explaining that infringement does not require knowledge of the patent, and is not biased towards either party. *See* Final Jury Instructions, *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, C.A. No. 19-1334, D.I. 689 (Mar. 1, 2024), 4.2 Direct Infringement ("A power plant can directly infringe a patent without knowing of the patent or without knowing that what the power plant is doing is patent infringement. . . . ME2C is not required to prove that any power plant was aware of any of the asserted patents, or that the power plant knew its conduct directly infringed."); Final Jury Instructions, *Persawver, Inc. v. Milwaukee Elec. Tool Corp.*, C.A. No. 21-cv-00400-GBW, D.I. 240 (Dec. 11, 2023), 4.2 Direct Infringement ("A party can directly infringe a patent without knowing of the patent or without knowing that what it was doing is patent infringement."); Final Jury Instructions, *Twinstrand Biosciences, Inc. v. Guardant Health, Inc.*, C.A. No. 21-1126-GBW-SRF, D.I. 494 (Nov. 14, 2023), 4.1 Patent Infringement Generally ("Guardant may infringe a patent unknowingly—that is, without knowledge that what one is doing infringes a patent. Guardant may also infringe while believing in good faith that a particular action does not infringe any patent."); Final Jury Instructions, *Cao Lighting, Inc. v. Gen. Elec. Co. Consumer Lighting (U.S.), LLC*, C.A. No. 20-681-GBW, D.I. 405 (Feb. 17, 2023), H. Direct Infringement – Literal ("One may directly infringe a patent unknowingly—that is, without knowledge that what one is doing is an infringement of the patent. One may also infringe while believing in good faith that a particular action is not an infringement of any patent."); Final Jury Instructions, *Integra Lifesciences Corp. v. Hyperbranch Medical Technology, Inc.*, No. 15-819-LPS-CJB, D.I. 749 (June 7, 2018), 4.1 Direct Infringement.

[31] {{TVision: Nielsen's proposed language is unnecessary and biased towards Nielsen's specific allegations in this case.}}

[32] *See* AIPLA Model, 3.2— Direct Infringement—Literal Infringement.

of other elements or additional steps in the accused product beyond those claimed, however, does not avoid infringement, as long as every claimed element is present.>>[33][34]

---

[33] <<Nielsen: This instruction is necessary because TVision suggested at the summary judgment hearing that the presence of additional elements may avoid infringement . *See* Feb. 26, 2026 Hearing Tr. at pp. 28-30; 59-60. It is also commonly included in jury instructions. *See* Final Jury Instructions, *Twinstrand Biosciences, Inc. v. Guardant Health, Inc.*, C.A. No. 21-1126-GBW-SRF, D.I. 494 (Nov. 14, 2023), 4.2 Literal Infringement ("You should note, however, that the presence of other claims in Guardant's Accused Products and Services beyond those claimed does not avoid infringement so long as every claimed element is present in an accused product or service."); Final Jury Instructions, *Cao Lighting, Inc. v. Gen. Elec. Co. Consumer Lighting (U.S.), LLC*, C.A. No. 20-681-GBW, D.I. 405 (Feb. 17, 2023), H. Direct Infringement – Literal ("You should note, however, that the presence of other elements in the Accused Product beyond those claimed does not avoid infringement as long as every claimed element is present.")>>

[34] {{TVision: Nielsen's proposed language is unnecessary and could confuse the jury's understanding of how to decide infringement.  As such, it is not included in various jury instructions. *See e.g.*, *Attentive Mobile Inc. v. Stodge Inc. d/b/a Postscript*, C.A. No. 23-87, D.I. 789 (Aug. 28, 2025); *Midwest Energy Emissions Corp. et al. v. Arthur J. Gallagher & Co., et al.*, C.A. No. 19-1334, D.I. 689 (Mar. 1, 2024); *bioMerieux, S.A. et al v. Hologic Inc., et al*, C.A. No. 18-21, D.I. 428 (Feb. 25, 2020); *Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp. d/b/a Wabtec Corp. et al*, C.A. No. 16-284, D.I. 442 (Jan. 23, 2019); *Magnolia Med. Techs., Inc. v. Kurin, Inc.*, C.A. No. 19-97, D.I. 448 (Aug. 4, 2022).}}  TVision does not intend to argue non-infringement based on the presence of additional elements in the accused products, and, to the extent it does, the Court can decide whether including this instruction is necessary before charging the jury.

### 2.    Doctrine of Equivalents[35]

If you decide that TVision does not literally infringe claim 8 of the '889 patent, you must then decide whether Nielsen has shown by a preponderance of the evidence that TVision infringes claim 8 of the '889 patent under what is called the "doctrine of equivalents." Under the doctrine of equivalents, an accused product can infringe an asserted patent claim if it includes components that are equivalent to those elements of the claim that are not literally present. If TVision does not literally infringe and the accused product is missing an equivalent to even one element of the asserted claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim and decide whether includes a component equivalent to each individual claim element that is not literally present.

One way of showing that a component is an equivalent of a claimed element is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused system. Another way of showing that a component is an equivalent of a claimed element is to show that it is insubstantially different from the claimed element.

In deciding whether a claim element and a component are equivalents, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the component with the claimed element. However, known interchangeability between the claim element and the component of the accused system is not necessary to find infringement under the doctrine of equivalents.

---

[35] *See* AIPLA Model, 3.7 — Direct Infringement—Infringement under the Doctrine of Equivalents.

### 3. Reverse Doctrine of Equivalents[36]

One other note on infringement. Even if you find that the accused product falls within the literal scope of the asserted claim, TVision may theoretically avoid a finding of infringement under what is known as the "reverse doctrine of equivalents." Under this doctrine, TVision must prove that the accused product or process, although literally falling within the scope of the patent claim, is so fundamentally different from the patented invention that, in substance and purpose, the accused product does not appropriate the patented invention.

To succeed on this defense, TVision must demonstrate that the accused product, despite literally satisfying each and every limitation of the asserted claim, has been so fundamentally changed in principle from the patented invention that it performs the same or a similar function in a substantially different way. It is not sufficient for TVision to show merely minor differences between the accused product and the patented invention. Rather, TVision must prove that the accused product works in a substantially different way, achieves a substantially different result, or embodies a fundamentally different inventive concept such that it would be unjust to find infringement despite literal claim coverage. <<Nielsen: You should bear in mind that it is only in rare circumstances that a product that literally satisfies every element of a patent claim will nonetheless be found to be non-infringing under this doctrine.>>[37][38]

---

[36] *See Steuben Foods, Inc. v. Shibuya Hoppmann Corporation*, 127 F.4th 348 (Fed. Cir. 2025).

[37] The reverse doctrine of equivalents is an "exception that is rarely applied," and the instructions should address the high bar for this defense. *Arbutus Biopharma Corp. v. Moderna, Inc.*, Case No. 1:22-cv-00252-JDW, 2026 WL 512462, at *4 & n.9 (D. Del. Feb. 24, 2026) (describing reverse doctrine of equivalents as "unusual or appl[ying] only rarely"); *Steuben Foods, Inc. v. Shibuya Hoppmann Corporation*, 127 F.4th 348 (Fed. Cir. 2025) ("We have never affirmed a decision finding noninfringement based on the reverse doctrine of equivalents."); D.I. 432.

[38] {{TVision: Stating that only the most rare circumstances warrants application of the reverse doctrine of equivalents is unfairly prejudicial to TVision; the inclusion of this language suggests a different and higher burden of proof. This Court should follow the example set by other courts and exclude such language. *See, e.g.*, *Magnolia Med. Techs., Inc. v. Kurin, Inc.*, C.A. No. 19-97, D.I. 448 (Aug. 4, 2022), 4. Direct Infringement; *AVM Techs. LLC v. Intel Corp.*, C.A. No. 15-33,

## 5.    INVALIDITY[39,40]

### 5.1.    Invalidity – Generally

Patent invalidity is a defense to patent infringement. The granting of a patent by the United States Patent and Trademark Office carries with it the presumption that the patent is valid. The law presumes that the Patent and Trademark Office acted correctly in issuing the patent. The asserted claim is presumed valid independently of the validity of each other claim. Nevertheless, when the validity of a patent has been put at issue as part of patent litigation, it is the responsibility of the jury to review what the Patent Office has done consistent with the Court's instructions on the law. However, the fact that a patent application is rejected or amended before the patent is issued has no bearing on its ultimate validity.

Defendants have asserted as a defense to patent infringement in this case that the asserted claim of the '889 patent is invalid. <<Nielsen: For Defendants to prove invalidity, all facts relevant to invalidity must be proven by clear and convincing evidence.  As I explained earlier, clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.>>[41] {{TVision: Even though the Patent Office examiner allowed

---

D.I. 719 (May 8, 2017), 4.2 Limitations on Infringement – The Reverse Doctrine of Equivalents.}}

[39] *See* AIPLA Model, 3.0—Infringement Generally; *see also* Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (June 19, 2017), 4.1 Infringement Generally; Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 4.1 Patent Laws.

[40] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 5.1 Invalidity Generally.

[41] <<Nielsen: Courts typically repeat the clear and convincing standard of proof in the invalidity section of jury instructions. *See, e.g.*, *WR Grace & Co.-Conn. V. Elysium Health, Inc.*, C.A. No. 20-1098-GBW, D.I. 310 (Aug. 25, 2023), 4.1 Invalidity – Burden of Proof; *Persawvere, Inc. v. Milwaukee Elc. Tool Corp.*, C.A. No. 21-cv-00400-GBW, D.I. 240 (Dec. 11, 2023), 5.1 Patent Invalidity – Generally.  Indeed, TVision's own cited authority for its proposal in this section includes this statement. *See Osseo Imaging, LLC v. Planmeca USA Inc.*, C.A. No. 17-1386, D.I. 188 (Aug. 26, 2022), 37. Invalidity Generally; *Sunoco Partners Marketing & Terminals LP v.*

29

the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are proven to be invalid. For a patent to be valid, the subject matter claimed in the individual claims of the patent must be new and non-obvious. A patent cannot take away from the right of anyone who wants to use what was already known or used by others, or what would have been obvious to those of skill in the art at the time the invention was made.

TVision alleges that claim 8 of the '889 patent is invalid because it claims unpatentable subject matter, is anticipated by the prior art, is rendered obvious by the prior art, lacks written description support, and is not enabled.

I will now instruct you in more detail why TVision alleges that claim 8 of the '889 patent is invalid.[42]}}[43]

---

*Powder Springs Logistics, LLC et al*, C.A. No. 17-1390, D.I. 766 (Dec. 3, 2021), 4.1. Invalidity Generally.

[42] This section contains an instruction explaining that patents have a presumption of validity, and that TVision must overcome that presumption for the claim to be found invalid. It is therefore proper to explain the related point that the presumption is not absolute, and that it is ultimately the jury's responsibility to decide whether TVision has met its burden. In order to do so, it is helpful for the jury to explain what circumstances might cause a patent to be invalid, such as obviousness. Such instructions are common. *See e.g.*, *Osseo Imaging, LLC v. Planmeca USA Inc.*, C.A. No. 17-1386, D.I. 188 (Aug. 26, 2022), 37. Invalidity Generally; *Sunoco Partners Marketing & Terminals LP v. Powder Springs Logistics, LLC et al*, C.A. No. 17-1390, D.I. 766 (Dec. 3, 2021), 4.1. Invalidity Generally.  Nielsen's proposed language also repeats the burden of proof, which the jury will already have been instructed on in Section 1.14.

[43] <<Nielsen: TVision's proposed additions are both unnecessary and confusing for the jury. This entire section of the jury instructions explains the circumstances under which patents may be found invalid; the presumption of validity is clearly not absolute, since this section would serve no purpose if it were. TVision's proposed addition attempts to undercut the earlier instruction setting forth the presumption of validity. Such instructions are not common, as TVision suggests, and there are numerous examples of instructions that include no such statement.  *See, e.g.*, *bioMerieux, S.A. et al v. Hologic Inc., et al*, C.A. No. 18-21, D.I. 428 (Feb. 25, 2020), 5. Invalidity Defenses; *Integra Lifesciences Corp. v. Hyperbranch Medical Technology, Inc.*, No. 15-819-LPS-CJB, D.I. 749 (June 7, 2018), 5. Invalidity Defenses;  *WR Grace & Co.-Conn. V. Elysium Health, Inc.*, C.A. No. 20-1098-GBW, D.I. 310 (Aug. 25, 2023), 4.1 Invalidity – Burden of Proof; *Persawvere, Inc. v. Milwaukee Elc. Tool Corp.*, C.A. No. 21-cv-00400-GBW, D.I. 240 (Dec. 11, 2023), 5.1 Patent Invalidity – Generally.>>

30

### 5.2.    Prior Art[44]

For someone to be entitled to a patent, the invention must actually be "new" and not obvious in view of what came before, which is referred to as the prior art. Prior art is considered in determining whether the asserted claim of the asserted patent would have been obvious to a person of skill in the art at the time of the invention.

Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, or products, systems, or technologies that disclose the claimed invention or elements of the claimed invention.

TVision contends that the following is prior art to the '889 Patent:

- United States Patent Application Publication No. 2002/0178410 A1 to Haitsma et al. (referred to as "Haitsma");

- United States Patent Application Publication No. 2002/0083060 A1 to Wang et al. (referred to as "Wang");

- European Patent No. 1,387,514 to Zheng et al. (referred to as "Zheng");

- United States Patent No. 5,313,531 to Jackson et al. (referred to as "Jackson").

---

[44] *See* Fed. Cir. Bar Association Model, B4.3, 4.3a-1 (Prior Art).

31

### 5.3.    Anticipation[45]

A party may claim a patent is invalid under a theory of anticipation. In order for someone to be entitled to a patent, the invention must actually be new. In general, inventions are new when the identical invention as claimed has not been used or disclosed before. If the claim is not new, we say that it was "anticipated" by prior art. A claim that is "anticipated" by the prior art is not entitled to patent protection.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation.

To anticipate the invention, the disclosure in the prior art reference does not have to use the same words as the claim, but all of the requirements of the claim must be there, either stated expressly or inherently, so that someone of ordinary skill in the art to which the claimed invention pertains, looking at that one reference, could make and use the claimed invention. Prior art inherently anticipates a patent claim if the missing element or feature would necessarily result from what the prior art teaches to persons of ordinary skill in the art.[46]

Thus, for purposes of anticipation, you should consider that which is expressly stated or present in the item of prior art and also that which is inherently present. <<Nielsen: Where Defendants are relying on prior art that was previously considered by the PTO, such evidence may carry less weight than evidence not previously considered by the PTO. You should evaluate whether the evidence presented by the Defendants is materially new compared to the evidence considered by the PTO. If you determine that it is not, you should consider that fact when

---

[45] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 5.3 Anticipation; *see also* Fed. Cir. Bar Association Model at B4.3, 4.3b-1 (Anticipation).
[46] *See* Fed. Cir. Bar Association Model, Section 6.0 (Anticipation).

determining whether an invalidity defense has been proved by clear and convincing evidence.[47]>>[48]

In this case, TVision alleges that the asserted claim of the '889 patent is anticipated by Haitsma. TVision must convince you that the claim was anticipated by clear and convincing evidence.

---

[47] <<Nielsen: Instructing the jury on the proper weight of evidence cannot improperly bias the jury, as TVision claims. Courts routinely instruct the jury that evidence considered by the PTO may carry less weight and to evaluate whether evidence is materially new. *See, e.g.*, *Osseo Imaging, LLC v. Planmeca USA Inc.*, C.A. No. 17-1386, D.I. 188 (Aug. 26, 2022), 39 Patent Invalidity: Prior Art Not Considered By Patent Office ("Where a party challenging the validity of a patent is relying on prior art that was not considered by the PTO during examination you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity."); *Stebuen Foods, Inc. v. Shibuya Hoppman Corp.*, C.A. No. 19-02181-CFC-CJB, D.I. 784 (Nov. 18, 2021), 5.5 Prior Art Considered Or Not Considered By The USPTO ("If the USPTO did consider an anticipatory prior art reference or the same combination of references that are now asserted in an invalidity defense, it may be more difficult for Shibuya and Hood to meet its burden of proof."); *Integra Lifesciences Corp. v. Hyperbranch Medical Technology, Inc.*, No. 15-819-LPS-CJB, D.I. 749 (June 7, 2018), 6.2 Prior Art Considered Or Not Considered By USPTO ("This burden may be more difficult to meet when the accused infringer attempts to rely on prior art that was before the Patent Examiner during prosecution."); *GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.*, Civ. No. 1:14-cv-00878, D.I. 440 (Jun. 19, 2017), 5.1 Invalidity Generally ("This burden may be more difficult to meet when the accused infringer attempts to rely on prior art that was before the patent examiner during prosecution."); *Persawvere, Inc. v. Milwaukee Elc. Tool Corp.*, C.A. No. 21-cv-00400-GBW, D.I. 240 (Dec. 11, 2023), 5.7 The Duty to Disclose Information Material to Patentability ("In considering invalidity, you may consider whether the evidence before you is materially new compared to the evidence before the Patent Office during prosecution."); *Microsoft Corp. v. I4I Ltd. Partnership*, 564 U.S. 91, 110-11 (2011).

[48] {{TVision: An instruction that prior art considered by the PTO may carry less weight than other evidence will serve only to improperly bias the jury against such art. The jury will have already been instructed on the PTO's role in granting a patent; a further instruction concerning the weight of art considered by the PTO will skew the jury's presumption further than necessary or appropriate. Courts often exclude such an instruction accordingly. *See e.g.*, *Attentive Mobile Inc. v. Stodge Inc. d/b/a Postscript*, C.A. No. 23-87, D.I. 789 (Aug. 28, 2025); *Midwest Energy Emissions Corp. et al. v. Arthur J. Gallagher & Co., et al.*, C.A. No. 19-1334, D.I. 689 (Mar. 1, 2024); *bioMerieux, S.A. et al v. Hologic Inc., et al*, C.A. No. 18-21, D.I. 428 (Feb. 25, 2020); *Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp. d/b/a Wabtec Corp. et al*, C.A. No. 16-284, D.I. 442 (Jan. 23, 2019); *Magnolia Med. Techs., Inc. v. Kurin, Inc.*, C.A. No. 19-97, D.I. 448 (Aug. 4, 2022).}}

### 5.4.    Obviousness[49, 50]

<<Nielsen: Another basis for claiming that a patent is invalid is obviousness. Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. Obviousness may be shown by considering one or more than one item of prior art.

TVision contends that the asserted claim of the '889 patent is invalid based on obviousness. TVision bears the burden of proving obviousness by clear and convincing evidence. TVision must show that the claimed invention would have been obvious to a person having ordinary skill in the art at the time the invention was made. In determining whether the claimed invention was obvious, you should not use hindsight, such as by using the '889 patent as a roadmap to select from the prior art and retrace the path of the inventors. In other words, you should only consider what was known prior to the invention date, without the benefit of the '889 patent and what it teaches.

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made. The existence of each and every element of the claimed invention in the prior art does not necessarily

---

[49] <<Nielsen: TVision's proposed "streamlined" instructions omit important information and context that a jury should have when considering the question of obviousness. Nielsen's proposal walks the jurors step-by-step through the critical aspects of obviousness, as set forth in prior example instructions. *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 5.4 Obviousness—Generally; *see also* AIPLA model at section 7.0.>>

[50] {{TVision: The parties appear to be aligned on substance for the obviousness instruction, but TVision proposes a formulation based on *VB Assets v. Amazon*, which is more streamlined and clearer for the jury. *See* Final Jury Instructions, *VB Assets, LLC v. Amazon*, C.A. No. 19-1410 at D.I. 288 (D. Del. 2023), II.I Invalidity – Obviousness.}}

prove obviousness. Most, if not all, inventions rely on building blocks of prior art. To show obviousness, the law does not require that the prior art prove, to a statistical certainty, that the claimed result would work. In the context of obviousness, only a reasonable expectation of success is required, not conclusive proof or absolute predictability. You must put yourself in the place of a person of ordinary skill in the art at the time of invention. In addition, you may consider whether there was a reason to combine or modify the prior art references in the fashion claimed by the patent at issue. To find that the prior art rendered a claimed invention obvious, you must find that a person having ordinary skill in the art would have had a reasonable expectation of successfully accomplishing the claimed method.

In determining obviousness or non-obviousness of the subject matter of the asserted claim, you should take the following steps, which I will explain further in just a moment:

1.      Determine the scope and content of the prior art;

2.      Identify the differences, if any, between each asserted claim and the prior art; and

3.      Determine the level of ordinary skill in the pertinent art at the time the invention of the patent was made.

4.      Consider objective factors of non-obviousness ("secondary considerations"), if any, that indicate that the invention was obvious or not obvious.

Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious or nonobvious to a person of ordinary skill in the pertinent art.

In this case, Defendants allege that the asserted claim of the '889 patent is rendered obvious by the following references: Haitsma; Haitsma in view of Zheng; Wang 2002; and Wang 2002 in view of Jackson and Zheng.

35

### 1.    Scope and Content of the Prior Art [51]

In determining obviousness, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem that the inventors faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the claimed invention was trying to solve. The prior art may include any of the items discussed above if you determine that TVision has met its burden of proving that the item qualifies as prior art.

---

[51] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. 19-742-LPS, D.I. 526 (January 22, 2020), 5.5 Scope And Content Of The Prior Art.

### 2. Differences Between The Claimed Invention And Prior Art [52]

Second, you should analyze whether there are any relevant differences between the prior art taken as a whole and the asserted claim of the '889 patent from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole and not merely some portion of it.

In analyzing the differences between the claimed invention and the prior art, you do not need to look for a precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason

---

[52] *See* AIPLA Model, Section 7.2.

could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense. Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

### 3.    Level Of Ordinary Skill [53]

Third, you must consider the perspective of a person of ordinary skill in the art, as explained previously. This person is presumed to know all the prior art that you have determined to be reasonably relevant. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include: (1) the educational level and experience of people working in the field; (2) the types of problems faced by workers in the art at the time of the invention and the solutions found to those problems; (3) the prior art patents, products or devices, and publications; and (4) the sophistication of the technology in the field at the time of the invention, including how rapid innovations were made in the art at the time of the invention.

Nielsen contends that a person of ordinary skill in the art of the patent would have a working knowledge of basic computer technology and automatic content recognition technology. According to Nielsen, the person would gain this knowledge through either (i) an undergraduate Bachelor of Science degree in Computer Science or Electrical Engineering or a comparable field, and at least three years of work experience in relevant fields; or (ii) a Master's degree in Computer Science or Electrical Engineering and at least one year of work experience in relevant fields.

TVision contends that a person of ordinary skill in the art of the patent would have a working knowledge of basic computer technology and content recognition technology. According to TVision, this person would gain this knowledge through either (i) an undergraduate Bachelor of Science degree in Computer Science or Electrical Engineering or a comparable field,

---

[53] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 5.7 Level Of Ordinary Skill.

and at least three years of work experience in relevant fields; or (ii) a Master's degree in Computer Science or Electrical Engineering and at least one year of work experience in relevant fields.>>

{{TVision: A claimed invention is invalid as "obvious" if it would have been obvious to the person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would have been obvious to you as a layperson or to me as the judge, or to a genius in the relevant field, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In this case, TVision contends that the asserted claims are invalid for obviousness. In determining whether an asserted claim is obvious, you must first consider the level of ordinary skill in the pertinent field that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the asserted claims. You must determine what is the level of ordinary skill according to the instruction I gave you earlier.

Second, you must determine what is the prior art that may be considered in determining whether the asserted claims are obvious. A prior art reference may be considered if it discloses information designed to solve any problems or need addressed by the patent or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve any problem or need addressed by the patent.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art. In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the asserted patents. As I instructed you earlier, you must put yourself in the place of a person of ordinary skill in the art

40

at the time the invention was made.

Obviousness may be shown by considering one or more than one item of prior art. In addition, you may consider whether there was a reason to combine or modify the prior art references in the fashion claimed by the patent at issue, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success in achieving the claimed invention.

In this case, TVision alleges that the asserted claim of the '889 patent is obvious based on:

- Haitsma alone;

- Haitsma in combination admitted prior art, Zheng, and/or Kenyon; and

- Wang in combination with Haitsma, Kenyon, Zheng and/or Jackson.

If you find that the asserted claim was obvious by clear and convincing evidence, you must find that claim invalid.}}

41

### 4.    Secondary Considerations[54]

Before deciding the issue of obviousness for the claimed invention, you must also consider any objective evidence (sometimes called "objective indicia" or "secondary considerations"), which may help to determine whether the invention would have been obvious. No consideration alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole. For this matter, the only consideration you need to consider is whether the invention was commercially successful at least in part as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities).

Nielsen has the burden to show evidence of this "objective indicia" or "secondary considerations" and to show that there is a connection, sometimes called a "nexus," between the evidence showing any of these factors and the claimed invention, if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. However, TVision always maintains the ultimate burden to show obviousness by clear and convincing evidence, taking into account any objective indicia that you may find.

---

[54] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 5.4 Obviousness—Generally; *see also* AIPLA model at section 7.0; Final Jury Instructions, *VB Assets, LLC v. Amazon*, C.A. No. 19-1410 at D.I. 288 (D. Del. 2023), II.I Invalidity – Obviousness.

## 5.5.    Written Description[55]

TVision contends that the asserted claim of the '889 patent is invalid for failure to satisfy the written-description requirement. TVision bears the burden of establishing by clear and convincing evidence that the specification fails to satisfy the written-description requirement.

A patent must contain a written description of the invention claimed in the patent. The written-description requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written-description requirement, the patent specification must describe each and every limitation of a patent claim, with clear, concise, and exact terms. When determining whether the specification discloses the claimed invention, the claim must be viewed as a whole.

The written-description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter claimed in the patent. The written-description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims may have been changed or new claims added since that time.

The exact words found in the claim need not be used. It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required. Enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the claimed invention. In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1.    the nature and scope of the patent claims;

---

[55] Adapted from AIPLA Model, 9 — Written Description Requirement.

2.      the complexity, predictability, and maturity of the technology at issue;

3.      the existing knowledge in the relevant field; and

4.      the scope and content of the prior art.

If you find that TVision has proven by clear and convincing evidence that the '889 patent does not contain adequate written description for the invention recited in claim 8, then you must find that claim 8 is invalid.

### 5.6.    Enablement[56]

TVision contends that claim 8 of the '889 patent is invalid for lack of enablement. TVision bears the burden of establishing by clear and convincing evidence that the specification fails to satisfy the enablement requirement.

A patent must disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention as of the effective filing date of the claimed invention to make and use the full scope of the claimed invention without undue experimentation. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention. Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain.

The fact that some experimentation may be required for a person of ordinary skill in the field of the invention to practice the claimed invention does not mean that a patent does not meet the enablement requirement. Factors that you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include:

1.    the quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques;

2.    the amount of direction or guidance disclosed in the patent;

3.    the presence or absence of working examples in the patent;

4.    the nature of the invention;

5.    the state of the prior art;

---

[56] Adapted from AIPLA Model, 8 — Enablement.

6.      the relative skill of those in the art;

7.      the predictability of the art; and

8.      the breadth of the claims.

### 5.7.    Indefiniteness[57]

TVision contends that the asserted claim of the '889 patent is invalid because the language of the claim is indefinite. The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the art reading them is able to determine what the claims cover and what they do not cover. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art, and the description of the invention contained in the patent. A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the art what the patent claims cover. Simply because claim language may not be precise does not automatically mean that the claim is indefinite. The claim language need only be as precise as the subject matter permits.

---

[57] *See* Final Jury Instructions, *Pacific Biosciences v. Oxford Nanopore*, Civ. No. 1: 17-cv-275, D.I. 476 (March 17, 2020), 6.6 Indefiniteness.

47

### 5.8.     Patent Eligibility[58] [59]

TVision contends that the asserted claim is invalid because it claims subject matter that is not eligible for patent protection. On the verdict form I provide, you will be asked to provide an advisory opinion on the issue of patent eligibility. You must decide if TVision has proven by clear and convincing evidence that the elements in this claim, considered individually and as an ordered combination, involve only activities which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of their effective filing dates.

Whether a particular technology was well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something was disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional. In determining whether a patent claim involves the performance of well-understood, routine, and conventional activities, you may consider statements made in the patent's specification, as well as evidence of the prior art.

---

[58] The parties agree that this section should not be included unless the Court issues a ruling on summary judgment that (1) the '889 Patent is directed to an abstract idea under *Alice* step 1; and (2) there are issues of fact regarding whether the '889 Patent is valid under *Alice* step 2.

[59] *See VB Assets, LLC v. Amazon*, C.A. No. 19-1410 at D.I. 288 (D. Del. 2023).

48

## 6.  DAMAGES

### 6.1.    Damages – Generally[60]

If you find that TVision is liable for infringing the asserted claim, and that the asserted claim is not invalid, you must determine the amount of money damages to be awarded to Nielsen for the infringement.

Nielsen must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely than not.

Although Nielsen is not required to prove the amount of its damages with mathematical precision, it must prove the amount of damages with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

If proven by Nielsen, the amount of damages must be adequate to compensate Nielsen for the infringement. The damages award cannot in any event be less than a reasonable royalty.[61] You may not add anything to the amount of the damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My instructions about damages are for your guidance only in the event you find in favor of Nielsen.

I will now give you more detailed instructions regarding damages.

---

[60] *See* Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Technologies Corp.*, No. 16-284-LPS-CJB, D.I. 442 (January 23, 2019), 8. Damages.

[61] *See* Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Technologies Corp.*, No. 16-284-LPS-CJB, D.I. 442 (January 23, 2019), 8.4 Reasonable Royalty.

### 6.2.    Date Damages Begin and End[62]

Nielsen and TVision agree that the date for the start of any damages calculation is May 1, 2018. The date for the end of any damages is March 5, 2026, the date that the '889 patent expired.

---

[62] AIPLA Model, Section 10.1.1.

### 6.4.    Reasonable Royalty[63]

Nielsen is seeking damages in the amount of a reasonable royalty. If you find that a patent claim is infringed and not invalid, Nielsen is entitled to at least a reasonable royalty to compensate it for that infringement.  A royalty is a payment made to a patent holder in exchange for the right to use the patented invention.

A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in the negotiations. You should assume that both parties to the hypothetical negotiation believed the patent to be valid and infringed and that both parties are willing to enter into a license. You should also assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the use of a patented invention, including the opinion testimony of experts. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. In considering the hypothetical negotiation, you may consider the bargaining power of the parties<<Nielsen:, and whether Nielsen would have required a royalty rate that compensated for the competitive losses it

---

[63] *See* Final Jury Instructions, *GlaxoSmithKline v. Teva*, C.A. 14-878-LPS-CJB.

expected to suffer by granting a license to a rival in the same line of business.[64]>>[65]

---

[64] <<Nielsen: Nielsen's proposed language properly describes a consideration in the hypothetical negotiation, and is neither unnecessary nor unfairly skewed towards either party. *See*, *ICM Controls Corp. v. Honeywell Int'l Inc.*, No. 512CV1766LEKATB, 2021 WL 3403734, at *6 (N.D.N.Y. Aug. 4, 2021) (citing *Mentor Graphics Corporation v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017) ("*Georgia-Pacific* factor five is designed to ensure fair compensation for patent owners whose patents are infringed by a direct competitor even where the higher burden of demonstrating lost profits cannot be satisfied."); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (Factor 5). TVision offers no explanation for why this instruction should be paired with instructions pertaining to lost profits damages, which are not at issue in this case.

[65] {{TVision: Nielsen's proposed language is unnecessary and unfairly skewed towards Nielsen. The jury will be instructed on the *Georgia-Pacific* factors, including the commercial relationship between the parties. *See* Section 6.6. To the extent Nielsen's language is included, corresponding instructions pertaining to lost profits should likewise be included.  FCBA Model Jury Instructions, Sections B.5.2-B.5.4.}}

### 6.5.    Reasonable Royalty—Using the "Hypothetical Negotiation" Method[66]

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between Nielsen and TVision, which takes place at the time when TVision's infringement first began. Of course, we know that the parties in this case did not agree to a license and royalty payment. But, in order to decide on the amount of reasonable royalty damages, you should assume that TVision and Nielsen did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and that both sides were willing to enter into a license. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation. <<Nielsen: Evidence of things that happened after the infringement first began can be considered, if the parties would have foreseen or estimated such evidence during the hypothetical negotiation. Your role is to determine what the license would have looked like had the parties agreed to a license prior to infringement.>>[67][68]

---

[66] *See* Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Technologies Corp.*, No. 16-284-LPS-CJB, D.I. 442 (January 23, 2019), 8.4.1 Reasonable Royalty – Using the "Hypothetical Negotiation" Method.

[67] <<Nielsen: TVision does not explain how the instruction is incomplete or inconsistent with the Court's articulation. Other courts have articulated this instruction similarly. *See*, *e.g.*, *Biomerieux, S.A. v. Hologic, Inc.*, No. 18-21-LPS-CJB, D.I. 428 (Feb. 25, 2020), 9.5 Reasonable Royalty – Timing.

[68] {{TVision: Nielsen's proposed language is an incomplete formulation of the "book of wisdom" principle in patent cases, and is inconsistent with the Court's order regarding use of actual financials. D.I. 451. Moreover, the instruction is unnecessary in view of TVision's proposed instruction 6.8 concerning timing of the reasonable royalty considerations and should be excluded.}}

### 6.6.    {{TVision: Damages – Lump Sum vs. Running Royalty[69]

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty." Either method is designed to compensate the patent holder based on the infringer's use of the patented technology. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

Reasonable royalty awards can take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

Reasonable royalty awards may also take the form of a running royalty based on the revenue from or the volume of sales of licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit.}}[70]

---

[69] FCBA Model Jury Instructions, Section B.5.7.

[70] <<Nielsen: This instruction is unhelpful, as Nielsen is not pursuing a running royalty in this case. It is also confusing to jurors, because it implies that Nielsen could be entitled to a running royalty on future sales even though the '889 patent has already expired.>>

**6.7.    Reasonable Royalty – Factors Relevant to the Hypothetical Negotiation[71]**

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors that the experts may have referenced as "*Georgia Pacific*" factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1.    Any royalties received by the licensor for the licensing of the '889 Patent, proving or tending to prove an established royalty.

2.    The rates paid by TVision to license other patents comparable to the asserted patent.

3.    The nature and scope of a license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.    The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.    The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its nonpatented items; and the extent of such collateral sales.

7.    The duration of the asserted patent, and the term of the license.

8.    The established profitability of the product made under the asserted patent; its commercial success; and its current popularity.

9.    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

---

[71] *See* Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Technologies Corp.*, No. 16-284-LPS-CJB, D.I. 442 (January 23, 2019), 8.4.2 Reasonable Royalty – Attribution/Apportionment.

11. The extent to which TVision has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the {{TVision: realizable}} profit that arises from the patented invention itself as <<Nielsen: opposed to>>[72]{{TVision: distinguished from[73]}} profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by TVision.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing

---

[72] <<Nielsen: TVision's articulation of factor 13 is unnecessarily confusing for a jury. Many courts have issued the instruction as proposed by Nielsen here. *See, e.g.*, *Biomerieux, S.A. v. Hologic, Inc.*, No. 18-21-LPS-CJB, D.I. 526 (Feb. 24, 2020), 9.6 Reasonable Royalty – Relevant Factors to The Hypothetical Negotiation; *Midwest Energy Emissions Corp. et al. v. Arthur J. Gallagher & Co.*, C.A. No. 19-1334, D.I. 689 (Mar. 1, 2024), 5.2 Reasonable Royalty – Using The "Hypothetical Negotiation" Method; *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, C.A. No. 15-1168, D.I. 341 (Jan. 25, 2024), 6.10 Reasonable Royalty – Factors; *Siemens Mobility, Inc. v. Westinghouse Air Brake Technologies Corp.*, No. 16-284-LPS-CJB, D.I. 442 (January 23, 2019), 8.4.1 Reasonable Royalty – Using the "Hypothetical Negotiation" Method; *VB Assets, LLC v. Amazon*, C.A. No. 19-1410, D.I. 288 (Nov. 8, 2023), III.D Reasonable Royalty – Factors Relevant to the Hypothetical Negotiation.

[73] *See e.g.*, *TwinStrand Biosciences, Inc. et al v. Guardant Health, Inc.*, C.A. No. 21-1126, D.I. 494 (Nov. 14, 2023), 5.3 Reasonable Royalty – Factors; *CAP-XX, Ltd. v. Maxwell Techs., Inc.*, C.A. No. 19-1733, D.I. 314 (Dec. 15, 2023), 14.4 Factors for Determining a Reasonable Royalty; *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125, D.I. 605 (May 12, 2023), 6.10 Reasonable Royalty – Factors; *Attentive Mobile Inc. v. Stodge Inc. d/b/a Postscript*, C.A. No. 23-87, D.I. 789 (Aug. 28, 2025), 7.D. Reasonable Royalty – Relevant Factors; *CogniPower LLC v. Fantasia Trading LLC d/b/a Anker Direct*, C.A. No. 19-229, D.I. 475 (Aug. 22, 2025), 13.3 Factors for Determining a Reasonable Royalty; *Graco Inc. et al v. Carlisle Construction Materials, LLC*, C.A. No. 21-245, D.I. 540 (Dec. 12, 2024), 6.3 Reasonable Royalty – Factors; *Jazz Pharmas., Inc. et al v. Avadel Pharmas. plc et al*, C.A. No. 21-1594, D.I. 456 (Mar. 1, 2024), 6.4 Factors for Determining Reasonable Royalty; *Express Mobile, Inc. v. GoDaddy.Com, LLC*, C.A. No. 19-1937, D.I. 327 (Mar 3, 2023), 6.4 Reasonable Royalty – Relevant Factors; *CAO Lighting, Inc. v. GE Lighting, Inc. et al*, C.A. No. 20- 681, D.I. 405 (Feb. 17, 2023), II.D. Reasonable Royalty – Relevant Factors to the Hypothetical Negotiation; *Shopify Inc. et al v. Express Mobile, Inc.*, C.A. No. 19-439, D.I. 417 (Aug. 30, 2022), 6.4 Reasonable Royalty: Relevant Factors.

to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

### 6.8.    Reasonable Royalty – <<Nielsen: Attribution/>>Apportionment[74,75]

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or TVision's size or market position. {{TVision: A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.[76]}}[77]

In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

<<Nielsen: There are two related circumstances in which apportionment is not necessary. First, if Nielsen proves that the patented technology and the other, unpatented features of that technology are inseparable portions of a single functional unit, the patented and unpatented

---

[74] <<Nielsen: *See* Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Technologies Corp.*, No. 16-284-LPS-CJB, D.I. 442 (January 23, 2019), 8.4.2 Reasonable Royalty – Attribution/Apportionment.>>

[75] {{TVision: *See* Final Jury Instructions, *VB Assets, LLC v. Amazon*, C.A. No. 19-1410 at D.I. 288 (D. Del. 2023), III.E Reasonable Royalty – Apportionment.}}

[76] FCBA Model Jury Instructions, Section B.5.12.

[77] <<Nielsen: This instruction is unhelpful, confusing, and duplicative of the first sentence in this section. It also improperly claims that any damages award *must* be apportioned, when Nielsen's proposed instructions in the next two paragraphs expressly describe circumstances where apportionment is not necessary.>>

58

features constitute a convoyed sale that does not require apportionment.[78] Second, you may find that the patented feature is the entire basis for customer demand for the product, which may support a royalty at a rate of 100% of the value of the product. In determining whether such an award is appropriate, you should consider whether the patented feature is so essential to TVision's product that it not only drives the sale of the product itself, but also causes the customer to purchase related, non-patented features of the product at the same time.[79]>>

{{TVision: According to the "entire market value rule," a royalty based on the total value of a multi component product is only proper where the entire value of the product comes from the patented feature. Nielsen is not permitted to recover damages based on the entire market value of the accused products unless Nielsen proves that the claimed patented features are the sole driving factor for customers' demand.  It is not enough for Nielsen to show that the patented feature is viewed as valuable, important, or even essential to the use of the accused product. It is also not enough for Nielsen to show that the accused product is commercially unviable without the patented feature. Unless you find that the claimed invention is the sole driving factor for customers' demand for the accused product, Nielsen may not use the value of the entire product to calculate a reasonable royalty.

If the claimed patented features are not the sole driving factor for customer demand for the accused infringing product, then you must perform apportionment. When damages must be apportioned, the amount you find as damages must be based on the value attributable to the

---

[78] <<Nielsen: This language is necessary to clarify for the jury the scenarios in which apportionment is not required. TVision does not explain why or how this paragraph misstates any legal standard. *See Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (en banc); *see also, e.g., Daedalus Blue, LLC v. Microstrategy Inc.*, No. 2:20-CV-551, 2023 WL 5598456, at *5 (E.D. Va. Aug. 29, 2023).>>

[79] *See Intellectual Ventures I, LLC v. Symantec Corp.*, C.A. No. 10-1067, Memorandum Order (D. Del. January 23, 2015).>>

patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Nielsen's size or market position. Put differently, when apportionment is required, a royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more.[80]}}[81]

---

[80] FCBA Model Jury Instructions, Section B.5.12. Nielsen's proposed language misstates the legal standard. *Rite Hite* deals with lost profits, which is not at issue in this case, and the portion of *Rite-Hite* Nielsen cites is dicta. *See Rite-Hite*, 56 F.3d at 1550-51 (reversing award of damages for unpatented device). Moreover, *Rite-Hite* does not do away with the apportionment requirement. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012); *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1326-27 (Fed. Cir. 2014).

[81] <<Nielsen: This instruction is unhelpful, because Nielsen has expressly stated that it has *not* applied the Entire Market Value Rule. *See* D.I. 351-1, Ex. 15, ¶ 60. This instruction is also unfairly biased towards TVision. Even if the entire market value rule were at issue here, the FCBA model instructions include three paragraphs, but TVision has only included the first two which favor its position. TVision omits the following paragraph:

"On the other hand, if demand for the entire accused product depends only on the claimed feature(s), then apportionment is not necessary even though the accused product includes nonpatented features."

TVision's attempt to insert biased and irrelevant instructions at the last minute should be rejected. But to the extent the Court disagrees, it should include the missing paragraph that reduces the bias favoring TVision.>>

### 6.9.    {{TVision: Reasonable Royalty – Timing[82]

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon at the time of the hypothetical negotiation on May 1, 2018. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may include evidence of usage after infringement started, profits earned by the infringer, and non-infringing alternatives.}}[83]

---

[82] {{TVision: *See* Final Jury Instructions, *VB Assets, LLC v. Amazon*, C.A. No. 19-1410 at D.I. 288 (D. Del. 2023), III.F Reasonable Royalty – Timing; AIPLA Model Patent Jury Instructions at 10.2.5.7 (2025); D.I. 451.}}

[83] <<Nielsen: TVision's proposal both misstates the legal standard regarding the book of wisdom, and improperly implies that the jury can consider alternatives regardless of whether TVision makes the requisite showing of availability, acceptability, and non-infringement,. The proper articulation of these standards is set forth in sections 6.5 *supra* and 6.10 *infra*.>>

### 6.10.   Reasonable Royalty – Comparable License Agreements[84]

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood. Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

---

[84] *See* Final Jury Instructions, *VB Assets, LLC v. Amazon*, C.A. No. 19-1410 at D.I. 288 (D. Del. 2023), III.G Reasonable Royalty – Comparable License Agreements.

### 6.11.    Reasonable Royalty – <<Nielsen: Non-Infringing Alternatives[85]>>{{TVision: Alternatives Available to the Defendant}}

<<Nielsen: In determining a reasonable royalty, you may also consider evidence concerning non-infringing alternatives to the patented invention.  A non-infringing alternative is one that is available, acceptable, and non-infringing.[86] Any burden to show that the proposed alternative meets these criteria falls on TVision.[87]

To find that a proposed alternative was available, you must find that TVision has shown that it or another supplier of an alternative had all the necessary equipment, materials, know-how, and experience to design and manufacture a noninfringing substitute and sell it to its customers.[88] TVision must also show that any proposed alternative does not infringe third-party patents, because a proposed alternative is not available if it infringes a third-party patent. For any proposed alternatives that did not exist in the marketplace at the time of the hypothetical negotiation, TVision must overcome an inference that these products are not available alternatives.

To find that a proposed alternative was acceptable, you must find that TVision has shown that the proposed alternative includes the advantages of the patented invention that were important to the actual buyers of the infringing product.[89] A proposed alternative cannot be deemed acceptable unless TVision has provided enough evidence to substantiate an argument that the

---

[85] <<Nielsen: *See* Final Jury Instructions, *Siemens Mobility, Inc. v. Westinghouse Air Brake Technologies Corp.*, No. 16-284-LPS-CJB, D.I. 442 (January 23, 2019), 8.4.5 Reasonable Royalty – Availability of Non-Infringing Substitutes.

[86] Nielsen: TVision's proposal fails to address any of these three required criteria for finding a non-infringing alternative. *See* D.I. 428; *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340 (Fed. Cir. 2015); *Masimo Corp. v. Apple Inc.*, Case No. 8:20-cv-48-JVS-JDE, 2025 WL 3190897, at *8 (C.D. Cal. Oct. 17, 2025); *WhereverTV, Inc. v. Comcast Cable Commc'ns, LLC*, Case No. 2:18-cv-529-JLB-NPM, 2022 WL 2773292, at *2, *5 (M.D. Fla. May 23, 2022).

[87] D.I. 428.

[88] *See* NDCA Model Patent Jury Instructions at 5.3b.

[89] *See* NDCA Model Patent Jury Instructions at 5.3b.>>

proposed alternative is acceptable.

To find that a proposed alternative is non-infringing, you must find that TVision has analyzed the proposed alternative to show how the proposed alternative would not infringe the asserted claim of the '889 Patent. You should only consider evidence regarding a proposed alternative if TVision has met its burden to demonstrate all three of these requirements have been met.>>

{{TVision: In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable alternatives to taking a license under the patented invention. You may consider whether, at the time of the hypothetical negotiation, the alternatives to a license were available to the Defendant, and whether the Defendant had the necessary equipment, know-how, and experience to implement the alternatives and the time and cost of

64

implementation. Neither party has the burden to prove the presence or absence of alternatives.[90]}}[91]

---

[90] There are several problems with Nielsen's proposed instruction. First, it is based on the ***Lost Profits*** section of the Northern District of California Model Patent Jury Instructions, which is irrelevant here because Nielsen is not seeking lost profits. Second, it provides an incomplete and inaccurate formulation of lost profits, including the applicable burden. Third, Nielsen formulates a new burden ("that TVision has analyzed the proposed alternative to show how the proposed alternative would not infringe the asserted claim of the '889 Patent") that lacks citation to any authority and is contrary to this Court's prior order. *See* D.I. 428. Finally, Nielsen's proposal conflicts with Federal Circuit law on reasonable royalty damages, which provides that courts may consider the ***next-best*** available alternative. G*rain Processing Corporation v. American Maize-Products Company*, 185 F.3d 1341 (Fed. Cir. 1999); *see also* Memorandum Opinion, March 28, 2018, *Joe Andrew Salazar v. HTC Corporation*, Case No. 2:16-CV-01096-JRG-RSP (E.D. Tex. Mar. 28, 2018); Order re: Disputed Jury Instructions and Jury Verdict Form, November 2, 2022, *Colibri Heart Valve LLC v. Medtronic CoreValve LLC et al.*, Case No. 8:20-cv-00847-DOC-JDE. Indeed, even if there is no perfect substitute, the best imperfect substitute should be considered in a reasonable royalty analysis. Order of January 18, 2013, *Brandeis University and GFA Brands, Inc., vs. Keebler Co.*, Case No. 1:12-cv-01508, (N.D. Ill. Jan 18, 2013). *See also* Final Jury Instructions, *VB Assets, LLC v. Amazon*, C.A. No. 19-1410 at D.I. 288 (D. Del. 2023), III.H Reasonable Royalty – Availability of Non-Infringing Alternatives; *Droplets, Inc. v. Yahoo! Inc.,* 2021 U.S. Dist. LEXIS 259658 at *35, *37-8 (N.D. Cal. April 27, 2021), citing *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014); *Whitserve, LLC v. Comp. Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012); *see also RSB Spine, LLC v. DePuy Synthes Sales, Inc.*, 2022 WL 17084156 at *3 (D. Del. Nov. 18, 2022).

[91] <<Nielsen: TVision's long list of complaints about this instruction are unfounded. First, the citations to the Northern District of California Model Instructions relate to the availability and acceptability of non-infringing substitutes. Those statements are applicable to availability and acceptability of non-infringing substitutes regardless of whether that explanation was provided in the context of lost profits or reasonable royalty analysis. Second, nothing in this instruction purports to describe a "formulation of lost profits," and TVision's contrary assertion is both unsupported and incorrect. Third, nothing in this instruction formulates a new burden or is contrary to the Court's prior order. D.I. 428 ("if one side did bear such a burden, then in the Court's view, it would be Defendant, for the reasons expressed by multiple other courts that have concluded the same"). To the extent the Court finds that the instruction as formulated is inconsistent with its prior order, the instruction may be amended to address that issue. Finally, TVision's statements regarding Federal Circuit law are incorrect. Any alternative must still be a non-infringing alternative, which is one that is available, acceptable, and non-infringing. D.I. 428; *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340-41 (Fed. Cir. 2015); *Gamon Plus, Inc. v. The Campbell's Co.*, No. 15-cv-8940, D.I. No. 600 at 5-7 (N.D. Ill. Sep. 5, 2025); *Laserdynamics, Inc. v. Quanta Comput., Inc.*, No. 06-cv-348, 2011 WL 197869, at *2 (E.D. Tex. Jan. 20, 2011); *Stoller Enters., Inc. v. Fine Agrochemicals*, 705 F. Supp. 3d 774, 798 (S.D. Tex. 2023). It is also unclear how TVision believes *Grain Processing* represents "Federal Circuit law on reasonable royalty damages," when *Grain Processing* only addressed a "next-best" alternative

7.    **DELIBERATIONS AND VERDICT**

### 7.1.    Introduction[92]

Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who you can choose when you begin your deliberations.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

---

in the context of determining lost profit damages. *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999).

[92] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 16.1 Introduction.

### 7.2.    Unanimous Verdict[93]

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the Courtroom and my deputy will read aloud your verdict. Place the completed verdict sheet in the envelope we will give you. Do not show the completed verdict form to anyone or share it with anyone until you are in the Courtroom.

It is proper to add the caution that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

---

[93] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 16.2 Unanimous Verdict.

67

### 7.3.    Duty to Deliberate[94]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So, you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

---

[94] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 16.3 Duty To Deliberate

### 7.4.    Social Media[95]

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, TikTok, WeChat, WhatsApp, Snapchat, MySpace, LinkedIn, YouTube, or X (formerly known as Twitter), to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

---

[95] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 16.4 Social Media.

69

### 7.5.    **Court Has No Opinion**[96]

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

---

[96] *See* Final Jury Instructions, *Cirba Inc. v. VMware, Inc.*, No. l9-742-LPS, D.I. 526 (January 22, 2020), 16.5 Court Has No Opinion.