# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-57-CJB |
| | ) | |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

David E. Moore and Bindu A. Palapura, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Steven Yovits, Douglas Lewis, Constantine Koutsoubas and Jason P. Greenhut (argued), KELLEY DRYE & WARREN LLP, Chicago, IL; Clifford Katz, KELLEY DRYE & WARREN LLP, New York, NY, Attorneys for Plaintiff The Nielsen Company (US), LLC.

Andrew E. Russell and Nathan R. Hoeschen, SHAW KELLER LLP, Wilmington, DE; Jason Xu, RIMÔN LAW P.C., Washington, DC; Eric C. Cohen (argued), RIMÔN LAW P.C., Raleigh, NC; Bejamin D. Brown, Richard A. Koffman and Daniel McCuaig, COHEN MILSTEIN SELLERS & TOLL PLLC, Washington, DC; Steig D. Olson and Sami H. Rashid, QUINN EMANUEL URQUHART & SULLIVAN LLP, New York, NY; Patrick D. Curran, QUINN EMANUEL URQUHART & SULLIVAN LLP, Boston, MA; Adam B. Wolfson, QUINN EMANUEL URQUHART & SULLIVAN LLP, Los Angeles, CA, Attorneys for Defendant TVision Insights, Inc.

## <u>MEMORANDUM OPINION</u>

May 27, 2026
Wilmington, Delaware

*Christopher J. Burke*

**BURKE, United States Magistrate Judge**

Presently pending in this patent infringement action is Defendant TVision Insights, Inc.'s ("TVision" or "Defendant") motion for summary judgment that TVision does not infringe the asserted claims of the patent-in-suit (the "Motion"). (D.I. 366) Plaintiff The Nielsen Company (US), LLC ("Nielsen" or "Plaintiff") opposes the Motion. For the reasons set forth below, the Motion is DENIED.[1]

## I.    BACKGROUND

Nielsen commenced this action on January 14, 2022, alleging infringement of United States Patent No. 7,783,889 (the "'889 patent"). (D.I. 1)[2] The '889 patent is entitled "Methods and Apparatus for Generating Signatures" and it is directed to methods and apparatuses relating to generating digital spectral signatures based on audio information that can be used to identify media information. ('889 patent at 1 & col. 2:28-33)[3] The specification explains that a signature can be generated by performing a spectral transform (such as a Fourier Transform) on a frame of media samples to determine spectral power values that are associated with the frame. (*Id.*, cols. 2:65-3:13) These spectral power values can then be compared in order to generate descriptors, which are then used to generate the signatures. (*Id.*, Abstract & cols. 2:65-3:13, 26:5-32)

---

[1]    The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 18)

[2]    Although Nielsen previously asserted claims 1-2, 4-6, 8-9 and 11-17 of the '889 patent (the "asserted claims"), (D.I. 1 at ¶ 44; D.I. 350 at 1), Nielsen has since represented that it will assert only claim 8 at trial, (*see* D.I. 414 at 5; D.I. 415 at 1).

[3]    The patent is located on the docket in more than one place; herein, the Court will simply cite to the patent by number.

The specification notes that while known methods of generating digital signatures in the prior art used interframe processing (which is a comparison of two or more frequency components from *multiple* frames), the claimed invention "may be implemented using *intraframe*" processing (which is a comparison of two or more frequency components from a *single* frame). (*Id.*, col. 2:56-60 (emphasis added))[4] Indeed, "[i]t is undisputed that the asserted claims of the . . . '889 patent[] require that frequency components be processed within a single frame" (the "single frame limitation"). (D.I. 272 at 2; *see also* D.I. 355 at 19; D.I. 384 at 4)

Claim 1 of the '889 patent is exemplary, and it recites the following (with the single frame limitation emphasized):

> **1.** A method for generating signatures implemented using an apparatus comprising a processor, the method comprising:
>
> obtaining a first frame of media samples;
>
> identifying a first frequency component having a first spectral power and a second frequency component having a second spectral power by performing a spectral transform operation on the first frame of media samples;
>
> *determining a first descriptor of the first frame of media samples based on a comparison of the first spectral power and the second spectral power*;
>
> generating a first signature based on the first descriptor;
>
> identifying a second frame of media samples by extracting a common plurality of media samples from the first frame of media samples and appending another plurality of media samples to the common plurality of media samples;
>
> identifying a third spectral power associated with a third frequency component and a fourth spectral power associated with a fourth frequency component, wherein the third frequency

---

[4]    Below, interframe processing/comparison and intraframe processing/comparison may also be referred to as "interframe operations" and "intraframe operations," respectively.

component and the fourth frequency component are associated with performing the spectral transform operation on the second frame of media samples;

determining a second descriptor based on a comparison of the third spectral power and the fourth spectral power; and

generating a second signature based on the second descriptor.

('889 patent, col. 26:5-32 (emphasis added))[5]

The case proceeded through fact discovery, claim construction and expert discovery, and in March 2024, the parties filed summary judgment motions and *Daubert* motions.  (*See* D.I. 181-83; D.I. 185; D.I. 190)  One such motion was TVision's prior motion for summary judgment of invalidity under 35 U.S.C. § 101 ("TVision's prior Section 101 motion").  (D.I. 185)  These motions were fully briefed by late April 2024; oral argument on certain of the motions was set for July 2, 2024.  (D.I. 213; 214; D.I. 216; D.I. 217)

Then on June 21, 2024, following the discovery of a significant error by Nielsen's former technical experts in their analysis of relevant pseudocode, Nielsen filed an emergency motion to amend the scheduling order (the "motion to amend scheduling order").  (D.I. 250)  In that motion, Nielsen explained that while its former experts had accused a function called "getRowMax" (the "getRowMax function") as processing frequency components within a single frame as required by the single frame limitation, (*id.* at 3-4), that function actually processed frequency components from multiple frames, (D.I. 256 at 4-5; D.I. 260 at ¶ 7).  And Nielsen explained that this error had affected its understanding of the next part of the code (the

---

[5]    Although Nielsen now intends to assert only claim 8 of the '889 patent, (*supra* n.2), in the briefing on the Motion, the parties largely focused on claim 1 and did not suggest that the analysis would be any different for claim 8, (D.I. 355 at 23-24, 26; D.I. 384 at 19-20; *see also* Tr. at 5).  So herein the Court will also focus on claim 1, but its analysis applies equally to claim 8.  (Tr. at 5; Defendant's Summary Judgment and *Daubert* Motion Presentation, Slides 12-13)

"isListMax loops" function), which Nielsen subsequently determined processed frequency components from a single frame (as required by the single frame limitation). (D.I. 257 at 3; D.I. 260 at ¶¶ 5, 9-10) Accordingly, in the motion to amend scheduling order, Nielsen requested that the Court reopen expert discovery, permit it to serve new technical reports from new experts that would address this issue, and reschedule the trial. (D.I. 250 at 10)

The Court ultimately granted the motion to amend scheduling order and set a new schedule for the remainder of the case. (D.I. 272; D.I. 295) In line with the new schedule, TVision filed the instant Motion on November 24, 2025, (D.I. 366), and the Motion was fully briefed as of January 26, 2026, (D.I. 396). The Court held oral argument on the Motion on February 26, 2026. (D.I. 414 (hereinafter, "Tr.")) A jury trial in this matter is set to begin on June 8, 2026. (D.I. 336)

The Court here writes primarily for the parties, and so any additional facts relevant to this Memorandum Opinion will be discussed in Section III below.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). If the moving party has sufficiently demonstrated the absence of such a dispute, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks, citation and emphasis omitted). If the nonmoving party fails to make a sufficient showing in this regard, then the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). During this

5

process, the Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

However, in order to defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Facts that could alter the outcome are "material," and a factual dispute is "genuine," only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

A party asserting that a fact cannot be—or, alternatively, asserting that a fact is—genuinely disputed must support the assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

## III.    DISCUSSION

With the Motion, TVision asserts that: (1) Nielsen's former view of the single frame limitation (before it discovered its prior experts' error described above) was that it encompassed

only intraframe processing, and that interframe processing was not permitted; (2) Nielsen's current view of the single frame limitation is that it encompasses interframe processing; (3) the Court should preclude Nielsen from raising this "new claim construction issue" at this late stage of the case, or, alternatively, reject Nielsen's new claim construction position and construe the single frame limitation to recite *only* intraframe processing (such that it does not cover any process that determines a descriptor using interframe operations *in addition to* intraframe operations); and (4) summary judgment of non-infringement should be granted, because TVision's accused process determines a descriptor based on interframe processing and therefore does not meet the single frame limitation.  (D.I. 355 at 19-30; D.I. 396 at 11-19; Tr. at 24-26)

For its part, Nielsen agrees that the single frame limitation requires a descriptor to be determined based on an intraframe comparison.  But it asserts that the claims do not prohibit some comparison of spectral powers from multiple frames (i.e., interframe processing) from having *also* occurred at some point in the process—and that it has not waived or otherwise given up this claim construction-related argument in any way.  (D.I. 384 at 18-27; Tr. at 38-39) Turning to the accused products, Nielsen acknowledges that they perform interframe processing with the getRowMax function (which compares data from 17 frames), but asserts that subsequently, in determining the first descriptor at issue in the single frame limitation, the products then compare spectral powers from a single frame with the isListMax loops function. (D.I. 384 at 27 & n.9; D.I. 386 at ¶ 19; Tr. at 58)  With its experts thus opining that TVision's accused products determine descriptors using intraframe processing, Nielsen argues that this satisfies the single frame limitation—and that it is of no moment (under the proper construction of the single frame limitation) that TVision "elsewhere performs interframe comparisons in

addition to performing the recited intraframe comparison[.]"  (D.I. 384 at 27)  Thus, Nielsen

argues that the Motion cannot be granted.  (*Id*. at 27-28)

Below, the Court will explain why it agrees with Nielsen on both the claim construction-

related and infringement-related issues that are raised in the Motion.

### A.    Claim Construction

The Court takes up the claim construction-related issues first.[6]  TVision's proposal with

regard to the single frame limitation is that the claimed method must determine a first descriptor

of the first frame of media samples based on a comparison of two spectral powers from the same

frame (i.e., an intraframe comparison), and there can be no interframe comparison at any point in

the processing.  (D.I. 355 at 24 ("[T]he claim . . . requires that the first descriptor be obtained

from operations entirely within the first frame."); D.I. 396 at 13 ("[T]he claim term at issue can

be construed in only one way . . . *i.e.*, the descriptor is created from comparing two spectral

powers in a single frame, which excludes a process that compares values across multiple

frames."); Tr. at 24-26)  Nielsen's proposal is that the single frame limitation requires that the

first descriptor be formed from a comparison of the first and second spectral powers from the

same frame (i.e., an intraframe comparison), but that it also permits (though does not require)

---

[6]    The Court has often set out the relevant legal standards for claim construction, including in opinions addressing a motion for summary judgment; one such opinion was *Glaxo SmithKline LLC v. Glenmark Pharms. Inc., USA*, Civil Action No. 14-877-LPS-CJB, Civil Action No. 14-878-LPS-CJB, 2017 WL 8948972, at *3-4 (D. Del. May 24, 2017), *report and recommendation adopted*, 2017 WL 2493786 (D. Del. June 9, 2017).  The Court hereby incorporates by reference its discussion in *Glaxo SmithKline LLC* of these legal standards and will follow them herein.

that other processing, including interframe comparisons, can have occurred as part of the process of determining the first descriptor.  (D.I. 384 at 18 & 19 n.7; Tr. at 60)[7]

In addressing this claim construction dispute, as an initial matter, the Court will take up TVision's assertion that Nielsen has waived[8] any argument that the claims permit interframe processing.  (D.I. 355 at 20-23; D.I. 396 at 17-18)  TVision's waiver argument boils down to the following statement ("statement 2") that Nielsen made in its brief opposing TVision's prior Section 101 motion:[9]

> Furthermore, TVision's four-step algorithm is so broad that it covers *systems that the asserted claims of the '889 Patent do not cover*.  For example, TVision's four-step algorithm covers *systems . . . that use interframe (i.e., multiple frame) processing . . . .*

(D.I. 201 at 18 (emphasis added) (*cited in* D.I. 355 at 20; D.I. 396 at 17-18))  According to TVision, "[i]f the claims potentially had a broader meaning, Nielsen waived it" with statement 2.  (D.I. 396 at 18)  Nielsen argues, to the contrary, that what it really meant with this statement was

---

[7]    The Court has gleaned these proposals as best it can from the arguments made in the briefing and at oral argument.  Unhelpfully, neither party expressly set out a proposed construction for the single frame limitation at issue.  (*See* Tr. at 32)

[8]    "Waiver is the intentional relinquishment or abandonment of a known right[.]" *DLJ Mortg. Cap., Inc. v. Stevens*, 167 F.4th 632, 635 (3d Cir. 2026) (internal quotation marks and citation omitted).

[9]    In its opening brief, TVision's waiver argument also highlighted two other statements that Nielsen made in its brief opposing TVision's prior Section 101 motion.  (D.I. 355 at 20-21 (citing D.I. 201 at 8, 10-11))  But by the time of its reply brief, TVision solely discussed statement 2.  (D.I. 396 at 17; Tr. at 33, 35-36 (TVision's counsel acknowledging that its reply brief focused only on statement 2 and that it is the "best one" supporting its waiver argument))  This makes sense, because this statement is the best statement for TVision to point to in support of its waiver argument (since the other two statements really just say that the claims require intraframe processing, which has never been in dispute between the parties).  Thus, here the Court too focuses only on statement 2 with respect to TVision's waiver argument.

that the asserted claims of the '889 patent do not cover systems that *only* use interframe processing.  (D.I. 384 at 24; Tr. at 71-72)

Maybe what Nielsen says is so.  It does seem possible to read statement 2 that way.  That said, the Court agrees with TVision that statement 2 could also be fairly read to imply that the asserted claims of the '889 patent do not cover systems that use interframe processing *at all*, full stop.  (Tr. at 72 (Nielsen's counsel acknowledging that statement 2 may have been "inartfully drafted"))

Nevertheless, even if statement 2 could only be read the way that TVision reads it, the Court would not find waiver based on the statement.  The statement was made in a brief relating to a motion (TVision's prior Section 101 motion) that was never actually considered on its merits by the Court.  (*See* D.I. 268 (denying the prior Section 101 motion, among other motions, without prejudice to renew, in light of the pendency of the motion to amend scheduling order); D.I. 384 at 26)  TVision does not cite to any legal authority that finds "litigation waiver" in such a scenario.  (D.I. 384 at 25-26; *see* Tr. at 37, 72)

TVision also asserts that even if the Court does not find waiver under these circumstances, it should nevertheless preclude Nielsen from raising its purportedly "new" claim construction position (i.e., that the single frame limitation requires intraframe processing, but does not prohibit interframe processing from also occurring) here at this late stage of the case.  (D.I. 355 at 22-23)  To that end, TVision argues that Nielsen has not been diligent in requesting that the Court consider a new claim construction pursuant to Federal Rule of Civil Procedure 16(b)(4)'s good cause standard.  (*Id.*)  TVision asserts that Nielsen said nothing about this construction at the time that it filed its motion to amend scheduling order—and that Nielsen only raised the issue for the first time on July 29, 2025 (when Nielsen's counsel sent an e-mail to

TVision's counsel asserting that TVision's expert's non-infringement report was raising a new claim construction issue).  (*Id.*)

That is not a winning argument either.  Assume that Nielsen had clearly asserted a position earlier in the case that the claims exclude a process where interframe processing may also occur (although TVision only points to statement 2 as in any way suggesting such a position, and, as the Court has noted above, statement 2 is not entirely clear on the matter).  Even were this so, as Nielsen points out, TVision should have been on notice—at least as of the time that Nielsen filed its reply brief in support of its motion to amend scheduling order—that Nielsen's position was that the claims *allow* for interframe processing to occur *in addition to* intraframe processing.  (D.I. 384 at 26-27)  That is because while Nielsen previously accused the getRowMax function of infringing the single frame limitation (due to its prior expert's error in analyzing the pseudocode), it then came to learn that (as Defendant's expert had pointed out) this function compared spectral powers from 17 frames at a time; Nielsen then pointed to the next portion of code (the isListMax loops function) as satisfying the single frame limitation.  (D.I. 260 at ¶¶ 5, 7, 11; D.I. 355, ex. 5 at ¶¶ 57, 63; D.I. 272 at 9-10)  Under the circumstances of this case, the Court does not find that the current claim construction dispute was raised too late.  *See, e.g.*, *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1372 (Fed. Cir. 2016) (explaining that "[i]n general, litigants waive their right to present new claim construction disputes if they are raised for the first time after trial") (internal quotation marks and citation omitted); *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1377-78 (Fed. Cir. 2009) (finding that the defendant did not waive a claim construction position that it asserted during the trial, even where it had taken an inconsistent position during the *Markman* hearing, as the court did not rely on that prior position in construing the claim and because the defendant "made its position on that issue clear

sufficiently in time to not mislead its adversary or the court"); *Prolitec Inc. v. ScentAir Techs., LLC*, Civil Action No. 20-984-WCB, 2023 WL 8697973, at *4-5 (D. Del. Dec. 13, 2023) (rejecting the plaintiff's position that the defendant waived a claim construction argument that arose in summary judgment briefing, where the plaintiff had not explicitly advanced its relevant theory of infringement prior to or during earlier claim construction proceedings, and noting that "[w]hile it is preferable for claim construction disputes to be fully vetted and resolved at the time of formal claim construction proceedings, the court has a duty to resolve fundamental disputes about the meaning of claims even when the disputes arise after claim construction proceedings are concluded").

With it now settled that Nielsen still has the ability to raise this claim construction dispute, the Court thus turns to the merits. TVision argues that the intrinsic record demonstrates that with respect to the single frame limitation, the first descriptor must be obtained from "operations entirely within the first frame" and, thus, no interframe processing can occur at any point in the process. (D.I. 355 at 24; *see also id*. at 23-29; D.I. 396 at 12-17) In other words, TVision is essentially arguing for a negative limitation that prohibits any interframe processing from occurring. In its view, if the first descriptor was obtained by a process that at some point compared values over multiple frames—even if processing subsequently occurred that *also* compared values across a single frame—that does not fall within the scope of the claims. (*See* D.I. 384 at 18; Tr. at 13, 15-17) But the intrinsic record does not support TVision's position.

First, the claim language of claim 1 itself recites that the method "compris[es]" the steps that follow. ('889 patent, col. 26:5-6; D.I. 384 at 19) And "'comprises' is an open-ended term that is typically read to allow for additional steps[.]" *GlaxoSmithKline LLC v. Glenmark Pharms. Inc., USA*, Civil Action Nos. 14-877-LPS-CJB, 14-878-LPS-CJB, 2016 WL 3186657, at

12

*10 (D. Del. June 3, 2016) (rejecting the defendant's proposal to construe a term to include a negative limitation, where the claim used "comprises"), *report and recommendation adopted*, 2017 WL 658468 (D. Del. Feb. 17, 2017); *see also Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1304 (Fed. Cir. 2025).[10] Thus, while everyone agrees that the claim language requires intraframe processing, it does not clearly signal that a method that *also* uses interframe operations would be outside of the scope of the claims. (D.I. 384 at 19-20; Tr. at 38-39) Indeed, the claim language suggests the opposite conclusion.

Second, Nielsen points out that other dependent claims show that claim 1 is not limited to a process whereby the first descriptor must be determined *only* from a single frame. (D.I. 384 at 20-21) "[C]laim differentiation refers to the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006). The doctrine is "is at its strongest" where a party attempts to "read into an independent claim [something that] already appears in a dependent claim." *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012) (internal quotation marks and citations omitted). Claim 1, as noted above, requires "determining a first descriptor *of the first frame of media samples based on a comparison of the first spectral power and the second spectral power[.]*" ('889 patent, col. 26:12-14 (emphasis added)) Claim 5 depends from claim 1, and it recites "[a] method as defined in claim **1**, wherein the first descriptor *is associated with only the first frame* of media samples."

---

[10]    Likewise, claim 8 asserts an apparatus "comprising" the listed elements. ('889 patent, col. 26:47)

(*Id.*, col. 26:41-42 (emphasis added))[11]  The parties agree that "the use of interframe comparisons at any point in the process of generating the first descriptor is outside" of the scope of claim 5—meaning that the first descriptor there can solely have been generated from intraframe processing (the "intraframe-only limitation").  (D.I. 384 at 21; *see also* D.I. 355 at 27; Tr. at 60, 65)  Nielsen thus argues that because the intraframe-only limitation is the only additional element recited in dependent claim 5, the doctrine of claim differentiation supports its position here.  That is, Nielsen asserts that claim 5's makeup bolsters the conclusion that in claim 1, while the first descriptor is indeed generated using intraframe processing, it can nevertheless *also* be associated with other spectral powers from other frames—such as from an interframe comparison that happened before the first descriptor was generated.  (Tr. at 62-63, 67; D.I. 384 at 20-21)

Nielsen's claim differentiation argument makes sense to the Court.  If in claim 1, the first descriptor could be associated *only* with the first frame of media samples (meaning that the use of interframe comparisons *at any point* in the process of generating that first descriptor was prohibited), then dependent claim 5 would not add a further limitation.  Claim 5 would therefore be redundant and meaningless—an outcome that is disfavored, and that also makes little sense from a claim drafting perspective.  *See, e.g.*, *MPI LLC v. Sorting Robotics, Inc.*, Case No. LA CV22-07464 JAK PD (KSx), 2023 WL 5506719, at *7-8 (C.D. Cal. July 5, 2023) (where claim 9 disclosed a folded package and dependent claim 10 added an access hole to the folded package— and where the defendant proposed that the folding in claim 9 created the access hole in

---

[11]  Similarly, claim 11 depends from claim 8, and it recites "[a]n apparatus as defined in claim **8**, wherein the first descriptor *is associated with only the first frame* of media samples." (*Id.*, col. 27:9-11 (emphasis added))

14

dependent claim 10—the court rejected the defendant's proposal because "[i]f the folding described in [c]laim 9 necessarily created an 'access hole,' dependent [c]laim 10 would not add a further limitation"). Accordingly, the Court agrees that claim 5 and the doctrine of claim differentiation further demonstrate that TVision's claim construction proposal is not correct. *See Align Tech., Inc. v. 3Shape*, C.A. No. 17-1648-LPS, 2021 WL 2320139, at \*15 n.25 (D. Del. June 7, 2021) (noting that pursuant to claim differentiation, "the scope of the disputed term in claim 1 is presumed not to be limited to these narrowing elements that are only recited in dependent claims").

Finally, the Court turns to the specification. Both sides are in agreement that the specification does not provide examples of interframe processing; instead, every embodiment discloses intraframe processing. (Tr. at 27, 69; *see also* D.I. 355 at 28) Nevertheless, it is well settled that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Svcs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks and citations omitted). That said, "[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) (internal quotation marks and citation omitted). "Mere criticism of a particular embodiment encompassed in the plain meaning of a claim term" is not enough to constitute disavowal; instead, "[t]o constitute disclaimer, there must be a clear and unmistakable disclaimer." *Id.* at 1366-67; *see also Cont'l Cirs. LLC v. Intel Corp.*,

15

915 F.3d 788, 797 (Fed. Cir. 2019) ("To disavow claim scope, the specification must contain 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.'") (internal quotation marks and citation omitted).

TVision argues that the specification of the '889 patent does clearly disavow any process that determines a descriptor using any interframe processing at all. (D.I. 355 at 25-26; D.I. 396 at 14-15; Tr. at 26-28)  In particular, TVision points to two disclosures in the specification. (D.I. 355 at 25)  In the end, neither one meets the high standard for a finding of disclaimer. (D.I. 384 at 22-23)

First, TVision highlights the specification's teaching that:

> Unlike known methods in the prior art that use interframe operations (e.g., operations based on sample data within different data sample frames) to generate digital spectral signatures, the methods and apparatus described herein may be implemented using intraframe operations (e.g., operations based on sample data within a single frame).

('889 patent, col. 2:55-60 (*cited in* D.I. 355 at 25; D.I. 396 at 14))  TVision characterizes this excerpt as "contrast[ing] the claimed invention, which uses only intraframe operations, with the prior art that used interframe operations." (D.I. 355 at 25)  But TVision is reading words into the disclosure that aren't actually there.  This excerpt does not say that the present invention "only" uses intraframe operations.  Instead, it just says that unlike the prior art, which used interframe operations, the present invention "may . . . us[e] intraframe operations[.]"  (Tr. at 26)  This is not a "'clear and unmistakable' disavowal of interframe processing *in addition to* the recited intraframe processing." (D.I. 384 at 22)[12]

---

[12]      In the Court's view, it is also notable that TVision does not point to numerous portions of the specification where interframe processing is repeatedly disparaged; instead, it highlights only this single reference to the prior art. (*See* Nielsen's Summary Judgment

Second, TVision points to the following disclosure, which it describes as the best portion of the specification conveying that the invention cannot involve any interframe processing:

> As described below in connection with FIG. **5**, each of the reference descriptors is generated using one or more operations (e.g., comparison operations) based on two or more spectral components that *are both associated with the same audio sample frame. These operations are referred to as intraframe operations because they are performed using data exclusive to a single audio frame and are not dependent on sample data collected over other audio frames.*

('889 patent, col. 11:16-23 (emphasis added) (*cited in* D.I. 355 at 25; D.I. 396 at 15; Tr. at 26-28))  This teaching does describe intraframe operations as using data exclusive to a single frame. But it does not contain language that refers to this embodiment as the "present invention," nor does it include any other language explicitly indicating that if interframe processing *also* occurs, then that is excluded from the scope of the invention.  (D.I. 384 at 22-23)  Thus, the specification fails to clearly signal that the claims are limited to only intraframe processing and prohibit any interframe processing at all from also occurring.[13]  *See, e.g.*, *Sanofi-Aventis U.S. LLC v. Merck Sharp & Dohme Corp.*, Civil Action No. 16-812-RGA, 2018 WL 389183, at *2-3 (D. Del. Jan. 12, 2018) (finding that the patentee had not limited the scope of the claims in the specification,

---

Presentation, Slide 26); *Allergan, Inc. v. Revance Therapeutics, Inc.*, Civil Action No. 21-1411-RGA, 2023 WL 5562417, at *5 (D. Del. Aug. 29, 2023) (concluding that acid precipitation was not disclaimed from the claim scope, where it was not "repeatedly disparaged throughout the specification—the drawbacks are only mentioned once" such that "[i]f anything, the specification's mentions of the drawbacks merely describes a preference for filtration over acid precipitation").

[13]    Relatedly, as Nielsen notes, it is just not clear from this record that whatever advantages are gained from the use of intraframe processing would all be lost if a system also used some interframe processing as well.  (D.I. 384 at 25; *see also* Tr. at 31)

where it did not "purport to describe features of the present invention as a whole . . . and, in fact, it never refers to the 'present invention' at all") (internal quotation marks and citation omitted).

For these reasons, the Court will not construe the single frame limitation to have a negative limitation that prohibits any interframe processing from occurring. Instead, it finds that while the single frame limitation requires that the first descriptor be formed from a comparison of the first and second spectral powers from the same frame (i.e., an intraframe comparison), it also permits (but does not require) that other processing, including interframe comparisons, can have occurred in the process of determining the first descriptor.

### B.    Non-infringement

The Court now turns to TVision's non-infringement argument. TVision asserts that Nielsen cannot prove infringement of the '889 patent because the single frame limitation requires intraframe operations, but both parties' experts agree that the descriptor is determined following processing using the getRowMax function, which reviews data from 17 frames instead of from a single frame. (D.I. 355 at 29-30 (citing *id.*, ex. 3 at ¶ 198; *id.*, ex. 6 at ¶ 70; *id.*, ex. 7 at ¶ 36); Tr. at 76-77 (Nielsen has "admitted that the process for determining a descriptor uses getRowMax . . . . processing that covers 17 frames. . . . [a]nd it doesn't matter whatever happens after that"); *see also* Tr. at 14-15)

TVision's non-infringement argument here really rises and falls with its claim construction argument. (*See* D.I. 384 at 27-28) And yet, as discussed above, the Court has rejected TVision's claim construction position. While the single frame limitation requires a descriptor to be determined based on an intraframe comparison, the claims do not *prohibit* any comparison of spectral powers from multiple frames (i.e., interframe processing) from *also* occurring. And Plaintiff's experts have opined that TVision's accused process determines a

descriptor from a comparison of spectral powers from the same frame (i.e., using intraframe processing). (D.I. 385, ex. 46 at ¶¶ 128-29, 196-216, 346-79; *id.*, ex. 49 at ¶¶ 142-44; D.I. 355, ex. 7 at ¶¶ 33-36; Tr. at 48-49, 58) While it is undisputed that the accused process also performs interframe processing, (*see, e.g.*, D.I. 384 at 27; D.I. 355, ex. 7 at ¶ 36), as explained above, that is not precluded by the scope of the asserted claim.[14]

## IV.    CONCLUSION

For the foregoing reasons, the Court orders that the Motion is DENIED. An appropriate Order will issue.

Because this Memorandum Opinion may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Opinion. Any such redacted version shall be submitted no later than **June 2, 2026** for review by the Court. It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir.

---

[14]    In TVision's reply brief, it argues that even if the Court were to agree with Nielsen's claim construction position, Nielsen still cannot prove infringement. (D.I. 396 at 18-19) As best as the Court can understand, TVision then seems to reiterate its argument that the accused products cannot infringe because they determine a descriptor using interframe processing in the getRowMax function step, and thus the "descriptor still comes from a process that reviews data from 17 frames, not a single frame." (*Id.*; *see also* Tr. at 78-79) For the reasons discussed above, TVision cannot prevail on this argument.

2019) (internal quotation marks and citation omitted).  The Court will subsequently issue a

publicly-available version of its Memorandum Opinion.