**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-57-CJB |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# FINAL JURY INSTRUCTIONS

# TABLE OF CONTENTS

1. GENERAL ..... 1
1.1. Introduction ..... 1
1.2. Jurors' Duties ..... 2
1.3. Evidence Defined ..... 3
1.4. Direct And Circumstantial Evidence ..... 4
1.5. Consideration Of Evidence ..... 5
1.6. Statements Of Counsel ..... 6
1.7. Credibility Of Witnesses ..... 7
1.8. Number Of Witnesses ..... 8
1.9. Expert Witnesses ..... 9
1.10. Deposition Testimony ..... 10
1.11. Uncontested Facts ..... 11
1.12. Exhibits ..... 12
1.13. Burdens Of Proof ..... 13
1.14. Use Of Notes ..... 15
2. THE PARTIES' CONTENTIONS ..... 16
3. THE PATENT CLAIMS ..... 17
3.1. Patent Laws ..... 17
3.2. Patent Claims - Generally ..... 18
3.3. Construction Of The Asserted Claim ..... 19
3.4. Open Ended Or "Comprising" Claims ..... 20
3.5. Patent Term ..... 21
4. INFRINGEMENT ..... 22
4.1 Literal Infringement ..... 23
4.2 Doctrine of Equivalents ..... 24
4.3 Reverse Doctrine of Equivalents ..... 25
5. INVALIDITY ..... 26
5.1. Invalidity – Generally ..... 26
5.2. Level of Ordinary Skill in the Art ..... 27
5.3. Prior Art ..... 28
5.4. Prior Art Considered or Not Considered by the USPTO ..... 29
5.5. Anticipation ..... 30
5.6. Obviousness ..... 31
6. DAMAGES ..... 33
6.1. Damages – Generally ..... 33
6.2. Date Damages Begin and End ..... 34
6.3. Damages for Expired Patents ..... 35
6.4. Reasonable Royalty ..... 36
6.5. Reasonable Royalty – Using the "Hypothetical Negotiation" Method ..... 37
6.6. Reasonable Royalty – Factors Relevant to the Hypothetical Negotiation ..... 38
6.7. Reasonable Royalty – Attribution/Apportionment ..... 40
6.8. Reasonable Royalty – Timing ..... 41
6.9. Reasonable Royalty – Comparable License Agreements ..... 42
6.10. Reasonable Royalty – TVision: Availability of Non-Infringing Substitutes ..... 43
7. DELIBERATIONS AND VERDICT ..... 44

7.1. Introduction ........ 44
7.2. Unanimous Verdict ........ 45
7.3. Duty to Deliberate ........ 46
7.4. Social Media ........ 47
7.5. Court Has No Opinion ........ 48

# 1. GENERAL

## 1.1. Introduction

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

**1.2. Jurors' Duties**

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

### 1.3. Evidence Defined

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played by video or read to you), the exhibits that I allowed into evidence, and the stipulations to which the parties agreed.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.4. Direct And Circumstantial Evidence

You may have heard the terms “direct evidence” and “circumstantial evidence.”

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### 1.5. Consideration Of Evidence

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.6. Statements Of Counsel

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

### 1.7. Credibility Of Witnesses

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial. You have the right to distrust such a witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

### 1.8. Number Of Witnesses

Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

### 1.9. Expert Witnesses

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

### 1.10. Deposition Testimony

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition. If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

### 1.11. Uncontested Facts

The parties have stipulated that certain facts are not disputed or have agreed to or stipulated that they are true, and some of those stipulations have been read to you during this trial, sometimes referred to as "Uncontested Facts." You must treat these facts as having been proved for the purposes of this case.

### 1.12. Exhibits

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room to consider as evidence for your deliberations.

The remainder of the exhibits (including charts, PowerPoint presentations and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called “demonstrative exhibits,” will not be in the jury room and have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

In some instances, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial. You may use these charts and summaries as evidence, even though the underlying documents and records may not be here. You should give them only such weight as you think they deserve.

### 1.13. Burdens Of Proof

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

Nielsen is accusing TVision of patent infringement. Nielsen has the burden of proving infringement and the amount of damages to compensate for that infringement by a preponderance of the evidence. That means that Nielsen has to produce evidence which, when considered in light of all of the facts, leads you to believe that what the party claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting Nielsen's claims would have to make the scales tip somewhat to its side. If the scale should remain equal or tip in favor of TVision, you must find for TVision.

TVision denies that it has infringed. TVision also contends that the '889 patent is invalid. TVision has the burden of proving that the asserted patent is invalid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence. To use the same analogy, if you were to put Nielsen's and TVision's evidence on the opposite sides of a scale, the evidence supporting invalidity would have to make the scales tip substantially to TVision's side.

If you determine the asserted patent is infringed and not invalid, you will be asked to determine the amount of money damages, if any, that Nielsen is owed. Nielsen has the burden to establish the amount of money damages by a preponderance of the evidence. TVision denies that Nielsen is owed any money damages.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden

of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

**1.14. Use Of Notes**

You may use notes taken during trial to assist your memory. However, as I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency I think to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

## 2. THE PARTIES' CONTENTIONS

Nielsen alleges that TVision has infringed claim 8 of the '889 Patent. You have heard this referred to as the "asserted claim." Nielsen also alleges that it is entitled to damages for TVision's infringement. TVision denies that it has infringed the asserted claim, and that Nielsen is entitled to damages. TVision also contends that the asserted claim is invalid.

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following three main issues:

1. Whether Nielsen has proven by a preponderance of the evidence that TVision infringes the asserted claim;

2. Whether TVision has proven by clear and convincing evidence that the asserted claim is invalid; and

3. What amount of damages, if any, Nielsen has proven by a preponderance of the evidence.

I will provide more detailed instructions on each of the issues you must decide elsewhere in these jury instructions.

## 3. THE PATENT CLAIMS

### 3.1. Patent Laws

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instruction about the patent laws that specifically relate to this case.

### 3.2. Patent Claims - Generally

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered paragraphs at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. Only the claims of a patent can be infringed.

The claims are intended to define, in words, the bounds of an invention. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each of the asserted claims must be considered individually.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." For example, a claim that covers a process for making a round cake may recite the steps of (1) making cake batter, (2) pouring the batter into a round cake pan, and (3) baking it in an oven. Each of the three steps is a separate limitation of the claim. When a process meets each and every limitation of a claim, the claim is said to "cover" that process, and that process is said to "fall" within the scope of that claim.

You will first need to understand what the claim covers in order to decide whether there is infringement of the claim and to decide whether the claim is invalid. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

### 3.3. Construction Of The Asserted Claim

It is the Court's duty under the law to define what the patent claims mean. As I instructed you at the beginning of the case, I have made my determinations, I will now instruct you on the meaning, or "construction," of certain claim terms. You must apply the meaning that I give to decide if the asserted claim is infringed or invalid. You must accept my definitions of these words in the claims as being correct. You must ignore any different definitions used by the witnesses or the attorneys.

You are advised that the following definition for the following term appearing in claim 8 of the asserted patent must be applied:

- "identify[ing] a first frequency component having a first spectral power and a second frequency component having a second spectral power by performing a spectral transform operation on the first frame of media samples" means "generate[ing] first and second frequency components by performing a spectral transform operation on the first frame of media samples."

- "frequency component" means "component of a signal generated by transforming the signal data from the time domain to the frequency domain."

- "determining/determine a first descriptor of the first frame of media samples based on a comparison of the first spectral power and the second spectral power" requires that the first descriptor be formed from a comparison of the first and second spectral powers from the same frame (i.e., an intraframe comparison), but it also permits (but does not require) that other processing, including interframe comparisons, can have occurred in the process of determining the first descriptor.

- "signature" means "item for use in identifying media information."

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning in the field of the patents.

### 3.4. Open Ended Or "Comprising" Claims

The beginning portion, or preamble, of the asserted claim has the word "comprising." The word "comprising" means "including the following but not excluding others." A claim that uses the word "comprising" or "including" is not limited to devices having only the elements that are recited in the claim.

If you find, for example, that the accused product includes all of the elements of a particular claim, the fact that the accused product performs additional functions would not avoid infringement of the claim.

### 3.5. Patent Term

A patent's term begins the day it issues and lasts until its expiration. The '889 patent was granted on August 24, 2010, and expired on March 5, 2026.

## 4. INFRINGEMENT

I will now instruct you as to the rules you must follow when deciding whether Nielsen has proven that TVision has infringed any of the claims of the ’889 patent.

In this case, Nielsen asserts that TVision has infringed the ’889 patent. TVision is liable for infringing Nielsen’s patent if you find that Nielsen has proven that it is more likely than not that TVision made, used, imported, offered to sell, or sold the invention defined in at least one claim of Nielsen’s patent during the term of the ’889 patent. A party can infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement, even if the infringement is done by something acquired from a vendor or supplier.

### 4.1 Literal Infringement

In this case, TVision is accused of literal infringement. To determine literal infringement, you must compare the accused product with the asserted claim to determine whether each and every one of the requirements of the claim is satisfied.

A patent claim is literally infringed only if the product or process includes each and every limitation in that patent claim. If the accused product does not contain one or more elements or steps recited in a claim, there is no literal infringement.

**4.2 Doctrine of Equivalents**

If you decide that TVision does not literally infringe claim 8 of the ’889 patent, you must then decide whether Nielsen has shown by a preponderance of the evidence that TVision infringes claim 8 of the ’889 patent under what is called the “doctrine of equivalents.” Under the doctrine of equivalents, an accused product can infringe an asserted patent claim if it includes components that are equivalent to those elements of the claim that are not literally present. If TVision does not literally infringe and the accused product is missing an equivalent to even one element of the asserted claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim and decide whether it includes a component equivalent to each individual claim element that is not literally present.

One way of showing that a component is an equivalent of a claimed element is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused system. Another way of showing that a component is an equivalent of a claimed element is to show that it is insubstantially different from the claimed element.

In deciding whether a claim element and a component are equivalents, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the component with the claimed element. However, known interchangeability between the claim element and the component of the accused system is not necessary to find infringement under the doctrine of equivalents.

### 4.3 Reverse Doctrine of Equivalents

One other note on infringement. Even if you find that the accused product falls within the literal scope of the asserted claim, TVision may theoretically avoid a finding of infringement under what is known as the "reverse doctrine of equivalents." Under this doctrine, TVision must prove that the accused product or process, although literally falling within the scope of the patent claim, is so fundamentally different from the patented invention that, in substance and purpose, the accused product does not appropriate the patented invention.

To succeed on this defense, TVision must demonstrate that the accused product, despite literally satisfying each and every limitation of the asserted claim, has been so fundamentally changed in principle from the patented invention that it performs the same or a similar function in a substantially different way. It is not sufficient for TVision to show merely minor differences between the accused product and the patented invention. Rather, TVision must prove that the accused product works in a substantially different way, achieves a substantially different result, and embodies a fundamentally different inventive concept such that it would be unjust to find infringement despite literal claim coverage.

## 5. INVALIDITY

### 5.1. Invalidity – Generally

Patent invalidity is a defense to patent infringement. The granting of a patent by the United States Patent and Trademark Office carries with it the presumption that the patent is valid. The law presumes that the Patent and Trademark Office acted correctly in issuing the patent. Nevertheless, when the validity of a patent has been put at issue as part of patent litigation, it is the responsibility of the jury to review what the Patent Office has done consistent with the Court's instructions on the law.

I will now instruct you on the rules you must follow in deciding whether or not an alleged infringer has proven that any of the asserted claims in this case are invalid. To prove that any claim of a patent is invalid, TVision must persuade you by clear and convincing evidence; that is, you must be left with a clear conviction that the claim is invalid.

### 5.2. Level of Ordinary Skill in the Art

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time the invention was made.

You must determine the level of ordinary skill in the field of the invention. You must consider and assess this factor before reaching your conclusion in this case. In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to:

1. The levels of education and experience of the inventor and other persons actively working in the field;

2. The types of problems encountered in the field;

3. Prior art solutions to those problems;

4. Rapidity with which innovations are made; and

5. The sophistication of the technology.

It is up to you to decide the knowledge and perspective of a person of ordinary skill in the art in the field of the invention at the time the invention was made.

**5.3. Prior Art**

In order for someone to be entitled to a patent, the invention must actually be new and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether the asserted claims are anticipated or obvious. To be prior art, the item or reference must have been publicly known, publicly used, published, or patented, before the priority date of the asserted claim against which it is evaluated. An alleged infringer has the burden to prove something is prior art by clear and convincing evidence.

### 5.4. Prior Art Considered or Not Considered by the USPTO

Regardless of whether particular prior art references were considered by the Patent Examiner during the prosecution of the application that matured into the '889 Patent, TVision must prove invalidity by clear and convincing evidence. This burden of proof on TVision never changes regardless of whether or not the Patent Examiner considered the reference. Where TVision is relying on prior art that was not considered by the Patent Examiner during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Examiner did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether TVision has carried its clear and convincing burden of proving invalidity.

### 5.5. Anticipation

An invention must be new to be entitled to patent protection under the U.S. patent laws. To prove anticipation, an alleged infringer must prove that it is highly probable that the claimed invention is not new. If a product or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is said to be "anticipated" by the prior art.

Anticipation is like infringement—you will be asked to determine whether one prior art reference included each and every element of an asserted claim. For anticipation, each and every element in the claim must be present in a single prior art reference, and arranged or combined in the same way as recited in the claim. You may not combine two or more prior art references to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art device, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular prior art device.

### 5.6. Obviousness

Another basis for claiming that a patent is invalid is obviousness. Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must not have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the invention.

An alleged infringer may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the invention.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed

invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious. For this matter, the only consideration you need to consider is whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities).

## 6. DAMAGES

### 6.1. Damages – Generally

If you find that TVision is liable for infringing the asserted claim, and that the asserted claim is not invalid, you must determine the amount of money damages to be awarded to Nielsen for the infringement.

Nielsen must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely than not.

Although Nielsen is not required to prove the amount of its damages with mathematical precision, it must prove the amount of damages with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

If proven by Nielsen, the amount of damages must be adequate to compensate Nielsen for the infringement. The damages award cannot in any event be less than a reasonable royalty. You may not add anything to the amount of the damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My instructions about damages are for your guidance only in the event you find in favor of Nielsen.

I will now give you more detailed instructions regarding damages.

### 6.2. Date Damages Begin and End

Nielsen and TVision agree that the date for the start of any damages calculation is May 1, 2018. The date for the end of any damages is March 5, 2026.

### 6.3. Damages for Expired Patents

The ’889 patent in this case has expired. If you find that TVision has infringed claim 8 of the ’889 patent, Nielsen is entitled to recover damages for any infringement that happened before the patent expired. The ’889 patent expired on March 5, 2026.

### 6.4. Reasonable Royalty

Nielsen is seeking damages in the amount of a reasonable royalty. If you find that a patent claim is infringed and not invalid, Nielsen is entitled to at least a reasonable royalty to compensate it for that infringement. A royalty is a payment made to a patent holder in exchange for the right to use the patented invention.

A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in the negotiations. You should assume that both parties to the hypothetical negotiation believed the patent to be valid and infringed and that both parties are willing to enter into a license. You should also assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the use of a patented invention, including the opinion testimony of experts. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. In considering the hypothetical negotiation, you may consider the bargaining power of the parties.

### 6.5. Reasonable Royalty – Using the "Hypothetical Negotiation" Method

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between Nielsen and TVision, which takes place at the time when TVision's infringement first began. Of course, we know that the parties in this case did not agree to a license and royalty payment. But, in order to decide on the amount of reasonable royalty damages, you should assume that TVision and Nielsen did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and that both sides were willing to enter into a license. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

### 6.6. Reasonable Royalty – Factors Relevant to the Hypothetical Negotiation

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors that the experts may have referenced as "*Georgia Pacific*" factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1. Any royalties received by the licensor for the licensing of the '889 Patent, proving or tending to prove an established royalty.

2. The rates paid by TVision to license other patents comparable to the asserted patent.

3. The nature and scope of a license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its nonpatented items; and the extent of such collateral sales.

7. The duration of the asserted patent, and the term of the license.

8. The established profitability of the product made under the asserted patent; its commercial success; and its current popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11. The extent to which TVision has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that arises from the patented invention itself as distinguished from profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

### 6.7. Reasonable Royalty – Attribution/Apportionment

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or TVision's size or market position. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

### 6.8. Reasonable Royalty – Timing

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon at the time of the hypothetical negotiation on May 1, 2018. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started license agreements entered into by the parties shortly after the date of the hypothetical negotiation profits earned by the infringer, and non-infringing alternatives.

### 6.9. Reasonable Royalty – Comparable License Agreements

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood. Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

### 6.10. Reasonable Royalty – TVision: Availability of Non-Infringing Substitutes

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable non-infringing substitute must be a product that does not infringe the patent. It must have also been, at the time of the hypothetical negotiation, both "available" and "acceptable."

To be an "available" substitute it must have been available during the damages period. A substitute is available if, during the damages period, a Defendant had all the necessary equipment, materials, know-how, legal right, and experience to design and manufacture the non-infringing substitute. The substitute need not have actually been sold at that time.

To be an "acceptable" substitute, the product or process must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general. The acceptable substitutes or their use also must not infringe the patent. An acceptable non-infringing substitute may be one that modified the product or method to avoid infringement.

# 7. DELIBERATIONS AND VERDICT

## 7.1. Introduction

Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who you can choose when you begin your deliberations.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

### 7.2. Unanimous Verdict

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the Courtroom and my deputy will read aloud your verdict. Place the completed verdict sheet in the envelope we will give you. Do not show the completed verdict form to anyone or share it with anyone until you are in the Courtroom.

It is proper to add the caution that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

**7.3. Duty to Deliberate**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So, you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

### 7.4. Social Media

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, BlackBerry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, TikTok, WeChat, WhatsApp, Snapchat, MySpace, LinkedIn, YouTube, or X (formerly known as Twitter), to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 7.5. **Court Has No Opinion**

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.