IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-057-CJB |
| | ) | |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT TVISION INSIGHTS, INC.'S OPENING POST-TRIAL BRIEF**

OF COUNSEL:
Jason Xu
RIMÔN LAW P.C.
1990 K. Street, NW, Suite 420
Washington, DC 20006
(202) 470-2141

Steig D. Olson
Sami H. Rashid
Vanessa Blecher
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000

Patrick D. Curran
QUINN EMANUEL URQUHART & SULLIVAN LLP
11 Huntington Avenue, Suite 5200
Boston, MA 02199
(617) 712-7100

Adam B. Wolfson
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
nhoeschen@shawkeller.com

Jared W. Newton (No. 7519)
QUINN EMANUEL URQUHART & SULLIVAN LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
(302) 302-4000
jarednewton@quinnemanuel.com

*Attorneys for Defendant TVision Insights, Inc.*

Benjamin D. Brown
Richard A. Koffman
Daniel McCuaig
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave NW, Suite 800
Washington, DC 20005
(202) 408-4600

Aamir A. Kazi
FISH & RICHARDSON
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
(404) 724-2811

Dated: August 7, 2026

# TABLE OF CONTENTS

I. NATURE AND STAGE OF THE PROCEEDINGS .......... 1
II. SUMMARY OF ARGUMENT .......... 2
III. STATEMENT OF FACTS .......... 3
A. The ’889 Patent .......... 3
B. Haitsma .......... 4
C. TVision Offered Uncontradicted Testimony at Trial That Haitsma’s Dyadic Filter Bank Approach Meets the Disputed Element of Claim 8 .......... 5
IV. ARGUMENT .......... 9
A. Legal Standard .......... 9
B. The Jury Lacked a Reasonable Basis to Reject Dr. Anderson’s Testimony .......... 9
C. The Jury’s Verdict Was Against the Clear Weight of the Evidence .......... 11
V. CONCLUSION .......... 11

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AVM Techs., LLC v. Intel Corp.*,
334 F. Supp. 3d 623, 626 (D. Del. 2018) .......... 9, 11

*Carrier Corp. v. Goodman Glob., Inc.*,
162 F. Supp. 3d 345, 351 (D. Del. 2016) .......... 9

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
757 F. App'x 974, 979 (Fed. Cir. 2019) .......... 9, 10

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.,*
10 F.4th 1330, 1336-37 (Fed. Cir. 2021) .......... 10

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.,*
798 F. Supp. 2d 541, 558 (D. Del. 2011) .......... 11

*MobileMedia Ideas LLC v. Apple Inc.*,
780 F.3d 1159, 1172 (Fed. Cir. 2015) .......... 9, 10, 11

*Natera, Inc. v. CareDx, Inc.*,
767 F. Supp. 3d 144, 153 (D. Del. 2025) .......... 10

*Tech. Licensing Corp. v. Videotek, Inc.*,
545 F.3d 1316, 1327 (Fed. Cir. 2008) .......... 10

**Other Authorities**

35 U.S.C. § 102 (b) and (e) .......... 2, 4
Fed. R. Civ. P. 50(a)(1) .......... 9
Fed. R. Civ. P. 59(a)(1)(A) .......... 9

## I. NATURE AND STAGE OF THE PROCEEDINGS

On June 11, 2026, the jury returned a verdict that TVision did not infringe claim 8 of U.S. Patent No. 7,783,889 ("the '889 Patent") and that claim 8 of the '889 Patent was not invalid. On July 21, 2026, Nielsen moved for judgment as a matter of law, or in the alternative for a new trial, on the question of infringement, and TVision moved conditionally for judgment as a matter of law or a new trial on the issue of invalidity. D.I. 545; D.I.546. The grounds for TVision's motions are set forth below. The Court need only decide those motions if judgment as a matter of law or a new trial on infringement is granted.

The disclosure of U.S. Patent Pub. No. 2002/0178410 A1 to Haitsma (DTX-37, "Haitsma") and unrebutted testimony from TVision's expert, Dr. David Anderson, demonstrates that Haitsma anticipates claim 8 of the '889 Patent. Haitsma teaches the same basic invention as the '889 Patent: a system that generates audio descriptors and signatures by comparing frequency components from a single frame (*i.e.*, intraframe processing). Unsurprisingly, given Haitsma's disclosure, Nielsen and its invalidity expert did not dispute that Haitsma discloses nearly every element of claim 8. Nielsen argued only that Haitsma failed to anticipate because it disclosed determining descriptors by comparing ***groups*** of frequency components rather than ***individual*** frequency components. But as Dr. Anderson explained, Haitsma discloses two different approaches: the "FFT" approach, which creates descriptors by comparing groups of frequency components, and the "dyadic filter bank" approach, which determines descriptors by comparing individual frequency components without grouping them. Dr. Anderson described how the dyadic filter technique meets the only disputed element of claim 8—testimony that Nielsen neither cross-examined nor rebutted with its own expert testimony. On this record, the only conclusion a reasonable jury could reach is that Haitsma anticipates claim 8.

## II. SUMMARY OF ARGUMENT

1. U.S. Patent Pub. No. 2002/0178410 A1 to Haitsma was published on November 28, 2002. D.I. 489-1, ¶ 17. It is thus prior art under pre-AIA 35 U.S.C. § 102(b) and (e).

2. TVision presented clear and convincing evidence that Haitsma discloses each and every limitation of claim 8 of the ’889 Patent.

3. The only element Nielsen alleged was not disclosed by Haitsma was determining a descriptor of a frame based on a comparison of a first spectral power and a second spectral power.[1] Nielsen’s sole witness on invalidity, Mr. Haitsma, explained that Nielsen disputed this element because Haitsma taught a two-step method that grouped frequency components together.

4. Haitsma, however, discloses a second approach in which a dyadic filter bank is used to transform the signal from the time domain to the frequency domain.

5. TVision’s expert, Dr. Anderson, presented unrebutted testimony that using this dyadic filter bank approach would result in frequency components that were created directly, *i.e.* they do not need to be grouped together.

6. No Nielsen witness substantively addressed the dyadic filter bank technique, and Dr. Anderson was not cross-examined on it.

7. Accordingly, no reasonable juror could have found for Nielsen on this issue and the Court should grant judgment as a matter of law that the ’889 Patent is anticipated by Haitsma.

[1] This feature is captured in claim limitations 8(e) and (f), which recite: “determine a first descriptor of the first frame of media samples based on a comparison of the first spectral power and the second spectral power” and “determine a second descriptor of the second frame of media samples based on a comparison of the third spectral power and the fourth spectral power[.]” Nielsen also argued that Haitsma does not disclose limitation 8(g) directed to generating a signature, but only because of the purported lack of a “descriptor.” PDX007-3 (attached hereto)

8. In the alternative, the Court should hold that the jury's conclusion that the '889 Patent is not invalid was against the great weight of the evidence, and thus a new trial should be held as to invalidity under Haitsma if a new trial on infringement is ordered.

## III. STATEMENT OF FACTS

### A. The '889 Patent

The '889 patent claims methods and apparatuses for generating digital signatures for identifying media information. PTX-1 at Abstract. These signatures are generated using generic components by

1. Dividing the signal into multiple overlapping "frames;"
2. Performing a spectral transform on each frame to generate "frequency components" with "spectral powers;"
3. Comparing the spectral powers of frequency components within the same frame to determine a "descriptor" of the frame;
4. Generating signatures based on the descriptors.

Claim 8 of the '889 Patent was the sole claim asserted at trial and is set forth below:

| **Claim 8 of U.S. Patent No. 7,783,889** | |
|---|---|
| **Preamble** | An apparatus for generating signatures, comprising: |
| **[8a]** | a processor system including a memory; and instructions stored in the memory that enable the processor system to: |
| **[8b]** | obtain a first and second frames of media samples, the first and second frames of media samples consecutively located in an audio stream, a portion of the first frame of media samples overlapping with a portion of the second frame of media samples; |

| | |
|---|---|
| **[8c]** | identify a first frequency component having a first spectral power and a second frequency component having a second spectral power by performing a spectral transform operation on the first frame of media samples; |
| **[8c]** | identify a first frequency component having a first spectral power and a second frequency component having a second spectral power by performing a spectral transform operation on the first frame of media samples; |
| **[8d]** | identify a third spectral power and a fourth spectral power; |
| **[8e]** | determine a first descriptor of the first frame of media samples based on a comparison of the first spectral power and the second spectral power; |
| **[8f]** | determine a second descriptor of the second frame of media samples based on a comparison of the third spectral power and the fourth spectral power; and |
| **[8g]** | generate a first signature based on the first descriptor and a second signature based on the second descriptor. |

PTX-1 at Claim 8, *see also* DDX5-62.

### B. Haitsma

At trial, TVision presented Haitsma as an anticipation reference against claim 8 of the '889 Patent. Tr. 745:22-756:9. Haitsma is prior art to the '889 Patent under pre-AIA 35 U.S.C. § 102(e) because Haitsma's November 28, 2002 publication date predates the earliest priority date of the '889 Patent, which is August 18, 2004. D.I. 489-1, ¶ 1; PTX-1 at 1; Haitsma at 1.

Like the '889 Patent, Haitsma is directed to a method for generating signatures (which Haitsma refers to as "hashes") for use in identifying media information. Haitsma at Abstract ("[t]he disclosed method generates robust hashes for multimedia content," and "[h]ashes are short summaries or signatures of data files which can be used to identify the file").

Just like the ’889 Patent, the method disclosed by Haitsma comprises:

1. Dividing the signal into multiple overlapping frames. Haitsma at Abstract, [0007], Claim 9.
2. Performing a spectral transform on each frame to generate frequency components with spectral powers. *Id.* at Abstract, Claim 5, Claim 7.
3. Comparing spectral powers within a frame to generate descriptors (which Haitsma refers to as “hash bits”). *Id.* at [0032], Claim 3.
4. Generating signatures (which Haitsma refers to as “hash words”) based on those descriptors. *Id.* at [0031-0032].

At trial, Dr. Anderson explained in detail that Haitsma discloses each and every limitation of claim 8. *See generally* Tr. 751:7-756:9. In response, Nielsen disputed only limitations 8(e) and (f), which require the claimed apparatus to determine a first and second descriptor, each of which is based on a comparison of spectral powers.[2] *See* PDX007-3; Tr. 833:8-15. This requirement is discussed in the next section.

### C. TVision Offered Uncontradicted Testimony at Trial That Haitsma’s Dyadic Filter Bank Approach Meets the Disputed Element of Claim 8

Dr. Anderson discussed two different approaches that Haitsma uses to determine descriptors as required by claim 8. In the first approach, Haitsma generated logarithmically spaced frequency components using a 2-step process. In step one, a fast Fourier transform (“FFT”) is performed on each frame, dividing that frame into frequency “bins” with related spectral powers. Tr. 747:7-24. In step two, the spectral powers for certain frequency bins are added together. *Id.* A descriptor is then determined based on the comparison of those spectral powers. Tr. 750:3-18.

[2] As discussed in footnote 1, Nielsen’s dispute about 8(g) was only related to whether these descriptor elements were met.

In the second approach, a dyadic filter bank or wavelet[3] is used to transform the signal from the time domain to the frequency domain. *See* Tr. 747:25-749:25; *see also* Haitsma at [0060] ("a robust hash can also be obtained by applying a (dyadic) filter bank"). Under this approach, frequency components are generated "directly," without the need to combine them together. *See* Tr. at 748:25-749:20, 755:16-755:25 ("[T]he wavelet transform bypasses all of their arguments in that there's no postprocessing step. It directly produces frequency components that are then compared or whose powers are compared."). The spectral powers of those components are then compared to determine descriptors as required by Claim 8. Tr. at 750:3-18.

Nielsen did not address the dyadic filter bank approach on cross-examination. *See* Tr. at 808:7-10. Despite questioning Dr. Anderson for nearly 45 pages of transcript, Nielsen's attorney never once asked Dr. Anderson a single question about the dyadic filter bank approach, and did not even use the words "dyadic filter bank" or "wavelet" when questioning him. *See id*; *see generally id.* at 758:13-803:21.

Nor did Nielsen address the dyadic filter bank approach through testimony of its own expert. Despite calling the author of the Haitsma reference as its sole witness to address invalidity, Nielsen questioned him only about the FFT-based approach, ***not*** the dyadic filter bank. Mr. Haitsma alleged that the FFT-based approach did not determine descriptors as required by claim 8 because it grouped together multiple FFT bins to generate frequency components. *See* PDX007-3. The exchange below is illustrative:

[3] Dr. Anderson explained that the "most common" dyadic filter bank at the time was the wavelet transform, Tr. 748:25-749:3, which the '889 Patent specifically contemplates using to determine spectral powers and descriptors. *Id.* at 749:4-20; '889 Patent at 2:65-3:5.

> **Q.** Mr. Haitsma, did you hear Dr. Anderson offer the opinion that grouping together frequency components and adding them together yields frequency components, as represented in this slide?
>
> **A.** Correct, yeah, I heard it.
>
> **Q.** Do you agree with that opinion?
>
> **A.** No.
>
> **Q.** Why not?
>
> **A.** Because I'm grouping different frequency components together and different -- in a group. So, yeah, this is not -- he's saying this is a complete transform, and yet I don't have frequency components here.
>
> **Q.** Are grouped frequency components the same thing as frequency components?
>
> **A.** No.
>
> **Q.** How do they differ?
>
> **A.** Because I'm grouping them together; it's like one page is not a book.

Tr. 857:9-858:01; *see also id.* at 833:11-15.

That testimony, like all of Mr. Haitsma's substantive testimony, relates only to Haitsma's FFT-based embodiment. It does not address the dyadic filter bank embodiment which, as Dr. Anderson explained, "directly produces frequency components that are then compared or whose powers are compared." Tr. 755:16-25.

No Nielsen witness substantively addressed the dyadic filter bank approach. The entirety of Mr. Haitsma's testimony on that approach is included in the exchanges below:

> **Q.** Mr. Haitsma, did you hear Dr. Anderson offer an opinion about the wavelet transform as disclosed in your patent application?

**A.** Yes.

**Q.** Is it your opinion that the wavelet transform is a type of spectral transform operation that renders the '889 patent invalid?

**A.** No.

Q. And why not?

A. Because the wavelet transform --

*Id.* at 841:04-13. Mr. Haitsma did not explain this opinion or provide any basis for the jury to credit it. *See id.* Even this empty exchange was withdrawn by Nielsen's counsel after TVision objected to it as outside the scope of Mr. Haitsma's expert report. Tr. 842:4-9.

The only other time a Nielsen witness even used the word wavelet (no Nielsen witness uttered any variation of "dyadic filter bank") was in the exchange immediately following the above when Nielsen once again attempted to elicit improper testimony from Mr. Haitsma:

**Q.** What is your understanding that this slide represents?

**A.** According to Dr. Anderson, a wavelet transform.

**Q**. Did you hear Dr. Anderson offer the opinion that the wavelet transform creates individual frequency components?

**A**. Yes, I heard that.

Q. Do you agree with that statement?

**Mr. Russell**: Objection, Your Honor.

Tr. 842:19-843:04. When the Court struck this question as well, Nielsen abandoned the subject for good. *See* Tr. 842:25-845:6.

In sum, Dr. Anderson's testimony detailing how and why the dyadic filter bank approach disclosed in Haitsma anticipates Claim 8 of the '889 Patent was uncontradicted.

## IV. ARGUMENT

### A. Legal Standard

JMOL is required if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party[.]" Fed. R. Civ. P. 50(a)(1). "[U]nder the requirement of substantial evidence, a jury's rejection of expert testimony must have some reasonable basis. *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 757 F. App'x 974, 979 (Fed. Cir. 2019). "Conclusory statements by an expert . . . are insufficient to sustain a jury's verdict." *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015).

Under Rule 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A). Among the most common grounds for granting a new trial is when "the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice . . . ." *AVM Techs., LLC v. Intel Corp.*, 334 F. Supp. 3d 623, 626 (D. Del. 2018). "The decision to grant or deny a new trial is within the sound discretion of the trial court and, unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner." *Carrier Corp. v. Goodman Glob., Inc.*, 162 F. Supp. 3d 345, 351 (D. Del. 2016).

### B. The Jury Lacked a Reasonable Basis to Reject Dr. Anderson's Testimony

The jury lacked any reasonable basis to reject the express disclosure of Haitsma and Dr. Anderson's unrebutted testimony that Haitsma anticipated every element of Claim 8. *See Imperium,* 757 F. App'x at 979. Nielsen *did not dispute* Haitsma's disclosure of any element of

the claim other than the "descriptor" and the elements requiring a descriptor. Dr. Anderson walked through every element in great detail and explained how Haitsma's dyadic filter bank approach disclosed each one—including the descriptor, disclosed via the dyadic filter bank. Tr. 751:6-756:9. Once TVision presented that evidence "that would justify a conclusion of invalidity," Nielsen bore "'the burden of going forward with evidence' to rebut that conclusion." *Natera, Inc. v. CareDx, Inc.*, 767 F. Supp. 3d 144, 153 (D. Del. 2025) (*quoting Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008)).

Nielsen failed to meet that burden. Rather than "produc[e] additional evidence and present[] persuasive argument based on new evidence or evidence already of record," Nielsen literally only offered a single word of testimony—no—in response to a withdrawn question. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008). Because this bald statement is "far too general" to carry Nielsen's burden of production, judgment as a matter of law is warranted here. *See Natera,* 767 F. Supp. 3d at 151 (*quoting Juno Therapeutics, Inc. v. Kite Pharma, Inc.,* 10 F.4th 1330, 1336-37 (Fed. Cir. 2021); *see also MobileMedia*, 780 F.3d 1172 ("Conclusory statements by an expert . . . are insufficient to sustain a jury's verdict.").

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.* is controlling. There, as here, the defendant's expert "provided detailed testimony about how [the prior-art reference] discloses each of the limitations of claims[.]" 757 F. App'x 974, 978 (Fed. Cir. 2019). The plaintiff, like Nielsen, "did not contradict that testimony on cross-examination or otherwise." *Id.* Instead, they merely presented the conclusory testimony of their expert that "says nothing whatsoever about the substance of what is in that paragraph in [the prior art reference] . . . or about how that substance relates to the claim limitations at issue." *Id.* at 278-79. Notably, the expert opinion in *Imperium* was significantly more substantive than Mr. Haitsma's "no." Faced with these facts, the Federal

Circuit held that "the jury could not properly find that the claims of the '884 patent at issue here are not anticipated" and reversed the District Court's denial of JMOL on anticipation. *Id.* at 980.

*MobileMedia* compels the same result. There again, the defendant's expert "provided specific reasons why a skilled artisan would have found claim 23 to be obvious[.]" 780 F.3d at 1172. The plaintiff's expert "did not rebut this testimony, offering only the conclusory statement that 'I don't see evidence for that.'" *Id.* (quoting joint appendix). Noting that "conclusory statements by an expert . . . are insufficient to sustain a jury's verdict," the Federal Circuit held the patent invalid and reversed the district Court's denial of the defendant's JMOL on obviousness. *Id.* The Court should reach the same result here.

### C. The Jury's Verdict Was Against the Clear Weight of the Evidence

Even if the invalidity issues above do not justify JMOL, the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice. *See AVM Techs*., 334 F. Supp. 3d at 626. In determining whether to grant a new trial, the Court "should consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal principles which the jury had to apply to the facts." *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.,* 798 F. Supp. 2d 541, 558 (D. Del. 2011).

For the reasons stated above, the jury's verdict on invalidity was against the great weight of the evidence. TVision was the only side to present evidence on whether the dyadic filter bank embodiment anticipated the '889 patent. It would be a miscarriage of justice to allow the jury's verdict to stand in the face of TVision's uncontradicted testimony on this key point.

## V. CONCLUSION

For all these reasons, TVision asks the Court to grant this conditional motion. The Court need not reach this issue unless judgment as a matter of law or a new trial on infringement is granted.

Respectfully submitted,

*/s/ Nathan R. Hoeschen*

Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
nhoeschen@shawkeller.com

Jared W. Newton (No. 7519)
QUINN EMANUEL URQUHART
& SULLIVAN LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
(302) 302-4000
jarednewton@quinnemanuel.com

*Attorneys for Defendant TVision Insights, Inc.*

OF COUNSEL:
Jason Xu
RIMÔN LAW P.C.
1990 K. Street, NW, Suite 420
Washington, DC 20006
(202) 470-2141

Steig D. Olson
Sami H. Rashid
Vanessa Blecher
QUINN EMANUEL URQUHART
& SULLIVAN LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000

Patrick D. Curran
QUINN EMANUEL URQUHART
& SULLIVAN LLP
11 Huntington Avenue, Suite 5200
Boston, MA 02199
(617) 712-7100

Adam B. Wolfson
QUINN EMANUEL URQUHART
& SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Benjamin D. Brown
Richard A. Koffman
Daniel McCuaig
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave NW, Suite 800
Washington, DC 20005
(202) 408-4600

Aamir A. Kazi
FISH & RICHARDSON
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
(404) 724-2811

Dated: August 7, 2026