**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | C.A. No. 22-57-CJB |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**THE NIELSEN COMPANY (US), LLC'S BRIEF IN SUPPORT OF**
**<u>ITS MOTIONS UNDER FED. R. CIV. P. 50(b) AND 59</u>**

OF COUNSEL:

Steven Yovits
Douglas Lewis
Jason P. Greenhut
Andrew Wood
Kevin Oliver
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

Clifford Katz
Elizabeth N. Krasnow
David I. Zalman
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Peter T. Sabini (#7655)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
psabini@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

Dated: August 7, 2026
13089369 / 14944.00004
PUBLIC VERSION
Dated: August 13, 2026

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. THE COURT SHOULD SET ASIDE THE JURY'S GENERAL VERDICT OF NON-INFRINGEMENT BECAUSE THE REVERSE DOCTRINE OF EQUIVALENTS IS NOT A LEGALLY VIABLE NON-INFRINGEMENT DEFENSE UNDER THE 1952 PATENT ACT. ........ 3

III. THE COURT SHOULD ENTER JUDGMENT AS A MATTER OF LAW THAT NIELSEN PROVED LITERAL INFRINGEMENT. ........ 5

A. TVision Admitted That All Elements of the Asserted Claim Are Present in the Accused Software Except the Generate Element and That It Does Not Dispute How the Accused Software Operates. ........ 7

B. The Generate Element Is Satisfied as a Matter of Law. ........ 7

1. The Evidence Presented at Trial Showed That the Accused Software Contains a "Signature." ........ 8

2. The Evidence Presented at Trial Showed That the Accused Software "Generate[s]" a Signature. ........ 11

IV. IN THE ALTERNATIVE, THE COURT SHOULD ORDER A NEW TRIAL. ........ 16

A. If the Court Finds the RDOE Does Exist and That Both the "Signature" and "Generate" Elements Are Present as a Matter of Law, It Should Order a New Trial ........ 16

B. In the Alternative, Nielsen Asks the Court to Order a New Trial Because of TVision's Expert's Incorrect Constructions of "Signature" and "Generate." ........ 17

C. Under the General Verdict Rule, the Court Should Order a New Trial If It Agrees that One Claim Term, But Not Both, Is Present as a Matter of Law. ...... 17

D. The Court Should Order a New Trial on Damages ........ 18

V. CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*Albrego v. Reading Co.*,
372 F.2d 83 (3d Cir. 1966)....................3

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313 (Fed. Cir. 2003)....................5

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
No. 12-CV-00630-LHK, 2014 WL 252045 (N.D. Cal. Jan. 21, 2014)....................11

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
365 U.S. 336 (1961)....................5

*Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*,
No. 24-945-CFC, D.I. 367 (D. Del. July 1, 2026)....................5

*Brokerage Concepts Inc. v. U.S. Healthcare, Inc.*,
140 F.3d 494 (3d Cir. 1998)....................3

*Cao Lighting, Inc. v. Gen. Elec. Co.*,
No. 20-681-GBW, 2023 WL 1930354 (D. Del. 2023)....................15

*Carden v. Westinghouse Elec. Corp.*,
850 F.2d 996 (3d Cir. 1988)....................3, 16, 18

*Cordis Corp. v. Bos. Sci. Corp.*,
658 F.3d 1347 (Fed. Cir. 2011)....................6, 7, 9-10, 14, 15

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009)....................5

*Duncan Parking Techs., Inc. v. IPS Grp., Inc.*,
914 F.3d 1347 (Fed. Cir. 2019)....................8, 14

*Epos Techs. Ltd. v. Pegasus Techs. Ltd.*,
766 F.3d 1338 (Fed. Cir. 2014)....................8, 13

*Finisar Corp. v. DirecTV Grp., Inc.*,
523 F.3d 1323 (Fed. Cir. 2008)....................10, 16-17

*Fujifilm Corp. v. Motorola Mobility LLC*,
No. 12-cv-03587-WHO, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015)....................11

*Huawei Techs., Co., v. Samsung Elecs. Co.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018) ....................12

*Hynix Semiconductor Inc. v. Rambus Inc.*,
No. CV–00–20905 RMW, 2008 WL 5100791 (N.D. Cal. 2008) ....................7, 14

*LG Elecs. U.S.A. v. Whirlpool Corp.*,
798 F. Supp. 2d 541 (D. Del. 2011) ....................5, 18

*MobileMedia Ideas v. Apple Inc.*,
780 F.3d 1159 (Fed. Cir. 2015) ....................6

*Nichia Corp. v. Feit Elec. Co., Inc.*,
No. CV 20-359-GW-Ex, 2022 WL 17222250 (C.D. Cal. Oct. 12, 2022) ....................15

*Phillips v. AWH Corp.*,
415 F. 3d 1303 (Fed. Cir. 2005) ....................9, 12, 14

*Rexnord Corp. v. Laitram Corp.*,
274 F.3d 1336 (Fed. Cir. 2001) ....................11

*SEB SA v. Montgomery Ward & Co., Inc.*,
594 F. 3d 1360 (Fed. Cir. 2010) ....................3

*Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*,
2015 WL 4720576, No. 12-1013-RGA (D. Del. Aug. 7, 2015) .................... 10-11, 17

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
775 F.2d 1107 (Fed. Cir. 1985) ....................5

*Steuben Foods, Inc. v. Shibuya Hoppman Corp.*,
127 F.4th 348 (Fed. Cir. 2025) .................... 4-5

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
279 F.3d 1357 (Fed. Cir. 2002) ....................4

*Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*,
127 F.4th 1340 (Fed. Cir. 2025) ....................10, 17

*Wilburn v. Maritrans GP Inc.*,
139 F.3d 350 (3d Cir. 1998) ....................3, 16

*Wyeth LLC v. AstraZeneca Pharms. LP*,
No. 2024-2325, 180 F.4th 1371 (Fed. Cir. 2026) ....................6

**STATUTES & RULES**

35 U.S.C. § 112 ....................4

35 U.S.C. § 271(a) .......... 4-5

PATENT ACT OF 1952 .......... 2, 4

Fed. R. Civ. P. 50(b) .......... 1

Fed. R. Civ. P. 59 .......... 1

## I. INTRODUCTION

Plaintiff The Nielsen Company (US), LLC ("Nielsen") respectfully moves, pursuant to Federal Rule of Civil Procedure 50(b), for judgment as a matter of law ("JMOL") that Defendant TVision Insights, Inc. ("TVision") infringes Claim 8 of U.S. Patent No. 7,783,889 ("the '889 Patent") and for a new trial on damages. In the alternative, Nielsen moves under Rule 59 for a new trial on infringement and damages.

The jury returned a general verdict finding that Nielsen had not shown that TVision infringes claim 8. D.I. 556 at 1127:10–25. Under the jury instructions (D.I. 526 at 23, 25), the jury could have rested that verdict on either of two bases. In particular, the jury could have found that Nielsen failed to show that TVision practices each limitation of claim 8 ("the All Elements Basis"). Alternatively, the jury could have found that TVision practices each limitation of the claim but that TVision established the affirmative defense of the reverse doctrine of equivalents ("RDOE") ("the RDOE Basis"). Because the verdict was a general verdict, there is no way to know which of the two bases the jury adopted. Accordingly, there are three scenarios and corresponding outcomes:

***<u>Scenario One</u>*** applies if the Court finds—as it should—that ***both*** (1) the RDOE Basis is legally flawed because the RDOE no longer exists as a viable defense, and (2) the All Elements Basis is legally flawed because Nielsen proved as a matter of law that the accused product practices every limitation of the asserted claim. In this scenario, a new trial on infringement is not necessary (because Nielsen has established infringement as a matter of law), and the Court should enter judgment of infringement as a matter of law and order a new trial on damages.

The Court should find, consistent with Scenario One, that ***both*** possible bases for the jury's verdict are legally flawed. ***With regard to the All Elements Basis***, there was no dispute at trial regarding the operation of TVision's system; indeed, TVision's expert expressly agreed that

Nielsen's explanation of how TVision's code operated was accurate and that TVision practiced every limitation but one, asserting only that its code did not "generate a first signature…" as required by the final element of claim 8. The issue at trial, therefore, was whether that undisputed mode of operation fell within the scope of the claim, which is an issue of law. TVision's defense rested entirely upon incorrect constructions of the claim terms "signature" and "generate," the former contrary to the Court's construction and the latter inconsistent with the ordinary meaning as understood in view of the specification. When "signature" and "generate" are properly construed, no reasonable jury could fail to find that the accused product practices every limitation of the asserted claim. As discussed below, if the Court finds that one claim term, but not both, is present as a matter of law, the Court should order a new trial under the general verdict rule. ***And with regard to the RDOE Basis***, the RDOE is no longer a viable defense because the Patent Act of 1952 abrogated it.

***Scenario Two*** applies if the Court finds that only one of the two potential bases for the jury's verdict (but not both) is legally flawed. In other words, this scenario applies if either (1) the Court finds that the RDOE Basis is legally flawed because, as explained below, the RDOE no longer exists as a viable defense; or (2) the Court finds that the All Elements Basis is legally flawed because Nielsen proved as a matter of law that the accused TVision product practices every limitation of the claim Nielsen asserted at trial. In this scenario, the Court should order a new trial on infringement and damages.

***Scenario Three*** applies if the Court finds that TVision advanced one or more improper claim constructions at trial or that only one of the two disputed claim terms (*i.e.*, "signature" and "generate") is present in TVision's product. In the former instance, if the Court cannot determine that the term is met as a matter of law, TVision's advancement of an improper construction requires

a new trial. And in the latter instance, the general verdict rule requires a new trial because it is impossible to know which claim term the jury relied on for its non-infringement verdict.

## II. THE COURT SHOULD SET ASIDE THE JURY'S GENERAL VERDICT OF NON-INFRINGEMENT BECAUSE THE REVERSE DOCTRINE OF EQUIVALENTS IS NOT A LEGALLY VIABLE NON-INFRINGEMENT DEFENSE UNDER THE 1952 PATENT ACT.

Under the general verdict rule, "[w]here a jury has returned a general verdict and one theory of liability is not sustained by the evidence or legally sound, the verdict cannot stand because the court cannot determine whether the jury based its verdict on an improper ground." *Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 361 (3d Cir. 1998); *see also Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1000 (3d Cir. 1988) ("In our jurisprudence it has been established that a general verdict must be set aside where the jury has been instructed that it could rely on two or more independent grounds or claims and one of those grounds or claims turns out to be insufficient."); *Albrego v. Reading Co.*, 372 F.2d 83, 86 (3d Cir. 1966) ("Where … a general verdict may rest on either of two claims— one supported by the evidence and the other not— a judgment thereon must be reversed.") (citations omitted). In that situation, the verdict should be set aside and a new trial ordered. *See Brokerage Concepts Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 534 (3d Cir. 1998) ("Faced with this circumstance, the proper course is for us to remand for a new trial rather than attempt to divine the basis of the jury's verdict."); *SEB SA v. Montgomery Ward & Co., Inc.*, 594 F. 3d 1360, 1374 (Fed. Cir. 2010) ("Under the general verdict rule, where one or more of multiple claims is found legally invalid, a reviewing court must reverse and order a new trial if unable to determine whether the invalid theory tainted the verdict."). That is the case here.

As the case was submitted to the jury, the jury could have found non-infringement based on the RDOE. *See* Jury Instruction Section 4.3; D.I. 556 at 1034:10–1035:9. The RDOE was a common law doctrine under which an infringer could avoid liability, even though literal

infringement was established, if the accused product was "so far changed in principle" from the patented invention that it performed a similar function in a substantially different way. *Steuben Foods, Inc. v. Shibuya Hoppman Corp.*, 127 F.4th 348, 356 (Fed. Cir. 2025). The Federal Circuit has repeatedly described the RDOE as an "anachronistic exception, long mentioned but rarely applied" and has never affirmed a finding of non-infringement based on the doctrine. *Id.* (quoting *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1368 (Fed. Cir. 2002)).

The RDOE is not legally viable under current law and thus cannot support a non-infringement verdict. The 1952 Patent Act precludes infringement defenses not identified in the statute, and the statute does not identify the RDOE. *See* 35 U.S.C. §271(a) ("***Except as otherwise provided in this title***, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent.") (emphasis added). The statute's failure to mention the RDOE is not an accident, but rather by design: The 1952 Act replaced the RDOE with Section 112's written description requirement. *See Steuben Foods*, 127 F.4th at 357 ("[Patentee] argues [the RDOE's] elimination [from the Patent Act] was intentional because RDOE was subsumed by 35 U.S.C. §112. . . . We find [patentee]'s arguments compelling…."); *Tate Access Floors*, 279 F.3d at 1368 ("[W]hen Congress enacted 35 U.S.C. § 112 . . . it imposed requirements . . . that are co-extensive with the broadest possible reach of the [RDOE].").

Although the Federal Circuit last year found the argument that the RDOE no longer exists "compelling," *Steuben Foods*, 127 F.4th at 357,[1] a court in this District recently held to the

[1] In *Steuben Foods*, the Federal Circuit ultimately declined to decide whether the RDOE survived the 1952 Patent Act, instead ruling on other grounds.

contrary. *See Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, No. 24-945-CFC, D.I. 367 (D. Del. July 1, 2026). Respectfully, however, the cases in *Beckman Coulter* long predate *Steuben Foods* and mention the RDOE only in *dicta*. *See, e.g.*, *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1339 (Fed. Cir. 2009); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1351 (Fed. Cir. 2003); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1124 (Fed. Cir. 1985). Nor is *Beckman Coulter* supported by the Supreme Court's statement in *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 342 (1961), that Section 271(a), "which defines 'infringement,' left intact the entire body of case law on direct infringement." The RDOE is an infringement ***defense***, and defenses fall within Section 271(a)'s requirement that exceptions to infringement must be "as otherwise provided in this title." Indeed, the Federal Circuit in *Steuben Foods* expressly considered *Aro Mfg*. before describing the arguments against the RDOE as "compelling." 127 F.4th at 357.

Because the RDOE is not available as a defense under the current statute, and because the jury could have based its verdict on that non-existent defense, the Court should, at a minimum, order a new trial on infringement and damages. As explained below, however, because Nielsen established as a matter of law that the accused product practices every limitation of the asserted claim, only a new trial on damages is necessary. *See LG Elecs. U.S.A. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 558 (D. Del. 2011) ("Because the jury did not calculate damages for infringement of the [claims for which the court granted JMOL of infringement], the court concludes that a new trial on damages is appropriate with respect to these issues.").

## III. THE COURT SHOULD ENTER JUDGMENT AS A MATTER OF LAW THAT NIELSEN PROVED LITERAL INFRINGEMENT.

TVision admitted at trial that the ACRCloud software used by TVision satisfies every claim limitation except "***generate*** a first ***signature*** based on the first descriptor and a second signature

based on the second descriptor" ("the Generate Element"). '889 Patent, 27:1-2 (emphasis added). The undisputed evidence of how the accused software operates showed that the Generate Element is, in fact, also present. The Court should therefore enter judgment of infringement as a matter of law.

The only "evidence" that the Generate Element was ***not*** present in the accused software was TVision's expert's conclusory testimony based on incorrect claim constructions. *See MobileMedia Ideas v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015) ("Conclusory statements by an expert . . . are insufficient to sustain a jury's verdict.") (citing *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1268–69 (Fed. Cir. 2012)). In particular, Dr. Anderson's testimony rested on (1) a construction of "signature" that contradicted the Court's construction; and (2) a construction of "generate" that contradicted its plain and ordinary meaning (as evidenced by the specification). Because Dr. Anderson based his testimony on incorrect claim constructions, the Court should not credit that testimony. *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011) ("we must disregard the testimony of Cordis's expert … because … that testimony was based on an incorrect understanding of the claim construction.").

Absent that testimony, there is no basis in the record for a finding of non-infringement, and judgment should be entered for Nielsen. *See Wyeth LLC v. AstraZeneca Pharms. LP*, No. 2024-2325, 180 F.4th 1371, 1377 (Fed. Cir. 2026) ("JMOL is proper when after 'viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find' for the nonmovant.") (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)). Alternatively, the Court should order a new trial.

### A. TVision Admitted That All Elements of the Asserted Claim Are Present in the Accused Software Except the Generate Element and That It Does Not Dispute How the Accused Software Operates.

TVision's expert, Dr. Anderson, admitted that the accused ACRCloud SDK software satisfies every element of Claim 8 except the Generate Element:

> Q. Do you agree that the ACRCloud SDK software does everything in the elements except for the last one, the generate element?
>
> A. … [Y]es, everything but the last.

D.I. 555 at 761:4–17.

Dr. Anderson further conceded that Nielsen's expert Dr. Martin "did a good job of explaining how the source code worked" and that his explanation of the source-code functionality "is regarded as accurate." D.I. 556 at 1056:13-18. Thus, the operation of the accused software is not in dispute; the only dispute is whether that operation "generate[s]" a "signature" within the meaning of Claim 8.

### B. The Generate Element Is Satisfied as a Matter of Law.

The dispute about the Generate Element boils down to whether the accused software (1) uses a "signature" within the Court's construction of the term; and (2) "generates" that signature under the plain and ordinary meaning of that term.[2] In the context of this case, whether the accused software practices the Generate Element is an issue of law because there is no dispute about what ACRCloud's software does (D.I. 556 at 1056:13-18); rather, the dispute is about whether the claims cover what the software admittedly does. *Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV–00–20905 RMW, 2008 WL 5100791, *3 n.1 (N.D. Cal. 2008) (in a JMOL context, "since there was no dispute as to the structure and function of Hynix's DDR SDRAM product, the

---

[2] The Court is empowered to clarify its claim construction after trial in evaluating a JMOL motion as long as the clarified construction reflects what the original construction was intended to mean. *See Cordis Corp.*, 658 F.3d at 1355-56.

issue may be more appropriately viewed as [a] legal question of claim construction."); *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1363 (Fed. Cir. 2019) ("[W]here the parties do not dispute any relevant facts regarding the accused product . . . the question of literal infringement collapses into claim construction and is amenable to summary judgment.") (quoting *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997)).

### 1. The Evidence Presented at Trial Showed That the Accused Software Contains a "Signature."

The Court construed "signature" to mean "item for use in identifying media information." D.I. 556 at 946:14–17; Jury Instruction 3.3, D.I. 556 at 1031:1-3. The Court did ***not*** hold that a "signature" must ***by itself*** identify media content. The Court's construction requires only that the signature be an "item ***for use in*** identifying media information." In other words, the "signature" must be ***part*** of the process of identifying media information but need not necessarily identify that information alone. For example, under the Court's construction, a signature that identifies media information when combined with other signatures would still be "for use in identifying media information." The specification makes this clear, as it discusses an embodiment in which "a comparison algorithm may be configured ***to match two or more monitored signatures*** with corresponding reference signatures ***to accurately identify the example monitored audio stream*** **202**." 9:11-15 (emphasis added); *see also* 9:1-9, 21:13-23. Nothing in the specification or claims requires a "signature" acting alone to identify content, and a construction imposing such a requirement would exclude this express embodiment. *See, e.g.*, *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1347 (Fed. Cir. 2014) ("A claim construction that excludes a preferred embodiment . . . is rarely, if ever correct….") (quotations omitted).

Under the Court's construction, all the evidence presented at trial establishes that the accused software uses "signatures." In particular, the evidence proves that the items Nielsen

identified as "signatures" (the "s->points_" data structure copied from the triplets/descriptors that Dr. Anderson described as "3-tuples") are an "item for use in identifying media information." Dr. Anderson confirmed that the accused software makes signatures that are used (with other signatures) to identify media content:

> Q. And so when TVision's product actually runs through all this, what does it do with all of those 3-tuples in order to turn them into a signature or a fingerprint?
>
> A. So TVision takes all of those 3-tuples and it packs them together into a single bucket – it's a Python object -- that it then returns as the fingerprint. ***So the fingerprint that TVision uses in their product for recognizing audio is this -- the set of all of these signatures***.

D.I. 555 at 743:23-744:6 (emphasis added). Nielsen's expert, Dr. Kyriakakis, agreed that the accused software's signatures are used to identify media content:

> Q. And at a high level, what does TVision's panelist meters do with the signature?
>
> A. Once the -- once the processing is finished and the signatures are created, then it sends it to the cloud to be matched in the reference database.

D.I. 554 at 384:16-20.

Despite this agreement, Dr. Anderson offered conclusory testimony that ACRCloud software does not make a signature (*see e.g.*, D.I. 555 at 730:25-731:6), but his testimony rested on his assertion that a "triplet" is not used as a signature unless it ***alone*** identifies media information—an assertion that improperly contradicts the Court's claim construction. D.I. 555 at 759:25-760:20; *see Cordis Corp.*, 658 F.3d at 1357; *Phillips*, 415 F.3d at 1318 ("conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court."). Specifically, Dr. Anderson testified that "a signature is something that can meaningfully represent an audio signal such that it could be identified." D.I. 555 at 760:18–20.

Underscoring the importance of Dr. Anderson's improper construction of "signature" to its non-infringement arguments, TVision in closing argument urged the jury to apply that construction

when assessing Nielsen's evidence. In particular, TVision's counsel cited the following testimony of Nielsen's expert, Dr. Kyriakakis:

> Q. You didn't do any analysis to see in the ACRCloud software whether a single triplet **by itself** is ever used to match to a piece of media content, correct?
>
> A. That would have to be a question for Dr. Martin. I don't recall if that occurred.

D.I. 556 at 1089:10-15 (emphasis added). Counsel then used that testimony to argue that the "signature" element was missing because the signature Nielsen identified could not ***by itself*** identify content. *Id.* at 1089:16-18, 1089:22-1090:11.

An expert's improper testimony regarding claim construction is entitled to no weight when assessing a jury verdict. *See Cordis Corp.*, 658 F.3d at 1357 (holding that expert testimony based on an incorrect understanding of claim construction must be disregarded). And a jury verdict that may rest on an incorrect theory cannot stand. *See Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*, 2015 WL 4720576, at *11, No. 12-1013-RGA, (D. Del. Aug. 7, 2015) (ordering a new trial on infringement after an incorrect theory had been presented to the jury). Here, without Dr. Anderson's improper testimony and TVision's improper theory, there was no basis for finding that the accused software lacks the required "signature" or that the signatures Nielsen identified are not an "item for use in identifying media information." Because the parties agree that the accused software uses multiple signatures (*i.e.*, 3-tuples/triplets) to identify content, the Court should hold as a matter of law that the ACRCloud software contains a "signature." In the alternative, the Court should order a new trial on the issue. *See Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1333 (Fed. Cir. 2008) ("Where an infringement verdict relies on incorrect construction of the disputed claim terms, this court may grant JMOL or order a new trial to correct the error. . . ."); *Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*, 127 F.4th 1340, 1349-50

(Fed. Cir. 2025) (ordering new trial where expert's "noninfringement declaration was untethered from the district court's claim constructions"); *Sprint Commc'ns Co. L.P*, 2015 WL 4720576, at *11 (holding that a new trial was required where improper theory was presented to the jury).

**2. The Evidence Presented at Trial Showed That the Accused Software "Generate[s]" a Signature.**

All the evidence presented at trial indicates that the accused software's signature is "generate[d]" under the plain and ordinary meaning of that term. The only contrary "evidence" was again Dr. Anderson's conclusory testimony, this time relying on an unduly narrow reading of "generate." In particular, Dr. Anderson testified that "generate a … signature" requires that to get a signature, "you do something to [the descriptor] to get something else" (D.I. 555 at 743:11–13) or that there be a "transform" or "change" to the descriptor. D.I. 555 at 743:6-10. The plain meaning of "generate" is not so limited.

The Court did not construe "generate," so the term must be given its plain and ordinary meaning. Absent a clear disavowal or intent on the part of the patentee to act as its own lexicographer (neither of which TVision alleged), a claim term's plain and ordinary meaning encompasses its full scope. As the Federal Circuit has held, "[u]nless compelled to do otherwise, a court will give a claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001); *see also Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-CV-00630-LHK, 2014 WL 252045, at *7 (N.D. Cal. Jan. 21, 2014) ("Neither party sought a construction of the term 'keyboard' to address this issue in their claim construction briefs. The Court therefore applies 'the full range' of the term's plain and ordinary meaning, 'unless compelled to do otherwise.' For the following reasons, the Court concludes that no reasonable jury could understand the plain and ordinary meaning of the term 'keyboard' as used in claim 18 to exclude virtual keyboards.") (citation omitted); *Fujifilm*

*Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 757575, *11 (N.D. Cal. Feb. 20, 2015) ("[Because the term] was not construed during claim construction, I give the term the 'full range' of its plain and ordinary meaning….").

A patent's specification can shed light on the full scope of a claim term's plain and ordinary meaning. *See Phillips v. AWH Corp.*, 415 F. 3d 1303, 1313 (Fed. Cir. 2005) ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").[3] The specification of the '889 patent demonstrates that "generate" does not require the thing being "generated" to be the result of a transformation of one thing into something else. In fact, the specification expressly discloses a signature generated using one or more descriptors without modifying them. *See* '889 patent, 7:62-64 ("An N-bit monitored signature $S_x(t)$ is formed using ***one or more M-bit descriptors*** $B_x(t_0)$, $B_x(t_0-1)$, $B_x(t_0+2)$, $B_x(t_0+3)$.") (emphasis added); 9:24-28 ("***One or more of the descriptors $B_{Rn}(t)$ may then be concatenated to form an N-bit reference signature S(t)***."); 10:22-29 ("each reference signature is formed by four reference descriptors $B_{R_n}\left(t_0 + \frac{k}{T_s}\right), B_{R_n}\left(t_0 + \frac{k}{T_s} + 1\right), B_{R_n}\left(t_0\ \frac{k}{T_s} + 2\right), B_{R_n}\left(t_0 + \frac{k}{T_s} + 3\right)$").[4, 5] In other words, the patent describes (1) a "signature" as a collection of "one or more" descriptors,

[3] Even when a term receives its plain meaning, its meaning remains an issue of law. *Huawei Techs., Co., v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 968 (N.D. Cal. 2018) ("Because claim construction is a matter of law to be decided by the court, and, by implication, experts are not permitted to argue claim construction to the jury, an expert's opinion that seeks to limit the full scope of a term's plain and ordinary meaning must be stricken.").

[4] In $B_{Rn}(t)$, "t" stands for "time" with $B_{Rn}(t)$ being the value of the descriptor at time t. In this example, the specification shows the signature made of descriptor values at 4 different points in time.

[5] As Dr. Kyriakakis testified without contradiction, "[r]eference signatures are created following exactly the same processes [as those used for monitored signatures] except they're done offline in advance and put in a database so that when the content comes in live, it has somewhere to go check the reference." D.I. 554 at 383:8-11.

and (2) a "signature" generated from descriptors that are not "transform[ed]" or "chang[ed]" in any way. Accordingly, the ordinary meaning of "generate … a signature" includes copying one or more "descriptors" into a "signature" data structure. *See Epos*, 766 F.3d at 1347 ("A claim construction that excludes a preferred embodiment . . . is rarely, if ever correct…."). The specification never discusses changing or transforming descriptors into something else before they can be considered "signatures."

Under the proper construction of "generate," the evidence at trial establishes that the accused software indeed "generate[s]" signatures. Both parties' experts agreed that the accused ACRCloud software's "get_fp" function copies descriptors from the "local_max_" array into the "s->points_" data structure, thereby making them into signatures. Kyriakakis, D.I. 554 at 428:10–21 ("Q. And can you explain how the signatures are based on the descriptors? A. They are -- the descriptors are in local_max_, and they are copied into this points array"); Martin, *id.* at 373:7-12 ("Q. But then we get to this step here where you go from local_max_ under this get_fp here? A. Yes. Q. And you say it copies each value frequency number and frame into s->points_ as a signature? A. Yes."); Anderson, D.I. 555 at 743:2-7, 743:23–744:6 ("Q. And so when TVision's product actually runs through all this, what does it do with all of those 3-tuples in order to turn them into … a fingerprint? A. So TVision takes all of those 3-tuples [*i.e.*, signatures] and it packs them together into a single bucket [without modifying them] … that it then returns as the fingerprint"), 781:1-8 ("Q. And in some cases, then, the ACRCloud software would copy multiple triples for the same frame, correct? A. Yes. Q. Okay. And in other cases, it might copy only one, right? A. So this copying operation actually isn't distinguished by frame. Everything goes into a list one at a time, and then that list is copied as a whole.").

Thus, there was no dispute regarding what, as a factual matter, the accused software does. All the experts agreed that the software copies descriptors into the signature data structure. The only question remaining for infringement, therefore, was whether the agreed functionality satisfies the claim term "generate." This is an issue of law. *See Duncan Parking Techs.*, 914 F.3d at 1363 ("[W]here the parties do not dispute any relevant facts regarding the accused product, . . . the question of literal infringement collapses into claim construction…."); *Hynix Semiconductor*, 2008 WL 5100791, *3 n.1 (where there is no dispute as to the structure and function of the accused product, the infringement issue "may be more appropriately viewed as [a] legal question of claim construction").

Dr. Anderson's testimony that the accused software does not generate a signature improperly addressed this issue of law and did so based on an improperly narrow reading of "generate" that is inconsistent with that term's plain meaning. *Cordis Corp.*, 658 F.3d at 1357; *Phillips*, 415 F.3d at 1318 ("conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court."). In particular, Dr. Anderson improperly construed "generate" for the jury and explicitly based his non-infringement opinion on that improper construction: "***Generate means*** you use—you get something***—you do something to it to get something else***. And that's important. ***That step is missing in their theory***." D.I. 555 at 743:11–13 (emphasis added). He further testified that the accused software's "functionality that copies the descriptors over into the points database, the points data structure is not sufficient to be generate" because "***there's been nothing done to those values. Those values are simply handed to the output, and handing something over is not generating***." *Id.* at 784:20–785:14 (emphasis added). And he opined that Nielsen's infringement case simply "identifies each of these terms as a descriptor, and then says that it is also the signature. There's no transformation or change. It's just

identifying the same thing without -- it skips the important word in the patent of 'generate.'" *Id.* at 743:6-10.[6]

Dr. Anderson's testimony cannot support the verdict because it is improper for an expert witness to engage in claim construction at all, even in the guise of plain meaning, let alone to espouse an incorrect construction. *See Cao Lighting, Inc. v. Gen. Elec. Co.*, No. 20-681-GBW, 2023 WL 1930354, at *6 (D. Del. 2023) ("At trial, parties may introduce evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art, ***so long as the evidence does not amount to arguing claim construction***.") (quoting *Ferring Pharms. Inc. v. PAR Pharm., Inc.*, No. 15-00173-RGA, 2016 WL 6471246, at *1 (D. Del. Oct. 28, 2016)) (internal quotation and citation omitted) (emphasis added). "[I]t is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction.' " *Id.* (quoting *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009)). Here, Dr. Anderson not only engaged in claim construction but, as discussed above, advanced a construction that cannot be reconciled with the specification. *See Nichia Corp. v. Feit Elec. Co., Inc.*, No. CV 20-359-GW-Ex, 2022 WL 17222250, at *11 (C.D. Cal. Oct. 12, 2022) ("Although Defendant argues that [the expert] is simply *applying* plain and ordinary meaning to terms not construed at

---

[6] Once again, TVision compounded the problem in its closing argument. Specifically, TVision's specifically invoked Dr. Anderson's improper construction:

> [Nielsen] didn't show that that triplet value was generated based on a first descriptor. ***And the problem with their argument here, if we go back to the slides, is that they said they're basically the same thing. They said take this value on the left, and all you have to do is copy it over***. They said that's generating something. The thing on the left, by copying it, you are generating the thing on the right. … ***Simply copying something over from one spot to another is not generation***. And Dr. Anderson explained this point in his testimony. "Let me ask you about that first. Is it your opinion that functionality that copies the descriptors over into the points database, the points data structure, is not sufficient to generate?" No. There's been nothing done to those values. Those values are simply handed to the output, and handing something over is not generating.

D.I. 556 at 1093:11-1094:10 (emphasis added).

the *Markman* stage, as opposed to *providing* his own constructions, ***his opinions may not be advanced where they are contrary to the disclosures in the patent***.") (emphasis added); '889 patent, 7:62-64; 10:22-29.

Accordingly, because the evidence shows that the accused software "generates" signatures within the plain and ordinary meaning of the claim language, the Court should hold as a matter of law that the ACRCloud software satisfies the "generate" requirement or, in the alternative, order a new trial on the issue. *See Finisar Corp.*, 523 F.3d at 1333 ("Where an infringement verdict relies on incorrect construction of the disputed claim terms, this court may grant JMOL or order a new trial to correct the error, depending on the degree of difference between the incorrect construction and the correct construction."). No reasonable jury could have found the "generate" requirement to be lacking when that term is given its proper scope.

* * *

Because the RDOE does not exist and because both the "signature" and "generate" elements are present as a matter of law, the Court should enter judgment as a matter of law that TVision infringes the '889 patent.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD ORDER A NEW TRIAL.

### A. If the Court Finds the RDOE Does Exist and That Both the "Signature" and "Generate" Elements Are Present as a Matter of Law, It Should Order a New Trial

If the Court finds that the RDOE does exist and both the "signature" and "generate" elements are present as a matter of law, the general verdict rule requires a new trial. In this scenario, one cannot know whether the jury based its non-infringement verdict on RDOE or the all-elements rule. If either is improper, a new trial is necessary. *See Wilburn*, 139 F.3d at 361; *Carden*, 850 F.2d at 1000 ("In our jurisprudence it has been established that a general verdict must be set aside where the jury has been instructed that it could rely on two or more independent grounds or claims and

one of those grounds or claims turns out to be insufficient."). Consequently, in this scenario the Court should order a new trial.

### B. In the Alternative, Nielsen Asks the Court to Order a New Trial Because of TVision's Expert's Incorrect Constructions of "Signature" and "Generate."

Alternatively, Nielsen asks the Court to order a new trial because of TVision's use of improper claim constructions. The testimony of Dr. Anderson that ACRCloud's software did not use a "signature" relied on an incorrect construction of that term. Where a non-infringement verdict may rest on an incorrect construction, the Court should grant a new trial. *See Sprint Commc'ns Co.*, 2015 WL 4720576, at *11 (when a party "presented an incorrect infringement theory to the jury, which may have 'unfairly influenced the verdict,' . . . allowing the verdict to stand would result in 'a miscarriage of justice.' It follows that [Nielsen] is entitled to a new trial on the issue of infringement."); *Finisar Corp*, 523 F.3d at 1333 (where verdict may rest on an incorrect claim construction, JMOL or a new trial should be ordered); *Trudell Med. Int'l Inc*, 127 F.4th at 1349-50 (reversing jury's finding of infringement and ordering new trial where expert's "noninfringement declaration was untethered from the district court's claim constructions").

In the same way, Dr. Anderson's testimony that ACRCloud's software did not "generate" a signature relied on an expert improperly construing a claim term for the jury and an incorrect construction of "generate," making a new trial necessary. *See Sprint Commc'ns Co.*, 2015 WL 4720576, at *11.

### C. Under the General Verdict Rule, the Court Should Order a New Trial If It Agrees that One Claim Term, But Not Both, Is Present as a Matter of Law.

In addition, given the general verdict, it is impossible to determine whether the jury credited Dr. Anderson's improper testimony about the "signature" element, the "generate" element, or both to find non-infringement. Thus, if the Court agrees that one but not both of these claim terms is present as a matter of law, it should order a new trial. *See Carden*, 850 F.2d at 1000.

### D. The Court Should Order a New Trial on Damages.

If the Court grants either Nielsen's motion for judgment as a matter of law on infringement or its motion for a new trial (on any ground), the Court should also order a new trial on damages. Because of the jury's non-infringement verdict, the jury did not return a verdict on damages. Such a verdict is necessary if the Court grants either of these motions. *See, e.g.*, *LG Elecs. U.S.A. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 558 (D. Del. 2011) ("Because the jury did not calculate damages for infringement of the [asserted claims for which the court granted JMOL with respect to infringement], the court concludes that a new trial on damages is appropriate with respect to these issues.").

## V. CONCLUSION

For the foregoing reasons, the Court should hold as a matter of law that (1) the RDOE is not a viable defense, and (2) Nielsen proved that the accused product practices every limitation of the asserted claim. Accordingly, the Court should enter judgment as a matter of law that TVision infringes claim 8 and order a new trial on damages or order a new trial on both infringement and damages. Alternatively, the Court should hold that because the general verdict of non-infringement may rest on one or more improper claim constructions or on the RDOE, a new trial on infringement and damages is required.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Peter T. Sabini (#7655)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
psabini@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

OF COUNSEL:

Steven Yovits
Douglas Lewis
Jason P. Greenhut
Andrew Wood
Kevin Oliver
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

Clifford Katz
Elizabeth N. Krasnow
David I. Zalman
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800

Dated: August 7, 2026
13089369 / 14944.00004
PUBLIC VERSION
Dated: August 13, 2026