IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC,<br><br>Plaintiff,<br><br>v.<br><br>TVISION INSIGHTS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 22-057-CJB |

**TVISION'S ANSWERING BRIEF IN OPPOSITION TO NIELSEN'S <u>MOTIONS UNDER FED. R. CIV. P. 50(b) AND 59</u>**


OF COUNSEL:
Jason Xu
RIMÔN LAW P.C.
1990 K. Street, NW, Suite 420
Washington, DC 20006
(202) 470-2141

Steig D. Olson
Sami H. Rashid
Vanessa Blecher
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000

Patrick D. Curran
QUINN EMANUEL URQUHART & SULLIVAN LLP
11 Huntington Avenue, Suite 5200
Boston, MA 02199
(617) 712-7100

Adam B. Wolfson
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
nhoeschen@shawkeller.com

Jared W. Newton (No. 7519)
QUINN EMANUEL URQUHART & SULLIVAN LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
(302) 302-4000
jarednewton@quinnemanuel.com

*Attorneys for Defendant TVision Insights, Inc.*

(213) 443-3000
Benjamin D. Brown
Richard A. Koffman
Daniel McCuaig
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave NW, Suite 800
Washington, DC 20005
(202) 408-4600

Aamir A. Kazi
FISH & RICHARDSON
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
(404) 724-2811

Dated: August 28, 2026

# TABLE OF CONTENTS

Page

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II. SUMMARY OF ARGUMENT ..........................................................................................1

III. LEGAL STANDARD........................................................................................................2

IV. THE GENERAL VERDICT RULE DOES NOT COMPEL SETTING ASIDE THE VERDICT OR A NEW TRIAL ...................................................................................3

A. Nielsen Waived and Forfeited Reliance on the General Verdict Rule ....................3

B. The Bases For The Jury's Verdict Are Legally Valid ............................................5

C. The Verdict Should Be Upheld Regardless ..........................................................7

V. THE NON-INFRINGEMENT VERDICT SHOULD STAND.........................................8

A. Substantial Evidence Supports a Finding that the Accused Software Does Not Meet the "Generate" Requirement....................................................................9

B. Substantial Evidence Supports a Finding that the Accused Software Does Not Meet the "Signature" Requirement...............................................................13

1. TVision Did Not Rely on an Improper Claim Construction......................13

2. Nielsen Did Not Meet Its Burden of Proof ...............................................18

VI. NIELSEN IS NOT ENTITLED TO A NEW TRIAL......................................................20

VII. CONCLUSION...............................................................................................................20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abbott Labs. v. Sandoz, Inc.*,
566 F.3d 1282 (Fed. Cir. 2009)........................................................ 6

*Acceleration Bay LLC v. Amazon Web Servs.*,
C. A. No. 22-904-RGA, 2026 LX 135891 (D. Del. Mar. 26, 2026).................. 13, 20

*Allied Chem. Corp. v. Daiflon, Inc.*,
449 U.S. 33 (1980)........................................................ 3

*Amgen Inc. v. Hospira, Inc.*,
944 F.3d 1327 (Fed. Cir. 2019)........................................................ 2

*Arbutus Biopharma Corp. v. Moderna, Inc.*, C.A. No. 22-252-JDW,
2026 LX 50561 (D. Del. Feb. 24, 2026)........................................................ 7

*Aro Mfg. Co. v. Convertible Top Replacement*,
365 U.S. 336 (1961)........................................................ 5

*AVM Techs., LLC v. Intel Corp.*, C.A. No. 15-33-RGA,
2017 U.S. Dist. LEXIS 64729 (D. Del. Apr. 28, 2017)........................................................ 7

*Barry v. DePuy Synthes Cos.*,
164 F.4th 896, 905 (Fed. Cir. 2026)........................................................ 12

*Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945-CFC,
2026 LX 362633 (D. Del. July 1, 2026)........................................................ 5, 7

*Broadcom Corp. v. Qualcomm Inc.*,
543 F.3d 683 (Fed. Cir. 2008)........................................................ 11

*Cordis Corp. v. Boston Scientific Corp.*,
561 F.3d 1319 (Fed. Cir. 2009)........................................................ 11, 12, 17

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009)........................................................ 6

*Dixson v. Newsweek, Inc.*,
562 F.2d 626 (10th Cir. 1977)........................................................ 3

*EMC Corp. v. Zerto, Inc.*, C.A. No. 12-956 (GMS),
2016 U.S. Dist. LEXIS 42944 (D. Del. Mar. 31, 2016)........................................................ 3

*Epos Techs. Ltd. v. Pegasus Techs. Ltd.*,
766 F.3d 1338 (Fed. Cir. 2014)........................................................ 17

*Express Mobile, Inc. v. GoDaddy.com, LLC*,
680 F. Supp. 3d 517 (D. Del. 2023),
*aff'd in relevant part*, 2025 LX 88028 (Fed. Cir. Apr. 2, 2025)........................................................ passim

*Ferring Pharms. v. Par Pharm.*, C.A. No. 15-173-RGA,
2016 U.S. Dist. LEXIS 49439 (D. Del. Oct. 28, 2016)........................................................ 12

*Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*,
784 F.3d 177, 190 (3d Cir. 2015)), *aff'd*, 691 F. App'x 623 (Fed. Cir. 2017) .......................... 3

*Function Media, L.L.C. v. Google, Inc.*,
708 F.3d 1310 (Fed. Cir. 2013)........................................................................................ 3

*Gen. Mills, Inc. v. Hunt-Wesson, Inc.*,
103 F.3d 978 (Fed. Cir. 1997)........................................................................................ 9

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
339 U.S. 605 (1950)................................................................................................ 5, 6

*Hurley v. Atl. City Police Dep't*,
174 F.3d 95 (3d Cir. 1999)........................................................................................... 7

*In re Donaldson Co.*,
16 F.3d 1189 (Fed. Cir. 1994)........................................................................................ 6

*Indect USA Corp. v. Park Assist, LLC*, Nos. 20224-1023, 2024-1127,
2026 LX 87976 (Fed. Cir. Jan. 7, 2026) ..................................................................... 13

*Komis v. Sec'y of United States Dep't of Lab.*,
918 F.3d 289 (3d Cir. 2019)........................................................................................... 7

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
628 F.3d 1359 (Fed. Cir. 2010).................................................................................... 11

*Marra v. Philadelphia Hous. Auth.*,
497 F.3d 286 (3d Cir. 2007)........................................................................................... 2

*McCord v. Maguire*,
873 F.2d 1271 (9th Cir. 1989) ....................................................................................... 3

*Mitsubishi Elec. Corp. v. Ampex Corp.*,
190 F.3d 1300 (Fed. Cir. 1999)...................................................................................... 3

*Morse v. Fusto*,
804 F.3d 538 (2d Cir. 2015)........................................................................................... 3

*Muldrow v. City of St. Louis, Missouri*,
601 U.S. 346 (2024)....................................................................................................... 7

*O2 Micro Int'l Ltd. v. Beyond Innov. Tech. Co., Ltd.*,
521 F.3d 1351 (Fed. Cir. 2008)............................................................................. 11, 13

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005).................................................................................... 17

*Rembrandt Wireless Tech. v. Samsung Elecs.*,
853 F. 3d 1370 (Fed. Cir. 2017)..................................................................................... 9

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
927 F.2d 1565 (Fed. Cir. 1991)...................................................................................... 6

*Smollett v. Skayting Dev. Corp.*,
793 F.2d 547 (3d Cir. 1986)......................................................................................... 16

*Sprint Communs. Co. L.P. v. Comcast IP Holdings, LLC*, C.A. No. 12-1013-RGA, 2015 LX 70389 (D. Del. Aug. 7, 2015) ........ 18

*SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107 (Fed. Cir. 1985) ........ 8

*SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073 (Fed. Cir. 2014) ........ 7

*Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348 (Fed. Cir. 2025) ........ 6

*Tate Access Floors Inc. v. Interface Architectural Res. Inc.*, 279 F.3d 1357 (Fed. Cir. 2002) ........ 6

*Tex. Adv. Optoelec. Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304 (Fed. Cir. 2018) ........ 7

*TQ Delta, LLC v. 2Wire, Inc.*, 486 F. Supp. 3d 803 (D. Del. 2020) ........ 2

*Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*, 127 F.4th 1340 (Fed. Cir. 2025) ........ 20

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ........ 9

*United States v. Tyler*, 732 F.3d 241 (3d Cir. 2013) ........ 5

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) ........ 5, 6

*Williamson v. Consol. Rail Corp.*, 926 F.2d 1344 (3d Cir. 1991) ........ 2, 3, 20

**Statutes**

35 U.S.C. § 112 ........ 6

**Other Authorities**

The Consolidated Patent Act of 1870, ch. 230, § 26, 16 Stat. 198, 201 ........ 6

**Rules**

Fed. R. Civ. P. 50(b) ........ 2

## I. NATURE AND STAGE OF THE PROCEEDINGS

As the Court recognized prior to charging the jury, the parties "had a tremendous, tremendous amount of process" in this case. Tr. at 1013:16-19. That process produced substantial evidence demonstrating that the accused software does not meet the "generate" and "signature" elements of claim 8, and that the accused software operates in a fundamentally different manner than the alleged invention. The evidence, which included detailed testimony from TVision fact and expert witnesses, is more than sufficient to support a jury verdict of non-infringement. As such, Nielsen does not argue the verdict lacks substantial evidence. Nielsen relies instead on legal arguments that are incorrect, waived or forfeited, and—in some cases—already rejected, asking this Court to order a new trial or overturn the jury verdict through JMOL, which the Third Circuit has made clear should be granted only "sparingly." Nielsen's motions for JMOL and new trial should be denied.

## II. SUMMARY OF ARGUMENT

1. Nielsen waived and forfeited its right to rely on the general verdict rule because it failed to object to—and in fact, proposed—the general verdict form presented to the jury. If the Court reaches the merits of this issue, Nielsen's argument should be rejected because it hinges on a determination that the reverse doctrine of equivalents ("RDOE") is legally non-viable, which the Supreme Court, Federal Circuit, and this Court have rejected.

2. The non-infringement verdict did not turn on improper claim constructions. For the "generate" element, the jury resolved a basic fact dispute and rejected Nielsen's argument that copying a three-tuple descriptor from one location to another is the same as generating a signature. Dr. Anderson's testimony in support of that conclusion relied on the plain and ordinary meaning of the term "generate." Indeed, the Court asked the parties whether there was a claim construction dispute for the term ***after Dr. Anderson had testified*** and Nielsen said there was not. Its effort to

raise claim construction now, under the guise of an attack on sufficiency of evidence, is forfeited. For the "signature" element, the jury heard substantial evidence that the three-tuple value Nielsen relied on is a descriptor, not a signature, and that the only signature in the accused products is a six-second long fingerprint that does not meet the requirements of claim 8. None of this evidence relied on an improper claim construction. And Nielsen's argument that the same three-tuple value can be ***both*** a descriptor ***and*** a signature contradicts the Court's construction.

3. The Court should deny Nielsen's motion for new trial because the jury verdict is neither against the weight of evidence nor a miscarriage of justice.

## III. LEGAL STANDARD

The Third Circuit has held that motions for judgment as a matter of law under Rule 50(b) should be granted "sparingly." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). "This is particularly true when … the movant bears the burden of proof." *Express Mobile, Inc. v. GoDaddy.com, LLC*, 680 F. Supp. 3d 517, 525 (D. Del. 2023), *aff'd in relevant part*, 2025 LX 88028 (Fed. Cir. Apr. 2, 2025). In that situation, "JMOL is only granted where there is insufficient evidence for permitting any different finding." *Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1333 (Fed. Cir. 2019) (quotation marks and citation omitted).

In evaluating a motion for JMOL, the Court must give the nonmovant—*i.e.*, the "verdict winner"—"the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991). Judgment is granted for the movant "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find for the nonmovant." *TQ Delta, LLC v. 2Wire, Inc.*, 486 F. Supp. 3d 803, 806 (D. Del. 2020) (quotation omitted).

The decision to grant a new trial is committed to the sound discretion of the district court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). A new trial may be granted where the verdict is "against the weight of the evidence" and "a miscarriage of justice would occur if the jury's verdict were left stand." *Williamson*, 926 F.2d at 1348.

## IV. THE GENERAL VERDICT RULE DOES NOT COMPEL SETTING ASIDE THE VERDICT OR A NEW TRIAL

### A. Nielsen Waived and Forfeited Reliance on the General Verdict Rule

It is fundamental that a party must raise objections based on the form of a general verdict before the jury is excused—if not sooner. *See EMC Corp. v. Zerto, Inc.*, C.A. No. 12-956 (GMS), 2016 U.S. Dist. LEXIS 42944, at *18 (D. Del. Mar. 31, 2016) (citing *Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 190-91 & n.19 (3d Cir. 2015)), *aff'd*, 691 F. App'x 623 (Fed. Cir. 2017). Arguments based on the general verdict rule are no exception. *E.g.*, *Morse v. Fusto*, 804 F.3d 538, 551-52 (2d Cir. 2015); *McCord v. Maguire*, 873 F.2d 1271, 1274 (9th Cir. 1989); *Dixson v. Newsweek, Inc.*, 562 F.2d 626, 631 (10th Cir. 1977). To preserve arguments based on the general verdict rule, a party must request a special verdict instead of a general verdict, propose specific interrogatories to accompany the general verdict, or at least object to the verdict sheet on the ground that the salient issue should be identified separately. *See Mitsubishi Elec. Corp. v. Ampex Corp.*, 190 F.3d 1300, 1304 (Fed. Cir. 1999) (rejecting argument based on the general verdict rule because "the time to raise this objection was before submission of the case to the jury"). This preservation rule serves the administration of justice and prevents gamesmanship. *See Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1330 (Fed. Cir. 2013) ("To allow a new trial after the objecting party failed to seek a proper remedy at the only possible time would undermine the incentives for efficient trial procedure and would allow the possible misuse of the Federal Rules of Civil Procedure to implant a ground for appeal should the jury's

opinion prove distasteful.") (cleaned up).

Nielsen's motion implicates these very concerns. ***First***, Nielsen proposed the general verdict form language that the jury used regarding infringement, and both parties adopted Nielsen's proposal. D.I. 496 at 2; D.I. 500 at 2; Exs. A and A-1 (E-mail and attachment from Nielsen counsel proposing form). This is dispositive, as it amounts to waiver. *See United States v. Dowdell*, 70 F.4th 134, 140 (3d Cir. 2023) (waiver is the intentional abandonment of a right). ***Second***, despite the fact that Nielsen had many opportunities to voice any purported concerns, Nielsen kept silent. At no point did Nielsen suggest that the verdict form should break out literal infringement, individual claim elements, and the reverse doctrine of equivalents—even after the Court gave Nielsen an opportunity to do so at the prayer conference:

> COURT: … Now, of course, say in a world where you've got a literal infringement argument, right, from the plaintiff and a reverse doctrine of equivalents argument from the defendant that we don't infringe, you could have a world where maybe the jury could be a little confused…. I don't think you'd have to change the box that you had in there now, but there might need to be some explaining by the parties. … Do you have any thoughts on the plaintiff's side?
>
> COUNSEL FOR NIELSEN: We had talked about the verdict form and –
>
> COURT: You're good with it?
>
> COUNSEL FOR NIELSEN: Yeah.

Tr. at 914:16-915:19. Nielsen thus also forfeited its right to challenge the general verdict form. *See Dowdell*, 70 F.4th at 140 (forfeiture is the failure to timely assert a right).

***Third***, it would invite gamesmanship to allow Nielsen to go forward on a general verdict form to which it agreed, see how trial plays out, and then, only after the jury finds against Nielsen, challenge the outcome under the general verdict rule. Waiver and forfeiture guard against this type of "heads I win, tails you lose" gamesmanship.[1]

---

[1] This is particularly true given that Nielsen presented two different infringement theories—literal and doctrine of equivalents—under the single infringement question on the verdict form. *See* D.I.

**B. The Bases for the Jury's Verdict Are Legally Valid**

If the Court reaches the merits on this issue, it should hold that the general verdict rule does not apply because there is no legally invalid theory that could underlie the verdict. *See United States v. Tyler*, 732 F.3d 241, 253 (3d Cir. 2013).

***First***, this Court has already held that RDOE is legally valid. *See* D.I. 432. Nielsen has not asked for reconsideration of that order, nor does it raise new arguments that compel a different result. *See* Br. at 4-5. Regarding the 1952 Patent Act, the Supreme Court in *Aro Mfg. Co. v. Convertible Top Replacement Co.* held that it "left intact the entire body of case law on direct infringement" and explained that § 271(a), with its "[e]xcept as otherwise provided" language, was declaratory only and adopted for completeness. 365 U.S. 336, 342, n.8 (1961). Moreover, RDOE is not a separate exception to § 271(a); it is simply DOE as applied against the patentee. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608-09 (1950); *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945-CFC, 2026 LX 362633, at *3-4 (D. Del. July 1, 2026). In *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, the Supreme Court specifically addressed the question of whether DOE as set forth in *Graver Tank* survived the 1952 Patent Act, and found that it did. 520 U.S. 17, 28 (1997). "Congress in 1952 could easily have responded to *Graver Tank* as it did to the *Halliburton* decision. But it did not." *Id.* Nielsen cannot credibly argue the 1952 Patent Act's addition of § 271(a) impacted the DOE and RDOE analysis set forth in *Graver Tank*.

Regarding Nielsen's written description argument, Br. at 4, the Supreme Court in *Warner-Jenkinson* rejected a theory that the definiteness requirement in § 112 impacted *Graver Tank's* DOE analysis. *Id.* at 26-27. It found that the § 112 language from the 1952 Patent Act already

---

500 at 2; D.I. 526 at 24. Surely, if Nielsen had won, it would not agree the jury verdict should be set aside if the Court determined its DOE theory rested on legal error.

existed in the prior 1870 Patent Act and cannot have been intended as a change. *Id.* The same is true here: the written description requirement Nielsen points to already existed in the 1870 Act at the time of *Graver Tank*, so Congress cannot have intended it to destroy RDOE. *Compare* 35 U.S.C. § 112 *with* The Consolidated Patent Act of 1870, ch. 230, § 26, 16 Stat. 198, 201;[2] *Warner-Jenkinson*, 520 U.S. at 26-27.

The remainder of Nielsen's argument is based on dicta from *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348, 357 (Fed. Cir. 2025). This Court has already recognized that *Steuben* "appears to have considered the RDOE as a potentially viable defense," and ruled on other grounds. D.I. 432. Indeed, *Steuben* ***applied*** the RDOE burden-shifting framework in reaching its decision—reinforcing its continued viability. 127 F.4th at 356-58. And the dicta on which Nielsen relies conflicts with other Federal Circuit opinions that applied RDOE. *E.g.*, *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1581 (Fed. Cir. 1991), *overruled in part on other grounds by Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1293 (Fed. Cir. 2009); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1339 (Fed. Cir. 2009). Nielsen does not address *Scripps* at all, but it remains controlling law and shows that, even if the Federal Circuit has not had occasion to affirm a finding of non-infringement under RDOE, it has nonetheless used RDOE to reverse summary judgment of infringement. 927 F.2d at 1581. Nielsen does address *DePuy*, but is incorrect that its holding is dicta. *See* Br. at 5. In *DePuy*, the Federal Circuit reversed the imposition of sanctions for arguing RDOE, because the "Supreme Court has recognized it to be a viable defense, even if it is rarely asserted." 567 F.3d at 1339.

[2] The Federal Circuit has likewise rejected the idea that § 112, ¶ 6 was intended to codify RDOE. *See In re Donaldson Co.*, 16 F.3d 1189, 1194 (Fed. Cir. 1994). In *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, the court merely noted an overlap in dicta while rejecting a "practicing the prior art" defense. 279 F.3d 1357, 1368-69 (Fed. Cir. 2002).

Courts in this district have consistently followed the Supreme Court and Federal Circuit's directive, recognizing the viability of RDOE and rejecting arguments to the contrary. *E.g.*, *Arbutus Biopharma Corp. v. Moderna, Inc.*, C.A. No. 22-252-JDW, 2026 LX 50561, at *12 (D. Del. Feb. 24, 2026); *Beckman*, 2026 LX 362633, at *5-6; *AVM Techs., LLC v. Intel Corp.*, C.A. No. 15-33-RGA, 2017 U.S. Dist. LEXIS 64729, at *3 (D. Del. Apr. 28, 2017). Nielsen presents no reason for this Court to follow a different approach and effectively reverse its summary judgment order.

***Second***, as detailed in Section V, whether the accused software meets the "generate" and "signature" elements of claim 8 are factual determinations supported by substantial evidence. Neither dispute turned on an invalid legal theory or improper construction. And even if the Court found that one of them did, it should uphold the verdict based on the other. *See infra*, Section IV.C.

### C. The Verdict Should Be Upheld Regardless

The general verdict rule does not upend a verdict if the underlying error is harmless. *See Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 121 (3d Cir. 1999). If it is "highly probable" that the legal error is not responsible for the verdict, it should be sustained. *Komis v. Sec'y of United States Dep't of Lab.*, 918 F.3d 289, 297 (3d Cir. 2019) (quotation omitted) (sustaining verdict), *abrogated on other grounds by Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024).

The Federal Circuit has sustained verdicts for this reason many times, notwithstanding arguments under the general verdict rule. In *Tex. Adv. Optoelec. Sols., Inc. v. Renesas Elecs. Am., Inc.*, the court assumed without deciding that one of the plaintiff's theories of trade secret misappropriation was legally wrong, but sustained the verdict because it was "amply supported by the evidence" under a different, legally valid theory. 895 F.3d 1304, 1316 (Fed. Cir. 2018). In *SSL Servs., LLC v. Citrix Sys., Inc.*, the court sustained a non-infringement verdict by holding that, even if some of the district court's claim constructions were untenable, at least one of them was correct and the record evidence clearly supported a verdict under that construction. 769 F.3d 1073, 1084-

85 (Fed. Cir. 2014).

Like reasoning applies here. ***First***, if the Court concludes there is substantial evidence to support a finding of no literal infringement, it is highly improbable the jury would have reached RDOE—which is taken into account only if there is a predicate finding of literal infringement. *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123-24 (Fed. Cir. 1985); D.I. 526 at 25. ***Second***, if the Court were to conclude that TVision relied on an improper claim construction argument for one element but not the other, "the result the jury reached … would not change." *SSL*, 769 F.3d at 1084 ("In these circumstances, we soundly can base our conclusion that the non-infringement verdict stands on the fact that [the properly construed element] is not practiced by the accused products."); *Express Mobile*, 680 F. Supp. 3d at 527 ("[E]ven if GoDaddy did add additional limitations to the Court's construction—which, again, the Court is not persuaded it did—in this case there were alternative bases upon which a reasonable jury could find non-infringement.") (emphasis removed).

## V. THE NON-INFRINGEMENT VERDICT SHOULD STAND

Substantial evidence supports a jury finding that the accused software does not include two requirements in claim 8 of the '889 patent: "generate" and "signature." Regarding "generate," the jury heard detailed testimony from TVision's technical expert, Dr. Anderson—based on his review of the source code—that the accused software simply ***copies*** three-tuple (*i.e.*, triplet) descriptor values from one location to another; it does ***not generate*** a signature based on those values. Regarding "signature," Dr. Anderson testified that the descriptor values are ***not signatures***—nor can they be under the Court's construction—and that the signatures in the accused software are six-second long fingerprints that do not meet the requirements of claim 8. Both issues turned on basic fact disputes about whether the accused products meet the requirements of the asserted claim,

not improper claim constructions as Nielsen contends.[3] Indeed, Nielsen is the only party raising claim construction arguments, but those arguments are forfeited, waived, and conflict with the Court's ruling as detailed below.

### A. Substantial Evidence Supports a Finding that the Accused Software Does Not Meet the "Generate" Requirement

Claim 8 of the '889 patent requires, *inter alia*, "An apparatus for generating signatures, comprising: . . . instructions stored in memory that enable the processor system to: . . . ***generate a first signature based on the first descriptor and a second signature based on the second descriptor***." At trial, Nielsen and its expert, Dr. Kyriakakis, relied on a three-tuple (*i.e.*, triplet) value as the claimed "descriptor." *See* Tr. at 416:21-23. He alleged that the three-tuple descriptor values are used to "generate" a signature because they are "copied" from one location to another. *Id*. at 427:16-23, 428:14-17, 447:24-448:14. And, consequently, he identified the same copied-over three-tuple value as the resulting "signature." *Id*. at 448:21-449:3.

TVision and Dr. Anderson disputed this testimony. As context, Dr. Anderson explained that when the three-tuple descriptor values are copied, they go into a Python object that represents a six-second long fingerprint of audio monitored by the TVision meter. *See* Tr. at 744:19-23, 807:15-19. Importantly, he explained that even though the fingerprints operate as signatures in the accused software, Nielsen did not allege they meet the requirements of claim 8 because no two

[3] Nielsen is wrong that, simply because the parties agree on the general operation of the accused software, there are no fact disputes. *See* Br. at 7-8 (citing cases like *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997)). Those cases involved "a procedural posture not present in this case," in which the parties agreed about the question of infringement under different constructions. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301-02 (Fed. Cir. 2011). Here, there are not competing constructions and the parties dispute as a factual issue whether the accused products meet the claim requirements. *See Rembrandt Wireless Techs. v. Samsung Elecs.*, 853 F.3d 1370, 1379 (Fed. Cir. 2017) (explaining that claim construction need not "purge every shred of ambiguity" and whether accused product met limitation at issue as construed "is a factual question.") (quotation omitted).

fingerprints are generated from overlapping frames of media information. *Id*. at 744:24-745:10.[4] Thus, he explained, Nielsen was forced to point to the same copied-over three-tuple value as both the descriptor and the signature—but that copying step does not meet the "generate" requirement:

> Q. … [W]hat does Nielsen point to as how this goes from being a descriptor or a 3-tuple or whatever, to a signature?
>
> A. Nielsen first identifies each of these terms as a descriptor, and then says that it is also the signature. There's no transformation or change. It's just identifying the same thing without – ***it skips the important word in the patent of "generate."*** Generate means you use – you get something – you do something to it to get something else. And that's important. That step is missing from their theory.

*Id*. at 743:2-13 (emphasis added).

Dr. Anderson reinforced this point on cross, explaining that copying the three-tuple descriptor values into the Python object does ***not generate*** a signature as required by the claim:

> Q. Is it your opinion that the functionality that copies the descriptors over into the points database, the points data structure is not sufficient to be generate?
>
> A. No, there's been nothing done to those values. Those values are simply handed to the output, and handing something over is not generating.

*Id*. at 785:8-14.

This testimony is plainly sufficient to support a jury finding that the "generate" requirement is not met. *See Express Mobile*, 680 F. Supp. 3d at 524. A reasonable jury could conclude that copying a three-tuple value from one location to another does not "generate" anything, and that Nielsen's infringement theory "skips" this required step because it relies on the same three-tuple value as both the descriptor and the supposedly "generated" signature. *See* Tr. at 743:2-13. And contrary to Nielsen's argument, Dr. Anderson's testimony does not rely on an improper claim construction or depart from the plain and ordinary meaning of the term "generate." *See* Br. at 14-15.

[4] This argument is discussed in further detail below. *See* Section V.B.1 *infra.*

***First***, Nielsen forfeited (or waived) its ability to argue that Dr. Anderson's testimony relied on an improper claim construction for "generate." The law is clear that "litigants waive their right to present new claim construction disputes if they are raised for the first time after trial." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008) (citation omitted). Indeed, the Federal Circuit distinguishes cases where the parties raised a claim construction dispute before the verdict from those where the complaining party sat on its hands until the jury rendered a verdict. *Compare O2 Micro Int'l Ltd. v. Beyond Innov. Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) *with Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1331 (Fed. Cir. 2009) ("Raising this argument for the first time in a motion for judgment as a matter of law . . . was too late."); *see also Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010).

Nielsen's forfeiture could not be clearer. Nielsen did not contend that Dr. Anderson relied on an improper construction of "generate" at any point prior to trial, including after receiving his expert reports and taking his deposition. Nielsen did not object to Dr. Anderson's testimony as it came out at trial, even after Nielsen itself elicited testimony regarding the "generate" term. *See* Tr. at 743:2-13, 785:8-14. And most significantly, Nielsen agreed the dispute over "generate" was purely factual—"***not a claim construction dispute***"—when the Court raised this issue at the prayer conference. Tr. at 923:15-23; 931:14-23 ("THE COURT: … I think you agree with Mr. Newton that there's a dispute about whether – there's 'generate,' that's a fact dispute and infringement dispute… COUNSEL FOR NIELSEN: So, yes…."). Having failed to raise this issue prior to the verdict, Nielsen has forfeited its ability to do so now. *See Cordis*, 561 F.3d at 1331.

***Second***, by the same token, Nielsen has forfeited its right to present new claim construction arguments about the plain and ordinary meaning of "generate." *See* Br. at 11-13. Nielsen did not identify this term for construction during the *Markman* proceedings (D.I. 57, D.I. 327, D.I. 330);

it did not raise any dispute over the term in connection with dispositive motions (D.I. 350); and it did not argue that the Court should resolve any dispute over the term—and adopt Nielsen's current view of the plain meaning—in pretrial submissions, during witness testimony, or at the prayer conference. *See* D.I. 489, Exs. 2 and 4; Tr. at 923:15-25; 931:14-23. Its failure to do so results in forfeiture. *See Cordis*, 561 F.3d at 1331. By raising new arguments about the "proper construction" and pointing to alleged support in the patent specification, Br. at 12-13, Nielsen is "essentially raising a claim construction argument . . . under the guise of a challenge to the sufficiency of the evidence of noninfringement." *Express Mobile*, 680 F. Supp. 3d at 526. This is improper and only underscores Nielsen's forfeiture by failing to make these same arguments before the verdict.

***Third***, it is clear from Dr. Anderson's testimony that he was not offering improper claim construction opinions; rather, he was explaining why the "generate" element is not met in the accused software and why Nielsen's infringement theory is wrong. *See* Tr. at 743:2-13, 785:8-14. Experts are, of course, free to explain the basis of their opinions when applying the plain claim language or the court's construction to the accused products. *See Barry v. DePuy Synthes Cos.*, 164 F.4th 896, 905 (Fed. Cir. 2026) ("[D]isputes over the application of the court's construction are fact disputes to be resolved by the factfinder…."). Indeed, as Nielsen's cited cases explain: "parties may introduce evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art, so long as the evidence does not amount to arguing claim construction." *Ferring Pharms. v. Par Pharm.*, C.A. No. 15-173-RGA, 2016 U.S. Dist. LEXIS 149434, at *1 (D. Del. Oct. 28, 2016) (internal quotation and citation omitted). Although experts are "precluded from testifying that the specification and prosecution history support their views regarding the plain and ordinary meaning of the claim terms[,]" *id.*, Dr. Anderson did not do that here. Moreover, Nielsen has waived any objection on these grounds by failing to object to Dr. Anderson's testimony

or TVision's closing arguments during trial. *See Indect USA Corp. v. Park Assist, LLC*, Nos. 2024-1023, 2024-1127, 2026 LX 87976, at *17 (Fed. Cir. Jan. 7, 2026); *Acceleration Bay LLC v. Amazon Web Servs.*, C.A. No. 22-904-RGA, 2026 LX 135891, at *19 (D. Del. Mar. 26, 2026).

***Fourth***, Dr. Anderson's testimony is consistent with the plain and ordinary meaning of the term "generate." Nielsen takes issue with Dr. Anderson's statement that, "Generate means … you do something to it to get something else," *see* Br. at 11, 14, but that statement is entirely consistent with dictionary definitions and court decisions evaluating the plain meaning of "generate." *See Generate*, <u>Merriam-Webster</u>, www.merriam-webster.com/dictionary/generate (last visited Aug. 28, 2026) (generate: "to bring into existence"); *see also O2 Micro Int'l Ltd. v. Sumida Corp.*, No. 2:03-CV-07, 2005 U.S. Dist. LEXIS 46584 (E.D. Tex. Mar. 8, 2005) ("the court construes 'generate' in accordance with its ordinary meaning—'to bring into existence.'") (quoting Webster's Third Int'l Dictionary, 1993).

***Finally***, although the Court should reject Nielsen's invitation to engage in post-verdict claim construction, Nielsen nevertheless failed to make any credible showing that a person of ordinary skill in the art would understand "generate" to mean "copy." *See* Br. at 12-13. None of the scant few lines from the specification use the word "generate" or any variant thereof. *Id.* Nor does the specification state or imply that a system can generate a signature by copying a descriptor from one location to another; instead, it refers to performing a process like concatenation that creates something new—which is consistent with the plain and ordinary meaning of the term. *See* '889 patent at 7:62-64, 9:27-29.

### B. Substantial Evidence Supports a Finding that the Accused Software Does Not Meet the "Signature" Requirement

#### 1. TVision Did Not Rely on an Improper Claim Construction

TVision demonstrated through fact and expert testimony that the accused software uses a

fundamentally different approach for media identification than claim 8 of the '889 patent. *See* Tr. at 1091:3-1093:4. The software generates a fingerprint from a six-second audio sample. *Id*. at 714:8-17. It then waits four seconds before it generates another fingerprint from a different, non-overlapping six-second media sample. *Id*. As Dr. Anderson explained, these fingerprints are what the accused software uses as a signature—*i.e.*, as an item for use in identifying media information. *Id*. at 744:19-23 ("I'm pointing to what the code identifies as a fingerprint and what is used as a signature to identify the audio…"). He further explained that, although the fingerprints are used as signatures, they do not meet the requirements of claim 8 because multiple fingerprints "do not originate from overlapping frames." *Id*. at 744:24-745:10.[5] And finally, Dr. Anderson explained that the three-tuples (or triplets) Nielsen pointed to are ***not*** signatures—they are simply descriptors that are copied into a Python object to define the fingerprint:

> Q. Now, Dr. Anderson, what's on the screen?
>
> A. . . . That's the triplet that has been identified by Nielsen as being required to be the signature in order for the ACRCloud media recognition system to infringe the patent.
>
> Q. Dr. Anderson, why isn't that a signature?
>
> A. Well, for one thing, it is not used as a signature, it would not work as a signature, and the ACRCloud system actually uses something else as its signature and does not identify or use this as a signature.

*Id*. at 730:16-731:6.

> Q. And what are you pointing to?
>
> A. I'm pointing to what the code identifies as a fingerprint . . . and that is the whole set of the descriptors that comes out of the analysis by the software.

*Id*. at 744:19-23.

> Q. And the fingerprint is called by the function create_fp_byfile_buffer correct?
>
> A. Yes.

[5] This fundamental difference is not happenstance: as Mr. Sidhu testified, TVision decided to use fewer fingerprints to reduce costs, and makes up for the four-second gap using an internally developed "reduction" algorithm on the backend. *Id*. at 714:18-715:12.

Q. And what does that function ultimately return?

A. It returns a single object, a bucket, if you will, that contains all the triplets from the six-second segment.

*Id*. at 807:15-17.

This testimony is consistent with Dr. Anderson's conclusion that the "generate" step is not met. *See supra*, Section V.A. Unlike the '889 patent, the accused software creates fingerprints with four-second gaps in between, rather than signatures derived from overlapping frames—forcing Nielsen to point to the same copied-over three-tuple value as both the descriptor and the signature. *See* Tr. at 743:2-13; 745:3-10. The testimony is also plainly sufficient to support a jury finding that the "signature" requirement is not met. *See Express Mobile*, 680 F. Supp. 3d at 524. From the record evidence, a reasonable jury could conclude that: the signatures in the accused software are six-second fingerprints, which are not derived from overlapping frames as required by claim 8 (*see* Tr. at 744:24-745:10); the triplet values are descriptors, not signatures (*id*. at 743:6-10);[6] and simply copying a descriptor from one place to another does not satisfy the signature generation requirement of claim 8. *Id*. at 744:19-23; 807:15-19.

Without addressing Dr. Anderson's testimony at any level of detail, Nielsen asks the Court to dismiss it as "conclusory" and based on an "assertion that a 'triplet' is not used as a signature unless it ***alone*** identifies media information…." Br. at 9 (emphasis in original). The trial record refutes both points. ***First***, far from being conclusory, Dr. Anderson's testimony—which was based on his review of the source code—details the operation of the accused software and how it generates fingerprints to identify media information. *See* Tr. at 730:16-731:6; 743:6-10; 744:19-

[6] This is consistent with the Court's explanation that "signature" and "descriptor" are "different words," and the Court's rejection of Nielsen's argument that a "signature" is "essentially limited to the fact that it must be based on at least one descriptor." Tr. at 944:7-13; 946:2-13. By suggesting otherwise now, Nielsen is "raising a claim construction argument . . . under the guise of a challenge to the sufficiency of the evidence of noninfringement." *Express Mobile*, 680 F. Supp. 3d at 526.

23; 807:15-19. This clearly meets the "minimum quantum of evidence" necessary to uphold a jury verdict and deny Nielsen's JMOL motion. *Smollett v. Skayting Dev. Corp.*, 793 F.2d 547, 548 (3d Cir. 1986).

***Second***, none of the testimony cited above relies on an assertion that the triplet value alone or by itself must identify media information. *See* Tr. at 730:16-731:6; 743:6-10; 744:19-23; 807:15-19. Dr. Anderson explained that the triplet is a descriptor, not a signature, and that the signature in the accused software—*i.e.*, an item for use in identifying media information—is the six-second fingerprint that does not meet the other requirements of claim 8. *Id*. That testimony consistently relied on the word "signature," without imposing a requirement that it must be used alone or by itself to identify media information. *Id*. at 730:16-731:6; 743:6-10; 744:19-23; 807:15-19. Indeed, Nielsen does not cite a single instance where Dr. Anderson told the jury this is a requirement of the claims, distinguished the accused products on this basis, or "rested" his analysis on such an assertion. *See* Br. at 9.

And if there were any doubt, counsel for Nielsen asked Dr. Anderson point-blank whether "the term signature in the generate element has to be something that independently and by itself will allow for recognition of the content." Tr. at 760:9-12. Dr. Anderson explained it does not. *Id*. at 760:13-17 ("I didn't construe that term specifically to be any particular by itself and independently recognize audio, but what I did do was apply the plain and ordinary meaning, as would be understood by one of ordinary skill in the art, in the context of the specification of the patent."). This is a clear signal to the jury that Dr. Anderson was not trying to narrow the claims or impose some additional requirement. *See Express Mobile*, 680 F. Supp. 3d at 526 (rejecting argument that expert limited the term "device-dependent code" to "operating systems" where his testimony showed otherwise). It is also consistent with the remainder of his testimony discussed

above, which used the term "signature" without qualification.

Dr. Anderson's statement that "a signature is something that can meaningfully represent an audio signal such that it could be identified," *see* Tr. at 760:18-20, does not support Nielsen's argument. Nielsen ignores the immediately preceding testimony quoted above, where Dr. Anderson makes clear that he is not construing the term "signature" or imposing additional requirements. *Id*. at 760:13-17. Nielsen does not identify any testimony where Dr. Anderson relied on a "meaningfully represent" requirement to distinguish the accused software (he did not). *See* Br. at 9. And even if he had, Nielsen does not explain how any "degree of difference between the allegedly incorrect construction[] . . . and the Court's construction[]—if there is even a difference—is significant enough to entitle it to JMOL." *Express Mobile*, 680 F. Supp. 3d at 527.

Because Dr. Anderson did not testify that a signature must be used alone or by itself to identify media information, Nielsen's cited case law is inapposite. *See* Br. 8-11. *Phillips* and *Epos* are irrelevant because Dr. Anderson did not present conclusory—or any—claim construction opinions or exclude embodiments. Br. at 14; *see Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005); *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1347 (Fed. Cir. 2014). *Cordis* is distinguishable because, there, the expert opinion rendered part of the district court's construction superfluous. *See Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1356 (Fed. Cir. 2011). The construction required a crest and a trough (like a wave), yet the expert said it could be satisfied by a u-shaped structure that lacks a crest. *Id*. Here, Dr. Anderson did not present testimony that contradicted or rendered the Court's construction meaningless. And in *Sprint*, the patent owner later admitted that the infringement theory it presented to the jury was incorrect. *Sprint Communs. Co. L.P. v. Comcast IP Holdings, LLC*, C.A. No. 12-1013-RGA, 2015 LX 70389, at *43 (D. Del.

Aug. 7, 2015).[7]

Finally, TVision did not "urge[]" the jury to apply an improper construction in its closing. *See* Br. at 9-10. Closing arguments are not evidence—a point on which the jury was instructed. *See* Tr. at 1018:15-16. Even if they were, TVision's closing tracked the evidence discussed above, including Mr. Sidhu's and Dr. Anderson's testimony detailing the fundamentally different operation of the accused products compared to claim 8, and Dr. Anderson's explanation that the three-tuple value is not a signature. *Id*. at 1090:12-1092:22. The single statement quoted in Nielsen's brief, in which Dr. Kyriakakis admitted he did not "do any analysis to see . . . whether a single triplet by itself is ever used to match to a piece of media content," goes to the fact dispute about whether the triplet is a signature. *Id*. at 1089:3-18. It also underscores Nielsen's failure to prove the triplet value is a signature, and the lack of credibility between its two experts. *Id*. at 1089:14-1090:1. Not once did TVision direct the jury to apply a different construction or argue that the "signature" limitation includes a "by itself" requirement. *Id*. at 1088:21-1093:4.[8]

### 2. Nielsen Did Not Meet Its Burden of Proof

The jury verdict should be upheld for the independent reason that Nielsen failed to prove that the triplet values in the accused software meet the signature requirement. *See Express Mobile*, 680 F. Supp. 3d at 524 (party with the burden of proof must establish not only insufficient evidence to support the jury verdict, but also sufficient evidence to support its own position). Nielsen does not—and cannot—rely on its source code expert, Dr. Martin, who admitted he had no opinion about whether the descriptor value is a signature. *See* Tr. at 373:19-21. Nor can it rely on the source

---

[7] The portion of *Sprint* Nielsen relies on concerns a motion for new trial, not JMOL.

[8] Indeed, when Nielsen objected to closing demonstratives that contained the above testimony from Dr. Kyriakakis, the Court overruled the objection and explained, "I can't see anything in itself about these slides that is objectionable or that somehow contravenes my claim construction." Tr. at 1012:22-1012:24.

code itself which, Nielsen admitted, does not identify any item as a "signature." *Id*. at 373:13-16. Nielsen fails to identify any testimony from its other expert, Dr. Kyriakakis, that shows the three-tuple value is a "signature" or item for use in identifying media information. *See* Br. at 8-9.

Nielsen relies instead on a "high level" response where Dr. Kyriakakis said, "once the processing is finished and the signatures are created, then it sends it to the cloud to be matched in the reference database." *Id*. at 9 (quoting Tr. at 384:16-20). But, that testimony says nothing about *what* Dr. Kyriakakis is identifying as the "signatures," nor does it explain how they are used to identify media information. *Id*. Compounding this ambiguity is the fact that counsel for Nielsen and Dr. Kyriakakis conflated signatures and fingerprints during trial. *See* Tr. at 188:25-189:4 ("Now, the way that is done, our technical witnesses will tell you, is by making what's called fingerprints or signatures of the sound. We'll talk a lot about what that is, but basically, that's a representation of the sound that allows you to identify it."); *id*. at 470:6-10 ("Q. … when you said 'those fingerprints,' you were referring back to signatures, correct? A. This was written a year ago. I don't recall what was in my head at the time."). This left the jury with insufficient evidence to conclude what exactly Dr. Kyriakakis was referring to in his "high level" statement.[9]

A bigger problem for Nielsen is that it cannot meet its burden of proof by pointing to descriptor values and arguing they are also signatures. The Court's construction precludes this, *see* Tr. at 944:7-13; 946:2-13 (explaining that "signature" and "descriptor" are "different words," and rejecting Nielsen's argument that a "signature" is "essentially limited to the fact that it must be

[9] Nielsen also points to testimony from Dr. Anderson, where he was asked, "what does [TVision] do with all of those 3-tuples," and he replied, "So the fingerprint that TVision uses in their product for recognizing audio is this – the set of all of these signatures." Br. at 9 (quoting Tr. at 743:23-744:6). Read in context it is clear that Dr. Anderson inadvertently used the term "signatures" and was instead referring to the three-tuple descriptor values that make up the Python object. *See* Tr. at 730:16-731:6 (explaining that 3-tuples are not signatures); 744:19-23 (explaining that fingerprints are made up of descriptors).

based on at least one descriptor.”). Under the Court’s construction, Nielsen cannot identify a signature that is based on—and different from—the descriptor values. *See Express Mobile*, 680 F. Supp. 3d at 526 (rejecting patent owner’s argument for JMOL of infringement because it was really a collateral attack on the Court’s construction).

## VI. NIELSEN IS NOT ENTITLED TO A NEW TRIAL

Nielsen’s motion in the alternative for a new trial regarding the issues the jury reached rests on restatements of its general verdict rule argument and its objections to Dr. Anderson’s testimony regarding “signature” and “generate.” Nielsen’s general verdict rule argument fails for the reasons set forth in Section IV, *supra*. Nielsen’s arguments regarding “signature” and “generate” as a basis for a new trial are not developed apart from Nielsen’s JMOL argument, and are thus waived. *Acceleration Bay*, 2026 LX 135891, at *61 (“By simply stating that its judgment as a matter of law arguments support a new trial, Defendant has failed to develop the arguments according to the standard for a new trial and thus has waived these arguments it offered in the alternative.”). Regardless, they fail for the reasons set forth in Section V, *supra*. To the extent Nielsen relies on objections to Dr. Anderson’s testimony as a basis for a new trial, those objections are also waived for failure to make them before post-trial motions. *Id. Trudell Med. Int’l Inc. v. D R Burton Healthcare, LLC*, for example, reversed due to a failure to exclude testimony on *Daubert* grounds—an objection Nielsen never made. 127 F.4th 1340, 1349-50 (Fed. Cir. 2025).

Thus, and for the reasons set forth above, Nielsen cannot meet its burden to show that the verdict is “against the weight of the evidence” and that “a miscarriage of justice would occur if the jury’s verdict were left to stand.” *Williamson*, 926 F.2d at 1348.

## VII. CONCLUSION

The Court should deny Nielsen’s motions for JMOL and for a new trial.

Respectfully submitted,

*/s/ Nathan R. Hoeschen*
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
nhoeschen@shawkeller.com

Jared W. Newton (No. 7519)
QUINN EMANUEL URQUHART
& SULLIVAN LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
(302) 302-4000
jarednewton@quinnemanuel.com

*Attorneys for Defendant TVision Insights, Inc.*

OF COUNSEL:
Jason Xu
RIMÔN LAW P.C.
1990 K. Street, NW, Suite 420
Washington, DC 20006
(202) 470-2141

Steig D. Olson
Sami H. Rashid
Vanessa Blecher
QUINN EMANUEL URQUHART
& SULLIVAN LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000

Patrick D. Curran
QUINN EMANUEL URQUHART
& SULLIVAN LLP
11 Huntington Avenue, Suite 5200
Boston, MA 02199
(617) 712-7100

Adam B. Wolfson
QUINN EMANUEL URQUHART
& SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Benjamin D. Brown
Richard A. Koffman
Daniel McCuaig
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave NW, Suite 800
Washington, DC 20005
(202) 408-4600

Aamir A. Kazi
FISH & RICHARDSON
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
(404) 724-2811

Dated: August 28, 2026